# EXHIBIT 1

***(Copies of All Filings from State Court Action)***

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I. CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR ESCAMBIA COUNTY, FLORIDA

John Levitan Sr
Plaintiff

Case # ____________
Judge ____________

vs.
Gilead Sciences Inc., Gilead Sciences Ireland UC, Patterson, Belknapp, Webb & Tyler, LLP, Geoffrey Potter, Timothy Waters, Aron Fischer, Joshua Stein, Thomas Kurland
Defendant

---

**II. AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III. TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
   ☐ Business governance
   ☐ Business torts
   ☐ Environmental/Toxic tort
   ☐ Third party indemnification
   ☐ Construction defect
   ☐ Mass tort
   ☐ Negligent security
   ☐ Nursing home negligence
   ☐ Premises liability—commercial
   ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
   ☐ Commercial foreclosure
   ☐ Homestead residential foreclosure
   ☐ Non-homestead residential foreclosure
   ☐ Other real property actions

☐Professional malpractice
   ☐ Malpractice—business
   ☐ Malpractice—medical
   ☐ Malpractice—other professional
☒ Other
   ☐ Antitrust/Trade regulation
   ☐ Business transactions
   ☐ Constitutional challenge—statute or ordinance
   ☐ Constitutional challenge—proposed amendment
   ☐ Corporate trusts
   ☐ Discrimination—employment or other
   ☐ Insurance claims
   ☐ Intellectual property
   ☒ Libel/Slander
   ☐ Shareholder derivative action
   ☐ Securities litigation
   ☐ Trade secrets
   ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [ ]
(Specify)

5

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ John Levitan Fla. Bar #
Attorney or party (Bar # if attorney)

John Levitan 09/02/2024
(type or print name) Date

# Escambia County Receipt of Transaction

## Receipt # 2024064370

**Cashiered by: hannah.burns**

Pam Childers
Clerk of Court
Escambia County, Florida

**Received From**

**LEVITAN, JOHN S**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

**On Behalf Of:**

,

On: 9/3/24 11:38 am
Transaction # 101925904

**CaseNumber 2024 CA 001164**

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (CA1) CIRCUIT CIVIL FILING FEE | 400.00 | 0.00 | 0.00 | 400.00 | 400.00 | 0.00 |
| (CA41) EXTRA DEFENDANTS | 7.50 | 0.00 | 0.00 | 7.50 | 7.50 | 0.00 |
| (CA93) ISSUANCE OF SUMMONS | 80.00 | 0.00 | 0.00 | 80.00 | 80.00 | 0.00 |
| **Total:** | **487.50** | **0.00** | **0.00** | **487.50** | **487.50** | **0.00** |
| **Grand Total:** | **487.50** | **0.00** | **0.00** | **487.50** | **487.50** | **0.00** |

**PAYMENTS**

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| EFILING | 12360208 | OK | 487.50 | 0.00 | 0.00 | 0.00 | 487.50 |
| | | **Payments Total:** | **487.50** | **0.00** | **0.00** | **0.00** | **487.50** |

Credit Card Convenience fee of 3.5% is non-refundable.

Filing # 206010594 E-Filed 09/02/2024 11:15:50 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO.

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

__________________________________________/

**COMPLAINT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

**PARTIES**

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the

laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to Article V, Section 5 of the Florida Constitution and Chapter 26 of the Florida Statutes.

11. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

12. The damages subject of this action exceeds $50,000.00.

**STATEMENT OF FACTS**

13. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional and US Constitutional rights of the Plaintiff.

14. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

15. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

16. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.

b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.
c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.
d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.
e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\
f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.
g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the

Eastern District of New York (the "First Affidavit") whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s) was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

## COUNT I
## VIOLATION OF CIVIL RIGHTS WARRANTLESS SEARCH BY PRIVATE PERSONS

30. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

31. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in

their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

32. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorneys fees.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS RIGHT TO PRIVACY**

33. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

34. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

35. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS FREEDOM OF SPEECH AND ASSOCIATION**

36. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

37. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

38. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT IV**
**LIBEL**

39. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

40. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

41. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

42. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT V**
**SLANDER**

17. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

18. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

19. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

20. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, costs of the action and attorney's fees.

**DEMAND FOR JURY TRIAL**

21. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory damages in an amount to be determined at trial;
ii. For punitive damages;
iii. For an award of costs, including reasonable attorney's fees;
iv. For such other and further relief as the Court deems just and proper.

Dated: September 2, 2024

Respectfully submitted,

/s/ John D. Levitan, Sr.

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

### G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal

NEWS

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says



**Jim Little**
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILEAD SCIENCES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAFE CHAIN SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 21-cv-4106 (AMD) (RER)<br><br>**FILED UNDER SEAL**<br>**PURSUANT TO 15 U.S.C. § 1116(d)**<br><br>**AFFIRMATION OF SERVICE** |

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

Case 3:26-cv-00145-D Document 687 Filed 02/27/26 Page 2 of 3 PageID 35815

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

ECSO 82

Ryan Robinson

13855290v.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILEAD SCIENCES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAFE CHAIN SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 21-cv-4106 (AMD) (RER)<br><br>**AFFIRMATION OF SERVICE UPON JOHN LEVITAN** |

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN LEVITAN S**
Plaintiff, CASE NO.: **2024 CA 001164**

VS. DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC, et al.**
Defendant(s),

**AMENDED ORDER TO PLAINTIFF REGARDING REQUIRED REPORTING**

THIS CAUSE, having come before the Court *sua sponte* upon the filing of this action and pursuant to First Judicial Circuit Administrative Order No. 2021-12, it is hereby,

ORDERED and ADJUDGED that the Plaintiff **shall** do the following:

1. Review and become familiar with First Judicial Circuit Administrative Order No. 2021-12 (Civil Case Management Plan).

2. Within 5 days of service of the complaint on the last of all named Defendants file a Notice of Final Service with the Court that includes the following:
   a. Notice that the last of all named Defendants to be served has been served and the date of said service.
   b. A proposal as to whether the case is complex under Fla. R. Civ. P. 1.201, streamlined, or general as defined in First Judicial Circuit Administrative Order No. 2021-12 and a statement as to whether the Defendant concurs in the proposed designation.

3. Upon filing the Notice of Final Service required in paragraph 2, the Plaintiff shall also send a copy of said Notice to the **assigned** Judge's Judicial Assistant via the Proposed Documents function of the ePortal.

4. Failure of the Plaintiff to strictly comply with this Order shall subject the Plaintiff to appropriate sanctions including, but not limited to, the striking of pleadings or dismissal of this action without prejudice.

**DONE AND ORDERED** in Chambers at Pensacola, Florida this 4th day of August, 2021

**/s/ Jan Shackelford**

JAN SHACKELFORD
ADMINISTRATIVE JUDGE
ESCAMBIA COUNTY

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**

PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**

DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.

DEFENDANT,

**SUMMONS PERSONAL SERVICE ON A NATURAL PERSON**

TO DEFENDANT: **JOSHUA STEIN**
**1133 AVENUE OF AMERICAS**
**NEW YORK, NY 10036**

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos , sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete enterprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l 'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffusant pour vous proteger. Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-desses et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saiais par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres abligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au " Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

PLAINTIFF/PLAINTIFF'S ATTORNEY: **JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

The STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above named Defendant.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**

PAM CHILDERS

CLERK OF THE CIRCUIT COURT

By: ______________________

Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration, ADA Liaison Escambia County, 190 Governmental Center, 5th Floor, Pensacola, FL 32502, (850) 595-4400 Fax (850) 595-0360 ADA.Escambia@flcourts1.gov , at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**

PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**

DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.

DEFENDANT,

**SUMMONS PERSONAL SERVICE ON A NATURAL PERSON**

TO DEFENDANT: **THOMAS P KURLAND**
**1133 AVENNUE OF AMERICAS**
**NEW YORK, NY 10036**

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos , sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete enterprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l 'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffusant pour vous proteger. Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-desses et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saiais par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres abligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au " Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

PLAINTIFF/PLAINTIFF'S ATTORNEY: **JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

The STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above named Defendant.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**
PAM CHILDERS
CLERK OF THE CIRCUIT COURT
By: ______________________
Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration, ADA Liaison Escambia County, 190 Governmental Center, 5th Floor, Pensacola, FL 32502, (850) 595-4400 Fax (850) 595-0360 ADA.Escambia@flcourts1.gov , at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**

PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**

DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.

DEFENDANT,

**SUMMONS PERSONAL SERVICE ON A NATURAL PERSON**

TO DEFENDANT: **ARON FISCHER**
**1133 AVENUE OF AMERICAS**
**NEW YORK, NY 10036**

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos , sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete enterprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l 'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffusant pour vous proteger. Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-desses et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saiais par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres abligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au " Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

PLAINTIFF/PLAINTIFF'S ATTORNEY: **JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

The STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above named Defendant.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**

PAM CHILDERS

CLERK OF THE CIRCUIT COURT

By: ______________________

Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration, ADA Liaison Escambia County, 190 Governmental Center, 5th Floor, Pensacola, FL 32502, (850) 595-4400 Fax (850) 595-0360 ADA.Escambia@flcourts1.gov , at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**

PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**

DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.

DEFENDANT,

**SUMMONS PERSONAL SERVICE ON A NATURAL PERSON**

TO DEFENDANT: **TIMOTHY ALAN WATERS**
**1133 AVENUE OF THE AMERICAS**
**NEW YORK, NY 10036**

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos , sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete enterprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l 'assignation de cette citation pour deposer une response ecrite a la plainte ci -jointe aupres de ce tribunal. Un simple coup de telephone est insuffusant pour vous proteger. Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci -desses et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saiais par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres abligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au " Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

PLAINTIFF/PLAINTIFF'S ATTORNEY: **JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

The STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above named Defendant.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**

PAM CHILDERS

CLERK OF THE CIRCUIT COURT

By: ______________________

Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration, ADA Liaison Escambia County, 190 Governmental Center, 5th Floor, Pensacola, FL 32502, (850) 595-4400 Fax (850) 595-0360 ADA.Escambia@flcourts1.gov , at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**
PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**
DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.
DEFENDANT,

## SUMMONS PERSONAL SERVICE ON A NATURAL PERSON

TO DEFENDANT: **GEOFFREY POTTER**
**1133 AVENUE OF AMERICAS**
**NEW YORK, NY 10036**

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos , sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete enterprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l 'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffusant pour vous proteger. Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-desses et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saiais par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres abligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au " Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

PLAINTIFF/PLAINTIFF'S ATTORNEY: **JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

The STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above named Defendant.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**
PAM CHILDERS
CLERK OF THE CIRCUIT COURT
By: ______________________
Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration, ADA Liaison Escambia County, 190 Governmental Center, 5th Floor, Pensacola, FL 32502, (850) 595-4400 Fax (850) 595-0360 ADA.Escambia@flcourts1.gov , at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**
PLAINTIFF,
Vs.

CASE NO: **2024 CA 001164**
DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.
DEFENDANT,

## SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **PATTERSON BELKNAPP WEBB AND TYLER LLP A NEW YORK LIMITED LIABILITY PARTNERSHIP 1133 AVENUE OF AMERICAS NEW YORK, NY 10036-6710**

Each defendant is hereby required to serve written defenses to said complaint on plaintiff's attorney(s), whose address is

**JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**
PAM CHILDERS
CLERK OF THE CIRCUIT COURT
By: ______________________
Deputy Clerk

CLERK OF THE CIRCUIT COURT ESCAMBIA COUNTY, FLORIDA

* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days.

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**
PLAINTIFF,
Vs.

CASE NO: **2024 CA 001164**
DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.
DEFENDANT,

**SUMMONS**

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **GILEAD SCIENCES IRELAND UC IDA BUSINESS & TECHNOLOGY PARK CARRIGTOHILL, FF**

Each defendant is hereby required to serve written defenses to said complaint on plaintiff's attorney(s), whose address is

**JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**
PAM CHILDERS
CLERK OF THE CIRCUIT COURT
By: [signature]
Deputy Clerk

CLERK OF THE CIRCUIT COURT ESCAMBIA COUNTY, FLORIDA

* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days.

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**

PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**

DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.

DEFENDANT,

**SUMMONS**

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **GILEAD SCIENCES INC 333 LAKESIDE DRIVE FOSTER CITY, CA 94404**

Each defendant is hereby required to serve written defenses to said complaint on plaintiff's attorney(s), whose address is

**JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**

PAM CHILDERS
CLERK OF THE CIRCUIT COURT

By: Hanah Berns

Deputy Clerk

CLERK OF THE CIRCUIT COURT ESCAMBIA COUNTY, FLORIDA

* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days.

IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**Plaintiff / Petitioner:**
JOHN D LEVITAN SR
**Defendant / Respondent:**
GILEAD SCIENCES INC, et al.

## AFFIDAVIT OF SERVICE

**CASE NO: 2024 CA 001164**

STATE OF NEW YORK )
)SS:
COUNTY OF RICHMOND )

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in New York State. That on Mon, Sep 16 2024 AT 12:24 PM AT 1133 AVENUE OF AMERICAS, NEW YORK, NY 10036 deponent served the within SUMMONS, COMPLAINT WITH ATTACHMENTS AND AFFIRMATION OF SERVICE UPON JOHN LEVITAN bearing CASE NO: 2024 CA 001164 upon PATTERSON BELKNAPP WEBB AND TYLER LLP, A NEW YORK LIMITED LIABILITY PARTNERSHIP.

[ ] **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

[X] **Partnership:** a defendant, therein named, by delivering a true copy of each to Leonor Carvajal-Donohue personally, deponent knew said partnership so served to be the partnership described, and knew said individual to be Assistant Managing Clerk/ Authorized to Accept Service; thereof.

[ ] **Suitable Person:** by delivering thereat, a true copy of each to ________________ a person of suitable age and discretion.

[ ] **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

[ ] **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper marked personal and confidential properly addressed to said defendant at defendant's last known residence, ________________, to be mailed by first class mail and depositing said wrapper in a post office, official depository, under the exclusive care and custody of the United States Post Office department, with New York State. Mailed on ________________.

[ ] **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. The source of my information and the ground of my belief are the conversations and observations narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
Age: 60 Skin Color: Caucasian Gender: Female Weight: 200+
Height: 5'6" Hair: Gray Eyes: Relationship: Assistant Managing Clerk/ Authorized to Accept Service

Other ________________

Sworn to before me on September 17, 2024

[signature] [signature]

Joseph Donovan-License #1292936-DCA

Notary Public

TARA DONOVAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6210234
Qualified in Richmond County
Commission Expires 08-10-2025

SUBPOENA SERVED
101 CRAWFORDS CORNER ROAD
SUITE 3-102R
HOLMDEL, NEW JERSEY 07733
Telephone No.: 609.619.2330

IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**Plaintiff / Petitioner:**
JOHN D LEVITAN SR
**Defendant / Respondent:**
GILEAD SCIENCES INC, et al.

**AFFIDAVIT OF SERVICE**

**CASE NO: 2024 CA 001164**

STATE OF NEW YORK )
)SS:
COUNTY OF RICHMOND )

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in New York State. That on Mon, Sep 16 2024 AT 12:24 PM AT 1133 AVENUE OF AMERICAS, NEW YORK, NY 10036 deponent served the within SUMMONS PERSONAL SERVICE ON A NATURAL PERSON, COMPLAINT WITH ATTACHMENTS AND AFFIRMATION OF SERVICE UPON JOHN LEVITAN bearing CASE NO: 2024 CA 001164 upon ARON FISCHER.

[ ] **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

[ ] **Corporation:** a defendant, therein named, by delivering a true copy of each to ________ personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be thereof.

[X] **Suitable Person:** by delivering thereat, a true copy of each to Leonor Carvajal-Donohue a person of suitable age and discretion.

[ ] **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

[ ] **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper marked personal and confidential properly addressed to said recipient at the above service address of ________, to be mailed by first class mail and depositing said wrapper in a post office, official depository, under the exclusive care and custody of the United States Post Office department, with New York State. Mailed on ________.

[X] **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. The source of my information and the ground of my belief are the conversations and observations narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
Age: 60 Skin Color: Caucasian Gender: Female Weight: 200+
Height: 5'6" Hair: Gray Eyes: Relationship: Assistant Managing Clerk/ Authorized to Accept Service

Other

Sworn to before me on *September 17, 2024*

Joseph Donovan-License #1292936-DCA

Notary Public

TARA DONOVAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6210234
Qualified in Richmond County
Commission Expires 08-10-2025

SUBPOENA SERVED
101 CRAWFORDS CORNER ROAD
SUITE 3-102R
HOLMDEL, NEW JERSEY 07733
Telephone No.: 609.619.2330

IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**Plaintiff / Petitioner:**
JOHN D LEVITAN SR
**Defendant / Respondent:**
GILEAD SCIENCES INC, et al.

**AFFIDAVIT OF SERVICE**

**CASE NO: 2024 CA 001164**

STATE OF NEW YORK )
)SS:
COUNTY OF RICHMOND )

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in New York State. That on Mon, Sep 16 2024 AT 12:24 PM AT 1133 AVENUE OF AMERICAS, NEW YORK, NY 10036 deponent served the within SUMMONS PERSONAL SERVICE ON A NATURAL PERSON, COMPLAINT WITH ATTACHMENTS AND AFFIRMATION OF SERVICE UPON JOHN LEVITAN bearing CASE NO: 2024 CA 001164 upon JOSHUA STEIN.

[ ] **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

[ ] **Corporation:** a defendant, therein named, by delivering a true copy of each to ______________ personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be thereof.

[X] **Suitable Person:** by delivering thereat, a true copy of each to Leonor Carvajal-Donohue a person of suitable age and discretion.

[ ] **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

[ ] **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper marked personal and confidential properly addressed to said recipient at the above service address of ______________, to be mailed by first class mail and depositing said wrapper in a post office, official depository, under the exclusive care and custody of the United States Post Office department, with New York State. Mailed on ______________.

[X] **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. The source of my information and the ground of my belief are the conversations and observations narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Age: | 60 | Skin Color: | Caucasian | Gender: | Female | Weight: | 200+ |
| Height: | 5'6" | Hair: | Gray | Eyes: | | Relationship: | Assistant Managing Clerk/ Authorized to Accept Service |

Other ______________

Sworn to before me on *September 17, 2024*

Joseph Donovan-License #1292936-DCA

Notary Public

SUBPOENA SERVED
101 CRAWFORDS CORNER ROAD
SUITE 3-102R
HOLMDEL, NEW JERSEY 07733
Telephone No.: 609.619.2330

TARA DONOVAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6210234
Qualified in Richmond County
Commission Expires 08-10-2025

Filing # 207612105 E-Filed 09/24/2024 08:18:45 PM

IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**Plaintiff / Petitioner:**
JOHN D LEVITAN SR
**Defendant / Respondent:**
GILEAD SCIENCES INC, et al.

**AFFIDAVIT OF SERVICE**

**CASE NO: 2024 CA 001164**

STATE OF NEW YORK )
)SS:
COUNTY OF RICHMOND )

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in New York State. That on Mon, Sep 16 2024 AT 12:24 PM AT 1133 AVENUE OF AMERICAS, NEW YORK, NY 10036 deponent served the within SUMMONS PERSONAL SERVICE ON A NATURAL PERSON, COMPLAINT WITH ATTACHMENTS AND AFFIRMATION OF SERVICE UPON JOHN LEVITAN bearing CASE NO: 2024 CA 001164 upon THOMAS P KURLAND.

[ ] **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

[ ] **Corporation:** a defendant, therein named, by delivering a true copy of each to ______________ personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be thereof.

[X] **Suitable Person:** by delivering thereat, a true copy of each to Leonor Carvajal-Donohue a person of suitable age and discretion.

[ ] **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

[ ] **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper marked personal and confidential properly addressed to said recipient at the above service address of ______________, to be mailed by first class mail and depositing said wrapper in a post office, official depository, under the exclusive care and custody of the United States Post Office department, with New York State. Mailed on ______________.

[X] **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. The source of my information and the ground of my belief are the conversations and observations narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
Age: 60 Skin Color: Caucasian Gender: Female Weight: 200+
Height: 5'6" Hair: Gray Eyes: Relationship: Assistant Managing Clerk/ Authorized to Accept Service

Other ______________

Sworn to before me on *September 17, 2024*

[signature] [signature]

Joseph Donovan-License #1292936-DCA Notary Public

TARA DONOVAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6210234
Qualified in Richmond County
Commission Expires 08-10-2025

SUBPOENA SERVED
101 CRAWFORDS CORNER ROAD
SUITE 3-102R
HOLMDEL, NEW JERSEY 07733
Telephone No.: 609.619.2330

IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**Plaintiff / Petitioner:**
JOHN D LEVITAN SR
**Defendant / Respondent:**
GILEAD SCIENCES INC, et al.

## AFFIDAVIT OF SERVICE

**CASE NO: 2024 CA 001164**

STATE OF NEW YORK )
)SS:
COUNTY OF RICHMOND )

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in New York State. That on Mon, Sep 16 2024 AT 12:24 PM AT 1133 AVENUE OF AMERICAS, NEW YORK, NY 10036 deponent served the within SUMMONS PERSONAL SERVICE ON A NATURAL PERSON, COMPLAINT WITH ATTACHMENTS AND AFFIRMATION OF SERVICE UPON JOHN LEVITAN bearing CASE NO: 2024 CA 001164 upon TIMOTHY ALAN WATERS.

[ ] **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

[ ] **Corporation:** a defendant, therein named, by delivering a true copy of each to ________________ personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be thereof.

[X] **Suitable Person:** by delivering thereat, a true copy of each to Leonor Carvajal-Donohue a person of suitable age and discretion.

[ ] **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

[ ] **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper marked personal and confidential properly addressed to said recipient at the above service address of ________________, to be mailed by first class mail and depositing said wrapper in a post office, official depository, under the exclusive care and custody of the United States Post Office department, with New York State. Mailed on ____________________.

[X] **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. The source of my information and the ground of my belief are the conversations and observations narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
Age: 60 Skin Color: Caucasian Gender: Female Weight: 200+
Height: 5'6" Hair: Gray Eyes: Relationship: Assistant Managing Clerk/ Authorized to Accept Service

Other ____________________

Sworn to before me on September 17, 2024

Joseph Donovan-License #1292936-DCA

Notary Public

TARA DONOVAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6210234
Qualified in Richmond County
Commission Expires 08-10-2025

SUBPOENA SERVED
101 CRAWFORDS CORNER ROAD
SUITE 3-102R
HOLMDEL, NEW JERSEY 07733
Telephone No.: 609.619.2330

Case 3:26-cv-01457-TKW-HTC Document 1-1 Filed 02/27/26 Page 47 of 873

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR ESCAMBIA COUNTY, FLORIDA

JOHN D. LEVITAN, SR., Case No: 2024-CA-001164

Plaintiff,

v.

GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND

Defendants.

**NOTICE OF FILING NOTICE OF REMOVAL**
**TO THE UNITED STATES DISTRICT COURT**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, Defendants PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND, hereby gives notice to Plaintiff JOHN D. LEVITAN, SR. and to the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida that the above-captioned action has been removed to the United States District Court for the Northern District of Florida, Pensacola Division. A copy of the Notice of Removal without exhibits is attached as **Exhibit A.**

In accordance with 28 U.S.C. § 1446(d), the filing of this Notice of Filing Notice of Removal immediately effects the removal of this action to federal district court, and the state court shall proceed no further with this action unless and until this case is remanded.

Date: October 3, 2024

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON

/s/ *Hannah Murphy*
Jay B. Shapiro
Florida Bar No. 776361
150 West Flagler Street
Suite 2200
Miami, FL 33130
T: 305-789-3200
F: 305-789-2664
E: jshapiro@stearnsweaver.com

*and*

Hannah Murphy
Florida Bar No. 1032759
106 East College Avenue, Suite 700
Tallahassee, Florida 32301
T: 850-580-7200
F: 850-329-4861
E: hmurphy@stearnsweaver.com
E: lrussell@stearnsweaver.com

*Attorneys for Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of October, 2024, I electronically filed the foregoing with the Clerk of the Court and served via the Florida Courts E-Filing Portal to:

*John D. Levitan, Sr.*
511 Windrose Circle
Pensacola, FL 32507
jdlsr@gileadfraud.com
legal@gileadfraud.com

/s/ *Hannah Murphy*
Hannah Murphy

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| JOHN D. LEVITAN, SR.<br><br>Plaintiff,<br><br>v.<br><br>GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND<br><br>Defendants. | Case No. 24-cv- ______ |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendants Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland (collectively, "Removing Defendants"), by and through their undersigned counsel and pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, hereby remove the civil action entitled *Levitan v. Gilead Sciences, Inc. et al.*, pending in the Circuit Court of the First Judicial Circuit in and for Escambia County,

Case 3:24-cv-00450-TKW-ZCB  Document 1  Filed 10/23/24  Page 2 of 11

Florida, Case No. 2024-CA-001164, to the United States District Court for the Northern District of Florida.[1]

As required by 28 U.S.C. § 1446(a), a short and plain statement of the grounds for removal is set forth below:

1. On September 2, 2024, Plaintiff commenced this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida. As required by 28 U.S.C. § 1446(a), attached hereto as **Exhibit 1** are true and correct copies of all process, pleadings, orders, and other papers or exhibits filed in the state court prior to removal.

2. On September 16, 2024 Plaintiff personally served defendants Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, and Thomas P. Kurland (hereinafter the "PBWT Defendants") by delivering a copy of the summons and complaint in this action to their usual place of business.

---

[1] By invoking their right to remove this diversity action to this court, Removing Defendants do not waive and hereby expressly preserve any defenses, objections, or responsive pleadings which are or may become available to them under state or federal law, including but not limited to Removing Defendants' right to seek dismissal of some or all of Plaintiff's claims for failure to state a claim, collateral estopped, *res judicata*, or any other applicable grounds.

3. Removal is therefore timely because fewer than 30 days have elapsed since the PBWT Defendants were served in this action. *See* 28 U.S.C. § 1446(b)(1) (notice of removal "shall be filed within 30 days" of service upon any defendant).

4. As of the date of this Notice, Plaintiff has not completed service upon defendants Gilead Sciences, Inc., Gilead Ireland UC, or Joshua Stein. As such, because these defendants have not been "properly joined and served," they need not consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A).[2]

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because, as set forth below, this suit is between "citizens of different States," and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

6. At the time Plaintiff John D. Levitan Sr. commenced this civil action and at all times since, he has been, on information and belief, "an individual residing at 511 Windrose Circle, Pensacola, Florida 32507 in Escambia County, Florida." *See* Compl. ¶ 1. Plaintiff is therefore a citizen of Florida for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1)

---

[2] Defendant Joshua Stein, a former associate attorney at Patterson Belknap Webb & Tyler LLP who is no longer employed by the firm, has not been properly served in this action because the PBWT Defendants have not been authorized to accept service on his behalf. He therefore *expressly preserves* the defense of improper service. However, he is being represented in this action by the undersigned and nevertheless consents to this removal.

Case 3:24-cv-00450-TKW-ZCB Document 1-1 Filed 10/23/24 Page 4 of 11

7. At the time Plaintiff commenced this civil action and at all times since, defendant Gilead Sciences, Inc. has been, on information and belief, a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business in Foster City, California, and Plaintiff does not allege otherwise. *See e.g.*, Compl. ¶ 2. Defendant Gilead Sciences, Inc. is therefore a citizen of the states of Delaware and California for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c).

8. At the time Plaintiff commenced this civil action and at all times since, defendant Gilead Sciences Ireland UC has been, on information and belief, a foreign corporation organized and existing under the laws of Ireland that maintains its principal place of business in Cork, Ireland, and Plaintiff does not allege otherwise. *See, e.g.*, Compl. ¶ 3. Defendant Gilead Sciences Ireland UC is therefore a citizen of Ireland for purposes of diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a)(4); 1332(c)(1).

9. At the time Plaintiff commenced this civil action and at all times since, defendant Patterson Belknap Webb & Tyler LLP, a law firm, has been a limited liability partnership organized and existing under the laws of New York that maintains its principal place of business in New York, New York, and Plaintiff does not allege otherwise. *See e.g.*, Compl. ¶ 4. Defendant Patterson Belknap Webb & Tyler LLP's partnership is comprised of natural persons who are themselves citizens



15298920v.1

of the states of New York, New Jersey, Connecticut, and Pennsylvania. Defendant Patterson Belknap Webb & Tyler LLP is therefore a citizen of New York, New Jersey, Connecticut and Pennsylvania for purposes of diversity jurisdiction. *See, e.g.*, *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004) (*citing Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)) ("[F]or purposes of diversity of citizenship, a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens.")

10. At the time Plaintiff commenced this civil action and at all times since, defendant Geoffrey Potter has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in New York, New York. Defendant Geoffrey Potter is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

11. At the time Plaintiff commenced this civil action and at all times since, defendant Timothy Alan Waters has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in Brooklyn, New York. Defendant Timothy Alan Waters is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

12. At the time Plaintiff commenced this civil action and at all times since, defendant Aron Fischer has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in Brooklyn, New York. Defendant Aron Fischer is

Case 3:26-cv-01457-TKW-ZCB Document 1-1 Filed 02/27/26 Page 6 of 873

therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

13. At the time Plaintiff commenced this civil action and at all times since, defendant Thomas P. Kurland has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in New York, New York. Defendant Thomas P. Kurland is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

14. At the time Plaintiff commenced this civil action and at all times since, defendant Joshua Stein has been a natural person residing in Brooklyn, New York. Defendant Joshua Stein is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

15. Accordingly, because Plaintiff is a citizen of the State of Florida and Defendants are variously citizens of the States of California, Delaware, New York, New Jersey, Connecticut, and Pennsylvania, and the sovereign foreign nation of Ireland, the parties are "citizens of different States and citizens or subjects of a foreign state," thereby satisfying the requirement for complete diversity of citizenship amongst Plaintiff and Defendants. *See* 28 U.S.C. § 1332(a).

16. Additionally, the amount in controversy in this action—as pled—plausibly exceeds $75,000, exclusive of interest and costs. *See* 28 USC § 1332(a). Plaintiff alleges that "the damages subject of this action exceeds $50,000," Compl.

¶ 12, and asserts various tort-based causes of action arising from claimed violations of his constitutional rights (*see* Count I, Count II, and Count III) and defamation (Count IV and Count V). For each count, Plaintiff seeks compensation for, *inter alia* "invasion of privacy," "damage to reputation" and "emotional distress," and "demands judgment for damages [and] punitive damages." *See* Compl. ¶¶ 32, 35, 38, 42, 20[3]. Such claims are sufficient to satisfy the jurisdictional threshold for purposes of invoking diversity jurisdiction. *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("a notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

17. In addition, this Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 because, as set forth below, this action "aris[es] under the Constitution, laws, or treaties of the United States" and such other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

18. The crux of Plaintiff's complaint is that he was injured as a result of Defendants' prosecuting a civil anti-counterfeiting case against him in the United

---

[3] After paragraph 42, the numbering of paragraphs in the Complaint returns to paragraph 17. This reference to paragraph 20 is in Count V of the Complaint.

States District Court for the Eastern District of New York, and Defendants' subsequent execution of a civil seizure at Plaintiff's residence. *See* Compl. ¶¶ 14, 17-24. Both the underlying Eastern District anti-counterfeiting action and the civil seizure order against Plaintiff arising therefrom are expressly creatures of federal law which give rise to federal question jurisdiction. *See generally Gilead Sciences Inc. v. Safe Chain Solutions LLC*, Case No. 21-cv-4106 (Dkt. No. 629) (attached as **Exhibit 2**); *see also* 15 U.S.C. § 1116(d). Moreover, the same federal law provides the exclusive remedy for tort claims like the ones Plaintiff now asserts. *See* 15 USC § 1116(d)(11). As such, this Court also has federal question jurisdiction in this case. *See* 28 U.S.C. § 1331.[4]

19. This action is properly removed to the United States District Court for the Northern District of Florida, and venue is proper in this District, because this District embraces the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida, where this action was filed. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 89(a).

---

[4] Precisely because the subject matter of this case is so intertwined with the existing Eastern District of New York anti-counterfeiting action, Removing Defendants intend promptly upon removal to move to transfer this action to Judge Donnelly of the Eastern District of New York, and to stay all proceedings in herein while that transfer is pending. Thereupon Removing Defendants intend to seek dismissal of this action expressly reserve all rights and defenses in that regard.

20. Pursuant to 28 U.S.C. § 1446(d), written notice of removal of this action will be promptly served upon Plaintiff and a Notice of Removal to Federal Court will be filed with the Clerk of the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida.

21. Should any question arise as to the propriety of this removal, Removing Defendants respectfully request the opportunity to brief and argue any disputed issues.

WHEREFORE, Removing Defendants give notice that the matter captioned *John D. Levitan Sr. v. Gilead Sciences Inc., et al.,* Case No. 2024-CV-001164, now pending in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida be the same and is hereby removed to the United States District Court for the Northern District of Florida, and request that this Court retain jurisdiction for all further proceedings in this matter.

Dated: Miami, Florida
October 3, 2024

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON

By: */s/ Hannah Murphy*

Jay B. Shapiro
Florida Bar No. 776361
150 West Flagler Street, Suite 2200
Miami, FL 33130
T: 305-789-3200
F: 305-789-2664
E: jshapiro@stearnsweaver.com

*and*

Hannah Murphy
Florida Bar No. 1032759
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON
106 East College Avenue, Suite 700
Tallahassee, Florida 32301
T: 850-580-7200
F: 850-329-4861
E: hmurphy@stearnsweaver.com

*Attorneys for Defendants Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 3rd day of October, 2024, I electronically filed the foregoing with the Clerk of the Court, and served via Federal Express to any pro se litigants.

s/ *Hannah Murphy*
Hannah Murphy
Florida Bar No. 1032759

**<u>CERTIFICATE OF WORD COUNT</u>**

Pursuant to Northern District of Florida Rule 7.1(F), I HEREBY CERTIFY that the foregoing Response, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 2,153 words as measured by Microsoft Office for Word.

Filing # 208934427 E-Filed 10/16/2024 04:04:08 PM

,1 7+( &,5&8,7 &2857 2) 7+( 167-8' ,&,$/ &,5&8,7
,1 $1' )25 (6&$0%,$ &2817<, )/25,'$

| | |
|---|---|
| **-2+1 ' /(9,7$1 65** | &DVH 1R: **2024 &$ 001164** |
| 3ODLQWLII/3HWLWLRQHU | |
| YV. | |
| ***,/($' 6&,(1&(6 ,1&,(7$/.** | $)),'$9,7 2) 6(59,&( 2) |
| 'HIHQGDQW/5HVSRQGHQW | **6800216; &203/$,17** |

5HFHLYHG E\ **-HIIUH\ $EUDQWHV**, RQ WKH **13WK GD\ RI 2FWREHU, 2024 DW 12:06 30** WR EH VHUYHG XSRQ ***LOHDG 6FLHQFHV ,QF.** DW **333 /DNHVLGH 'U, )RVWHU &LW\, 6DQ 0DWHR &RXQW\, &$ 94404**.
2Q WKH **14WK GD\ RI 2FWREHU, 2024 DW 10:51 $0**, ,, **-HIIUH\ $EUDQWHV**, 6(59(' ***LOHDG 6FLHQFHV ,QF.** DW **333 /DNHVLGH 'U, )RVWHU &LW\, 6DQ 0DWHR &RXQW\, &$ 94404** LQ WKH PDQQHU LQGLFDWHG EHORZ:

**&25325$7( 6(59,&(**, E\ SHUVRQDOO\ GHOLYHULQJ **1** FRS\(LHV) RI WKH DERYH OLVWHG GRFXPHQWV WR WKH QDPHG &RUSRUDWLRQ, E\ VHUYLQJ **'DLV\ :LOVRQ**, RQ EHKDOI RI VDLG &RUSRUDWLRQ.
7+( '(6&5,37,21 2) 7+( 3(5621 :,7+ :+20 7+( &23< 2) 7+,6 352&(66 :$6 /()7 ,6 $6 )2//2:6:
**, GHOLYHUHG WKH GRFXPHQW WR 'DLV\ :LOVRQ ZKR LGHQWLILHG WKHPVHOYHV DV WKH FOHUN ZLWK LGHQWLW\ FRQILUPHG E\ VXEMHFW VWDWLQJ WKHLU QDPH. 7KH LQGLYLGXDO DFFHSWHG VHUYLFH E\ UHIXVLQJ WR WDNH GRFXPHQW DQG DOO OHJDO GRFXPHQW PXVW EH GLUHFWHG WR 309 YHORFLW\ ZD\ IRVWHU FLW\ (GRFXPHQW OHIW,VHHQ E\ VXEMHFW). 7KH LQGLYLGXDO DSSHDUHG WR EH D EODFN-KDLUHG $VLDQ IHPDOH FRQWDFW 55-65 \HDUV RI DJH, 5'6"-5'8" WDOO DQG ZHLJKLQJ 180-200 OEV.**

6HUYLFH )HH 7RWDO: **$75.00**

3HU 28 8.6.&. § 1746, , GHFODUH XQGHU SHQDOW\ RI SHUMXU\ XQGHU WKH ODZV RI WKH 8QLWHG 6WDWHV RI $PHULFD WKDW WKH IRUHJRLQJ LV WUXH DQG FRUUHFW.

| 1$0(: | [signature] | 551 | 10/16/2024 |
|---|---|---|---|
| | -HIIUH\ $EUDQWHV | 6HUYHU ,' # | 'DWH |



5():**2024 &$ 001164**

7UDFNLQJ #: **0146061383**

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**
PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**
DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.
DEFENDANT,

**SUMMONS**

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **GILEAD SCIENCES INC 333 LAKESIDE DRIVE FOSTER CITY, CA 94404**

Each defendant is hereby required to serve written defenses to said complaint on plaintiff's attorney(s), whose address is

**JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**
PAM CHILDERS
CLERK OF THE CIRCUIT COURT
By: ______________________
Deputy Clerk

CLERK OF THE CIRCUIT COURT ESCAMBIA COUNTY, FLORIDA

* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days.

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D LEVITAN SR**
PLAINTIFF,

Vs.

CASE NO: **2024 CA 001164**
DIVISION: **N-CIVIL**

**GILEAD SCIENCES INC** ,et al.
DEFENDANT,

## SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **GILEAD SCIENCES INC 333 LAKESIDE DRIVE FOSTER CITY, CA 94404**

Each defendant is hereby required to serve written defenses to said complaint on plaintiff's attorney(s), whose address is

**JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **5th day of September, 2024**
PAM CHILDERS
CLERK OF THE CIRCUIT COURT
By: [signature]
Deputy Clerk

CLERK OF THE CIRCUIT COURT ESCAMBIA COUNTY, FLORIDA

* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days.

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**NOTICE OF REMAND FROM FEDERAL COURT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Notice and Order of the United States District Court for the Eastern District of Florida for lack of jurisdiction. The Memorandum and Order are attached.

Dated: October 6, 2025

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing and attached were filed by using the Florida electronic filing system and all parties were provided copies through that system on this 6th day of October 2025.

John D. Levitan, *pro se*

Filing # 233345781 E-Filed 10/09/2025 05:25:28 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________________/

**NOTICE OF APPERANCE OF JEREMY C. BRANNING, ESQ.,
AND JACOB F. BARNES, ESQ., ON BEHALF OF DEFENDANTS**

PLEASE TAKE NOTICE that Jeremy C. Branning, Esq., and Jacob F. Barnes, Esq., of the law firm of Clark Partington, enter their appearance as co-counsel of record for Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, an Individual, and request that copies of all pleadings, notices, and other papers filed herein be served on the undersigned.

Pursuant to Florida Rule of General Practice and Judicial Administration 2.516(b)(1)(A), the undersigned designate the following primary and secondary email addresses for email service in the above-referenced case:

Primary e-mail address: jbranning@clarkpartington.com
jbarnes@clarkpartington.com

Secondary e-mail adresses: pmimperial@clarkpartington.com
jdallman@clarkpartington.com

*/s/ Jacob F. Barnes*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished to the following via Florida Eportal service this 9th day of October, 2025:

John D. Levitan, Sr. *pro se*
511 Windrose Circle
Pensacola, FL 32507
jdlsr@gileadfraud.com
legal@gileadfraud.com

*/s/ Jacob F. Barnes*
JACOB F. BARNES

Filing # 233484326 E-Filed 10/13/2025 11:12:47 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________________/

**NOTICE OF AGREEMENT ON DEFENDANTS'**
**DEADLINE TO RESPOND TO FIRST AMENDED COMPLAINT**

PLEASE TAKE NOTICE that Plaintiff, JOHN D. LEVITAN, SR., and undersigned counsel for Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership (misspelled "Belknapp" by Plaintiff and incorrectly identified by including commas in the firm name), GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, an Individual (collectively "Defendants"), conferred via electronic mail on Friday, October 10, 2025, and agree for Defendants to respond to Plaintiff's First Amended Complaint by October 29, 2025.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished to the following via Florida E-portal this 13th day of October, 2025.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**

Filing # 233645293 E-Filed 10/14/2025 08:53:04 PM

# John D. Levitan, Sr.

October 14, 2025

VIA ELECTRONIC MAIL

The Honorable Jennifer J. Frydrychowicz
Circuit Court Judge
M.C. Blanchard Judicial Building
190 W. Government Street
Pensacola, FL 32502
Hayley.Faulkner@flcourts1.gov

RE: John D. Levitan, Sr. v. Gilead Sciences, Inc., et al., Case No. 2024 CA 001164
Objection to Substitution of Counsel

Dear Judge Frydrychowicz:

I have just received a letter and proposed Order from Jeremy Branning via email for Substitution of Counsel in the above case.

I must object to the Substitution of Counsel of Clark Partington ("CPH") as CPH represented me on some litigation relating to one of my former companies. In the process of that representation, I provided attorney client information to CPH that was not only for the company, that had the retention agreement with CPH, but also other companies affiliated or related to that representation. In addition significant personal and financial information was disclosed that would prejudice me in this case, and in my view would be a conflict of interest to CPH in the representation of the parties adverse to me in this case.

During that prior representation, the substituting counsel obtained confidential, privileged, and personal information through attorney-client communications, including but not limited to litigation strategy, financial records, and other sensitive matters directly relevant to the present action as the present action is to me individually.

The Florida Supreme Court has repeatedly held that disqualification or denial of substitution is required where a lawyer, or firm, had access to confidential information during a prior representation that could materially prejudice the former client. See, e.g., *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991).

CPH representing the Defendants would have prejudicial effect as the information disclosed was disclosed in the course of an attorney client relationship not only with the company that was represented by CPH but also me personally.

I will be filing a formal motion objecting to the substitution of counsel. I have discussed this conflict via email with Mr. Branning and advised him of my objections.

511 Windrose Circle • Pensacola, FL. 32507
Telephone: +1 (850) 497-2724 • Email: jdlsr@johnlevitan.com • URL: www.johnlevitan.com

John D. Levitan, Sr.

I would respectfully request that the Court deny the Motion for Substitution of Counsel.

Respectfully submitted,

JOHN D. LEVITAN, SR.

cc: Jeremy Branning, Esq.

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________________/

**DEFENDANTS' MOTION TO SUBSTITUTE COUNSEL OF RECORD**

Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership (misspelled "Belknapp" by Plaintiff and incorrectly identified by including commas in the firm name), GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, an Individual (collectively "Defendants"), move to substitute Jeremy C. Branning, Esq., and Jacob F. Barnes, Esq., of the law firm of Clark Partington in place of Jay B. Shapiro, Esq., and Hannah Murphy, Esq., and the law firm of Stearns Weaver Miller Weissler Alhadeff & Sitterson ("Previous Counsel"), pursuant to Florida Rule of General Practice and Judicial Administration 2.505, and state the following in support:

1. Plaintiff filed his Original Complaint on September 2, 2024, alleging claims for illegal search and seizure, violation of privacy rights, violation of free speech and association rights, libel, and slander against the Defendants arising from a case involving Plaintiff conspiring to distribute counterfeit HIV medicine in Case No.: 21-cv-4106 *styled Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, proceeding in the United States District Court for the Eastern District of New York.

2. Defendants timely removed the case to the United States District Court for the Northern District of Florida on October 3, 2024.

3. On October 7, 2024, Defendants filed a Motion to Stay and Transfer Proceedings from the Northern District of Florida to the Eastern District of New York.

4. During the court proceedings in the Eastern District of New York, Plaintiff amended his Complaint on November 15, 2024, containing almost identical statement of facts, however, it removed the federal constitutional claims and added allegations that his damages are approximately $70,000 so the jurisdictional threshold for diversity jurisdiction in federal court is no longer satisfied.

5. On September 30, 2025, the Eastern District of New York remanded the instant case to the First Judicial Circuit of Florida because Plaintiff's First Amended Complaint no longer supported diversity jurisdiction or federal question jurisdiction based the United States Supreme Court's recent decision in *Royal Canin U.S.A. Inc. v. Wullschleger,* 604 U.S. 22 (2025).

6. Defendants elect to substitute their counsel in this matter for further handling before this Court.

7. Defendants' Previous Counsel consent to the substitution of counsel going forward.

8. Subsititon of counsel will not prejudice any party or negatively affect any case deadlines or pending matters in this case as the case was recently remanded to the First Judicial Circuit of Florida and no case management order or order setting trial and pretrial conference has been entered.

WHEREFORE, Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, request this Court to enter an order granting this Motion to Substitute Jeremy C. Branning, Esq., Jacob F. Barnes, Esq., and Clark Partington in place of Jay B. Shapiro, Esq., Hannah Murphy, Esq., and the law firm of Stearns Weaver Miller Weissler Alhadeff & Sitterson for Defendants and directing service of all pleadings to be served to the addressed contained in the undersigned's signature block for email service in the above-referenced case and award any other relief as deemed just and proper.

**CERTIFICATE OF CONFERRAL**

I, Jeremy C. Branning, hereby certify that on October 10, 2025, prior to filing this motion, I communicated with Plaintiff via email sent to each primary email address listed for Plaintiff in this case, who is *pro se*, to discuss the relief requested in the motion and requesting an agreed date of October 29, 2025, for Defendants to file their response to the First Amended Complaint due to the recent remand of this case from the United States District Court for the Eastern District of New York. I certify that I received responses from two of the primary email accounts for Plaintiff. The email account legal@invictusholdings.us with the signature block "Office General Counsel" replied "Sure Jeremy go ahead and I'm fine with both" in response to the relief requested in this motion and a proposed deadline of October 29, 2025, for defendants to file their response to the First Amended Complaint.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

*/s/ Hannah Murphy*
**JAY B. SHAPIRO**
Florida Bar No.: 776361
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON
150 West Flagler Street, Suite 2200
Miami, FL 33130
Phone: (305) 789-3200
Fax : (305) 789-2664
P/E : jshapiro@stearnsweaver.com

**HANNAH MURPHY**
Florida Bar No.: 1032759
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON
106 East College Avenue, Suite 700
Tallahassee, FL 32301
Phone: (850) 580-7200
Fax : (305) 329-4861
P/E : hmurphy@stearnsweaver.com
*Attorneys for Defendants*

## REQUEST AND CONSENT

I, Lori F. Mayall, Esq., Sr. Associate General Counsel, IP for and on behalf of GILEAD SCIENCES, INC. and GILEAD SCIENCES IRELAND UC (collectively the "Gilead Defendants") request and consent to the substitution of Jeremy C. Branning, Jacob F. Barnes, Esq., and the law firm of Clark Partington in place of Jay B. Shapiro, Esq., and Hannah Murphy, Esq., and the law firm of Stearns Weaver Miller Weissler Alhadeff & Sitterson as counsel of record for Gilead Defendants in this case as required by Fla. R. Gen. Prac. Jud. Admin. 2.505(e)(3).

GILEAD DEFENDANTS

DATE: October 14, 2025

BY: Lori F Mayall

ITS: Sr. Associate General Counsel, IP

**REQUEST AND CONSENT**

I, Frederick B. Warder, III, as Co-General Counsel/Authorized Signatory, for and on behalf of PATTERSON BELKNAP WEBB AND TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, and THOMAS P. KURLAND (collectively the "PBWT Defendants") request and consent to the substitution of Jeremy C. Branning, Jacob F. Barnes, Esq., and the law firm of Clark Partington in place of Jay B. Shapiro, Esq., and Hannah Murphy, Esq., and the law firm of Stearns Weaver Miller Weissler Alhadeff & Sitterson as counsel of record for Defendants in this case as required by Fla. R. Gen. Prac. Jud. Admin. 2.505(e)(3).

PBWT DEFENDANTS

DATE: 10/13/25

BY: Frederick B. Warder III

ITS: Co-General Counsel/Authorized Signatory

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished to the following via Florida E-portal this 14th day of October, 2025.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**

First Circuit Court
Escambia County
Case No. 2024-CA-001164

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**JOHN D. LEVITAN, SR.,**

Plaintiff,

– against –

**GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND,**

Defendants.

**MEMORANDUM AND ORDER**

25-CV-393 (AMD) (JAM)

PAM CHILDERS
CLERK & COMPTROLLER
FILED
2025 OCT 16 A 10: 21
ESCAMBIA COUNTY, FL

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action alleging violations of the Florida Constitution and common law defamation claims. The plaintiff asserts these claims against Gilead Sciences, Inc. and Gilead Sciences Ireland UC ("Gilead"), a pharmaceutical company that has sued the plaintiff in this Court for conspiring to sell counterfeit Gilead medication, and Patterson Belknap Webb & Tyler LLP and lawyers at the firm ("PBWT"), who represent Gilead in that related suit. The plaintiff initiated this case in Florida state court, the defendants removed it to the Northern District of Florida, and that court transferred it here pursuant to 28 U.S.C. § 1404.

Before the Court are two motions: the plaintiff's motion either to transfer the case back to the Northern District of Florida for that court to reconsider its decision denying the plaintiff's motion to remand based on an intervening change in law or to remand directly, and the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the plaintiff's motion to transfer the case back to the Northern District of Florida is denied. However, the Court does not have subject matter jurisdiction over the

plaintiff's claims, so the case is remanded to the Florida state court, where the case was filed originally. The Court does not have jurisdiction to decide the defendants' motion to dismiss.

## BACKGROUND[1]

### I. Factual Background

In the summer of 2021, Gilead, represented by PBWT, sued various defendants for conspiring to distribute counterfeit Gilead-branded HIV medicine. (*Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.) ("*Gilead*"), ECF No. 1.) As the case developed, Gilead identified other members of the alleged conspiracy, including the plaintiff in this action, John Levitan, and amended the complaint to include them as defendants and add allegations about their roles in the scheme. (*See, e.g.*, *id.* ECF No. 607 (the plaintiffs' motion to amend the complaint to add Levitan, among others); *id.* ECF No. 630 (Fourth Amended Complaint, naming Levitan as a defendant).)

On August 11, 2022, pursuant to 15 U.S.C. § 1116(d), the Court entered an asset freeze order, a temporary restraining order, and a seizure order against the plaintiff, as well as other named defendants in *Gilead*. (*See id.* ECF Nos. 627, 628, 629.) About a week later, PBWT executed the seizure order at the plaintiff's home in Pensacola, Florida. (*See id.* ECF Nos. 687, 748, 823; *see* ECF No. 26 ¶¶ 17–21.)

The plaintiff's claims arise out of the defendants' allegations in the fourth amended complaint in *Gilead* and the defendants' execution of the seizure order. (*See* ECF No. 30, Transfer Order, at 9–23.) In his amended complaint, the plaintiff asserts Florida state law claims. He maintains that some of the allegations in the defendants' complaint were defamatory

[1] The history of this case is long and contentious. The Court assumes familiarity with the related case *Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.), and discusses only the facts necessary to reach its decision.

and violated the plaintiff's rights to free speech and association under Article I, §§ 4 and 5 of the Florida Constitution. (ECF No. 26 ¶¶ 15, 27–29, 36–42; *id.* at 9–10; ECF No. 26-1 at 1–7; *Gilead*, ECF No. 630 ¶¶ 270–76.) The plaintiff further alleges that the execution of the seizure order was an unlawful search that violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution. (ECF No. 26 ¶¶ 17–26, 30–35.)

## II. Procedural Background

The parties have been litigating against each other in this Court for three years. (*See, e.g.*, *Gilead*, ECF Nos. 839, 1150, 1169, 1452–55, 1472–74; *Gilead, ECF Order dated Oct. 12, 2023 entered by then-Magistrate Judge Bulsara*; *Gilead, ECF Order dated Oct. 12, 2023 entered by Magistrate Judge Marutollo*.)

On September 2, 2024, the plaintiff filed this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida. (ECF No. 1-1.)[2] In his initial complaint, the plaintiff asserted the state law claims described above, as well as violations of the First and Fourth Amendments. (*Id.* ¶¶ 25–27.) The plaintiff also alleged that the "damages subject of this action exceeds $50,000.00." (*Id.* ¶ 12.) On October 3, 2024, the defendants removed the case to the Northern District of Florida, arguing that the court had diversity and federal question jurisdiction. (ECF No. 1.) The defendants maintained that the court had diversity jurisdiction because the parties were completely diverse and the amount in controversy "as pled[,] plausibly exceeds $75,000." (*Id.* ¶¶ 5–16.) The defendants also claimed that the court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the complaint alleged federal

[2] Citations to ECF are to the docket in this action. Citations to "N.D. Fl. ECF" are to the docket in *Levitan v. Patterson, Belknapp, Webb & Tyler, LLP, et. al*, No. 24-CV-475 (N.D. Fl.).

constitutional violation and that the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*Id.* ¶¶ 17–18.)

The defendants then moved to transfer the action to this court pursuant to 28 U.S.C. § 1404(a) and to stay the proceedings in the Northern District of Florida. (ECF No. 3.) They also asked that court to extend the deadline to respond to the complaint until it resolved their motion to transfer. (ECF No. 4.) The court extended the defendants' deadline to respond to the complaint until 10 days after the resolution of the motion to transfer. (ECF No. 5.)[3]

On October 21, the plaintiff moved to remand the case to Florida state court. (ECF No. 7.) He argued that removal was improper because the amount in controversy did not meet the jurisdictional threshold for diversity jurisdiction and that his claims did not present a federal question. (*Id.* at 5–7.) The defendants opposed. (ECF No. 18.)

On November 12, 2024, and while the transfer motion was pending, Magistrate Judge Zachary C. Bolitho of the Northern District of Florida issued a report and recommendation recommending that the district judge deny the motion to remand. (ECF No. 21.) Observing that the plaintiff "clearly cites to the U.S. Constitution for several of his claims," the court held that remand was unwarranted because the court had federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 3–4.) In addition, the court noted that "[b]ecause there is clearly federal question jurisdiction in this case, it is unnecessary to address whether diversity jurisdiction exists." (*Id.* at

[3] Gilead was served on October 14, 2024, after PBWT removed the case to federal court. (ECF No. 17 at 1–2.) Gilead appeared in the case, consented to removal (ECF No. 15), and joined PBWT's motion to transfer (ECF No. 16). Gilead also asked for the same extension of the deadline to respond to the complaint (ECF No. 17 at 2–3), which the court granted (ECF No. 19).

2 n.1.) Neither party objected to the report and recommendation, and the district court adopted it on December 31, 2024. (ECF No. 28.)

Although the plaintiff did not object to the magistrate judge's recommendation, he filed an amended complaint on November 15, 2024. (ECF No. 26.) The factual allegations in the amended complaint were almost identical to the original complaint. This time, however, the plaintiff removed the federal constitutional claims and added language that purports to cap his damages at $70,000. (*Compare* ECF No. 1-1 ¶¶ 25–27, 31, 34, 37 (alleging violations of the First and Fourth Amendments) *with* ECF No. 26 ¶¶ 25–27, 31, 34, 37 (alleging the same conduct without citing the federal constitution); *compare* ECF No. 1-1 ¶ 12, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000.00") *with* ECF No. 26 ¶ 11, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000 but is no greater than $70,000").) The defendants objected, calling the amended complaint "a naked and legally impermissible effort to plead this case out of federal court." (ECF No. 27 at 10.)[4] They maintained that there was still federal question jurisdiction because the plaintiff's claims "still directly raise and require resolution of issues of federal law under both the United States Constitution and the Lanham Act." (*Id.* at 12.) In the alternative, they maintained that the court had diversity jurisdiction, notwithstanding the plaintiff's "attempt to plead an amount in controversy below $75,000." (*Id.* at 14.)

On January 6, 2025, Judge Bolitho issued a thorough and well-reasoned opinion granting the defendants' motion to transfer the action to this Court. (ECF No. 30.) The court found that the "case could have been filed in the Eastern District of New York because it has subject matter

[4] The defendants do not argue that the amended complaint was procedurally improper under Federal Rule of Civil Procedure 15.

jurisdiction, personal jurisdiction, and is a proper venue for this action." (*Id.* at 5.) The court further explained that "[b]ecause the Court has already determined that subject matter jurisdiction existed at the time of removal, Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case." (*Id.* at 6.) The court observed that "[f]ederal courts have repeatedly rejected . . . clever attempts to destroy federal jurisdiction" by amending a pleading. (*Id.* at 6; *see also id.* at 6 n.2 (citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002).)

The court also analyzed the factors that guide Eleventh Circuit courts in determining whether to transfer a case under § 1404(a). (*Id.* at 9–23.) The court concluded that "[e]ach factor identified by the Eleventh Circuit either weighs in favor of transfer or is neutral." (*Id.* at 23.) Accordingly, the court "exercise[d] its broad discretion" and transferred the case to this Court. (*Id.*) Judge Bolitho directed the clerk of his court to transfer the case 15 days after the date of the order "unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline." (*Id.*) The plaintiff did not file an objection to the transfer order by January 21, 2025, and the case was transferred to this Court on January 23, 2025. (ECF No. 35.)[5]

On January 27, 2025 — after the case had been transferred and assigned a case number in this Court, after the defendants appeared, and after Magistrate Judge Joseph Marutollo issued a scheduling order — the plaintiff filed objections to Judge Bolitho's transfer order in the Northern District of Florida. (N.D. Fl. ECF No. 37.)[6] The plaintiff argued that the court should reconsider

[5] The Clerk of Court for the Northern District of Florida transferred the case prematurely on January 8, 2025. (*See* ECF Nos. 32–34.) The Clerk of this Court then "removed [the transferred case] from CM/ECF in the Eastern District of New York." In any event, the case was ultimately transferred to this Court on January 23, 2025 — two days after Judge Bolitho's deadline for the plaintiff to object to the order. (ECF No. 35.)

[6] The plaintiff called this filing a motion for reconsideration.

the transfer order in light of the Supreme Court's intervening decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), issued on January 15, 2025. (*Id.* at 1–6.) The plaintiff also filed a letter in which he explained that his objections were late because "the winter storm emergency" that affected wide swaths of the southern United States prevented him from filing his papers in person. (N.D. Fl. ECF No. 38 at 1.)[7] The plaintiff further noted that he had twice requested — and was twice denied — electronic filing privileges, and that he had emailed his objections to the defendants on January 21, 2025. (*Id.* at 1 n.1, 3–5.)

The defendants opposed the motion, arguing that the plaintiff "provide[s] no basis for [the Northern District of Florida] [to] undo the transfer of this case to the Eastern District of New York ('EDNY'), which already timely occurred on January 23, 2025." (N.D. Fl. ECF No. 39 at 2.) According to the defendants, the plaintiff did not "challenge any aspect of the Court's reasons for granting transfer pursuant to 28 U.S.C. § 1404(a)," and raised "entirely jurisdictional" objections. (*Id.*) On January 29, 2025, Judge M. Casey Rodgers of the Northern District of Florida held that she was divested of jurisdiction on January 23rd, when the case was transferred to this Court, and therefore could not consider whether the plaintiff's "objections should be allowed out of time or the underlying merits of his objections." (N.D. Fl. ECF No. 40 at 1–2.)

---

[7] Florida Governor Ron DeSantis declared a state of emergency in the state on January 20, 2025. *See* Fla. Exec. Order No. 25-13 (Jan. 20, 2025). The Court could not find any Northern District of Florida announcements about courthouse closures during this time, although the bankruptcy court in that district closed the Clerk's office in the Pensacola courthouse on January 21 and 22, 2025 because of the storm, and noted that unrepresented parties could file documents by email. *See Tallahassee and Pensacola Clerk's Offices Closing for Inclement Weather*, United States Bankruptcy Court Northern District of Florida (Jan. 20, 2025), https://www.flnb.uscourts.gov/news/tallahassee-and-pensacola-clerk%E2%80%99s-offices-closing-inclement-weather.

On January 31, 2025, the defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in this Court. (ECF No. 42.)[8] In a flurry of filings on February 13 and 14, 2025, the plaintiff moved to supplement the record from the Northern District of Florida to include his January 27th objections and his letter explaining the reasons for the delayed filing. (ECF No. 46.) He asked this Court to reconsider, pursuant to Federal Rule of Civil Procedure 59(e), the order denying remand and the transfer order, in light of *Royal Canin*. (ECF No. 47.) He also moved to remand the case (ECF No. 49), asked the Clerk enter default judgement against all defendants for failing to answer or respond to the amended complaint (ECF No. 50), and moved to strike the defendants motion to dismiss either as untimely or on the merits (ECF No. 51). The defendants opposed the plaintiff's motion to remand the case to state court, reconsider the Florida court's order, or to transfer it back to Florida federal court. (ECF No. 53). They also filed reply in further support of their motion to dismiss and opposing the plaintiff's motion to strike. (ECF No. 54.)[9]

## DISCUSSION

The plaintiff asks the Court to remand his case to Florida state court. (ECF No. 47 at 1, 4; ECF No. 49.) He suggests some procedural avenues to accomplish this goal. First, he asks this Court to transfer the case back to the Northern District of Florida for that court to reconsider its order denying the plaintiff's motion to remand. In the alternative, he asks this Court to reconsider Judge Bolitho's order denying remand or to remand the case itself. (ECF No. 47 at 4, 7; ECF No. 49 at 2.)

[8] The defendants also moved to stay discovery until the Court resolved the motion to dismiss. (ECF No. 43.) Judge Marutollo granted the stay on March 3, 2025. (*ECF Order dated Mar. 3, 2025 entered by Magistrate Judge Marutollo.*)

[9] The plaintiff's motion to supplement the record is denied as moot. The Court takes judicial notice of these filings and considers them in deciding the motions. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

**I. Motion to Transfer**

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Hatteras Enters. Inc. v. Forsythe Cosm. Grp., Ltd*, No. 15-CV-5887, 2016 WL 4083386, at *5 (E.D.N.Y. July 30, 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). That "doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Id.* at *4 (quoting *Sagendorf-Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)). The Second Circuit has not "directly endorsed a standard by which district court judges should exercise their discretion in revisiting the decisions of a transferor courts." *Id. See also SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 178 n.7 (2d Cir. 2000) ("A district court considering a retransfer motion might be limited by 'law of the case' principles, at least in the absence of changed circumstances."). Moreover, it is well-settled that "courts should be loathe to revisit prior decisions of a coordinate court unless there are extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Torres v. Universal Music Grp. N.V.*, No. 24-CV-5323, 2024 WL 3429444, at *1 (S.D.N.Y. July 16, 2024) (quoting *Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *7 (S.D.N.Y. Mar. 23, 2023)). "[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Hatteras Enters. Inc.*, 2016 WL 4083386, at *5 (quoting *SongByrd, Inc.*, 206 F.3d at 178 n.7).

The Court sees no reason to transfer the case back to the Northern District of Florida. Judge Bolitho committed no error in his determination that this case was related to *Gilead* under the relevant § 1404(a) factors and the controlling case law. (ECF No. 30 at 9–23.) Even if the

Court had disagreed with the Judge Bolitho's analysis, the policy reasons that favor application of the law of the case doctrine would persuade the Court that retransfer is inappropriate in this case. *See, e.g.*, *U.S. Bank N.A. v. Bank of Am. N.A.*, 916 F.3d 143, 153 (2d Cir. 2019) (affirming district court holding that a coordinate court's transfer order was law of the case where there was "no clear error in that ruling").

More fundamentally, and as detailed below, "[s]ince this court lacks subject matter jurisdiction over the instant matter, no order transferring the case may be issued." *Leeds, Morelli & Brown, P.C. v. Hernandez*, 2005 WL 2148994, at *3 (E.D.N.Y. Sept. 6, 2005) (collecting cases). Indeed, the Court's conclusion that it lacks subject matter jurisdiction further confirms that transferring the case back to the Northern District of Florida would risk a "perpetual game of jurisdictional ping-pong," *U.S. Bank N.A.*, 916 F.3d at 152 (quoting *Christianson*, 486 U.S. at 816), which is particularly unnecessary given that this Court is "equally capable of hearing and deciding" questions of federal court jurisdiction, *Pace v. Quintanilla*, No. 13-CV-91, 2013 WL 5405563, at *5 (S.D.N.Y. Sept. 23, 2013).

Accordingly, the plaintiff's motion to transfer is denied.

## II. Motion to Remand

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If a statute confers federal jurisdiction over a suit, not only the plaintiff but also the defendant can get it into federal court," by removing the case pursuant to §§ 1441(a) and 1446. *Royal Canin*, 604 U.S. at 27.

After a defendant removes a case, a plaintiff may move to remand it back to state court. 28 U.S.C. § 1447(c). "If the federal court lacks subject-matter jurisdiction, it must grant the motion to remand." *Mohadeb v. Credit Corp Sols. Inc.*, No. 22-CV-5017, 2022 WL 17832856, at *1 (E.D.N.Y. Dec. 21, 2022). "The removing defendant has the burden of establishing federal jurisdiction." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).

In addition, the Court must always confirm its own jurisdiction over a removed action. *See United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Regardless of whether a plaintiff moves to remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Whether styled as a motion to reconsider or a motion to remand, the plaintiff claims that the Supreme Court's opinion in *Royal Canin* requires remand because the district court does not have subject matter jurisdiction. (*See, e.g.*, ECF No. 47 at 2–5.)[10] The plaintiff argues that *Royal Canin* permits him to amend the complaint to remove federal questions so that the federal court does not have subject matter jurisdiction; then, the plaintiff says, the Court must remand the case. (*Id.*) The defendants respond that *Royal Canin* does not apply because the Court has

---

[10] The Supreme Court decided *Royal Canin* after Judge Bolitho denied the plaintiff's motion to remand to the state court. For this reason, the Court declines to treat the Judge Bolitho's decision as the law of the case. *See, e.g.*, Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.4 (3d ed.) ("Following a § 1404(a) transfer, the receiving court should treat pre-transfer rulings by the transferring court in much the same way as one district judge treats the rulings of a colleague."). Moreover, "[t]he Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Fersel v. Paramount Med. Servs., P.C.*, No. 18-CV-2448, 2022 WL 14813738, at *2 (E.D.N.Y. Oct. 26, 2022) (citation omitted); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .").

federal question jurisdiction over the amended complaint. (ECF No. 53 at 6–11.) The defendants also maintains that the Court has diversity jurisdiction. (*Id.* 11–13.)

**a. *Royal Canin***

In *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025), decided earlier this year, the Supreme Court held that when a plaintiff "amends her complaint to delete all the federal-law claims, leaving nothing but state-law claims behind," the federal court no longer has jurisdiction over the case, which must "return to state court." In her first complaint, Wullschleger claimed that Royal Canin's marketing tricked her into buying expensive dog food. *Id.* at 28. She asserted claims under the Missouri Merchandising Practices Act and state antitrust law. *Id.* As part of these claims, she alleged that Royal Canin violated a federal statute. *Id.* Accordingly, although the complaint asserted no federal claims, it raised an embedded a federal question. *Id.* at 28 n.1 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Royal Canin removed the case to federal court, invoking the court's federal question jurisdiction and supplemental jurisdiction. *Id.* at 28–29. Wullschleger moved to remand, which the court denied. *Id.* at 28 n.1. Then, she amended her complaint, deleting any mention of the federal statute, and moved to remand again. *Id.* at 29. The district court denied that motion, too. The Eighth Circuit reversed, reasoning that the amended complaint "[supersedes] an original complaint and renders the original complaint without legal effect." *Id.* (alteration in original) (quoting *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922 (8th Cir. 2023)).

The Supreme Court unanimously agreed. The Court held that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Id.* at 30. Put another way, "[t]he reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's

jurisdiction." *Id.* at 35–36. If "[t]he operative pleading no longer supports federal jurisdiction," then "the federal court must remand the case to the state court where it started." *Id.* at 39. Once a "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Id.* at 30. Accordingly, the Supreme Court held, the district court lacked jurisdiction over the purely state-law claims in the operative complaint — that is, the amended complaint — and was required to remand the case. *Id.* at 38.

The Court rejected Royal Canin's claim that "[t]he amendment of a complaint following removal of a suit to federal court cannot divest that court of supplemental jurisdiction." *Id.* at 32. To the contrary, the Supreme Court stated, "changes in parties, or changes in claims, effectively remake the suit," including "its jurisdictional basis." *Id.* at 35. Justice Kagan, writing for the Court, explained that "result accords with Congress's usual view of how amended pleadings can affect jurisdiction." *Id.* at 34. The Court observed, for example, that "an amendment can either destroy or create jurisdiction in an original diversity case," as "add[ing] a non-diverse party in such a case typically destroys diversity jurisdiction, requiring the case's dismissal." *Id.* at 37 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374–377 (1978)).

The Court did, however, note one category of amendments that is exempt from this rule: amendments that change "factual issue[s] relevant to jurisdiction." *Id.* at 37 n.8. Within this category is "an amendment reducing the alleged amount-in-controversy to below the statutory threshold," which "will usually not destroy diversity jurisdiction." *Id.* Because "the rule more concerns a fact on the ground," in this case "the value of a suit," it is "analogous to the time-of-filing rule applying to citizenship." *Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294–295 (1938)); *Rosado v. Wyman*, 397 U.S. 397, 405, n. 6 (1970)); *see also id.* at 36 n.5 (distinguishing the "so-called time-of-filing rule," "which evaluates a party's

citizenship (*e.g.*, whether the defendant is in fact from New York) at the time a suit is brought," and "concerns only the actual 'state of things' relevant to jurisdiction"). Accordingly, the Court suggested the amount in controversy should still be calculated as of the time a plaintiff files the original complaint.

**b. The Northern District of Florida's Decision on Subject Matter Jurisdiction**

On November 12, 2024, Judge Bolitho recommended that the district judge deny the plaintiff's motion to remand. (ECF No. 21.) At that time, the operative complaint was the original complaint, which included the explicit references to the First and Fourth Amendments. Judge Bolitho held that there was federal question jurisdiction because the plaintiff "clearly cites to the U.S. Constitution for several of his claims." (*Id.* at 3.) Judge Bolitho found that it was unnecessary to address whether there was diversity jurisdiction exists "[b]ecause there is clearly federal question jurisdiction in this case." (*Id.* at 2 n.1.)

Shortly thereafter, the plaintiff amended his complaint, "deleting every mention of federal law," just as the *Royal Canin* plaintiff did. (ECF No. 26; *Royal Canin*, 604 U.S. at 22 (Syllabus).) The defendants' motion to transfer was still pending when the plaintiff filed his amended complaint.

Judge Bolitho granted the defendants' transfer motion on January 6, 2025, a week before the Supreme Court published *Royal Canin*. In deciding that motion — and specifically whether the case "could have been filed in the Eastern District of New York because it has subject matter jurisdiction" — the court considered whether the plaintiff's amendment affected its jurisdiction. (ECF No. 30 at 5.)

Following then-binding circuit precedent, which was unquestionably good law before *Royal Canin*, Judge Bolitho wrote:

> The Court has already determined that federal subject matter jurisdiction existed in this case at the time of removal. (Docs. 21, 28). Plaintiff, however, recently attempted to circumvent the Court's jurisdictional determination by filing an amended complaint that removes references to any federal claims and expressly seeks damages less than the $75,000 amount-in-controversy requirement. (*See* Doc. 26). Federal courts have repeatedly rejected such clever attempts to destroy federal jurisdiction. Because the Court has already determined that subject matter jurisdiction existed at the time of removal (Docs. 21, 28), Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case.

(*Id.*)

Judge Bolitho relied on three cases: *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002), which "affirm[ed] the denial of remand where plaintiff 'amended the complaint to remove any federal cause of action' because the facts alleged in the amended complaint still 'fell within the scope of the federal causes of action' initially pleaded" (alteration adopted); *Collura v. City of Philadelphia*, 590 F. App'x 180, 184 (3d Cir. 2014), which "affirm[ed] denial of remand where plaintiff 'dropped his federal claims from his amended complaint' because 'federal jurisdiction cannot be defeated by amending a complaint to eliminate federal claims after removal'" (alteration adopted); and *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007), in which the Supreme Court observed in a footnote that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction . . . . But removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." (*Id.* at 5 n.2, 6 (emphasis in original).)

The *Royal Canin* Court addressed these cases, and noted that there was a circuit split on the question before the Court. *Collura* and *Behlen* were in circuits where the rule was "that a post-removal amendment cannot divest a federal court of jurisdiction." *Royal Canin*, 604 U.S. at

30, & n.3 (citing *Collura*, 590 F. App'x at 184, and *Behlen*, 311 F.3d at 1095). *Royal Canin* clearly abrogated these holdings. *See Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024) (Supreme Court decision abrogates circuit precedent if there is "a conflict, incompatibility, or inconsistency" between the decision and precedent (internal citation omitted)).

Justice Kagan also discussed *Rockwell* at length, explaining that it was consistent with the Court's reasoning in Royal Canin: "unless the withdrawn allegations [in an amended complaint] were 'replaced by others' giving the court adjudicatory power, the plaintiff's amendment 'will defeat jurisdiction.'" *Id.* at 36 (quoting *Rockwell*, 549 U.S. at 473); *see also id.* at 41 (*Rockwell* "examine[d] what happens in an original case when a plaintiff amends a complaint to expunge federal claims").

The Court also distinguished the footnote on which Judge Bolitho relied in the transfer order. Acknowledging that "[t]he footnote . . . sets out exactly the rule [the defendant] wants" — and the rule Judge Bolitho stated — the Court said that "the footnote is dictum, and [did] not control the outcome" in *Royal Canin*. *Id.* at 42. The Court did not have to "follow the *Rockwell* footnote just because it exists; [the Court's] adherence instead depends on whether it withstands analysis. And it does not." *Id.* at 43.

*Royal Canin*, thus, abrogated the central precedents on which Judge Bolitho relied in holding that this Court would have had federal jurisdiction over the case had it been brought in this district. Accordingly, the Court must evaluate whether it has subject matter jurisdiction over this case in light of *Royal Canin*. *See id.* at 34 ("[A]n amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion.").

Case 3:26-cv-01457-TKW-HTC Document 1-1 Filed 02/27/26 Page 93 of 873

### c. Federal Question Jurisdiction

The plaintiff maintains that *Royal Canin* controls this case. Because the plaintiff removed his references to federal law in the amended, now-operative complaint, he contends that the Court does not have federal question jurisdiction over the purely state-law claims in the amended complaint. (*See generally* ECF No. 47.) The defendants say that *Royal Canin* does not apply because the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else." (ECF No. 53 at 8 (emphasis in original).) Second, they assert that the state law claims in the amended complaint nonetheless arise under federal law because they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Id.* at 10 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).) Neither argument is persuasive.

"The federal district courts have 'original jurisdiction' of civil actions 'arising under' federal law; and unless otherwise provided by Congress, they have removal jurisdiction over 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting 28 U.S.C. §§ 1331, 1441(a)). Claims directly arise under "federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

As an initial matter, the defendants' argument that this case is distinguishable from *Royal Canin* because the plaintiff removed federal claims, not just references to federal law, is unconvincing. The relationship between federal law and state claims in *Royal Canin* is similar to

the one in this case. The *Royal Canin* complaint "alleged the [federal] violations not as independent federal claims, but instead in support of [the plaintiff's] state claims." *Royal Canin*, 604 U.S. at 29 n.1. The Eighth Circuit, citing *Gunn*, held that the state-law claims arose under federal law because those "provisions [were] thoroughly embedded in, and integral to the success of" the state law claims. *Id.* (citing *Wullschleger v. Royal Canin U. S. A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020)). The Supreme Court, however, took "a slight liberty throughout [the] opinion, referring to the original complaint's [federal] allegations simply as federal claims." *Id.* In other words, although Justice Kagan calls them federal claims, they were allegations that raised a federal question. Like Ms. Wullschleger, the plaintiff amended his complaint to remove citations to federal law, while retaining essentially the same causes of action. Thus, the facts are similar to the *Royal Canin* facts, and *Royal Canin* controls.

Nonetheless, the defendants maintain that *Royal Canin* does not apply to cases where a plaintiff's amended complaint "removed certain words" but otherwise "kept the factual premise of his claims intact, and . . . sought the same relief post-amendment that he had sought pre-amendment." (ECF No. 53 at 8.) In support of this proposed rule, they cite *Behlen*, 311 F.3d at 1095, where the Eleventh Circuit held that "it was proper for the court to retain jurisdiction over [the plaintiff's] amended complaint, because, despite his removal of the allegations that would bring his claims within the scope of the [federal law], the amended complaint still presents a federal question." The Eleventh Circuit explained that the amended complaint continued to allege that the defendant violated federal securities laws, even though the plaintiff no longer cited those statutes; and merely removing citations to federal law did not erase the federal question. *Id.* at 1095–96.

*Royal Canin* did not necessarily abrogate this holding, but the defendants' proposed rule does not follow from the quoted language. According to the defendants, the amended complaint still asserts federal causes of action, even though it does not allege any violations of federal law. (ECF No. 53 at 8–9.) Accepting the defendants' theory would require the Court to read a federal cause of action into the amended complaint, which it will not do. *See Royal Canin*, 604 U.S. at 35 (the plaintiff is the "master of the complaint" and "gets to determine which substantive claims to bring against which defendants"). After all, the Court would not allow the plaintiff to recover under a federal cause of action when his amended complaint does not state one; nor will the Court read a federal claim into the complaint to exercise jurisdiction.[11]

The better reading of *Behlen* accords with the defendants' next argument — that even if the plaintiff asserts only state-law claims, those claims still arise under federal law. (*Id.* at 10 (quoting *Grable*, 545 U.S. at 314).) In addition to cases that arise directly under federal law, "the Supreme Court has identified a 'special and small' category of actual state claims that present significant, disputed issues of federal law," and therefore arise under federal law within the meaning of § 1331. *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 912 (2d Cir. 2024) (citation omitted). "For a state law claim to fall within this 'slim category,' the embedded federal issue must be '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

[11] In claiming that the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else" (ECF No. 53 at 8 (emphasis in original)), the defendants may mean to argue that the plaintiff impermissibly "disguise[s] . . . inherently federal cause[s] of action, to block removal." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3722.1. In other words, the defendants might be saying that the plaintiff's state constitutional claims are inherently federal causes of action — under 42 U.S.C. § 1983, for instance — because, as discussed below, no cause of action exists under state law. To credit this position, however, the Court would have to rewrite the plaintiff's complaint to find a viable federal cause of action that does not appear on the face of the complaint. That is not the Court's job. *See, e.g.*, *Adams v. Gen. Motors Acceptance Corp.*, 307 F. Supp. 2d 812, 817 (N.D. Miss. 2004) (remanding and rejecting defendant's argument that because state law provided no cause of action, the plaintiffs' claims must be construed as federal claims).

capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn*, 568 U.S. at 258); *see also Grable*, 545 U.S. at 314.

*i. Necessarily Raised*

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) (quoting *Jacobson*, 824 F.3d at 315). "For a federal issue to be necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Id.* (emphases in original) (internal quotations and citations omitted). "In other words, federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case." *Tantaros*, 12 F.4th at 141. The Second Circuit has instructed district courts to "[f]ocus[] on 'what necessarily appears in the plaintiff's statement of his own claim,'" and "exercise federal jurisdiction only if 'a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (alterations adopted) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

The plaintiff alleges in the amended complaint that the defendants violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution, by executing this Court's orders. (ECF No. 26 ¶¶ 17–26, 30–35.) The plaintiff attached to his amended complaint two affirmations of service that say that the defendants executed the search pursuant to this Court's seizure order. (ECF No. 26-1, Ex. C, at 8–9; ECF No. 26-1, Ex. D, at 10–12.) The plaintiff's state constitutional claims are, therefore, premised on the defendants' execution of an

order issued from this Court pursuant to a federal statute, 15 U.S.C. § 1116(d).[12] In other words, to establish that the search violated the Florida constitution, the plaintiff must prove either that the Court's asset freeze and seizure orders were improper or that they were illegally executed. Both are questions of federal law and are necessarily raised by the plaintiff's claims under the state constitution.

But these federal questions would not necessarily arise if the plaintiff does not have a cause of action, because then they are not "an element . . . of the plaintiff's cause of action." *Tantaros*, 12 F.4th at 141. That is the case here, because as the defendants point out, "no cause of action exists for money damages for a violation of a state constitutional right" in Florida. *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th Dist. Ct. App. 2004) (citing *Garcia v. Reyes*, 697 So.2d 549 (Fla. 4th Dist. Ct. App. 1997)). *See also Cowans v. Maximus Educ. LLC*, No. 4D2025-0235, 2025 WL 2055134, at *1 (Fla. 4th Dist. Ct. App. July 23, 2025) ("[I]t does not appear that article I, section 23 gives rise to a cause of action for money damages."); *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st Dist. Ct. App. 1994) (holding that it is "clear that article I, section 23 does not create a cause of action for 'governmental intrusion' because legislative enactment is needed to delineate whether immunity is waived to permit the award of money damages"), *approved*, 670 So. 2d 56 (Fla. 1996); *Funderburk v. O'Leary*, No. 21-CV-14290, 2023 WL 3491221, at *5 (S.D. Fla. May 17, 2023) ("Plaintiff will not be permitted to seek damages for violations of the Florida Constitution." (collecting cases)); *Lindbloom v. Manatee Mem'l Hosp., L.L.C.*, No. 23-CV-2856, 2025 WL 1563550, at *7 (M.D. Fla. Apr. 7, 2025) ("Florida state and federal courts have held that 'Florida constitutional claims do not support claims for damages absent a separate enabling statute.'" (internal citation omitted)), *report and*

---

[12] The defamation claims do not arise under federal law, and the defendants do not argue that they do.

*recommendation adopted*, 2025 WL 1450371 (M.D. Fla. May 21, 2025); *Ayala v. City of Pembroke Pines*, No. 25-CV-60294, 2025 WL 2202101, at *3 (S.D. Fla. June 27, 2025) ("[N]o cause of action exists for monetary relief for a violation of a Florida constitutional right."); *Capps v. Fla. Highway Patrol*, No. 17-CV-60365, 2017 WL 1436077, at *7 (S.D. Fla. Apr. 24, 2017) (collecting cases); *Smith v. Bell*, No. 06-CV-60750, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself." (collecting cases)). Accordingly, because the plaintiff has no private right to raise the federal issues, those issues are not necessarily raised on the face of the plaintiff's complaint, and this case does not arise under federal law.

In an abundance of caution, however, and because the Court could construe the plaintiff's constitutional claims as a tort claim for invasion of privacy that necessarily raises these federal questions, the Court continues the *Gunn-Grable* analysis. *See Percival v. Chronister*, No. 23-CV-1243, 2025 WL 1940316, at *17 (M.D. Fla. July 15, 2025) (construing *pro se* claim "incorrectly ground[ed]" in the Florida Constitution as "one for an invasion of privacy"); *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980) (holding that "Florida has recognized the tort of invasion of privacy," at least in cases of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home").

*ii. Actually Disputed*

Assuming federal questions necessarily arise in the state law claims, those questions — the legality of the Court's orders and the defendants' execution of those orders, in this case — are a "central point of dispute" in the action, "satisfying the second requirement for the exercise of federal jurisdiction in this case." *Link Motion Inc.*, 103 F.4th at 913 (quoting *Gunn*, 568 U.S. at 259).

*iii. Substantial*

"Nevertheless, as the Supreme Court has cautioned, 'the mere presence of a [disputed] federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Id.* (alteration in original) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). The dispute must also be substantial. To satisfy this requirement "'it is not enough that the federal issue be significant to the particular parties in the immediate suit'; rather, 'the substantiality inquiry looks instead to the importance of the issue to the federal system as a whole.'" *Id.* (cleaned up) (quoting *Gunn*, 568 U.S. at 260). "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (alteration in original) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). For example, the Supreme Court and Second Circuit have exercised federal question jurisdiction where state law claims raise "disputes over the meaning of a federal tax law, the scope of an Internal Revenue Code regulation, and the duties imposed by the Securities Exchange Act." *Id.*

*Grable* is instructive on this point. In that case, the Internal Revenue Service seized Grable & Sons Metal Products' property and sold it to satisfy its federal tax debt. *Grable*, 545 U.S., at 310–311. The company filed a state law quiet title action against the third party that bought the property, alleging that the IRS had not complied with statutory notice requirements, so the seizure and sale were invalid. *Id.* at 311. The Supreme Court emphasized that the federal government has a "strong interest" in the collection of delinquent taxes, and "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* at 315

In this case, the plaintiff challenges the Court's authority to issue asset freeze and seizure orders under the Lanham Act. Although Congress granted concurrent jurisdiction to state and federal courts over claims under the Lanham Act, 28 U.S.C. § 1338(a), a court must construe the

statute "in the light of a strong federal policy in favor of vigorously competitive markets." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997). To that end "Congress recognized that a trademark aids competition in the marketplace because it helps a consumer distinguish among competing products." *Id.* (citation omitted). These important federal policies are at issue in this case. This is a close call, but this case could raise sufficiently substantial issues that implicate the whole federal system to support jurisdiction.

*iv. Disruption to the Federal-State Balance*

But even if the plaintiff's "state action necessarily raises a disputed and substantial issue of federal law," the Court would still not have federal question jurisdiction, because "federal jurisdiction lies only if adjudication in a federal forum would be consistent with the 'congressionally approved balance of state and federal judicial responsibilities,' defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'" *Tantaros*, 12 F.4th at 146 (quoting *Jacobson*, 824 F.3d at 316). "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Jacobson*, 824 F.3d at 316.

In this case, however, Florida has a special interest in the claims the plaintiff makes: violations of the state constitution. "It is fundamental . . . that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010) (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940). Even if substantial federal issues are at stake in this case, so are core state interests. The plaintiff's state-law claims, therefore, are outside of the Court's federal question jurisdiction under *Grable* and *Gunn*.

* * *

Accordingly, this case does not fall within the narrow category of cases in which purely state-law claims support jurisdiction under § 1331.

**d. Diversity Jurisdiction**

In the alternative, the defendants argue the Court has diversity jurisdiction under § 1332. "Congress has always given federal courts power to decide 'diversity' cases." *Royal Canin*, 604 U.S. at 26 (citing 28 U.S.C. § 1332(a)). Federal courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different [s]tates." 28 U.S.C. § 1332(a). The parties do not dispute that they are completely diverse. Therefore, the Court has diversity jurisdiction if the amount in controversy exceeds $75,000.

Courts determining whether they have diversity jurisdiction adhere to the "time-of-filing" rule, which "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the complaint] — whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). The *Royal Canin* Court reaffirmed this rule as applied to questions concerning "the actual 'state of things' relevant to jurisdiction — meaning, the facts on the ground, rather than (as addressed [in *Royal Canin*]) the claims and parties that the plaintiff includes in a complaint." *Royal Canin*, 604 U.S. at 36 n.5. The Court observed that courts typically evaluate a party's citizenship and the amount in controversy as of the time the plaintiff files the original complaint. *Id.* at 36 n.5, 38 n.8.

As to the amount in controversy, the Court offered two reasons that "an amendment reducing the alleged amount-in-controversy to below the statutory threshold . . . will usually not

destroy diversity jurisdiction." *Id.* at 38 n.8; *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). The first is that "the value of a suit" concerns "facts on the ground," as opposed to the plaintiff's decision as master of the complaint in choosing the parties and claims, so the Court "viewed it as analogous to the time-of-filing rule applying to citizenship, which also assesses a factual issue relevant to jurisdiction only at the suit's outset." *Royal Canin*, 604 U.S. at 38 n.8. Second, assessing a suit's value poses unique difficulties, because it is likely "that the calculation will change over the course of litigation," which could inspire "constant litigation" and "alter a court's jurisdiction." *Id.* Therefore, the Court looks to the original complaint to determine the amount in controversy.

The removing defendants must show a "reasonable probability that the jurisdictional amount has been reached." *Cappuccilli v. Cokinos*, No. 24-CV-3045, 2024 WL 3013604, at *1 (E.D.N.Y. June 14, 2024) (citation omitted). "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 273–74 (2d Cir. 1994). "In determining whether the removing defendant has met this burden, courts 'look first to the plaintiffs' complaint and then to [the defendants'] petition for removal.'" *Gregory Wayne Designs, LLC v. Lowry*, No. 24-CV-2109, 2024 WL 3518584, at *3 (S.D.N.Y. July 24, 2024) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). If neither in conclusive, "courts may look outside those pleadings to other evidence in the record." *Id.* (quoting *United Food & Com. Workers Union*, 30 F.3d at 305).

The plaintiff does not allege a specific damages amount in the state court complaint. Instead, he claims that the damages exceed $50,000.00, which is the jurisdictional threshold for circuit courts in Florida. (ECF No. 1-1 ¶ 12; ECF No. 18 at 10 (citing Fla. Stat. Ann § 34.01).) This allegation does not support federal jurisdiction because it "merely indicates an amount in controversy in excess" of a jurisdiction limit that is below $75,000. *De Garcia v. Tropicana Ent. Inc.*, No. 22-CV-12, 2022 WL 375996, at *2 (E.D.N.Y. Feb. 8, 2022) (quoting *Valente v. Garrison From Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *1 (E.D.N.Y. Jan. 11, 2016)) (collecting cases); *see also O'Neill v. Target Corp.*, No. 21-CV-3262, 2021 WL 2634880, at *2 (E.D.N.Y. June 25, 2021); *Williams v. CVS*, No. 25-CV-655, 2025 WL 486656, at *2 (E.D.N.Y. Feb. 13, 2025).

Nor do the plaintiff's "boilerplate" allegations of his injuries "suffice to establish that this action involves an amount in controversy adequate to support federal diversity jurisdiction." *Mekhi v. Area Storage & Transfer, Inc.*, No. 18-CV-4654, 2018 WL 4043152, at *2 (E.D.N.Y. Aug. 24, 2018) (citation omitted) (collecting cases). The plaintiff pleads five causes of action.[13] For his state constitutional claims, he alleges he "suffered damages, including emotional distress, invasion of privacy, and other harm" and "demands [j]udgment for damages [and] punitive damages." (ECF No. 1-1 ¶¶ 32, 35, 38.) For his defamation claims, he alleges he "suffered damages, including damage to reputation, emotional distress, and other harm" and "demands [j]udgment for damages [and] punitive damages." (*Id.* ¶¶ 42, *id.* at 10.) These "conclusory assertions . . . lack of any detail regarding Plaintiff's specific damages," and "there is simply insufficient information to 'intelligently ascertain removability.'" *Mekhi*, 2018 WL 4043152, at

[13] He probably pleads just two cognizable causes of action. (*See* ECF No. 18 at 13 (arguing that only the libel and slander claims are even "superficially *cognizable* against private actors such as Defendants" (emphasis in original).)

*2 (quoting *DeMarco v. MGM Transp., Inc.*, No. 06-CV-307, 2006 WL 463504, at *1 (E.D.N.Y. Feb. 24, 2006)); *see also Herlihy v. Hyatt Corp.*, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022) ("[G]eneralized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met." (collecting cases)).

The defendants maintain, however, that each claim, if proven, is "likely to result in damages far in excess of $75,000," because "jury awards in defamation cases regularly exceed" that amount. (ECF No. 53 at 12; ECF No. 18 at 9–16.) But just because jury awards may exceed the amount in controversy does not mean that they must — or that they do in this case. Moreover, post-trial jury awards offer little guidance on the amount in controversy of claims before any motion practice or discovery. For these reasons, courts in this circuit routinely disregard comparisons to jury verdicts in determining the amount in controversy for jurisdictional purposes. *See, e.g.*, *Jean-Louis v. Amazon.com Servs., LLC*, No. 22-CV-5020, 2022 WL 3867668, at *3 (E.D.N.Y. Aug. 29, 2022) ("[C]onsidering the procedural posture of this case, [the defendant's] reliance on cases — decided post-trial — discussing at length evidence of a relentless stream of discrimination and taunting that spanned many years is misplaced."); *Salerno v. N. Manor Multicare Facility*, No. 21-CV-7490, 2021 WL 4148900, at *2 (S.D.N.Y. Sept. 13, 2021) (declining to rely on "cases *reviewing* jury verdicts for emotional damages" in determining amount in controversy because of the difference in "procedural posture" (emphasis in the original)).

The defendants also point to the plaintiff's request for punitive damages, which they state may be "up to three times actual damages or $500,000, whichever is higher." (ECF No. 53 at 12.) "[I]n computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (alteration adopted) (citation omitted). The complaint does not allege any facts that would support "reasonable probability" that the plaintiff would be entitled to punitive damages; the "conclusory assertion that any amount of punitive damages is a *fait accompli* is untethered to the record and amounts to the kind of speculation and surmise that courts in this Circuit routinely reject." *Jean-Louis*, 2022 WL 3867668, at *4.

The defendants' notice of removal does not satisfy their burden either. They plead that "the amount in controversy in this action — as pled — plausibly exceeds $75,000." (ECF No. 1 ¶ 16.) This conclusory assertion is similarly not conclusive or controlling. *Gregory Wayne Designs, LLC*, 2024 WL 3518584, at *4. The defendants cannot "rely[] on inferences drawn from the Complaint," because it does not allege any facts about the nature or extent of the plaintiff's harm. *Herrera v. Terner*, No. 16-CV-4610, 2016 WL 4536871, at *2 (E.D.N.Y. Aug. 30, 2016); *see also Shoham v. United Airlines, Inc.*, No. 22-CV-5677, 2022 WL 13798296, at *2 (E.D.N.Y. Oct. 21, 2022) (remanding personal injury claims because the "boilerplate pleadings" could not establish an amount in controversy supported federal jurisdiction).

Without any factual allegations about the plaintiff's injuries to support jurisdiction, the defendants must look outside the pleadings. They cite the state court civil cover sheet that the plaintiff filed with his complaint. (ECF No. 1-1 at 2.) On this administrative form, the plaintiff "estimated [the] amount of the claim, rounded to the nearest dollar" at "over $100,000.00." (*Id.*) However, the Court declines to rely on this document as affirmative evidence of the actual amount in controversy. The civil cover sheet states on its face that it "neither replace[s] nor supplement[s] the filing . . . of pleadings" and is required by "the Clerk of Court for the purpose of reporting uniform data pursuant" to state law. (*Id.*) The amount of claim question narrows its

use even further: It is "for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose." (*Id.*) Indeed, courts have held that a plaintiff's answers on the civil cover sheet cannot establish diversity jurisdiction. *Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); *Galloway v. Ahamed*, No. 22-CV-979, 2022 WL 3107330, at *5 (D. Conn. Aug. 4, 2022) (checking box on civil cover sheet is not sufficient to prove the amount in controversy exceeds the jurisdictional threshold); *Powell v. Maldonado*, No. 23-CV-826, 2024 WL 496478, at *4 (E.D.N.Y. Feb. 7, 2024) (checking boxes on civil cover sheet does not establish parties are diverse). This is especially true in the context of removal, because "federal courts construe the removal statute narrowly, resolving any doubts against removability," *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).

* * *

Accordingly, the Court lacks federal jurisdiction over this action, and it must remand the case. *See* 28 U.S.C. 1447(c).

**III. Remand to Florida State Court**

"[W]hen an action is transferred, it remains what it was." *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.). "[A] transferee court is deemed to inherit all the authority of a transferor court." *Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 271 (3d Cir. 2002) (holding that "a court has authority to send a case back to the state court where it originated" and "does not have authority to 'remand' a case to a stranger court"). This includes the authority to remand the case to the state court where the case originated. *See, e.g.*, *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir.

2002) (declining to review order remanding case to the Florida Circuit Court for lack of federal subject matter jurisdiction); *Parker v. J. Crew Grp., Inc.*, No. 17-CV-1214, 2018 WL 385033, at *2 (D.N.J. Jan. 11, 2018) (remanding transferred case to Illinois state court); *Retterath v. Homeland Energy Sols., LLC*, No. 14-CV-158, 2014 WL 7776705, at *10 (S.D. Iowa Dec. 24, 2014) (remanding transferred case to Florida state court).

Indeed, the Court has no other option. The removal statute contemplates that courts may remand a case only "to the State court from which it was removed." 28 U.S.C. 1447(c). Courts have repeatedly followed this reasoning and "held that a district court is only permitted to remand a case to the state court from which the case was removed." *Salis v. Manzanet-Daniels*, No. 24-CV-1130, 2025 WL 1305868, at *4 (N.D.N.Y. May 6, 2025) (collecting cases). The Court must remand the case if it does not have subject matter jurisdiction, and there is only one court to which remand is permissible. Accordingly, this case is remanded to the First Judicial Circuit Court of Florida, the court from which it was removed.

**CONCLUSION**

For the foregoing reasons, the case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 30, 2025

A TRUE COPY
ATTEST
DATE 10/6/2025
BRENNA B. MAHONEY
CLERK
BY
DEPUTY CLERK

CLOSED,DJI,NPROSE,TransferredOutCase-DoNotDocket

Re: Case No 2024-CA-001164

**U.S. District Court**
**Eastern District of New York (Brooklyn)**
**CIVIL DOCKET FOR CASE #: 1:25-cv-00393-AMD-JAM**

Levitan v. Patterson Belknap Webb & Tyler LLP et al
Assigned to: Judge Ann M. Donnelly
Referred to: Magistrate Judge Joseph A. Marutollo
related Case: 1:21-cv-04106-AMD-JAM
Case in other court: Florida Northern, 3:24-cv-00475
Cause: 28:1332 Diversity-Libel,Assault,Slander

Date Filed: 01/23/2025
Date Terminated: 09/30/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**John D. Levitan, Sr.**

represented by **John D. Levitan, Sr.**
511 Windrose Circle
Pensacola, FL 32507
850-497-2724
Email: jdlsr@gileadfraud.com
PRO SE

PAM CHILDERS
CLERK & COMPTROLLER
FILED
2025 OCT 15 A 10: 21
ESCAMBIA COUNTY, FL

V.

**Defendant**

**Patterson Belknap Webb & Tyler LLP**

represented by **Hannah Eleanor Murphy**
STEARNS WEAVER MILLER - TALLAHASSEE FL
106 E COLLEGE AVENUE
SUITE 700
TALLAHASSEE, FL 32301
850-354-7629
Email: hmurphy@stearnsweaver.com
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
Patterson Belknap Webb & Tyler LLP
1133 Ave of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: gpotter@pbwt.com
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
Patterson Belknap Webb & Tyler
1133 Avenue Of The Americas

A TRUE COPY
ATTEST: 10/16/2025
BRENNA B. MAHONEY, CLERK
BY: DEPUTY CLERK

PAM CHILDERS
CLERK & COMPTROLLER
FILED
2025 OCT 16 A 10: 21
ESCAMBIA COUNTY, FL

New York, NY 10036
(212)336-2000
Fax: (212)336-2222
Email: tkurland@pbwt.com
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: twaters@pbwt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Geoffrey Potter** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timothy Alan Waters** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**Aron Fischer** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joshua Stein** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas P Kurland** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gilead Sciences Inc.** represented by **Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gilead Sciences Ireland UC** represented by **Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2024 | 1 | NOTICE OF REMOVAL by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER from FIRST CIRCUIT COURT, ESCAMBIA COUNTY, case number 2024-CA-001164. ( Filing fee $ 405 receipt |

| | | |
|---|---|---|
| | | number BFLNDC-9078434.), filed by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER. (Attachments: # 1 Exhibit, # 2 Exhibit NY RELATED CASE DOCKET, # 3 Civil Cover Sheet) (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/03/2024 | 2 | Corporate Disclosure Statement/Certificate of Interested Persons by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/04/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal (please see proposed ISO). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/04/2024) |
| 10/07/2024 | 3 | MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* by PATTERSON BELKNAP WEBB & TYLER LLP. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/07/2024) |
| 10/07/2024 | | Set Deadlines re 3 MOTION to Stay and TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **10/21/2024**). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/08/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/14/2024 | 4 | MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/14/2024) |
| 10/15/2024 | | Set Deadlines re 4 MOTION to Expedite. (Internal deadline for referral to judge if response not filed earlier: **10/29/2024**). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/15/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 4 MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/16/2024 | 5 | ORDER re 4 MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY. The motion is GRANTED in part and DENIED in part. Defendants' deadline to respond to Plaintiff's Complaint is extended until 10 days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, |

| | | |
|---|---|---|
| | | and thus their request to expedite the briefing schedule is DENIED. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024. (Plaintiff's response to Defendant's MOTION to Stay remains **10/21/2024)**. Defendant's deadline to respond due by **10/31/2024.**) Signed by JUDGE M CASEY RODGERS on 10/16/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/16/2024) |
| 10/17/2024 | 6 | Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc., by JOHN D LEVITAN, SR (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 6 Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc.. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/21/2024 | 7 | Motion to Remand State Court Case No. 2024-CA-001164 and Incorporated Memorandum of Law, by JOHN D LEVITAN, SR. (alb) Modified on 1/3/2025 to term re 28 ORDER. (mb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/21/2024 | 8 | MOTION to File Pleadings Through the ECF/ECM System PACER by JOHN D LEVITAN, SR. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION NO LONGER REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. (alb) Modified on 10/22/2024 (alb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. Referred to ZACHARY C BOLITHO. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | 9 | MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW by JOHN D LEVITAN, SR. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 9 MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. Referred to ZACHARY C BOLITHO. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 10 | ORDER re 9 Motion for Enlargement of Time to Reply to MOTION to Stay and Transfer Proceedings. Plaintiff's motion is GRANTED to the extent that his response to Defendants' motion to stay and transfer proceedings (Doc. 3 ) is due on or before November 6, 2024. Plaintiff is advised that no further extensions of this deadline will be granted. (Internal deadline for referral to judge if response to Defendant's Motion not filed earlier: **11/6/2024)**.) Signed by MAGISTRATE JUDGE ZACHARY C |

| | | |
|---|---|---|
| | | BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 11 | ORDER. Plaintiff's "Request to File Pleadings Through the ECF/ECM System PACER" (Doc. 8 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/25/2024 | 12 | Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law, by JOHN D LEVITAN, SR. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 12 Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | 13 | ORDER denying 12 Motion for Reconsideration. That Plaintiff's Motion for Reconsideration (Doc. 12 ) is DENIED. If Plaintiff's travel plans interfere with his ability to meet a Court deadline, Plaintiff may file a motion seeking an extension of any such deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/28/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 11/01/2024 | 14 | Corporate Disclosure Statement/Certificate of Interested Persons by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 15 | RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal,, *Consent to Removal*. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 16 | NOTICE *of Joinder in Motion to Stay and Transfer Proceedings* by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 17 | MOTION to Hold Deadline for Responding to Complaint in Abeyance by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/04/2024 | 18 | MEMORANDUM in Opposition re 7 MOTION to Remand to State Court filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal, Consent to Removal. (mb) [Transferred from Florida Northern on |

| | | |
|---|---|---|
| | | 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 NOTICE of Joinder in Motion to Stay and Transfer Proceedings by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 18 MEMORANDUM in Opposition re 7 MOTION to Remand to State Court. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | 19 | ORDER re 17 Motion to Hold Deadline for Responding to Complaint in Abeyance. The motion (Doc. 17 ) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that Defendants' deadline to respond to Plaintiff's complaint is HELD IN ABEYANCE. The new deadline for Defendants Gilead Sciences, Inc., and Gilead Sciences Ireland UC to respond to Plaintiff's complaint is ten days after the Court's ruling on Defendants' motion to stay and transfer (Doc. 3 ). Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. Plaintiff's deadline to respond to Defendants' motion to stay and transfer proceedings (Doc. 3 ) remains November 6, 2024. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/04/24. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | Set Deadline re 19 ORDER - Internal deadline for referral to judge if response to 3 Motion not filed earlier: **11/6/2024)**. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/08/2024 | 20 | Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service, by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibit A). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 20 Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | 21 | REPORT AND RECOMMENDATION. Plaintiff's Motion to Remand to State Court (Doc. 7 ) be DENIED. This case be recommitted to the undersigned for further proceedings. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/12/2024. Internal deadline for referral to district judge if objections are not filed earlier: **12/10/2024**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |

| | | |
|---|---|---|
| 11/15/2024 | 22 | NOTICE *OF FILING AMENDED CERTIFICATES OF SERVICE* by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 18 Memorandum in Opposition to Motion, 15 Response/Reply, 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance , 16 Notice (Other), 14 Corporate Disclosure Statement/Certificate of Interested Persons (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 23 | RESPONSE in Opposition re 20 MOTION for Sanctions filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 24 | RESPONSE in Opposition re 3 MOTION TO STAY AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW filed by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 25 | MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 26 | PROPOSED FIRST AMENDED COMPLAINT against All Defendants., filed by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibits)(No service copies filed.) (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 22 DEFENDANTS' NOTICE OF FILING AMENDED CERTIFICATES OF SERVICE, 23 DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 26 Proposed Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME, 24 Response in Opposition to Motion. Referred to ZACHARY C BOLITHO. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/22/2024 | 27 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 26 Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition to Motion . (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/22/2024) |
| 11/25/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 27 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFF'S MOTION TO FILE AN OUT OF TIME RESPONSE AND AMENDED COMPLAINT. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/25/2024) |

| | | |
|---|---|---|
| 12/11/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 21 REPORT AND RECOMMENDATION (No objections or responses filed). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/11/2024) |
| 12/31/2024 | 28 | ORDER adopting Magistrate Judge's 21 REPORT AND RECOMMENDATION. The Plaintiff's Motion to Remand to State Court, (Doc. 7 ), is DENIED. This case is recommitted to the magistrate judge for further proceedings. Signed by JUDGE M CASEY RODGERS on 12/31/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 12/31/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 28 Order. (Recommitted back to Magistrate Judge). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 01/06/2025 | 29 | ORDER - That Plaintiff's motion for sanctions (Doc. 20 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 30 | ORDER. Plaintiff's Motion to File Opposition to Defendants Motion to Stay and Transfer (Doc. 25 ) is GRANTED. Defendants' Motion to Stay and Transfer Proceedings (Doc. 3 ) is GRANTED to the extent that the Court will transfer this action. The Clerk of Court must TRANSFER this case to the U.S. District Court for the Eastern District of New York and close the file in this Court fifteen days from the date of this Order, unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 31 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | | Set Deadlines re STAY for transfer response deadline: **1/21/2025** re 30 ORDER. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/08/2025 | 32 | ACKNOWLEDGMENT re 31 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00101, filed 01/06/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/08/2025 | 33 | DOCKET ANNOTATION BY COURT: Re 32 Acknowledgment of Transfer - Case Manager to call back regarding premature transfer with instructions on how to proceed. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/08/2025 | 34 | NOTICE of Case 1:25-cv-00101-AMD-JAM removed from the docket due to premature transfer re 32 Acknowledgment, by EASTERN DISTRICT of NEW YORK. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |

| | | |
|---|---|---|
| 01/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: Set Deadlines re STAY for transfer response deadline: 1/21/2025 re 30 ORDER. (No responses filed by deadline - permission to TRANSFER). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/22/2025) |
| 01/23/2025 | 35 | Case transferred in from District of Florida Northern; Case Number 3:24-cv-00475. Original file certified copy of transfer order and docket sheet received. (Entered: 01/23/2025) |
| 01/23/2025 | 36 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | The case of **Levitan v. Patterson Belknap Webb & Tyler LLP et al**, has been transferred from **Northern District of Florida (Pensacola)** to the Eastern District of New York. The new case number is **25-cv-393**.<br>PLEASE NOTE: if you plan to continue representing your client(s), you must be admitted to practice before this court. You must do so by applying for Pro Hac Vice or permanent admission. To apply for Pro Hac Vice admission, you must first register for an ECF login and password. Please visit the Court's website at www.nyed.uscourts.gov/attorney-admissions for guidance. Once registered, you must electronically file a Motion to Appear Pro Hac Vice. You must pay the required pro hac vice fee online. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge Joseph A. Marutollo (as related to 21-cv-4106)for all further proceedings. Magistrate Judge Peggy Kuo no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.Ordered by Chief Judge Margo K. Brodie on 1/23/2025. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | 37 | NOTICE of Appearance by Geoffrey Potter on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Potter, Geoffrey) (Entered: 01/23/2025) |
| 01/23/2025 | 38 | NOTICE of Appearance by Timothy Alan Waters on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Waters, Timothy) (Entered: 01/23/2025) |
| 01/23/2025 | 39 | NOTICE of Appearance by Thomas Philip Kurland on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to |

| | | |
|---|---|---|
| | | be noticed) (Kurland, Thomas) (Entered: 01/23/2025) |
| 01/24/2025 | 40 | SCHEDULING ORDER: A telephonic initial conference will be held on February 19, 2025 at 4:00 p.m. before Magistrate Judge Joseph A. Marutollo. To participate in the conference, the parties shall dial (646) 828-7666; Meeting ID: 161 018 4647; Passcode: 455895. The parties must complete the attached proposed Discovery Plan and Scheduling Order and file it on ECF no later than February 14, 2025. Plaintiff is directed to ensure that all Defendants are aware of this conference. Counsel with knowledge of the case must attend the conference; *per diem* counsel may not appear without prior permission of the Court. The parties are directed to review this Court's Individual Practices and Rules in advance of the conference. The Clerk of Court is directed to mail copy of this order to the plaintiff. Ordered by Magistrate Judge Joseph A. Marutollo on 1/24/2025. (Attachments: # 1 Individual Practices and Rules) (EG) (Entered: 01/24/2025) |
| 01/29/2025 | 41 | MOTION to Withdraw as Attorney *as to Hannah E. Murphy, Esq. to be Relieved as Counsel for Defendants* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER granting 41 Motion to Withdraw as Attorney. Attorney Hannah Eleanor Murphy terminated. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2025. (JAM) (Entered: 01/29/2025) |
| 01/31/2025 | 42 | MOTION to Dismiss by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Attachments: # 1 Memorandum in Support) (Kurland, Thomas) (Entered: 01/31/2025) |
| 02/11/2025 | 43 | Letter MOTION to Stay by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/11/2025) |
| 02/11/2025 | | ORDER: Plaintiff shall respond to 43 by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/11/2025. (GWM) (Entered: 02/11/2025) |
| 02/13/2025 | | ORDER: The Court received a voicemail from pro se Plaintiff. In light of Plaintiff's representation to chambers that he is experiencing delays in receiving and sending docket filings, the Court *sua sponte* extends the deadline to respond to 43 to February 20, 2025. Plaintiff is reminded that future correspondence with the Court shall be made on the public docket. Defendants shall serve a copy of this order on Plaintiff and file proof of service on the docket by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (EG) (Entered: 02/13/2025) |
| 02/13/2025 | 44 | Letter *to Judge Marutollo in response to the Court's February 13, 2025 order* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (Kurland, Thomas) (Entered: 02/13/2025) |
| 02/13/2025 | | ORDER: In light of the Court's extension of Plaintiff's deadline to respond to the 43 motion, the initial conference and all associated deadlines are adjourned *sine die*, pending resolution of the motion to stay. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (GWM) (Entered: 02/13/2025) |

| | | |
|---|---|---|
| 02/13/2025 | 45 | MOTION for leave to allow Pro Se to Electronically File by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 46 | MOTION to Amend/Correct/Supplement *Plaintiff's Motion to Supplement the record transferred from the Northern District of Florida* by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 47 | Plaintiff's Objections to Order Transferring Case, Motion for Reconsideration of Order Denying Remand to State Court and Notice of Intervening Decision in Royal Canin U.S.A., Inc. et al. v. Wullschleger et al. 604 U.S. (2025) filed by John D Levitan, Sr., plaintiff pro se. (RG) (Entered: 02/14/2025) |
| 02/14/2025 | 48 | AFFIDAVIT of Service for February 13, 2025 Order's served on pro se Plaintiff on February 14, 2025, filed by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/14/2025) |
| 02/14/2025 | 49 | MOTION to Remand to State Court by John D Levitan, Sr. (RG) (Entered: 02/18/2025) |
| 02/14/2025 | 50 | NOTICE: Request for Judicial Default against GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC PATTERSON BELKNAP WEBB & TYLER LLP (PBWT),GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND. **Please note advised pro se dept that plaintiff did not file properly, cannot file a default without the request for clerk's notation first. (RG) (Entered: 02/19/2025) |
| 02/14/2025 | 51 | MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery* by John D Levitan, Sr. (RG) (Entered: 02/19/2025) |
| 02/18/2025 | | ORDER: Defendants shall respond to 49 by February 26, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) (Entered: 02/18/2025) |
| 02/18/2025 | | ORDER granting 45 . Pro se Plaintiff shall register for ECF, registration is available online at www.pacer.gov. Should Plaintiff encounter any difficulty registering for PACER, he may contact CM/ECF Docketing and Filing at 718-613-2610. The Clerk of the Court shall provide the pro se Plaintiff with a copy of this Electronic Order. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) Modified on 2/18/2025 to indicate C/M.(EG). (Entered: 02/18/2025) |
| 02/19/2025 | | ORDER: In light of the procedural posture of this case, the parties shall indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action, including a (jury or nonjury) trial and to order the entry of a final judgment, by **February 28, 2025**. The consent form should be filled out, signed and filed electronically only if all parties wish to consent. The form may also be accessed at the following link: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. The parties may withhold consent without adverse substantive consequences. Do NOT return or file the consent form unless all parties have signed the consent. Ordered by Magistrate Judge Joseph A. Marutollo on 2/19/2025. (EG) (Entered: 02/19/2025) |
| 02/24/2025 | 52 | Request for Certificate of Default by John D. Levitan, Sr, plaintiff pro se. (RG) (Entered: 02/25/2025) |

| | | |
|---|---|---|
| 02/26/2025 | 53 | MEMORANDUM in Opposition re 47 Reply in Opposition, 49 MOTION to Remand to State Court *Defendants' Omnibus Memorandum of Law in Opposition to Plaintiff's Motion to Reconsider Denial of Remand or in the Alternative to Transfer this Case to the Northern District of Florida, and to Proceed with Discovery* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/26/2025) |
| 02/28/2025 | 54 | REPLY in Support re 42 MOTION to Dismiss , 43 Letter MOTION to Stay , RESPONSE in Opposition re 51 MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery Defendants' Omnibus Memorandum of Law Replying in Support of Defendants' Motions to Dismiss and Stay and Opposing Plaintiff's Motion to Strike* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/28/2025) |
| 03/03/2025 | | ORDER: The parties were ordered to indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action by February 28, 2025. No such document was filed on the docket. Defendants shall file either a completed consent form or a letter indicating that the parties do not consent to Magistrate Judge jurisdiction by March 3, 2025, at 5:00 p.m.<br>The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf. The parties may withhold consent without adverse substantive consequences. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (EG) (Entered: 03/03/2025) |
| 03/03/2025 | 55 | Letter *to Judge Marutollo from Thomas P. Kurland re: Magistrate Judge Consent* by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters (Kurland, Thomas) (Entered: 03/03/2025) |
| 03/03/2025 | | ORDER granting 43 . The Court GRANTS Defendant's motion to stay discovery until their motion to dismiss is resolved. "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Salese v. JP Morgan Chase & Co.* , No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.* , 299 U.S. 248, 254 (1936)). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: (1) whether the Defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *Amron v. 3M Minnesota Mining & Manufacturing Co.* , No. 23-CV-8959 (PKC) (JMW), 2024 WL 263010, at *2 (E.D.N.Y. Jan. 24, 2024) (citation and quotation marks omitted).<br><br>Here, applying these factors, the Court finds that a stay is warranted. *See Johnson v. N.Y. Univ. Sch. of Educ.* , 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[A] stay of discovery is appropriate [ ] where the motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law." (citation omitted)). |

| | | |
|---|---|---|
| | | All discovery is stayed pending resolution of the dispositive motion currently pending before the Court. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (GWM) (Entered: 03/03/2025) |
| 09/30/2025 | 56 | MEMORANDUM AND ORDER. The case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court. Ordered by Judge Ann M. Donnelly on 9/30/2025. (DG) (Entered: 09/30/2025) |

Filing # 234083517 E-Filed 10/21/2025 09:00:48 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC,
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________________/

**NOTICE OF HEARING ON PLAINTIFF'S OBJECTION**
**TO DEFENDANTS' MOTION TO SUBSTITTUE COUNSEL OF RECORD**

PLEASE TAKE NOTICE that the undersigned schedules the below hearing as follows:

Matter: Plaintiff's Objection to Defendants' Motion to Substitute Counsel of Record, filed October 14, 2025

Date: Monday, November 10, 2025

Time: 11:15 a.m. Central Time (30-minutes Reserved)

Location: In-person before The Honorable Judge Jennifer Frydrychowicz
M.C. Blanchard Building
190 Governmental Center

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact:**

**Court Administration, ADA Liaison**
**Escambia County**
**190 Governmental Center, 5th Floor**
**Pensacola, FL 32502**
**Phone (850) 595-4400 Fax (850) 595-0360**
**ADA.Escambia@flcourts1.gov**

**at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

*/s/ Jacob F. Barnes*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished to all counsel and parties via the Florida E-portal this 21st day of October, 2025.

*/s/ Jacob F. Barnes*
**JACOB F. BARNES**

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________________/

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC P PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, and THOMAS P. KURLAND, move to dismiss the First Amended Complaint by Plaintiff, JOHN D. LEVITAN, SR., for the reasons advanced in the Defendants' Memorandum in Support of Motion to Dismiss filed contemporaneously with this Motion**.**

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that conferral prior to filing is not required under rule 1.202.

*/s/ Jeremy C. Branning*
JEREMY C. BRANNING

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court and served via the Florida Courts E-Filing Portal and United States Mail to:

John D. Levitan, Sr., pro se
511 Windrose Circle
Pensacola, FL 32507
jdlsr@gileadfraud.com
legal@gileadfraud.com

*/s/ Jeremy C. Branning*
JEREMY C. BRANNING

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR ESCAMBIA COUNTY, FLORIDA

JOHN D. LEVITAN, SR.,

Plaintiff,

Case No. 2024 CA 001164

-v-

GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, and THOMAS P. KURLAND,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT .....3

BACKGROUND AND PROCEDURAL HISTORY .....4

LEVITAN'S OPERATIVE ALLEGATIONS .....9

ARGUMENT .....11

**I.** STANDARD OF REVIEW .....12

**II.** LEVITAN'S CONSTITUTIONAL CLAIMS FAIL TO ARTICULATE ANY COGNIZABLE CAUSES OF ACTION FLORIDA LAW .....13

**III.** LEVITAN'S DEFAMATION CLAIMS ARE PROCEDURALLY AND SUBSTANTIVELY DEFECTIVE .....14

A. Levitan's Defamation Claims are Time Barred .....14

B. Levitan's Defamation Claims are Barred by the Judicial Privilege .....15

**IV.** LEVITAN HAS FAILED TO ASSERT ANY INDEPENDENT CAUSES OF ACTION AGAINST DEFENDANT JOSHUA STEIN .....17

CONCLUSION .....17

Defendants Gilead Sciences, Inc. and Gilead Sciences Ireland UC (together "Gilead") and Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland (together "PBWT Defendants") respectfully submit the following memorandum of law in support of their motion to dismiss Plaintiff John D. Levitan Sr.'s ("Levitan") operative complaint for failure to state a cause of action.

## PRELIMINARY STATEMENT

This lawsuit is a last-ditch ploy by a convicted money launderer who was caught red-handed distributing millions of dollars' worth of counterfeit Gilead-branded HIV medicine to turn the tables on his victims and accusers. Rather than litigate the counterfeiting case against him on the merits, Levitan has instead filed this lawsuit to collaterally attack Gilead and its attorneys.

While not critical for this motion, it is important to note that the core of this lawsuit is Levitan's wildly false premise that a publicly traded corporation and a New York law firm orchestrated a conspiracy to defame him, break into his home and search through his possessions, and coerce law enforcement into committing perjury, all without any authorization and for no reason whatsoever. This theory is roundly contradicted by uncontested facts in the federal litigation dockets that Levitan cites in his First Amended Complaint. But for purposes of this motion, all that matters is that Levitan's First Amended Complaint makes legal claims that are futile on their face.

First, though three of his counts allege violations of the Florida Constitution, Levitan fails to identify any vehicle for asserting any private right of action against Defendants flowing from those alleged harms. Levitan also fails to appreciate the fundamental fact that the Florida Constitution applies only to government action and cannot itself support any claim for damages against private actors.

Second, the supposedly defamatory statements that underpin his two remaining counts were all (1) made outside the relevant limitations period; (2) made in judicial filings, which are absolutely shielded from liability for libel and slander; and (3) are in any event true.

For all these reasons, as set forth in more detail below, Levitan has failed to state a claim against Defendants, he cannot cure this failure, and his lawsuit should be dismissed with prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

The immediate procedural history of this case began on September 2, 2024, when Levitan first sued Defendants in this Court. (*See* Original Complaint attached as Exhibit A.) But it actually began more than two years earlier, on August 11, 2022, when Gilead (represented by the PBWT Defendants) brought suit in the United States District Court for the Eastern District of New York against Levitan—a convicted felon who served 12 years in federal prison for money laundering—for conspiring to distribute dangerous counterfeit Gilead-branded HIV medicine to unsuspecting patients throughout the United States. *See generally Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 1:21-cv-4106-AMD-JAM (E.D.N.Y.) (the "Counterfeiting Action") at ECF Nos. 630, 782.[1]

As a result, and pursuant to the Lanham Act as codified at 15 U.S.C. § 1116(d), the U.S. District Judge presiding over the Counterfeiting Action issued an asset freeze order, temporary restraining order, and—crucially for purposes of this case—a seizure order against Levitan, which the PBWT Defendants (acting on behalf of Gilead) executed at Levitan's residence in Pensacola,

---

[1] In this submission, Defendants present only a brief summary of the lengthy and contentious history of litigation between Levitan and Gilead over the past several years. For more details, Defendants respectfully refer the Court to the ECF dockets of this action while it was pending in Federal Court (Nos. 3:24-cv-00475-MCR-ZCB (N.D. Fla.) and 1:25-cv-00393-AMD-JAM (E.D.N.Y.)), and the ECF Dockets in the Counterfeiting Action (No. 1:21-cv-4106-AMD-JAM (E.D.N.Y)); Levitan's sham bankruptcy proceedings in the Southern District of Florida, which were dismissed with sanctions (*In re: John D. Levitan*, No. 23-19295-CLC (Bankr. S.D. Fla.)); and Levitan's appeal of that bankruptcy dismissal, which was dismissed with prejudice (*Levitan v. Gilead Sciences, Inc., et al.*, No. 1:21-cv-23205-KMW (S.D. Fla.)).

Florida on August 18, 2022. *See generally* Counterfeiting Action ECF Nos. 627, 628, 629, 748, 823. Despite being represented at the time and having notice of these events, Levitan did not appear in the Counterfeiting Action, and the seizure was confirmed and a preliminary injunction entered against him on October 10, 2022. *See id.* September 7, 2022 Minute Entry. Thereafter, the Clerk of the Eastern District of New York entered Levitan's default in the Counterfeiting Action on October 28, 2022. *Id.* at ECF No. 839. This should have been the end of this story; unfortunately for Defendants, it was only the beginning.

Almost a year after Levitan defaulted in the Counterfeiting Action, his counsel (with whom Gilead had been in touch since the day Levitan was served) first appeared in that case and moved to vacate the default on the grounds that Levitan was improperly served. *See* Counterfeiting Action ECF No. 1150. Gilead opposed. *See id.* ECF No. 1159. Ultimately, the Court brokered a compromise: Levitan's default would be vacated provided he agreed to answer the Counterfeiting Action, participate in discovery, and make certain disclosures before the December 31, 2023 fact discovery cutoff in that case. *See generally id.* at ECF Nos. 1169, 1176, 1176-1, 1201, 1207, 1207-1, 1207-2, and 1210. But this never happened.

Instead, Levitan's counsel withdrew, and on November 10, 2023, the day Levitan's promised disclosures were due, Levitan did not serve them and instead filed bankruptcy in the Southern District of Florida, which triggered an automatic stay of the Counterfeiting Action. *See generally In re: John D Levitan* (Bankr. S.D. Fla.), No. 23-19295 (CLC) (the "Bankruptcy Action"); *see also* Counterfeiting Action, ECF No. 1247. Levitan's bankruptcy lasted for almost a year but went nowhere. Levitan refused to meaningfully participate in discovery of his own assets and liabilities or make disclosures required by the bankruptcy code, and his petition was ultimately dismissed with a two-year filing bar as a sanction (as well as a fees award to Gilead).

*See generally* Bankruptcy Action ECF No. 139. That dismissal—and its attendant sanctions—was affirmed by the U.S. District Court for the Southern District of Florida, which dismissed Levitan's appeal of his bankruptcy dismissal with prejudice. *See id*. at ECF No. 166.

However, the Bankruptcy Action was revelatory in certain respects: During those proceedings Levitan admitted he only filed bankruptcy to frustrate Gilead's ability to pursue him in the Counterfeiting Action. He further asserted his Fifth Amendment right not to answer *any questions* about his role in the conspiracy at the center of the Counterfeiting Action, including his relationship with his co-defendants (some of whom who have now pled guilty to selling counterfeit Gilead-branded HIV medicine) or the millions of dollars he received from them—all of which is well-documented in records he was shown and corroborated by his co-defendants' testimony. *See generally* Counterfeiting Action, ECF No. 1453 at 7, 11, 13-15.

After the Bankruptcy Action was dismissed and the attendant stay was lifted, Gilead promptly moved to restore Levitan's default in the Counterfeiting Action. *See generally* Counterfeiting Action, ECF Nos. 1452-1455. Levitan responded by filing a letter to the Court in the Counterfeiting Action on September 4, 2024 stating his intent to file a suit in Florida against Gilead and the PBWT Defendants instead. *See id.* at ECF No. 1473. On September 12, 2024, Levitan failed to appear at a hearing on Gilead's motion to restore his default in the Counterfeiting Action, despite the fact that he was personally served with notice of that hearing on more than one occasion. *See id.* September 12, 2024 Minute Entry and Order; *see also id.* at ECF. No. 1472. Finding that Levitan failed to comply with the prior stipulation vacating his default in the Counterfeiting Action, the presiding Magistrate Judge reinstated Levitan's default in that case the very same day. *See id.*

Meanwhile, Levitan filed this case, in which he claims that Gilead and the PBWT Defendants conspired to violate his constitutional rights and defame him when they sought and then executed the civil seizure order against him that had been issued in the Counterfeiting Action. (*See generally* Amended Complaint.) The PBWT Defendants, who were served first, removed this case to the U.S. District Court for the Northen District of Florida on October 3, 2024, where it was assigned Case No. 3:24-cv-00475-MCR-ZCB (N.D. Fla.) (the "N.D. Fla. Docket"). (*See* Notice of Removal attached as Exhibit B.) Thereafter, the PBWT Defendants also moved to transfer this case to the Eastern District of New York and sought to stay their time to answer or otherwise respond to Levitan's complaint until 10 days after said transfer was ruled upon. (*See* N.D. Fla. Docket ECF No. 3.) When Gilead was ultimately served in this case, it joined in both motions. (*See id.* ECF Nos. 15-17.) Defendants' stay motions were promptly granted. (*See id.* ECF Nos. 10, 19.)

While Defendants' transfer motion was pending, however, Levitan moved to remand this case to this Court on the basis that federal subject matter jurisdiction was lacking. (*See* N.D. Fla. Docket ECF No. 7.) Finding this case raised federal questions, Magistrate Judge Bolitho recommended that remand be denied on November 12, 2024. (*See id.* ECF No. 21.) Judge Rodgers adopted that report on December 31, 2024. (*See id.* ECF No. 28.)

In response, Levitan filed his First Amended Complaint (the "FAC"), which remains the operative complaint in this action. (*See* FAC attached as Exhibit C.) The FAC is substantively identical to Levitan's original complaint except it replaces references to the United States Constitution in favor of references to nearly identical provisions of the Florida Constitution and expressly reduces the amount of damages he seeks to "no greater than $70,000." *See generally id.* Levitan also opposed Gilead's transfer motion. *See* N.D. Fla. Docket ECF No. 24.

On January 6, 2025, while Defendants time to answer Levitan's complaint remained stayed, Magistrate Judge Bolitho recommended that Defendants' transfer motion be granted, Levitan did not timely object, and this matter was transferred to the Eastern District of New York Court on January 23, 2025, where it was assigned Case Number 1:25-cv-00393-AMD-JAM (E.D.N.Y.) (the "E.D.N.Y. Docket"). (*See* N.D. Fla. ECF Nos. 34, 35.) On January 31, 2025, Defendants filed a motion to dismiss in that forum. (*See* E.D.N.Y. Docket ECF No. 42.) Subsequently, Gilead moved for a default judgment, damages, and a permanent injunction against Levitan in the Counterfeiting Action. (Counterfeiting Action, ECF No. 1607.) To date, Levitan has not opposed Gilead's motion in the Counterfeiting Action.

Thereafter, Levitan renewed his objections to transfer of this case in the Eastern District of New York and his objections to federal jurisdiction in that forum. (*See generally* E.D.N.Y. Docket ECF Nos. 47, 49.) On September 30, 2025, the E.D.N.Y. court, relying on the U.S. Supreme Court's January 15, 2025 ruling in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025), agreed with Levitan that remand of his case to this Court was appropriate. (*See id.* ECF No. 56.) Specifically, without commenting on the sufficiency of the FAC or the validity of Levitan's claims, the E.D.N.Y. court found that since Levitan had excised all references to federal law in his amended pleading and had not pled an amount in controversy in excess of $75,000, federal jurisdiction was lacking. (*Id.*) The E.D.N.Y. court accordingly remanded the case to this Court without first ruling on Defendants' still-pending motion to dismiss. (*Id.*)

On October 6, 2025, this case was formally remanded and reactivated on this Court's docket. (Notice of Remand.) Thus, as it stands, the FAC—Levitan's operative pleading—remains unanswered, and Defendants' timely-filed dismissal motion remains unadjudicated. Defendants' dismissal arguments set forth below are therefore fully preserved and timely made. (*See* Notice of

Agreement (notifying that both parties agreed that Defendants had until October 29, 2025 to respond to the FAC).)

## LEVITAN'S OPERATIVE ALLEGATIONS

In the FAC, Levitan alleges that Defendants—Gilead (a publicly-traded pharmaceutical company and its subsidiary) and the PBWT Defendants (Gilead's outside law firm, four of its members, and one of its former associates[2])—"have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making . . . false and accusatory and defamatory statements, publishing them to the public, that were substantially and purposely spread and made available to the news media . . . ." (*See* Ex. C. at ¶¶ 3-9, & 15.)

Levitan's factual allegations focus primarily on two separate categories of activity by Defendants. First, Levitan complains about the allegations that Gilead made against him—by and through its counsel the PBWT Defendants—in the Fourth Amended Complaint Gilead filed in its Counterfeiting Action on August 11, 2022. (*See id.* ¶ 15(a)-(h); *see also id*. at 11-13 (excerpts from Gilead's EDNY Complaint).) He also complains that some of these allegations were repeated in a newspaper article published by a reporter named Jim Little in the Pensacola News Journal. (*See id*. at 14-15.)

Second, Levitan complains about Defendants' execution of the civil seizure order that Gilead obtained in the Counterfeiting Action, which allegedly occurred on August 17, 2022. (*See id*. at ¶¶ 17-24.) Specifically, he claims that "Defendant(s) and Thomas Kurland unlawfully gained

---

[2] Defendant Joshua Stein was employed as an associate at Patterson Belknap Webb & Tyler LLP—and in that capacity had appeared on behalf of Gilead in the Counterfeiting Action—until June 17, 2022. He withdrew as counsel for Gilead on June 15, 2022, prior to the events alleged in the FAC having taken place. *See* Counterfeiting Action, ECF No. 590. (*Cf.* Ex. C ¶ 15, & p. 11-13.)

entry and entered the Plaintiffs [sic] private home and personal residence . . . through an unlocked back door . . .to seek and surreptitiously search through the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a government entity to break in to the Plaintiff's house." Levitan also complains that Defendants served him with a faulty Summons (*see id*. at ¶¶ 18-20); filed two "false" or "fake" Affirmations of Service in Counterfeiting Action (*see id*. at ¶¶ 22-24); and otherwise conducted a search of his home "without a warrant, consent, or exigent circumstances justifying a warrantless search." (*Id*. at ¶ 24.)

Out of these factual allegations, Levitan asserts five purported causes of action against all Defendants. The first three counts all allege constitutional harms under the Florida constitution: Count I, styled as "Violation of Florida Civil Rights Warrantless Search by Private Persons," claims "Defendant(s) violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of Article I, Section 12 of the Florida Constitution . . . ." (*Id*. at ¶31.) Count II, styled as "Violation of Florida Civil Rights to Privacy," claims "Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's right to privacy in violation of Article I, Section 23 of the Florida Constitution . . . ." (*Id*. at ¶ 34.) Count III, styled as "Violation of Florida Civil Rights Freedom of Speech and Association," claims "Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent Plaintiff from speaking with other individuals and curtail his right to speech . . . in violation of Article I, Section 23 of the Florida Constitution . . . ." (*Id*. at ¶ 37.)

The last two counts sound in defamation. Count IV, styled as "Libel," claims "Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties" and "were untrue, harmful to Plaintiff's reputation, and made with actual malice or

reckless disregard for their truth or falsity." (*Id*. at ¶¶ 40-41.) Count V, styled as "Slander," claims "Defendant(s) made spoken false defamatory statements about Plaintiff to third parties," and "these statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth." (*Id*. at ¶¶ 18-19.) Neither Count IV nor Count V identifies any particular communication, provides any indication of who made that communication, when that communication was made, or to whom it was communicated. (*See id*. ¶¶18-19, 40-41.)

For each of the harms alleged, Levitan's operative Complaint seeks only money damages. (*See id*. at 10.)

## ARGUMENT

Levitan's purported claims all arise from a core set of facts: In August of 2022, the PBWT Defendants, acting on behalf of Gilead, filed a litigation complaint against Levitan in the United States District Court for the Eastern District of New York alleging that Levitan had previously served time in prison for felony money laundering and was then engaged in a conspiracy to sell counterfeit Gilead-branded HIV medicine. Based on the evidence Gilead submitted, the District Court issued and Defendants executed a civil seizure order at Levitan's residence. (*See id*. ¶¶12-24.) The seizure was executed while no one was home and the home was unlocked, with assistance of the Escambia County Sheriff's deputies and in the presence of a paralegal from Levitan's lawyer's office. (*See id*. ¶¶12-24.)

These facts, taken as true, do not give rise to any of the causes of action that Levitan has pled. Levitan's three purported constitutional claims against Defendants fail because Florida law does not recognize either a common-law duty or damages cause of action under the Sections of Article I of the Florida Constitution upon which Levitan now relies. And Levitan's purported defamation claims fail because (1) they are time barred; (2) he has not identified any *spoken*

statements made by Defendants; and (3) the only written statements made by Defendants that he has identified were made in legal pleadings, which are absolutely privileged as a matter of law.

Distilled to its essence, Levitan's lawsuit against Defendants is nothing more than an obvious attempt to deter Gilead from pursuing the Counterfeiting Action against him. Levitan has no legal basis to pursue this contrived collateral attack. Thus, Levitan's suit should be dismissed with prejudice.

## I. STANDARD OF REVIEW

"A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor of the nonmoving party." *The Fla. Bar v. Greene*, 926 So. 2d 1195, 1199 (Fla. 2006). "The question for the trial court to decide is simply whether, assuming all the allegations in the complaint to be true, the plaintiff would be entitled to the relief requested." *Huet v. Mike Shad Ford, Inc.*, 915 So. 2d 723, 725 (Fla. 5th DCA 2005). Where a complaint fails to state a cause of action, even assuming the truth of the allegations, the complaint should be dismissed. *Id.*

While "*pro se* pleadings are to be construed liberally and not held to the same technical standards as pleadings by a licensed attorney," "the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." *James v. Crews*, 132 So. 3d 896, 899 (Fla. 1st DCA 2014) (quotation marks and citations omitted). "Further, leniency in construing pleadings does not allow a court to re-draft the substance of a claim because a court cannot assist the pro se litigant to the detriment of the opposing party or to the point that the impartiality of the tribunal can be called into question." *Id.* (quotation marks and citation omitted).

## II. LEVITAN'S CONSTITUTIONAL CLAIMS FAIL TO ARTICULATE ANY COGNIZABLE CAUSES OF ACTION FLORIDA LAW

Levitan's first three "causes of action," as they are called in the FAC, are not causes of action at all: they are bare statements that Levitan's Florida constitutional rights were supposedly violated. Levitan does not identify any private right of action to redress these supposed constitutional violations because no such cause of action exists under Florida law. The Court can and must dismiss these claims on that basis.

For his first substantive count, Levitan claims that Defendants' search of his home violated Article I, Section 12 of the Florida Constitution. (*See* Ex. C. at ¶¶30-32.) But Florida courts have long recognized that "no cause of action exists for money damages" for violating Article I, Section 12, of the Florida Constitution. *See Haney v. Garcia*, No. 8:13cv2928, 2015 WL 127791 at *3 (M.D. Fla. Mar. 20, 2015) (dismissing a cause of action brought under Article, Section 12 of the Florida Constitution) (quotation omitted); *see also Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th DCA 2004) ("[N]o cause of action exists for money damages for a violation of a state constitutional right.").

For his second and third causes of action, Levitan claims that Defendants violated his right to privacy pursuant to Article I, Section 23 of the Florida Constitution, which provides "the right to be let alone and free from governmental intrusion into the person's private life." (*See* Ex. C at ¶¶33-38.) Because the Florida constitutional right to privacy is expressly limited to *governmental intrusion*, the Florida Supreme Court has held that "the privacy provision of the Florida Constitution obviously creates no cause of action against private persons"—even if those private persons are alleged to be acting under color of governmental authority. *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1994); *see also Gilbert v. Sears, Roebuck and Co.*, 899 F. Supp. 597, 599 (M.D. Fla. 1995) (granting summary judgment for defendant on Florida "Right of Privacy" claim);

*Haney*, 2015 WL 127791 at *3 (dismissing claim for money damages brought under Article I, Section 23 of the Florida Constitution).

Because it is black-letter law that there is no private right of action attached to the two Florida constitutional provisions that form the sole basis of Levitan's counts I through III, these counts fail to state a claim upon which relief can be granted and must be dismissed with prejudice.[3]

## III. LEVITAN'S DEFAMATION CLAIMS ARE PROCEDURALLY AND SUBSTANTIVELY DEFECTIVE

Levitan's remaining counts IV and V are common-law claims for libel and slander. Though each is at least superficially *cognizable* against private actors such as Defendants, in this case both are as facially defective as Levitan's constitutional claims and must be dismissed: They are time barred, and in any event are barred by the judicial privilege.

### A. Levitan's Defamation Claims are Time Barred

As noted, Levitan's Counts IV and V are defamation claims that arise from Gilead's filing of its Fourth Amended Complaint in the Counterfeiting Action, which took place on **August 12, 2022**. (*See generally* Counterfeiting Action, ECF No. 630.) At the latest, Levitan learned of Gilead's claims when he was served with Gilead's complaint during the seizure at his residence

[3] Levitan also asserts in passing that Defendants have violated his rights protected by Article I, Sections 4 and 5 of the Florida Constitution. (*See* Ex. C at ¶27.) Section 4 states, in pertinent part, that "[e]very person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right." Fla. Const. Art. I, § 4. Section 5 states that "[t]he people shall have the right peaceably to assemble, to instruct their representatives, and to petition for redress of grievances." Fla. Const. Art. I, § 5. Levitan has not identified any facts indicating that his rights to speak or assemble were abridged, and the judicially-noticeable records of his conduct in his other litigations with Gilead since the events alleged in his complaint took place tell a markedly different story. So to the extent these allegations can even be considered a legal claim, such a claim can be dismissed out of hand as implausible. But even more fundamentally, they can also be dismissed because, as with Levitan's Counts I, II, and III, the Florida Constitution similarly does not create a private cause of action against non-government actors for any of these alleged harms. *See, e.g.*, *Watts v. Florida International University*, Case no. 02-60199-CIV, 2005 WL 3730879, at *11 (S.D. Fla. Jun. 9, 2005) ("[D]amages are not available for violations of the Florida Constitution's speech and religion provisions"), *vacated on other grounds* 495 F3d 1289 (11th Cir. 2007); *cf. Depaola*, 872 So. 2d at 380 ("[N]o cause of action exists for money damages for a violation of a state constitutional right.").

which he alleges took place on August 17, 2022. (*See* Ex. C at ¶17.) Levitan originally filed this lawsuit on **September 2, 2024**. (*See* Ex. A.)

Florida's statute of limitations for a claim sounding libel or slander is only *two years* from the date of initial publication of the allegedly defamatory statement, and no delayed discovery rules apply. *See* Fla. Stat. Ann. § 95.11(h) (2024); *Hollis v W. Academy Charter, Inc.*, 782 F App'x 951, 953 (11th Cir. 2019) (citing *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*, 793 So. 2d 1127, 1127–28 (Fla. 5th DCA 2001)).

Thus, because Levitan filed his complaint more than two years after Defendants published and/or uttered the allegedly defamatory statements in question, Levitan's defamation claims are time-barred in their entirety and should be dismissed on that basis alone.

### B. Levitan's Defamation Claims are Barred by the Judicial Privilege

Even if it could be considered timely, Levitan's Count IV, pled as libel, fails *ab initio* because, as noted, the only allegedly libelous statements that Levitan has identified were written in Gilead's litigation complaint, filed in the Counterfeiting Action in this Court. (*See* Ex. C at ¶15, & pp. 11-13 (attaching Gilead's filings in the Counterfeiting Action); *see also* Counterfeiting Action, ECF No. 778 (Unsealed Fourth Amended Complaint) at ¶¶106-109, 270-276.) These statements therefore meet the definition of judicially-privileged conduct which cannot give rise to a claim for defamation as a matter of law. And Count V, pled as slander, would also fail for the very same reason if Levitan had identified a *spoken* statement by Defendants at all—but since he has not, that claim must also be dismissed as implausible. (*See generally* Ex. C at ¶¶17-20 at pp. 9-10 (failing to identify any spoken statements of any kind).)

Judicial privilege is an absolute bar to the defamation claims Levitan has alleged. The Florida Supreme Court has held that "[t]raditionally, defamatory statements made in the course of

judicial proceedings are absolutely privileged, no matter how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So 2d 606, 607-608 (Fla. 1994) (*citing Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992)). "Consequently, the torts of perjury, libel, slander, defamation, and similar proceedings that are based on statements made in connection with a judicial proceeding are not actionable." *Id.*; *see also Jackson v. BellSouth Telecommunications*, 372 F. 3d 1250, 1274 (11th Cir. 2004) ("Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings.").

Here, *all* of the allegedly defamatory statements that Levitan has identified in his Complaint were made by a party (Gilead) and its counsel (the PBWT Defendants) in the context of and pertinent to an ongoing litigation—the Counterfeiting Action. (*See* Ex. C at ¶15 (a)-(h).) As the cases cited above make clear, each such statement is subject to the judicial privilege that exists under Florida law, and none can form the basis of a defamation claim—sounding in libel or slander—as a matter of law. This remains true even if the statements Levitan has identified were knowingly false or made with malice—which Defendants resolutely deny. But it would not matter: judicial privilege is an absolute bar to Levitan's defamation claims.

Finally, giving his complaint the broadest possible interpretation, Levitan may also be purporting to claim that Defendants should be liable for statements about the Counterfeiting Action which were published in a newspaper article. (*See* Ex. C at ¶15, & pp. 14-77.) Even if these alleged statements were not considered to be within the judicial privilege, it is black-letter law that Defendants cannot be legally responsible for statements they did not make, nor can they be liable for the republication of allegedly defamatory statements when there is no evidence they were involved in the republication. *See Della-Donna v Nova Univ., Inc.*, 512 So 2d 1051, 1056 (Fla.

4th DCA 1987) (concluding that even if defendant gave defamatory materials to non-party newspaper, because those materials were litigation papers they were protected by judicial privilege); *Geraci v. Probst*, 938 N.E. 2d 917, 921 (N.Y. 2010). Thus, the newspaper article attached to the complaint provides no independent basis for liability.

In sum, even if they were not time-barred on their face, because the only statements Levitan identifies as allegedly defamatory were made in the context of ongoing litigation, they are protected by an absolute privilege, and Levitan's defamation claims must be dismissed.

## IV. LEVITAN HAS FAILED TO ASSERT ANY INDEPENDENT CAUSES OF ACTION AGAINST DEFENDANT JOSHUA STEIN

Even if Levitan were able to assert a cause of action against Gilead or the other PBWT Defendants, he has not asserted any particularized facts against Defendant Joshua Stein linking him to any of the activities alleged. *See, e.g.*, *Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. 2nd DCA 2002) (elements of defamation claims require that "*the defendant* published a false statement") (emphasis added)); *Razner v. Wellington Reg'l Med. Ctr., Inc.*, 837 So. 2d 437, 442 (Fla. 4th DCA 2002) (same). Because Levitan's First Amended Complaint fails to allege that Defendant Joshua Stein published any false statement about Levitan, the claims against Mr. Stein should be dismissed on this basis as well.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff John D. Levitan Sr.'s First Amended Complaint with prejudice.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court and served via the Florida Courts E-Filing Portal and United States Mail to:

John D. Levitan, Sr., *pro se*
511 Windrose Circle
Pensacola, FL 32507
jdlsr@gileadfraud.com
legal@gileadfraud.com

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**

# EXHIBIT A

Filing # 206010594 E-Filed 09/02/2024 11:15:50 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO.

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_______________________________________/

**COMPLAINT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

**PARTIES**

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the

laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the subject matter of this action pursuant to Article V, Section 5 of the Florida Constitution and Chapter 26 of the Florida Statutes.

11. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

12. The damages subject of this action exceeds $50,000.00.

**STATEMENT OF FACTS**

13. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional and US Constitutional rights of the Plaintiff.

14. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

15. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

16. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.

b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.

d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\

f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the

Eastern District of New York (the "First Affidavit") whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s) was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

## COUNT I
## VIOLATION OF CIVIL RIGHTS WARRANTLESS SEARCH BY PRIVATE PERSONS

30. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

31. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in

their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

32. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorneys fees.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS RIGHT TO PRIVACY**

33. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

34. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

35. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS FREEDOM OF SPEECH AND ASSOCIATION**

36. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

37. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

38. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT IV**
**LIBEL**

39. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

40. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

41. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

42. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT V**
**SLANDER**

17. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

18. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

19. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

20. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, costs of the action and attorney's fees.

**DEMAND FOR JURY TRIAL**

21. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory damages in an amount to be determined at trial;
ii. For punitive damages;
iii. For an award of costs, including reasonable attorney's fees;
iv. For such other and further relief as the Court deems just and proper.

Dated: September 2, 2024

Respectfully submitted,

/s/ John D. Levitan, Sr.

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

## G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal

NEWS

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says



Jim Little
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

-------------------------------------------------------------x

Case No. 21-cv-4106 (AMD) (RER)

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)**

**AFFIRMATION OF SERVICE**

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

ECSO 82

Ryan Robinson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILEAD SCIENCES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAFE CHAIN SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 21-cv-4106 (AMD) (RER)<br><br>**AFFIRMATION OF SERVICE UPON JOHN LEVITAN** |

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

# EXHIBIT B

Filing # 208225915 E-Filed 10/03/2024 04:52:14 PM

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR ESCAMBIA COUNTY, FLORIDA

JOHN D. LEVITAN, SR., Case No: 2024-CA-001164

Plaintiff,

v.

GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND

Defendants.

**NOTICE OF FILING NOTICE OF REMOVAL**
**TO THE UNITED STATES DISTRICT COURT**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, Defendants PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND, hereby gives notice to Plaintiff JOHN D. LEVITAN, SR. and to the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida that the above-captioned action has been removed to the United States District Court for the Northern District of Florida, Pensacola Division. A copy of the Notice of Removal without exhibits is attached as **Exhibit A.**

In accordance with 28 U.S.C. § 1446(d), the filing of this Notice of Filing Notice of Removal immediately effects the removal of this action to federal district court, and the state court shall proceed no further with this action unless and until this case is remanded.

Date: October 3, 2024

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON

/s/ *Hannah Murphy*
Jay B. Shapiro
Florida Bar No. 776361
150 West Flagler Street
Suite 2200
Miami, FL 33130
T: 305-789-3200
F: 305-789-2664
E: jshapiro@stearnsweaver.com

*and*

Hannah Murphy
Florida Bar No. 1032759
106 East College Avenue, Suite 700
Tallahassee, Florida 32301
T: 850-580-7200
F: 850-329-4861
E: hmurphy@stearnsweaver.com
E: lrussell@stearnsweaver.com

*Attorneys for Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of October, 2024, I electronically filed the foregoing with the Clerk of the Court and served via the Florida Courts E-Filing Portal to:

*John D. Levitan, Sr.*
511 Windrose Circle
Pensacola, FL 32507
jdlsr@gileadfraud.com
legal@gileadfraud.com

/s/ *Hannah Murphy*
Hannah Murphy

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN D. LEVITAN, SR.

Plaintiff,

v.

GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND

Defendants.

Case No. 24-cv-______

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that defendants Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland (collectively, "Removing Defendants"), by and through their undersigned counsel and pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, hereby remove the civil action entitled *Levitan v. Gilead Sciences, Inc. et al*., pending in the Circuit Court of the First Judicial Circuit in and for Escambia County,

Florida, Case No. 2024-CA-001164, to the United States District Court for the Northern District of Florida.[1]

As required by 28 U.S.C. § 1446(a), a short and plain statement of the grounds for removal is set forth below:

1. On September 2, 2024, Plaintiff commenced this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida. As required by 28 U.S.C. § 1446(a), attached hereto as **Exhibit 1** are true and correct copies of all process, pleadings, orders, and other papers or exhibits filed in the state court prior to removal.

2. On September 16, 2024 Plaintiff personally served defendants Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, and Thomas P. Kurland (hereinafter the "PBWT Defendants") by delivering a copy of the summons and complaint in this action to their usual place of business.

---

[1] By invoking their right to remove this diversity action to this court, Removing Defendants do not waive and hereby expressly preserve any defenses, objections, or responsive pleadings which are or may become available to them under state or federal law, including but not limited to Removing Defendants' right to seek dismissal of some or all of Plaintiff's claims for failure to state a claim, collateral estopped, *res judicata*, or any other applicable grounds.

3. Removal is therefore timely because fewer than 30 days have elapsed since the PBWT Defendants were served in this action. *See* 28 U.S.C. § 1446(b)(1) (notice of removal "shall be filed within 30 days" of service upon any defendant).

4. As of the date of this Notice, Plaintiff has not completed service upon defendants Gilead Sciences, Inc., Gilead Ireland UC, or Joshua Stein. As such, because these defendants have not been "properly joined and served," they need not consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A).[2]

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because, as set forth below, this suit is between "citizens of different States," and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

6. At the time Plaintiff John D. Levitan Sr. commenced this civil action and at all times since, he has been, on information and belief, "an individual residing at 511 Windrose Circle, Pensacola, Florida 32507 in Escambia County, Florida." *See* Compl. ¶ 1. Plaintiff is therefore a citizen of Florida for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1)

---

[2] Defendant Joshua Stein, a former associate attorney at Patterson Belknap Webb & Tyler LLP who is no longer employed by the firm, has not been properly served in this action because the PBWT Defendants have not been authorized to accept service on his behalf. He therefore *expressly preserves* the defense of improper service. However, he is being represented in this action by the undersigned and nevertheless consents to this removal.

7. At the time Plaintiff commenced this civil action and at all times since, defendant Gilead Sciences, Inc. has been, on information and belief, a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business in Foster City, California, and Plaintiff does not allege otherwise. *See e.g.*, Compl. ¶ 2. Defendant Gilead Sciences, Inc. is therefore a citizen of the states of Delaware and California for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c).

8. At the time Plaintiff commenced this civil action and at all times since, defendant Gilead Sciences Ireland UC has been, on information and belief, a foreign corporation organized and existing under the laws of Ireland that maintains its principal place of business in Cork, Ireland, and Plaintiff does not allege otherwise. *See, e.g.*, Compl. ¶ 3. Defendant Gilead Sciences Ireland UC is therefore a citizen of Ireland for purposes of diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a)(4); 1332(c)(1).

9. At the time Plaintiff commenced this civil action and at all times since, defendant Patterson Belknap Webb & Tyler LLP, a law firm, has been a limited liability partnership organized and existing under the laws of New York that maintains its principal place of business in New York, New York, and Plaintiff does not allege otherwise. *See e.g.*, Compl. ¶ 4. Defendant Patterson Belknap Webb & Tyler LLP's partnership is comprised of natural persons who are themselves citizens



15298920v.1

of the states of New York, New Jersey, Connecticut, and Pennsylvania. Defendant Patterson Belknap Webb & Tyler LLP is therefore a citizen of New York, New Jersey, Connecticut and Pennsylvania for purposes of diversity jurisdiction. *See, e.g.*, *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004) (*citing Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)) ("[F]or purposes of diversity of citizenship, a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens.")

10. At the time Plaintiff commenced this civil action and at all times since, defendant Geoffrey Potter has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in New York, New York. Defendant Geoffrey Potter is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

11. At the time Plaintiff commenced this civil action and at all times since, defendant Timothy Alan Waters has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in Brooklyn, New York. Defendant Timothy Alan Waters is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

12. At the time Plaintiff commenced this civil action and at all times since, defendant Aron Fischer has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in Brooklyn, New York. Defendant Aron Fischer is

therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

13. At the time Plaintiff commenced this civil action and at all times since, defendant Thomas P. Kurland has been a natural person and member Patterson Belknap Webb & Tyler LLP residing in New York, New York. Defendant Thomas P. Kurland is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

14. At the time Plaintiff commenced this civil action and at all times since, defendant Joshua Stein has been a natural person residing in Brooklyn, New York. Defendant Joshua Stein is therefore a citizen of New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

15. Accordingly, because Plaintiff is a citizen of the State of Florida and Defendants are variously citizens of the States of California, Delaware, New York, New Jersey, Connecticut, and Pennsylvania, and the sovereign foreign nation of Ireland, the parties are "citizens of different States and citizens or subjects of a foreign state," thereby satisfying the requirement for complete diversity of citizenship amongst Plaintiff and Defendants. *See* 28 U.S.C. § 1332(a).

16. Additionally, the amount in controversy in this action—as pled—plausibly exceeds $75,000, exclusive of interest and costs. *See* 28 USC § 1332(a). Plaintiff alleges that "the damages subject of this action exceeds $50,000," Compl.



15298920v.1

¶ 12, and asserts various tort-based causes of action arising from claimed violations of his constitutional rights (*see* Count I, Count II, and Count III) and defamation (Count IV and Count V). For each count, Plaintiff seeks compensation for, *inter alia* "invasion of privacy," "damage to reputation" and "emotional distress," and "demands judgment for damages [and] punitive damages." *See* Compl. ¶¶ 32, 35, 38, 42, 20[3]. Such claims are sufficient to satisfy the jurisdictional threshold for purposes of invoking diversity jurisdiction. *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("a notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

17. In addition, this Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 because, as set forth below, this action "aris[es] under the Constitution, laws, or treaties of the United States" and such other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

18. The crux of Plaintiff's complaint is that he was injured as a result of Defendants' prosecuting a civil anti-counterfeiting case against him in the United

[3] After paragraph 42, the numbering of paragraphs in the Complaint returns to paragraph 17. This reference to paragraph 20 is in Count V of the Complaint.



15298920v.1

States District Court for the Eastern District of New York, and Defendants' subsequent execution of a civil seizure at Plaintiff's residence. *See* Compl. ¶¶ 14, 17-24. Both the underlying Eastern District anti-counterfeiting action and the civil seizure order against Plaintiff arising therefrom are expressly creatures of federal law which give rise to federal question jurisdiction. *See generally Gilead Sciences Inc. v. Safe Chain Solutions LLC*, Case No. 21-cv-4106 (Dkt. No. 629) (attached as **Exhibit 2**); *see also* 15 U.S.C. § 1116(d). Moreover, the same federal law provides the exclusive remedy for tort claims like the ones Plaintiff now asserts. *See* 15 USC § 1116(d)(11). As such, this Court also has federal question jurisdiction in this case. *See* 28 U.S.C. § 1331.[4]

19. This action is properly removed to the United States District Court for the Northern District of Florida, and venue is proper in this District, because this District embraces the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida, where this action was filed. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 89(a).

---

[4] Precisely because the subject matter of this case is so intertwined with the existing Eastern District of New York anti-counterfeiting action, Removing Defendants intend promptly upon removal to move to transfer this action to Judge Donnelly of the Eastern District of New York, and to stay all proceedings in herein while that transfer is pending. Thereupon Removing Defendants intend to seek dismissal of this action expressly reserve all rights and defenses in that regard.

20. Pursuant to 28 U.S.C. § 1446(d), written notice of removal of this action will be promptly served upon Plaintiff and a Notice of Removal to Federal Court will be filed with the Clerk of the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida.

21. Should any question arise as to the propriety of this removal, Removing Defendants respectfully request the opportunity to brief and argue any disputed issues.

WHEREFORE, Removing Defendants give notice that the matter captioned *John D. Levitan Sr. v. Gilead Sciences Inc., et al.,* Case No. 2024-CV-001164, now pending in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida be the same and is hereby removed to the United States District Court for the Northern District of Florida, and request that this Court retain jurisdiction for all further proceedings in this matter.

Dated: Miami, Florida
October 3, 2024

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON

By: /s/ Hannah Murphy

Jay B. Shapiro
Florida Bar No. 776361
150 West Flagler Street, Suite 2200
Miami, FL 33130
T: 305-789-3200
F: 305-789-2664
E: jshapiro@stearnsweaver.com

*and*

Hannah Murphy
Florida Bar No. 1032759
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON
106 East College Avenue, Suite 700
Tallahassee, Florida 32301
T: 850-580-7200
F: 850-329-4861
E: hmurphy@stearnsweaver.com

*Attorneys for Defendants Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of October, 2024, I electronically filed the foregoing with the Clerk of the Court, and served via Federal Express to any pro se litigants.

s/ *Hannah Murphy*
Hannah Murphy
Florida Bar No. 1032759

**CERTIFICATE OF WORD COUNT**

Pursuant to Northern District of Florida Rule 7.1(F), I HEREBY CERTIFY that the foregoing Response, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 2,153 words as measured by Microsoft Office for Word.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **3:24-cv- 00475-MCR-ZCB**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP,
WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

______________________________________/

**FIRST AMENDED COMPLAINT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

**PARTIES**

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

FILED USDC FLND PN
NOV 15 '24 PM4:21

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

**JURISDICTION AND VENUE**

10. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

11. The damages subject of this action exceeds $50,000 but is no greater than $70,000.00.

## STATEMENT OF FACTS

12. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional rights of the Plaintiff.

13. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

14. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

15. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.
b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.
d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.
e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\
f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.
g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.
h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the Eastern District of New York (the "First Affidavit") <u>See</u> *Exhibit C*, whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s)

was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") See *Exhibit D* completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to

privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

**COUNT I**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**WARRANTLESS SEARCH BY PRIVATE PERSONS**

30. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

31. Defendant(s), violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

32. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorneys fees.

**COUNT II**
**VIOLATION OF FLORIDA CIVIL RIGHTS RIGHT TO PRIVACY**

33. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

34. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

35. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT III**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**FREEDOM OF SPEECH AND ASSOCIATION**

36. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

37. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other

individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

38. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT IV**
**LIBEL**

39. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

40. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

41. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

42. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT V**
**SLANDER**

17. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

18. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

19. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

20. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**DEMAND FOR JURY TRIAL**

21. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory and punitive damages in an amount to be determined at trial but no greater than $70,000;
ii. For an award of costs, including reasonable attorney's fees;
iii. For such other and further relief as the Court deems just and proper.

Dated: November 15, 2024

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

EXHIBIT A

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

### G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal EXHIBIT B

**NEWS**

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says

**Jim Little**
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

Case No. 21-cv-4106 (AMD) (RER)

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)**

**AFFIRMATION OF SERVICE**

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

ECSO 82

Ryan Robinson

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILEAD SCIENCES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAFE CHAIN SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 21-cv-4106 (AMD) (RER)<br><br>**AFFIRMATION OF SERVICE UPON JOHN LEVITAN** |

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR ESCAMBIA COUNTY, FLORIDA

JOHN D. LEVITAN, SR.,

Case No. 2024 CA 001164

Plaintiff,

-v-

GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, and THOMAS P. KURLAND,

Defendants.

---

**DEFENDANTS' MOTION TO STAY DISCOVERY**

Defendants, Gilead Sciences, Inc., Gilead Sciences Ireland UC (together as "Gilead"), Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland (together as "PBWT Defendants"), move to stay discovery. In support, Defendants state the following:

**BACKGROUND[1]**

In August 2022, Gilead sued John D. Levitan, Sr. in the United States District Court for the Eastern District of New York, alleging that he conspired to distribute counterfeit Gilead-branded HIV medication. (*See generally Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 1:21-cv-4106-AMD-JAM (E.D.N.Y.) (referred as "Counterfeiting Action"), at ECF Nos. 630, 782.) The presiding judge in the counterfeiting action issued an asset freeze order, temporary restraining order, and a seizure order against Levitan, which the PBWT Defendants

[1] This case's background is convoluted due to Mr. Levitan's multi-forum litigation tactics over multiple years. The entire background is recounted in Defendants' Motion to Dismiss, but a truncated version is offered here to support Defendants' motion to stay discovery. (*See* Motion to Dismiss at 1–6.)

(acting on behalf of Gilead) executed at Levitan's residence in Pensacola, Florida on August 18, 2022. (*See generally* Counterfeiting Action ECF Nos. 627, 628, 629, 748, & 823.) Despite being represented at the time and having notice of these events, Levitan did not appear in the Counterfeiting Action, and the seizure was confirmed and a preliminary injunction was entered against him on October 10, 2022. (*See id.* September 7, 2022 Minute Entry.) Thereafter, the Clerk of the Eastern District of New York entered Levitan's default in the Counterfeiting Action on October 28, 2022. (*Id.* at ECF No. 839.) That default was initially vacated after Mr. Levitan appeared but then was reinstated once Mr. Levitan's counsel withdrew and Mr. Levitan failed to abide by the court's lawful orders. (*See id.* September 12, 2024 Minute Entry and Order; *see also id.* at ECF. No. 1472.)

Rather than litigating the Counterfeiting Action on the merits, Mr. Levitan decided to sue the Defendants in this Court in September 2024, alleging that the Defendants violated his rights under the United States Constitution and the Florida Constitution and defamed him during the course of the Counterfeiting Action. (*See* Original Complaint.) The Defendants successfully removed the case and secured a transfer to the United States District Court for the Eastern District of New York. *Levitan v. Gilead Sciences, Inc., et al.*, Case No. 3:24-cv-00475-MCR-ZCB (N.D. Fla.), ECF Nos. 1, 34, & 35.) Mr. Levitan filed a First Amended Complaint that excised all facts that granting federal jurisdiction, removing his federal constitutional claims and alleging that the amount in controversy was below $75,000. (*See* First Amended Complaint attached as Exhibit A.) Once transferred, Mr. Levitan made quick use of a new United States Supreme Court precedent— *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025)—that allows litigants to achieve remand by pleading around federal jurisdiction upon removal. (*Levitan v. Gilead Sciences, Inc.*, *et al.*, Case Number 1:25-cv-00393-AMD-JAM (E.D.N.Y), ECF No. 56.)

That left the district court no choice to remand the case back to this Court. (*Id.*)

On October 6, 2025, the case was formally remanded and reactivated on this Court's docket. (*See* Notice of Remand.) Mr. Levitan's First Amended Complaint remains the operative one, and it only alleges non-existent claims arising under the Florida Constitution and time-barred defamation claims arising from statements made during litigation that are equally barred by the litigation privilege. (*See generally* Ex. A.) So, on October 29, 2025, the Defendants filed a motion to dismiss the case with prejudice as the First Amended Complaint contains no viable claim against any Defendant. (*See* Motion to Dismiss.) Given that this lawsuit is nothing more than a last-ditch collateral attack on the lawful Counterfeiting Action, the Defendants now move to stay discovery until after the Court hears the motion to dismiss to combat the prejudice that would ensue by allowing discovery in this illegitimate case.

## DISCUSSION

This Court has "broad discretion in protecting the parties that come before it and in overseeing the discovery process." *See Scott v. Nelson*, 697 So. 2d 1300, 1301 (Fla. 1st DCA 1997). Thus, the court has the discretion to "postpone[e] discovery for a short period of time pending determination of material, outstanding motions[.]" *Bank of Am., N.A. v. De Morales*, 314 So. 3d 528, 530–31 (Fla. 3d DCA 2020). That discretion specifically includes staying discovery while a motion to dismiss is pending. *See Feigin v. Hos. Staffing Srvs.*, 569 So. 2d 941, 942 (Fla. 4th DCA 1990) ("[T]he trial court did not abuse its discretion . . . by staying appellant's discovery depositions pending the motion to dismiss hearing.").

Here, Mr. Levitan filed a baseless collateral attack in this Court only to harass the Defendants. There is no merit to the complaint, which brings nonexistent constitutional claims against private parties and defamation claims about wholly time-barred and privileged litigation

statements. (*See generally* Motion to Dismiss.) Any discovery in this case would, thus, countenance this vexatious litigant. To limit Mr. Levitan's venom, Defendants have filed a motion to dismiss the complaint with prejudice to swiftly end the case, and in conjunction, Defendants now seek a brief stay of discovery "pending the motion to dismiss hearing." *See Feigin*, 569 So. 2d at 942.

WHEREFORE, Defendants respectfully request that this Court exercise its discretion to stay discovery until after the motion to dismiss hearing.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com

*Attorneys for Defendants*

## CERTIFICATE OF CONFERRAL

I HEREBY CERTIFY that prior to filing this motion, I discussed the relief requested by email, on October 29, 2025, with the opposing party, and the opposing party opposes the relief requested in this motion.

*/s/ Jeremy C. Branning*
JEREMY C. BRANNING

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court and served via the Florida Courts E-Filing Portal.

*/s/ Jeremy C. Branning*
JEREMY C. BRANNING

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **3:24-cv- 00475-MCR-ZCB**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP,
WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_______________________________________/

# FIRST AMENDED COMPLAINT

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

## PARTIES

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

FILED USDC FLND PN
NOV 15 '24 PM4:21

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

**JURISDICTION AND VENUE**

10. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

11. The damages subject of this action exceeds $50,000 but is no greater than $70,000.00.

## STATEMENT OF FACTS

12. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional rights of the Plaintiff.

13. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

14. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

15. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.
b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.

d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\

f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the Eastern District of New York (the "First Affidavit") See *Exhibit C*, whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s)

was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") See *Exhibit D* completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to

privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

**COUNT I**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**WARRANTLESS SEARCH BY PRIVATE PERSONS**

30. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

31. Defendant(s), violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

32. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorneys fees.

**COUNT II**
**VIOLATION OF FLORIDA CIVIL RIGHTS RIGHT TO PRIVACY**

33. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

34. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

35. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT III**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**FREEDOM OF SPEECH AND ASSOCIATION**

36. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

37. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other

individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

38. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT IV**
**LIBEL**

39. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

40. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

41. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

42. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT V**
**SLANDER**

17. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

18. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

19. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

20. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**DEMAND FOR JURY TRIAL**

21. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory and punitive damages in an amount to be determined at trial but no greater than $70,000;
ii. For an award of costs, including reasonable attorney's fees;
iii. For such other and further relief as the Court deems just and proper.

Dated: November 15, 2024

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

EXHIBIT A

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

### G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal EXHIBIT B

NEWS

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says



Jim Little
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

Case No. 21-cv-4106 (AMD) (RER)

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)**

**AFFIRMATION OF SERVICE**

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

[signature] ECSO 82
Ryan Robinson

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

Case No. 21-cv-4106 (AMD) (RER)

**AFFIRMATION OF SERVICE UPON JOHN LEVITAN**

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________________/

**DEFENDANTS' NOTICE OF FILING AFFIDAVIT IN OPPOSITION TO**
**PLAINTIFF'S OBJCTION TO MOTION TO SUBSTITUTE COUNSEL OF RECORD**

Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, THOMAS P. KURLAND, an Individual, Defendant(s), Jointly and Severally, file the Affidavit of William J. Dunaway, Esq., in opposition to Plaintiff's Objection to Defendants' Motion to Substitute Counsel of Record.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of November, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court and served via the Florida Courts E-Filing Portal and United States Mail to:

John D. Levitan, Sr., pro se
511 Windrose Circle
Pensacola, FL 32507
jdlsr@gileadfraud.com
legal@gileadfraud.com

*/s/ Jeremy C. Branning*
JEREMY C. BRANNING

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________/

## AFFIDAVIT OF WILLIAM J. DUNAWAY, ESQ.

STATE OF FLORIDA
COUNTY OF ESCAMBIA

BEFORE ME, the undersigned authority, personally appeared WILLIAM J. DUNAWAY, Esq. who, after being first duly sworn, deposes and says:

1. I am a shareholder with the law firm Clark Partington Hart Larry Bond & Stackhouse, P.A. (the "Firm") in Pensacola, Florida. I am over 21 years of age and am competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are true and correct.

2. I have been admitted to practice law in the state of Mississippi since September 30, 1992, admitted to practice law in the state of Florida since April 27, 2006, and admitted to the U.S. District Court for the Northern District of Florida since October 20, 2009.

3. In 2013, I represented South Palafox Properties, LLC ("South Palafox"), which owned the property where the Rolling Hills Construction and Demolition Disposal Facility was located at 6990 Rolling Hills Road, Pensacola, Florida. I was retained for the sole purpose of assessing South Palafox's compliance with environmental regulations that governed the operations of the Rolling Hills C&D Facility. During the representation, Charlie Davidson and Tim Eagan were my primary points of contact for South Palafox.

4. John D. Levitan, Sr. was never my primary point of contact for South Palafox. Further, I do not recall and would have had no reason to acquire personal financial information from Mr. Levitan for my representation of South Palafox for environmental regulatory compliance matters.

5. The Firm terminated its representation of South Palafox and shortly after closed the matter internally on March 28, 2013. On February 19, 2014, there was a second engagement with South Palafox for a limited scope engagement and that matter was closed in August, 2014.

6. Regarding the files obtained in representing South Palafox, the Firm has the following document-retention policy:

> Document Retention
>
> Following the conclusion of any matter, documents received or prepared will be retained by Clark Partington for six (6) years, or if necessary, a longer period of time as necessary to comply with a rule or statute. Unless otherwise directed by a client, original client documents received during the course of a matter are expected to be returned to the client at the conclusion of the matter. Clark Partington may retain a copy of client documents.

7. It is the Firm's internal procedure that once a matter is closed, all physical documents that are not given explicit instructions by the client are scanned into digital format, all physical copies are destroyed, and then those digital copies are moved to an external hard drive to be kept for a period of ten (10) years.

8. As further due diligence, I directed the Firm's IT Support and Training Coordinator, Jennifer Ferguson, to search the archived hard drive for the files that were involved in the Firm's representation of South Palafox for the environmental regulation matter.

9. Pursuant to the Firm's document retention policy, the physical copies concerning the environmental regulation matter for South Palafox were destroyed and scanned onto an external hard drive. The hard drive has not been destroyed and still contains the documents.

10. I have examined the documents on the hard drive. There is no personal financial information of any kind concerning John D. Levitan, Sr., nor is there any document about John D. Levitan, Sr. personally. The materials primarily consist of attorney work product involving the Rolling Hills C & D Facility's regulatory compliance and a Memorandum of Understanding with Escambia County regarding the property.

**FURTHER AFFIANT SAITH NAUGHT.**

[signature]

**WILLIAM J. DUNAWAY, ESQ.**

STATE OF FLORIDA
COUNTY OF ESCAMBIA

SWORN TO AND SUBSCRIBED before me by means of ☒ physical appearance or ☐ online notarization, on this 5th day of November, 2025, by WILLIAM J. DUNAWAY, ESQ., who is personally known to me.

[signature]

NOTARY PUBLIC, State of Florida

Judith C. Dallman
Printed Name
My Commission Expires: 3/8/2029
Commission No.: HH 633268

[Seal]

JUDITH C. DALLMAN
MY COMMISSION #HH633268
EXPIRES: MARCH 8, 2029

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**NOTICE CANCELLING HEARING**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, and hereby cancels his cross-notice of hearing set for November 10, 2025 on his Motion Objecting to Substitution of Counsel as he has withdrawn his Objection filed this date.

Dated: October 8, 2024

Respectfully submitted,

_______________________________
John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 9th day of November 2025.

John D. Levitan

Case 3:26-cv-01457-TKW-HTC Document 1-1 Filed 02/27/26 Page 241 of 873

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_______________________________________________/

**NOTICE WITHDRAWING OBJECTIONS WITHOUT PREJUDICE**
**TO COUNSEL CLARK PARTINGTON HART SUBSTITUTING AS COUNSEL**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, hereby withdraws his objection without prejudice to the substitution of the firm Clark, Partington, Hart for the Defendants notwithstanding I believe that the firm is ethically bound under the rules of the Florida Bar from representing the Defendants.

Although Will Dunaway has stated in his affidavit that he/they do not have any files related to me, I disclosed personal data, and personal financial data to Will Dunaway and the firm during their representation of South Palafox Properties, LLC.

I hereby preserve my right to file a Complaint against the firm for their representation of the Defendants in this proceeding should it become necessary. Those Complaints will be

resolved in another forum not presently subject to this litigation. My standing objection should be carried with the case.

**WHEREFORE** my present objection is withdrawn without prejudice subject to later assertion should any of the motions, or other information that may be disclosed by the firm is contrary to my prior disclosure as a client and may be used in providing defenses to the Defendant or later during and testimony that may be adverse to my prior personal and confidential information disclosed to the firm.

Dated: October 8, 2024

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 9th day of November 2025.

John D. Levitan

# John D. Levitan, Sr.

October 14, 2025

VIA ELECTRONIC MAIL

The Honorable Jennifer J. Frydrychowicz
Circuit Court Judge
M.C. Blanchard Judicial Building
190 W. Government Street
Pensacola, FL 32502
Hayley.Faulkner@flcourts1.gov

RE: John D. Levitan, Sr. v. Gilead Sciences, Inc., et al., Case No. 2024 CA 001164
Objection to Substitution of Counsel

Dear Judge Frydrychowicz:

I have just received a letter and proposed Order from Jeremy Branning via email for Substitution of Counsel in the above case.

I must object to the Substitution of Counsel of Clark Partington ("CPH") as CPH represented me on some litigation relating to one of my former companies. In the process of that representation, I provided attorney client information to CPH that was not only for the company, that had the retention agreement with CPH, but also other companies affiliated or related to that representation. In addition significant personal and financial information was disclosed that would prejudice me in this case, and in my view would be a conflict of interest to CPH in the representation of the parties adverse to me in this case.

During that prior representation, the substituting counsel obtained confidential, privileged, and personal information through attorney-client communications, including but not limited to litigation strategy, financial records, and other sensitive matters directly relevant to the present action as the present action is to me individually.

The Florida Supreme Court has repeatedly held that disqualification or denial of substitution is required where a lawyer, or firm, had access to confidential information during a prior representation that could materially prejudice the former client. See, e.g., *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991).

CPH representing the Defendants would have prejudicial effect as the information disclosed was disclosed in the course of an attorney client relationship not only with the company that was represented by CPH but also me personally.

I will be filing a formal motion objecting to the substitution of counsel. I have discussed this conflict via email with Mr. Branning and advised him of my objections.

# John D. Levitan, Sr.

I would respectfully request that the Court deny the Motion for Substitution of Counsel.

Respectfully submitted,

JOHN D. LEVITAN, SR.

cc: Jeremy Branning, Esq.

Filing # 235431210 E-Filed 11/09/2025 11:37:39 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**NOTICE WITHDRAWING OBJECTIONS WITHOUT PREJUDICE TO COUNSEL CLARK PARTINGTON HART SUBSTITUTING AS COUNSEL**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, hereby withdraws his objection without prejudice to the substitution of the firm Clark, Partington, Hart for the Defendants notwithstanding I believe that the firm is ethically bound under the rules of the Florida Bar from representing the Defendants.

Although Will Dunaway has stated in his affidavit that he/they do not have any files related to me, I disclosed personal data, and personal financial data to Will Dunaway and the firm during their representation of South Palafox Properties, LLC.

I hereby preserve my right to file a Complaint against the firm for their representation of the Defendants in this proceeding should it become necessary. Those Complaints will be

resolved in another forum not presently subject to this litigation. My standing objection should be carried with the case.

**WHEREFORE** my present objection is withdrawn without prejudice subject to later assertion should any of the motions, or other information that may be disclosed by the firm is contrary to my prior disclosure as a client and may be used in providing defenses to the Defendant or later during and testimony that may be adverse to my prior personal and confidential information disclosed to the firm.

Dated: October 8, 2024

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 9th day of November 2025.

John D. Levitan

Filing # 235433101 E-Filed 11/09/2025 04:32:13 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**MOTION FOR JUDICIAL DEFAULT**
**FOR FAILING TO ANSWER AS ORDERED BY THE COURT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, and hereby moves the Court for failure of the Defendants to Answer the Complaint as Ordered by the Court and having continuously subverting the Court's Order to file an answer. In support thereof Plaintiff states:

1. On October 16, 2024 the US District Court Judge M. Casey Rodgers ordered that the Defendants time to respond to the Complaint was extended until 10 days after resolution of the Defendant's Motion to Stay and Transfer Proceedings. See *Exhibit A*.

2. On January 23, 2025 the Motion to Stay and Transfer Proceedings was resolved in Defendants' favor and the Court transferred the case to the US District Court for Eastern District of New York.

3. On September 30, 2025 the US District Court for the Eastern District of New York found the Plaintiff's Motion to Remand well taken and remanded the case to this Court . See *Exhibit B.*

4. On February 24, 2025 Plaintiff moved the Court to issue a Judicial Default against the Defendants, as the Moton to Stay and Transfer Proceedings had been resolved in Defendants favor over a month prior and yet notwithstanding the Court's prior Order Plaintiff's failed to Answer the Complaint. See *Exhibit C.*

5. As of today, over 10 months later, Defendants have failed, and willfully refused to abide by the Court's Order of October 15, 29024 and file their Answer as Ordered. This recalcitrance has prejudiced the Plaintiff as he was unable to prosecute his case, he has been unable to continue discovery for over 10 months and the Defendants have abused the process of the Court moving the case to Federal Court in the United States District Court for the Northern District of Florida, then again moving the case to the Eastern District of New York, and ultimately the Plaintiff was vindicated when he had asserted all along that the New York USDC ordered the case remanded consistent with the intervening US Supreme Court opinion in January 15, 2025 by the U.S. Supreme Court in *Royal Canin U. S. A., Inc., et al. V. Wullschleger et al. 604 U. S. ____ (2025).*

6. Additionally, on October 10, 2025 Defendants requested an extension of time in which to file a "responsive" pleading or motion to the First Amended Complaint. See *Exhibits D Email Exchange with Jeremy Branning for the Defendants..*

In pertinent part that request to the Plaintiff stated:

> "Request for Extension of Time to *Respond* to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a *response* to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the *response* deadline would be October 29, 2025."

7. Plaintiff gave his consent to the Defendants to afford them extra time to file their Answer and responsive pleading to the First Amended Complaint by October 29, 2025, see *Exhibit D*, after the Defendants had had over a year to file their answer to the Complaint. Defendants have not done so and now argue that their Motion to Dismiss filed three previous times is somehow a "responsive pleading", clearly a Motion to Dismiss is not a "responsive pleading" this is well settled law and such a claim by the Defendant is frivolous. See *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 563 (Fla. 2005) ("A motion to dismiss is not a "responsive pleading" because it is not a "pleading" under the rules. Fla. R. Civ. P. 1.100(a)"), see also *Cooper v. Shumway*, 780 F.2d 27, 29 (10th Cir. 1985) ("[] a motion to dismiss is not deemed a responsive pleading….")

8. Because the Plaintiff's request extension of time to *respond* made to the Plaintiff was given under false pretenses, and instead Defendants filed a fourth Motion to Dismiss, that Motion should be stricken and held for naught and a Judicial Default should be entered against the Defendants for their failure to file a responsive pleading within 3 days to answer to the First Amended Complaint.

**WHEREFORE** Plaintiff would respectfully move the Court to:

i. Enter a Judicial Default for Plaintiff's Failure to File an Answer to the First Amended Complaint,

ii. Strike the Motion to Dismiss, and

iii. Afford the Defendants 3 days to file their answer., and

iv. Any further relief that the Court deems just in the circumstances.

Respectfully submitted,
November 9, 2025

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CONFERENCE OF COUNSEL**

Plaintiff has had an extensive email exchange with Defendant's counsel on this matter and Defendant's asserted that their Motion to Dismiss is a responsive pleading. See *Exhibits*.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 9th day of November 2025.

John D. Levitan

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| JOHN D. LEVITAN, SR.,<br>Plaintiff,<br>v.<br>GILEAD SCIENCES, INC., et al.,<br>Defendants. | CASE NO. 3:24-cv-475-MCR-ZCB |

**REFERRAL AND ORDER**

Referred to Judge M. Casey Rodgers on October 15, 2024
Motion/Pleadings: MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY
Filed by Defendants on October 14, 2024 Doc. # 4
______ Stipulated ______ Joint Pleading
______ Unopposed ______ Consented

JESSICA J. LYUBLANOVITS
CLERK OF COURT
/s/ ***Patricia G. Romero***
Deputy Clerk: Patricia G. Romero

---

On consideration, the motion is **GRANTED in part and DENIED in part**. Defendants' deadline to respond to Plaintiff's Complaint is extended until **10 days** after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is **DENIED**. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024.[1]

**DONE** and **ORDERED** this 16th day of October 2024.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[1] Defendants must request leave of Court to file a reply. *See* N.D. Fla. Loc. R. 7.1(I).

# EXHIBIT B

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**NOTICE OF REMAND FROM FEDERAL COURT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Notice and Order of 5HPDQGIURP the United States District Court for the Eastern District of Florida for lack of jurisdiction. The Memorandum and Order are attached.

Dated: October 6, 2025

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing and attached were filed by using the Florida electronic filing system and all parties were provided copies through that system on this 6th day of October 2025.

John D. Levitan, *pro se*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

**JOHN D. LEVITAN, SR.**,

Plaintiff,

– against –

**GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND,**

Defendants.

---------------------------------------------------------------- X

**MEMORANDUM AND ORDER**

25-CV-393 (AMD) (JAM)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action alleging violations of the Florida Constitution and common law defamation claims. The plaintiff asserts these claims against Gilead Sciences, Inc. and Gilead Sciences Ireland UC (“Gilead”), a pharmaceutical company that has sued the plaintiff in this Court for conspiring to sell counterfeit Gilead medication, and Patterson Belknap Webb & Tyler LLP and lawyers at the firm (“PBWT”), who represent Gilead in that related suit. The plaintiff initiated this case in Florida state court, the defendants removed it to the Northern District of Florida, and that court transferred it here pursuant to 28 U.S.C. § 1404.

Before the Court are two motions: the plaintiff’s motion either to transfer the case back to the Northern District of Florida for that court to reconsider its decision denying the plaintiff’s motion to remand based on an intervening change in law or to remand directly, and the defendants’ motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the plaintiff’s motion to transfer the case back to the Northern District of Florida is denied. However, the Court does not have subject matter jurisdiction over the

Case 1:23-cv-03134-AMD-JAM Document 56 Filed 09/30/25 Page 2 of 5 PageID

plaintiff's claims, so the case is remanded to the Florida state court, where the case was filed originally. The Court does not have jurisdiction to decide the defendants' motion to dismiss.

## BACKGROUND[1]

### I. Factual Background

In the summer of 2021, Gilead, represented by PBWT, sued various defendants for conspiring to distribute counterfeit Gilead-branded HIV medicine. (*Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.) ("*Gilead*"), ECF No. 1.) As the case developed, Gilead identified other members of the alleged conspiracy, including the plaintiff in this action, John Levitan, and amended the complaint to include them as defendants and add allegations about their roles in the scheme. (*See, e.g.*, *id.* ECF No. 607 (the plaintiffs' motion to amend the complaint to add Levitan, among others); *id.* ECF No. 630 (Fourth Amended Complaint, naming Levitan as a defendant).)

On August 11, 2022, pursuant to 15 U.S.C. § 1116(d), the Court entered an asset freeze order, a temporary restraining order, and a seizure order against the plaintiff, as well as other named defendants in *Gilead*. (*See id.* ECF Nos. 627, 628, 629.) About a week later, PBWT executed the seizure order at the plaintiff's home in Pensacola, Florida. (*See id.* ECF Nos. 687, 748, 823; *see* ECF No. 26 ¶¶ 17–21.)

The plaintiff's claims arise out of the defendants' allegations in the fourth amended complaint in *Gilead* and the defendants' execution of the seizure order. (*See* ECF No. 30, Transfer Order, at 9–23.) In his amended complaint, the plaintiff asserts Florida state law claims. He maintains that some of the allegations in the defendants' complaint were defamatory

[1] The history of this case is long and contentious. The Court assumes familiarity with the related case *Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.), and discusses only the facts necessary to reach its decision.

and violated the plaintiff's rights to free speech and association under Article I, §§ 4 and 5 of the Florida Constitution. (ECF No. 26 ¶¶ 15, 27–29, 36–42; *id.* at 9–10; ECF No. 26-1 at 1–7; *Gilead*, ECF No. 630 ¶¶ 270–76.) The plaintiff further alleges that the execution of the seizure order was an unlawful search that violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution. (ECF No. 26 ¶¶ 17–26, 30–35.)

## II. Procedural Background

The parties have been litigating against each other in this Court for three years. (*See, e.g.*, *Gilead*, ECF Nos. 839, 1150, 1169, 1452–55, 1472–74; *Gilead, ECF Order dated Oct. 12, 2023 entered by then-Magistrate Judge Bulsara*; *Gilead, ECF Order dated Oct. 12, 2023 entered by Magistrate Judge Marutollo*.)

On September 2, 2024, the plaintiff filed this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida. (ECF No. 1-1.)[2] In his initial complaint, the plaintiff asserted the state law claims described above, as well as violations of the First and Fourth Amendments. (*Id.* ¶¶ 25–27.) The plaintiff also alleged that the "damages subject of this action exceeds $50,000.00." (*Id.* ¶ 12.) On October 3, 2024, the defendants removed the case to the Northern District of Florida, arguing that the court had diversity and federal question jurisdiction. (ECF No. 1.) The defendants maintained that the court had diversity jurisdiction because the parties were completely diverse and the amount in controversy "as pled[,] plausibly exceeds $75,000." (*Id.* ¶¶ 5–16.) The defendants also claimed that the court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the complaint alleged federal

[2] Citations to ECF are to the docket in this action. Citations to "N.D. Fl. ECF" are to the docket in *Levitan v. Patterson, Belknapp, Webb & Tyler, LLP, et. al*, No. 24-CV-475 (N.D. Fl.).

Case 3:26-cv-00457-TKW-HTC Document 58 Filed 02/27/26 Page 4 of 19

constitutional violation and that the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*Id.* ¶¶ 17–18.)

The defendants then moved to transfer the action to this court pursuant to 28 U.S.C. § 1404(a) and to stay the proceedings in the Northern District of Florida. (ECF No. 3.) They also asked that court to extend the deadline to respond to the complaint until it resolved their motion to transfer. (ECF No. 4.) The court extended the defendants' deadline to respond to the complaint until 10 days after the resolution of the motion to transfer. (ECF No. 5.)[3]

On October 21, the plaintiff moved to remand the case to Florida state court. (ECF No. 7.) He argued that removal was improper because the amount in controversy did not meet the jurisdictional threshold for diversity jurisdiction and that his claims did not present a federal question. (*Id.* at 5–7.) The defendants opposed. (ECF No. 18.)

On November 12, 2024, and while the transfer motion was pending, Magistrate Judge Zachary C. Bolitho of the Northern District of Florida issued a report and recommendation recommending that the district judge deny the motion to remand. (ECF No. 21.) Observing that the plaintiff "clearly cites to the U.S. Constitution for several of his claims," the court held that remand was unwarranted because the court had federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 3–4.) In addition, the court noted that "[b]ecause there is clearly federal question jurisdiction in this case, it is unnecessary to address whether diversity jurisdiction exists." (*Id.* at

[3] Gilead was served on October 14, 2024, after PBWT removed the case to federal court. (ECF No. 17 at 1–2.) Gilead appeared in the case, consented to removal (ECF No. 15), and joined PBWT's motion to transfer (ECF No. 16). Gilead also asked for the same extension of the deadline to respond to the complaint (ECF No. 17 at 2–3), which the court granted (ECF No. 19).

2 n.1.) Neither party objected to the report and recommendation, and the district court adopted it on December 31, 2024. (ECF No. 28.)

Although the plaintiff did not object to the magistrate judge's recommendation, he filed an amended complaint on November 15, 2024. (ECF No. 26.) The factual allegations in the amended complaint were almost identical to the original complaint. This time, however, the plaintiff removed the federal constitutional claims and added language that purports to cap his damages at $70,000. (*Compare* ECF No. 1-1 ¶¶ 25–27, 31, 34, 37 (alleging violations of the First and Fourth Amendments) *with* ECF No. 26 ¶¶ 25–27, 31, 34, 37 (alleging the same conduct without citing the federal constitution); *compare* ECF No. 1-1 ¶ 12, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000.00") *with* ECF No. 26 ¶ 11, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000 but is no greater than $70,000").) The defendants objected, calling the amended complaint "a naked and legally impermissible effort to plead this case out of federal court." (ECF No. 27 at 10.)[4] They maintained that there was still federal question jurisdiction because the plaintiff's claims "still directly raise and require resolution of issues of federal law under both the United States Constitution and the Lanham Act." (*Id.* at 12.) In the alternative, they maintained that the court had diversity jurisdiction, notwithstanding the plaintiff's "attempt to plead an amount in controversy below $75,000." (*Id.* at 14.)

On January 6, 2025, Judge Bolitho issued a thorough and well-reasoned opinion granting the defendants' motion to transfer the action to this Court. (ECF No. 30.) The court found that the "case could have been filed in the Eastern District of New York because it has subject matter

[4] The defendants do not argue that the amended complaint was procedurally improper under Federal Rule of Civil Procedure 15.

jurisdiction, personal jurisdiction, and is a proper venue for this action." (*Id.* at 5.) The court further explained that "[b]ecause the Court has already determined that subject matter jurisdiction existed at the time of removal, Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case." (*Id.* at 6.) The court observed that "[f]ederal courts have repeatedly rejected . . . clever attempts to destroy federal jurisdiction" by amending a pleading. (*Id.* at 6; *see also id.* at 6 n.2 (citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002).)

The court also analyzed the factors that guide Eleventh Circuit courts in determining whether to transfer a case under § 1404(a). (*Id.* at 9–23.) The court concluded that "[e]ach factor identified by the Eleventh Circuit either weighs in favor of transfer or is neutral." (*Id.* at 23.) Accordingly, the court "exercise[d] its broad discretion" and transferred the case to this Court. (*Id.*) Judge Bolitho directed the clerk of his court to transfer the case 15 days after the date of the order "unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline." (*Id.*) The plaintiff did not file an objection to the transfer order by January 21, 2025, and the case was transferred to this Court on January 23, 2025. (ECF No. 35.)[5]

On January 27, 2025 — after the case had been transferred and assigned a case number in this Court, after the defendants appeared, and after Magistrate Judge Joseph Marutollo issued a scheduling order — the plaintiff filed objections to Judge Bolitho's transfer order in the Northern District of Florida. (N.D. Fl. ECF No. 37.)[6] The plaintiff argued that the court should reconsider

[5] The Clerk of Court for the Northern District of Florida transferred the case prematurely on January 8, 2025. (*See* ECF Nos. 32–34.) The Clerk of this Court then "removed [the transferred case] from CM/ECF in the Eastern District of New York." In any event, the case was ultimately transferred to this Court on January 23, 2025 — two days after Judge Bolitho's deadline for the plaintiff to object to the order. (ECF No. 35.)

[6] The plaintiff called this filing a motion for reconsideration.

the transfer order in light of the Supreme Court's intervening decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), issued on January 15, 2025. (*Id.* at 1–6.) The plaintiff also filed a letter in which he explained that his objections were late because "the winter storm emergency" that affected wide swaths of the southern United States prevented him from filing his papers in person. (N.D. Fl. ECF No. 38 at 1.)[7] The plaintiff further noted that he had twice requested — and was twice denied — electronic filing privileges, and that he had emailed his objections to the defendants on January 21, 2025. (*Id.* at 1 n.1, 3–5.)

The defendants opposed the motion, arguing that the plaintiff "provide[s] no basis for [the Northern District of Florida] [to] undo the transfer of this case to the Eastern District of New York ('EDNY'), which already timely occurred on January 23, 2025." (N.D. Fl. ECF No. 39 at 2.) According to the defendants, the plaintiff did not "challenge any aspect of the Court's reasons for granting transfer pursuant to 28 U.S.C. § 1404(a)," and raised "entirely jurisdictional" objections. (*Id.*) On January 29, 2025, Judge M. Casey Rodgers of the Northern District of Florida held that she was divested of jurisdiction on January 23rd, when the case was transferred to this Court, and therefore could not consider whether the plaintiff's "objections should be allowed out of time or the underlying merits of his objections." (N.D. Fl. ECF No. 40 at 1–2.)

---

[7] Florida Governor Ron DeSantis declared a state of emergency in the state on January 20, 2025. *See* Fla. Exec. Order No. 25-13 (Jan. 20, 2025). The Court could not find any Northern District of Florida announcements about courthouse closures during this time, although the bankruptcy court in that district closed the Clerk's office in the Pensacola courthouse on January 21 and 22, 2025 because of the storm, and noted that unrepresented parties could file documents by email. *See Tallahassee and Pensacola Clerk's Offices Closing for Inclement Weather*, United States Bankruptcy Court Northern District of Florida (Jan. 20, 2025), https://www.flnb.uscourts.gov/news/tallahassee-and-pensacola-clerk%E2%80%99s-offices-closing-inclement-weather.

On January 31, 2025, the defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in this Court. (ECF No. 42.)[8] In a flurry of filings on February 13 and 14, 2025, the plaintiff moved to supplement the record from the Northern District of Florida to include his January 27th objections and his letter explaining the reasons for the delayed filing. (ECF No. 46.) He asked this Court to reconsider, pursuant to Federal Rule of Civil Procedure 59(e), the order denying remand and the transfer order, in light of *Royal Canin*. (ECF No. 47.) He also moved to remand the case (ECF No. 49), asked the Clerk enter default judgement against all defendants for failing to answer or respond to the amended complaint (ECF No. 50), and moved to strike the defendants motion to dismiss either as untimely or on the merits (ECF No. 51). The defendants opposed the plaintiff's motion to remand the case to state court, reconsider the Florida court's order, or to transfer it back to Florida federal court. (ECF No. 53). They also filed reply in further support of their motion to dismiss and opposing the plaintiff's motion to strike. (ECF No. 54.)[9]

**DISCUSSION**

The plaintiff asks the Court to remand his case to Florida state court. (ECF No. 47 at 1, 4; ECF No. 49.) He suggests some procedural avenues to accomplish this goal. First, he asks this Court to transfer the case back to the Northern District of Florida for that court to reconsider its order denying the plaintiff's motion to remand. In the alternative, he asks this Court to reconsider Judge Bolitho's order denying remand or to remand the case itself. (ECF No. 47 at 4, 7; ECF No. 49 at 2.)

---

[8] The defendants also moved to stay discovery until the Court resolved the motion to dismiss. (ECF No. 43.) Judge Marutollo granted the stay on March 3, 2025. (*ECF Order dated Mar. 3, 2025 entered by Magistrate Judge Marutollo*.)

[9] The plaintiff's motion to supplement the record is denied as moot. The Court takes judicial notice of these filings and considers them in deciding the motions. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## I. Motion to Transfer

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Hatteras Enters. Inc. v. Forsythe Cosm. Grp., Ltd*, No. 15-CV-5887, 2016 WL 4083386, at *5 (E.D.N.Y. July 30, 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). That "doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Id.* at *4 (quoting *Sagendorf-Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)). The Second Circuit has not "directly endorsed a standard by which district court judges should exercise their discretion in revisiting the decisions of a transferor courts." *Id. See also SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 178 n.7 (2d Cir. 2000) ("A district court considering a retransfer motion might be limited by 'law of the case' principles, at least in the absence of changed circumstances."). Moreover, it is well-settled that "courts should be loathe to revisit prior decisions of a coordinate court unless there are extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Torres v. Universal Music Grp. N.V.*, No. 24-CV-5323, 2024 WL 3429444, at *1 (S.D.N.Y. July 16, 2024) (quoting *Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *7 (S.D.N.Y. Mar. 23, 2023)). "[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Hatteras Enters. Inc.*, 2016 WL 4083386, at *5 (quoting *SongByrd, Inc.*, 206 F.3d at 178 n.7).

The Court sees no reason to transfer the case back to the Northern District of Florida. Judge Bolitho committed no error in his determination that this case was related to *Gilead* under the relevant § 1404(a) factors and the controlling case law. (ECF No. 30 at 9–23.) Even if the

Court had disagreed with the Judge Bolitho's analysis, the policy reasons that favor application of the law of the case doctrine would persuade the Court that retransfer is inappropriate in this case. *See, e.g.*, *U.S. Bank N.A. v. Bank of Am. N.A.*, 916 F.3d 143, 153 (2d Cir. 2019) (affirming district court holding that a coordinate court's transfer order was law of the case where there was "no clear error in that ruling").

More fundamentally, and as detailed below, "[s]ince this court lacks subject matter jurisdiction over the instant matter, no order transferring the case may be issued." *Leeds, Morelli & Brown, P.C. v. Hernandez*, 2005 WL 2148994, at *3 (E.D.N.Y. Sept. 6, 2005) (collecting cases). Indeed, the Court's conclusion that it lacks subject matter jurisdiction further confirms that transferring the case back to the Northern District of Florida would risk a "perpetual game of jurisdictional ping-pong," *U.S. Bank N.A.*, 916 F.3d at 152 (quoting *Christianson*, 486 U.S. at 816), which is particularly unnecessary given that this Court is "equally capable of hearing and deciding" questions of federal court jurisdiction, *Pace v. Quintanilla*, No. 13-CV-91, 2013 WL 5405563, at *5 (S.D.N.Y. Sept. 23, 2013).

Accordingly, the plaintiff's motion to transfer is denied.

## II. Motion to Remand

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If a statute confers federal jurisdiction over a suit, not only the plaintiff but also the defendant can get it into federal court," by removing the case pursuant to §§ 1441(a) and 1446. *Royal Canin*, 604 U.S. at 27.

After a defendant removes a case, a plaintiff may move to remand it back to state court. 28 U.S.C. § 1447(c). "If the federal court lacks subject-matter jurisdiction, it must grant the motion to remand." *Mohadeb v. Credit Corp Sols. Inc.*, No. 22-CV-5017, 2022 WL 17832856, at *1 (E.D.N.Y. Dec. 21, 2022). "The removing defendant has the burden of establishing federal jurisdiction." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).

In addition, the Court must always confirm its own jurisdiction over a removed action. *See United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Regardless of whether a plaintiff moves to remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Whether styled as a motion to reconsider or a motion to remand, the plaintiff claims that the Supreme Court's opinion in *Royal Canin* requires remand because the district court does not have subject matter jurisdiction. (*See, e.g.*, ECF No. 47 at 2–5.)[10] The plaintiff argues that *Royal Canin* permits him to amend the complaint to remove federal questions so that the federal court does not have subject matter jurisdiction; then, the plaintiff says, the Court must remand the case. (*Id.*) The defendants respond that *Royal Canin* does not apply because the Court has

[10] The Supreme Court decided *Royal Canin* after Judge Bolitho denied the plaintiff's motion to remand to the state court. For this reason, the Court declines to treat the Judge Bolitho's decision as the law of the case. *See, e.g.*, Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.4 (3d ed.) ("Following a § 1404(a) transfer, the receiving court should treat pre-transfer rulings by the transferring court in much the same way as one district judge treats the rulings of a colleague."). Moreover, "[t]he Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Fersel v. Paramount Med. Servs., P.C.*, No. 18-CV-2448, 2022 WL 14813738, at *2 (E.D.N.Y. Oct. 26, 2022) (citation omitted); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .").

federal question jurisdiction over the amended complaint. (ECF No. 53 at 6–11.) The defendants also maintains that the Court has diversity jurisdiction. (*Id.* 11–13.)

**a. *Royal Canin***

In *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025), decided earlier this year, the Supreme Court held that when a plaintiff "amends her complaint to delete all the federal-law claims, leaving nothing but state-law claims behind," the federal court no longer has jurisdiction over the case, which must "return to state court." In her first complaint, Wullschleger claimed that Royal Canin's marketing tricked her into buying expensive dog food. *Id.* at 28. She asserted claims under the Missouri Merchandising Practices Act and state antitrust law. *Id.* As part of these claims, she alleged that Royal Canin violated a federal statute. *Id.* Accordingly, although the complaint asserted no federal claims, it raised an embedded a federal question. *Id.* at 28 n.1 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Royal Canin removed the case to federal court, invoking the court's federal question jurisdiction and supplemental jurisdiction. *Id.* at 28–29. Wullschleger moved to remand, which the court denied. *Id.* at 28 n.1. Then, she amended her complaint, deleting any mention of the federal statute, and moved to remand again. *Id.* at 29. The district court denied that motion, too. The Eighth Circuit reversed, reasoning that the amended complaint "[supersedes] an original complaint and renders the original complaint without legal effect." *Id.* (alteration in original) (quoting *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922 (8th Cir. 2023)).

The Supreme Court unanimously agreed. The Court held that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Id.* at 30. Put another way, "[t]he reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's

jurisdiction." *Id.* at 35–36. If "[t]he operative pleading no longer supports federal jurisdiction," then "the federal court must remand the case to the state court where it started." *Id.* at 39. Once a "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Id.* at 30. Accordingly, the Supreme Court held, the district court lacked jurisdiction over the purely state-law claims in the operative complaint — that is, the amended complaint — and was required to remand the case. *Id.* at 38.

The Court rejected Royal Canin's claim that "[t]he amendment of a complaint following removal of a suit to federal court cannot divest that court of supplemental jurisdiction." *Id.* at 32. To the contrary, the Supreme Court stated, "changes in parties, or changes in claims, effectively remake the suit," including "its jurisdictional basis." *Id.* at 35. Justice Kagan, writing for the Court, explained that "result accords with Congress's usual view of how amended pleadings can affect jurisdiction." *Id.* at 34. The Court observed, for example, that "an amendment can either destroy or create jurisdiction in an original diversity case," as "add[ing] a non-diverse party in such a case typically destroys diversity jurisdiction, requiring the case's dismissal." *Id.* at 37 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374–377 (1978)).

The Court did, however, note one category of amendments that is exempt from this rule: amendments that change "factual issue[s] relevant to jurisdiction." *Id.* at 37 n.8. Within this category is "an amendment reducing the alleged amount-in-controversy to below the statutory threshold," which "will usually not destroy diversity jurisdiction." *Id.* Because "the rule more concerns a fact on the ground," in this case "the value of a suit," it is "analogous to the time-of-filing rule applying to citizenship." *Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294–295 (1938)); *Rosado v. Wyman*, 397 U.S. 397, 405, n. 6 (1970)); *see also id.* at 36 n.5 (distinguishing the "so-called time-of-filing rule," "which evaluates a party's

citizenship (*e.g.*, whether the defendant is in fact from New York) at the time a suit is brought," and "concerns only the actual 'state of things' relevant to jurisdiction"). Accordingly, the Court suggested the amount in controversy should still be calculated as of the time a plaintiff files the original complaint.

**b. The Northern District of Florida's Decision on Subject Matter Jurisdiction**

On November 12, 2024, Judge Bolitho recommended that the district judge deny the plaintiff's motion to remand. (ECF No. 21.) At that time, the operative complaint was the original complaint, which included the explicit references to the First and Fourth Amendments. Judge Bolitho held that there was federal question jurisdiction because the plaintiff "clearly cites to the U.S. Constitution for several of his claims." (*Id.* at 3.) Judge Bolitho found that it was unnecessary to address whether there was diversity jurisdiction exists "[b]ecause there is clearly federal question jurisdiction in this case." (*Id.* at 2 n.1.)

Shortly thereafter, the plaintiff amended his complaint, "deleting every mention of federal law," just as the *Royal Canin* plaintiff did. (ECF No. 26; *Royal Canin*, 604 U.S. at 22 (Syllabus).) The defendants' motion to transfer was still pending when the plaintiff filed his amended complaint.

Judge Bolitho granted the defendants' transfer motion on January 6, 2025, a week before the Supreme Court published *Royal Canin*. In deciding that motion — and specifically whether the case "could have been filed in the Eastern District of New York because it has subject matter jurisdiction" — the court considered whether the plaintiff's amendment affected its jurisdiction. (ECF No. 30 at 5.)

Following then-binding circuit precedent, which was unquestionably good law before *Royal Canin*, Judge Bolitho wrote:

> The Court has already determined that federal subject matter jurisdiction existed in this case at the time of removal. (Docs. 21, 28). Plaintiff, however, recently attempted to circumvent the Court's jurisdictional determination by filing an amended complaint that removes references to any federal claims and expressly seeks damages less than the $75,000 amount-in-controversy requirement. (*See* Doc. 26). Federal courts have repeatedly rejected such clever attempts to destroy federal jurisdiction. Because the Court has already determined that subject matter jurisdiction existed at the time of removal (Docs. 21, 28), Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case.

(*Id.*)

Judge Bolitho relied on three cases: *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002), which "affirm[ed] the denial of remand where plaintiff 'amended the complaint to remove any federal cause of action' because the facts alleged in the amended complaint still 'fell within the scope of the federal causes of action' initially pleaded" (alteration adopted); *Collura v. City of Philadelphia*, 590 F. App'x 180, 184 (3d Cir. 2014), which "affirm[ed] denial of remand where plaintiff 'dropped his federal claims from his amended complaint' because 'federal jurisdiction cannot be defeated by amending a complaint to eliminate federal claims after removal'" (alteration adopted); and *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007), in which the Supreme Court observed in a footnote that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction . . . . But removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." (*Id.* at 5 n.2, 6 (emphasis in original).)

The *Royal Canin* Court addressed these cases, and noted that there was a circuit split on the question before the Court. *Collura* and *Behlen* were in circuits where the rule was "that a post-removal amendment cannot divest a federal court of jurisdiction." *Royal Canin*, 604 U.S. at

30, & n.3 (citing *Collura*, 590 F. App'x at 184, and *Behlen*, 311 F.3d at 1095). *Royal Canin* clearly abrogated these holdings. *See Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024) (Supreme Court decision abrogates circuit precedent if there is "a conflict, incompatibility, or inconsistency" between the decision and precedent (internal citation omitted)).

Justice Kagan also discussed *Rockwell* at length, explaining that it was consistent with the Court's reasoning in Royal Canin: "unless the withdrawn allegations [in an amended complaint] were 'replaced by others' giving the court adjudicatory power, the plaintiff's amendment 'will defeat jurisdiction.'" *Id.* at 36 (quoting *Rockwell*, 549 U.S. at 473); *see also id.* at 41 (*Rockwell* "examine[d] what happens in an original case when a plaintiff amends a complaint to expunge federal claims").

The Court also distinguished the footnote on which Judge Bolitho relied in the transfer order. Acknowledging that "[t]he footnote . . . sets out exactly the rule [the defendant] wants" — and the rule Judge Bolitho stated — the Court said that "the footnote is dictum, and [did] not control the outcome" in *Royal Canin*. *Id.* at 42. The Court did not have to "follow the *Rockwell* footnote just because it exists; [the Court's] adherence instead depends on whether it withstands analysis. And it does not." *Id.* at 43.

*Royal Canin*, thus, abrogated the central precedents on which Judge Bolitho relied in holding that this Court would have had federal jurisdiction over the case had it been brought in this district. Accordingly, the Court must evaluate whether it has subject matter jurisdiction over this case in light of *Royal Canin*. *See id.* at 34 ("[A]n amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion.").

**c. Federal Question Jurisdiction**

The plaintiff maintains that *Royal Canin* controls this case. Because the plaintiff removed his references to federal law in the amended, now-operative complaint, he contends that the Court does not have federal question jurisdiction over the purely state-law claims in the amended complaint. (*See generally* ECF No. 47.) The defendants say that *Royal Canin* does not apply because the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else." (ECF No. 53 at 8 (emphasis in original).) Second, they assert that the state law claims in the amended complaint nonetheless arise under federal law because they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Id.* at 10 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).) Neither argument is persuasive.

"The federal district courts have 'original jurisdiction' of civil actions 'arising under' federal law; and unless otherwise provided by Congress, they have removal jurisdiction over 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting 28 U.S.C. §§ 1331, 1441(a)). Claims directly arise under "federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

As an initial matter, the defendants' argument that this case is distinguishable from *Royal Canin* because the plaintiff removed federal claims, not just references to federal law, is unconvincing. The relationship between federal law and state claims in *Royal Canin* is similar to

the one in this case. The *Royal Canin* complaint "alleged the [federal] violations not as independent federal claims, but instead in support of [the plaintiff's] state claims." *Royal Canin*, 604 U.S. at 29 n.1. The Eighth Circuit, citing *Gunn*, held that the state-law claims arose under federal law because those "provisions [were] thoroughly embedded in, and integral to the success of" the state law claims. *Id.* (citing *Wullschleger v. Royal Canin U. S. A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020)). The Supreme Court, however, took "a slight liberty throughout [the] opinion, referring to the original complaint's [federal] allegations simply as federal claims." *Id.* In other words, although Justice Kagan calls them federal claims, they were allegations that raised a federal question. Like Ms. Wullschleger, the plaintiff amended his complaint to remove citations to federal law, while retaining essentially the same causes of action. Thus, the facts are similar to the *Royal Canin* facts, and *Royal Canin* controls.

Nonetheless, the defendants maintain that *Royal Canin* does not apply to cases where a plaintiff's amended complaint "removed certain words" but otherwise "kept the factual premise of his claims intact, and . . . sought the same relief post-amendment that he had sought pre-amendment." (ECF No. 53 at 8.) In support of this proposed rule, they cite *Behlen*, 311 F.3d at 1095, where the Eleventh Circuit held that "it was proper for the court to retain jurisdiction over [the plaintiff's] amended complaint, because, despite his removal of the allegations that would bring his claims within the scope of the [federal law], the amended complaint still presents a federal question." The Eleventh Circuit explained that the amended complaint continued to allege that the defendant violated federal securities laws, even though the plaintiff no longer cited those statutes; and merely removing citations to federal law did not erase the federal question. *Id.* at 1095–96.

*Royal Canin* did not necessarily abrogate this holding, but the defendants' proposed rule does not follow from the quoted language. According to the defendants, the amended complaint still asserts federal causes of action, even though it does not allege any violations of federal law. (ECF No. 53 at 8–9.) Accepting the defendants' theory would require the Court to read a federal cause of action into the amended complaint, which it will not do. *See Royal Canin*, 604 U.S. at 35 (the plaintiff is the "master of the complaint" and "gets to determine which substantive claims to bring against which defendants"). After all, the Court would not allow the plaintiff to recover under a federal cause of action when his amended complaint does not state one; nor will the Court read a federal claim into the complaint to exercise jurisdiction.[11]

The better reading of *Behlen* accords with the defendants' next argument — that even if the plaintiff asserts only state-law claims, those claims still arise under federal law. (*Id.* at 10 (quoting *Grable*, 545 U.S. at 314).) In addition to cases that arise directly under federal law, "the Supreme Court has identified a 'special and small' category of actual state claims that present significant, disputed issues of federal law," and therefore arise under federal law within the meaning of § 1331. *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 912 (2d Cir. 2024) (citation omitted). "For a state law claim to fall within this 'slim category,' the embedded federal issue must be '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

[11] In claiming that the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else" (ECF No. 53 at 8 (emphasis in original)), the defendants may mean to argue that the plaintiff impermissibly "disguise[s] . . . inherently federal cause[s] of action, to block removal." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3722.1. In other words, the defendants might be saying that the plaintiff's state constitutional claims are inherently federal causes of action — under 42 U.S.C. § 1983, for instance — because, as discussed below, no cause of action exists under state law. To credit this position, however, the Court would have to rewrite the plaintiff's complaint to find a viable federal cause of action that does not appear on the face of the complaint. That is not the Court's job. *See, e.g.*, *Adams v. Gen. Motors Acceptance Corp.*, 307 F. Supp. 2d 812, 817 (N.D. Miss. 2004) (remanding and rejecting defendant's argument that because state law provided no cause of action, the plaintiffs' claims must be construed as federal claims).

capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn*, 568 U.S. at 258); *see also Grable*, 545 U.S. at 314.

*i. Necessarily Raised*

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) (quoting *Jacobson*, 824 F.3d at 315). "For a federal issue to be necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Id.* (emphases in original) (internal quotations and citations omitted). "In other words, federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case." *Tantaros*, 12 F.4th at 141. The Second Circuit has instructed district courts to "[f]ocus[] on 'what necessarily appears in the plaintiff's statement of his own claim,'" and "exercise federal jurisdiction only if 'a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (alterations adopted) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

The plaintiff alleges in the amended complaint that the defendants violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution, by executing this Court's orders. (ECF No. 26 ¶¶ 17–26, 30–35.) The plaintiff attached to his amended complaint two affirmations of service that say that the defendants executed the search pursuant to this Court's seizure order. (ECF No. 26-1, Ex. C, at 8–9; ECF No. 26-1, Ex. D, at 10–12.) The plaintiff's state constitutional claims are, therefore, premised on the defendants' execution of an

order issued from this Court pursuant to a federal statute, 15 U.S.C. § 1116(d).[12] In other words, to establish that the search violated the Florida constitution, the plaintiff must prove either that the Court's asset freeze and seizure orders were improper or that they were illegally executed. Both are questions of federal law and are necessarily raised by the plaintiff's claims under the state constitution.

But these federal questions would not necessarily arise if the plaintiff does not have a cause of action, because then they are not "an element . . . of the plaintiff's cause of action." *Tantaros*, 12 F.4th at 141. That is the case here, because as the defendants point out, "no cause of action exists for money damages for a violation of a state constitutional right" in Florida. *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th Dist. Ct. App. 2004) (citing *Garcia v. Reyes*, 697 So.2d 549 (Fla. 4th Dist. Ct. App. 1997)). *See also Cowans v. Maximus Educ. LLC*, No. 4D2025-0235, 2025 WL 2055134, at *1 (Fla. 4th Dist. Ct. App. July 23, 2025) ("[I]t does not appear that article I, section 23 gives rise to a cause of action for money damages."); *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st Dist. Ct. App. 1994) (holding that it is "clear that article I, section 23 does not create a cause of action for 'governmental intrusion' because legislative enactment is needed to delineate whether immunity is waived to permit the award of money damages"), *approved*, 670 So. 2d 56 (Fla. 1996); *Funderburk v. O'Leary*, No. 21-CV-14290, 2023 WL 3491221, at *5 (S.D. Fla. May 17, 2023) ("Plaintiff will not be permitted to seek damages for violations of the Florida Constitution." (collecting cases)); *Lindbloom v. Manatee Mem'l Hosp., L.L.C.*, No. 23-CV-2856, 2025 WL 1563550, at *7 (M.D. Fla. Apr. 7, 2025) ("Florida state and federal courts have held that 'Florida constitutional claims do not support claims for damages absent a separate enabling statute.'" (internal citation omitted)), *report and*

[12] The defamation claims do not arise under federal law, and the defendants do not argue that they do.

*recommendation adopted*, 2025 WL 1450371 (M.D. Fla. May 21, 2025); *Ayala v. City of Pembroke Pines*, No. 25-CV-60294, 2025 WL 2202101, at *3 (S.D. Fla. June 27, 2025) ("[N]o cause of action exists for monetary relief for a violation of a Florida constitutional right."); *Capps v. Fla. Highway Patrol*, No. 17-CV-60365, 2017 WL 1436077, at *7 (S.D. Fla. Apr. 24, 2017) (collecting cases); *Smith v. Bell*, No. 06-CV-60750, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself." (collecting cases)). Accordingly, because the plaintiff has no private right to raise the federal issues, those issues are not necessarily raised on the face of the plaintiff's complaint, and this case does not arise under federal law.

In an abundance of caution, however, and because the Court could construe the plaintiff's constitutional claims as a tort claim for invasion of privacy that necessarily raises these federal questions, the Court continues the *Gunn-Grable* analysis. *See Percival v. Chronister*, No. 23-CV-1243, 2025 WL 1940316, at *17 (M.D. Fla. July 15, 2025) (construing *pro se* claim "incorrectly ground[ed]" in the Florida Constitution as "one for an invasion of privacy"); *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980) (holding that "Florida has recognized the tort of invasion of privacy," at least in cases of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home").

*ii. Actually Disputed*

Assuming federal questions necessarily arise in the state law claims, those questions — the legality of the Court's orders and the defendants' execution of those orders, in this case — are a "central point of dispute" in the action, "satisfying the second requirement for the exercise of federal jurisdiction in this case." *Link Motion Inc.*, 103 F.4th at 913 (quoting *Gunn*, 568 U.S. at 259).

*iii. Substantial*

"Nevertheless, as the Supreme Court has cautioned, 'the mere presence of a [disputed] federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Id.* (alteration in original) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). The dispute must also be substantial. To satisfy this requirement "'it is not enough that the federal issue be significant to the particular parties in the immediate suit'; rather, 'the substantiality inquiry looks instead to the importance of the issue to the federal system as a whole.'" *Id.* (cleaned up) (quoting *Gunn*, 568 U.S. at 260). "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (alteration in original) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). For example, the Supreme Court and Second Circuit have exercised federal question jurisdiction where state law claims raise "disputes over the meaning of a federal tax law, the scope of an Internal Revenue Code regulation, and the duties imposed by the Securities Exchange Act." *Id.*

*Grable* is instructive on this point. In that case, the Internal Revenue Service seized Grable & Sons Metal Products' property and sold it to satisfy its federal tax debt. *Grable*, 545 U.S., at 310–311. The company filed a state law quiet title action against the third party that bought the property, alleging that the IRS had not complied with statutory notice requirements, so the seizure and sale were invalid. *Id.* at 311. The Supreme Court emphasized that the federal government has a "strong interest" in the collection of delinquent taxes, and "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* at 315

In this case, the plaintiff challenges the Court's authority to issue asset freeze and seizure orders under the Lanham Act. Although Congress granted concurrent jurisdiction to state and federal courts over claims under the Lanham Act, 28 U.S.C. § 1338(a), a court must construe the

statute "in the light of a strong federal policy in favor of vigorously competitive markets." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997). To that end "Congress recognized that a trademark aids competition in the marketplace because it helps a consumer distinguish among competing products." *Id.* (citation omitted). These important federal policies are at issue in this case. This is a close call, but this case could raise sufficiently substantial issues that implicate the whole federal system to support jurisdiction.

*iv. Disruption to the Federal-State Balance*

But even if the plaintiff's "state action necessarily raises a disputed and substantial issue of federal law," the Court would still not have federal question jurisdiction, because "federal jurisdiction lies only if adjudication in a federal forum would be consistent with the 'congressionally approved balance of state and federal judicial responsibilities,' defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'" *Tantaros*, 12 F.4th at 146 (quoting *Jacobson*, 824 F.3d at 316). "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Jacobson*, 824 F.3d at 316.

In this case, however, Florida has a special interest in the claims the plaintiff makes: violations of the state constitution. "It is fundamental . . . that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010) (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940). Even if substantial federal issues are at stake in this case, so are core state interests. The plaintiff's state-law claims, therefore, are outside of the Court's federal question jurisdiction under *Grable* and *Gunn*.

* * *

Accordingly, this case does not fall within the narrow category of cases in which purely state-law claims support jurisdiction under § 1331.

**d. Diversity Jurisdiction**

In the alternative, the defendants argue the Court has diversity jurisdiction under § 1332. "Congress has always given federal courts power to decide 'diversity' cases." *Royal Canin*, 604 U.S. at 26 (citing 28 U.S.C. § 1332(a)). Federal courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different [s]tates." 28 U.S.C. § 1332(a). The parties do not dispute that they are completely diverse. Therefore, the Court has diversity jurisdiction if the amount in controversy exceeds $75,000.

Courts determining whether they have diversity jurisdiction adhere to the "time-of-filing" rule, which "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the complaint] — whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). The *Royal Canin* Court reaffirmed this rule as applied to questions concerning "the actual 'state of things' relevant to jurisdiction — meaning, the facts on the ground, rather than (as addressed [in *Royal Canin*]) the claims and parties that the plaintiff includes in a complaint." *Royal Canin*, 604 U.S. at 36 n.5. The Court observed that courts typically evaluate a party's citizenship and the amount in controversy as of the time the plaintiff files the original complaint. *Id.* at 36 n.5, 38 n.8.

As to the amount in controversy, the Court offered two reasons that "an amendment reducing the alleged amount-in-controversy to below the statutory threshold . . . will usually not

destroy diversity jurisdiction." *Id.* at 38 n.8; *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). The first is that "the value of a suit" concerns "facts on the ground," as opposed to the plaintiff's decision as master of the complaint in choosing the parties and claims, so the Court "viewed it as analogous to the time-of-filing rule applying to citizenship, which also assesses a factual issue relevant to jurisdiction only at the suit's outset." *Royal Canin*, 604 U.S. at 38 n.8. Second, assessing a suit's value poses unique difficulties, because it is likely "that the calculation will change over the course of litigation," which could inspire "constant litigation" and "alter a court's jurisdiction." *Id.* Therefore, the Court looks to the original complaint to determine the amount in controversy.

The removing defendants must show a "reasonable probability that the jurisdictional amount has been reached." *Cappuccilli v. Cokinos*, No. 24-CV-3045, 2024 WL 3013604, at *1 (E.D.N.Y. June 14, 2024) (citation omitted). "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 273–74 (2d Cir. 1994). "In determining whether the removing defendant has met this burden, courts 'look first to the plaintiffs' complaint and then to [the defendants'] petition for removal.'" *Gregory Wayne Designs, LLC v. Lowry*, No. 24-CV-2109, 2024 WL 3518584, at *3 (S.D.N.Y. July 24, 2024) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). If neither in conclusive, "courts may look outside those pleadings to other evidence in the record." *Id.* (quoting *United Food & Com. Workers Union*, 30 F.3d at 305).

The plaintiff does not allege a specific damages amount in the state court complaint. Instead, he claims that the damages exceed $50,000.00, which is the jurisdictional threshold for circuit courts in Florida. (ECF No. 1-1 ¶ 12; ECF No. 18 at 10 (citing Fla. Stat. Ann § 34.01).) This allegation does not support federal jurisdiction because it "merely indicates an amount in controversy in excess" of a jurisdiction limit that is below $75,000. *De Garcia v. Tropicana Ent. Inc.*, No. 22-CV-12, 2022 WL 375996, at *2 (E.D.N.Y. Feb. 8, 2022) (quoting *Valente v. Garrison From Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *1 (E.D.N.Y. Jan. 11, 2016)) (collecting cases); *see also O'Neill v. Target Corp.*, No. 21-CV-3262, 2021 WL 2634880, at *2 (E.D.N.Y. June 25, 2021); *Williams v. CVS*, No. 25-CV-655, 2025 WL 486656, at *2 (E.D.N.Y. Feb. 13, 2025).

Nor do the plaintiff's "boilerplate" allegations of his injuries "suffice to establish that this action involves an amount in controversy adequate to support federal diversity jurisdiction." *Mekhi v. Area Storage & Transfer, Inc.*, No. 18-CV-4654, 2018 WL 4043152, at *2 (E.D.N.Y. Aug. 24, 2018) (citation omitted) (collecting cases). The plaintiff pleads five causes of action.[13] For his state constitutional claims, he alleges he "suffered damages, including emotional distress, invasion of privacy, and other harm" and "demands [j]udgment for damages [and] punitive damages." (ECF No. 1-1 ¶¶ 32, 35, 38.) For his defamation claims, he alleges he "suffered damages, including damage to reputation, emotional distress, and other harm" and "demands [j]udgment for damages [and] punitive damages." (*Id.* ¶¶ 42, *id.* at 10.) These "conclusory assertions . . . lack of any detail regarding Plaintiff's specific damages," and "there is simply insufficient information to 'intelligently ascertain removability.'" *Mekhi*, 2018 WL 4043152, at

[13] He probably pleads just two cognizable causes of action. (*See* ECF No. 18 at 13 (arguing that only the libel and slander claims are even "superficially *cognizable* against private actors such as Defendants" (emphasis in original).)

Case 3:26-cv-00345-MHTC Document 1-1 Filed 03/02/27/26 Page 283 of 873

*2 (quoting *DeMarco v. MGM Transp., Inc.*, No. 06-CV-307, 2006 WL 463504, at *1 (E.D.N.Y. Feb. 24, 2006)); *see also Herlihy v. Hyatt Corp.*, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022) ("[G]eneralized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met." (collecting cases)).

The defendants maintain, however, that each claim, if proven, is "likely to result in damages far in excess of $75,000," because "jury awards in defamation cases regularly exceed" that amount. (ECF No. 53 at 12; ECF No. 18 at 9–16.) But just because jury awards may exceed the amount in controversy does not mean that they must — or that they do in this case. Moreover, post-trial jury awards offer little guidance on the amount in controversy of claims before any motion practice or discovery. For these reasons, courts in this circuit routinely disregard comparisons to jury verdicts in determining the amount in controversy for jurisdictional purposes. *See, e.g.*, *Jean-Louis v. Amazon.com Servs., LLC*, No. 22-CV-5020, 2022 WL 3867668, at *3 (E.D.N.Y. Aug. 29, 2022) ("[C]onsidering the procedural posture of this case, [the defendant's] reliance on cases — decided post-trial — discussing at length evidence of a relentless stream of discrimination and taunting that spanned many years is misplaced."); *Salerno v. N. Manor Multicare Facility*, No. 21-CV-7490, 2021 WL 4148900, at *2 (S.D.N.Y. Sept. 13, 2021) (declining to rely on "cases *reviewing* jury verdicts for emotional damages" in determining amount in controversy because of the difference in "procedural posture" (emphasis in the original)).

The defendants also point to the plaintiff's request for punitive damages, which they state may be "up to three times actual damages or $500,000, whichever is higher." (ECF No. 53 at 12.) "[I]n computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (alteration adopted) (citation omitted). The complaint does not allege any facts that would support "reasonable probability" that the plaintiff would be entitled to punitive damages; the "conclusory assertion that any amount of punitive damages is a *fait accompli* is untethered to the record and amounts to the kind of speculation and surmise that courts in this Circuit routinely reject." *Jean-Louis*, 2022 WL 3867668, at *4.

The defendants' notice of removal does not satisfy their burden either. They plead that "the amount in controversy in this action — as pled — plausibly exceeds $75,000." (ECF No. 1 ¶ 16.) This conclusory assertion is similarly not conclusive or controlling. *Gregory Wayne Designs, LLC*, 2024 WL 3518584, at *4. The defendants cannot "rely[] on inferences drawn from the Complaint," because it does not allege any facts about the nature or extent of the plaintiff's harm. *Herrera v. Terner*, No. 16-CV-4610, 2016 WL 4536871, at *2 (E.D.N.Y. Aug. 30, 2016); *see also Shoham v. United Airlines, Inc.*, No. 22-CV-5677, 2022 WL 13798296, at *2 (E.D.N.Y. Oct. 21, 2022) (remanding personal injury claims because the "boilerplate pleadings" could not establish an amount in controversy supported federal jurisdiction).

Without any factual allegations about the plaintiff's injuries to support jurisdiction, the defendants must look outside the pleadings. They cite the state court civil cover sheet that the plaintiff filed with his complaint. (ECF No. 1-1 at 2.) On this administrative form, the plaintiff "estimated [the] amount of the claim, rounded to the nearest dollar" at "over $100,000.00." (*Id.*) However, the Court declines to rely on this document as affirmative evidence of the actual amount in controversy. The civil cover sheet states on its face that it "neither replace[s] nor supplement[s] the filing . . . of pleadings" and is required by "the Clerk of Court for the purpose of reporting uniform data pursuant" to state law. (*Id.*) The amount of claim question narrows its

use even further: It is "for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose." (*Id.*) Indeed, courts have held that a plaintiff's answers on the civil cover sheet cannot establish diversity jurisdiction. *Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); *Galloway v. Ahamed*, No. 22-CV-979, 2022 WL 3107330, at *5 (D. Conn. Aug. 4, 2022) (checking box on civil cover sheet is not sufficient to prove the amount in controversy exceeds the jurisdictional threshold); *Powell v. Maldonado*, No. 23-CV-826, 2024 WL 496478, at *4 (E.D.N.Y. Feb. 7, 2024) (checking boxes on civil cover sheet does not establish parties are diverse). This is especially true in the context of removal, because "federal courts construe the removal statute narrowly, resolving any doubts against removability," *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).

*   *   *

Accordingly, the Court lacks federal jurisdiction over this action, and it must remand the case. *See* 28 U.S.C. 1447(c).

## III. Remand to Florida State Court

"[W]hen an action is transferred, it remains what it was." *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.). "[A] transferee court is deemed to inherit all the authority of a transferor court." *Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 271 (3d Cir. 2002) (holding that "a court has authority to send a case back to the state court where it originated" and "does not have authority to 'remand' a case to a stranger court"). This includes the authority to remand the case to the state court where the case originated. *See, e.g., Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir.

2002) (declining to review order remanding case to the Florida Circuit Court for lack of federal subject matter jurisdiction); *Parker v. J. Crew Grp., Inc.*, No. 17-CV-1214, 2018 WL 385033, at *2 (D.N.J. Jan. 11, 2018) (remanding transferred case to Illinois state court); *Retterath v. Homeland Energy Sols., LLC*, No. 14-CV-158, 2014 WL 7776705, at *10 (S.D. Iowa Dec. 24, 2014) (remanding transferred case to Florida state court).

Indeed, the Court has no other option. The removal statute contemplates that courts may remand a case only "to the State court from which it was removed." 28 U.S.C. 1447(c). Courts have repeatedly followed this reasoning and "held that a district court is only permitted to remand a case to the state court from which the case was removed." *Salis v. Manzanet-Daniels*, No. 24-CV-1130, 2025 WL 1305868, at *4 (N.D.N.Y. May 6, 2025) (collecting cases). The Court must remand the case if it does not have subject matter jurisdiction, and there is only one court to which remand is permissible. Accordingly, this case is remanded to the First Judicial Circuit Court of Florida, the court from which it was removed.

**CONCLUSION**

For the foregoing reasons, the case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 30, 2025

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

JOHN D. LEVITAN,

Plaintiff,

v. Case No. **1:25-CV-00393-AND-JAM**

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC,
PATTERSON, BELKNAP, WEBB &
TYLER, LLP, GEOFFREY POTTER,
TIMOTHY ALAN WATERS,
ARON FISCHER, JOSHUA STEIN,
and THOMAS P. KURLAND,
Jointly and Severally,

Defendants.

_________________________________/

),/('
02/14/2025 02:38 30
LQWKH&OHUN'V2IILFH
8.6.'LVWULFW&RXUW,
('1<,%URRNO\Q
3UR6H2IILFHYLD
(OHFWURQLF3RUWDO
*5HF. 2/18/25

**REQUEST FOR JUDICIAL DEFAULT**
**AGAINST GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC**
**PATTERSON BELKNAP WEBB & TYLER LLP (“PBWT”),**
**GEOFFREY POTTER, TIMOTHY ALAN WATERS,**
**ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND**

**NOW COMES** Plaintiff, John Levitan, *pro se* and would move the Court to enter default against Gilead Sciences, Inc., Gilead Sciences Ireland UC, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua

Stein, And Thomas P. Kurland for failing to timely file their Answer as Ordered by the Court that was due January 16, 2025. *See Doc. 5 and Doc. 19.* [1]

Respectfully submitted,

JOHN D. LEVITAN, SR. *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Primary Email: jdlsr@gileadfraud.com
Secondary Email: legal@gileadfraud.com
Telephone: +1 (850) 497-2724



John D. Levitan, Sr., *pro se*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on Defendants' counsel Geoffrey Potter, Thomas Kurland, Timothy Waters, Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036, by emailing the foregoing document to counsels' Email of record at: gpotter@pbwt.com, tkurland@pbwt.com, twaters@pbwt.com on this 14th day of January 2024.



John D. Levitan, Sr., *pro se*

[1] The Court Order (Doc. 5) as to "*Defendants Patterson Belknap Webb & Tyler LLP ("PBWT"), Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland (collectively "Removing Defendants")*, and the Court Order (Doc.19) as to *Gilead Sciences, Inc., and Gilead Sciences Ireland UC*, both required the Defendants to file their Answer on or before January 16, 2025. The Motion to Dismiss should be struck as untimely and contrary to the Order of the Court. Defendants have had over four months to file an answer to the Complaint. The Motion to Dismiss is merely another delay tactic to delay discovery so that the false allegations made against the Plaintiff will not be discovered as well as the coverup the Defendants have been perpetrating nationwide. (Emphasis Supplied).

# EXHIBIT D

| | |
|---|---|
| **From:** | Jeremy Branning |
| **To:** | John Levitan; John Levitan; General Counsel |
| **Cc:** | Jake Barnes; Judi Dallman; Phillip Imperial |
| **Subject:** | Levitan / Gilead Sciences, et al - NOA and requests |
| **Date:** | Friday, October 10, 2025 12:16:08 PM |
| **Attachments:** | clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png<br>NTC - Appearance of JCB JFP efiled 2025-10-09.pdf |

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

This message was secured by **Zix**®.

| | |
|---|---|
| **From:** | Jeremy Branning |
| **To:** | "General Counsel" |
| **Cc:** | John Levitan; John Levitan; Jake Barnes; Judi Dallman; Phillip Imperial |
| **Subject:** | RE: Levitan / Gilead Sciences, et al - NOA and requests |
| **Date:** | Sunday, October 12, 2025 8:17:05 AM |
| **Attachments:** | clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png |

This message was sent securely using Zix®

Dan – Thank you for the professional courtesy of agreeing to the proposed deadline for the defendants to respond to the First Amended Complaint and confirming no objection to the substitution of counsel.

We will file a notice of agreement on defendants' proposed deadline of October 29 to respond to the First Amended Complaint so the docket has a filing that reflects the agreed response deadline.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

---

**From:** General Counsel <legal@invictusholdings.us>
**Sent:** Friday, October 10, 2025 1:21 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** jdlsr@gileadfraud.com; legal@gileadfraud.com; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>; General Counsel <legal@invictusholdings.us>
**Subject:** Re: Levitan / Gilead Sciences, et al - NOA and requests

Sure Jeremy go ahead and I'm fine with both. I'm a little bit perturbed that you're representing a firm that is full of fraud, full of misrepresentation, violates ethic standards, and plays the New York victim when they build a firm around targeting people that have nothing to do with one of the, I'm disturbed that a Pensacola law firm would actually accept them using corrupt judges and especially you for accepting this case.

# Office General Counsel Sent from Mobile Device

# Please Excuse Errors

On Oct 10, 2025, at 12:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

This message was secured by **Zix**®.

This message was secured by **Zix**®.

| | |
|---|---|
| **From:** | John Levitan |
| **To:** | Jeremy Branning |
| **Cc:** | John Levitan; Jake Barnes; Judi Dallman; Phillip Imperial |
| **Subject:** | Re: Hearing 10-30-25 Levitan v Gilead, et al |
| **Date:** | Wednesday, October 29, 2025 4:07:51 PM |
| **Attachments:** | clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png<br>clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png |

Hi Jeremy I wanted to do a separate email.

The following is what you requested "[ ]we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint."

I take that to mean you would be filing your answer to the Amended Complaint. Not a Motion to Dismiss, which is not a responsive document.

I will move to strike and request sanctions for the misrepresentation to me with the Court.

Please advise.

Sent from Mobile Device Please Excuse Errors

On Oct 29, 2025, at 4:49 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Hey John, we don't have a hearing scheduled for tomorrow, so you are good. The only hearing we have scheduled is on November 10.

We are filing the defendants' motion to dismiss today per the agreement on the extension of time to respond to the First Amended Complaint.

We are also filing a motion to stay discovery pending the Court's ruling on the motion to dismiss. We are obligated to confer with you on the motion to stay discovery. Do you consent or oppose a stay of discovery until the court rules on the motion to dismiss?

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

-----Original Message-----
From: John Levitan <legal@gileadfraud.com>
Sent: Wednesday, October 29, 2025 9:50 AM
To: Jeremy Branning <jbranning@clarkpartington.com>
Cc: Daniel Levitan <legal@invictusholdings.us>
Subject: Hearing 10-30-25 Levitan v Gilead, et al

Good Morning Jeremy:

I had an unexpected business emergency come up and have to be in Palm Beach, and Miami today.

Would you mind rescheduling the hearing?

Regards,

John D. Levitan, Sr. Tel: 850-497-2724

This message was secured by Zix®.

**From:** John Levitan
**To:** Jeremy Branning
**Cc:** Jake Barnes; Judi Dallman; Phillip Imperial
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al
**Date:** Wednesday, October 29, 2025 4:38:38 PM
**Attachments:** image001.png
clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

---

Hi Jeremy:

Just giving you an opportunity to rethink your Motion to Dismiss it is clearly outside of what I agreed to and you requested .

Boca Burger, Inc. v. Forum, 912 So. 2d 561, 567 (Fla. 2005)
("[A] motion to dismiss is not a 'responsive pleading' because it is not a 'pleading' under the rules. See Fla. R. Civ. P. 1.100(a).");Green v. Sun Harbor Homeowners' Ass'n, 730 So. 2d 1261, 1262-63 (Fla. 1988)

"Moreover, a motion to dismiss does not fall under the category of "responsive pleading" See Shapiro v. Tulin, 66 So. 3d 254 ( Fla. 1st DCA 2011)

Regards,

On Oct 29, 2025, at 5:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

I disagree.  A motion to dismiss is a response.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png>

**From:** John Levitan <legal@gileadfraud.com>
**Sent:** Wednesday, October 29, 2025 4:08 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** John Levitan <legal@gileadfraud.com>; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al

Hi Jeremy I wanted to do a separate email.

The following is what you requested "[ ]we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint."

I take that to mean you would be filing your answer to the Amended Complaint. Not a Motion to Dismiss, which is not a responsive document.

I will move to strike and request sanctions for the misrepresentation to me with the Court.

Please advise.

Sent from Mobile Device Please Excuse Errors

> On Oct 29, 2025, at 4:49 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:
>
> This message was sent securely using Zix®
>
> Hey John, we don't have a hearing scheduled for tomorrow, so you are good. The only hearing we have scheduled is on November 10.
>
> We are filing the defendants' motion to dismiss today per the agreement on the

extension of time to respond to the First Amended Complaint.

We are also filing a motion to stay discovery pending the Court's ruling on the motion to dismiss. We are obligated to confer with you on the motion to stay discovery. Do you consent or oppose a stay of discovery until the court rules on the motion to dismiss?

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<image001.png>

-----Original Message-----
From: John Levitan <legal@gileadfraud.com>
Sent: Wednesday, October 29, 2025 9:50 AM
To: Jeremy Branning <jbranning@clarkpartington.com>
Cc: Daniel Levitan <legal@invictusholdings.us>
Subject: Hearing 10-30-25 Levitan v Gilead, et al

Good Morning Jeremy:

I had an unexpected business emergency come up and have to be in Palm Beach, and Miami today.

Would you mind rescheduling the hearing?

Regards,

John D. Levitan, Sr. Tel: 850-497-2724

This message was secured by **Zix**®.

This message was secured by **Zix**®.

**From:** John Levitan
**To:** Jeremy Branning
**Cc:** Jake Barnes; Judi Dallman; Phillip Imperial
**Bcc:** Dave McGee
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al
**Date:** Wednesday, October 29, 2025 5:08:08 PM
**Attachments:** clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png
clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

---

Jeremy you said response which
meant response i.e "responsive "
I'm just tying to not file for sanctions on this.

You requested "to file a response to the First Amended Complaint."

I think that was clear,

Regards.

Sent from Mobile Device Please Excuse Errors

On Oct 29, 2025, at 5:54 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

You are inaccurately including the word "pleading" as if I used that term in my communication regarding the extension of time. I did not.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

**From:** John Levitan <legal@gileadfraud.com>
**Sent:** Wednesday, October 29, 2025 4:39 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al

Hi Jeremy:

Just giving you an opportunity to rethink your Motion to Dismiss it is clearly outside of what I agreed to and you requested .

Boca Burger, Inc. v. Forum, 912 So. 2d 561, 567 (Fla. 2005)
("[A] motion to dismiss is not a 'responsive pleading' because it is not a 'pleading' under the rules. See Fla. R. Civ. P. 1.100(a).");Green v. Sun Harbor Homeowners' Ass'n, 730 So. 2d 1261, 1262-63 (Fla. 1988)

"Moreover, a motion to dismiss does not fall under the category of "responsive pleading" See Shapiro v. Tulin, 66 So. 3d 254 ( Fla. 1st DCA 2011)

Regards,

> On Oct 29, 2025, at 5:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:
>
> This message was sent securely using Zix®
>
> I disagree. A motion to dismiss is a response.
>
> **Jeremy Branning | Shareholder**
> jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png>

**From:** John Levitan <legal@gileadfraud.com>
**Sent:** Wednesday, October 29, 2025 4:08 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** John Levitan <legal@gileadfraud.com>; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al

Hi Jeremy I wanted to do a separate email.

The following is what you requested "[ ]we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint."

I take that to mean you would be filing your answer to the Amended Complaint. Not a Motion to Dismiss, which is not a responsive document.

I will move to strike and request sanctions for the misrepresentation to me with the Court.

Please advise.

Sent from Mobile Device Please Excuse Errors

On Oct 29, 2025, at 4:49 PM, Jeremy Branning

<jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Hey John, we don't have a hearing scheduled for tomorrow, so you are good. The only hearing we have scheduled is on November 10.

We are filing the defendants' motion to dismiss today per the agreement on the extension of time to respond to the First Amended Complaint.

We are also filing a motion to stay discovery pending the Court's ruling on the motion to dismiss. We are obligated to confer with you on the motion to stay discovery. Do you consent or oppose a stay of discovery until the court rules on the motion to dismiss?

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<image001.png>

-----Original Message-----
From: John Levitan <legal@gileadfraud.com>
Sent: Wednesday, October 29, 2025 9:50 AM
To: Jeremy Branning <jbranning@clarkpartington.com>
Cc: Daniel Levitan <legal@invictusholdings.us>
Subject: Hearing 10-30-25 Levitan v Gilead, et al

Good Morning Jeremy:

I had an unexpected business emergency come up and have to be in Palm Beach, and Miami today.

Would you mind rescheduling the hearing?

Regards,

John D. Levitan, Sr. Tel: 850-497-2724

This message was secured by **Zix**®.

This message was secured by **Zix**®.

This message was secured by **Zix**®.

Filing # 235433577 E-Filed 11/09/2025 06:08:50 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

______________________________________________/

**MOTION TO STRIKE DEFENDANTS MOTION TO DISMISS**
**FOR FRAUD AGAINST THE PLAINTIFF AND FRAUD ON THE COURT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, and respectfully moves this Honorable Court, pursuant to Florida Rule of Civil Procedure 1.140(f), to strike Defendant's second filed Defendant's Motion to Dismiss, and in support thereof states as follows:

**I. INTRODUCTION**

1. On September 2, 2024 Plaintiff filed a Complaint in the above-styled matter. Defendants were served on September 16, 2024 and their answer was due October 7, 2024. See *Exhibit A.*

2. There was no Court Order or other motion filed by the Defendants that would toll the time for answering the Complaint on October 7, 2024.

3. On October 16, 2024, the Court US District Court issued its' order holding the Answer in abeyance until the pending Motion to Stay was resolved and Defendant's were then to answer within ten days thereof. That time has passed by over 10 months.

4. Subsequent to the remand to the Court, Defendant's counsel Jeremy Branning contacted Plaintiff requesting an extension of time purportedly to "respond" to the First Amended Complaint of 20 days. See *Exhibit B*, Emails from Jeremy Branning and the Plaintiff.

5. Plaintiff, in good faith, granted the requested extension of time under the reasonable belief that Defendant would file a responsive pleading as contemplated under Florida Rule of Civil Procedure 1.100(a). Response being an Answer to the First Amended Complaint.

6. Instead, Defendant used the extension granted by Plaintiff under false pretenses and filed a Motion to Dismiss on October 29, 2025, contrary to the purpose of the extension and in bad faith.

7. Plaintiff advised the Defendant's counsel Jeremy Branning that a response meant a responsive pleading to the First Amended Complaint and that a Motion to Dismiss was not a response as envisioned by the Plaintiff and it is well settled in the Court's that a Motion to Dismiss is not a "responsive" pleading. See *Exhibits B.*

8. Further, on October 16, 2024, the United States District Court issued an order expressly directing that:

> "Defendants' deadline to respond to Plaintiff's Complaint is extended until ten (10) days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings." *Id.*

9. The federal Motion to Stay and Abey Proceedings was resolved on January 23, 2025, when the case was transferred to the United States District Court for the Eastern District of New York (EDNY).

10. No new motion to stay or abey was filed in the EDNY until February 11, 2025 — eighteen (18) days after the transfer and the termination of the stay.

11. From January 23, 2025, forward, the stay had been lifted, and Defendants were obligated under the October 16, 2024 order to file their Answer within ten (10) days.

12. As of the date of this filing — now approximately eight months later — Defendants have still not filed any Answer, and no further stay has been entered in the EDNY or elsewhere.

13. Thus, Defendant's Motion to Dismiss filed in this action is procedurally improper, deceptive in its procurement, and in violation of both the federal order and the Florida Rules of Civil Procedure.

## II. ARGUMENT

**A**. Motion to Dismiss is Not a "Responsive Pleading" Under Florida Law

The Florida Supreme Court has held that:

> "A motion to dismiss is not a 'responsive pleading' because it is not a 'pleading' under the rules."

See *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 563 (Fla. 2005); see also Fla. R. Civ. P. 1.100(a).

Similarly, the federal courts recognize that:

> "A motion to dismiss is not deemed a responsive pleading."

See *Cooper v. Shumway*, 780 F.2d 27, 29 (10th Cir. 1985).

Defendant's representation to Plaintiff that it sought additional time "to respond" to the Complaint was therefore false and misleading, as a motion to dismiss does not qualify as a responsive pleading under Florida law.

**B**. Defendant's Conduct Constitutes Bad Faith, Misrepresentation, and Abuse of Process

Defendant's actions in obtaining Plaintiff's consent to an extension under a false pretense constitute fraudulent inducement and abuse of the judicial process.

Defendant knowingly violated both the October 16, 2024 federal court order and the procedural expectations set by Rule 1.100(a) by misusing the term "respond" to secure additional time for a filing that was never authorized or appropriate.

After the stay and transfer concluded on January 23, 2025, Defendant had ten (10) days to file an Answer but failed to do so — a clear procedural default as well as a substantive one that prejudices the Plaintiff.

No further stay was requested until February 11, 2025, long after the federal deadline had lapsed, and no stay has been granted since that date.

The Defendant's ongoing failure to file a responsive pleading, coupled with its improper Motion to Dismiss filed here under fraudulent pretenses, demonstrates bad faith and disregard for judicial authority.

Defendant's conduct violates the duty of candor owed to the Court and opposing counsel as set forth in Rule 4-3.3, Rules Regulating The Florida Bar, and undermines the fair administration of justice.

**C.** The Motion to Dismiss is Procedurally Defective and Improperly Filed

Defendant's Motion to Dismiss was filed (1) under false pretenses, (2) in contravention of a binding federal order, and (3) in violation of procedural fairness under the Florida Rules of Civil Procedure.

Because the Motion was obtained through deception and filed outside the bounds of procedural propriety, it should be stricken from the record to protect the integrity of these proceedings.

**III. CONCLUSION**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Strike Defendant's Motion to Dismiss as having been filed under fraudulent and deceptive pretenses;

b. Recognize that Defendant was bound by the October 16, 2024 federal order governing its deadline to respond, which expired ten (10) days after the stay ended on January 23, 2025;

c. Find that Defendant remains in default, as no stay has been entered and no Answer has been filed to date;

d. Enter a Judicial Default against the Defendants;

d. Order Defendant to file a proper responsive pleading within 3 days set by this Court; and

e. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,
November 9, 2025

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CONFERENCE OF COUNSEL**

Plaintiff has had an extensive email exchange with Defendant's counsel on this matter and Defendant's asserted that their Motion to Dismiss is a responsive pleading. See *Exhibits B.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 9th day of November 2025.

John D. Levitan

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| JOHN D. LEVITAN, SR.,<br>Plaintiff,<br>v.<br><br>GILEAD SCIENCES, INC., et al.,<br>Defendants. | CASE NO. 3:24-cv-475-MCR-ZCB |

**REFERRAL AND ORDER**

Referred to Judge M. Casey Rodgers on October 15, 2024
Motion/Pleadings: MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY
Filed by Defendants on October 14, 2024 Doc. # 4
______ Stipulated ______ Joint Pleading
______ Unopposed ______ Consented

JESSICA J. LYUBLANOVITS
CLERK OF COURT
/s/ ***Patricia G. Romero***
Deputy Clerk: Patricia G. Romero

---

On consideration, the motion is **GRANTED in part and DENIED in part**. Defendants' deadline to respond to Plaintiff's Complaint is extended until **10 days** after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is **DENIED**. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024.[1]

**DONE** and **ORDERED** this 16th day of October 2024.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

[1] Defendants must request leave of Court to file a reply. *See* N.D. Fla. Loc. R. 7.1(I).

Query Reports Utilities Help Log Out

DJI,NPROSE

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:25-cv-00393-AMD-JAM

Levitan v. Patterson Belknap Webb & Tyler LLP et al
Assigned to: Judge Ann M. Donnelly
Referred to: Magistrate Judge Joseph A. Marutollo
related Case: 1:21-cv-04106-AMD-JAM
Case in other court: Florida Northern, 3:24-cv-00475
Cause: 28:1332 Diversity-Libel,Assault,Slander

Date Filed: 01/23/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**John D Levitan, Sr.** represented by **John D Levitan, Sr.**
511 Windrose Circle
Pensacola, FL 32507
850-497-2724
PRO SE

V.

**Defendant**

**Patterson Belknap Webb & Tyler LLP** represented by **Hannah Eleanor Murphy**
STEARNS WEAVER MILLER - TALLAHASSEE FL
106 E COLLEGE AVENUE
SUITE 700
TALLAHASSEE, FL 32301
850-354-7629
Email: hmurphy@stearnsweaver.com
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
Patterson Belknap Webb & Tyler LLP
1133 Ave of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: gpotter@pbwt.com
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
Patterson Belknap Webb & Tyler
1133 Avenue Of The Americas
New York, NY 10036
(212)336-2000

Fax: (212)336-2222
Email: tkurland@pbwt.com
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: twaters@pbwt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Geoffrey Potter** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timothy Alan Waters** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Aron Fischer** represented by **Hannah Eleanor Murphy**
(See above for address)

*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joshua Stein** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas P Kurland** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Gilead Sciences Inc.** | represented by | **Geoffrey Potter**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Hannah Eleanor Murphy**<br>(See above for address)<br>*TERMINATED: 01/29/2025*<br>*ATTORNEY TO BE NOTICED*<br><br>**Thomas Philip Kurland**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Timothy Alan Waters**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Gilead Sciences Ireland UC** | represented by | **Geoffrey Potter**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Hannah Eleanor Murphy**<br>(See above for address)<br>*TERMINATED: 01/29/2025*<br>*ATTORNEY TO BE NOTICED*<br><br>**Thomas Philip Kurland**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Timothy Alan Waters**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2024 | 1 | NOTICE OF REMOVAL by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER from FIRST CIRCUIT COURT, ESCAMBIA COUNTY, case number 2024-CA-001164. ( Filing fee $ 405 receipt number BFLNDC-9078434.), filed by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER. (Attachments: # 1 Exhibit, # 2 Exhibit NY RELATED CASE DOCKET, # 3 Civil Cover Sheet) (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/03/2024 | 2 | Corporate Disclosure Statement/Certificate of Interested Persons by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |

| | | |
|---|---|---|
| 10/04/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal (please see proposed ISO). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/04/2024) |
| 10/07/2024 | 3 | MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* by PATTERSON BELKNAP WEBB & TYLER LLP. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/07/2024) |
| 10/07/2024 | | Set Deadlines re 3 MOTION to Stay and TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **10/21/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/08/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/14/2024 | 4 | MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/14/2024) |
| 10/15/2024 | | Set Deadlines re 4 MOTION to Expedite. (Internal deadline for referral to judge if response not filed earlier: **10/29/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/15/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 4 MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/16/2024 | 5 | ORDER re 4 MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY. The motion is GRANTED in part and DENIED in part. Defendants' deadline to respond to Plaintiff's Complaint is extended until 10 days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024. (Plaintiff's response to Defendant's MOTION to Stay remains **10/21/2024)**. Defendant's deadline to respond due by **10/31/2024**.) Signed by JUDGE M CASEY RODGERS on 10/16/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/16/2024) |
| 10/17/2024 | 6 | Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc., by JOHN D LEVITAN, SR (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 6 Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc.. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/21/2024 | 7 | Motion to Remand State Court Case No. 2024-CA-001164 and Incorporated Memorandum of Law, by JOHN D LEVITAN, SR. (alb) Modified on 1/3/2025 to term re 28 ORDER. |

| | | |
|---|---|---|
| | | (mb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/21/2024 | 8 | MOTION to File Pleadings Through the ECF/ECM System PACER by JOHN D LEVITAN, SR. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION NO LONGER REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. (alb) Modified on 10/22/2024 (alb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. Referred to ZACHARY C BOLITHO. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | 9 | MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW by JOHN D LEVITAN, SR. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 9 MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. Referred to ZACHARY C BOLITHO. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 10 | ORDER re 9 Motion for Enlargement of Time to Reply to MOTION to Stay and Transfer Proceedings. Plaintiff's motion is GRANTED to the extent that his response to Defendants' motion to stay and transfer proceedings (Doc. 3 ) is due on or before November 6, 2024. Plaintiff is advised that no further extensions of this deadline will be granted. (Internal deadline for referral to judge if response to Defendant's Motion not filed earlier: **11/6/2024)**.) Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 11 | ORDER. Plaintiff's "Request to File Pleadings Through the ECF/ECM System PACER" (Doc. 8 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/25/2024 | 12 | Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law, by JOHN D LEVITAN, SR. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 12 Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | 13 | ORDER denying 12 Motion for Reconsideration. That Plaintiff's Motion for Reconsideration (Doc. 12 ) is DENIED. If Plaintiff's travel plans interfere with his ability to meet a Court deadline, Plaintiff may file a motion seeking an extension of any such |

| | | |
|---|---|---|
| | | deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/28/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 11/01/2024 | 14 | Corporate Disclosure Statement/Certificate of Interested Persons by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 15 | RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal,, *Consent to Removal*. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 16 | NOTICE *of Joinder in Motion to Stay and Transfer Proceedings* by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 17 | MOTION to Hold Deadline for Responding to Complaint in Abeyance by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/04/2024 | 18 | MEMORANDUM in Opposition re 7 MOTION to Remand to State Court filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal, Consent to Removal. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 NOTICE of Joinder in Motion to Stay and Transfer Proceedings by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 18 MEMORANDUM in Opposition re 7 MOTION to Remand to State Court. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | 19 | ORDER re 17 Motion to Hold Deadline for Responding to Complaint in Abeyance. The motion (Doc. 17 ) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that Defendants' deadline to respond to Plaintiff's complaint is HELD IN ABEYANCE. The new deadline for Defendants Gilead Sciences, Inc., and Gilead Sciences Ireland UC to respond to Plaintiff's complaint is ten days after the Court's ruling on Defendants' motion to stay and transfer (Doc. 3 ). Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. Plaintiff's deadline to respond to Defendants' motion to stay and transfer proceedings (Doc. 3 ) remains November 6, 2024. Signed by MAGISTRATE |

| | | |
|---|---|---|
| | | JUDGE ZACHARY C BOLITHO on 11/04/24. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | Set Deadline re 19 ORDER - Internal deadline for referral to judge if response to 3 Motion not filed earlier: **11/6/2024)**. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/08/2024 | 20 | Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service, by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibit A). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 20 Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | 21 | REPORT AND RECOMMENDATION. Plaintiff's Motion to Remand to State Court (Doc. 7 ) be DENIED. This case be recommitted to the undersigned for further proceedings. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/12/2024. Internal deadline for referral to district judge if objections are not filed earlier: **12/10/2024**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/15/2024 | 22 | NOTICE *OF FILING AMENDED CERTIFICATES OF SERVICE* by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 18 Memorandum in Opposition to Motion, 15 Response/Reply, 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance , 16 Notice (Other), 14 Corporate Disclosure Statement/Certificate of Interested Persons (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 23 | RESPONSE in Opposition re 20 MOTION for Sanctions filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 24 | RESPONSE in Opposition re 3 MOTION TO STAY AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW filed by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 25 | MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 26 | PROPOSED FIRST AMENDED COMPLAINT against All Defendants., filed by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibits)(No service copies filed.) (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 22 DEFENDANTS' NOTICE OF FILING AMENDED CERTIFICATES OF SERVICE, 23 DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 26 Proposed Amended |

| | | |
|---|---|---|
| | | Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME, 24 Response in Opposition to Motion. Referred to ZACHARY C BOLITHO. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/22/2024 | 27 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 26 Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition to Motion . (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/22/2024) |
| 11/25/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 27 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFF'S MOTION TO FILE AN OUT OF TIME RESPONSE AND AMENDED COMPLAINT. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/25/2024) |
| 12/11/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 21 REPORT AND RECOMMENDATION (No objections or responses filed). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/11/2024) |
| 12/31/2024 | 28 | ORDER adopting Magistrate Judge's 21 REPORT AND RECOMMENDATION. The Plaintiff's Motion to Remand to State Court, (Doc. 7 ), is DENIED. This case is recommitted to the magistrate judge for further proceedings. Signed by JUDGE M CASEY RODGERS on 12/31/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 12/31/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 28 Order. (Recommitted back to Magistrate Judge). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 01/06/2025 | 29 | ORDER - That Plaintiff's motion for sanctions (Doc. 20 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 30 | ORDER. Plaintiff's Motion to File Opposition to Defendants Motion to Stay and Transfer (Doc. 25 ) is GRANTED. Defendants' Motion to Stay and Transfer Proceedings (Doc. 3 ) is GRANTED to the extent that the Court will transfer this action. The Clerk of Court must TRANSFER this case to the U.S. District Court for the Eastern District of New York and close the file in this Court fifteen days from the date of this Order, unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 31 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | | Set Deadlines re STAY for transfer response deadline: **1/21/2025** re 30 ORDER. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/08/2025 | 32 | ACKNOWLEDGMENT re 31 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv- |

| | | |
|---|---|---|
| | | 00101, filed 01/06/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/08/2025 | 33 | DOCKET ANNOTATION BY COURT: Re 32 Acknowledgment of Transfer - Case Manager to call back regarding premature transfer with instructions on how to proceed. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/08/2025 | 34 | NOTICE of Case 1:25-cv-00101-AMD-JAM removed from the docket due to premature transfer re 32 Acknowledgment, by EASTERN DISTRICT of NEW YORK. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: Set Deadlines re STAY for transfer response deadline: 1/21/2025 re 30 ORDER. (No responses filed by deadline - permission to TRANSFER). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/22/2025) |
| 01/23/2025 | 35 | Case transferred in from District of Florida Northern; Case Number 3:24-cv-00475. Original file certified copy of transfer order and docket sheet received. (Entered: 01/23/2025) |
| 01/23/2025 | 36 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | The case of **Levitan v. Patterson Belknap Webb & Tyler LLP et al**, has been transferred from **Northern District of Florida (Pensacola)** to the Eastern District of New York. The new case number is **25-cv-393**.<br>PLEASE NOTE: if you plan to continue representing your client(s), you must be admitted to practice before this court. You must do so by applying for Pro Hac Vice or permanent admission. To apply for Pro Hac Vice admission, you must first register for an ECF login and password. Please visit the Court's website at www.nyed.uscourts.gov/attorney-admissions for guidance. Once registered, you must electronically file a Motion to Appear Pro Hac Vice. You must pay the required pro hac vice fee online. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge Joseph A. Marutollo (as related to 21-cv-4106)for all further proceedings. Magistrate Judge Peggy Kuo no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.Ordered by Chief Judge Margo K. Brodie on 1/23/2025. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | 37 | NOTICE of Appearance by Geoffrey Potter on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Potter, Geoffrey) (Entered: 01/23/2025) |
| 01/23/2025 | 38 | NOTICE of Appearance by Timothy Alan Waters on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences |

| | | |
|---|---|---|
| | | Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Waters, Timothy) (Entered: 01/23/2025) |
| 01/23/2025 | 39 | NOTICE of Appearance by Thomas Philip Kurland on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Kurland, Thomas) (Entered: 01/23/2025) |
| 01/24/2025 | 40 | SCHEDULING ORDER: A telephonic initial conference will be held on February 19, 2025 at 4:00 p.m. before Magistrate Judge Joseph A. Marutollo. To participate in the conference, the parties shall dial (646) 828-7666; Meeting ID: 161 018 4647; Passcode: 455895. The parties must complete the attached proposed Discovery Plan and Scheduling Order and file it on ECF no later than February 14, 2025. Plaintiff is directed to ensure that all Defendants are aware of this conference. Counsel with knowledge of the case must attend the conference; *per diem* counsel may not appear without prior permission of the Court. The parties are directed to review this Court's Individual Practices and Rules in advance of the conference. The Clerk of Court is directed to mail copy of this order to the plaintiff. Ordered by Magistrate Judge Joseph A. Marutollo on 1/24/2025. (Attachments: # 1 Individual Practices and Rules) (EG) (Entered: 01/24/2025) |
| 01/29/2025 | 41 | MOTION to Withdraw as Attorney *as to Hannah E. Murphy, Esq. to be Relieved as Counsel for Defendants* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER granting 41 Motion to Withdraw as Attorney. Attorney Hannah Eleanor Murphy terminated. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2025. (JAM) (Entered: 01/29/2025) |
| 01/31/2025 | 42 | MOTION to Dismiss by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Attachments: # 1 Memorandum in Support) (Kurland, Thomas) (Entered: 01/31/2025) |
| 02/11/2025 | 43 | Letter MOTION to Stay by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/11/2025) |
| 02/11/2025 | | ORDER: Plaintiff shall respond to 43 by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/11/2025. (GWM) (Entered: 02/11/2025) |
| 02/13/2025 | | ORDER: The Court received a voicemail from pro se Plaintiff. In light of Plaintiff's representation to chambers that he is experiencing delays in receiving and sending docket filings, the Court *sua sponte* extends the deadline to respond to 43 to February 20, 2025. Plaintiff is reminded that future correspondence with the Court shall be made on the public docket. Defendants shall serve a copy of this order on Plaintiff and file proof of service on the docket by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (EG) (Entered: 02/13/2025) |
| 02/13/2025 | 44 | Letter *to Judge Marutollo in response to the Court's February 13, 2025 order* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (Kurland, Thomas) (Entered: 02/13/2025) |
| 02/13/2025 | | ORDER: In light of the Court's extension of Plaintiff's deadline to respond to the 43 motion, the initial conference and all associated deadlines are adjourned *sine die*, pending resolution of the motion to stay. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (GWM) (Entered: 02/13/2025) |

| | | |
|---|---|---|
| 02/13/2025 | 45 | MOTION for leave to allow Pro Se to Electronically File by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 46 | MOTION to Amend/Correct/Supplement *Plaintiff's Motion to Supplement the record transferred from the Northern District of Florida* by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 47 | Plaintiff's Objections to Order Transferring Case, Motion for Reconsideration of Order Denying Remand to State Court and Notice of Intervening Decision in Royal Canin U.S.A., Inc. et al. v. Wullschleger et al. 604 U.S. (2025) filed by John D Levitan, Sr., plaintiff pro se. (RG) (Entered: 02/14/2025) |
| 02/14/2025 | 48 | AFFIDAVIT of Service for February 13, 2025 Order's served on pro se Plaintiff on February 14, 2025, filed by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/14/2025) |
| 02/14/2025 | 49 | MOTION to Remand to State Court by John D Levitan, Sr. (RG) (Entered: 02/18/2025) |
| 02/14/2025 | 50 | NOTICE: Request for Judicial Default against GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC PATTERSON BELKNAP WEBB & TYLER LLP (PBWT),GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND. **Please note advised pro se dept that plaintiff did not file properly, cannot file a default without the request for clerk's notation first. (RG) (Entered: 02/19/2025) |
| 02/14/2025 | 51 | MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery* by John D Levitan, Sr. (RG) (Entered: 02/19/2025) |
| 02/18/2025 | | ORDER: Defendants shall respond to 49 by February 26, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) (Entered: 02/18/2025) |
| 02/18/2025 | | ORDER granting 45 . Pro se Plaintiff shall register for ECF, registration is available online at www.pacer.gov. Should Plaintiff encounter any difficulty registering for PACER, he may contact CM/ECF Docketing and Filing at 718-613-2610. The Clerk of the Court shall provide the pro se Plaintiff with a copy of this Electronic Order. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) Modified on 2/18/2025 to indicate C/M. (EG). (Entered: 02/18/2025) |
| 02/19/2025 | | ORDER: In light of the procedural posture of this case, the parties shall indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action, including a (jury or nonjury) trial and to order the entry of a final judgment, by **February 28, 2025**. The consent form should be filled out, signed and filed electronically only if all parties wish to consent. The form may also be accessed at the following link: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. The parties may withhold consent without adverse substantive consequences. Do NOT return or file the consent form unless all parties have signed the consent. Ordered by Magistrate Judge Joseph A. Marutollo on 2/19/2025. (EG) (Entered: 02/19/2025) |



| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 02/19/2025 21:14:21 | | | |
| **PACER Login:** | jdlevitan | **Client Code:** | |

| | | | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00393-AMD-JAM |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

# EXHIBIT B

| | |
|---|---|
| **From:** | Jeremy Branning |
| **To:** | John Levitan; John Levitan; General Counsel |
| **Cc:** | Jake Barnes; Judi Dallman; Phillip Imperial |
| **Subject:** | Levitan / Gilead Sciences, et al - NOA and requests |
| **Date:** | Friday, October 10, 2025 12:16:08 PM |
| **Attachments:** | clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png<br>NTC - Appearance of JCB JFP efiled 2025-10-09.pdf |

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

This message was secured by **Zix**®.

**From:** Jeremy Branning
**To:** "General Counsel"
**Cc:** John Levitan; John Levitan; Jake Barnes; Judi Dallman; Phillip Imperial
**Subject:** RE: Levitan / Gilead Sciences, et al - NOA and requests
**Date:** Sunday, October 12, 2025 8:17:05 AM
**Attachments:** clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

---

This message was sent securely using Zix®

Dan – Thank you for the professional courtesy of agreeing to the proposed deadline for the defendants to respond to the First Amended Complaint and confirming no objection to the substitution of counsel.

We will file a notice of agreement on defendants' proposed deadline of October 29 to respond to the First Amended Complaint so the docket has a filing that reflects the agreed response deadline.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

---

**From:** General Counsel <legal@invictusholdings.us>
**Sent:** Friday, October 10, 2025 1:21 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** jdlsr@gileadfraud.com; legal@gileadfraud.com; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>; General Counsel <legal@invictusholdings.us>
**Subject:** Re: Levitan / Gilead Sciences, et al - NOA and requests

Sure Jeremy go ahead and I'm fine with both. I'm a little bit perturbed that you're representing a firm that is full of fraud, full of misrepresentation, violates ethic standards, and plays the New York victim when they build a firm around targeting people that have nothing to do with one of the, I'm disturbed that a Pensacola law firm would actually accept them using corrupt judges and especially you for accepting this case.

# Office General Counsel Sent from Mobile Device

# Please Excuse Errors

On Oct 10, 2025, at 12:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

This message was secured by **Zix**®.

This message was secured by **Zix**®.

**From:** John Levitan
**To:** Jeremy Branning
**Cc:** John Levitan; Jake Barnes; Judi Dallman; Phillip Imperial
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al
**Date:** Wednesday, October 29, 2025 4:07:51 PM
**Attachments:** clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png
clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

---

Hi Jeremy I wanted to do a separate email.

The following is what you requested "[ ]we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint."

I take that to mean you would be filing your answer to the Amended Complaint. Not a Motion to Dismiss, which is not a responsive document.

I will move to strike and request sanctions for the misrepresentation to me with the Court.

Please advise.

Sent from Mobile Device Please Excuse Errors

> On Oct 29, 2025, at 4:49 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:
>
> This message was sent securely using Zix®
>
> Hey John, we don't have a hearing scheduled for tomorrow, so you are good. The only hearing we have scheduled is on November 10.
>
> We are filing the defendants' motion to dismiss today per the agreement on the extension of time to respond to the First Amended Complaint.
>
> We are also filing a motion to stay discovery pending the Court's ruling on the motion to dismiss. We are obligated to confer with you on the motion to stay discovery. Do you consent or oppose a stay of discovery until the court rules on the motion to dismiss?
>
> **Jeremy Branning | Shareholder**
> jbranning@clarkpartington.com | (850) 436-6470
>
> **CLARK PARTINGTON**
> Office: (850) 434-9200 | Fax: (850) 432-7340
> 125 East Intendencia Street, 4th Floor
> Pensacola, Florida 32502
> clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

-----Original Message-----
From: John Levitan <legal@gileadfraud.com>
Sent: Wednesday, October 29, 2025 9:50 AM
To: Jeremy Branning <jbranning@clarkpartington.com>
Cc: Daniel Levitan <legal@invictusholdings.us>
Subject: Hearing 10-30-25 Levitan v Gilead, et al

Good Morning Jeremy:

I had an unexpected business emergency come up and have to be in Palm Beach, and Miami today.

Would you mind rescheduling the hearing?

Regards,

John D. Levitan, Sr. Tel: 850-497-2724

This message was secured by Zix®.

**From:** John Levitan
**To:** Jeremy Branning
**Cc:** Jake Barnes; Judi Dallman; Phillip Imperial
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al
**Date:** Wednesday, October 29, 2025 4:38:38 PM
**Attachments:** image001.png
clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

---

Hi Jeremy:

Just giving you an opportunity to rethink your Motion to Dismiss it is clearly outside of what I agreed to and you requested .

Boca Burger, Inc. v. Forum, 912 So. 2d 561, 567 (Fla. 2005)
("[A] motion to dismiss is not a 'responsive pleading' because it is not a 'pleading' under the rules. See Fla. R. Civ. P. 1.100(a).");Green v. Sun Harbor Homeowners' Ass'n, 730 So. 2d 1261, 1262-63 (Fla. 1988)

"Moreover, a motion to dismiss does not fall under the category of "responsive pleading" See Shapiro v. Tulin, 66 So. 3d 254 ( Fla. 1st DCA 2011)

Regards,

On Oct 29, 2025, at 5:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

I disagree. A motion to dismiss is a response.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png>

---

**From:** John Levitan <legal@gileadfraud.com>
**Sent:** Wednesday, October 29, 2025 4:08 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** John Levitan <legal@gileadfraud.com>; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al

Hi Jeremy I wanted to do a separate email.

The following is what you requested "[ ]we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint."

I take that to mean you would be filing your answer to the Amended Complaint. Not a Motion to Dismiss, which is not a responsive document.

I will move to strike and request sanctions for the misrepresentation to me with the Court.

Please advise.

Sent from Mobile Device Please Excuse Errors

> On Oct 29, 2025, at 4:49 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:
>
> This message was sent securely using Zix®
>
> Hey John, we don't have a hearing scheduled for tomorrow, so you are good. The only hearing we have scheduled is on November 10.
>
> We are filing the defendants' motion to dismiss today per the agreement on the

extension of time to respond to the First Amended Complaint.

We are also filing a motion to stay discovery pending the Court's ruling on the motion to dismiss. We are obligated to confer with you on the motion to stay discovery. Do you consent or oppose a stay of discovery until the court rules on the motion to dismiss?

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<image001.png>

-----Original Message-----
From: John Levitan <legal@gileadfraud.com>
Sent: Wednesday, October 29, 2025 9:50 AM
To: Jeremy Branning <jbranning@clarkpartington.com>
Cc: Daniel Levitan <legal@invictusholdings.us>
Subject: Hearing 10-30-25 Levitan v Gilead, et al

Good Morning Jeremy:

I had an unexpected business emergency come up and have to be in Palm Beach, and Miami today.

Would you mind rescheduling the hearing?

Regards,

John D. Levitan, Sr. Tel: 850-497-2724

This message was secured by **Zix**®.

This message was secured by **Zix**®.

**From:** John Levitan
**To:** Jeremy Branning
**Cc:** Jake Barnes; Judi Dallman; Phillip Imperial
**Bcc:** Dave McGee
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al
**Date:** Wednesday, October 29, 2025 5:08:08 PM
**Attachments:** clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png
clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

---

Jeremy you said response which
meant response i.e "responsive "
I'm just tying to not file for sanctions on this.

You requested "to file a response to the First Amended Complaint."

I think that was clear,

Regards.

Sent from Mobile Device Please Excuse Errors

On Oct 29, 2025, at 5:54 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

You are inaccurately including the word "pleading" as if I used that term in my communication regarding the extension of time. I did not.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

**From:** John Levitan <legal@gileadfraud.com>
**Sent:** Wednesday, October 29, 2025 4:39 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al

Hi Jeremy:

Just giving you an opportunity to rethink your Motion to Dismiss it is clearly outside of what I agreed to and you requested .

Boca Burger, Inc. v. Forum, 912 So. 2d 561, 567 (Fla. 2005)
("[A] motion to dismiss is not a 'responsive pleading' because it is not a 'pleading' under the rules. See Fla. R. Civ. P. 1.100(a).");Green v. Sun Harbor Homeowners' Ass'n, 730 So. 2d 1261, 1262-63 (Fla. 1988)

"Moreover, a motion to dismiss does not fall under the category of "responsive pleading" See Shapiro v. Tulin, 66 So. 3d 254 ( Fla. 1st DCA 2011)

Regards,

On Oct 29, 2025, at 5:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

I disagree. A motion to dismiss is a response.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png>

---

**From:** John Levitan <legal@gileadfraud.com>
**Sent:** Wednesday, October 29, 2025 4:08 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** John Levitan <legal@gileadfraud.com>; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>
**Subject:** Re: Hearing 10-30-25 Levitan v Gilead, et al

Hi Jeremy I wanted to do a separate email.

The following is what you requested "[ ]we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint."

I take that to mean you would be filing your answer to the Amended Complaint. Not a Motion to Dismiss, which is not a responsive document.

I will move to strike and request sanctions for the misrepresentation to me with the Court.

Please advise.

Sent from Mobile Device Please Excuse Errors

On Oct 29, 2025, at 4:49 PM, Jeremy Branning

<jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Hey John, we don't have a hearing scheduled for tomorrow, so you are good. The only hearing we have scheduled is on November 10.

We are filing the defendants' motion to dismiss today per the agreement on the extension of time to respond to the First Amended Complaint.

We are also filing a motion to stay discovery pending the Court's ruling on the motion to dismiss. We are obligated to confer with you on the motion to stay discovery. Do you consent or oppose a stay of discovery until the court rules on the motion to dismiss?

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<image001.png>

-----Original Message-----
From: John Levitan <legal@gileadfraud.com>
Sent: Wednesday, October 29, 2025 9:50 AM
To: Jeremy Branning <jbranning@clarkpartington.com>
Cc: Daniel Levitan <legal@invictusholdings.us>
Subject: Hearing 10-30-25 Levitan v Gilead, et al

Good Morning Jeremy:

I had an unexpected business emergency come up and have to be in Palm Beach, and Miami today.

Would you mind rescheduling the hearing?

Regards,

John D. Levitan, Sr. Tel: 850-497-2724

This message was secured by **Zix**®.

This message was secured by **Zix**®.

This message was secured by **Zix**®.

Filing # 235506785 E-Filed 11/10/2025 04:03:25 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN D. LEVITAN, SR,**
**Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164**
**DIVISION: N**

**GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAPP WEBB AND TYLER, LLP, A NEW YORK LIMITED LIABILITY PARTNERSHIP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN and THOMAS P. KURLAND,**
**Defendants.**
_______________________________________/

## BRIEFING ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss First Amended Complaint, e-filed on October 29, 2025. The Court having reviewed the Motion, file, being advised that the matter is unable to be timely set for a hearing and finding oral arguments unnecessary, and being otherwise advised in the premises, it is hereby

**ORDERED** that Plaintiff shall file a responsive brief in the next thirty (30) days, which shall be courtesy copied to the undersigned judge's judicial assistant at hayley.faulkner@flcourts1.gov. Failure to timely comply with this Order shall be interpreted as a non-objection, and Defendants are ordered to send a proposed order on same promptly thereafter. Otherwise, Defendants have fifteen (15) days to file a reply, if they so choose.[1] Thereafter, the Court will promptly rule on the paper.

[1] If Defendants opt not to file a reply, a courtesy email to the undersigned judge's judicial assistant notifying her and Plaintiff will signal to the Court that the matter is ripe for ruling.

**DONE AND ORDERED** in Chambers at Pensacola, Escambia County, Florida.

11/10/2025 14:52:24
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 11/10/2025 02:52:24 OdpPK-7v

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING (JBRANNING@CLARKPARTINGTON.COM) and
JACOB BARNES (jbarnes@clarkpartington.com), Attorneys for Defendants

Filing # 235945971 E-Filed 11/17/2025 12:41:43 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

JOHN D. LEVITAN, SR.,
Plaintiff,

v.

CASE NO.: 2024 CA 001164
DIVISION: N

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally
Defendants.
_______________________________________________/

**ORDER OVERRULING PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO SUBSTITUTE COUNSEL OF RECORD**

**THIS MATTER** came before the Court on the Objection by Plaintiff, JOHN D. LEVITAN, SR., to the Motion to Substitute Counsel of Record filed by Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, an Individual (known collectively as "Defendants"), e-filed on October 14, 2025 [DIN 29].

Although Pro Se Plaintiff "withdrew his objections" on [DIN 39], the Court finds that it was without prejudice and to be considered a "standing objection." The matter was heard on November 10, 2025 at a duly advised hearing on Defendants' Motion for Substitution of Counsel, e-filed on October 14, 2025. Plaintiff did not appear. The Court having heard arguments from

Defendants' counsel at a hearing on November 10, 2025, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Objection to Defendants' Motion to Substitute Counsel of Record is **OVERRULED**.

**DONE AND ORDERED** in Chambers at Pensacola, Escambia County, Florida.

11/17/2025 11:38:34
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 11/17/2025 11:38:34 PZGNrYx+

JENNIFER J. FRYDRYCHOWICZ
Circuit Court Judge

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Conformed Copies:

John D. Levitan, Sr., *Pro Se*
Jeremy C. Branning, Esq.
Jacob F. Barnes, Esq.

Filing # 235945382 E-Filed 11/17/2025 12:37:46 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

JOHN D. LEVITAN, SR.,
Plaintiff,

v.

CASE NO.: 2024 CA 001164
DIVISION: N

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally
Defendants.
_______________________________________________/

**ORDER GRANTING DEFENDANTS' MOTION TO SUBSTITUTE COUNSEL OF RECORD**

**THIS MATTER** having come before the Court on the Motion to Substitute Counsel of Record filed by Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership (misspelled "Belknapp" by Plaintiff and incorrectly identified by including commas in the firm name), GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, an Individual (known collectively as "Defendants"), e-filed on October 14, 2025. Initially the Pro Se Plaintiff had an objection, so this matter was set for hearing on November 10, 2025, which was cross-noticed by Plaintiff. Plaintiff filed a "Notice of Withdrawing Objections without Prejudice" and "Notice of Cancellation of Hearing" on November 9, 2025, but the matter remained set. Pro Se Plaintiff did not appear.

The Court having heard arguments from Defendants' counsel at a hearing on November 10, 2025, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED**:

1. Defendants' Motion to Substitute Counsel of Record is **GRANTED**.

2. Jeremy C. Branning, Esq., and Jacob F. Barnes, Esq., and the law firm of Clark Partington are counsel of record for the defendants in this case going forward and Jay B. Shapiro, Esq., and Hannah Murphy, Esq., and the law firm of Stearns Weaver Miller Weissler Alhadeff & Sitterson, are discharged and relieved of any further role or responsibility in this action.

3. Any further pleadings, motions, and other papers in this action shall be served on Jeremy C. Branning, Esq., and Jacob F. Barnes, Esq., of the law firm of Clark Partington, located at 125 East Intendencia Street, 4th Floor, Pensacola, FL 32502.

4. The primary email addresses for Defendants' counsel of record are jbranning@clarkpartington.com and jbarnes@clarkpartington.com. The secondary email addresses for Defendants' counsel are pmimperial@clarkpartington.com and jdallman@clarkpartington.com.

**DONE AND ORDERED** in Chambers at Pensacola, Escambia County, Florida.

11/17/2025 11:34:20
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 11/17/2025 11:34:20 wtTJkJ8K

JENNIFER J. FRYDRYCHOWICZ
Circuit Court Judge

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Conformed Copies:

John D. Levitan, Sr., *Pro Se*
Jeremy C. Branning, Esq.
Jacob F. Barnes, Esq.

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________________/

**NOTICE OF HEARING ON PLAINTIFF'S MOTION TO STRIKE DEFENDANTS (sic) MOTION TO DISMISS FOR FRAUD AGAINST THE PLAINTIFF AND FRAUD ON THE COURT AND MOTION FOR JUDICIAL DEFAULT FOR FAILING TO ANSWER AS ORDERED BY THE COURT**

PLEASE TAKE NOTICE that the undersigned schedules the below hearing as follows:

| | |
|---|---|
| Matter(s): | Plaintiff's Motion to Strike Defendants (sic) Motion to Dismiss for Fraud Against the Plaintiff and Fraud on the Court and Motion for Judicial Default for Failing to Answer as Ordered by the Court |
| Date: | Wednesday, June 17, 2026 |
| Time: | 1:30 p.m. Central Time (30-minutes Reserved) |
| Location: | In-person before The Honorable Judge Jennifer Frydrychowicz<br>M.C. Blanchard Building<br>190 Governmental Center |

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact:**

**Court Administration, ADA Liaison**
**Escambia County**
**190 Governmental Center, 5th Floor**
**Pensacola, FL 32502**
**Phone (850) 595-4400 Fax (850) 595-0360**
**ADA.Escambia@flcourts1.gov**

**at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

*/s/ Jeremy C. Branning*_____________
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished to all counsel and parties via the Florida E-portal this 3rd day of December, 2025.

*/s/ Jeremy C. Branning* ______________
JEREMY C. BRANNING

Filing # 236960684 E-Filed 12/03/2025 04:13:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**AARON FISCHER,,** *et. al.,*

Defendants.
_____________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION ON DEFENDANT AARON FISCHER**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant AARON FISCHER, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/ ______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________

John D. Levitan, pro se

Filing # 236960684 E-Filed 12/03/2025 04:13:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**THOMAS KURLAND,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FORPRODUCTION ON DEFENDANT THOMAS KURLAND**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant THOMAS KURLAND, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________

John D. Levitan, pro se

Filing # 236960684 E-Filed 12/03/2025 04:13:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**PATTERSON BELKNAP WEBB & TYLER LLP,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FORPRODUCTION ON DEFENDANT PATTERSON BELKNAP WEBB & TYLER LLP**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant PATTERSON BELKNAP WEBB & TYLER LLP, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________

John D. Levitan, pro se

Filing # 236960684 E-Filed 12/03/2025 04:13:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**JOSHUA STEIN,** *et. al.,*

Defendants.
_____________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION ON DEFENDANT JOSHUA STEIN**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant Joshua Stein on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**TIMOTHY ALAN WATERS,** *et. al.,*

Defendants.

_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION ON DEFENDANT TIMOTHY ALAN WATERS**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant Timothy Alan Waters on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/ _______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ _______________________

John D. Levitan, pro se

Filing # 236960684 E-Filed 12/03/2025 04:13:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**GILEAD SCIENCES, INC.**
**GILEAD SCIENCES IRELAND UC,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FORPRODUCTION ON DEFENDANT GILEAD SCIENCES, INC. GILEAD SCIENCES IRELAND UC**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant GILEAD SCIENCES, INC. GILEAD SCIENCES IRELAND UC, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/_______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ _______________________
John D. Levitan, pro se

Filing # 236976134 E-Filed 12/03/2025 06:36:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**GILEAD SCIENCES, INC.**
**GILEAD SCIENCES IRELAND UC,,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES ON DEFENDANT GILEAD SCIENCES, INC. GILEAD SCIENCES IRELAND UC,**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant GILEAD SCIENCES, INC. GILEAD SCIENCES IRELAND UC,, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/________________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ________________________________

John D. Levitan, pro se

Filing # 236976134 E-Filed 12/03/2025 06:36:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**TIMOTHY ALAN WATERS,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES ON DEFENDANT TIMOTHY ALAN WATERS**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant TIMOTHY ALAN WATERS, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________
John D. Levitan, pro se

Filing # 236976134 E-Filed 12/03/2025 06:36:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**GEOFFREY POTTER,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES ON DEFENDANT GEOFFREY POTTER**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant GEOFFREY POTTER, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________
John D. Levitan, pro se

Filing # 236976134 E-Filed 12/03/2025 06:36:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**JOSHUA STEIN,** *et. al.,*

Defendants.
______________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES ON DEFENDANT JOSHUA STEIN**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant JOSHUA STEIN, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/ ______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________

John D. Levitan, pro se

Filing # 236976134 E-Filed 12/03/2025 06:36:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**AARON FISCHER,** *et. al.,*

Defendants.
_____________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES ON DEFENDANT PATTERSON AARON FISCHER**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant AARON FISCHER, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/ ______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________

John D. Levitan, pro se

Filing # 236976134 E-Filed 12/03/2025 06:36:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**PATTERSON BELKNAP
WEBB & TYLER LLP,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES ON DEFENDANT PATTERSON BELKNAP WEBB & TYLER LLP**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant PATTERSON BELKNAP WEBB & TYLER LLP, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________

John D. Levitan, pro se

Filing # 236976134 E-Filed 12/03/2025 06:36:53 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**THOMAS KURLAND,** *et. al.,*

Defendants.
_______________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES ON DEFENDANT THOMAS KURLAND**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and gives Notice of Service of Plaintiff's First Request for Production on Defendant THOMAS KURLAND, on this 3rd day of December 2025.

Respectfully submitted,

December 3, 2025

/s/____________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ____________________________
John D. Levitan, pro se

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v. CASE NO. 2024 CV 00164

**PATTERSON BELKNAP WEBB & TYLER LLP,** *et. al.,*

Defendants.
_____________________________________________/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

**NOW COMES** Plaintiff John D. Levitan, Sr. pro se and pursuant to *F.R.Civ.P., Rule 1.370(a)* hereby propounds the following Request for Production to Defendant Patterson, Belknap, Webb & Tyler, LLP who shall provide their admissions consistent therewith.

**DEFINITIONS**

1. "Plaintiff" means John D. Levitan, Sr., the Plaintiff in this action.

2. "You" or "Your" means the responding Defendant, including all attorneys, partners, employees, contractors, investigators, agents, and any persons acting on their behalf.

3. "Defendants" means all Defendants named in this action, individually and collectively.

4. "EDNY Action" refers to Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

5. “Defamatory Publication” means all knowingly false, defamatory, slanderous, and libelous statements published to or by the Pensacola News Journal concerning Plaintiff.

6. “Documents” includes all electronically stored information, emails, texts, files, images, audio, drafts, notes, and metadata in any form.

7. “Communications” includes all exchanges of information, written or verbal, including emails, calls, texts, and media communications.

8. “Identify” when referring to a person means their full name, job title, employer, and contact information; for documents, means date, authors, recipients, subject, and custodian.

9. “Concerning” means relating to, reflecting, discussing, evidencing, or involving.

10. “Possession, Custody, or Control” includes documents held by counsel, agents, or third parties acting for the Defendant.

11. “Media” includes all news outlets, journalists, and social media platforms including the Pensacola News Journal.

12. “Due Diligence” means any internal verification or investigation regarding truthfulness of allegations prior to publication.

13. These requests shall be construed broadly to require full disclosure including all drafts and non-identical copies.

Request for Production No. 1: Produce all documents, communications, investigative materials, notes, and records that formed the basis of any allegations against Plaintiff in Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

Request for Production No. 2: Produce all documents, communications, drafts, notes, statements, photographs, videos, files, and reports provided to or received from the Pensacola News Journal concerning Plaintiff, including the knowingly false, defamatory, slanderous, and libelous statements referenced in Plaintiff's First Amended Complaint.

Request for Production No. 3: Produce chain-of-custody records and source documentation for any material used to accuse Plaintiff of criminal activity, fraud, conspiracy, narcotics trafficking, or involvement with counterfeit HIV medication.

Request for Production No. 4: Produce all communications between You and any reporter, editor, publisher, or employee of the Pensacola News Journal or any other publication regarding Plaintiff.

Request for Production No. 5: Produce all drafts of the EDNY complaint and amended pleadings identifying Plaintiff, including comments, edits, and tracked changes.

Request for Production No. 6: Produce all documents that identify the individuals who sourced or supplied any assertion or allegation made against Plaintiff in the EDNY case and/or of the Pensacola News Journal publication.

Request for Production No. 7: Produce all due diligence efforts, vetting records, legal review files, or determinations of truthfulness performed before statements concerning Plaintiff were published or alleged to the court.

Request for Production No. 8: Produce all internal communications, chats, emails, memoranda, or directives concerning publication of allegations about Plaintiff to any media outlet.

Request for Production No. 9: Produce all subpoenas, process server instructions, and communications relating to any attempted service of Plaintiff in connection with the EDNY case, including the false affidavits of service described in Plaintiff's First Amended Complaint.

Request for Production No. 10: Produce all evidence that You claim supports any assertion that Plaintiff engaged in criminal conduct or financial wrongdoing.

Request for Production No. 11: Produce the co[py of the physical three ring binder alleged to be served on Plaintiff at 511 Windrose Circle, Pensacola, FL. and any communications had with any person of the Escambia County Sheriff's Office.

**PRIVILEGE LOG REQUIREMENTS:**

If any material is withheld based on a claim of privilege, a detailed privilege log must be provided including the date, author, subject matter, recipients, custodians, document type, number of pages, and the basis for withholding. Blanket assertions of privilege are prohibited and shall constitute waiver.

Respectfully submitted,

December 3, 2025

/s/______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**AARON FISCHER,** *et. al.,*

Defendants.
______________________________________/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

**NOW COMES** Plaintiff John D. Levitan, Sr. pro se and pursuant to *F.R.Civ.P., Rule 1.370(a)* hereby propounds the following Request for Production to Defendant *AARON FISCHER* who shall provide their admissions consistent therewith.

**DEFINITIONS**

1. "Plaintiff" means John D. Levitan, Sr., the Plaintiff in this action.

2. "You" or "Your" means the responding Defendant, including all attorneys, partners, employees, contractors, investigators, agents, and any persons acting on their behalf.

3. "Defendants" means all Defendants named in this action, individually and collectively.

4. "EDNY Action" refers to Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

5. "Defamatory Publication" means all knowingly false, defamatory, slanderous, and libelous statements published to or by the Pensacola News Journal concerning Plaintiff.

6. "Documents" includes all electronically stored information, emails, texts, files, images, audio, drafts, notes, and metadata in any form.

7. "Communications" includes all exchanges of information, written or verbal, including emails, calls, texts, and media communications.

8. "Identify" when referring to a person means their full name, job title, employer, and contact information; for documents, means date, authors, recipients, subject, and custodian.

9. "Concerning" means relating to, reflecting, discussing, evidencing, or involving.

10. "Possession, Custody, or Control" includes documents held by counsel, agents, or third parties acting for the Defendant.

11. "Media" includes all news outlets, journalists, and social media platforms including the Pensacola News Journal.

12. "Due Diligence" means any internal verification or investigation regarding truthfulness of allegations prior to publication.

13. These requests shall be construed broadly to require full disclosure including all drafts and non-identical copies.

Request for Production No. 1: Produce all documents, communications, investigative materials, notes, and records that formed the basis of any allegations against Plaintiff in Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

Request for Production No. 2: Produce all documents, communications, drafts, notes, statements, photographs, videos, files, and reports provided to or received from the Pensacola News Journal concerning Plaintiff, including the knowingly false, defamatory, slanderous, and libelous statements referenced in Plaintiff's First Amended Complaint.

Request for Production No. 3: Produce chain-of-custody records and source documentation for any material used to accuse Plaintiff of criminal activity, fraud, conspiracy, narcotics trafficking, or involvement with counterfeit HIV medication.

Request for Production No. 4: Produce all communications between You and any reporter, editor, publisher, or employee of the Pensacola News Journal or any other publication regarding Plaintiff.

Request for Production No. 5: Produce all drafts of the EDNY complaint and amended pleadings identifying Plaintiff, including comments, edits, and tracked changes.

Request for Production No. 6: Produce all documents that identify the individuals who sourced or supplied any assertion or allegation made against Plaintiff in the EDNY case and/or of the Pensacola News Journal publication.

Request for Production No. 7: Produce all due diligence efforts, vetting records, legal review files, or determinations of truthfulness performed before statements concerning Plaintiff were published or alleged to the court.

Request for Production No. 8: Produce all internal communications, chats, emails, memoranda, or directives concerning publication of allegations about Plaintiff to any media outlet.

Request for Production No. 9: Produce all subpoenas, process server instructions, and communications relating to any attempted service of Plaintiff in connection with the EDNY case, including the false affidavits of service described in Plaintiff's First Amended Complaint.

Request for Production No. 10: Produce all evidence that You claim supports any assertion that Plaintiff engaged in criminal conduct or financial wrongdoing.

Request for Production No. 11: Produce the co[py of the physical three ring binder alleged to be served on Plaintiff at 511 Windrose Circle, Pensacola, FL. and any communications had with any person of the Escambia County Sheriff's Office.

**PRIVILEGE LOG REQUIREMENTS:**

If any material is withheld based on a claim of privilege, a detailed privilege log must be provided including the date, author, subject matter, recipients, custodians, document type, number of pages, and the basis for withholding. Blanket assertions of privilege are prohibited and shall constitute waiver.

Respectfully submitted,

December 3, 2025

/s/______________________________
John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/______________________________
John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**THOMAS KURLAND,** *et. al.,*

Defendants.
_____________________________________________/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

**NOW COMES** Plaintiff John D. Levitan, Sr. pro se and pursuant to *F.R.Civ.P., Rule 1.370(a)* hereby propounds the following Request for Production to Defendant *THOMAS KURLAND* who shall provide their admissions consistent therewith.

**DEFINITIONS**

1. "Plaintiff" means John D. Levitan, Sr., the Plaintiff in this action.

2. "You" or "Your" means the responding Defendant, including all attorneys, partners, employees, contractors, investigators, agents, and any persons acting on their behalf.

3. "Defendants" means all Defendants named in this action, individually and collectively.

4. "EDNY Action" refers to Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

5. “Defamatory Publication” means all knowingly false, defamatory, slanderous, and libelous statements published to or by the Pensacola News Journal concerning Plaintiff.

6. “Documents” includes all electronically stored information, emails, texts, files, images, audio, drafts, notes, and metadata in any form.

7. “Communications” includes all exchanges of information, written or verbal, including emails, calls, texts, and media communications.

8. “Identify” when referring to a person means their full name, job title, employer, and contact information; for documents, means date, authors, recipients, subject, and custodian.

9. “Concerning” means relating to, reflecting, discussing, evidencing, or involving.

10. “Possession, Custody, or Control” includes documents held by counsel, agents, or third parties acting for the Defendant.

11. “Media” includes all news outlets, journalists, and social media platforms including the Pensacola News Journal.

12. “Due Diligence” means any internal verification or investigation regarding truthfulness of allegations prior to publication.

13. These requests shall be construed broadly to require full disclosure including all drafts and non-identical copies.

Request for Production No. 1: Produce all documents, communications, investigative materials, notes, and records that formed the basis of any allegations against Plaintiff in Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

Request for Production No. 2: Produce all documents, communications, drafts, notes, statements, photographs, videos, files, and reports provided to or received from the Pensacola News Journal concerning Plaintiff, including the knowingly false, defamatory, slanderous, and libelous statements referenced in Plaintiff's First Amended Complaint.

Request for Production No. 3: Produce chain-of-custody records and source documentation for any material used to accuse Plaintiff of criminal activity, fraud, conspiracy, narcotics trafficking, or involvement with counterfeit HIV medication.

Request for Production No. 4: Produce all communications between You and any reporter, editor, publisher, or employee of the Pensacola News Journal or any other publication regarding Plaintiff.

Request for Production No. 5: Produce all drafts of the EDNY complaint and amended pleadings identifying Plaintiff, including comments, edits, and tracked changes.

Request for Production No. 6: Produce all documents that identify the individuals who sourced or supplied any assertion or allegation made against Plaintiff in the EDNY case and/or of the Pensacola News Journal publication.

Request for Production No. 7: Produce all due diligence efforts, vetting records, legal review files, or determinations of truthfulness performed before statements concerning Plaintiff were published or alleged to the court.

Request for Production No. 8: Produce all internal communications, chats, emails, memoranda, or directives concerning publication of allegations about Plaintiff to any media outlet.

Request for Production No. 9: Produce all subpoenas, process server instructions, and communications relating to any attempted service of Plaintiff in connection with the EDNY case, including the false affidavits of service described in Plaintiff's First Amended Complaint.

Request for Production No. 10: Produce all evidence that You claim supports any assertion that Plaintiff engaged in criminal conduct or financial wrongdoing.

Request for Production No. 11: Produce the copy of the physical three ring binder alleged to be served on Plaintiff at 511 Windrose Circle, Pensacola, FL. and any communications had with any person of the Escambia County Sheriff's Office.

**PRIVILEGE LOG REQUIREMENTS:**

If any material is withheld based on a claim of privilege, a detailed privilege log must be provided including the date, author, subject matter, recipients, custodians, document type, number of pages, and the basis for withholding. Blanket assertions of privilege are prohibited and shall constitute waiver.

Respectfully submitted,

December 3, 2025

/s/

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

Filing # 236962763 E-Filed 12/03/2025 04:26:03 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**GEOFFREY POTTER,** *et. al.,*

Defendants.
______________________________________________/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

**NOW COMES** Plaintiff John D. Levitan, Sr. pro se and pursuant to *F.R.Civ.P., Rule 1.370(a)* hereby propounds the following Request for Production to Defendant *GEOFFREY POTTER* who shall provide their admissions consistent therewith.

**DEFINITIONS**

1. "Plaintiff" means John D. Levitan, Sr., the Plaintiff in this action.

2. "You" or "Your" means the responding Defendant, including all attorneys, partners, employees, contractors, investigators, agents, and any persons acting on their behalf.

3. "Defendants" means all Defendants named in this action, individually and collectively.

4. "EDNY Action" refers to Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

5. "Defamatory Publication" means all knowingly false, defamatory, slanderous, and libelous statements published to or by the Pensacola News Journal concerning Plaintiff.

6. "Documents" includes all electronically stored information, emails, texts, files, images, audio, drafts, notes, and metadata in any form.

7. "Communications" includes all exchanges of information, written or verbal, including emails, calls, texts, and media communications.

8. "Identify" when referring to a person means their full name, job title, employer, and contact information; for documents, means date, authors, recipients, subject, and custodian.

9. "Concerning" means relating to, reflecting, discussing, evidencing, or involving.

10. "Possession, Custody, or Control" includes documents held by counsel, agents, or third parties acting for the Defendant.

11. "Media" includes all news outlets, journalists, and social media platforms including the Pensacola News Journal.

12. "Due Diligence" means any internal verification or investigation regarding truthfulness of allegations prior to publication.

13. These requests shall be construed broadly to require full disclosure including all drafts and non-identical copies.

Request for Production No. 1: Produce all documents, communications, investigative materials, notes, and records that formed the basis of any allegations against Plaintiff in Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

Request for Production No. 2: Produce all documents, communications, drafts, notes, statements, photographs, videos, files, and reports provided to or received from the Pensacola News Journal concerning Plaintiff, including the knowingly false, defamatory, slanderous, and libelous statements referenced in Plaintiff's First Amended Complaint.

Request for Production No. 3: Produce chain-of-custody records and source documentation for any material used to accuse Plaintiff of criminal activity, fraud, conspiracy, narcotics trafficking, or involvement with counterfeit HIV medication.

Request for Production No. 4: Produce all communications between You and any reporter, editor, publisher, or employee of the Pensacola News Journal or any other publication regarding Plaintiff.

Request for Production No. 5: Produce all drafts of the EDNY complaint and amended pleadings identifying Plaintiff, including comments, edits, and tracked changes.

Request for Production No. 6: Produce all documents that identify the individuals who sourced or supplied any assertion or allegation made against Plaintiff in the EDNY case and/or of the Pensacola News Journal publication.

Request for Production No. 7: Produce all due diligence efforts, vetting records, legal review files, or determinations of truthfulness performed before statements concerning Plaintiff were published or alleged to the court.

Request for Production No. 8: Produce all internal communications, chats, emails, memoranda, or directives concerning publication of allegations about Plaintiff to any media outlet.

Request for Production No. 9: Produce all subpoenas, process server instructions, and communications relating to any attempted service of Plaintiff in connection with the EDNY case, including the false affidavits of service described in Plaintiff's First Amended Complaint.

Request for Production No. 10: Produce all evidence that You claim supports any assertion that Plaintiff engaged in criminal conduct or financial wrongdoing.

Request for Production No. 11: Produce the co[py of the physical three ring binder alleged to be served on Plaintiff at 511 Windrose Circle, Pensacola, FL. and any communications had with any person of the Escambia County Sheriff's Office.

**PRIVILEGE LOG REQUIREMENTS:**

If any material is withheld based on a claim of privilege, a detailed privilege log must be provided including the date, author, subject matter, recipients, custodians, document type, number of pages, and the basis for withholding. Blanket assertions of privilege are prohibited and shall constitute waiver.

Respectfully submitted,

December 3, 2025

/s/______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

Filing # 236962763 E-Filed 12/03/2025 04:26:03 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**TIMOTHY ALAN WATERS,** *et. al.,*

Defendants.
_____________________________________________/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

**NOW COMES** Plaintiff John D. Levitan, Sr. pro se and pursuant to *F.R.Civ.P., Rule 1.370(a)* hereby propounds the following Request for Production to Defendant *TIMOTHY ALAN WATERS* who shall provide their admissions consistent therewith.

**DEFINITIONS**

1. "Plaintiff" means John D. Levitan, Sr., the Plaintiff in this action.

2. "You" or "Your" means the responding Defendant, including all attorneys, partners, employees, contractors, investigators, agents, and any persons acting on their behalf.

3. "Defendants" means all Defendants named in this action, individually and collectively.

4. "EDNY Action" refers to Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

5. "Defamatory Publication" means all knowingly false, defamatory, slanderous, and libelous statements published to or by the Pensacola News Journal concerning Plaintiff.

6. "Documents" includes all electronically stored information, emails, texts, files, images, audio, drafts, notes, and metadata in any form.

7. "Communications" includes all exchanges of information, written or verbal, including emails, calls, texts, and media communications.

8. "Identify" when referring to a person means their full name, job title, employer, and contact information; for documents, means date, authors, recipients, subject, and custodian.

9. "Concerning" means relating to, reflecting, discussing, evidencing, or involving.

10. "Possession, Custody, or Control" includes documents held by counsel, agents, or third parties acting for the Defendant.

11. "Media" includes all news outlets, journalists, and social media platforms including the Pensacola News Journal.

12. "Due Diligence" means any internal verification or investigation regarding truthfulness of allegations prior to publication.

13. These requests shall be construed broadly to require full disclosure including all drafts and non-identical copies.

Request for Production No. 1: Produce all documents, communications, investigative materials, notes, and records that formed the basis of any allegations against Plaintiff in Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

Request for Production No. 2: Produce all documents, communications, drafts, notes, statements, photographs, videos, files, and reports provided to or received from the Pensacola News Journal concerning Plaintiff, including the knowingly false, defamatory, slanderous, and libelous statements referenced in Plaintiff's First Amended Complaint.

Request for Production No. 3: Produce chain-of-custody records and source documentation for any material used to accuse Plaintiff of criminal activity, fraud, conspiracy, narcotics trafficking, or involvement with counterfeit HIV medication.

Request for Production No. 4: Produce all communications between You and any reporter, editor, publisher, or employee of the Pensacola News Journal or any other publication regarding Plaintiff.

Request for Production No. 5: Produce all drafts of the EDNY complaint and amended pleadings identifying Plaintiff, including comments, edits, and tracked changes.

Request for Production No. 6: Produce all documents that identify the individuals who sourced or supplied any assertion or allegation made against Plaintiff in the EDNY case and/or of the Pensacola News Journal publication.

Request for Production No. 7: Produce all due diligence efforts, vetting records, legal review files, or determinations of truthfulness performed before statements concerning Plaintiff were published or alleged to the court.

Request for Production No. 8: Produce all internal communications, chats, emails, memoranda, or directives concerning publication of allegations about Plaintiff to any media outlet.

Request for Production No. 9: Produce all subpoenas, process server instructions, and communications relating to any attempted service of Plaintiff in connection with the EDNY case, including the false affidavits of service described in Plaintiff's First Amended Complaint.

Request for Production No. 10: Produce all evidence that You claim supports any assertion that Plaintiff engaged in criminal conduct or financial wrongdoing.

Request for Production No. 11: Produce the co[py of the physical three ring binder alleged to be served on Plaintiff at 511 Windrose Circle, Pensacola, FL. and any communications had with any person of the Escambia County Sheriff's Office.

**PRIVILEGE LOG REQUIREMENTS:**

If any material is withheld based on a claim of privilege, a detailed privilege log must be provided including the date, author, subject matter, recipients, custodians, document type, number of pages, and the basis for withholding. Blanket assertions of privilege are prohibited and shall constitute waiver.

Respectfully submitted,

December 3, 2025

/s/______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

Filing # 236962763 E-Filed 12/03/2025 04:26:03 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

CASE NO. 2024 CA 001164

**JOSHUA STEIN,** *et. al.,*

Defendants.
_____________________________________________/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

**NOW COMES** Plaintiff John D. Levitan, Sr. pro se and pursuant to *F.R.Civ.P., Rule 1.370(a)* hereby propounds the following Request for Production to Defendant *JOSHUA STEIN* who shall provide their admissions consistent therewith.

**DEFINITIONS**

1. "Plaintiff" means John D. Levitan, Sr., the Plaintiff in this action.

2. "You" or "Your" means the responding Defendant, including all attorneys, partners, employees, contractors, investigators, agents, and any persons acting on their behalf.

3. "Defendants" means all Defendants named in this action, individually and collectively.

4. "EDNY Action" refers to Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

5. “Defamatory Publication” means all knowingly false, defamatory, slanderous, and libelous statements published to or by the Pensacola News Journal concerning Plaintiff.

6. “Documents” includes all electronically stored information, emails, texts, files, images, audio, drafts, notes, and metadata in any form.

7. “Communications” includes all exchanges of information, written or verbal, including emails, calls, texts, and media communications.

8. “Identify” when referring to a person means their full name, job title, employer, and contact information; for documents, means date, authors, recipients, subject, and custodian.

9. “Concerning” means relating to, reflecting, discussing, evidencing, or involving.

10. “Possession, Custody, or Control” includes documents held by counsel, agents, or third parties acting for the Defendant.

11. “Media” includes all news outlets, journalists, and social media platforms including the Pensacola News Journal.

12. “Due Diligence” means any internal verification or investigation regarding truthfulness of allegations prior to publication.

13. These requests shall be construed broadly to require full disclosure including all drafts and non-identical copies.

Request for Production No. 1: Produce all documents, communications, investigative materials, notes, and records that formed the basis of any allegations against Plaintiff in Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

Request for Production No. 2: Produce all documents, communications, drafts, notes, statements, photographs, videos, files, and reports provided to or received from the Pensacola News Journal concerning Plaintiff, including the knowingly false, defamatory, slanderous, and libelous statements referenced in Plaintiff's First Amended Complaint.

Request for Production No. 3: Produce chain-of-custody records and source documentation for any material used to accuse Plaintiff of criminal activity, fraud, conspiracy, narcotics trafficking, or involvement with counterfeit HIV medication.

Request for Production No. 4: Produce all communications between You and any reporter, editor, publisher, or employee of the Pensacola News Journal or any other publication regarding Plaintiff.

Request for Production No. 5: Produce all drafts of the EDNY complaint and amended pleadings identifying Plaintiff, including comments, edits, and tracked changes.

Request for Production No. 6: Produce all documents that identify the individuals who sourced or supplied any assertion or allegation made against Plaintiff in the EDNY case and/or of the Pensacola News Journal publication.

Request for Production No. 7: Produce all due diligence efforts, vetting records, legal review files, or determinations of truthfulness performed before statements concerning Plaintiff were published or alleged to the court.

Request for Production No. 8: Produce all internal communications, chats, emails, memoranda, or directives concerning publication of allegations about Plaintiff to any media outlet.

Request for Production No. 9: Produce all subpoenas, process server instructions, and communications relating to any attempted service of Plaintiff in connection with the EDNY case, including the false affidavits of service described in Plaintiff's First Amended Complaint.

Request for Production No. 10: Produce all evidence that You claim supports any assertion that Plaintiff engaged in criminal conduct or financial wrongdoing.

Request for Production No. 11: Produce the co[py of the physical three ring binder alleged to be served on Plaintiff at 511 Windrose Circle, Pensacola, FL. and any communications had with any person of the Escambia County Sheriff's Office.

**PRIVILEGE LOG REQUIREMENTS:**

If any material is withheld based on a claim of privilege, a detailed privilege log must be provided including the date, author, subject matter, recipients, custodians, document type, number of pages, and the basis for withholding. Blanket assertions of privilege are prohibited and shall constitute waiver.

Respectfully submitted,

December 3, 2025

/s/______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

Case 3:26-cv-01457-TKW-HTC Document 1-1 Filed 02/27/26 Page 396 of 873

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v. CASE NO. 2024 CV 001164

**GILEAD SCIENCES, INC.**
**GILEAD SCIENCES IRELAND UC,** *et. al.,*

Defendants.
_______________________________________________/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

**NOW COMES** Plaintiff John D. Levitan, Sr. pro se and pursuant to *F.R.Civ.P., Rule 1.370(a)* hereby propounds the following Request for Production to Defendant *GILEAD SCIENCES, INC. GILEAD SCIENCES IRELAND UC* who shall provide their admissions consistent therewith.

**DEFINITIONS**

1. "Plaintiff" means John D. Levitan, Sr., the Plaintiff in this action.

2. "You" or "Your" means the responding Defendant, including all attorneys, partners, employees, contractors, investigators, agents, and any persons acting on their behalf.

3. "Defendants" means all Defendants named in this action, individually and collectively.

4. "EDNY Action" refers to Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

5. "Defamatory Publication" means all knowingly false, defamatory, slanderous, and libelous statements published to or by the Pensacola News Journal concerning Plaintiff.

6. "Documents" includes all electronically stored information, emails, texts, files, images, audio, drafts, notes, and metadata in any form.

7. "Communications" includes all exchanges of information, written or verbal, including emails, calls, texts, and media communications.

8. "Identify" when referring to a person means their full name, job title, employer, and contact information; for documents, means date, authors, recipients, subject, and custodian.

9. "Concerning" means relating to, reflecting, discussing, evidencing, or involving.

10. "Possession, Custody, or Control" includes documents held by counsel, agents, or third parties acting for the Defendant.

11. "Media" includes all news outlets, journalists, and social media platforms including the Pensacola News Journal.

12. "Due Diligence" means any internal verification or investigation regarding truthfulness of allegations prior to publication.

13. These requests shall be construed broadly to require full disclosure including all drafts and non-identical copies.

Request for Production No. 1: Produce all documents, communications, investigative materials, notes, and records that formed the basis of any allegations against Plaintiff in Gilead Sciences, Inc. v. Levitan, et al., Case No. 21-cv-04106 (AMD-JAM) (E.D.N.Y.).

Request for Production No. 2: Produce all documents, communications, drafts, notes, statements, photographs, videos, files, and reports provided to or received from the Pensacola News Journal concerning Plaintiff, including the knowingly false, defamatory, slanderous, and libelous statements referenced in Plaintiff's First Amended Complaint.

Request for Production No. 3: Produce chain-of-custody records and source documentation for any material used to accuse Plaintiff of criminal activity, fraud, conspiracy, narcotics trafficking, or involvement with counterfeit HIV medication.

Request for Production No. 4: Produce all communications between You and any reporter, editor, publisher, or employee of the Pensacola News Journal or any other publication regarding Plaintiff.

Request for Production No. 5: Produce all drafts of the EDNY complaint and amended pleadings identifying Plaintiff, including comments, edits, and tracked changes.

Request for Production No. 6: Produce all documents that identify the individuals who sourced or supplied any assertion or allegation made against Plaintiff in the EDNY case and/or of the Pensacola News Journal publication.

Request for Production No. 7: Produce all due diligence efforts, vetting records, legal review files, or determinations of truthfulness performed before statements concerning Plaintiff were published or alleged to the court.

Request for Production No. 8: Produce all internal communications, chats, emails, memoranda, or directives concerning publication of allegations about Plaintiff to any media outlet.

Request for Production No. 9: Produce all subpoenas, process server instructions, and communications relating to any attempted service of Plaintiff in connection with the EDNY case, including the false affidavits of service described in Plaintiff's First Amended Complaint.

Request for Production No. 10: Produce all evidence that You claim supports any assertion that Plaintiff engaged in criminal conduct or financial wrongdoing.

Request for Production No. 11: Produce the copy of the physical three ring binder alleged to be served on Plaintiff at 511 Windrose Circle, Pensacola, FL. and any communications had with any person of the Escambia County Sheriff's Office.

**PRIVILEGE LOG REQUIREMENTS:**

If any material is withheld based on a claim of privilege, a detailed privilege log must be provided including the date, author, subject matter, recipients, custodians, document type, number of pages, and the basis for withholding. Blanket assertions of privilege are prohibited and shall constitute waiver.

Respectfully submitted,

December 3, 2025

/s/______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 3rd day of December 2025.

/s/______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

Filing # 236973691 E-Filed 12/03/2025 06:08:19 PM

**IN THE CIRCUIT OR COUNTY COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

JOHN D. LEVITAN, SR,
Plaintiff(s),

Case Number: 2024 CA 001164
Division: N

v.

GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAPP, WEBB AND TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, and Individual, JOSHUA STEIN, an Individual, and THOMAS P KURLAND, an Individual,
Defendant(s).
_____________________________________________/

**INITIAL CASE MANAGEMENT ORDER – GENERAL**

THIS MATTER is before Court *sua sponte* and in accordance with Fla. R. Civ. P. 1.200. As outlined in Administrative Order 2021-12, the Court issues this case management order to facilitate the timely, fair, and effective resolution of this matter. Plaintiff failed to comply with the Amended Order to Plaintiff Regarding Required Reporting, e-filed on September 3, 2024, so a case management order was never entered.[1] It is ORDERED as follows:

The initial complaint was filed on **September 2, 2024**. The last-named defendant has been served with the complaint.

Fact and expert discovery should be completed no later than **November 26, 2025.**

Objections to pleadings and dispositive pretrial motions should be resolved within 45 days of the filing of said objections/motions.

Mediation should be completed no later than **November 26, 2025.**

The projected trial date is **March 2026**. A firm trial date will be ordered when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440.

The schedule of deadlines herein will be strictly adhered to by the parties unless changes are otherwise agreed to by the parties and approved by the Court. The Court will consider a request to approve changes to these deadlines upon a showing of good cause by either party based on matters arising from an emergency or unanticipated unavailability. However, unnecessary delays in completing discovery or lack of planning for unavailability will not constitute good cause for a change to these deadlines. The failure to abide by these deadlines may result in sanctions.

[1] After remanded from federal court on or about October 6, 2025, no party has requested a case management order. Nevertheless, the applicable rules of procedure and judicial administration still apply.

**DONE AND ORDERED** in ESCAMBIA COUNTY, FLORIDA *nunc pro tunc to September 24, 2024.*

12/03/2025 16:28:47
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J. FRYDRYCHOWICZ 12/03/2025 04:28:47 gKVQDw12

Circuit Court Judge

**Per Administrative Directive ESCAD2021-03, "In cases wherein one party is unrepresented (pro se), it is the responsibility of the sole attorney in the case to serve within five business days this [order or judgment] upon any pro se party who does not have access to and is not a registered user of the Florida Courts e-Filing Portal."**

Copies:
John Levitan
Jacob Franklin Barnes, Esq.
Jeremy C. Branning, Esq.

Filing # 237072522 E-Filed 12/04/2025 08:41:16 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v. CASE NO. **2024 CV 001164**

**PATTERSON BELKNAP WEBB & TYLER LLP,** *et. al.,*

Defendants.
___________________________________________/

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S MOTION TO STAY DISCOVERY, SUPPLEMENT TO MOTION TO STRIKE MOTION TO DISMISS, AND TO MOTION FOR JUDICIAL DEFAULT**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and hereby files his objections to Defendant's Motions to Stay Discovery and requests the Court deny said motion without the necessity of a hearing. In support thereof Plaintiff states.

**PROCEDURAL HISTORY AND IMPROPER DELAY**

Defendants' Serial and Meritless Removals Have Already Caused a Year of Improper Delay

1. This action was instituted on October 3, 2024, when Plaintiff filed his Complaint against Defendants. Shortly thereafter, Defendants removed the case to the United States District Court for the Northern District of Florida—without legal basis and for the sole purpose of delaying adjudication of Plaintiff's claims. Defendants then effectuated a second removal to the Eastern District of New York, again solely as a dilatory tactic. These efforts proved meritless. The United States Supreme Court subsequently issued its decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. ___ (2025), which directly supports Plaintiff's jurisdictional position and compelled remand. See *Memorandum Order, U.S.D.C.– E.D.N.Y.*, attached as *Exhibit "A*." As a result of Defendants' procedural maneuvering, this case has already been delayed by more than a year, including a complete standstill of discovery. Defendants have been afforded ample opportunity to litigate their jurisdictional arguments in multiple forums,

and those issues have been conclusively resolved. Principles of finality—including res judicata and law of the case—preclude Defendants from continuing to obstruct or further postpone the initiation of discovery.

**Defendants' Second Motion to Dismiss is Unauthorized, Jurisdictionally Defective, and Barred as a Dilatory Attempt to Avoid Discovery**

2. During the federal removal period, Defendants filed a Motion to Dismiss in the United States District Court for the Eastern District of New York on January 31, 2025. Rather than amend or rely upon that previously‑filed motion, Defendants have now elected to submit an entirely new Motion to Dismiss in this Court—constituting a second dispositive motion directed to the same pleading. Plaintiff has objected and moved to strike the Second Motion to Dismiss based on Defendants' misrepresentation to Plaintiff and to the Court that their request for an enlargement of time was sought for the purpose of "*responding*" to the Amended Complaint, when in fact Defendants intended to file a separate and successive dismissal motion using subterfuge to do so. See *Exhibit "B"* (Court Docket). Moreover, because the Eastern District of New York was without subject-matter jurisdiction over this action following *Royal Canin U.S.A., Inc. v. Wullschleger, supra*, Defendants' motions cannot serve as a basis to further delay these proceedings.

**SERIAL ATTEMPTS TO HALT DISCOVERY**

**Defendants Have Twice Obtained Stays of Discovery Totaling Over One Year and Are Not Entitled to a Third Delay**

3. Defendants have already twice sought to halt discovery in this matter—first on October 7, 2024, through a Motion to Stay Proceedings and Deadlines, and again on February 11, 2025—each time securing extensive delays. These stays have resulted in a cumulative suspension of discovery for over one year, a delay that is both extraordinary and prejudicial to Plaintiff. See *Exhibit "B."* The doctrine of *res judicata* and the law of the case now bar Defendants from obtaining yet another stay. This Court previously granted Defendants enlarged time to respond to the operative pleading, conditioned upon resolution of their Motion to Stay and Transfer, which concluded on January 6, 2025.

Pursuant to that ruling, Defendants' Answer was due on January 17, 2025. Defendants are therefore well outside the time permitted to further delay their obligation to respond and cannot seek a third suspension of litigation merely to avoid initiating discovery obligations that have been pending for nearly a year. Defendants also moved to stay their answer to the Complaint on October 7, 2024 and again on November 2, 2024. This Motion was "Granted in Part and Denied in Part". See *Ex B.* 11/04/24. Defendants were given an enlargement of time to file their Answer and respond[1] to the Complaint until ten (10) days after the USDC-NDFLA ruling on the Defendants' Motion to Stay and Transfer. That ruling was handed down on January 6, 2025. Defendants answer should have been filed no later than January 17, 2025. No Answer was filed by the Defendants, and no request was made to extend the time prior to that deadline elapsing. Defendants are in Default of the Courts Order by over eleven (11) months.

**SUMMARY OF ARGUMENTS**

**A. Florida Law Strongly Presumes Discovery Should Proceed**

Discovery may begin upon commencement of an action, and a motion to dismiss it does not stay discovery. Discovery should be stayed only in exceptional circumstances, and the movant bears a heavy burden to demonstrate such necessity. Defendants cannot meet that burden. Their arguments rely solely on contested positions already rejected in multiple courts, not on any legitimate discovery burden.

[1] Florida Rule of Civil Procedure 1.140(a) defines what qualifies as responsive pleadings (e.g., an Answer, a Reply when required). A Motion to Dismiss is instead a defensive motion — it challenges legal sufficiency, but it does not: Admit or deny allegations or assert defenses to the facts. Florida courts have repeatedly held: A motion to dismiss is not a responsive pleading. A responsive pleading is a formal court filing that directly answers the allegations in an opposing party's pleading and asserts defenses or claims arising out of the same transaction or occurrence.

**B. A Motion to Dismiss Is Not a Responsive Pleading and Cannot Delay Discovery Deadlines**

A motion to dismiss is not a responsive pleading and does not relieve a party of their obligation to timely answer and proceed with litigation. Likewise, successive motions to dismiss aimed at the same pleading are disfavored and treated as dilatory where they add nothing new of substance.

Here, Defendants' filing of a second Motion to Dismiss—after jurisdiction was conclusively established—confirms their intent to obstruct and delay, not to resolve any legitimate legal issue.

**C. Res Judicata and Law of the Case Foreclose Further Gamesmanship**

Res judicata prevents reasserting matters previously adjudicated. Law of the case prohibits relitigating matters already resolved earlier in the same action.

**D. Serial Stays and Noncompliance With Court Orders Are Independently Fatal to Defendants' Motion**

Courts must deny discovery stays where doing so would prejudice the non-moving party. Plaintiff has been deprived of discovery for more than a year solely due to Defendants' procedural abuse.

Worse, Defendants have: (i) Twice been granted stays of discovery, (ii) Failed to timely file their Answer by the Court-ordered January 17, 2025 deadline, (iii) Sought no extension before defaulting, (ii) Filed a duplicative and jurisdictionally void dispositive motion rather than answer.

A party may not benefit from its own violation of the Court's directives. Thus, Defendants' request is: Untimely Legally unsupported, Prejudicial, Procedurally barred.

**E. Plaintiff Is Entitled to Commence Discovery Without Further Obstruction**

Discovery is fundamental to Florida's adversarial process. With jurisdiction decided, with an Answer nearly one year overdue, and with no valid justification for a third stay and strongly disfavors additional stays.

**WHEREFORE** Plaintiff would request that the Court Deny the Stay of Discovery, Deny and/or Strike the Motion to Dismiss, Direct the Defendants to file an Answer within 7 days, and any further relief the Court may deem just and appropriate.

Respectfully submitted,
December 4, 2025

/s/ ________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 4th day of December 2025.

/s/ ________________________

John D. Levitan, pro se

Filing # 237074085 E-Filed 12/04/2025 09:51:22 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v. CASE NO. **2024 CV 001164**

**PATTERSON BELKNAP WEBB &**
**TYLER LLP,** *et. al.,*

Defendants.
_____________________________________________/

**NOTICE OF FILING EXHIBITS TO**
**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S**
**MOTION TO STAY DISCOVERY, SUPPLEMENT TO MOTION TO STRIKE**
**MOTION TO DISMISS, AND TO MOTION FOR JUDICIAL DEFAULT**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and hereby files his exhibits to objections to *Plaintiff's Objections To Defendant's Motion To Stay Discovery, Supplement To Motion To Strike Motion To Dismiss, And To Motion For Judicial Default Exhibits A, And B.*

Respectfully submitted,

December 4, 2025

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com on this 4th day of December 2025.

/s/ ______________________________
John D. Levitan, pro se

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOHN D. LEVITAN, SR.,**<br>Plaintiff,<br>– against –<br>**GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND,**<br>Defendants. | **MEMORANDUM AND ORDER**<br>25-CV-393 (AMD) (JAM) |

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action alleging violations of the Florida Constitution and common law defamation claims. The plaintiff asserts these claims against Gilead Sciences, Inc. and Gilead Sciences Ireland UC ("Gilead"), a pharmaceutical company that has sued the plaintiff in this Court for conspiring to sell counterfeit Gilead medication, and Patterson Belknap Webb & Tyler LLP and lawyers at the firm ("PBWT"), who represent Gilead in that related suit. The plaintiff initiated this case in Florida state court, the defendants removed it to the Northern District of Florida, and that court transferred it here pursuant to 28 U.S.C. § 1404.

Before the Court are two motions: the plaintiff's motion either to transfer the case back to the Northern District of Florida for that court to reconsider its decision denying the plaintiff's motion to remand based on an intervening change in law or to remand directly, and the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the plaintiff's motion to transfer the case back to the Northern District of Florida is denied. However, the Court does not have subject matter jurisdiction over the

plaintiff's claims, so the case is remanded to the Florida state court, where the case was filed originally. The Court does not have jurisdiction to decide the defendants' motion to dismiss.

## BACKGROUND[1]

### I. Factual Background

In the summer of 2021, Gilead, represented by PBWT, sued various defendants for conspiring to distribute counterfeit Gilead-branded HIV medicine. (*Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.) ("*Gilead*"), ECF No. 1.) As the case developed, Gilead identified other members of the alleged conspiracy, including the plaintiff in this action, John Levitan, and amended the complaint to include them as defendants and add allegations about their roles in the scheme. (*See, e.g.*, *id.* ECF No. 607 (the plaintiffs' motion to amend the complaint to add Levitan, among others); *id.* ECF No. 630 (Fourth Amended Complaint, naming Levitan as a defendant).)

On August 11, 2022, pursuant to 15 U.S.C. § 1116(d), the Court entered an asset freeze order, a temporary restraining order, and a seizure order against the plaintiff, as well as other named defendants in *Gilead*. (*See id.* ECF Nos. 627, 628, 629.) About a week later, PBWT executed the seizure order at the plaintiff's home in Pensacola, Florida. (*See id.* ECF Nos. 687, 748, 823; *see* ECF No. 26 ¶¶ 17–21.)

The plaintiff's claims arise out of the defendants' allegations in the fourth amended complaint in *Gilead* and the defendants' execution of the seizure order. (*See* ECF No. 30, Transfer Order, at 9–23.) In his amended complaint, the plaintiff asserts Florida state law claims. He maintains that some of the allegations in the defendants' complaint were defamatory

[1] The history of this case is long and contentious. The Court assumes familiarity with the related case *Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.), and discusses only the facts necessary to reach its decision.

and violated the plaintiff's rights to free speech and association under Article I, §§ 4 and 5 of the Florida Constitution. (ECF No. 26 ¶¶ 15, 27–29, 36–42; *id.* at 9–10; ECF No. 26-1 at 1–7; *Gilead*, ECF No. 630 ¶¶ 270–76.) The plaintiff further alleges that the execution of the seizure order was an unlawful search that violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution. (ECF No. 26 ¶¶ 17–26, 30–35.)

## II. Procedural Background

The parties have been litigating against each other in this Court for three years. (*See, e.g.*, *Gilead*, ECF Nos. 839, 1150, 1169, 1452–55, 1472–74; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by then-Magistrate Judge Bulsara*; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by Magistrate Judge Marutollo*.)

On September 2, 2024, the plaintiff filed this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida. (ECF No. 1-1.)[2] In his initial complaint, the plaintiff asserted the state law claims described above, as well as violations of the First and Fourth Amendments. (*Id.* ¶¶ 25–27.) The plaintiff also alleged that the "damages subject of this action exceeds $50,000.00." (*Id.* ¶ 12.) On October 3, 2024, the defendants removed the case to the Northern District of Florida, arguing that the court had diversity and federal question jurisdiction. (ECF No. 1.) The defendants maintained that the court had diversity jurisdiction because the parties were completely diverse and the amount in controversy "as pled[,] plausibly exceeds $75,000." (*Id.* ¶¶ 5–16.) The defendants also claimed that the court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the complaint alleged federal

[2] Citations to ECF are to the docket in this action. Citations to "N.D. Fl. ECF" are to the docket in *Levitan v. Patterson, Belknapp, Webb & Tyler, LLP, et. al*, No. 24-CV-475 (N.D. Fl.).

constitutional violation and that the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*Id.* ¶¶ 17–18.)

The defendants then moved to transfer the action to this court pursuant to 28 U.S.C. § 1404(a) and to stay the proceedings in the Northern District of Florida. (ECF No. 3.) They also asked that court to extend the deadline to respond to the complaint until it resolved their motion to transfer. (ECF No. 4.) The court extended the defendants' deadline to respond to the complaint until 10 days after the resolution of the motion to transfer. (ECF No. 5.)[3]

On October 21, the plaintiff moved to remand the case to Florida state court. (ECF No. 7.) He argued that removal was improper because the amount in controversy did not meet the jurisdictional threshold for diversity jurisdiction and that his claims did not present a federal question. (*Id.* at 5–7.) The defendants opposed. (ECF No. 18.)

On November 12, 2024, and while the transfer motion was pending, Magistrate Judge Zachary C. Bolitho of the Northern District of Florida issued a report and recommendation recommending that the district judge deny the motion to remand. (ECF No. 21.) Observing that the plaintiff "clearly cites to the U.S. Constitution for several of his claims," the court held that remand was unwarranted because the court had federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 3–4.) In addition, the court noted that "[b]ecause there is clearly federal question jurisdiction in this case, it is unnecessary to address whether diversity jurisdiction exists." (*Id.* at

[3] Gilead was served on October 14, 2024, after PBWT removed the case to federal court. (ECF No. 17 at 1–2.) Gilead appeared in the case, consented to removal (ECF No. 15), and joined PBWT's motion to transfer (ECF No. 16). Gilead also asked for the same extension of the deadline to respond to the complaint (ECF No. 17 at 2–3), which the court granted (ECF No. 19).

2 n.1.) Neither party objected to the report and recommendation, and the district court adopted it on December 31, 2024. (ECF No. 28.)

Although the plaintiff did not object to the magistrate judge's recommendation, he filed an amended complaint on November 15, 2024. (ECF No. 26.) The factual allegations in the amended complaint were almost identical to the original complaint. This time, however, the plaintiff removed the federal constitutional claims and added language that purports to cap his damages at $70,000. (*Compare* ECF No. 1-1 ¶¶ 25–27, 31, 34, 37 (alleging violations of the First and Fourth Amendments) *with* ECF No. 26 ¶¶ 25–27, 31, 34, 37 (alleging the same conduct without citing the federal constitution); *compare* ECF No. 1-1 ¶ 12, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000.00") *with* ECF No. 26 ¶ 11, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000 but is no greater than $70,000").) The defendants objected, calling the amended complaint "a naked and legally impermissible effort to plead this case out of federal court." (ECF No. 27 at 10.)[4] They maintained that there was still federal question jurisdiction because the plaintiff's claims "still directly raise and require resolution of issues of federal law under both the United States Constitution and the Lanham Act." (*Id.* at 12.) In the alternative, they maintained that the court had diversity jurisdiction, notwithstanding the plaintiff's "attempt to plead an amount in controversy below $75,000." (*Id.* at 14.)

On January 6, 2025, Judge Bolitho issued a thorough and well-reasoned opinion granting the defendants' motion to transfer the action to this Court. (ECF No. 30.) The court found that the "case could have been filed in the Eastern District of New York because it has subject matter

[4] The defendants do not argue that the amended complaint was procedurally improper under Federal Rule of Civil Procedure 15.

jurisdiction, personal jurisdiction, and is a proper venue for this action." (*Id.* at 5.) The court further explained that "[b]ecause the Court has already determined that subject matter jurisdiction existed at the time of removal, Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case." (*Id.* at 6.) The court observed that "[f]ederal courts have repeatedly rejected . . . clever attempts to destroy federal jurisdiction" by amending a pleading. (*Id.* at 6; *see also id.* at 6 n.2 (citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002).)

The court also analyzed the factors that guide Eleventh Circuit courts in determining whether to transfer a case under § 1404(a). (*Id.* at 9–23.) The court concluded that "[e]ach factor identified by the Eleventh Circuit either weighs in favor of transfer or is neutral." (*Id.* at 23.) Accordingly, the court "exercise[d] its broad discretion" and transferred the case to this Court. (*Id.*) Judge Bolitho directed the clerk of his court to transfer the case 15 days after the date of the order "unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline." (*Id.*) The plaintiff did not file an objection to the transfer order by January 21, 2025, and the case was transferred to this Court on January 23, 2025. (ECF No. 35.)[5]

On January 27, 2025 — after the case had been transferred and assigned a case number in this Court, after the defendants appeared, and after Magistrate Judge Joseph Marutollo issued a scheduling order — the plaintiff filed objections to Judge Bolitho's transfer order in the Northern District of Florida. (N.D. Fl. ECF No. 37.)[6] The plaintiff argued that the court should reconsider

[5] The Clerk of Court for the Northern District of Florida transferred the case prematurely on January 8, 2025. (*See* ECF Nos. 32–34.) The Clerk of this Court then "removed [the transferred case] from CM/ECF in the Eastern District of New York." In any event, the case was ultimately transferred to this Court on January 23, 2025 — two days after Judge Bolitho's deadline for the plaintiff to object to the order. (ECF No. 35.)

[6] The plaintiff called this filing a motion for reconsideration.

the transfer order in light of the Supreme Court's intervening decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), issued on January 15, 2025. (*Id.* at 1–6.) The plaintiff also filed a letter in which he explained that his objections were late because "the winter storm emergency" that affected wide swaths of the southern United States prevented him from filing his papers in person. (N.D. Fl. ECF No. 38 at 1.)[7] The plaintiff further noted that he had twice requested — and was twice denied — electronic filing privileges, and that he had emailed his objections to the defendants on January 21, 2025. (*Id.* at 1 n.1, 3–5.)

The defendants opposed the motion, arguing that the plaintiff "provide[s] no basis for [the Northern District of Florida] [to] undo the transfer of this case to the Eastern District of New York ('EDNY'), which already timely occurred on January 23, 2025." (N.D. Fl. ECF No. 39 at 2.) According to the defendants, the plaintiff did not "challenge any aspect of the Court's reasons for granting transfer pursuant to 28 U.S.C. § 1404(a)," and raised "entirely jurisdictional" objections. (*Id.*) On January 29, 2025, Judge M. Casey Rodgers of the Northern District of Florida held that she was divested of jurisdiction on January 23rd, when the case was transferred to this Court, and therefore could not consider whether the plaintiff's "objections should be allowed out of time or the underlying merits of his objections." (N.D. Fl. ECF No. 40 at 1–2.)

[7] Florida Governor Ron DeSantis declared a state of emergency in the state on January 20, 2025. *See* Fla. Exec. Order No. 25-13 (Jan. 20, 2025). The Court could not find any Northern District of Florida announcements about courthouse closures during this time, although the bankruptcy court in that district closed the Clerk's office in the Pensacola courthouse on January 21 and 22, 2025 because of the storm, and noted that unrepresented parties could file documents by email. *See Tallahassee and Pensacola Clerk's Offices Closing for Inclement Weather*, United States Bankruptcy Court Northern District of Florida (Jan. 20, 2025), https://www.flnb.uscourts.gov/news/tallahassee-and-pensacola-clerk%E2%80%99s-offices-closing-inclement-weather.

On January 31, 2025, the defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in this Court. (ECF No. 42.)[8] In a flurry of filings on February 13 and 14, 2025, the plaintiff moved to supplement the record from the Northern District of Florida to include his January 27th objections and his letter explaining the reasons for the delayed filing. (ECF No. 46.) He asked this Court to reconsider, pursuant to Federal Rule of Civil Procedure 59(e), the order denying remand and the transfer order, in light of *Royal Canin*. (ECF No. 47.) He also moved to remand the case (ECF No. 49), asked the Clerk enter default judgement against all defendants for failing to answer or respond to the amended complaint (ECF No. 50), and moved to strike the defendants motion to dismiss either as untimely or on the merits (ECF No. 51). The defendants opposed the plaintiff's motion to remand the case to state court, reconsider the Florida court's order, or to transfer it back to Florida federal court. (ECF No. 53). They also filed reply in further support of their motion to dismiss and opposing the plaintiff's motion to strike. (ECF No. 54.)[9]

**DISCUSSION**

The plaintiff asks the Court to remand his case to Florida state court. (ECF No. 47 at 1, 4; ECF No. 49.) He suggests some procedural avenues to accomplish this goal. First, he asks this Court to transfer the case back to the Northern District of Florida for that court to reconsider its order denying the plaintiff's motion to remand. In the alternative, he asks this Court to reconsider Judge Bolitho's order denying remand or to remand the case itself. (ECF No. 47 at 4, 7; ECF No. 49 at 2.)

[8] The defendants also moved to stay discovery until the Court resolved the motion to dismiss. (ECF No. 43.) Judge Marutollo granted the stay on March 3, 2025. (*ECF Order dated Mar. 3, 2025 entered by Magistrate Judge Marutollo*.)

[9] The plaintiff's motion to supplement the record is denied as moot. The Court takes judicial notice of these filings and considers them in deciding the motions. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## I. Motion to Transfer

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Hatteras Enters. Inc. v. Forsythe Cosm. Grp., Ltd*, No. 15-CV-5887, 2016 WL 4083386, at *5 (E.D.N.Y. July 30, 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). That "doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Id.* at *4 (quoting *Sagendorf-Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)). The Second Circuit has not "directly endorsed a standard by which district court judges should exercise their discretion in revisiting the decisions of a transferor courts." *Id. See also SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 178 n.7 (2d Cir. 2000) ("A district court considering a retransfer motion might be limited by 'law of the case' principles, at least in the absence of changed circumstances."). Moreover, it is well-settled that "courts should be loathe to revisit prior decisions of a coordinate court unless there are extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Torres v. Universal Music Grp. N.V.*, No. 24-CV-5323, 2024 WL 3429444, at *1 (S.D.N.Y. July 16, 2024) (quoting *Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *7 (S.D.N.Y. Mar. 23, 2023)). "[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Hatteras Enters. Inc.*, 2016 WL 4083386, at *5 (quoting *SongByrd, Inc.*, 206 F.3d at 178 n.7).

The Court sees no reason to transfer the case back to the Northern District of Florida. Judge Bolitho committed no error in his determination that this case was related to *Gilead* under the relevant § 1404(a) factors and the controlling case law. (ECF No. 30 at 9–23.) Even if the

Court had disagreed with the Judge Bolitho's analysis, the policy reasons that favor application of the law of the case doctrine would persuade the Court that retransfer is inappropriate in this case. *See, e.g.*, *U.S. Bank N.A. v. Bank of Am. N.A.*, 916 F.3d 143, 153 (2d Cir. 2019) (affirming district court holding that a coordinate court's transfer order was law of the case where there was "no clear error in that ruling").

More fundamentally, and as detailed below, "[s]ince this court lacks subject matter jurisdiction over the instant matter, no order transferring the case may be issued." *Leeds, Morelli & Brown, P.C. v. Hernandez*, 2005 WL 2148994, at *3 (E.D.N.Y. Sept. 6, 2005) (collecting cases). Indeed, the Court's conclusion that it lacks subject matter jurisdiction further confirms that transferring the case back to the Northern District of Florida would risk a "perpetual game of jurisdictional ping-pong," *U.S. Bank N.A.*, 916 F.3d at 152 (quoting *Christianson*, 486 U.S. at 816), which is particularly unnecessary given that this Court is "equally capable of hearing and deciding" questions of federal court jurisdiction, *Pace v. Quintanilla*, No. 13-CV-91, 2013 WL 5405563, at *5 (S.D.N.Y. Sept. 23, 2013).

Accordingly, the plaintiff's motion to transfer is denied.

## II. Motion to Remand

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If a statute confers federal jurisdiction over a suit, not only the plaintiff but also the defendant can get it into federal court," by removing the case pursuant to §§ 1441(a) and 1446. *Royal Canin*, 604 U.S. at 27.

After a defendant removes a case, a plaintiff may move to remand it back to state court. 28 U.S.C. § 1447(c). "If the federal court lacks subject-matter jurisdiction, it must grant the motion to remand." *Mohadeb v. Credit Corp Sols. Inc.*, No. 22-CV-5017, 2022 WL 17832856, at *1 (E.D.N.Y. Dec. 21, 2022). "The removing defendant has the burden of establishing federal jurisdiction." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).

In addition, the Court must always confirm its own jurisdiction over a removed action. *See United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Regardless of whether a plaintiff moves to remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Whether styled as a motion to reconsider or a motion to remand, the plaintiff claims that the Supreme Court's opinion in *Royal Canin* requires remand because the district court does not have subject matter jurisdiction. (*See, e.g.*, ECF No. 47 at 2–5.)[10] The plaintiff argues that *Royal Canin* permits him to amend the complaint to remove federal questions so that the federal court does not have subject matter jurisdiction; then, the plaintiff says, the Court must remand the case. (*Id.*) The defendants respond that *Royal Canin* does not apply because the Court has

[10] The Supreme Court decided *Royal Canin* after Judge Bolitho denied the plaintiff's motion to remand to the state court. For this reason, the Court declines to treat the Judge Bolitho's decision as the law of the case. *See, e.g.*, Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.4 (3d ed.) ("Following a § 1404(a) transfer, the receiving court should treat pre-transfer rulings by the transferring court in much the same way as one district judge treats the rulings of a colleague."). Moreover, "[t]he Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Fersel v. Paramount Med. Servs., P.C.*, No. 18-CV-2448, 2022 WL 14813738, at *2 (E.D.N.Y. Oct. 26, 2022) (citation omitted); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .").

federal question jurisdiction over the amended complaint. (ECF No. 53 at 6–11.) The defendants also maintains that the Court has diversity jurisdiction. (*Id.* 11–13.)

**a. *Royal Canin***

In *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025), decided earlier this year, the Supreme Court held that when a plaintiff "amends her complaint to delete all the federal-law claims, leaving nothing but state-law claims behind," the federal court no longer has jurisdiction over the case, which must "return to state court." In her first complaint, Wullschleger claimed that Royal Canin's marketing tricked her into buying expensive dog food. *Id.* at 28. She asserted claims under the Missouri Merchandising Practices Act and state antitrust law. *Id.* As part of these claims, she alleged that Royal Canin violated a federal statute. *Id.* Accordingly, although the complaint asserted no federal claims, it raised an embedded a federal question. *Id.* at 28 n.1 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Royal Canin removed the case to federal court, invoking the court's federal question jurisdiction and supplemental jurisdiction. *Id.* at 28–29. Wullschleger moved to remand, which the court denied. *Id.* at 28 n.1. Then, she amended her complaint, deleting any mention of the federal statute, and moved to remand again. *Id.* at 29. The district court denied that motion, too. The Eighth Circuit reversed, reasoning that the amended complaint "[supersedes] an original complaint and renders the original complaint without legal effect." *Id.* (alteration in original) (quoting *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922 (8th Cir. 2023)).

The Supreme Court unanimously agreed. The Court held that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Id.* at 30. Put another way, "[t]he reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's

jurisdiction." *Id.* at 35–36. If "[t]he operative pleading no longer supports federal jurisdiction," then "the federal court must remand the case to the state court where it started." *Id.* at 39. Once a "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Id.* at 30. Accordingly, the Supreme Court held, the district court lacked jurisdiction over the purely state-law claims in the operative complaint — that is, the amended complaint — and was required to remand the case. *Id.* at 38.

The Court rejected Royal Canin's claim that "[t]he amendment of a complaint following removal of a suit to federal court cannot divest that court of supplemental jurisdiction." *Id.* at 32. To the contrary, the Supreme Court stated, "changes in parties, or changes in claims, effectively remake the suit," including "its jurisdictional basis." *Id.* at 35. Justice Kagan, writing for the Court, explained that "result accords with Congress's usual view of how amended pleadings can affect jurisdiction." *Id.* at 34. The Court observed, for example, that "an amendment can either destroy or create jurisdiction in an original diversity case," as "add[ing] a non-diverse party in such a case typically destroys diversity jurisdiction, requiring the case's dismissal." *Id.* at 37 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374–377 (1978)).

The Court did, however, note one category of amendments that is exempt from this rule: amendments that change "factual issue[s] relevant to jurisdiction." *Id.* at 37 n.8. Within this category is "an amendment reducing the alleged amount-in-controversy to below the statutory threshold," which "will usually not destroy diversity jurisdiction." *Id.* Because "the rule more concerns a fact on the ground," in this case "the value of a suit," it is "analogous to the time-of-filing rule applying to citizenship." *Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294–295 (1938)); *Rosado v. Wyman*, 397 U.S. 397, 405, n. 6 (1970)); *see also id.* at 36 n.5 (distinguishing the "so-called time-of-filing rule," "which evaluates a party's

citizenship (*e.g.,* whether the defendant is in fact from New York) at the time a suit is brought," and "concerns only the actual 'state of things' relevant to jurisdiction"). Accordingly, the Court suggested the amount in controversy should still be calculated as of the time a plaintiff files the original complaint.

**b. The Northern District of Florida's Decision on Subject Matter Jurisdiction**

On November 12, 2024, Judge Bolitho recommended that the district judge deny the plaintiff's motion to remand. (ECF No. 21.) At that time, the operative complaint was the original complaint, which included the explicit references to the First and Fourth Amendments. Judge Bolitho held that there was federal question jurisdiction because the plaintiff "clearly cites to the U.S. Constitution for several of his claims." (*Id.* at 3.) Judge Bolitho found that it was unnecessary to address whether there was diversity jurisdiction exists "[b]ecause there is clearly federal question jurisdiction in this case." (*Id.* at 2 n.1.)

Shortly thereafter, the plaintiff amended his complaint, "deleting every mention of federal law," just as the *Royal Canin* plaintiff did. (ECF No. 26; *Royal Canin*, 604 U.S. at 22 (Syllabus).) The defendants' motion to transfer was still pending when the plaintiff filed his amended complaint.

Judge Bolitho granted the defendants' transfer motion on January 6, 2025, a week before the Supreme Court published *Royal Canin*. In deciding that motion — and specifically whether the case "could have been filed in the Eastern District of New York because it has subject matter jurisdiction" — the court considered whether the plaintiff's amendment affected its jurisdiction. (ECF No. 30 at 5.)

Following then-binding circuit precedent, which was unquestionably good law before *Royal Canin*, Judge Bolitho wrote:

> The Court has already determined that federal subject matter jurisdiction existed in this case at the time of removal. (Docs. 21, 28). Plaintiff, however, recently attempted to circumvent the Court's jurisdictional determination by filing an amended complaint that removes references to any federal claims and expressly seeks damages less than the $75,000 amount-in-controversy requirement. (*See* Doc. 26). Federal courts have repeatedly rejected such clever attempts to destroy federal jurisdiction. Because the Court has already determined that subject matter jurisdiction existed at the time of removal (Docs. 21, 28), Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case.

(*Id.*)

Judge Bolitho relied on three cases: *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002), which "affirm[ed] the denial of remand where plaintiff 'amended the complaint to remove any federal cause of action' because the facts alleged in the amended complaint still 'fell within the scope of the federal causes of action' initially pleaded" (alteration adopted); *Collura v. City of Philadelphia*, 590 F. App'x 180, 184 (3d Cir. 2014), which "affirm[ed] denial of remand where plaintiff 'dropped his federal claims from his amended complaint' because 'federal jurisdiction cannot be defeated by amending a complaint to eliminate federal claims after removal'" (alteration adopted); and *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007), in which the Supreme Court observed in a footnote that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction . . . . But removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." (*Id.* at 5 n.2, 6 (emphasis in original).)

The *Royal Canin* Court addressed these cases, and noted that there was a circuit split on the question before the Court. *Collura* and *Behlen* were in circuits where the rule was "that a post-removal amendment cannot divest a federal court of jurisdiction." *Royal Canin*, 604 U.S. at

30, & n.3 (citing *Collura*, 590 F. App'x at 184, and *Behlen*, 311 F.3d at 1095). *Royal Canin* clearly abrogated these holdings. *See Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024) (Supreme Court decision abrogates circuit precedent if there is "a conflict, incompatibility, or inconsistency" between the decision and precedent (internal citation omitted)).

Justice Kagan also discussed *Rockwell* at length, explaining that it was consistent with the Court's reasoning in Royal Canin: "unless the withdrawn allegations [in an amended complaint] were 'replaced by others' giving the court adjudicatory power, the plaintiff's amendment 'will defeat jurisdiction.'" *Id.* at 36 (quoting *Rockwell*, 549 U.S. at 473); *see also id.* at 41 (*Rockwell* "examine[d] what happens in an original case when a plaintiff amends a complaint to expunge federal claims").

The Court also distinguished the footnote on which Judge Bolitho relied in the transfer order. Acknowledging that "[t]he footnote . . . sets out exactly the rule [the defendant] wants" — and the rule Judge Bolitho stated — the Court said that "the footnote is dictum, and [did] not control the outcome" in *Royal Canin*. *Id.* at 42. The Court did not have to "follow the *Rockwell* footnote just because it exists; [the Court's] adherence instead depends on whether it withstands analysis. And it does not." *Id.* at 43.

*Royal Canin*, thus, abrogated the central precedents on which Judge Bolitho relied in holding that this Court would have had federal jurisdiction over the case had it been brought in this district. Accordingly, the Court must evaluate whether it has subject matter jurisdiction over this case in light of *Royal Canin*. *See id.* at 34 ("[A]n amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion.").

**c. Federal Question Jurisdiction**

The plaintiff maintains that *Royal Canin* controls this case. Because the plaintiff removed his references to federal law in the amended, now-operative complaint, he contends that the Court does not have federal question jurisdiction over the purely state-law claims in the amended complaint. (*See generally* ECF No. 47.) The defendants say that *Royal Canin* does not apply because the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else." (ECF No. 53 at 8 (emphasis in original).) Second, they assert that the state law claims in the amended complaint nonetheless arise under federal law because they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Id.* at 10 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).) Neither argument is persuasive.

"The federal district courts have 'original jurisdiction' of civil actions 'arising under' federal law; and unless otherwise provided by Congress, they have removal jurisdiction over 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting 28 U.S.C. §§ 1331, 1441(a)). Claims directly arise under "federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

As an initial matter, the defendants' argument that this case is distinguishable from *Royal Canin* because the plaintiff removed federal claims, not just references to federal law, is unconvincing. The relationship between federal law and state claims in *Royal Canin* is similar to

the one in this case. The *Royal Canin* complaint "alleged the [federal] violations not as independent federal claims, but instead in support of [the plaintiff's] state claims." *Royal Canin*, 604 U.S. at 29 n.1. The Eighth Circuit, citing *Gunn*, held that the state-law claims arose under federal law because those "provisions [were] thoroughly embedded in, and integral to the success of" the state law claims. *Id.* (citing *Wullschleger v. Royal Canin U. S. A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020)). The Supreme Court, however, took "a slight liberty throughout [the] opinion, referring to the original complaint's [federal] allegations simply as federal claims." *Id.* In other words, although Justice Kagan calls them federal claims, they were allegations that raised a federal question. Like Ms. Wullschleger, the plaintiff amended his complaint to remove citations to federal law, while retaining essentially the same causes of action. Thus, the facts are similar to the *Royal Canin* facts, and *Royal Canin* controls.

Nonetheless, the defendants maintain that *Royal Canin* does not apply to cases where a plaintiff's amended complaint "removed certain words" but otherwise "kept the factual premise of his claims intact, and . . . sought the same relief post-amendment that he had sought pre-amendment." (ECF No. 53 at 8.) In support of this proposed rule, they cite *Behlen*, 311 F.3d at 1095, where the Eleventh Circuit held that "it was proper for the court to retain jurisdiction over [the plaintiff's] amended complaint, because, despite his removal of the allegations that would bring his claims within the scope of the [federal law], the amended complaint still presents a federal question." The Eleventh Circuit explained that the amended complaint continued to allege that the defendant violated federal securities laws, even though the plaintiff no longer cited those statutes; and merely removing citations to federal law did not erase the federal question. *Id.* at 1095–96.

*Royal Canin* did not necessarily abrogate this holding, but the defendants' proposed rule does not follow from the quoted language. According to the defendants, the amended complaint still asserts federal causes of action, even though it does not allege any violations of federal law. (ECF No. 53 at 8–9.) Accepting the defendants' theory would require the Court to read a federal cause of action into the amended complaint, which it will not do. *See Royal Canin*, 604 U.S. at 35 (the plaintiff is the "master of the complaint" and "gets to determine which substantive claims to bring against which defendants"). After all, the Court would not allow the plaintiff to recover under a federal cause of action when his amended complaint does not state one; nor will the Court read a federal claim into the complaint to exercise jurisdiction.[11]

The better reading of *Behlen* accords with the defendants' next argument — that even if the plaintiff asserts only state-law claims, those claims still arise under federal law. (*Id.* at 10 (quoting *Grable*, 545 U.S. at 314).) In addition to cases that arise directly under federal law, "the Supreme Court has identified a 'special and small' category of actual state claims that present significant, disputed issues of federal law," and therefore arise under federal law within the meaning of § 1331. *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 912 (2d Cir. 2024) (citation omitted). "For a state law claim to fall within this 'slim category,' the embedded federal issue must be '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

---

[11] In claiming that the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else" (ECF No. 53 at 8 (emphasis in original)), the defendants may mean to argue that the plaintiff impermissibly "disguise[s] . . . inherently federal cause[s] of action, to block removal." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3722.1. In other words, the defendants might be saying that the plaintiff's state constitutional claims are inherently federal causes of action — under 42 U.S.C. § 1983, for instance — because, as discussed below, no cause of action exists under state law. To credit this position, however, the Court would have to rewrite the plaintiff's complaint to find a viable federal cause of action that does not appear on the face of the complaint. That is not the Court's job. *See, e.g.*, *Adams v. Gen. Motors Acceptance Corp.*, 307 F. Supp. 2d 812, 817 (N.D. Miss. 2004) (remanding and rejecting defendant's argument that because state law provided no cause of action, the plaintiffs' claims must be construed as federal claims).

capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn*, 568 U.S. at 258); *see also Grable*, 545 U.S. at 314.

*i.* *Necessarily Raised*

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) (quoting *Jacobson*, 824 F.3d at 315). "For a federal issue to be necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Id.* (emphases in original) (internal quotations and citations omitted). "In other words, federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case." *Tantaros*, 12 F.4th at 141. The Second Circuit has instructed district courts to "[f]ocus[] on 'what necessarily appears in the plaintiff's statement of his own claim,'" and "exercise federal jurisdiction only if 'a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (alterations adopted) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

The plaintiff alleges in the amended complaint that the defendants violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution, by executing this Court's orders. (ECF No. 26 ¶¶ 17–26, 30–35.) The plaintiff attached to his amended complaint two affirmations of service that say that the defendants executed the search pursuant to this Court's seizure order. (ECF No. 26-1, Ex. C, at 8–9; ECF No. 26-1, Ex. D, at 10–12.) The plaintiff's state constitutional claims are, therefore, premised on the defendants' execution of an

order issued from this Court pursuant to a federal statute, 15 U.S.C. § 1116(d).[12] In other words, to establish that the search violated the Florida constitution, the plaintiff must prove either that the Court's asset freeze and seizure orders were improper or that they were illegally executed. Both are questions of federal law and are necessarily raised by the plaintiff's claims under the state constitution.

But these federal questions would not necessarily arise if the plaintiff does not have a cause of action, because then they are not "an element . . . of the plaintiff's cause of action." *Tantaros*, 12 F.4th at 141. That is the case here, because as the defendants point out, "no cause of action exists for money damages for a violation of a state constitutional right" in Florida. *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th Dist. Ct. App. 2004) (citing *Garcia v. Reyes*, 697 So.2d 549 (Fla. 4th Dist. Ct. App. 1997)). *See also Cowans v. Maximus Educ. LLC*, No. 4D2025-0235, 2025 WL 2055134, at *1 (Fla. 4th Dist. Ct. App. July 23, 2025) ("[I]t does not appear that article I, section 23 gives rise to a cause of action for money damages."); *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st Dist. Ct. App. 1994) (holding that it is "clear that article I, section 23 does not create a cause of action for 'governmental intrusion' because legislative enactment is needed to delineate whether immunity is waived to permit the award of money damages")*, approved,* 670 So. 2d 56 (Fla. 1996); *Funderburk v. O'Leary*, No. 21-CV-14290, 2023 WL 3491221, at *5 (S.D. Fla. May 17, 2023) ("Plaintiff will not be permitted to seek damages for violations of the Florida Constitution." (collecting cases)); *Lindbloom v. Manatee Mem'l Hosp., L.L.C.*, No. 23-CV-2856, 2025 WL 1563550, at *7 (M.D. Fla. Apr. 7, 2025) ("Florida state and federal courts have held that 'Florida constitutional claims do not support claims for damages absent a separate enabling statute.'" (internal citation omitted))*, report and*

[12] The defamation claims do not arise under federal law, and the defendants do not argue that they do.

*recommendation adopted*, 2025 WL 1450371 (M.D. Fla. May 21, 2025); *Ayala v. City of Pembroke Pines*, No. 25-CV-60294, 2025 WL 2202101, at *3 (S.D. Fla. June 27, 2025) ("[N]o cause of action exists for monetary relief for a violation of a Florida constitutional right."); *Capps v. Fla. Highway Patrol*, No. 17-CV-60365, 2017 WL 1436077, at *7 (S.D. Fla. Apr. 24, 2017) (collecting cases); *Smith v. Bell*, No. 06-CV-60750, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself." (collecting cases)). Accordingly, because the plaintiff has no private right to raise the federal issues, those issues are not necessarily raised on the face of the plaintiff's complaint, and this case does not arise under federal law.

In an abundance of caution, however, and because the Court could construe the plaintiff's constitutional claims as a tort claim for invasion of privacy that necessarily raises these federal questions, the Court continues the *Gunn-Grable* analysis. *See Percival v. Chronister*, No. 23-CV-1243, 2025 WL 1940316, at *17 (M.D. Fla. July 15, 2025) (construing *pro se* claim "incorrectly ground[ed]" in the Florida Constitution as "one for an invasion of privacy"); *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980) (holding that "Florida has recognized the tort of invasion of privacy," at least in cases of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home").

*ii. Actually Disputed*

Assuming federal questions necessarily arise in the state law claims, those questions — the legality of the Court's orders and the defendants' execution of those orders, in this case — are a "central point of dispute" in the action, "satisfying the second requirement for the exercise of federal jurisdiction in this case." *Link Motion Inc.*, 103 F.4th at 913 (quoting *Gunn*, 568 U.S. at 259).

*iii. Substantial*

"Nevertheless, as the Supreme Court has cautioned, 'the mere presence of a [disputed] federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Id.* (alteration in original) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). The dispute must also be substantial. To satisfy this requirement "'it is not enough that the federal issue be significant to the particular parties in the immediate suit'; rather, 'the substantiality inquiry looks instead to the importance of the issue to the federal system as a whole.'" *Id.* (cleaned up) (quoting *Gunn*, 568 U.S. at 260). "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (alteration in original) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). For example, the Supreme Court and Second Circuit have exercised federal question jurisdiction where state law claims raise "disputes over the meaning of a federal tax law, the scope of an Internal Revenue Code regulation, and the duties imposed by the Securities Exchange Act." *Id.*

*Grable* is instructive on this point. In that case, the Internal Revenue Service seized Grable & Sons Metal Products' property and sold it to satisfy its federal tax debt. *Grable*, 545 U.S., at 310–311. The company filed a state law quiet title action against the third party that bought the property, alleging that the IRS had not complied with statutory notice requirements, so the seizure and sale were invalid. *Id.* at 311. The Supreme Court emphasized that the federal government has a "strong interest" in the collection of delinquent taxes, and "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* at 315

In this case, the plaintiff challenges the Court's authority to issue asset freeze and seizure orders under the Lanham Act. Although Congress granted concurrent jurisdiction to state and federal courts over claims under the Lanham Act, 28 U.S.C. § 1338(a), a court must construe the

statute "in the light of a strong federal policy in favor of vigorously competitive markets." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997). To that end "Congress recognized that a trademark aids competition in the marketplace because it helps a consumer distinguish among competing products." *Id.* (citation omitted). These important federal policies are at issue in this case. This is a close call, but this case could raise sufficiently substantial issues that implicate the whole federal system to support jurisdiction.

*iv. Disruption to the Federal-State Balance*

But even if the plaintiff's "state action necessarily raises a disputed and substantial issue of federal law," the Court would still not have federal question jurisdiction, because "federal jurisdiction lies only if adjudication in a federal forum would be consistent with the 'congressionally approved balance of state and federal judicial responsibilities,' defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'" *Tantaros*, 12 F.4th at 146 (quoting *Jacobson*, 824 F.3d at 316). "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Jacobson*, 824 F.3d at 316.

In this case, however, Florida has a special interest in the claims the plaintiff makes: violations of the state constitution. "It is fundamental . . . that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010) (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940). Even if substantial federal issues are at stake in this case, so are core state interests. The plaintiff's state-law claims, therefore, are outside of the Court's federal question jurisdiction under *Grable* and *Gunn*.

* * *

Accordingly, this case does not fall within the narrow category of cases in which purely state-law claims support jurisdiction under § 1331.

**d. Diversity Jurisdiction**

In the alternative, the defendants argue the Court has diversity jurisdiction under § 1332. "Congress has always given federal courts power to decide 'diversity' cases." *Royal Canin*, 604 U.S. at 26 (citing 28 U.S.C. § 1332(a)). Federal courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different [s]tates." 28 U.S.C. § 1332(a). The parties do not dispute that they are completely diverse. Therefore, the Court has diversity jurisdiction if the amount in controversy exceeds $75,000.

Courts determining whether they have diversity jurisdiction adhere to the "time-of-filing" rule, which "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the complaint] — whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). The *Royal Canin* Court reaffirmed this rule as applied to questions concerning "the actual 'state of things' relevant to jurisdiction — meaning, the facts on the ground, rather than (as addressed [in *Royal Canin*]) the claims and parties that the plaintiff includes in a complaint." *Royal Canin*, 604 U.S. at 36 n.5. The Court observed that courts typically evaluate a party's citizenship and the amount in controversy as of the time the plaintiff files the original complaint. *Id.* at 36 n.5, 38 n.8.

As to the amount in controversy, the Court offered two reasons that "an amendment reducing the alleged amount-in-controversy to below the statutory threshold . . . will usually not

destroy diversity jurisdiction." *Id.* at 38 n.8; *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). The first is that "the value of a suit" concerns "facts on the ground," as opposed to the plaintiff's decision as master of the complaint in choosing the parties and claims, so the Court "viewed it as analogous to the time-of-filing rule applying to citizenship, which also assesses a factual issue relevant to jurisdiction only at the suit's outset." *Royal Canin*, 604 U.S. at 38 n.8. Second, assessing a suit's value poses unique difficulties, because it is likely "that the calculation will change over the course of litigation," which could inspire "constant litigation" and "alter a court's jurisdiction." *Id.* Therefore, the Court looks to the original complaint to determine the amount in controversy.

The removing defendants must show a "reasonable probability that the jurisdictional amount has been reached." *Cappuccilli v. Cokinos*, No. 24-CV-3045, 2024 WL 3013604, at *1 (E.D.N.Y. June 14, 2024) (citation omitted). "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 273–74 (2d Cir. 1994). "In determining whether the removing defendant has met this burden, courts 'look first to the plaintiffs' complaint and then to [the defendants'] petition for removal.'" *Gregory Wayne Designs, LLC v. Lowry*, No. 24-CV-2109, 2024 WL 3518584, at *3 (S.D.N.Y. July 24, 2024) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). If neither in conclusive, "courts may look outside those pleadings to other evidence in the record." *Id.* (quoting *United Food & Com. Workers Union*, 30 F.3d at 305).

The plaintiff does not allege a specific damages amount in the state court complaint. Instead, he claims that the damages exceed $50,000.00, which is the jurisdictional threshold for circuit courts in Florida. (ECF No. 1-1 ¶ 12; ECF No. 18 at 10 (citing Fla. Stat. Ann § 34.01).) This allegation does not support federal jurisdiction because it "merely indicates an amount in controversy in excess" of a jurisdiction limit that is below $75,000. *De Garcia v. Tropicana Ent. Inc.*, No. 22-CV-12, 2022 WL 375996, at *2 (E.D.N.Y. Feb. 8, 2022) (quoting *Valente v. Garrison From Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *1 (E.D.N.Y. Jan. 11, 2016)) (collecting cases); *see also O'Neill v. Target Corp.*, No. 21-CV-3262, 2021 WL 2634880, at *2 (E.D.N.Y. June 25, 2021); *Williams v. CVS*, No. 25-CV-655, 2025 WL 486656, at *2 (E.D.N.Y. Feb. 13, 2025).

Nor do the plaintiff's "boilerplate" allegations of his injuries "suffice to establish that this action involves an amount in controversy adequate to support federal diversity jurisdiction." *Mekhi v. Area Storage & Transfer, Inc.*, No. 18-CV-4654, 2018 WL 4043152, at *2 (E.D.N.Y. Aug. 24, 2018) (citation omitted) (collecting cases). The plaintiff pleads five causes of action.[13] For his state constitutional claims, he alleges he "suffered damages, including emotional distress, invasion of privacy, and other harm" and "demands [j]udgment for damages [and] punitive damages." (ECF No. 1-1 ¶¶ 32, 35, 38.) For his defamation claims, he alleges he "suffered damages, including damage to reputation, emotional distress, and other harm" and "demands [j]udgment for damages [and] punitive damages." (*Id.* ¶¶ 42, *id.* at 10.) These "conclusory assertions . . . lack of any detail regarding Plaintiff's specific damages," and "there is simply insufficient information to 'intelligently ascertain removability.'" *Mekhi*, 2018 WL 4043152, at

[13] He probably pleads just two cognizable causes of action. (*See* ECF No. 18 at 13 (arguing that only the libel and slander claims are even "superficially *cognizable* against private actors such as Defendants" (emphasis in original).)

*2 (quoting *DeMarco v. MGM Transp., Inc.,* No. 06-CV-307, 2006 WL 463504, at *1 (E.D.N.Y. Feb. 24, 2006)); *see also Herlihy v. Hyatt Corp.*, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022) ("[G]eneralized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met." (collecting cases)).

The defendants maintain, however, that each claim, if proven, is "likely to result in damages far in excess of $75,000," because "jury awards in defamation cases regularly exceed" that amount. (ECF No. 53 at 12; ECF No. 18 at 9–16.) But just because jury awards may exceed the amount in controversy does not mean that they must — or that they do in this case. Moreover, post-trial jury awards offer little guidance on the amount in controversy of claims before any motion practice or discovery. For these reasons, courts in this circuit routinely disregard comparisons to jury verdicts in determining the amount in controversy for jurisdictional purposes. *See, e.g.*, *Jean-Louis v. Amazon.com Servs., LLC*, No. 22-CV-5020, 2022 WL 3867668, at *3 (E.D.N.Y. Aug. 29, 2022) ("[C]onsidering the procedural posture of this case, [the defendant's] reliance on cases — decided post-trial — discussing at length evidence of a relentless stream of discrimination and taunting that spanned many years is misplaced."); *Salerno v. N. Manor Multicare Facility*, No. 21-CV-7490, 2021 WL 4148900, at *2 (S.D.N.Y. Sept. 13, 2021) (declining to rely on "cases *reviewing* jury verdicts for emotional damages" in determining amount in controversy because of the difference in "procedural posture" (emphasis in the original)).

The defendants also point to the plaintiff's request for punitive damages, which they state may be "up to three times actual damages or $500,000, whichever is higher." (ECF No. 53 at 12.) "[I]n computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (alteration adopted) (citation omitted). The complaint does not allege any facts that would support "reasonable probability" that the plaintiff would be entitled to punitive damages; the "conclusory assertion that any amount of punitive damages is a *fait accompli* is untethered to the record and amounts to the kind of speculation and surmise that courts in this Circuit routinely reject." *Jean-Louis*, 2022 WL 3867668, at *4.

The defendants' notice of removal does not satisfy their burden either. They plead that "the amount in controversy in this action — as pled — plausibly exceeds $75,000." (ECF No. 1 ¶ 16.) This conclusory assertion is similarly not conclusive or controlling. *Gregory Wayne Designs, LLC*, 2024 WL 3518584, at *4. The defendants cannot "rely[] on inferences drawn from the Complaint," because it does not allege any facts about the nature or extent of the plaintiff's harm. *Herrera v. Terner*, No. 16-CV-4610, 2016 WL 4536871, at *2 (E.D.N.Y. Aug. 30, 2016); *see also Shoham v. United Airlines, Inc.*, No. 22-CV-5677, 2022 WL 13798296, at *2 (E.D.N.Y. Oct. 21, 2022) (remanding personal injury claims because the "boilerplate pleadings" could not establish an amount in controversy supported federal jurisdiction).

Without any factual allegations about the plaintiff's injuries to support jurisdiction, the defendants must look outside the pleadings. They cite the state court civil cover sheet that the plaintiff filed with his complaint. (ECF No. 1-1 at 2.) On this administrative form, the plaintiff "estimated [the] amount of the claim, rounded to the nearest dollar" at "over $100,000.00." (*Id.*) However, the Court declines to rely on this document as affirmative evidence of the actual amount in controversy. The civil cover sheet states on its face that it "neither replace[s] nor supplement[s] the filing . . . of pleadings" and is required by "the Clerk of Court for the purpose of reporting uniform data pursuant" to state law. (*Id.*) The amount of claim question narrows its

use even further: It is "for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose." (*Id.*) Indeed, courts have held that a plaintiff's answers on the civil cover sheet cannot establish diversity jurisdiction. *Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); *Galloway v. Ahamed*, No. 22-CV-979, 2022 WL 3107330, at *5 (D. Conn. Aug. 4, 2022) (checking box on civil cover sheet is not sufficient to prove the amount in controversy exceeds the jurisdictional threshold); *Powell v. Maldonado*, No. 23-CV-826, 2024 WL 496478, at *4 (E.D.N.Y. Feb. 7, 2024) (checking boxes on civil cover sheet does not establish parties are diverse). This is especially true in the context of removal, because "federal courts construe the removal statute narrowly, resolving any doubts against removability," *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).

* * *

Accordingly, the Court lacks federal jurisdiction over this action, and it must remand the case. *See* 28 U.S.C. 1447(c).

### III. Remand to Florida State Court

"[W]hen an action is transferred, it remains what it was." *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.). "[A] transferee court is deemed to inherit all the authority of a transferor court." *Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 271 (3d Cir. 2002) (holding that "a court has authority to send a case back to the state court where it originated" and "does not have authority to 'remand' a case to a stranger court"). This includes the authority to remand the case to the state court where the case originated. *See, e.g.*, *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir.

2002) (declining to review order remanding case to the Florida Circuit Court for lack of federal subject matter jurisdiction); *Parker v. J. Crew Grp., Inc.*, No. 17-CV-1214, 2018 WL 385033, at *2 (D.N.J. Jan. 11, 2018) (remanding transferred case to Illinois state court); *Retterath v. Homeland Energy Sols., LLC*, No. 14-CV-158, 2014 WL 7776705, at *10 (S.D. Iowa Dec. 24, 2014) (remanding transferred case to Florida state court).

Indeed, the Court has no other option. The removal statute contemplates that courts may remand a case only "to the State court from which it was removed." 28 U.S.C. 1447(c). Courts have repeatedly followed this reasoning and "held that a district court is only permitted to remand a case to the state court from which the case was removed." *Salis v. Manzanet-Daniels*, No. 24-CV-1130, 2025 WL 1305868, at *4 (N.D.N.Y. May 6, 2025) (collecting cases). The Court must remand the case if it does not have subject matter jurisdiction, and there is only one court to which remand is permissible. Accordingly, this case is remanded to the First Judicial Circuit Court of Florida, the court from which it was removed.

## CONCLUSION

For the foregoing reasons, the case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 30, 2025

CLOSED,DJI,NPROSE,TransferredOutCase-DoNotDocket

EXHIBIT B

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:25-cv-00393-AMD-JAM

Levitan v. Patterson Belknap Webb & Tyler LLP et al
Assigned to: Judge Ann M. Donnelly
Referred to: Magistrate Judge Joseph A. Marutollo
related Case: 1:21-cv-04106-AMD-JAM
Case in other court: Florida Northern, 3:24-cv-00475
Cause: 28:1332 Diversity-Libel,Assault,Slander

Date Filed: 01/23/2025
Date Terminated: 09/30/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**John D. Levitan, Sr.**

represented by **John D. Levitan, Sr.**
511 Windrose Circle
Pensacola, FL 32507
850-497-2724
Email: jdlsr@gileadfraud.com
PRO SE

V.

**Defendant**

**Patterson Belknap Webb & Tyler LLP**

represented by **Hannah Eleanor Murphy**
STEARNS WEAVER MILLER - TALLAHASSEE FL
106 E COLLEGE AVENUE
SUITE 700
TALLAHASSEE, FL 32301
850-354-7629
Email: hmurphy@stearnsweaver.com
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
Patterson Belknap Webb & Tyler LLP
1133 Ave of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: gpotter@pbwt.com
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
Patterson Belknap Webb & Tyler
1133 Avenue Of The Americas
New York, NY 10036
(212)336-2000
Fax: (212)336-2222

Email: tkurland@pbwt.com
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: twaters@pbwt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Geoffrey Potter** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timothy Alan Waters** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Aron Fischer** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joshua Stein** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas P Kurland** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gilead Sciences Inc.** represented by **Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gilead Sciences Ireland UC** represented by **Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2024 | 1 | NOTICE OF REMOVAL by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER from FIRST CIRCUIT COURT, ESCAMBIA COUNTY, case number 2024-CA-001164. ( Filing fee $ 405 receipt number BFLNDC-9078434.), filed by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER. (Attachments: # 1 Exhibit, # 2 Exhibit NY RELATED CASE DOCKET, # 3 Civil Cover Sheet) (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/03/2024 | 2 | Corporate Disclosure Statement/Certificate of Interested Persons by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/04/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal (please see proposed |

| | | |
|---|---|---|
| | | ISO). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/04/2024) |
| 10/07/2024 | 3 | MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* by PATTERSON BELKNAP WEBB & TYLER LLP. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/07/2024) |
| 10/07/2024 | | Set Deadlines re 3 MOTION to Stay and TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **10/21/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/08/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/14/2024 | 4 | MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/14/2024) |
| 10/15/2024 | | Set Deadlines re 4 MOTION to Expedite. (Internal deadline for referral to judge if response not filed earlier: **10/29/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/15/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 4 MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/16/2024 | 5 | ORDER re 4 MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY. The motion is GRANTED in part and DENIED in part. Defendants' deadline to respond to Plaintiff's Complaint is extended until 10 days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024. (Plaintiff's response to Defendant's MOTION to Stay remains **10/21/2024)**. Defendant's deadline to respond due by **10/31/2024**.) Signed by JUDGE M CASEY RODGERS on 10/16/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/16/2024) |
| 10/17/2024 | 6 | Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc., by JOHN D LEVITAN, SR (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 6 Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc.. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/21/2024 | 7 | Motion to Remand State Court Case No. 2024-CA-001164 and Incorporated Memorandum of Law, by JOHN D LEVITAN, SR. (alb) Modified on 1/3/2025 to term re 28 ORDER. (mb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |

| | | |
|---|---|---|
| 10/21/2024 | 8 | MOTION to File Pleadings Through the ECF/ECM System PACER by JOHN D LEVITAN, SR. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION NO LONGER REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. (alb) Modified on 10/22/2024 (alb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. Referred to ZACHARY C BOLITHO. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | 9 | MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW by JOHN D LEVITAN, SR. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 9 MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. Referred to ZACHARY C BOLITHO. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 10 | ORDER re 9 Motion for Enlargement of Time to Reply to MOTION to Stay and Transfer Proceedings. Plaintiff's motion is GRANTED to the extent that his response to Defendants' motion to stay and transfer proceedings (Doc. 3 ) is due on or before November 6, 2024. Plaintiff is advised that no further extensions of this deadline will be granted. (Internal deadline for referral to judge if response to Defendant's Motion not filed earlier: **11/6/2024)**.) Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 11 | ORDER. Plaintiff's "Request to File Pleadings Through the ECF/ECM System PACER" (Doc. 8 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/25/2024 | 12 | Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law, by JOHN D LEVITAN, SR. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 12 Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | 13 | ORDER denying 12 Motion for Reconsideration. That Plaintiff's Motion for Reconsideration (Doc. 12 ) is DENIED. If Plaintiff's travel plans interfere with his ability to meet a Court deadline, Plaintiff may file a motion seeking an extension of any such deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/28/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |

| | | |
|---|---|---|
| 11/01/2024 | 14 | Corporate Disclosure Statement/Certificate of Interested Persons by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 15 | RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal,, *Consent to Removal*. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 16 | NOTICE *of Joinder in Motion to Stay and Transfer Proceedings* by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 17 | MOTION to Hold Deadline for Responding to Complaint in Abeyance by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/04/2024 | 18 | MEMORANDUM in Opposition re 7 MOTION to Remand to State Court filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal, Consent to Removal. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 NOTICE of Joinder in Motion to Stay and Transfer Proceedings by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 18 MEMORANDUM in Opposition re 7 MOTION to Remand to State Court. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | 19 | ORDER re 17 Motion to Hold Deadline for Responding to Complaint in Abeyance. The motion (Doc. 17 ) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that Defendants' deadline to respond to Plaintiff's complaint is HELD IN ABEYANCE. The new deadline for Defendants Gilead Sciences, Inc., and Gilead Sciences Ireland UC to respond to Plaintiff's complaint is ten days after the Court's ruling on Defendants' motion to stay and transfer (Doc. 3 ). Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. Plaintiff's deadline to respond to Defendants' motion to stay and transfer proceedings (Doc. 3 ) remains November 6, 2024. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/04/24. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |

| | | |
|---|---|---|
| 11/04/2024 | | Set Deadline re 19 ORDER - Internal deadline for referral to judge if response to 3 Motion not filed earlier: **11/6/2024)**. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/08/2024 | 20 | Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service, by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibit A). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 20 Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | 21 | REPORT AND RECOMMENDATION. Plaintiff's Motion to Remand to State Court (Doc. 7 ) be DENIED. This case be recommitted to the undersigned for further proceedings. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/12/2024. Internal deadline for referral to district judge if objections are not filed earlier: **12/10/2024**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/15/2024 | 22 | NOTICE *OF FILING AMENDED CERTIFICATES OF SERVICE* by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 18 Memorandum in Opposition to Motion, 15 Response/Reply, 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance , 16 Notice (Other), 14 Corporate Disclosure Statement/Certificate of Interested Persons (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 23 | RESPONSE in Opposition re 20 MOTION for Sanctions filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 24 | RESPONSE in Opposition re 3 MOTION TO STAY AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW filed by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 25 | MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 26 | PROPOSED FIRST AMENDED COMPLAINT against All Defendants., filed by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibits)(No service copies filed.) (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 22 DEFENDANTS' NOTICE OF FILING AMENDED CERTIFICATES OF SERVICE, 23 DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 26 Proposed Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME, 24 Response in Opposition to Motion. Referred |

| | | |
|---|---|---|
| | | to ZACHARY C BOLITHO. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/22/2024 | 27 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 26 Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition to Motion . (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/22/2024) |
| 11/25/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 27 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFF'S MOTION TO FILE AN OUT OF TIME RESPONSE AND AMENDED COMPLAINT. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/25/2024) |
| 12/11/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 21 REPORT AND RECOMMENDATION (No objections or responses filed). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/11/2024) |
| 12/31/2024 | 28 | ORDER adopting Magistrate Judge's 21 REPORT AND RECOMMENDATION. The Plaintiff's Motion to Remand to State Court, (Doc. 7 ), is DENIED. This case is recommitted to the magistrate judge for further proceedings. Signed by JUDGE M CASEY RODGERS on 12/31/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 12/31/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 28 Order. (Recommitted back to Magistrate Judge). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 01/06/2025 | 29 | ORDER - That Plaintiff's motion for sanctions (Doc. 20 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 30 | ORDER. Plaintiff's Motion to File Opposition to Defendants Motion to Stay and Transfer (Doc. 25 ) is GRANTED. Defendants' Motion to Stay and Transfer Proceedings (Doc. 3 ) is GRANTED to the extent that the Court will transfer this action. The Clerk of Court must TRANSFER this case to the U.S. District Court for the Eastern District of New York and close the file in this Court fifteen days from the date of this Order, unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 31 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | | Set Deadlines re STAY for transfer response deadline: **1/21/2025** re 30 ORDER. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/08/2025 | 32 | ACKNOWLEDGMENT re 31 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00101, filed 01/06/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |

| | | |
|---|---|---|
| 01/08/2025 | 33 | DOCKET ANNOTATION BY COURT: Re 32 Acknowledgment of Transfer - Case Manager to call back regarding premature transfer with instructions on how to proceed. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/08/2025 | 34 | NOTICE of Case 1:25-cv-00101-AMD-JAM removed from the docket due to premature transfer re 32 Acknowledgment, by EASTERN DISTRICT of NEW YORK. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: Set Deadlines re STAY for transfer response deadline: 1/21/2025 re 30 ORDER. (No responses filed by deadline - permission to TRANSFER). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/22/2025) |
| 01/23/2025 | 35 | Case transferred in from District of Florida Northern; Case Number 3:24-cv-00475. Original file certified copy of transfer order and docket sheet received. (Entered: 01/23/2025) |
| 01/23/2025 | 36 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | The case of **Levitan v. Patterson Belknap Webb & Tyler LLP et al**, has been transferred from **Northern District of Florida (Pensacola)** to the Eastern District of New York. The new case number is **25-cv-393**.<br>PLEASE NOTE: if you plan to continue representing your client(s), you must be admitted to practice before this court. You must do so by applying for Pro Hac Vice or permanent admission. To apply for Pro Hac Vice admission, you must first register for an ECF login and password. Please visit the Court's website at www.nyed.uscourts.gov/attorney-admissions for guidance. Once registered, you must electronically file a Motion to Appear Pro Hac Vice. You must pay the required pro hac vice fee online. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge Joseph A. Marutollo (as related to 21-cv-4106)for all further proceedings. Magistrate Judge Peggy Kuo no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.Ordered by Chief Judge Margo K. Brodie on 1/23/2025. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | 37 | NOTICE of Appearance by Geoffrey Potter on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Potter, Geoffrey) (Entered: 01/23/2025) |
| 01/23/2025 | 38 | NOTICE of Appearance by Timothy Alan Waters on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Waters, Timothy) (Entered: 01/23/2025) |

| | | |
|---|---|---|
| 01/23/2025 | 39 | NOTICE of Appearance by Thomas Philip Kurland on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Kurland, Thomas) (Entered: 01/23/2025) |
| 01/24/2025 | 40 | SCHEDULING ORDER: A telephonic initial conference will be held on February 19, 2025 at 4:00 p.m. before Magistrate Judge Joseph A. Marutollo. To participate in the conference, the parties shall dial (646) 828-7666; Meeting ID: 161 018 4647; Passcode: 455895. The parties must complete the attached proposed Discovery Plan and Scheduling Order and file it on ECF no later than February 14, 2025. Plaintiff is directed to ensure that all Defendants are aware of this conference. Counsel with knowledge of the case must attend the conference; *per diem* counsel may not appear without prior permission of the Court. The parties are directed to review this Court's Individual Practices and Rules in advance of the conference. The Clerk of Court is directed to mail copy of this order to the plaintiff. Ordered by Magistrate Judge Joseph A. Marutollo on 1/24/2025. (Attachments: # 1 Individual Practices and Rules) (EG) (Entered: 01/24/2025) |
| 01/29/2025 | 41 | MOTION to Withdraw as Attorney *as to Hannah E. Murphy, Esq. to be Relieved as Counsel for Defendants* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER granting 41 Motion to Withdraw as Attorney. Attorney Hannah Eleanor Murphy terminated. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2025. (JAM) (Entered: 01/29/2025) |
| 01/31/2025 | 42 | MOTION to Dismiss by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Attachments: # 1 Memorandum in Support) (Kurland, Thomas) (Entered: 01/31/2025) |
| 02/11/2025 | 43 | Letter MOTION to Stay by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/11/2025) |
| 02/11/2025 | | ORDER: Plaintiff shall respond to 43 by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/11/2025. (GWM) (Entered: 02/11/2025) |
| 02/13/2025 | | ORDER: The Court received a voicemail from pro se Plaintiff. In light of Plaintiff's representation to chambers that he is experiencing delays in receiving and sending docket filings, the Court *sua sponte* extends the deadline to respond to 43 to February 20, 2025. Plaintiff is reminded that future correspondence with the Court shall be made on the public docket. Defendants shall serve a copy of this order on Plaintiff and file proof of service on the docket by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (EG) (Entered: 02/13/2025) |
| 02/13/2025 | 44 | Letter *to Judge Marutollo in response to the Court's February 13, 2025 order* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (Kurland, Thomas) (Entered: 02/13/2025) |
| 02/13/2025 | | ORDER: In light of the Court's extension of Plaintiff's deadline to respond to the 43 motion, the initial conference and all associated deadlines are adjourned *sine die*, pending resolution of the motion to stay. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (GWM) (Entered: 02/13/2025) |

| | | |
|---|---|---|
| 02/13/2025 | 45 | MOTION for leave to allow Pro Se to Electronically File by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 46 | MOTION to Amend/Correct/Supplement *Plaintiff's Motion to Supplement the record transferred from the Northern District of Florida* by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 47 | Plaintiff's Objections to Order Transferring Case, Motion for Reconsideration of Order Denying Remand to State Court and Notice of Intervening Decision in Royal Canin U.S.A., Inc. et al. v. Wullschleger et al. 604 U.S. (2025) filed by John D Levitan, Sr., plaintiff pro se. (RG) (Entered: 02/14/2025) |
| 02/14/2025 | 48 | AFFIDAVIT of Service for February 13, 2025 Order's served on pro se Plaintiff on February 14, 2025, filed by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/14/2025) |
| 02/14/2025 | 49 | MOTION to Remand to State Court by John D Levitan, Sr. (RG) (Entered: 02/18/2025) |
| 02/14/2025 | 50 | NOTICE: Request for Judicial Default against GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC PATTERSON BELKNAP WEBB & TYLER LLP (PBWT),GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND. **Please note advised pro se dept that plaintiff did not file properly, cannot file a default without the request for clerk's notation first. (RG) (Entered: 02/19/2025) |
| 02/14/2025 | 51 | MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery* by John D Levitan, Sr. (RG) (Entered: 02/19/2025) |
| 02/18/2025 | | ORDER: Defendants shall respond to 49 by February 26, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) (Entered: 02/18/2025) |
| 02/18/2025 | | ORDER granting 45 . Pro se Plaintiff shall register for ECF, registration is available online at www.pacer.gov. Should Plaintiff encounter any difficulty registering for PACER, he may contact CM/ECF Docketing and Filing at 718-613-2610. The Clerk of the Court shall provide the pro se Plaintiff with a copy of this Electronic Order. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) Modified on 2/18/2025 to indicate C/M. (EG). (Entered: 02/18/2025) |
| 02/19/2025 | | ORDER: In light of the procedural posture of this case, the parties shall indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action, including a (jury or nonjury) trial and to order the entry of a final judgment, by **February 28, 2025**. The consent form should be filled out, signed and filed electronically only if all parties wish to consent. The form may also be accessed at the following link: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. The parties may withhold consent without adverse substantive consequences. Do NOT return or file the consent form unless all parties have signed the consent. Ordered by Magistrate Judge Joseph A. Marutollo on 2/19/2025. (EG) (Entered: 02/19/2025) |
| 02/24/2025 | 52 | Request for Certificate of Default by John D. Levitan, Sr, plaintiff pro se. (RG) (Entered: 02/25/2025) |
| 02/26/2025 | 53 | MEMORANDUM in Opposition re 47 Reply in Opposition, 49 MOTION to Remand to State Court *Defendants' Omnibus Memorandum of Law in Opposition to Plaintiff's Motion to Reconsider Denial of Remand or in the Alternative to Transfer this Case to the Northern District of Florida, and to Proceed with Discovery* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler |

| | | |
|---|---|---|
| | | LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/26/2025) |
| 02/28/2025 | 54 | REPLY in Support re 42 MOTION to Dismiss , 43 Letter MOTION to Stay , RESPONSE in Opposition re 51 MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery Defendants' Omnibus Memorandum of Law Replying in Support of Defendants' Motions to Dismiss and Stay and Opposing Plaintiff's Motion to Strike* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/28/2025) |
| 03/03/2025 | | ORDER: The parties were ordered to indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action by February 28, 2025. No such document was filed on the docket. Defendants shall file either a completed consent form or a letter indicating that the parties do not consent to Magistrate Judge jurisdiction by March 3, 2025, at 5:00 p.m.<br>The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf. The parties may withhold consent without adverse substantive consequences. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (EG) (Entered: 03/03/2025) |
| 03/03/2025 | 55 | Letter *to Judge Marutollo from Thomas P. Kurland re: Magistrate Judge Consent* by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters (Kurland, Thomas) (Entered: 03/03/2025) |
| 03/03/2025 | | ORDER granting 43 . The Court GRANTS Defendant's motion to stay discovery until their motion to dismiss is resolved. "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Salese v. JP Morgan Chase & Co.* , No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.* , 299 U.S. 248, 254 (1936)). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: (1) whether the Defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *Amron v. 3M Minnesota Mining & Manufacturing Co.* , No. 23-CV-8959 (PKC) (JMW), 2024 WL 263010, at *2 (E.D.N.Y. Jan. 24, 2024) (citation and quotation marks omitted).<br><br>Here, applying these factors, the Court finds that a stay is warranted. *See Johnson v. N.Y. Univ. Sch. of Educ.* , 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[A] stay of discovery is appropriate [ ] where the motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law." (citation omitted)).<br><br>All discovery is stayed pending resolution of the dispositive motion currently pending before the Court. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (GWM) (Entered: 03/03/2025) |
| 09/30/2025 | 56 | MEMORANDUM AND ORDER. The case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court. Ordered by Judge Ann M. Donnelly on 9/30/2025. (DG) (Entered: 09/30/2025) |

**PACER Service Center**

**Transaction Receipt**

| 11/09/2025 14:31:34 | | | |
|---|---|---|---|
| **PACER Login:** | jdlevitan | **Client Code:** | Gilead |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00393-AMD-JAM |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

# John D. Levitan, Sr.

December 4, 2025

VIA ELECTRONIC MAIL

The Honorable Jennifer J. Frydrychowicz
Circuit Court Judge
M.C. Blanchard Judicial Building
190 W. Government Street Pensacola, FL 32502
Hayley.Faulkner@flcourts1.gov

RE: John D. Levitan, Sr. v. Gilead Sciences, Inc., Et al., Case No. 2024 CA 001164

Dear Judge Frydrychowicz:

Plaintiff respectfully submits this response to Defendants' December 4, 2025 correspondence requesting a briefing order on their Motion to Stay Discovery.

1. Defendants' Assertions Regarding Plaintiff's "Unavailability" Are False and Misleading

Defendants contend that Plaintiff represented he was "unavailable until June 2026." That statement is wholly inaccurate. Plaintiff simply advised the Defendants counsel that plans had been made to be in the Middle East during that period and that communication of the sort to the Court on this matter from there could cause significant repercussions to the Plaintiff's health and safety.

Plaintiff did the following:

- Plaintiff to select hearing dates from a table of the Court's available times and he has done so. Defendants have advised the Plaintiff to select dates from the list given to him of an email provided by the Judicial Assistant. Defendants' counsel advised they were highlighted for Defendants availability. There was no highlight on the copy received by the Plaintiff so he selected available times from the list provided.
- Plaintiff remains "on-call" for international flights to the Middle East as part of ongoing company operations, involving matters that cannot be publicly disclosed, which sometimes requires short-notice travel outside the country.
- Plaintiff previously notified the Court that he is in the process of securing counsel for this case — a fact Defendants also omit.

Any temporary scheduling uncertainty has been expressly to accommodate the Court and counsel availability — not to delay the case. Plaintiff has never refused nor sought to postpone a hearing where he would be available. Even at one point to save the Court's time Plaintiff tried to

cancel a hearing on an objection the conflict of counsel but Defendants demanded to waive the objection and hold a hearing on it anyway.

Defendants' selective characterizations are yet another example of a consistent pattern of misrepresenting Plaintiff's circumstances to portray him as uncooperative or evasive. This tactic has been the norm throughout their filings and communications.

2. Plaintiff Has Pending Motions That Must Be Resolved First

Before Defendants' Motion to Stay, Plaintiff timely filed a Motion for Judicial Default based on an almost one-year delay in failing to answer the Amended Complaint as Ordered by the US District Court for the Northern District of Florida. That Answer ruled by the USDC-NDFLA was to be on or before January 17, 2025. Defendants refused and failed to abide by that Court Order.

Plaintiff filed a Motion to Strike Defendants' Motion to Dismiss. This motion directly challenges the validity and propriety of Defendants' motion practice. Defendants cannot rely on their Motion to Dismiss as a basis for a stay while simultaneously ignoring the pending motions attacking that very filing. But even more importantly this is Defendant's second Motion to Dismiss filed in the case.

3. Plaintiff's Discovery Requests Are Proper, Proportional, and Central to the Claims

Defendants characterize Plaintiff's interrogatories as a "mountain of discovery" requiring extraordinary effort and expense.

However: The requests are directly and narrowly tailored to each Defendants' own accusations against Plaintiff. Defendants have possessed and previously used this information in litigation and media communications. Proportionality weighs overwhelmingly in Plaintiff's favor due to the reputational and financial harm inflicted on him by a significant set of lies that are false and then to make it appear that these allegations were true the very attorneys representing the Defendants in the New York swore their own affidavits without any verified evidence to do so. There is no cognizable basis to prevent Plaintiff from obtaining the evidence necessary to substantiate his claims.

4. A Stay Would Reward Obstruction and Cause Severe Prejudice

Defendants have: (i) Initiated years of litigation accusing Plaintiff of illegal conduct that is untrue; (ii) Disseminated those allegations to the public; and Attempted to block every effort by Plaintiff to obtain the underlying evidence to prove the facts of this case.

Staying discovery while Defendants continue their public-relations and litigation assault would substantially and unfairly harm Plaintiff. Florida law presumes discovery proceeds in the ordinary course. Defendants have not provided — and cannot provide — good cause to deviate from that presumption.

Defendant's constant desire for in person hearings are another gamesmanship effort when the pending motions are a matter of law, and the facts and arguments are fully presented in

pleadings so that the Court could set a Zoom hearing or proceed on the motions that are filed and briefed without necessity of a hearing.

Plaintiff will be filing his objections to the Motion to Dismiss in this case once it is determined which Motion to Dismiss he should respond to since there are two pending.

5. Requested Relief

Plaintiff respectfully requests that the Court:

1. Deny Defendants' Motion to Stay Discovery;
2. Set hearing dates in March of 2026 after the first week of March on Plaintiff's pending motions;3. Order Defendants to respond to Plaintiff's properly served discovery.

Plaintiff stands ready to attend hearings, subject only to occasional and unavoidable international operational obligations — which Plaintiff will promptly coordinate with the Court.

Thank you for the Court's continued attention and management of this matter.

Respectfully submitted,

John D. Levitan, Sr
Plaintiff, *pro se*

Copies Via Email to: Jeremy Branning, Esq
jbranning@clarkpartington.com
Phillip Imperial, Esq
pmimperial@clarkpartington.com
Jake Barnes, Esq
jbarnes@clarkpartington.com
Judi Dallman, Legal Assistant
jdallman@clarkpartington.com

Filing # 237205697 E-Filed 12/08/2025 11:14:32 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,**
**Plaintiff,**

**CASE NO.: 2024 CA 001164**
**DIVISION: N**

**v.**

**GILEAD SCIENCES, INC, et al.,**
**Defendants.**
_______________________________________/

**OMNIBUS ORDER ON PENDING MOTIONS AND CANCELLATION OF JUNE 17, 2026 HEARING**

**THIS MATTER** is before the Court on the following motions:

- Defendants' Motion to Dismiss First Amended Complaint, e-filed on October 29, 2025 [DIN 34], and Plaintiff's Motion to Strike Defendant's Motion to Dismiss for Fraud Against the Plaintiff and Fraud on the Court, e-filed on November 9, 2025 [DIN 41];
- Defendants' Motion to Stay Discovery, e-filed on October 29, 2025 [DIN 36], and Plaintiff's Objections to Defendants' Motion to Stay Discovery, e-filed on December 4, 2025 [DIN 67]; and
- Plaintiff's Motion for Judicial Default for Failing to Answer as Ordered by the Court, e-filed on November 9, 2025 [DIN 40].

Some of these motions were coordinated for June 17, 2026. *See Notice of Hearing*, filed on December 3, 2025 [DIN 45]. The Court finds these motions are not timely set pursuant to applicable rules and further finds oral arguments unnecessary. The Court having reviewed the motions, file, correspondence between the parties and undersigned judge's judicial assistant, and being otherwise advised in the premises, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. All parties have fifteen (15) days to file a response and/or reply to the pending motions and/or objections, if they so choose. The Court will rule promptly on the paper.

2. Defendants' Motion to Stay Discovery is GRANTED in as much as discovery is stayed until the Court rules on the dispositive motions.

3. The hearing scheduled for June 17, 2026 is CANCELLED.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

12/08/2025 08:53:39 2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 12/08/2025 08:53:39 j5kvWkQf

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING, Attorney for Defendants

Filing # 237652264 E-Filed 12/12/2025 09:35:18 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

**CASE NO. 2024 CA 001164**

**GILEAD SCIENCES, INC.**
**GILEAD SCIENCES IRELAND UC**
**PATTERSON, BELKNAPP, WEBB & TYLER, LLP,**
**a New York Limited Liability Partnership,**
**GEOFFREY POTTER, an Individual,**
**TIMOTHY ALAN WATERS, an Individual,**
**ARON FISCHER, an Individual,**
**JOSHUA STEIN, an Individual,**
**THOMAS P. KURLAND,** an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

Defendants.
_________________________________________/

**NOTICE OF APPEAL**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and NOTICE IS GIVEN that John D. Levitan appeals the Order denying Plaintiff's request for disqualification of counsel on Defendant's Motion for Substitution of Counsel by Attorneys Clark, Partington, Hart for Defendants GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, THOMAS P. KURLAND, an Individual Defendant(s), Jointly and Severally appeal to the FLORIDA FIRST DISTRICT COURT OF APPEAL the order of this Court rendered on November 17, 2025. *Exhibit A*. The nature of the order is a Non-Final Order denying Plaintiff's

Motion for Disqualification of Counsel (Conformed Copy attached). Appeal is pursuant to Rule 9,130(E), Florida Rules of Appellate Procedure.

Respectfully submitted,

December 12, 2025

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com and J Barnes jbarnes@clarkpartington.com on this 12th day of December 2025.

/s/ ______________________________

John D. Levitan, pro se

# EXHIBIT A

Filing # 235945971 E-Filed 11/17/2025 12:41:43 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

JOHN D. LEVITAN, SR.,
Plaintiff,

v.

CASE NO.: 2024 CA 001164
DIVISION: N

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally
Defendants.
_____________________________________________/

**ORDER OVERRULING PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO SUBSTITUTE COUNSEL OF RECORD**

**THIS MATTER** came before the Court on the Objection by Plaintiff, JOHN D. LEVITAN, SR., to the Motion to Substitute Counsel of Record filed by Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, an Individual (known collectively as "Defendants"), e-filed on October 14, 2025 [DIN 29].

Although Pro Se Plaintiff "withdrew his objections" on [DIN 39], the Court finds that it was without prejudice and to be considered a "standing objection." The matter was heard on November 10, 2025 at a duly advised hearing on Defendants' Motion for Substitution of Counsel, e-filed on October 14, 2025. Plaintiff did not appear. The Court having heard arguments from

Defendants' counsel at a hearing on November 10, 2025, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Objection to Defendants' Motion to Substitute Counsel of Record is **OVERRULED**.

**DONE AND ORDERED** in Chambers at Pensacola, Escambia County, Florida.

11/17/2025 11:38:34
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 11/17/2025 11:38:34 PZGNrYx+

JENNIFER J. FRYDRYCHOWICZ
Circuit Court Judge

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Conformed Copies:

John D. Levitan, Sr., *Pro Se*
Jeremy C. Branning, Esq.
Jacob F. Barnes, Esq.

**Pam Childers**
Clerk of the Circuit Court and Comptroller, Escambia County
Clerk of Courts • County Comptroller • Clerk of the Board of County Commissioners • Recorder •

**DECEMBER 15 , 2025**

TO: **JOHN D LEVITAN SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

RE: **FIRST NOTICE OF UNPAID FEES**

CASE NO: **2024 CA 001164** FEE TYPE: **NOTICE OF APPEAL FEE**

**JOHN D LEVITAN SR** VS **GILEAD SCIENCES INC**, et al

You are hereby notified that a **$100.00** fee is past due. Pursuant to Section 28.241(1), Florida Statutes, filing fees and reopen fees are due at the time a party files a pleading to initiate a proceeding, files a pleading for relief or files a pleading to reopen a proceeding. If a fee is not paid upon the filing of the pleading as required under this section, the clerk shall pursue collection of the fee pursuant to s.28.246.

Please remit your payment to:

PAM CHILDERS
CLERK OF THE CIRCUIT COURT AND COMPTROLLER
ATTN: CIRCUIT CIVIL DIVISION
190 W GOVERNMENT ST
PENSACOLA, FLORIDA 32502

For your convenience, we accept credit card payments by telephone or over the counter. If you have any questions in regards to this account, please call the **CIRCUIT CIVIL DIVISION** at **(850)595-4130**.

**PAM CHILDERS**
**CLERK OF THE CIRCUIT COURT**

By: ______________________
Deputy Clerk

CLERK OF THE CIRCUIT COURT ESCAMBIA COUNTY, FLORIDA

Filing # 237761945 E-Filed 12/15/2025 03:42:52 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING DISQUALIFICATION OF DEFENDANTS' COUNSEL**

**COMES NOW** Plaintiff, JOHN D. LEVITAN, SR., appearing pro se, and pursuant to Florida Rules of Appellate Procedure 9.310(a) and 9.130(E), respectfully moves this Court to STAY ALL PROCEEDINGS pending resolution of Plaintiff's interlocutory appeal of this Court's Order denying disqualification of Defendants' counsel, and states:

**I. PROCEDURAL POSTURE**

i. On November 17, 2025, this Court entered an Order overruling Plaintiff's objection and denying Plaintiff's request for disqualification of Defendants' counsel, including counsel who are also named Defendants in this action.

ii. On December 12, 2025, Plaintiff timely filed a Notice of Appeal to the Florida First District Court of Appeal pursuant to Florida Rule of Appellate Procedure 9.130(E), seeking review of the non-final order denying disqualification of counsel.

iii. That appeal is currently pending and divests this Court of jurisdiction to proceed on matters that would interfere with or moot the appellate court's jurisdiction.

**II. LEGAL STANDARD FOR STAY PENDING APPEAL**

i. Florida courts possess inherent authority to stay proceedings pending appeal to preserve the status quo and prevent irreparable harm. A stay is particularly appropriate where the appeal concerns the right to conflict-free counsel and the integrity of the judicial process. <u>See</u> *Publix Supermarkets, Inc. v. Conte*,169 So. 3d 1265 (recognizing that entry of judgment during interlocutory appeal reversible for lack of jurisdiction); Entry of an Order on the Motion to Dismiss would be contrary to jurisdiction and would be reversible error because such an order would be the equivalent of an entry of judgment.

ii. Denial of a motion to disqualify counsel is reviewable by interlocutory appeal precisely because the harm caused by forcing a party to litigate against conflicted counsel is irreparable and cannot be remedied on plenary appeal. *Koulisis v. Rivers*, 730 So. 2d 289, 292 (Fla. 4th DCA 1999).

iii. In determining whether to grant a stay pending appeal, courts consider: (a) likelihood of success on the merits; (b) irreparable harm absent a stay; (c) absence of

substantial harm to the opposing party; and (d) the public interest. *Spacebox Dover, LLC v. LSREF2 Baron LLC,* 112 So. 3d 751 (2d DCA 2013) “Although the circuit court has discretion when considering a motion for stay, this discretionary power is not without limitation. The stay should be granted unless there are special circumstances, such as undue delay by the first court, that warrant the denial of a stay.” "Thus, absent any such special circumstances, a trial court abuses its discretion in refusing to grant a stay based on the principle of priority." *Id.* at 910 (citing *Norris v. Norris*, 573 So. 2d 1085, 1086 (Fla. 4th DCA 1991)). There are no special circumstances that would justify denying a stay and there is no evidence of such.

**III. ARGUMENT**

A. Proceeding While the Appeal Is Pending Risks Irreparable Harm

i. The harm arising from erroneous denial of disqualification is irreparable. If litigation proceeds while conflicted counsel continues to act, the damage cannot be undone even if the appellate court ultimately reverses. Discovery disclosures, litigation strategy, and privileged information cannot be “unrung.” Florida courts consistently recognize that this type of harm warrants both interlocutory review and interim relief.

B. The Appeal Raises Substantial and Non-Frivolous Issues

i. Plaintiff’s appeal raises serious issues concerning conflicts of interest, appearance of impropriety, and the unprecedented posture of Plaintiff’s former attorneys representing defendants simultaneously acting as advocates in a case where the firm gained access to Plaintiff’s personal financial data in numerous discussions prior to this proceeding. It is the gain of obtaining private financial information that would relate to the central matter of damages and allegations in the First Amended Complaint.

ii. Florida law has long recognized that even the appearance of impropriety is sufficient to warrant disqualification where public confidence in the judicial process is implicated. Florida Rules of Professional Conduct provide the standard for determining whether counsel should be disqualified in a given case. *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630, 633 (Fla.1991); see also *Estright v. Bay Point Improvement Ass'n, Inc.,* 921 So.2d 810, 811 (Fla. 1st DCA 2006) ("An order involving the disqualification of counsel must be tested against the standards imposed by the [Florida] Rules of Professional Conduct.") (quoting *Morse v. Clark*, 890 So.2d 496, 497 (Fla. 5th DCA 2004)). In this case, the Third District's review below should have been limited to whether the trial court abused its discretion in granting the disqualification motion. See *Applied Digital Solutions, Inc. v. Vasa*, 941 So.2d 404, 408 (Fla. 4th DCA 2006) ("The standard of review for orders entered on motions to disqualify counsel is that of an abuse of discretion. While the trial court's discretion is limited by the applicable legal principles, the appellate court will not substitute its judgment for the trial court's express or implied findings of fact which are supported by competent substantial evidence.")

C. Due Process and Fundamental Fairness Require a Stay

i. Proceeding while the disqualification appeal is pending would violate fundamental principles of due process. A litigant's right to a fair proceeding includes the right to litigate without the distortion created by conflicted counsel whose personal interests are intertwined with the subject matter of the case.

ii. Forcing Plaintiff to continue litigating while the very legitimacy of opposing counsel's participation is under appellate review undermines both actual fairness and the appearance of fairness, which Florida courts have deemed essential to due process.

D. Continuing Proceedings Would Undermine Appellate Jurisdiction

i. Allowing dispositive motions, or merits litigation to proceed while the disqualification issue is on appeal would risk mooting the appeal or forcing the appellate court to review a fait accompli. Florida law disfavors trial-court action that interferes with the subject matter of a pending interlocutory appeal.

E. No Prejudice to Defendants Outweighs the Need for a Stay

i. Defendants will suffer no legally cognizable prejudice from a temporary stay. By contrast, Plaintiff will suffer substantial prejudice if forced to litigate against counsel whose continued participation is the very subject of appellate review.

F. The Public Interest Favors a Stay

i. The public has a strong interest in ensuring that litigation is conducted by unconflicted counsel and that courts do not permit proceedings to continue under a cloud of ethical impropriety. Granting a stay promotes confidence in the judicial system and conserves judicial resources.

**IV. SCOPE OF STAY REQUESTED**

i. Plaintiff respectfully requests a stay of all proceedings in this matter, including discovery, motion practice, and hearings, pending issuance of the mandate by the First District Court of Appeal.

**V. NO BOND REQUIRED**

i. Because Plaintiff seeks no monetary relief and merely requests preservation of the status quo, no bond is required or appropriate.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order:

A. Staying all proceedings in this action pending resolution of Plaintiff's interlocutory appeal of the Order denying disqualification of Defendants' counsel;

B. Declining to permit further filings that would prejudice Plaintiff or interfere with appellate review; and

C. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,
December 15, 2025

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 15th day of December 2025.

John D. Levitan

Filing # 237751062 E-Filed 12/15/2025 02:40:34 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_______________________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**<u>TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Plaintiff, JOHN D. LEVITAN, SR. ("Plaintiff"), appearing pro se, files this Response in Opposition to Defendants' Motion to Dismiss the First Amended Complaint and states as follows:

## I. LEGAL STANDARD

i. A motion to dismiss tests only the legal sufficiency of the complaint, not the truth of the facts alleged. All well-pleaded allegations must be accepted as true and all reasonable inferences drawn in favor of the non-moving party. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

## II. THE FIRST AMENDED COMPLAINT STATES VALID CAUSES OF ACTION

A. Joint Action and Color of State Law Are Adequately Pleaded

i. Defendants' contention that they are purely private actors ignores well-settled law recognizing that private parties who act in concert with law enforcement may be deemed state actors. Under both federal and Florida jurisprudence, a private party acts under color of law when it is a willful participant in joint activity with the State or its agents. *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 941 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

ii. The Eleventh Circuit has repeatedly held that allegations of conspiracy or joint participation with law enforcement are sufficient at the pleading stage. *Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir. 1990). Florida courts similarly recognize liability where private actors misuse law enforcement authority to accomplish unlawful ends. See *Harris v. Lewis State Bank,* 482 So. 2d 1378, 1381 (Fla. 1st DCA 1986).

iii. Here, Plaintiff alleges Defendants coordinated with Escambia County deputies, misrepresented the existence of valid process, gained entry to Plaintiff's home, and later filed false affirmations of service under penalty of perjury. These facts, taken as true, plausibly establish joint action under color of state law and preclude dismissal.

B. Warrantless Entry and Search Claims Are Sufficiently Pleaded

Plaintiff Adequately Pleads Constitutional Violations by
Private Actors Acting Under Color of State Law

i. Defendants argue that the Florida Constitution provides no private cause of action and that Defendants are private actors. This argument ignores the well-pleaded factual

allegations that Defendants acted jointly with law enforcement officers, including Escambia County deputies, to gain unlawful entry into Plaintiff's residence, to effectuate a purported service of process, and to conduct a warrantless search of Plaintiff's home.

ii. The First Amended Complaint alleges coordinated conduct between Defendants and law enforcement, including the elicitation of deputy assistance, misrepresentation of the existence of a valid summons, and the filing of false affirmations of service under penalty of perjury. These allegations, taken as true, sufficiently plead action under color of state law and joint participation with state actors, which is sufficient at the pleading stage.

iii. At a minimum, whether Defendants acted under color of state law is a mixed question of law and fact that cannot be resolved on a motion to dismiss.

iv. Plaintiff alleges that Defendants entered his home without consent, without a warrant, and without exigent circumstances, and rummaged through his residence. These facts, if proven, constitute violations of Article I, Section 12 of the Florida Constitution. Defendants' reliance on later-filed affidavits and disputed service narratives improperly invites the Court to weigh evidence, which is not permitted at this stage.

## III. DEFAMATION AND LIBEL CLAIMS ARE ADEQUATELY PLEADED

### A. Media Publication Is Not Protected by Litigation Privilege

i. Defendants improperly rely on Florida's absolute litigation privilege. While statements made in the course of judicial proceedings may be privileged, the privilege does not extend to defamatory statements voluntarily published to the news media or the general public. *DelMonico v. Traynor*, 116 So. 3d 1205, 1216–17 (Fla. 2013).

ii. Florida courts consistently hold that republication of allegations to the media falls outside the privilege. See *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust*

*Co.*, 810 So. 2d 996, 998 (Fla. 4th DCA 2002); *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (privilege limited to acts necessary to the judicial process).

iii. Plaintiff specifically alleges that Defendants caused false accusations to be disseminated to news outlets and third parties beyond any judicial filing. Such conduct is not privileged and states a viable claim for libel.

B. Truth, Privilege, and Limitations Are Fact Issues

i. Whether statements are true, privileged, or time-barred are fact-intensive determinations inappropriate for resolution on a motion to dismiss. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999).

ii. Defendants contend that Plaintiff's libel claims are barred by absolute litigation privilege and/or are time-barred. This argument fails for several reasons.

iii. First, the First Amended Complaint alleges defamatory statements that were published to the news media and third parties outside of judicial proceedings, including accusations that Plaintiff trafficked in counterfeit medications, was a money-laundering expert, and was a convicted felon engaged in ongoing criminal conduct. Statements made to the media and the public are not protected by litigation privilege.

iv. Second, Plaintiff alleges that Defendants knew the statements were false or acted with reckless disregard for the truth. These allegations satisfy the elements of libel under Florida law.

v. Third, the determination of whether specific statements are privileged, true, or time-barred is fact-intensive and inappropriate for resolution on a motion to dismiss.

## IV. DEFENDANTS' MOTION IS BROUGHT IN BAD FAITH, CONSTITUTES AN ABUSE OF PROCESS, AND IMPROPERLY SEEKS TO SMEAR PLAINTIFF

i. Defendants' Motion is not a legitimate request for Rule 1.140(b) relief. It is a calculated abuse of motion practice designed to prejudice the Court, intimidate a pro se litigant, and immunize Defendants—several of whom are attorneys—from scrutiny of their own misconduct.

ii. Rather than confining themselves to the four corners of the First Amended Complaint, Defendants inject pages of inflammatory, irrelevant, and unsupported accusations concerning Plaintiff's character, alleged criminal history, and unrelated federal proceedings. (Emphasis Added). These allegations are not pleaded facts, not elements of any claim or defense, and not properly before this Court. They are included for one reason only: to poison the well.

iii. Such conduct is particularly egregious here because the attorney-defendants are not neutral advocates. They are accused actors who personally participated in the events at issue, including coordination with law enforcement, warrantless entry into Plaintiff's home, and the filing of demonstrably false service affidavits. Their Motion attempts to launder disputed facts and self-serving narratives into accepted truth through sheer volume and rhetoric. Courts have repeatedly condemned this tactic.

iv. This Court should view the Motion for what it is: an effort to evade discovery and foreclose adjudication on the merits by substituting character assassination for legal analysis.

v. Rather than addressing the legal sufficiency of the First Amended Complaint, Defendants devote substantial portions of their Motion and Memorandum to inflammatory, extraneous, and highly prejudicial character attacks against Plaintiff. These attacks consist

of selective federal docket narratives, criminal accusations, and conclusory assertions untethered to the elements of any pending claim.

vi. This tactic is improper. A motion to dismiss is not a vehicle for ad hominem attacks, credibility determinations, or the relitigation of disputed facts from unrelated proceedings. Defendants' approach reflects a deliberate attempt to poison the Court's view of Plaintiff rather than to engage in legitimate Rule 1.140(b) analysis.

vii. Even more troubling, several Defendants are attorneys who personally participated in the events giving rise to this action. Their Motion attempts to recast their own disputed conduct—warrantless entry, coordination with law enforcement, and false service filings—as established truth by embedding prejudicial narratives into a procedural motion. This Court should not countenance such misuse of advocacy.

## V. SCANDALOUS, IMPERTINENT, AND PREJUDICIAL MATTER MUST BE STRICKEN

i. Florida Rule of Civil Procedure 1.140(f) exists precisely to prevent what Defendants have done here. The Rule authorizes courts to strike material that is redundant, immaterial, impertinent, or scandalous—particularly where, as here, the material serves no purpose other than to inflame and prejudice.

ii. Defendants' Motion is rife with allegations concerning alleged crimes, prior litigation outcomes, and character attacks that have no bearing whatsoever on whether Plaintiff has stated a claim. These allegations are not defenses. They are not jurisdictional. They are not elements of dismissal. They are gratuitous and incurably prejudicial.

iii. Courts routinely strike such matter where it is used as a litigation weapon rather than a legitimate pleading component. Allowing Defendants' accusations to remain would

reward sharp practice and signal that procedural motions may be used as vehicles for defamation and intimidation.

iv. Plaintiff therefore respectfully but forcefully requests that this Court strike all scandalous and immaterial allegations in Defendants' Motion and Memorandum in their entirety.

v. Florida Rule of Civil Procedure 1.140(f) authorizes the Court to strike redundant, immaterial, impertinent, or scandalous matter from any pleading. Defendants' Motion contains extensive allegations regarding Plaintiff's alleged criminal history, character, and unrelated federal litigation that have no bearing on whether the First Amended Complaint states a cause of action.

vi. These allegations are not only irrelevant but incurably prejudicial. They serve no legitimate purpose other than to inflame and distract. Whether Plaintiff ultimately prevails is irrelevant to the Rule 1.140(b) inquiry; the sole question is whether the pleaded facts, taken as true, state plausible claims for relief. Defendants' collateral accusations fail that test and should be stricken in their entirety.

## VI. DEFENDANTS' CONDUCT UNDERMINES THE INTEGRITY OF THE MOTION AND WARRANTS JUDICIAL REBUKE

i. Defendants present disputed factual assertions as established truth, despite Plaintiff's express denials and the existence of contradictory evidence, including video recordings and sworn testimony. This is not zealous advocacy—it is misrepresentation.

ii. When attorneys who are themselves defendants submit motions premised on contested facts favorable to their own conduct, the Court must exercise heightened scrutiny.

Presenting prejudicial narratives under the guise of a motion to dismiss is improper and undermines the integrity of the judicial process.

iii. This Court has both the authority and the obligation to reject such tactics. At a minimum, the Motion should be denied and the offending material stricken. Anything less would invite repetition and erode confidence in the fairness of the proceedings.

## VII. DEFENDANTS' IMPROPER INVOCATION OF JUDICIAL NOTICE AND EXTRINSIC MATERIALS

i. Defendants repeatedly attempt to smuggle disputed facts into the record under the guise of judicial notice by citing selective federal docket entries, affidavits, and procedural histories from unrelated or contested proceedings. This is improper.

ii. Judicial notice may be taken of the existence of court filings, but not of the truth of the matters asserted therein, particularly where those matters are disputed. Defendants' Motion impermissibly asks this Court to accept their characterization of prior proceedings as established fact and to resolve credibility disputes at the pleading stage.

iii. Accordingly, Plaintiff expressly objects to Defendants' request—explicit or implicit—for judicial notice of any factual assertions contained in extrinsic materials and respectfully requests that the Court decline to take notice of, or otherwise consider, such materials for any purpose in ruling on the Motion to Dismiss.

## VIII. RESERVATION OF RIGHT TO SEEK SANCTIONS AND OTHER RELIEF

i. Defendants' conduct as set forth above reflects a pattern of sharp practice, misuse of motion practice, and the presentation of prejudicial matter for improper purposes. While Plaintiff does not presently seek sanctions, he expressly reserves the right to seek

appropriate relief, including sanctions, attorneys' fees, or other remedial measures, should Defendants persist in advancing scandalous matter, misrepresentations, or bad-faith filings in this action.

ii. This Court has both the authority and the obligation to reject such tactics. At a minimum, the Motion should be denied and the offending material stricken. Anything less would invite repetition and erode confidence in the fairness of the proceedings.

iii. The Motion's credibility is further undermined by Defendants' reliance on disputed factual assertions that Plaintiff has expressly denied and that are contradicted by evidence, including video recordings and sworn testimony. Presenting contested facts as settled truth—particularly by attorney-defendants accused of misconduct—constitutes sharp practice and weighs heavily against dismissal.

iv. Courts routinely reject motions that attempt to resolve factual disputes or inject prejudicial material at the pleading stage. Defendants' strategy confirms that dismissal is sought not because the Complaint is deficient, but because Defendants wish to avoid discovery into their own conduct.

## VII. DEFENDANTS' RELIANCE ON EXTRINSIC FEDERAL DOCKET MATERIALS IS IMPROPER

i. Defendants' Motion and Memorandum rely extensively on factual assertions, federal court docket entries, and disputed procedural histories outside the four corners of the First Amended Complaint. Such materials cannot be considered on a motion to dismiss without converting the motion into one for summary judgment.

ii. Plaintiff expressly disputes Defendants' characterization of prior proceedings and service events, and video evidence and testimony exist that directly contradict Defendants' narrative. These disputes must be resolved through discovery and, if necessary, trial.

**VIII. DISMISSAL WITH PREJUDICE IS UNWARRANTED**

i. Florida courts strongly disfavor dismissal with prejudice at the pleading stage, particularly where amendment could cure any perceived deficiency. Dismissal with prejudice is reserved for cases where it is clear that no amendment could possibly state a cause of action.

ii. Here, Defendants do not even establish a pleading defect; instead, they attempt to litigate character and credibility. If the Court were inclined to require clarification of any allegation, the appropriate remedy would be leave to amend—not termination of the case. Anything more would reward Defendants' improper tactics and contravene Florida's policy favoring resolution on the merits.

iii. Florida courts strongly disfavor dismissal with prejudice at the pleading stage, particularly where amendment could cure any perceived deficiency. *Wells Fargo Bank, N.A. v. Bohatka,* 112 So. 3d 596, 601 (Fla. 1st DCA 2013). "A review of a motion to dismiss is limited to the four corners of the complaint; a court may therefore only consider the allegations in the complaint and attached documents incorporated therein." *Reid v. Daley,* 276 So. 3d 878, 880 (Fla. 1st DCA 2019) (citing *Bohatka,* 112 So. 3d at 600). A dismissal with prejudice should not be ordered without giving the party offering the defective pleading an opportunity to amend.

iv. Here, Plaintiff has already amended once and can further clarify factual allegations if required. Given the detailed factual narrative alleged, dismissal with prejudice would be contrary to Florida's policy favoring resolution on the merits.

v. Even if the Court were to find any pleading deficiency, dismissal with prejudice would be improper. Plaintiff has already amended once and can further clarify factual

allegations if required. Florida law strongly favors resolving cases on their merits rather than through technical pleading dismissals.

## VI. CONCLUSION

i. The First Amended Complaint sets forth detailed factual allegations supporting claims for constitutional violations, unlawful entry and search, invasion of privacy, and defamation. Accepting those allegations as true, Plaintiff has stated plausible claims for relief. Defendants' Motion to Dismiss improperly seeks to litigate disputed facts and should be denied in its entirety.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A. DENY Defendants' Motion to Dismiss First Amended Complaint in its entirety;

B. Pursuant to Florida Rule of Civil Procedure 1.140(f), STRIKE all immaterial, impertinent, and scandalous matter contained in Defendants' Motion to Dismiss and Memorandum of Law, including but not limited to unfounded criminal accusations, character attacks, and extraneous federal docket narratives that bear no relevance to the legal sufficiency of the First Amended Complaint;

C. Decline to consider any disputed factual assertions or extrinsic materials improperly advanced by Defendants in support of dismissal;

D. In the alternative, grant Plaintiff leave to amend should the Court deem any clarification necessary; and

E. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
December 15, 2025

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 15th day of December 2025.

John D. Levitan

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive,**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850) 488-6151**

December 17, 2025

**Acknowledgment of New Case**

John D. Levitan, Sr.,
Appellant(s)
v.

Gilead Sciences, Inc., Gilead Sciences Ireland UC, Patterson, Belknapp, Webb & Tyler, LLP, a New York Limited Liability Partnership, Geoffrey Potter, an Individual, Timothy Alan Waters, an Individual, Aron Fischer, an Individual, Joshua Stein, an Individual, Thomas P. Kurland, an Individual, Jointly and Severally,
Appellee(s).

**Case 1D2025-3298**
L.T. No.: 2024 CA 001164

---

The First District Court of Appeal has received the Notice of Appeal, filed in the lower tribunal on December 12, 2025 and in this Court on December 15, 2025. The case type is: NOA Final - Circuit Civil - Other.

All documents filed in this case must contain this Court’s case number.

Per Administrative Order 23-1, Appellant must file a Docketing Statement/Notice of Appearance of Counsel (“Docketing Statement”) within twenty days of the date of this acknowledgment notice. If pro se, Appellant may file a paper Docketing Statement by mail or an electronic Docketing Statement via the Florida Court’s E-Filing Portal. If represented, Appellant’s attorney must file the Docketing Statement via the Portal. A fillable form version of the Docketing Statement is available via a link on the

"Documents" tab of the Portal or on this Court's website at https://www.1dca.flcourts.gov/Resources/General-Information. Opposing parties must file a Docketing Statement only if they seek to make amendments, corrections, or additions to Appellant's Docketing Statement.

Served:
Jacob Franklin Barnes
Jeremy C Branning
Escambia Clerk
John D. Levitan, Sr.

CP

1D2025-3298 December 17, 2025
Kristina Samuels, Clerk
1D2025-3298 December 17, 2025

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**STATE OF FLORIDA**

# NOTICE TO ATTORNEYS AND PARTIES

**(Revised April 2024)**

Counsel and Parties must comply with the Florida Rules of General Practice and Judicial Administration, the Florida Rules of Appellate Procedure, and these guidelines. This notice is not intended to and does not provide parties with separately enforceable rights.

Counsel and parties may only communicate with judges through properly served filings in a case or at oral argument. Ex parte communication with judges or their staffs is prohibited. Parties with attorneys should ask their attorneys any questions about their case. Unrepresented (pro se) parties may call the Clerk's Office for status updates.

Judges are not permitted to provide legal advice or respond to questions of law except in cases properly before the court. Employees of the clerk's office and the court also are not permitted to provide legal advice. Litigants should review the Florida Rules of Appellate Procedure and may want to consult the Pro Se (Unrepresented) Appellate Handbook from the Appellate Practice Section of The Florida Bar at http://www.flabarappellate.org. The court's website (www.1dca.flcourts.gov) has court opinions, oral argument videos, a live oral argument feed, administrative orders, and other useful information.

Electronic filings and payments should be made through the Florida Courts E-Filing Portal at https://myflcourtaccess.com. Go to the Florida Courts E-Filing Portal's website to register. All attorneys are required to file their documents electronically. Pro se litigants may, but are not required to, use the E-Filing Portal. The court does not accept filings by fax or e-mail. Other than with payment of filing fees, filers should not include a "transmittal letter" that serves no other purpose but to inform the court of what document(s) is being filed. The filing itself should have a title identifying the type of document (brief, record, motion, etc.) and the case in which it is to be filed. You may view documents in your case through the Florida Appellate Case Information System at https://acis.flcourts.gov.

This court will communicate with attorneys and pro se parties, unless the party is incarcerated, by e-mail. If a non-incarcerated pro se litigant does not have an e-mail address or regular access to the internet, the litigant may request service by mail by completing form 2.601, which is available on the court's website or in paper from the Clerk's Office by request.

## 1. NOTICE OF APPEAL

Notices of appeal should be filed with the lower tribunal. The notice of appeal should include the full name of the lower tribunal judge or hearing officer who entered the order(s) and the date of rendition of the order(s) to be reviewed. *See* Fla. R. App. P. 9.020 or 9.180. The notice also should contain the names of all parties to the appeal and whether the appeal is from a final or non-final order. The certificate of service (see #8 below) for the notice of appeal should include the address (mailing and e-mail) for each party or attorney, the name of the party the attorney represents, and whether the party represented is an appellant, appellee, etc. *See* Fla. R. App. P. 9.110, 9.130, 9.180, and 9.420.

## 2. COPY OF ORDER BEING APPEALED

The party filing the notice of appeal shall attach to the notice a copy of the order(s) that the party wants reviewed. The party filing the appeal shall also attach a copy of any motion or order that affects the date of rendition of the order appealed. *See* Fla. R. App. P. 9.020, 9.110, and 9.130.

## 3. DOCKETING STATEMENTS

All appellants and petitioners must complete a Docketing Statement to the best of their ability, serve (send) a copy on the opposing parties/attorneys, and return a copy to the court. Paper filers may complete the pink paper Docketing Statement provided by the court. For electronic filers, a fillable Docketing Statement will be available on the E-Filing Portal and on this court's website.

## 4. NUMBER OF COPIES

If a document is filed in paper, only the original is required. If a document is filed electronically through the E-Filing Portal, no paper copies are permitted.

## 5. COPIES OF RECORDS

The Clerk's office is required by statute to charge $1.00 per page to make copies of case records. Additional fees may apply for other services, such as certification. Registered attorneys and parties may be able to find copies of records in their cases on ACIS. Copies of records available on ACIS may be downloaded by a registered user without charge. Records may need to be reviewed for confidential information before they can be provided.

## 6. RECORD ON APPEAL

In appeal cases, the lower tribunal clerk's office (not a party or attorney) will transmit a copy of the record on appeal to this court. The record on appeal contains documents filed in the lower tribunal. Any additions or corrections to the record on appeal must be sent by the lower tribunal clerk's office (not by a party or attorney).

## 7. MOTIONS

Any request for action or relief from this court should be filed as a motion labeled with the case name, this court's case number, and the lower tribunal number. *See* Fla. R. App. P. 9.300. All motions must contain a proper certificate of service showing that copies of the motion have been served on the opposing counsel/parties. *See* #8 below. Any response to a motion shall be served within 15 days of the service of the motion. No reply to a response is permitted. *See* Fla. R. App. P. 9.300(a).

### Notice/Motion for Extension of Time

Pursuant to Administrative Order 19-2, an agreed notice of extension of time will be accepted in:

(A) **civil** appeals for up to a total of 90 days for initial/answer briefs and up to a total of 15 days for reply briefs; and
(B) **crimina**l appeals for up to a total of 60 days for initial/answer briefs.

The agreed notice must state the number of days agreed upon for the extension, not just the date the brief would be due. Extensions granted prior to filing the agreed notice count as part of the aggregate time periods. Agreed notices of extension are NOT permitted in proceedings involving adoptions, dependency, termination of parental rights, delinquency, emergency appeals, any appeal that has been expedited by court order, original proceedings governed by Rule 9.100, Workers' Compensation proceedings, or appeals governed by Rule 9.141(b)(2).

A **motion** for extension of time must be filed to ask for an extension in case types where a notice is not permitted (see prior paragraph) or to ask for more days than are available by notice. Motions for extension of time must state the number of days requested, the date by which the document will be filed, the reason an extension is needed, that opposing counsel has been consulted, and opposing counsel's position about the extension. Good cause is needed if a motion for extension of time is filed after the document's due date.

In Workers' Compensation cases, a motion requesting an extension on the sole basis of a busy schedule will not be favorably received. Extensions for reply briefs will be granted in Workers' Compensation cases only in emergency circumstances.

The court has expedited procedures for cases involving children. These cases are designated as "child cases" by order. In child cases, extensions of time are available only in emergency circumstances.

**Motion for Rehearing**

Although motions for rehearing are permitted by Florida Rule of Appellate Procedure 9.330, the court strongly discourages the practice of routinely filing such motions. *See Whipple v. State*, 431 So. 2d 1011 (Fla. 2d DCA 1983). Rule 9.330(a) requires that a motion for rehearing set forth the law or fact that the court has overlooked or misapprehended in its decision and prohibits presenting issues not previously raised in the proceedings. Where there has been an award of attorney's fees on appeal, additional fees may be awarded upon a denial of a motion for rehearing. Any response to a motion for rehearing must be served within 15 days of service of the motion.

## 8. CERTIFICATES OF SERVICE

This court does not provide service of documents for litigants. Litigants must serve opposing counsel/parties with a copy of all documents filed with the court. All filings shall contain a certificate of service stating that copies have been provided to the opposing counsel/parties. *See* Fla. R. Gen. Prac. & Jud. Admin 2.516 and Fla. R. App. P. 9.420. Below are examples of Certificates of Service:

By Attorney or Pro Se Litigant:

I certify that a copy of this filing has been provided to (insert name(s)) by (circle delivery/mail/e-mail/E-Filing Portal) on (insert date). (Sign), attorney for (insert name of party) (insert name if pro se), (insert address), (insert phone number), (insert e-mail/mailing address), (insert Bar number if an attorney).

By Incarcerated Pro Se Litigant:

I certify that a copy of this filing has been placed in the hands of (insert name of institutional official) for mailing to (insert name(s)) on (insert date). (Sign), (insert address), (insert phone number), (insert prison identification numbers).

## 9. AFTER HOURS FILINGS

There is no guarantee a security guard will be available after hours on any given day to accept filings so litigants should file time-sensitive documents during regular business hours (8 a.m. to 5 p.m.) on days the court is open. The date an electronic filing is received by the court through the E-Filing Portal will constitute the date of filing, up to 11:59 p.m., Eastern Time.

## 10. EMERGENCY FILINGS

A filing about an emergency matter should be labeled as an "Emergency" and must be served on opposing parties/counsel. Emergency documents filed though the E-Filing Portal may be marked as "Emergency" by checking the emergency filing box. Filings should only be marked as "Emergency" if a true emergency, requiring immediate judicial attention, exists. There is no need to mark a filing as an emergency solely because it is due that day or the due date is approaching.

## 11. BRIEFS

Only one copy of a brief is permitted to be filed. The initial and answer briefs must include a list of citations and a table of contents. The table of contents should list each issue on appeal. The answer brief shall contain all the same elements as contained in the initial brief except that the statement of the case and facts may be omitted. The argument section of briefs must contain the standard of review to be applied by the court as to each issue presented. *See* Fla. R. App. P. 9.210.

**Page Limits:**
Initial and answer briefs may not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. Reply briefs may not exceed 4,000 words if computer-generated or 15 pages if handwritten or typewritten. If a cross-appeal has been filed, the answer brief/initial brief on cross-appeal shall not exceed 22,000 words if computer-generated or 85 pages if handwritten or typewritten. A reply brief that includes the appellant's answer brief on a cross-appeal may not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. Fla. R. App. P. 9.210. Any motion requesting to exceed the page limit must include the proposed expanded brief.

**Formatting:**
All computer-generated briefs must be double-spaced, filed in either Arial 14-point font or Bookman Old Style 14-point font, and include a signed certification that the brief complies with the font requirements. Headings and subheadings may be single-spaced but must be in print at least as large as the rest of the brief. Briefs filed in paper must be on white standard size (8 1/2-by-11-inch) printer paper and must be signed. They should not be bound in book form. *See* Fla. R. App. P. 9.045.

**Amendments/Corrections:**
Any request to amend or correct a brief must be made by motion, accompanied by a copy of the entire brief that includes the correction(s). *See* Fla. R. App. P. 9.210.

## 12. APPENDIX

An appendix is a set of documents related to a brief, motion, or other filing. If an appendix is filed in paper, it must be filed separately from the document it accompanies. Appendices should not be bound in book form. The appendix must have an index (table of contents). Electronically filed appendices must be filed as a single PDF document that is indexed and consecutively paginated, beginning with the cover sheet as page 1. The appendix must be text searchable, paginated so that the page numbers displayed by the PDF reader exactly match the pagination of the index, bookmarked consistently with the index, and shall not contain condensed transcripts. *See* Fla. R. App. P. 9.220.

## 13. PETITIONS, RESPONSES, AND REPLIES

All computer-generated petitions, responses, and replies must be double-spaced, filed in either Arial 14-point font or Bookman Old Style 14-point font, and have a signed certification that the document complies with the font requirements. Headings and subheadings may be single-spaced but must be in print at least as large as the rest of the document. Petitions, responses, and replies filed in paper must be on white standard (8 1/2-by-11-inch) printer paper and must be signed. They should not be bound in book form. A petition or response to a petition should not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. The petitioner’s reply should not exceed 4,000 words if computer-generated or 15 pages if handwritten or typewritten. *See* Fla. R. App. P. 9.045

## 14. PHYSICAL EVIDENCE

Physical evidence (not papers) usually is not submitted to the appellate court. If a party wants to include physical evidence with the record on appeal, the party must ask permission from this court by filing a motion. *See* Fla. R. App. P. 9.200.

### 15. CORPORATE REPRESENTATION

While an individual may represent himself or herself in court without an attorney, a corporation is not permitted to do so through non-lawyer employees, officers, or shareholders. *See Richter v. Higdon Homes, Inc.*, 544 So. 2d 300 (Fla. 1st DCA 1989).

### 16. FOREIGN ATTORNEYS

Attorneys who are members in good standing in other jurisdictions may be granted permission by court order to appear in proceedings in this court. *See* Fla. R. App. P. 9.440; Fla. R. Gen. Prac. & Jud. Admin. 2.510. Attorneys who have been permitted to appear pro hac vice in the lower court must still file a motion for leave to appear before this court.

### 17. ORAL ARGUMENT

Cases receive the same consideration by a three-judge panel regardless of whether oral argument is requested. Requests for oral argument must be made by a filing labeled as a request for oral argument. The filing may not contain any other subject matter. Oral argument requests should be limited to those cases where counsel believes it will serve a definite and useful purpose in aiding the court in deciding the issue(s) on appeal. *See* Fla. R. App. P. 9.320. Requests for oral argument shall be made not later than 15 days after the last brief is due, or in petitions, not later than 15 days after the reply is due. Once the court has scheduled oral argument, motions for continuances are not favored except in emergency circumstances and counsel must notify the court as soon as possible if a settlement agreement appears likely or a motion for voluntary dismissal is expected prior to oral argument.

### 18. NOTICE OF SUPPLEMENTAL AUTHORITY

If a relevant authority is discovered after briefing, a notice with a copy of the authority attached may be filed. While the notice should designate the issue to which the supplemental authority relates, no argument or comment on the authority may be included in the notice. *See* Fla. R. App. P. 9.225.

### 19. APPELLATE MEDIATION PROGRAM

Requests for mediation are governed by Florida Rule of Appellate Procedure 9.700.

### 20. AMERICANS WITH DISABILITIES ACT

**In accordance with the Americans with Disabilities Act, if you are a person with a disability who needs any accommodation in order to participate in proceedings or activities before this court, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the First District Court of Appeal Marshal's Office at 2000 Drayton Drive, Tallahassee, Florida 32399-0950; or at telephone number (850) 717-8132, at least seven (7) days before the proceeding, or immediately upon receiving this notification if the time before the scheduled proceeding is less than seven (7) days. If you are hearing or voice impaired, call 711.**

### 21. FILING FEES

Filing fees are due immediately upon filing of a new case or notice of cross-appeal or joinder. Filings fees may be paid in person, by mail, or through the Florida Courts E-Filing Portal. (Go to the "Documents" page, click the "Add" button, and search for the "Pay Fee" category). A cover letter or copy of this court's fee order must be filed with payment. Do not attach a fee payment to a motion, brief, or other filing. The E-Filing Portal adds a convenience fee to all electronic payments.

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_____________________________________/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE**

Defendants, Gilead Sciences, Inc., Gilead Sciences Ireland UC, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland, respond in opposition to Plaintiff John D. Levitan, Sr.'s motion to strike Defendants' motion to dismiss. In support, Defendants state the following:

On October 6, 2025, this case[1] was formally remanded and reactivated on this Court's docket. (Notice of Remand.) The Defendants retained the undersigned counsel to represent them, and soon after getting retained, undersigned counsel sent Mr. Levitan correspondence seeking to confer to reach an agreement on Defendants' motion to substitute counsel and requesting an "[e]xtension of [t]ime to [r]espond to [the] First Amended Complaint." (Complete Email Chain

[1] This case's convoluted procedural history is more fully contained in Defendants' memorandum of law attached to the motion to dismiss. (*See* Memo. of Law Supporting Motion to Dismiss at p. 4–9.) Defendants provide a truncated version pertinent to responding to Mr. Levitan's motion to strike.

between Jeremy Branning, John Levitan, and Dan Levitan attached as Exhibit 1.) Specifically, undersigned counsel requested a 20-day extension of time "to file a response to the First Amended Complaint," which made the response deadline "October 29, 2025." (*Id.*)

Dan Levitan, apparently on behalf of his brother, John Levitan, agreed to both the relief requested in Defendants' motion to substitute counsel and to the 20-day extension of time to file a response to the First Amended Complaint. (*Id.*) On October 29, 2025, Defendants filed their motion to dismiss the First Amended Complaint with prejudice, arguing that Mr. Levitan's complaint is an impermissible collateral attack on previously resolved litigation and that the complaint fails to state any claim upon which relief may be granted. (*See* Motion to Dismiss; Memo. of Law Supporting Motion to Dismiss.) On November 9, 2025, Mr. Levitan moved to strike Defendants' motion to dismiss, arguing that the motion to dismiss must be stricken because Mr. Levitan was under the misimpression that Defendants' response to First Amended Complaint would be an answer, rather than a motion to dismiss. (*See generally* Motion to Strike.) Specifically, Mr. Levitan contends that undersigned counsel perpetrated fraud on the court by asking for an extension of time to respond to the complaint and then filing a motion to dismiss rather than a responsive pleading. (*See id.*) Because of Mr. Levitan's persistent unavailability to attend hearings for motions, the Court entered a briefing order on his motion to strike on December 8, 2025, providing Defendants fifteen days to respond to Mr. Levitan's motion to strike. (*See* Briefing Order entered on Dec. 8, 2025.) This is Defendants' response to Mr. Levitan's motion to strike.

Florida Rule of Civil Procedure 1.150 allows a party to move to strike a pleading for perpetrating pervasive fraud on the court. *See* Fla. R. Civ. P. 1.150(a); *Furst v. Blackman*, 744 So. 2d 1222, 1224 (Fla. 4th DCA 1999) (recognizing that a party can move to strike a pleading for

pervasive fraud on the court). Such motions are highly disfavored, however, because striking a pleading is a drastic remedy that can only be granted "when it is palpably or inherently false and, from the plain or conceded facts in the case, must have been known to the party pleading it to be untrue." *See Kimball v. Florida Dep't of Heal & Rehab. Srvs.*, 682 So. 2d 637, 639 (Fla. 2d DCA 1996). And importantly, a party can only move to strike a "pleading," *see* Fla. R. Civ. P. 1.150(a), meaning a party cannot move to strike a motion to dismiss because a motion to dismiss is not a pleading. *Motzer v. Tanner*, 561 So. 2d 1336, 1338 (Fla. 5th DCA 1990) (explaining that a "motion to strike the [defendants'] motion to dismiss as a sham pleading was improper" because "[m]otions are not pleadings"); *cf. Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 567 (Fla. 2005) ("[A] motion to dismiss is not a responsive pleading because it is not a pleading under the rules." (quotation omitted)).

Here, the Court should deny Mr. Levitan's motion to strike for two reasons. First, his motion is procedurally invalid. It seeks to strike a motion to dismiss, rather than a pleading. (*See generally* Motion to Strike.) And Florida law only recognizes a motion to strike a pleading, not a motion to dismiss. *See Motzer*, 561 So. 2d at 1338; Fla. R. Civ. P. 1.150(a).

Second, even if the motion were procedurally valid, the relief requested in it is certainly unwarranted here. Striking as a sanction is a highly disfavored remedy reserved for cases with "palpably" clear evidence of fraud. *See Kimball*, 682 So. 2d at 639; *Furst*, 744 So. 2d at 1224. Yet there's zero evidence of fraud in the instant matter. The evidence shows that Mr. Levitan granted an extension to respond to the First Amended Complaint, and Defendants filed a response to the First Amended Complaint within the agreed period. (*See* Ex. 1; *see also* Motion to Dismiss.) At bottom, Mr. Levitan misconstrues undersigned counsel's request for time to respond to the First Amended complaint as a request for time to file a *responsive pleading*. (*See* Motin to Strike at p.

3–4.) But Defendants' counsel never represented that Defendants would file a responsive pleading (*see* Ex. 1); thus, any accusation of fraud is entirely unfounded.

WHEREFORE, Defendants respectfully request that this Court deny Mr. Levitan's motion to strike the motion to dismiss.

*/s/ Jacob F. Barnes*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished to all counsel and parties via the Florida E-portal this 19th day of December, 2025.

*/s/ Jacob F. Barnes*
**JACOB F. BARNES**

# EXHIBIT 1

| | |
|---|---|
| **From:** | Jeremy Branning |
| **To:** | "General Counsel" |
| **Cc:** | jdlsr@gileadfraud.com; legal@gileadfraud.com; Jake Barnes; Judi Dallman; Phillip Imperial |
| **Subject:** | RE: Levitan / Gilead Sciences, et al - NOA and requests |
| **Date:** | Sunday, October 12, 2025 8:16:56 AM |
| **Attachments:** | clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png |

Dan – Thank you for the professional courtesy of agreeing to the proposed deadline for the defendants to respond to the First Amended Complaint and confirming no objection to the substitution of counsel.

We will file a notice of agreement on defendants' proposed deadline of October 29 to respond to the First Amended Complaint so the docket has a filing that reflects the agreed response deadline.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

**From:** General Counsel <legal@invictusholdings.us>
**Sent:** Friday, October 10, 2025 1:21 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** jdlsr@gileadfraud.com; legal@gileadfraud.com; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>; General Counsel <legal@invictusholdings.us>
**Subject:** Re: Levitan / Gilead Sciences, et al - NOA and requests

Sure Jeremy go ahead and I'm fine with both. I'm a little bit perturbed that you're representing a firm that is full of fraud, full of misrepresentation, violates ethic standards, and plays the New York victim when they build a firm around targeting people that have nothing to do with one of the, I'm disturbed that a Pensacola law firm would actually accept them using corrupt judges and especially you for accepting this case.

# Office General Counsel Sent from Mobile Device Please Excuse Errors

On Oct 10, 2025, at 12:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

This message was secured by **Zix**®.

**From:** John Levitan
**To:** Jeremy Branning
**Cc:** John Levitan; John Levitan; Jake Barnes; Judi Dallman; Phillip Imperial
**Subject:** Re: Levitan / Gilead Sciences, et al - NOA and requests
**Date:** Friday, October 10, 2025 1:40:00 PM
**Attachments:** clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

I do have a problem with your firm accepting their representation because will represented myself personally before and our group and our landfill holding.

Sent from Mobile Device Please Excuse Errors

On Oct 10, 2025, at 12:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of

time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png>

This message was secured by Zix®.
<NTC - Appearance of JCB JFP efiled 2025-10-09.pdf>

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Defendants, Gilead Sciences, Inc., Gilead Sciences Ireland UC, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland, respond in opposition to Plaintiff John D. Levitan, Sr.'s motion for default judgment. In support, Defendants state the following:

In short, Mr. Levitan's litigation tactics have created a convoluted procedural history that Defendants briefly summarize here to convey that default judgment is improper. Mr. Levitan filed his original complaint against Defendants in this Court on September 2, 2024. (*John D. Levitan, Sr. v. Gilead Sciences, Inc., et al.* ("E.D.N.Y. Dkt"), Case No. 1:25cv393, ECF No. 1-1 (E.D.N.Y. Oct. 3, 2024).[1]). Because the original complaint asserted federal claims and met the criteria for

---

[1] Three separate courts have addressed matters in this case. For ease of reference, Defendants cite to the docket entries for the United States District Court for the Eastern District of New York (E.D.N.Y.).

federal diversity jurisdiction, Defendants removed the case to the United States District Court for the Northern District of Florida on October 3, 2024. (E.D.N.Y. Dkt., ECF No. 1.) Once removed, Defendants moved to transfer the case to the United States District Court for the Eastern District of New York and moved for an extension of time to respond to the original complaint. (E.D.N.Y. Dkt., ECF Nos. 3 & 4.) The district court in the Northern District of Florida granted the extension of time to respond to the original complaint and gave Defendants until ten days after the motion to transfer was resolved to respond to complaint. (E.D.N.Y. Dkt., ECF No. 5.)

While the motion to transfer was pending, on November 15, 2024, Mr. Levitan filed an amended complaint and purposely removed his federal claims and all factual allegations that support the basis for federal diversity jurisdiction. (E.D.N.Y. Dkt, ECF No. 26.) The district court in the Northern District of Florida granted the motion to transfer, and the case was officially transferred to the Eastern District of New York on January 23, 2025. (E.D.N.Y. Dkt., ECF No. 30.) Within eight days of the transfer, on January 31, 2025, the Defendants responded to the amended complaint by filing a motion to dismiss the amended complaint with prejudice. (E.D.N.Y. Dkt., ECF No. 42.)

After Mr. Levitan intentionally stripped the allegations serving as the basis for federal jurisdiction from his complaint, he moved to remand the case to this Court. (E.D.N.Y. Dkt., ECF No. 49) The district court in the Eastern District of New York granted Mr. Levitan's motion to remand to this Court and determined that it did not have subject-matter jurisdiction to rule on Defendants' motion to dismiss the amended complaint with prejudice. (E.D.N.Y. Dkt., ECF No. 56.) To be clear, the district court never ruled on the merits of Defendants' motion to dismiss the amended complaint with prejudice. (*See id.* at 2 ("The Court does not have jurisdiction to decide the defendants' motion to dismiss.").)

On October 6, 2025, this case was formally remanded and reactivated on this Court's docket. (Notice of Remand.) The Defendants retained the undersigned counsel to represent them in this Court, and soon after getting retained, undersigned counsel sent Mr. Levitan correspondence seeking to confer to reach an agreement on two matters: (1) Defendants' motion to substitute counsel; and (2) requesting an "[e]xtension of [t]ime to [r]espond to [the] First Amended Complaint." (Complete Email Chain between Jeremy Branning, John Levitan, and Dan Levitan attached as Exhibit 1.) Specifically, undersigned counsel requested a 20-day extension of time "to file a response to the First Amended Complaint," which made the response deadline "October 29, 2025." (*Id.*)

Dan Levitan, apparently on behalf of his brother, John Levitan, agreed to both the relief requested in Defendants' motion to substitute counsel and to the 20-day extension of time to file a response to the First Amended Complaint. (*Id.*) On October 29, 2025, Defendants filed their motion to dismiss the First Amended Complaint with prejudice, arguing that Mr. Levitan's complaint is an impermissible collateral attack on previously resolved litigation and that the complaint fails to state any claim upon which relief may be granted. (*See* Motion to Dismiss; Memo. of Law Supporting Motion to Dismiss.)

On November 9, 2025, Mr. Levitan moved for default judgment, arguing that the motion to dismiss was untimely because (1) Mr. Levitan was under the misimpression that Defendants' response to First Amended Complaint would be an answer, rather than a motion to dismiss and (2) the district court in the Northern District of Florida ordered defendants' to file a responsive pleading within ten days of the transfer to the Eastern District of New York. (*See generally* Motion to Strike.) Because of Mr. Levitan's persistent unavailability to attend hearings for motions, the Court entered a briefing order on his motion for default judgment on December 8, 2025, providing

Defendants fifteen days to respond. (*See* Briefing Order entered on Dec. 8, 2025.) This is Defendants' response to Mr. Levitan's motion for default.

Federal law generally grants defendants fourteen days to file a response to an amended pleading unless the district court rules otherwise. *See* Fed. R. Civ. P. 15(a)(3). Similarly, Florida law grants defendants ten days to file a response to an amended pleading unless the state trial court rules otherwise. Fla. R. Civ. P. 1.190(a). And under either federal or state law, default judgment is inappropriate when a response to the amended complaint was timely filed. *Cf.* Fed. R. Civ. P. 55 (a) (explaining that default judgment is only appropriate where a party "has failed to plead or otherwise defend"); Fla. R. Civ. P. 1.500(a) (same).

That's exactly what happened here: the Defendants timely responded to the amended complaint. The district court in the Northern District of Florida granted Defendants an extension of time to respond until ten days after the final resolution of the motion to transfer. (E.D.N.Y. Dkt., ECF No. 5.) The Defendants complied with that order by filing a motion to dismiss the amended complaint within eight days of the transfer to the Eastern District of New York. (E.D.N.Y. Dkt., ECF No. 42.) And when the case was remanded, because the time for Defendants to respond to the amended complaint was unclear, undersigned counsel for the Defendants secured an agreed timeframe to respond to the amended complaint in this Court by October 29, 2025. (Ex. 1.) The Defendants again moved to dismiss the amended complaint on October 29, 2025. (Mot. to Dismiss.) Because there are no facts showing Defendants failed to timely respond to the amended complaint, a default judgment cannot be entered against them. *Cf.* Fed. R. Civ. P. 55; Fla. R. Civ. P. 1.500(a).

Plaintiff's motion for default is premised in large part on his insistence that the term "response" requires a responsive pleading. He is unfortunately misinterpreting the federal court's

orders in this matter and communications from undersigned counsel in this manner. At no time did the federal court order Defendants to file a responsive pleading. At no time did undersigned counsel represent that Defendants would be filing a responsive pleading.

WHEREFORE, Defendants respectfully request that this Court deny Mr. Levitan's motion for default judgment.

*/s/ Jacob F. Barnes*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished to all counsel and parties via the Florida E-portal this 19th day of December, 2025.

*/s/ Jacob F. Barnes*
**JACOB F. BARNES**

# EXHIBIT 1

| | |
|---|---|
| **From:** | Jeremy Branning |
| **To:** | "General Counsel" |
| **Cc:** | jdlsr@gileadfraud.com; legal@gileadfraud.com; Jake Barnes; Judi Dallman; Phillip Imperial |
| **Subject:** | RE: Levitan / Gilead Sciences, et al - NOA and requests |
| **Date:** | Sunday, October 12, 2025 8:16:56 AM |
| **Attachments:** | clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png |

Dan – Thank you for the professional courtesy of agreeing to the proposed deadline for the defendants to respond to the First Amended Complaint and confirming no objection to the substitution of counsel.

We will file a notice of agreement on defendants' proposed deadline of October 29 to respond to the First Amended Complaint so the docket has a filing that reflects the agreed response deadline.

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

CLARK PARTINGTON
ATTORNEYS AT LAW

**From:** General Counsel <legal@invictusholdings.us>
**Sent:** Friday, October 10, 2025 1:21 PM
**To:** Jeremy Branning <jbranning@clarkpartington.com>
**Cc:** jdlsr@gileadfraud.com; legal@gileadfraud.com; Jake Barnes <jbarnes@clarkpartington.com>; Judi Dallman <jdallman@clarkpartington.com>; Phillip Imperial <pmimperial@clarkpartington.com>; General Counsel <legal@invictusholdings.us>
**Subject:** Re: Levitan / Gilead Sciences, et al - NOA and requests

Sure Jeremy go ahead and I'm fine with both. I'm a little bit perturbed that you're representing a firm that is full of fraud, full of misrepresentation, violates ethic standards, and plays the New York victim when they build a firm around targeting people that have nothing to do with one of the, I'm disturbed that a Pensacola law firm would actually accept them using corrupt judges and especially you for accepting this case.

# Office General Counsel Sent from Mobile Device Please Excuse Errors

On Oct 10, 2025, at 12:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

This message was secured by Zix®.

**From:** John Levitan
**To:** Jeremy Branning
**Cc:** John Levitan; John Levitan; Jake Barnes; Judi Dallman; Phillip Imperial
**Subject:** Re: Levitan / Gilead Sciences, et al - NOA and requests
**Date:** Friday, October 10, 2025 1:40:00 PM
**Attachments:** clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png

I do have a problem with your firm accepting their representation because will represented myself personally before and our group and our landfill holding.

Sent from Mobile Device Please Excuse Errors

On Oct 10, 2025, at 12:16 PM, Jeremy Branning <jbranning@clarkpartington.com> wrote:

This message was sent securely using Zix®

Mr. Levitan:

The Defendants have retained my firm to represent them in the Circuit Court case going forward. Attached is the Notice of Appearance we filed yesterday. Couple of items to quickly address:

1. Motion to Substitute Counsel – do you have any objection to our motion to substitute our firm for the Stearns Weaver firm? Candidly, I don't think we are required to confer on this type of motion, but we are doing so in the hope that you have no objection, and we can represent it is unopposed.

2. Request for Extension of Time to Respond to First Amended Complaint – given our recent introduction to this matter, we request 20 days from yesterday (the day we filed the notice of appearance) to file a response to the First Amended Complaint. Please let us know if you agree to this request. If you cannot agree, we will file a motion seeking this extension of

time and report that we conferred via email and you do not consent. If you do not object to this extension of time, the response deadline would be October 29, 2025.

Thanks much,

Jeremy

**Jeremy Branning | Shareholder**
jbranning@clarkpartington.com | (850) 436-6470

**CLARK PARTINGTON**
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
clarkpartington.com

<clarkpartington-logo-rgb_screen-02-1_123bd44c-b20f-48cc-ab92-ad988cf14c5f.png>

This message was secured by Zix®.
<NTC - Appearance of JCB JFP efiled 2025-10-09.pdf>

Filing # 238334390 E-Filed 12/23/2025 03:29:39 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________/

**DEFENDANTS' REPLY TO PLAINTIFF'S**
**RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Defendants, Gilead Sciences, Inc., Gilead Sciences Ireland UC, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland, reply to Plaintiff John D. Levitan, Sr.'s response to Defendants' motion to dismiss the amended complaint with prejudice. In support, Defendants state the following:

Levitan's amended complaint is a blatant collateral attack on previously resolved litigation that fails to state any valid claims. The amended complaint attempts to allege five claims: three claims arising under the Florida Constitution and two defamation claims. The three purported-constitutional claims stem from Defendants executing a valid civil seizure order entered by a federal court in a separate case in which Gilead Sciences, Inc. sued Levitan for counterfeiting Gilead-branded HIV medicine. The two defamation claims stem from statements made in that

separate counterfeiting case. Because the Florida Constitution does not provide a private right of action for the constitutional harms alleged, Levitan's first three claims have no basis in law. And because the defamation claims are both time-barred and barred by Florida's litigation privilege, Levitan's last two claims are equally invalid. Accordingly, Defendants moved to dismiss the amended complaint with prejudice.

In his untimely[1] response brief, Levitan argues (1) that he sufficiently pleaded Florida Constitutional violations because he provided enough facts showing Defendants were acting under color of state law when executing the civil seizure order, and (2) that the litigation privilege and applicable statute of limitations cannot bar his defamation claims at the motion to dismiss stage. (*See* Doc. 74 at 2–4.) Both arguments[2] miss the mark.

**A. Levitan Fails to State Any Valid Claims under the Florida Constitution.**

"[N]o cause of action exists for money damages for a violation of a state constitutional right." *See Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th DCA 2004) (citing *Garcia v. Reyes*, 697 So. 2d 549 (Fla. 4th DCA 1997)). Levitan's amended complaint brings three claims arising solely from the Florida Constitution: one under Article I Section 12 and two under Article I Section 23. (*See* Amend. Compl., Doc. 34-3 at 7–8.) Because those constitutional provisions do not provide a cause of action, Levitan's constitution-based claims fail as a matter of law. *See Hanney v. Garcia*, No. 8:13cv2928, 2015 WL 1277991 at *3 (M.D. Fla. Mar. 20, 2015)

---

[1] This Court gave Levitan thirty days to file a brief in response to Defendants motion to dismiss. (Doc. 42.) The Court warned that failing to do so would result in granting the motion to dismiss. (*See id*.) Levitan failed to file a responsive brief within 30 days, and as instructed, Defendants sent the Court a proposed order granting the motion to dismiss. (*See id*.) Five days after the deadline to respond passed, Levitan filed his responsive brief. (Doc. 74.)

[2] Levitan makes other arguments in his response brief, contending that Defendants' motion to dismiss is an abuse of process (Doc. 74 at 5–6), that Defendants' motion must be stricken (*id*. at 6.), that Defendants' motion warrants judicial rebuke (*id*. at 7–8.), and that Defendants' motion improperly invokes extrinsic court orders (*id*. at 8.). None of these arguments have any merit. And more importantly, none of these arguments convey that Levitan has pleaded any valid claims. Thus, Defendants do not spend time replying to these ancillary and frivolous arguments.

(concluding that "Plaintiff's claim for money damages for violations of Article I, Sections 12 and 23 will be dismissed" because "no cause of action exists for money damages for a violation of a state constitutional right") (citing *Depaola*, 872 So. 2d at 38; *Garcia*, 697 So. 2d at 549; *Holcy v. Flagler County Sheriff*, No. 3:05cv1324, 2007 WL 2669219, at *19 (M.D. Fla. Sept. 6, 2007)).

In response, Levitan submits that he sufficiently pled valid Florida constitutional claims because there are enough facts in the amended complaint showing that the Defendants were acting under color of state law when executing the civil seizure order. (Doc. 74 at 2–3.) But whether Defendants were acting under "color of state law" is only relevant to federal constitutional claims which have a private right of action under 42 U.S.C. section 1983. Levitan does not bring any federal constitutional claims under 42 U.S.C. section 1983. (*See* Doc 34-3.) Instead, he brought Florida constitutional claims that do not have a similar statute enabling private rights of action. At bottom, his Florida constitutional claims do not exist. *Hanney*, 2015 WL 1277991 at *3; *Depaola*, 872 So. 2d at 38; *Garcia*, 697 So. 2d at 549; *Holcy*, 2007 WL 2669219, at *19. So those claims are ripe for dismissal with prejudice. There is nothing Levitan can do to cure the deficiency that is fatal to these three counts.

**B. Levitan's Defamation Claims Should be Dismissed with Prejudice.**

In their motion to dismiss, Defendants argue that Levitan's defamation claims are both time-barred and barred by the litigation privilege. (Doc. 34-1 at 14–17.) In response, Levitan argues that those issues cannot be resolved at the motion to dismiss stage. (Doc. 74 at 4.) He's wrong.

Florida courts can dismiss a complaint with prejudice on statute of limitations grounds if the facts in the complaint, taken as true, show that the plaintiff's claim is time-barred as a matter of law. *See Elegele v. Harley Hotels, Inc.*, 689 So. 2d 1305, 1306 (Fla. 5th DCA 1997) (affirming

dismissal of a defamation claim "because the allegations on the face of the complaint revealed a violation of the statute of limitations"); *Green v. Palatka Daily News*, 108 So. 3d 739, 740 (Fla. 5th DCA 2013) (same). That is exactly what we have here. The statute of limitations for defamation claims is two years from the statement's publication. § 95.11(h), Fla. Stat. (2022). Levitan's defamation claims are based on statements in Gilead's complaint in the counterfeiting action. (*See* Doc. 34-3 at 3–4, 9–10.) Gilead filed its complaint in the counterfeiting action on August 12, 2022. (*See* Doc. 34-1 at 14.) Levitan first filed his defamation claims on September 2, 2024—almost a month too late—barring his defamation claims based on the statements in the counterfeiting complaint as a matter of law. *See* Fla. § 95.11(h); *see also Elegele*, 689 So. 2d at 1306; *Green*, 108 So. 3d at 740. (*See* Doc. 1 (original complaint filed on September 2, 2024).)

Similarly, Florida courts can dismiss a complaint with prejudice based on the litigation privilege if the facts in the complaint, taken as true, show that plaintiff's defamation claim is based on statements made in judicial proceedings. *See, e.g., KAC 2021-1, LLC v. Am. Homes 4 Rent Props. One, LLC*, 398 So. 3d 1033, 1037 (Fla. 2d DCA 2024) (compiling Florida cases affirming dismissal with prejudice of defamation claims barred by the litigation privilege). Again, that is exactly what we have here. Levitan's defamation claims are based on statements made by Defendants in a complaint filed in a judicial proceeding. (*See* Doc. 34-3 at 3–4.) Thus, Levitan's defamation claims are barred by the litigation privilege as a matter of law. *See, e.g., KAC 2021-1,* 398 So. 3d at 1037.

Levitan tries to argue that statements made by a journalist with the Pensacola News Journal fall outside the litigation privilege and are sufficient to plead a valid defamation claim against Defendants. (Doc. 74 at 3–4.) But to plead a valid defamation claim under Florida law, the plaintiff must plead that "the defendant published a false statement about the plaintiff to a third

party and the falsity of the statement caused injury to the plaintiff." *Valencia v. Citibank Int'l*, 728 So. 2d 330 (Fla. 3d DCA 1999) (numerals omitted). The statements in the Pensacola News Journal were made by Jim Little, not the Defendants. (*See* Doc. 34-3 at 14–17 (attaching Jim Little's Pensacola News Journal article to the amended complaint).) The statements in the Pensacola News Journal are facially insufficient to plead a defamation claim against Defendants.

WHEREFORE, Defendants respectfully request that this Court grant Defendants' motion to dismiss Levitan's amended complaint with prejudice.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2025, I electronically filed the foregoing with the Clerk of the Court and served via the Florida Courts E-Filing Portal.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**

# Escambia County Receipt of Transaction

## Receipt # 2026001420

**Cashiered by: rlong**

Pam Childers
Clerk of Court
Escambia County, Florida

**Received From**

**LEVITAN, JOHN D SR**
**511 WINDROSE CIRCLE**
**PENSACOLA, FL 32507**

**On Behalf Of:**

,

On: 1/6/26 2:22 pm
Transaction # 102068318

**CaseNumber 2024 CA 001164**

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (CA1) CIRCUIT CIVIL FILING FEE | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (CA41) EXTRA DEFENDANTS | 7.50 | 7.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| (CA93) ISSUANCE OF SUMMONS | 80.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (CP99) NOTICE OF APPEAL - CIRCUIT TO DCA | 100.00 | 0.00 | 0.00 | 100.00 | 100.00 | 0.00 |
| **Total:** | **587.50** | **487.50** | **0.00** | **100.00** | **100.00** | **0.00** |
| **Grand Total:** | **587.50** | **487.50** | **0.00** | **100.00** | **100.00** | **0.00** |

**PAYMENTS**

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| OTC | ~ ~ Authorization Code:04495D | OK | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| | | **Payments Total:** | **100.00** | **0.00** | **0.00** | **0.00** | **100.00** |

Credit Card Convenience fee of 3.5% is non-refundable.

Case 3:26-cv-01457-TKW-HTC Document 1-1 Filed 02/27/26 Page 519 of 873

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. Case No.: 2024 CA 001164

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON BELKNAP WEBB & TYLER LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendants.
_______________________________________/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION TO STAY PROCEEDINGS PENDING APPEAL OF**
**ORDER DENYING DISQUALIFICATION OF DEFENDANTS' COUNSEL[1]**

Defendants, Gilead Sciences, Inc., Gilead Sciences Ireland UC (together as "Gilead"), Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Timothy Alan Waters, Aron Fischer, Joshua Stein, and Thomas P. Kurland (together as "PBWT Defendants"), respectfully oppose Plaintiff John D. Levitan, Sr.'s Motion to Stay Proceedings Pending Appeal (Doc. # 237761945).

"A party seeking to stay the lower tribunal order pending appeal should demonstrate a likelihood of prevailing on appeal, irreparable harm to movant if the motion is not granted, or a showing that a stay would be in the public interest." *Lampert-Sacher v. Sacher*, 120 So. 3d 667,

[1] It should be noted that, notwithstanding the way Levitan has titled his motion, there is no order denying any motion to disqualify Defendants' counsel, and Levitan never made any such motion. Rather, Defendants moved to substitute their counsel, and this Court granted that motion while overruling Levitan's objection to it without prejudice.

668 (Fla. 1st DCA 2013). Plaintiff cannot satisfy this standard. He is unlikely to prevail in his appeal (the "Appeal") of this Court's November 17 Order Overruling Plaintiff's Objection to Defendant's Motion to Substitute Counsel of Record (the "Order") because the First District Court of Appeal lacks jurisdiction to review the Order, and also because the Appeal lacks substantive merit. Plaintiff also has not shown he will suffer irreparable harm absent a stay, nor has he made any credible alternative showing that a stay would somehow be in the public interest. This Court should deny the motion.

## I. IT IS UNLIKELY THAT PLAINTIFF'S APPEAL WILL SUCCEED.

### A. The Order is not immediately appealable, so the Appeal will likely be dismissed for lack of jurisdiction.

The first stumbling block in Plaintiff's motion is that his Appeal is unlikely to succeed on the merits. *Cf. City of Jacksonville v. Naegele Outdoor Advert. Co.*, 634 So. 2d 750, 753 (Fla. 1st DCA 1994) ("A substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated.") Here, it is reasonable to anticipate that Plaintiff's Appeal will be dismissed because the First District lacks jurisdiction to hear the Appeal.

Florida's district courts of appeal have jurisdiction to "review interlocutory orders in such cases to the extent provided by rules adopted by the [S]upreme [C]ourt [of Florida]." Art. V., § 4(b)(1), Fla. Const. The Florida Rules of Appellate Procedure accordingly empower the district courts of appeal to review "nonfinal orders as prescribed by rule 9.130." Fla. R. App. P. 9.030(b)(1)(B). Rule 9.130, in turn, lists the various categories of nonfinal orders that the district courts are empowered to review by an interlocutory appeal in a civil case. Fla. R. App. P. 9.130(a)(1)(3).

Because such piecemeal review represents an exception from what is supposed to be the normal judicial process, "[t]he thrust of rule 9.130 is to restrict the number of appealable nonfinal

orders." *Travelers Ins. Co. v. Bruns*, 443 So. 2d 959, 961 (Fla. 1984). "Accordingly, the categories of non-final orders subject to interlocutory appeal are narrowly construed." *Walker v. Fla. Gas Transmission Co., LLC*, 134 So. 3d 571, 572 (Fla. 1st DCA 2014). *Walker* demonstrates how narrow this construction is: in that case, the appellants sought review of an order denying their motion to enforce a provision of a different order that required the appellee to replace various plants that the appellee had clear-cut from a property. *Id.* at 572. Although it was certainly possible to interpret that order as determining "the right to immediate possession of property," Fla. R. App. P. 9.130(a)(3)(C)(ii), insofar as it determined that the appellee did not have to immediately give the appellant any plants, the First District dismissed the appeal, reasoning in part that the denial of a right to possess *some unidentified* plants—as opposed to *certain specific and identifiable plants*—was insufficient to vest interlocutory jurisdiction, 134 So. 3d at 572–73. This highlights the principle that, when there is more than one possible interpretation of Rule 9.130, the stricter interpretation is the correct one.

Here, Plaintiff's Appeal is likely to fail on a similar basis to the appeal in *Walker*. He invokes the First District's jurisdiction under Rule 9.130(a)(3)(E) and characterizes this Order as being "of [an] Order Denying Disqualification of Defendants' Counsel." (Mot. at 1.) And indeed, Rule 9.130(a)(3)(E) authorizes interlocutory review of orders that "grant or deny a motion to disqualify counsel." But the Order does not grant or deny a motion to disqualify counsel: rather, it overrules an objection to a motion to substitute counsel. Plaintiff objected to that substitution, but he never filed any motion of his own. Rule 9.130(a)(3)(E) requires an order ruling on "a motion to disqualify counsel," not a matter that is merely similar to such a motion or that touches upon a related subject. There are "good reasons for anticipating" that the Appeal will be dismissed on this basis. *City of Jacksonville*, 634 So. 2d at 753.

**B. The Appeal will also fail because Plaintiff waived his objection and his arguments lack substantive merit.**

Even if the district court has jurisdiction to hear the Appeal, Plaintiff is still unlikely to succeed on the merits, for two reasons.

**First**, although Plaintiff maintained his objection to Clark Partington's representation of Defendants for the purpose of "preserv[ing his] right to file a Complaint against the firm for their representation of Defendants in this proceeding should it become necessary," he withdrew that objection insofar as it concerned whether this Court should grant Defendants the relief they sought in their Motion to Substitute Counsel. In the Order, this Court interpreted Plaintiff's withdrawal as being "without prejudice and to be considered a 'standing objection'." (Order at 1.) It is reasonable to expect, however, that the district court will interpret Plaintiff's freely given consent to the relief Defendants sought in their Motion to Substitute Counsel as waiving any objections to this Court granting Defendants that relief—i.e., substituting Clark Partington as counsel of record for Defendants—without prejudice for Plaintiff to pursue the remedies that he hints "will be resolved in another forum not presently subject to this litigation."[2]

Plaintiff cannot ask the First District to reverse a ruling that he agreed this Court should enter. *See Flowers v. State*, 149 So. 3d 1206, 1207–08 (Fla. 1st DCA 2014) (explaining that the invited-error doctrine prevents a party from seeking reversal on appeal of a ruling that the party requested from the trial court); *Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978) ("The requirement of a contemporaneous objection is based on practical necessity and basic fairness in the operation of a judicial system."); *Citizens v. Clark*, 373 So. 3d 1128, 1131 (Fla. 2023) ("It is well established

[2] Plaintiff's stated intention to file a "Complaint … in another forum not presently subject to this litigation" indicates that he likely intends to file a complaint with The Florida Bar. There is no reasonable way to interpret that statement as referring to the First District Court of Appeal, so that statement should not be construed as in some way renewing his objection, especially given that it appears in a document Plaintiff filed for the specific purpose of withdrawing his objection.

that issues not properly preserved are waived."). This Court has ruled, and Plaintiff cannot now withdraw his waiver and re-assert his objection for the sake of taking an interlocutory appeal. *See, e.g., Rios v. State*, 920 So. 2d 789, 790 (Fla. 5th DCA 2006) (explaining that a party waived appellate review of an issue by withdrawing their objection); *accord Hart's Ex'r v. Smith*, 20 Fla. 58, 61–62 (Fla. 1883) ("The respondent having waived objection to an amendment of the petition by pleading to it should not trifle with the patience of the court by thus withdrawing his waiver.").

**Second**, any argument Plaintiff could raise in the Appeal would lack substantive merit. This Court has already heard argument about why the Motion to Substitute Counsel was due to be granted and received evidence to support those arguments. Plaintiff's objection to that substitution lacked any legitimate factual or legal basis and was, in truth, an opportunistic sham designed to frustrate the litigation process. If the First District reaches the substance of the Appeal—which, as explained above, is unlikely—that court will reject Plaintiff's arguments for the same reasons this Court did.

## II. PLAINTIFF HAS NOT SHOWN HE WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

Plaintiff asserts that, if this Court does not stay its order overruling his objection to Clark Partington's substitution as counsel for Defendants, he will suffer irreparable harm because "[d]iscovery disclosures, litigation strategy, and privileged information cannot be 'unrung'." (Mot. at 3.) He also asserts that Clark Partington "gained access to Plaintiff's personal financial data in numerous discussions prior to this proceeding" and that the data in question "would relate to the central matter of damages and allegations in the First Amended Complaint" despite its allegedly having been gathered more than ten years ago. (*Id.*)

Taking what Plaintiff says at face value, it is difficult to see how this qualifies as harm at all. Plaintiff does not explain how any information supposedly disclosed to Clark Partington more

than a decade ago would prejudice him by revealing his litigation strategy or otherwise creating an information asymmetry. If Plaintiff's financial information were indeed central to the damages he claims to have suffered and the allegations in the pleadings he drafted and filed in open court, that information would be discoverable. *See* Fla. R. Civ. P. 1.280(c)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …."). Indeed, pursuant to the initial-disclosure requirements, Plaintiff must provide that same information to Defendants without awaiting a request. *See* Fla. R. Civ. P. 1.280(a)(1)(C) (providing that a party's initial disclosures must include "a computation for each category of damages claimed by the disclosing party and a copy of the documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of injuries suffered …."). It cannot constitute "harm" for Defendants to already possess information that Plaintiff is required to disclose to them anyway.

The larger point, however, is that Plaintiff's allegations are false, and Defendants have proven them to be false. Plaintiff has submitted no evidence to support them beyond his own self-serving assertions, which appear to be "magic word" style attempts to nod to the concept of irreparable harm in the context of appellate courts' certiorari jurisdiction. Defendants, meanwhile, submitted an affidavit from William J. Dunaway, Esq., detailing the nature of the prior representations Plaintiff refers to, explaining the search Mr. Dunaway conducted to investigate whether any of Plaintiff's "private financial information" was indeed disclosed during those representations, and confirming that no such information was disclosed nor is any in Clark Partington's possession. (Dunaway Affidavit, Doc. 38.) Indeed, Mr. Dunaway expressly states that the files from those representations do not contain "any document about John D. Levitan, Sr. personally" of any kind. (*Id.*) If Plaintiff had evidence to the contrary, he could and should have

submitted it for this Court's review; but he did not, because it does not exist. There is no factual support for Plaintiff's assertions.

## III. THE "SPECIAL CIRCUMSTANCES" REQUIREMENT DOES NOT APPLY HERE.

Plaintiff suggests that it is an abuse of discretion to deny a motion for stay pending appeal unless there are special circumstances that justify denying the stay. (Mot. at 3.) Plaintiff is mistaken. As indicated by the fact that binding precedents establish eligibility criteria for obtaining a stay, the law does not teach that courts should stay their orders pending appeal as a matter of course or as a default option. If that were the law, there would be no point in requiring a party seeking a stay to make the showings described in *Lampert-Sacher*.

Plaintiff supports his argument with a cherrypicked quotation from *Spacebox Dover, LLC v. LSREF2 Baron LLC*, 112 So. 3d 751 (Fla. 2d DCA 2013). That case is inapposite. *Spacebox* was a foreclosure action concerning real property in Florida that was proceeding at the same time as related litigation that was underway in Mississippi: the Mississippi case was for the alleged breaches of promissory notes that were secured by the Florida real property, and the Mississippi case was filed before the Florida one. *Id.* at 752. Spacebox—a defendant in both cases—moved to stay the Florida case pending disposition of the Mississippi case. *Id.* The trial court denied the motion, and Spacebox petitioned for certiorari. *Id.* In its decision quashing the trial court's order, the Second District Court of Appeal explained that it was generally an abuse of discretion to deny a stay *pending disposition of related litigation* when that stay was "based on the principle of priority." *Id.* at 752–53 (quoting *Norris v. Norris*, 573 So. 2d 1085, 1086 (Fla. 4th DCA 1991)). *Spacebox* did not concern stays pending appeal at all, and Plaintiff takes it out of its proper context. The requirement of "special circumstances" does exist in Florida law, but it applies to stays based on the priority of related ongoing litigation, not to stays pending appeal.

## IV. THIS COURT SHOULD REJECT THE REMAINDER OF PLAINTIFF'S ARGUMENTS AS WELL.

The remainder of Plaintiff's arguments do not merit sustained attention. They are too conclusory to be considered properly raised at all. *See Bradley v. State*, 33 So. 3d 664, 685 (Fla. 2010) (holding an argument presenting only "vague and conclusory allegations" was "insufficient to warrant relief"); *Alexopoulos v. Gordon Hargrove & James, P.A.*, 109 So. 3d 248, 250 (argument presented "in a single, conclusory footnote comprised of one sentence without legal citation" was not sufficiently raised); *Knight v. State*, 225 So. 3d 661, 675 (Fla. 2017) (holding—in a death-penalty case—that a claim argued in only two sentences was not sufficiently pleaded). Even if any of Plaintiff's other arguments were substantial enough to merit more than momentary consideration, they would not overcome the deficiencies with the remainder of Plaintiff's Motion. This Court should reject Plaintiff's remaining arguments out of hand.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**
Florida Bar No.: 0507016
**JACOB F. BARNES**
Florida Bar No.: 1032604
CLARK PARTINGTON
125 E. Intendencia Street, 4th Floor
Pensacola, FL 32502
Phone: (850) 434-9200;
Fax: (850) 432-7340
P/E: jbranning@clarkpartington.com
P/E: jbarnes@clarkpartington.com
S/E: pmimperial@clarkpartington.com
S/E: jdallman@clarkpartington.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of January, 2026, I electronically filed the foregoing with the Clerk of the Court and served via the Florida Courts E-Filing Portal.

*/s/ Jeremy C. Branning*
**JEREMY C. BRANNING**

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive,**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850) 488-6151**

January 12, 2026

***CORRECTED**

**Acknowledgment of New Case**

| | |
|---|---|
| John D. Levitan, Sr.,<br>Appellant(s)<br>v.<br><br>Gilead Sciences, Inc., Gilead Sciences Ireland UC, Patterson, Belknapp, Webb & Tyler, LLP, a New York Limited Liability Partnership, Geoffrey Potter, an Individual, Timothy Alan Waters, an Individual, Aron Fischer, an Individual, Joshua Stein, an Individual, Thomas P. Kurland, an Individual, Jointly and Severally,<br>Appellee(s). | **Case 1D2025-3298**<br>L.T. No.: 2024 CA 001164<br><br>RECEIVED<br>By Escambia County Clerk of Court at 9:27 am, Jan 12, 2026 |

The First District Court of Appeal has received the Notice of Appeal, filed in the lower tribunal on December 12, 2025 and in this Court on December 15, 2025. The case type is: NOA **Non-Final** - Circuit Civil - Other.

All documents filed in this case must contain this Court's case number.

Per Administrative Order 23-1, Appellant must file a Docketing Statement/Notice of Appearance of Counsel ("Docketing Statement") within twenty days of the date of this acknowledgment notice. If pro se, Appellant may file a paper Docketing Statement by mail or an electronic Docketing Statement via the Florida Court's E-Filing Portal. If represented, Appellant's

attorney must file the Docketing Statement via the Portal. A fillable form version of the Docketing Statement is available via a link on the "Documents" tab of the Portal or on this Court's website at https://www.1dca.flcourts.gov/Resources/General-Information. Opposing parties must file a Docketing Statement only if they seek to make amendments, corrections, or additions to Appellant's Docketing Statement.

Served:
Jacob Franklin Barnes
Jeremy C Branning
Escambia Clerk
Dylan Bailey Howard
John D. Levitan, Sr.

CP

1D2025-3298 January 12, 2026
Kristina Samuels, Clerk
1D2025-3298 January 12, 2026

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**STATE OF FLORIDA**

# NOTICE TO ATTORNEYS AND PARTIES

**(Revised April 2024)**

Counsel and Parties must comply with the Florida Rules of General Practice and Judicial Administration, the Florida Rules of Appellate Procedure, and these guidelines. This notice is not intended to and does not provide parties with separately enforceable rights.

Counsel and parties may only communicate with judges through properly served filings in a case or at oral argument. Ex parte communication with judges or their staffs is prohibited. Parties with attorneys should ask their attorneys any questions about their case. Unrepresented (pro se) parties may call the Clerk's Office for status updates.

Judges are not permitted to provide legal advice or respond to questions of law except in cases properly before the court. Employees of the clerk's office and the court also are not permitted to provide legal advice. Litigants should review the Florida Rules of Appellate Procedure and may want to consult the Pro Se (Unrepresented) Appellate Handbook from the Appellate Practice Section of The Florida Bar at http://www.flabarappellate.org. The court's website (www.1dca.flcourts.gov) has court opinions, oral argument videos, a live oral argument feed, administrative orders, and other useful information.

Electronic filings and payments should be made through the Florida Courts E-Filing Portal at https://myflcourtaccess.com. Go to the Florida Courts E-Filing Portal's website to register. All attorneys are required to file their documents electronically. Pro se litigants may, but are not required to, use the E-Filing Portal. The court does not accept filings by fax or e-mail. Other than with payment of filing fees, filers should not include a "transmittal letter" that serves no other purpose but to inform the court of what document(s) is being filed. The filing itself should have a title identifying the type of document (brief, record, motion, etc.) and the case in which it is to be filed. You may view documents in your case through the Florida Appellate Case Information System at https://acis.flcourts.gov.

This court will communicate with attorneys and pro se parties, unless the party is incarcerated, by e-mail. If a non-incarcerated pro se litigant does not have an e-mail address or regular access to the internet, the litigant may request service by mail by completing form 2.601, which is available on the court's website or in paper from the Clerk's Office by request.

## 1. NOTICE OF APPEAL

Notices of appeal should be filed with the lower tribunal. The notice of appeal should include the full name of the lower tribunal judge or hearing officer who entered the order(s) and the date of rendition of the order(s) to be reviewed. *See* Fla. R. App. P. 9.020 or 9.180. The notice also should contain the names of all parties to the appeal and whether the appeal is from a final or non-final order. The certificate of service (see #8 below) for the notice of appeal should include the address (mailing and e-mail) for each party or attorney, the name of the party the attorney represents, and whether the party represented is an appellant, appellee, etc. *See* Fla. R. App. P. 9.110, 9.130, 9.180, and 9.420.

## 2. COPY OF ORDER BEING APPEALED

The party filing the notice of appeal shall attach to the notice a copy of the order(s) that the party wants reviewed. The party filing the appeal shall also attach a copy of any motion or order that affects the date of rendition of the order appealed. *See* Fla. R. App. P. 9.020, 9.110, and 9.130.

## 3. DOCKETING STATEMENTS

All appellants and petitioners must complete a Docketing Statement to the best of their ability, serve (send) a copy on the opposing parties/attorneys, and return a copy to the court. Paper filers may complete the pink paper Docketing Statement provided by the court. For electronic filers, a fillable Docketing Statement will be available on the E-Filing Portal and on this court's website.

## 4. NUMBER OF COPIES

If a document is filed in paper, only the original is required. If a document is filed electronically through the E-Filing Portal, no paper copies are permitted.

## 5. COPIES OF RECORDS

The Clerk's office is required by statute to charge $1.00 per page to make copies of case records. Additional fees may apply for other services, such as certification. Registered attorneys and parties may be able to find copies of records in their cases on ACIS. Copies of records available on ACIS may be downloaded by a registered user without charge. Records may need to be reviewed for confidential information before they can be provided.

## 6. RECORD ON APPEAL

In appeal cases, the lower tribunal clerk's office (not a party or attorney) will transmit a copy of the record on appeal to this court. The record on appeal contains documents filed in the lower tribunal. Any additions or corrections to the record on appeal must be sent by the lower tribunal clerk's office (not by a party or attorney).

## 7. MOTIONS

Any request for action or relief from this court should be filed as a motion labeled with the case name, this court's case number, and the lower tribunal number. *See* Fla. R. App. P. 9.300. All motions must contain a proper certificate of service showing that copies of the motion have been served on the opposing counsel/parties. *See* #8 below. Any response to a motion shall be served within 15 days of the service of the motion. No reply to a response is permitted. *See* Fla. R. App. P. 9.300(a).

### Notice/Motion for Extension of Time

Pursuant to Administrative Order 19-2, an agreed notice of extension of time will be accepted in:

(A) **civil** appeals for up to a total of 90 days for initial/answer briefs and up to a total of 15 days for reply briefs; and
(B) **criminal** appeals for up to a total of 60 days for initial/answer briefs.

The agreed notice must state the number of days agreed upon for the extension, not just the date the brief would be due. Extensions granted prior to filing the agreed notice count as part of the aggregate time periods. Agreed notices of extension are NOT permitted in proceedings involving adoptions, dependency, termination of parental rights, delinquency, emergency appeals, any appeal that has been expedited by court order, original proceedings governed by Rule 9.100, Workers' Compensation proceedings, or appeals governed by Rule 9.141(b)(2).

A **motion** for extension of time must be filed to ask for an extension in case types where a notice is not permitted (see prior paragraph) or to ask for more days than are available by notice. Motions for extension of time must state the number of days requested, the date by which the document will be filed, the reason an extension is needed, that opposing counsel has been consulted, and opposing counsel's position about the extension. Good cause is needed if a motion for extension of time is filed after the document's due date.

In Workers' Compensation cases, a motion requesting an extension on the sole basis of a busy schedule will not be favorably received. Extensions for reply briefs will be granted in Workers' Compensation cases only in emergency circumstances.

The court has expedited procedures for cases involving children. These cases are designated as "child cases" by order. In child cases, extensions of time are available only in emergency circumstances.

**Motion for Rehearing**

Although motions for rehearing are permitted by Florida Rule of Appellate Procedure 9.330, the court strongly discourages the practice of routinely filing such motions. *See Whipple v. State*, 431 So. 2d 1011 (Fla. 2d DCA 1983). Rule 9.330(a) requires that a motion for rehearing set forth the law or fact that the court has overlooked or misapprehended in its decision and prohibits presenting issues not previously raised in the proceedings. Where there has been an award of attorney's fees on appeal, additional fees may be awarded upon a denial of a motion for rehearing. Any response to a motion for rehearing must be served within 15 days of service of the motion.

## 8. CERTIFICATES OF SERVICE

This court does not provide service of documents for litigants. Litigants must serve opposing counsel/parties with a copy of all documents filed with the court. All filings shall contain a certificate of service stating that copies have been provided to the opposing counsel/parties. *See* Fla. R. Gen. Prac. & Jud. Admin 2.516 and Fla. R. App. P. 9.420. Below are examples of Certificates of Service:

By Attorney or Pro Se Litigant:

I certify that a copy of this filing has been provided to (insert name(s)) by (circle delivery/mail/e-mail/E-Filing Portal) on (insert date). (Sign), attorney for (insert name of party) (insert name if pro se), (insert address), (insert phone number), (insert e-mail/mailing address), (insert Bar number if an attorney).

By Incarcerated Pro Se Litigant:

I certify that a copy of this filing has been placed in the hands of (insert name of institutional official) for mailing to (insert name(s)) on (insert date). (Sign), (insert address), (insert phone number), (insert prison identification numbers).

## 9. AFTER HOURS FILINGS

There is no guarantee a security guard will be available after hours on any given day to accept filings so litigants should file time-sensitive documents during regular business hours (8 a.m. to 5 p.m.) on days the court is open. The date an electronic filing is received by the court through the E-Filing Portal will constitute the date of filing, up to 11:59 p.m., Eastern Time.

## 10. EMERGENCY FILINGS

A filing about an emergency matter should be labeled as an "Emergency" and must be served on opposing parties/counsel. Emergency documents filed though the E-Filing Portal may be marked as "Emergency" by checking the emergency filing box. Filings should only be marked as "Emergency" if a true emergency, requiring immediate judicial attention, exists. There is no need to mark a filing as an emergency solely because it is due that day or the due date is approaching.

## 11. BRIEFS

Only one copy of a brief is permitted to be filed. The initial and answer briefs must include a list of citations and a table of contents. The table of contents should list each issue on appeal. The answer brief shall contain all the same elements as contained in the initial brief except that the statement of the case and facts may be omitted. The argument section of briefs must contain the standard of review to be applied by the court as to each issue presented. *See* Fla. R. App. P. 9.210.

**Page Limits:**
Initial and answer briefs may not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. Reply briefs may not exceed 4,000 words if computer-generated or 15 pages if handwritten or typewritten. If a cross-appeal has been filed, the answer brief/initial brief on cross-appeal shall not exceed 22,000 words if computer-generated or 85 pages if handwritten or typewritten. A reply brief that includes the appellant's answer brief on a cross-appeal may not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. Fla. R. App. P. 9.210. Any motion requesting to exceed the page limit must include the proposed expanded brief.

**Formatting:**
All computer-generated briefs must be double-spaced, filed in either Arial 14-point font or Bookman Old Style 14-point font, and include a signed certification that the brief complies with the font requirements. Headings and subheadings may be single-spaced but must be in print at least as large as the rest of the brief. Briefs filed in paper must be on white standard size (8 1/2-by-11-inch) printer paper and must be signed. They should not be bound in book form. *See* Fla. R. App. P. 9.045.

**Amendments/Corrections:**
Any request to amend or correct a brief must be made by motion, accompanied by a copy of the entire brief that includes the correction(s). *See* Fla. R. App. P. 9.210.

## 12. APPENDIX

An appendix is a set of documents related to a brief, motion, or other filing. If an appendix is filed in paper, it must be filed separately from the document it accompanies. Appendices should not be bound in book form. The appendix must have an index (table of contents). Electronically filed appendices must be filed as a single PDF document that is indexed and consecutively paginated, beginning with the cover sheet as page 1. The appendix must be text searchable, paginated so that the page numbers displayed by the PDF reader exactly match the pagination of the index, bookmarked consistently with the index, and shall not contain condensed transcripts. *See* Fla. R. App. P. 9.220.

## 13. PETITIONS, RESPONSES, AND REPLIES

All computer-generated petitions, responses, and replies must be double-spaced, filed in either Arial 14-point font or Bookman Old Style 14-point font, and have a signed certification that the document complies with the font requirements. Headings and subheadings may be single-spaced but must be in print at least as large as the rest of the document. Petitions, responses, and replies filed in paper must be on white standard (8 1/2-by-11-inch) printer paper and must be signed. They should not be bound in book form. A petition or response to a petition should not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. The petitioner's reply should not exceed 4,000 words if computer-generated or 15 pages if handwritten or typewritten. *See* Fla. R. App. P. 9.045

## 14. PHYSICAL EVIDENCE

Physical evidence (not papers) usually is not submitted to the appellate court. If a party wants to include physical evidence with the record on appeal, the party must ask permission from this court by filing a motion. *See* Fla. R. App. P. 9.200.

**15. CORPORATE REPRESENTATION**

While an individual may represent himself or herself in court without an attorney, a corporation is not permitted to do so through non-lawyer employees, officers, or shareholders. *See Richter v. Higdon Homes, Inc.*, 544 So. 2d 300 (Fla. 1st DCA 1989).

**16. FOREIGN ATTORNEYS**

Attorneys who are members in good standing in other jurisdictions may be granted permission by court order to appear in proceedings in this court. *See* Fla. R. App. P. 9.440; Fla. R. Gen. Prac. & Jud. Admin. 2.510. Attorneys who have been permitted to appear pro hac vice in the lower court must still file a motion for leave to appear before this court.

**17. ORAL ARGUMENT**

Cases receive the same consideration by a three-judge panel regardless of whether oral argument is requested. Requests for oral argument must be made by a filing labeled as a request for oral argument. The filing may not contain any other subject matter. Oral argument requests should be limited to those cases where counsel believes it will serve a definite and useful purpose in aiding the court in deciding the issue(s) on appeal. *See* Fla. R. App. P. 9.320. Requests for oral argument shall be made not later than 15 days after the last brief is due, or in petitions, not later than 15 days after the reply is due. Once the court has scheduled oral argument, motions for continuances are not favored except in emergency circumstances and counsel must notify the court as soon as possible if a settlement agreement appears likely or a motion for voluntary dismissal is expected prior to oral argument.

**18. NOTICE OF SUPPLEMENTAL AUTHORITY**

If a relevant authority is discovered after briefing, a notice with a copy of the authority attached may be filed. While the notice should designate the issue to which the supplemental authority relates, no argument or comment on the authority may be included in the notice. *See* Fla. R. App. P. 9.225.

**19. APPELLATE MEDIATION PROGRAM**

Requests for mediation are governed by Florida Rule of Appellate Procedure 9.700.

**20. AMERICANS WITH DISABILITIES ACT**

**In accordance with the Americans with Disabilities Act, if you are a person with a disability who needs any accommodation in order to participate in proceedings or activities before this court, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the First District Court of Appeal Marshal's Office at 2000 Drayton Drive, Tallahassee, Florida 32399-0950; or at telephone number (850) 717-8132, at least seven (7) days before the proceeding, or immediately upon receiving this notification if the time before the scheduled proceeding is less than seven (7) days. If you are hearing or voice impaired, call 711.**

**21. FILING FEES**

Filing fees are due immediately upon filing of a new case or notice of cross-appeal or joinder. Filings fees may be paid in person, by mail, or through the Florida Courts E-Filing Portal. (Go to the "Documents" page, click the "Add" button, and search for the "Pay Fee" category). A cover letter or copy of this court's fee order must be filed with payment. Do not attach a fee payment to a motion, brief, or other filing. The E-Filing Portal adds a convenience fee to all electronic payments.

Filing # 239309993 E-Filed 01/12/2026 03:45:49 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024 CA 001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTIONS AND
IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING APPEAL**

**COMES NOW** Plaintiff, JOHN D. LEVITAN, SR., appearing *pro se,* and files this Reply in Support of his Motion to Stay Proceedings Pending Appeal, and states:

1. Defendants' opposition rests on three central propositions: (1) that the First District Court of Appeal lacks jurisdiction; (2) that Plaintiff waived any objection to conflicted counsel; and (3) that no irreparable harm exists. Each is incorrect.

2. At this stage, this Court is not asked to adjudicate the merits of appellate jurisdiction. A Notice of Appeal has been filed, and the appeal is pending. The trial court's role is limited to determining whether a stay is warranted to preserve the status quo and prevent irreparable harm while the appellate court determines its own jurisdiction and the merits. See *Koulisis v. Rivers*, 730 So. 2d 289, 292 (Fla. 4th DCA 1999). Whether

Defendants ultimately prevail on a jurisdictional argument is for the First District—not this Court—to decide. Proceeding now risks rendering the appeal meaningless.

3. Defendants' attempt to recharacterize the November 17 Order as something other than an order "denying disqualification of counsel" elevates form over substance. The Order resolved Plaintiff's objection to conflicted counsel and permitted that counsel to appear and act in this litigation. Rule 9.130(a)(3)(E) exists to prevent precisely what is occurring here: forcing a litigant to proceed while the propriety of opposing counsel's participation is under appellate review. If Defendants are correct, the First District will dismiss the appeal. If Plaintiff is correct, the harm of proceeding cannot be undone. That asymmetry is the very reason a stay is appropriate.

4. Defendants' waiver argument misstates the record. Plaintiff did not invite the ruling now under review. Plaintiff expressly preserved his objection to the conflicted representation and withdrew only a procedural impediment so that the case would not stall in the trial court while he pursued relief in the proper forum. The Order itself recognizes that Plaintiff's position was "without prejudice" and "a standing objection." A litigant cannot be deemed to have "invited" error where he has consistently objected to the underlying conflict and has never affirmatively requested that conflicted counsel be permitted to appear.

5. Nor do Defendants defeat the showing of irreparable harm. Florida law is settled that the harm from erroneous denial of disqualification is irreparable because the bell cannot be unrung. Strategy, discovery posture, and litigation trajectory are permanently altered by the participation of counsel whose involvement is later deemed improper. That is why such orders are immediately appealable. Defendants' argument—that Plaintiff will

eventually have to disclose financial information anyway—misses the point. The harm is not merely disclosure; it is the distortion of the adversarial process by conflicted counsel whose interests are intertwined with the subject matter of the case and who are themselves named Defendants.

6. Defendants also misapply *Spacebox Dover, LLC v. LSREF2 Baron LLC*, 112 So. 3d 751 (Fla. 2d DCA 2013). Plaintiff does not contend that *Spacebox* governs all stays. Rather, it illustrates that a stay is appropriate where continuation of proceedings threatens to undermine appellate review. Here, allowing discovery, motion practice, or dispositive rulings while the propriety of opposing counsel's participation is under review risks mooting the appeal and forcing the First District to confront a fait accompli. Florida law disfavors such interference with appellate jurisdiction.

7. Finally, Defendants identify no concrete prejudice from a temporary pause. A stay merely preserves the status quo. By contrast, denying a stay forces Plaintiff to litigate against counsel whose authority to appear is the very issue on appeal. The balance of equities, the risk of irreparable harm, and the public interest in the integrity and appearance of fairness of judicial proceedings all favor a stay.

[*This Space Intentionally Left Blank*]

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the Motion and stay all proceedings in this matter pending resolution of the interlocutory appeal. A hearing is not necessary on this request as the record provides the Court all needed arguments.

Respectfully submitted,
January 12, 2026

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties of record under the Florida E-Filing Portal on this 12th day of January 2026.

John D. Levitan

Filing # 237652264 E-Filed 12/12/2025 09:35:18 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

**CASE NO. 2024 CA 001164**

**GILEAD SCIENCES, INC.**
**GILEAD SCIENCES IRELAND UC**
**PATTERSON, BELKNAPP, WEBB & TYLER, LLP,**
**a New York Limited Liability Partnership,**
**GEOFFREY POTTER, an Individual,**
**TIMOTHY ALAN WATERS, an Individual,**
**ARON FISCHER, an Individual,**
**JOSHUA STEIN, an Individual,**
**THOMAS P. KURLAND,** an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

Defendants.
_____________________________________/

## NOTICE OF APPEAL

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and NOTICE IS GIVEN that John D. Levitan appeals the Order denying Plaintiff's request for disqualification of counsel on Defendant's Motion for Substitution of Counsel by Attorneys Clark, Partington, Hart for Defendants GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, THOMAS P. KURLAND, an Individual Defendant(s), Jointly and Severally appeal to the FLORIDA FIRST DISTRICT COURT OF APPEAL the order of this Court rendered on November 17, 2025. *Exhibit A*. The nature of the order is a Non-Final Order denying Plaintiff's

Motion for Disqualification of Counsel (Conformed Copy attached). Appeal is pursuant to Rule 9.130(E), Florida Rules of Appellate Procedure.

Respectfully submitted,

December 12, 2025

/s/ ______________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com and J Barnes jbarnes@clarkpartington.com on this 12th day of December 2025.

/s/ ______________________

John D. Levitan, pro se

# EXHIBIT A

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

JOHN D. LEVITAN, SR.,
Plaintiff,

v.

CASE NO.: 2024 CA 001164
DIVISION: N

GILEAD SCIENCES, INC.,
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally
Defendants.
_____________________________________/

**ORDER OVERRULING PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO SUBSTITUTE COUNSEL OF RECORD**

**THIS MATTER** came before the Court on the Objection by Plaintiff, JOHN D. LEVITAN, SR., to the Motion to Substitute Counsel of Record filed by Defendants, GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and THOMAS P. KURLAND, an Individual (known collectively as "Defendants"), e-filed on October 14, 2025 [DIN 29].

Although Pro Se Plaintiff "withdrew his objections" on [DIN 39], the Court finds that it was without prejudice and to be considered a "standing objection." The matter was heard on November 10, 2025 at a duly advised hearing on Defendants' Motion for Substitution of Counsel, e-filed on October 14, 2025. Plaintiff did not appear. The Court having heard arguments from

Defendants' counsel at a hearing on November 10, 2025, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Objection to Defendants' Motion to Substitute Counsel of Record is **OVERRULED**.

**DONE AND ORDERED** in Chambers at Pensacola, Escambia County, Florida.

11/17/2025 11:38:34
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 11/17/2025 11:38:34 PZGNrYx+

JENNIFER J. FRYDRYCHOWICZ
Circuit Court Judge

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Conformed Copies:

John D. Levitan, Sr., *Pro Se*
Jeremy C. Branning, Esq.
Jacob F. Barnes, Esq.

RECEIVED
By Escambia County Clerk of Court at 1:33 pm, Jan 21, 2026

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive,**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850) 488-6151**

January 21, 2026

**Acknowledgment of New Case**

| | |
|---|---|
| John D. Levitan, Sr.,<br>Petitioner(s)<br>v.<br><br>The Honorable Jennifer J. Frydrychowicz, Circuit Judge of the First Judicial Circuit in and for Escambia County, Florida, and Patterson Belknap Webb & Tyler LLP, et al.<br>Respondent(s). | **Case 1D2026-0175**<br>L.T. No (If Applicable).: 2024 CA 001164 |

---

The First District Court of Appeal has received a Petition for Writ of Mandamus, filed in this Court on January 20, 2026.

All documents filed in this case must contain this Court's case number.

Per Administrative Order 23-1, Petitioner must file a Docketing Statement/Notice of Appearance of Counsel ("Docketing Statement") within twenty days of the date of this acknowledgment notice. If pro se, Petitioner may file a paper Docketing Statement by mail or an electronic Docketing Statement via the Florida Court's E-Filing Portal. If represented, Petitioner's attorney must file the Docketing Statement via the Portal. A fillable form version of the Docketing Statement is available via a link on the "Documents" tab of the Portal or on this Court's website at https://www.1dca.flcourts.gov/Resources/General-Information. Opposing parties must file a Docketing Statement only if they seek to make amendments, corrections, or additions to Petitioner's Docketing Statement.

Served:

Escambia Clerk
Hon. Jennifer Jozanne Frydrychowicz
John D. Levitan, Sr.

PP

1D2026-0175 January 21, 2026
Kristina Samuels, Clerk
1D2026-0175 January 21, 2026

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**STATE OF FLORIDA**

# NOTICE TO ATTORNEYS AND PARTIES

**(Revised April 2024)**

Counsel and Parties must comply with the Florida Rules of General Practice and Judicial Administration, the Florida Rules of Appellate Procedure, and these guidelines. This notice is not intended to and does not provide parties with separately enforceable rights.

Counsel and parties may only communicate with judges through properly served filings in a case or at oral argument. Ex parte communication with judges or their staffs is prohibited. Parties with attorneys should ask their attorneys any questions about their case. Unrepresented (pro se) parties may call the Clerk's Office for status updates.

Judges are not permitted to provide legal advice or respond to questions of law except in cases properly before the court. Employees of the clerk's office and the court also are not permitted to provide legal advice. Litigants should review the Florida Rules of Appellate Procedure and may want to consult the Pro Se (Unrepresented) Appellate Handbook from the Appellate Practice Section of The Florida Bar at http://www.flabarappellate.org. The court's website (www.1dca.flcourts.gov) has court opinions, oral argument videos, a live oral argument feed, administrative orders, and other useful information.

Electronic filings and payments should be made through the Florida Courts E-Filing Portal at https://myflcourtaccess.com. Go to the Florida Courts E-Filing Portal's website to register. All attorneys are required to file their documents electronically. Pro se litigants may, but are not required to, use the E-Filing Portal. The court does not accept filings by fax or e-mail. Other than with payment of filing fees, filers should not include a "transmittal letter" that serves no other purpose but to inform the court of what document(s) is being filed. The filing itself should have a title identifying the type of document (brief, record, motion, etc.) and the case in which it is to be filed. You may view documents in your case through the Florida Appellate Case Information System at https://acis.flcourts.gov.

This court will communicate with attorneys and pro se parties, unless the party is incarcerated, by e-mail. If a non-incarcerated pro se litigant does not have an e-mail address or regular access to the internet, the litigant may request service by mail by completing form 2.601, which is available on the court's website or in paper from the Clerk's Office by request.

## 1. NOTICE OF APPEAL

Notices of appeal should be filed with the lower tribunal. The notice of appeal should include the full name of the lower tribunal judge or hearing officer who entered the order(s) and the date of rendition of the order(s) to be reviewed. *See* Fla. R. App. P. 9.020 or 9.180. The notice also should contain the names of all parties to the appeal and whether the appeal is from a final or non-final order. The certificate of service (see #8 below) for the notice of appeal should include the address (mailing and e-mail) for each party or attorney, the name of the party the attorney represents, and whether the party represented is an appellant, appellee, etc. *See* Fla. R. App. P. 9.110, 9.130, 9.180, and 9.420.

## 2. COPY OF ORDER BEING APPEALED

The party filing the notice of appeal shall attach to the notice a copy of the order(s) that the party wants reviewed. The party filing the appeal shall also attach a copy of any motion or order that affects the date of rendition of the order appealed. *See* Fla. R. App. P. 9.020, 9.110, and 9.130.

### 3. DOCKETING STATEMENTS

All appellants and petitioners must complete a Docketing Statement to the best of their ability, serve (send) a copy on the opposing parties/attorneys, and return a copy to the court. Paper filers may complete the pink paper Docketing Statement provided by the court. For electronic filers, a fillable Docketing Statement will be available on the E-Filing Portal and on this court's website.

### 4. NUMBER OF COPIES

If a document is filed in paper, only the original is required. If a document is filed electronically through the E-Filing Portal, no paper copies are permitted.

### 5. COPIES OF RECORDS

The Clerk's office is required by statute to charge $1.00 per page to make copies of case records. Additional fees may apply for other services, such as certification. Registered attorneys and parties may be able to find copies of records in their cases on ACIS. Copies of records available on ACIS may be downloaded by a registered user without charge. Records may need to be reviewed for confidential information before they can be provided.

### 6. RECORD ON APPEAL

In appeal cases, the lower tribunal clerk's office (not a party or attorney) will transmit a copy of the record on appeal to this court. The record on appeal contains documents filed in the lower tribunal. Any additions or corrections to the record on appeal must be sent by the lower tribunal clerk's office (not by a party or attorney).

### 7. MOTIONS

Any request for action or relief from this court should be filed as a motion labeled with the case name, this court's case number, and the lower tribunal number. *See* Fla. R. App. P. 9.300. All motions must contain a proper certificate of service showing that copies of the motion have been served on the opposing counsel/parties. *See* #8 below. Any response to a motion shall be served within 15 days of the service of the motion. No reply to a response is permitted. *See* Fla. R. App. P. 9.300(a).

#### Notice/Motion for Extension of Time

Pursuant to Administrative Order 19-2, an agreed notice of extension of time will be accepted in:

(A) **civil** appeals for up to a total of 90 days for initial/answer briefs and up to a total of 15 days for reply briefs; and
(B) **crimina**l appeals for up to a total of 60 days for initial/answer briefs.

The agreed notice must state the number of days agreed upon for the extension, not just the date the brief would be due. Extensions granted prior to filing the agreed notice count as part of the aggregate time periods. Agreed notices of extension are NOT permitted in proceedings involving adoptions, dependency, termination of parental rights, delinquency, emergency appeals, any appeal that has been expedited by court order, original proceedings governed by Rule 9.100, Workers' Compensation proceedings, or appeals governed by Rule 9.141(b)(2).

A **motion** for extension of time must be filed to ask for an extension in case types where a notice is not permitted (see prior paragraph) or to ask for more days than are available by notice. Motions for extension of time must state the number of days requested, the date by which the document will be filed, the reason an extension is needed, that opposing counsel has been consulted, and opposing counsel's position about the extension. Good cause is needed if a motion for extension of time is filed after the document's due date.

In Workers' Compensation cases, a motion requesting an extension on the sole basis of a busy schedule will not be favorably received. Extensions for reply briefs will be granted in Workers' Compensation cases only in emergency circumstances.

The court has expedited procedures for cases involving children. These cases are designated as "child cases" by order. In child cases, extensions of time are available only in emergency circumstances.

**Motion for Rehearing**

Although motions for rehearing are permitted by Florida Rule of Appellate Procedure 9.330, the court strongly discourages the practice of routinely filing such motions. *See Whipple v. State*, 431 So. 2d 1011 (Fla. 2d DCA 1983). Rule 9.330(a) requires that a motion for rehearing set forth the law or fact that the court has overlooked or misapprehended in its decision and prohibits presenting issues not previously raised in the proceedings. Where there has been an award of attorney's fees on appeal, additional fees may be awarded upon a denial of a motion for rehearing. Any response to a motion for rehearing must be served within 15 days of service of the motion.

## 8. CERTIFICATES OF SERVICE

This court does not provide service of documents for litigants. Litigants must serve opposing counsel/parties with a copy of all documents filed with the court. All filings shall contain a certificate of service stating that copies have been provided to the opposing counsel/parties. *See* Fla. R. Gen. Prac. & Jud. Admin 2.516 and Fla. R. App. P. 9.420. Below are examples of Certificates of Service:

By Attorney or Pro Se Litigant:

I certify that a copy of this filing has been provided to (insert name(s)) by (circle delivery/mail/e-mail/E-Filing Portal) on (insert date). (Sign), attorney for (insert name of party) (insert name if pro se), (insert address), (insert phone number), (insert e-mail/mailing address), (insert Bar number if an attorney).

By Incarcerated Pro Se Litigant:

I certify that a copy of this filing has been placed in the hands of (insert name of institutional official) for mailing to (insert name(s)) on (insert date). (Sign), (insert address), (insert phone number), (insert prison identification numbers).

## 9. AFTER HOURS FILINGS

There is no guarantee a security guard will be available after hours on any given day to accept filings so litigants should file time-sensitive documents during regular business hours (8 a.m. to 5 p.m.) on days the court is open. The date an electronic filing is received by the court through the E-Filing Portal will constitute the date of filing, up to 11:59 p.m., Eastern Time.

## 10. EMERGENCY FILINGS

A filing about an emergency matter should be labeled as an "Emergency" and must be served on opposing parties/counsel. Emergency documents filed though the E-Filing Portal may be marked as "Emergency" by checking the emergency filing box. Filings should only be marked as "Emergency" if a true emergency, requiring immediate judicial attention, exists. There is no need to mark a filing as an emergency solely because it is due that day or the due date is approaching.

## 11. BRIEFS

Only one copy of a brief is permitted to be filed. The initial and answer briefs must include a list of citations and a table of contents. The table of contents should list each issue on appeal. The answer brief shall contain all the same elements as contained in the initial brief except that the statement of the case and facts may be omitted. The argument section of briefs must contain the standard of review to be applied by the court as to each issue presented. *See* Fla. R. App. P. 9.210.

**Page Limits:**
Initial and answer briefs may not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. Reply briefs may not exceed 4,000 words if computer-generated or 15 pages if handwritten or typewritten. If a cross-appeal has been filed, the answer brief/initial brief on cross-appeal shall not exceed 22,000 words if computer-generated or 85 pages if handwritten or typewritten. A reply brief that includes the appellant's answer brief on a cross-appeal may not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. Fla. R. App. P. 9.210. Any motion requesting to exceed the page limit must include the proposed expanded brief.

**Formatting:**
All computer-generated briefs must be double-spaced, filed in either Arial 14-point font or Bookman Old Style 14-point font, and include a signed certification that the brief complies with the font requirements. Headings and subheadings may be single-spaced but must be in print at least as large as the rest of the brief. Briefs filed in paper must be on white standard size (8 1/2-by-11-inch) printer paper and must be signed. They should not be bound in book form. *See* Fla. R. App. P. 9.045.

**Amendments/Corrections:**
Any request to amend or correct a brief must be made by motion, accompanied by a copy of the entire brief that includes the correction(s). *See* Fla. R. App. P. 9.210.

## 12. APPENDIX

An appendix is a set of documents related to a brief, motion, or other filing. If an appendix is filed in paper, it must be filed separately from the document it accompanies. Appendices should not be bound in book form. The appendix must have an index (table of contents). Electronically filed appendices must be filed as a single PDF document that is indexed and consecutively paginated, beginning with the cover sheet as page 1. The appendix must be text searchable, paginated so that the page numbers displayed by the PDF reader exactly match the pagination of the index, bookmarked consistently with the index, and shall not contain condensed transcripts. *See* Fla. R. App. P. 9.220.

## 13. PETITIONS, RESPONSES, AND REPLIES

All computer-generated petitions, responses, and replies must be double-spaced, filed in either Arial 14-point font or Bookman Old Style 14-point font, and have a signed certification that the document complies with the font requirements. Headings and subheadings may be single-spaced but must be in print at least as large as the rest of the document. Petitions, responses, and replies filed in paper must be on white standard (8 1/2-by-11-inch) printer paper and must be signed. They should not be bound in book form. A petition or response to a petition should not exceed 13,000 words if computer-generated or 50 pages if handwritten or typewritten. The petitioner's reply should not exceed 4,000 words if computer-generated or 15 pages if handwritten or typewritten. *See* Fla. R. App. P. 9.045

## 14. PHYSICAL EVIDENCE

Physical evidence (not papers) usually is not submitted to the appellate court. If a party wants to include physical evidence with the record on appeal, the party must ask permission from this court by filing a motion. *See* Fla. R. App. P. 9.200.

**15. CORPORATE REPRESENTATION**

While an individual may represent himself or herself in court without an attorney, a corporation is not permitted to do so through non-lawyer employees, officers, or shareholders. *See Richter v. Higdon Homes, Inc.*, 544 So. 2d 300 (Fla. 1st DCA 1989).

**16. FOREIGN ATTORNEYS**

Attorneys who are members in good standing in other jurisdictions may be granted permission by court order to appear in proceedings in this court. *See* Fla. R. App. P. 9.440; Fla. R. Gen. Prac. & Jud. Admin. 2.510. Attorneys who have been permitted to appear pro hac vice in the lower court must still file a motion for leave to appear before this court.

**17. ORAL ARGUMENT**

Cases receive the same consideration by a three-judge panel regardless of whether oral argument is requested. Requests for oral argument must be made by a filing labeled as a request for oral argument. The filing may not contain any other subject matter. Oral argument requests should be limited to those cases where counsel believes it will serve a definite and useful purpose in aiding the court in deciding the issue(s) on appeal. *See* Fla. R. App. P. 9.320. Requests for oral argument shall be made not later than 15 days after the last brief is due, or in petitions, not later than 15 days after the reply is due. Once the court has scheduled oral argument, motions for continuances are not favored except in emergency circumstances and counsel must notify the court as soon as possible if a settlement agreement appears likely or a motion for voluntary dismissal is expected prior to oral argument.

**18. NOTICE OF SUPPLEMENTAL AUTHORITY**

If a relevant authority is discovered after briefing, a notice with a copy of the authority attached may be filed. While the notice should designate the issue to which the supplemental authority relates, no argument or comment on the authority may be included in the notice. *See* Fla. R. App. P. 9.225.

**19. APPELLATE MEDIATION PROGRAM**

Requests for mediation are governed by Florida Rule of Appellate Procedure 9.700.

**20. AMERICANS WITH DISABILITIES ACT**

**In accordance with the Americans with Disabilities Act, if you are a person with a disability who needs any accommodation in order to participate in proceedings or activities before this court, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the First District Court of Appeal Marshal's Office at 2000 Drayton Drive, Tallahassee, Florida 32399-0950; or at telephone number (850) 717-8132, at least seven (7) days before the proceeding, or immediately upon receiving this notification if the time before the scheduled proceeding is less than seven (7) days. If you are hearing or voice impaired, call 711.**

**21. FILING FEES**

Filing fees are due immediately upon filing of a new case or notice of cross-appeal or joinder. Filings fees may be paid in person, by mail, or through the Florida Courts E-Filing Portal. (Go to the "Documents" page, click the "Add" button, and search for the "Pay Fee" category). A cover letter or copy of this court's fee order must be filed with payment. Do not attach a fee payment to a motion, brief, or other filing. The E-Filing Portal adds a convenience fee to all electronic payments.

Filing # 240291664 E-Filed 01/26/2026 03:54:31 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,**
**Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164**
**DIVISION: N**

**GILEAD SCIENCES, INC., et al.,**
**Defendants.**
_______________________________________/

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDICIAL DEFAULT FOR FAILING TO ANSWER AS ORDERED BY THE COURT**

**THIS MATTER** is before the Court on Plaintiff's Motion for Judicial Default for Failing to Answer as Ordered by the Court, e-filed on November 9, 2025. The Court entered an Omnibus Order on December 8, 2025, requiring written responses to multiple pending motions and cancelled a hearing not set until June 17, 2026 "due to Plaintiff's persistent unavailability." The Court has reviewed the Motion, Response in Opposition, file, applicable law, and being otherwise advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion is DENIED. The Court will enter a separate order on Defendants' Motion to Dismiss, e-filed on October 29, 2025.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

01/26/2026 14:16:23
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 01/26/2026 02:16:23 ZP1BUXBJ

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING and JACOB BARNES, Attorneys for Defendants

Filing # 240291489 E-Filed 01/26/2026 03:53:38 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,
Plaintiffs,**

**v.**

**CASE NO.: 2024 CA 001164
DIVISION: N**

**GILEAD SCIENCES, INC., et al.,
Defendants.**
_______________________________________/

**ORDER REQUIRING DOCKETING**

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss First Amended Complaint, e-filed on October 29, 2025. Plaintiff filed his Response in Opposition on December 15, 2025, and Defendants filed a Reply on December 23, 2025. However, the Court has reviewed the file and finds that a First Amended Complaint has not been filed in the instant action. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff shall either file his First Amended Complaint or a Notification that he is proceeding under the initial complaint, e-filed on September 2, 2024, in the next seven (7) days. Plaintiff's filing shall be courtesy copied to the undersigned judge's judicial assistant at hayley.faulkner@flcourts1.gov. Failure to comply with this order may result in sanctions, which include dismissal of this action.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

01/26/2026 14:53:26
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 01/26/2026 02:53:26 Hzrp7cBq

**JENNIFER J. FRYDRYCHOWICZ
CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING (JBRANNING@CLARKPARTINGTON.COM) and JACOB BARNES (jbarnes@clarkpartington.com), Attorneys for Defendants

Filing # 240291616 E-Filed 01/26/2026 03:54:18 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,**
**Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164**
**DIVISION: N**

**GILEAD SCIENCES, INC., et al.,**
**Defendants.**
_____________________________________/

**ORDER DENYING PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING DISQUALIFICATION OF DEFENDANTS' COUNSEL**

**THIS MATTER** is before the Court on Plaintiff's Motion to Stay Proceedings Pending Appeal of Order Denying Disqualification of Defendants' Counsel, e-filed on December 15, 2025. The Court having reviewed the Motion, Defendants' Response in Objection, Plaintiff's Reply, the file, and being otherwise advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion is DENIED.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

01/26/2026 14:09:17
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 01/26/2026 02:09:17 QnXO-Ehd

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING and JACOB BARNES, Attorney for Defendants

Filing # 240292628 E-Filed 01/26/2026 04:00:01 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,
Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164
DIVISION: N**

**GILEAD SCIENCES, INC., et al.,
Defendants.**

______________________________/

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS**

**THIS MATTER** is before the Court on Plaintiff's Motion to Strike Defendants' Motion to Dismiss, e-filed on November 9, 2025. The Court has reviewed the Motion, Response, the file, and being otherwise advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion is DENIED.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

01/26/2026 14:59:53
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 01/26/2026 02:59:53 T-Zk+J3E

**JENNIFER J. FRYDRYCHOWICZ
CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING and JACOB BARNES, Attorneys for Defendants

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,**
**Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164**
**DIVISION: N**

**GILEAD SCIENCES, INC.,**
**Defendants.**
______________________________________/

**ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY**

**THIS MATTER** is before the Court on several motions pursuant to an Omnibus Order on Pending Motions and Cancellation of June 17, 2026 Hearing, entered on December 8, 2025. Defendants filed a Motion to Stay Discovery pending the resolution of Defendants' Motion to Dismiss First Amended Complaint. The Court has reviewed the Motion, Response in Objection, and the file. It is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Stay Discovery is GRANTED. Discovery is stayed pending ruling on their Motion to Dismiss.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

01/26/2026 15:04:15
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 01/26/2026 03:04:15

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:

Plaintiff
JEREMY BRANNING and JACOB BARNES, Attorneys for Defendants

RECEIVED
By Escambia County Clerk of Court at 3:13 pm, Jan 26, 2026

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive,**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850) 488-6151**

January 26, 2026

John D. Levitan, Sr.,
Petitioner(s)
v.

Patterson Belknap Webb & Tyler LLP, et al.
Respondent(s).

**Case 1D2026-0175**
L.T. No.: 2024 CA 001164

---

**BY ORDER OF THE COURT:**

The Court restyles this case as shown above. Fla. R. App. P. 9.100(e). All future filings in this case must use the updated style.

**I HEREBY CERTIFY** that the above order is issued at the Court's direction.

Served:
Escambia Clerk
Hon. Jennifer Jozanne Frydrychowicz
Dylan Bailey Howard
John D. Levitan, Sr.

RL

1D2026-0175 January 26, 2026
Kristina Samuels, Clerk
1D2026-0175 January 26, 2026

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,
Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164
DIVISION: N**

**GILEAD SCIENCES, INC.,
Defendants.**

_______________________________________/

**ORDER TO SHOW CAUSE TO PLAINTIFF FOR FAILURE TO COMPLY WITH JANUARY 26, 2026 ORDER**

**THIS MATTER** is before the Court on its Order Requiring Docketing, e-filed on January 26, 2026 [DIN 86]. Per the Order, Plaintiff had seven days to file his First Amended Complaint or a Notification that he was proceeding under the initial complaint, e-filed on September 2, 2024. To date, Plaintiff has failed to comply with the Court's Order. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff shall show cause, in writing, in the next five (5) days offering good cause as to why he should not be held in contempt of court and face sanctions, including dismissal of this matter, for failing to file his operative complaint pursuant to the Court's Order dated January 26, 2026. Said response shall be courtesy copied to the undersigned judge's judicial assistant at hayley.faulkner@flcourts1.gov. Failure to comply will be interpreted as a non-objection, and Defendants shall thereafter prepare an Order of Dismissal Otherwise, the Court will rule on the paper.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

02/06/2026 16:50:40
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 02/06/2026 04:50:40

**JENNIFER J. FRYDRYCHOWICZ
CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
JOHN LEVITAN, Plaintiff
JEREMY BRANNING and JACOB BARNES, Attorneys for Defendants

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact:**

**Court Administration, ADA Liaison**
**Escambia County**
**190 Governmental Center, 5th Floor**
**Pensacola, FL 32502**
**Phone (850) 595-4400 Fax (850) 595-0360**
**ADA.Escambia@flcourts1.gov**

**at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

Filing # 241479345 E-Filed 02/10/2026 09:32:30 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. 2024-cv-001164

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**VERIFIED MOTION TO DISQUALIFY JUDGE**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se*, pursuant to Rule 2.330, Florida Rules of General Practice and Judicial Administration, respectfully moves to disqualify the presiding judge and states:

---

## I. LEGAL STANDARD

1. A judge must be disqualified where the facts alleged would place a reasonably prudent person in a well-founded fear that he or she will not receive a fair and impartial hearing. See, *MacKenzie v. Super Kids Bargain Store, Inc.*, 565 So.2d 1332 (Fla. 1990)("Whenever a party to any action or proceeding makes and files an affidavit stating that he fears he will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge

of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists. ..”), *Livingston v. State*, 441 So.2d 1083 (Fla. 1983),

a. *Legal Sufficiency Test*: A motion to disqualify a judge is legally sufficient if it shows that a party has a well-grounded fear that they will not receive a fair trial.

b. *Objective Standard*: The fear must be based on facts that would lead a reasonably prudent person to believe they could not receive an impartial hearing.

c. Judge's Role: Once a motion is filed, the trial judge is prohibited from passing on the truth of the allegations; they may only determine if the motion is legally sufficient.

d. Immediate Action: If the motion is sufficient, the judge must immediately disqualify themselves and take no further action in the case.

*Id.*

*Bundy v. Rudd*, 366 So.2d 440 (Fla. 1978):

> “Regardless of whether respondent ruled correctly in denying the motion for disqualification as legally insufficient, our rules clearly provide, and we have repeatedly held, that a judge who is presented with a motion for his disqualification "shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification." Fla.R.Crim.P. 3.230(d); see, e.g., *Dickenson v. Park*s, 104 Fla. 577, 140 So. 459 (1932); *Suarez v. State*, 95 Fla. 42, 115 So. 519 (1928); *Theo. Hirsch Co. v. McDonald Furniture Co.*, 94 Fla. 185, 114 So. 517 (1927). When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has then exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification. Our disqualification rule, which limits the trial judge to a bare determination of legal sufficiency, was expressly designed to prevent what occurred in this case the creation of "an intolerable adversary atmosphere" between

the trial judge and the litigant. The test is not actual bias, but the *objective appearance of partiality or prejudgment. Id.*

2. This Motion is based solely on specific, objective facts that occurred the day after the First DCA transmitted its' Order changing the case tyle of the case of the Petition for Mandamus demonstrating:

a. unequal treatment of the parties,

b. repeated discovery stays benefiting Defendant of over 14 months, and

c. immediate *en masse* adverse rulings to the Plaintiff on:

*i.* Plaintiff's Motion for Judicial Default for Plaintiff's Failure to File a Responsive Pleading (Filed 11/09/2026) **DENIED 1/26/2026.**

ii. Motion For Judicial Default for Failing to Answer as Ordered by the Court (Filed 11/09/2025) **DENIED 1/26/2026.**

iii. Plaintiff's Motion to Strike Motion to Dismiss (Filed 11/09/2025) **DENIED 1/26/2026**

iv. Motion to Stay Proceedings Pending Appeal (Filed 12/15/2025) **DENIED 1/26/2026**

v. Plaintiff's Motion for Judicial Default for Failing to Answer as Ordered by the Court (11/09/2026) **DENIED 1/26/2026**

vi. Defendant's Motion to Stay Discovery (Filed 11/29/2025) **DENYING PLAINTIFF'S OBJECTIONS TO STAY 1/26/2026**

Collectively these *en masse* denials created a well-founded fear that Plaintiff cannot obtain neutral consideration.

---

## II. SPECIFIC FACTS GIVING RISE TO DISQUALIFICATION

3. This action has been pending while discovery has been repeatedly delayed at Defendant's request.

4. For approximately **sixteen (16) months**, Defendant sought and obtained delays of discovery.

5. The Court(s) granted those delays **over Plaintiff's timely objections**. As a result, Plaintiff has been unable to obtain essential discovery necessary to prosecute the case against the Defendants and to prepare the case for trial.

6. During this same period, Plaintiff filed multiple motions to move the case forward, including: motions to compel discovery, motions to strike improper defense motions using unsubstantiated allegations slanderous to the Plaintiff that were not part of the case to cause judicial bias, objections to further stays beyond a 12-month delay in discovery.

7. Plaintiff filed a Petition for Writ of Mandamus in the Florida First District Court of Appeal seeking only to require the Court to rule on the pending motions as it was Plaintiff's well-founded belief the Court was biased in favor of the Defendants.

8. Immediately after the filing of the mandamus petition, the Court entered orders denying **all** pending motions.

9. The denials occurred in close temporal proximity to the mandamus filing, following approximately many months of stays causing further delays in the case. The motions were denied without hearings and without substantive explanation or analysis. Meanwhile, Defendant had been permitted extended discovery delays and stays without comparable adverse rulings.

## III. OBJECTIVE APPEARANCE CREATED BY THESE FACTS

12. The Court's prolonged failure to rule on Plaintiff's motions, followed by immediate blanket denials only after Plaintiff sought mandamus relief, creates the appearance that the motions were not considered in a neutral and deliberative manner.
13. The timing reasonably suggests that the adverse rulings were triggered by Plaintiff's exercise of the legal right to seek appellate relief rather than by the merits of the motions.
14. Additionally, repeatedly granting Defendant's requested delays while Plaintiff's motions went unheard creates the appearance of unequal application of procedural rules.
15. Preventing Plaintiff from obtaining necessary discovery while permitting Defendant continued delay materially prejudices Plaintiff's ability to prosecute the case.
16. Under Florida law, even the appearance of prejudgment or partiality requires disqualification. See *MacKenzie*, *Livingston*, and *Bundy*, supra.

---

## IV. WELL-FOUNDED FEAR

17. Based on the totality of these facts, a reasonably prudent litigant would fear that:
    a. Plaintiff's motions are not receiving neutral consideration;
    b. the Court has effectively predetermined Plaintiff's requests;
    c. Defendant is receiving more favorable procedural treatment; and
    d. seeking appellate relief results in adverse consequences.
18. Plaintiff therefore has a well-founded and objectively reasonable fear that he/she cannot receive a fair and impartial hearing before the current presiding judge.

---

**V. TIMELINESS**

19. This Motion is filed promptly after entry of the orders denying all pending motions and upon learning of the facts giving rise to this well-founded fear.

---

**WHEREFORE** Plaintiff respectfully requests that this Court:

i. Enter an Order of Disqualification;

ii. Cease further action in this matter;

iii. Refer reassignment to the Chief Judge; and

iv. Grant such further relief as justice requires.

Respectfully submitted,

February 10, 2026

/s/ ______________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

---

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Motion and that the facts stated in it are true and correct.

Executed this 10th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

---

**CERTIFICATE OF GOOD FAITH**

I certify that this Motion is made in good faith and not for purposes of delay.

/s/ ______________________
John D. Levitan, *pro se*

---

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Florida e-filing portal on this 10th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

Filing # 241456440 E-Filed 02/10/2026 07:05:06 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **3:24-cv- 00475-MCR-ZCB**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP,
WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

__________________________________________/

**FIRST AMENDED COMPLAINT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

**PARTIES**

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

FILED USDC FLND PN
NOV 15 '24 PM4:21

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

**JURISDICTION AND VENUE**

10. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

11. The damages subject of this action exceeds $50,000 but is no greater than $70,000.00.

## STATEMENT OF FACTS

12. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional rights of the Plaintiff.

13. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

14. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

15. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.
b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.

d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\

f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the Eastern District of New York (the "First Affidavit") See *Exhibit C*, whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s)

was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") See *Exhibit D* completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to

privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

**COUNT I**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**WARRANTLESS SEARCH BY PRIVATE PERSONS**

30. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

31. Defendant(s), violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

32. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorneys fees.

**COUNT II**
**VIOLATION OF FLORIDA CIVIL RIGHTS RIGHT TO PRIVACY**

33. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

34. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

35. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT III**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**FREEDOM OF SPEECH AND ASSOCIATION**

36. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

37. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other

individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

38. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT IV**
**LIBEL**

39. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

40. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

41. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

42. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT V**
**SLANDER**

17. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

18. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

19. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

20. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**DEMAND FOR JURY TRIAL**

21. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory and punitive damages in an amount to be determined at trial but no greater than $70,000;
ii. For an award of costs, including reasonable attorney's fees;
iii. For such other and further relief as the Court deems just and proper.

Dated: November 15, 2024

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

EXHIBIT A

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

## G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal EXHIBIT B

NEWS

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says



**Jim Little**
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

Case No. 21-cv-4106 (AMD) (RER)

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)**

**AFFIRMATION OF SERVICE**

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

Ryan Robinson

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

Case No. 21-cv-4106 (AMD) (RER)

**AFFIRMATION OF SERVICE UPON JOHN LEVITAN**

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

[signature]

SGT. RYAN ROBINSON

Filing # 241456049 E-Filed 02/10/2026 06:51:38 PM

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**JOHN D. LEVITAN, SR.,**

Plaintiff,

v.

**CASE NO. 2024 CA 001164**

**GILEAD SCIENCES, INC.**
**GILEAD SCIENCES IRELAND UC**
**PATTERSON, BELKNAPP, WEBB & TYLER, LLP,**
**a New York Limited Liability Partnership,**
**GEOFFREY POTTER, an Individual,**
**TIMOTHY ALAN WATERS, an Individual,**
**ARON FISCHER, an Individual,**
**JOSHUA STEIN, an Individual,**
**THOMAS P. KURLAND,** an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

Defendants.
_____________________________________________/

**NOTICE OF FILING FIRST AMENDED COMPLAINT**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se* and NOTICE IS GIVEN that John D. Levitan hereby files with the Court his First Amended Complaint previously filed with the Court on November 15, 2024. See Exhibit A. The Court had directed the First Amended Complaint be filed with the Court, but Plaintiff had already filed the First Amended Complaint on November 15, 2024, and with that filing assumed wrongly that the Court had the First Amended Complaint already filed in the records.

Plaintiff also is filing herewith the Court Dockets for both the US District Court for the Northern District of Florida, Pensacola Division, Exhibit B, and the Eastern District of New York Exhibit C, and the Court's Order ultimately remanding the case Exhibit D ultimately remanding the case to this Court after the Defendants frivolously removed the

case to buy more time and to prevent discovery that has been denied the Plaintiff for over 16 months. Plaintiff was unaware of the possib9ility of the First Amended Complaint not be and the Court files to this Court. If the Court requires these records in toto, Plaintiff will be happy to supply those records and request the records be transmitted from the Clerks of the Courts in the Federal Courts.

WHEREFORE Plaintiff apologizes for the misunderstanding of the meaning of supplying the First Amended Complaint that had been previously filed with the Court.

Respectfully submitted,

February 10, 202

/s/ ______________________________

John D. Levitan, pro se
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email to the Defendants attorneys of record Jeremy Branning jbranning@clarkpartington.com Judi Dallman jdallman@clarkpartington.com Phillip Imperial pmimperial@clarkpartington.com and J Barnes jbarnes@clarkpartington.com on this 10th day of February, 2026.

/s/ ______________________________
John D. Levitan, pro se

# EXHIBIT A

Case 3:26-cv-00013-MCR-ZCB Document 26 Filed 11/15/24 Page 1 of 30

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **3:24-cv- 00475-MCR-ZCB**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP,
WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_______________________________________/

## FIRST AMENDED COMPLAINT

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

## PARTIES

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

FILED USDC FLND PN
NOV 15 '24 PM4:21

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

## JURISDICTION AND VENUE

10. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

11. The damages subject of this action exceeds $50,000 but is no greater than $70,000.00.

**STATEMENT OF FACTS**

12. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional rights of the Plaintiff.

13. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

14. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

15. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.
b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.

d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\

f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the Eastern District of New York (the "First Affidavit") See *Exhibit C*, whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s)

was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") See *Exhibit D* completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to

privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

**COUNT I**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**WARRANTLESS SEARCH BY PRIVATE PERSONS**

30. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

31. Defendant(s), violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

32. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorneys fees.

**COUNT II**
**VIOLATION OF FLORIDA CIVIL RIGHTS RIGHT TO PRIVACY**

33. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

34. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

35. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT III**
**VIOLATION OF FLORIDA CIVIL RIGHTS**
**FREEDOM OF SPEECH AND ASSOCIATION**

36. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

37. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other

individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

38. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT IV**
**LIBEL**

39. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

40. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

41. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

42. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**COUNT V**
**SLANDER**

17. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

18. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

19. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

20. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for compensatory and punitive damages no greater than $70,000, costs of the action and attorney's fees.

**DEMAND FOR JURY TRIAL**

21. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory and punitive damages in an amount to be determined at trial but no greater than $70,000;
ii. For an award of costs, including reasonable attorney's fees;
iii. For such other and further relief as the Court deems just and proper.

Dated: November 15, 2024

Respectfully submitted,

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

EXHIBIT A

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal EXHIBIT B

**NEWS**

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says

**Jim Little**
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

Case No. 21-cv-4106 (AMD) (RER)

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)**

**AFFIRMATION OF SERVICE**

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

Ryan Robinson

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

Case No. 21-cv-4106 (AMD) (RER)

**AFFIRMATION OF SERVICE UPON JOHN LEVITAN**

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

# EXHIBIT B

CLOSED,ProSeNonPrisonerCase

# U.S. District Court
# Northern District of Florida (Pensacola)
# CIVIL DOCKET FOR CASE #: 3:24-cv-00475-MCR-ZCB

LEVITAN v. PATTERSON BELKNAP WEBB & TYLER LLP et al
Assigned to: JUDGE M CASEY RODGERS
Referred to: MAGISTRATE JUDGE ZACHARY C BOLITHO
Case in other court: FIRST JUDICIAL CIRCUIT, ESCAMBIA COUNTY, 2024-CA-001164
Cause: 28:1332 Diversity-Libel,Assault,Slander

Date Filed: 10/03/2024
Date Terminated: 01/23/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**JOHN D LEVITAN, SR.** represented by **JOHN D LEVITAN, SR.**
511 WINDROSE CIRCLE
PENSACOLA, FL 32507
850-497-2724
PRO SE

V.

**Defendant**

**PATTERSON BELKNAP WEBB & TYLER LLP** represented by **HANNAH ELEANOR MURPHY**
STEARNS WEAVER MILLER - TALLAHASSEE FL
106 E COLLEGE AVENUE
SUITE 700
TALLAHASSEE, FL 32301
850-354-7629
Email: hmurphy@stearnsweaver.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GEOFFREY POTTER** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TIMOTHY ALAN WATERS** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ARON FISCHER** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOSHUA STEIN** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**THOMAS P KURLAND** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GILEAD SCIENCES INC** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GILEAD SCIENCES IRELAND UC** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2024 | 1 | NOTICE OF REMOVAL by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER from FIRST CIRCUIT COURT, ESCAMBIA COUNTY, case number 2024-CA-001164. ( Filing fee $ 405 receipt number BFLNDC-9078434.), filed by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER. (Attachments: # 1 Exhibit, # 2 Exhibit NY RELATED CASE DOCKET, # 3 Civil Cover Sheet) (MURPHY, HANNAH) (Entered: 10/03/2024) |
| 10/03/2024 | 2 | Corporate Disclosure Statement/Certificate of Interested Persons by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) (Entered: 10/03/2024) |
| 10/04/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal (please see proposed ISO). (mb) (Entered: 10/04/2024) |
| 10/07/2024 | 3 | MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* by PATTERSON BELKNAP WEBB & TYLER LLP. (MURPHY, HANNAH) (Entered: 10/07/2024) |
| 10/07/2024 | | Set Deadlines re 3 MOTION to Stay and TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **10/21/2024)**. (mb) (Entered: 10/08/2024) |

| | | |
|---|---|---|
| 10/08/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (mb) (Entered: 10/08/2024) |
| 10/14/2024 | 4 | MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) (Entered: 10/14/2024) |
| 10/15/2024 | | Set Deadlines re 4 MOTION to Expedite. (Internal deadline for referral to judge if response not filed earlier: **10/29/2024)**. (mb) (Entered: 10/15/2024) |
| 10/15/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 4 MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* (mb) (Entered: 10/15/2024) |
| 10/16/2024 | 5 | ORDER re 4 MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY. The motion is GRANTED in part and DENIED in part. Defendants' deadline to respond to Plaintiff's Complaint is extended until 10 days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024. (Plaintiff's response to Defendant's MOTION to Stay remains **10/21/2024)**. Defendant's deadline to respond due by **10/31/2024**.) Signed by JUDGE M CASEY RODGERS on 10/16/2024. (mb) (Entered: 10/16/2024) |
| 10/17/2024 | 6 | Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc., by JOHN D LEVITAN, SR (alb) (Entered: 10/18/2024) |
| 10/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 6 Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc.. (alb) (Entered: 10/18/2024) |
| 10/21/2024 | 7 | Motion to Remand State Court Case No. 2024-CA-001164 and Incorporated Memorandum of Law, by JOHN D LEVITAN, SR. (alb) Modified on 1/3/2025 to term re 28 ORDER. (mb). (Entered: 10/22/2024) |
| 10/21/2024 | 8 | MOTION to File Pleadings Through the ECF/ECM System PACER by JOHN D LEVITAN, SR. (alb) (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION NO LONGER REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. (alb) Modified on 10/22/2024 (alb). (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. Referred to ZACHARY C BOLITHO. (alb) (Entered: 10/22/2024) |
| 10/22/2024 | 9 | MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW by JOHN D LEVITAN, SR. (jfj) (Entered: 10/23/2024) |

| | | |
|---|---|---|
| 10/23/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 9 MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. Referred to ZACHARY C BOLITHO. (jfj) (Entered: 10/23/2024) |
| 10/23/2024 | 10 | ORDER re 9 Motion for Enlargement of Time to Reply to MOTION to Stay and Transfer Proceedings. Plaintiff's motion is GRANTED to the extent that his response to Defendants' motion to stay and transfer proceedings (Doc. 3 ) is due on or before November 6, 2024. Plaintiff is advised that no further extensions of this deadline will be granted. (Internal deadline for referral to judge if response to Defendant's Motion not filed earlier: **11/6/2024)**.) Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) (Entered: 10/23/2024) |
| 10/23/2024 | 11 | ORDER. Plaintiff's "Request to File Pleadings Through the ECF/ECM System PACER" (Doc. 8 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) (Entered: 10/23/2024) |
| 10/25/2024 | 12 | Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law, by JOHN D LEVITAN, SR. (mb) (Entered: 10/28/2024) |
| 10/28/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 12 Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law. Referred to ZACHARY C BOLITHO. (mb) (Entered: 10/28/2024) |
| 10/28/2024 | 13 | ORDER denying 12 Motion for Reconsideration. That Plaintiff's Motion for Reconsideration (Doc. 12 ) is DENIED. If Plaintiff's travel plans interfere with his ability to meet a Court deadline, Plaintiff may file a motion seeking an extension of any such deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/28/2024. (mb) (Entered: 10/28/2024) |
| 11/01/2024 | 14 | Corporate Disclosure Statement/Certificate of Interested Persons by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/01/2024 | 15 | RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal,, *Consent to Removal*. (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/01/2024 | 16 | NOTICE *of Joinder in Motion to Stay and Transfer Proceedings* by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/01/2024 | 17 | MOTION to Hold Deadline for Responding to Complaint in Abeyance by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/04/2024 | 18 | MEMORANDUM in Opposition re 7 MOTION to Remand to State Court filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 RESPONSE by GILEAD |

| | | |
|---|---|---|
| | | SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal, Consent to Removal. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 NOTICE of Joinder in Motion to Stay and Transfer Proceedings by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance. Referred to ZACHARY C BOLITHO. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 18 MEMORANDUM in Opposition re 7 MOTION to Remand to State Court. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | 19 | ORDER re 17 Motion to Hold Deadline for Responding to Complaint in Abeyance. The motion (Doc. 17 ) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that Defendants' deadline to respond to Plaintiff's complaint is HELD IN ABEYANCE. The new deadline for Defendants Gilead Sciences, Inc., and Gilead Sciences Ireland UC to respond to Plaintiff's complaint is ten days after the Court's ruling on Defendants' motion to stay and transfer (Doc. 3 ). Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. Plaintiff's deadline to respond to Defendants' motion to stay and transfer proceedings (Doc. 3 ) remains November 6, 2024. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/04/24. (jfj) (Entered: 11/04/2024) |
| 11/04/2024 | | Set Deadline re 19 ORDER - Internal deadline for referral to judge if response to 3 Motion not filed earlier: **11/6/2024)**. (jfj) (Entered: 11/04/2024) |
| 11/08/2024 | 20 | Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service, by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibit A). (mb) (Entered: 11/12/2024) |
| 11/12/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 20 Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service. Referred to ZACHARY C BOLITHO. (mb) (Entered: 11/12/2024) |
| 11/12/2024 | 21 | REPORT AND RECOMMENDATION. Plaintiff's Motion to Remand to State Court (Doc. 7 ) be DENIED. This case be recommitted to the undersigned for further proceedings. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/12/2024. Internal deadline for referral to district judge if objections are not filed earlier: **12/10/2024**. (mb) (Entered: 11/12/2024) |
| 11/15/2024 | 22 | NOTICE *OF FILING AMENDED CERTIFICATES OF SERVICE* by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 18 Memorandum in Opposition to Motion, 15 Response/Reply, 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance , 16 Notice (Other), 14 Corporate Disclosure Statement/Certificate of Interested Persons (MURPHY, HANNAH) (Entered: 11/15/2024) |
| 11/15/2024 | 23 | RESPONSE in Opposition re 20 MOTION for Sanctions filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, |

| | | |
|---|---|---|
| | | JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) (Entered: 11/15/2024) |
| 11/15/2024 | 24 | RESPONSE in Opposition re 3 MOTION TO STAY AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW filed by JOHN D LEVITAN, SR. (jcw) (Entered: 11/18/2024) |
| 11/15/2024 | 25 | MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition by JOHN D LEVITAN, SR. (jcw) (Entered: 11/18/2024) |
| 11/15/2024 | 26 | PROPOSED FIRST AMENDED COMPLAINT against All Defendants., filed by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibits)(No service copies filed.) (jcw) (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 22 DEFENDANTS' NOTICE OF FILING AMENDED CERTIFICATES OF SERVICE, 23 DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS. (jfj) (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 26 Proposed Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME, 24 Response in Opposition to Motion. Referred to ZACHARY C BOLITHO. (jcw) (Entered: 11/18/2024) |
| 11/22/2024 | 27 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 26 Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition to Motion . (MURPHY, HANNAH) (Entered: 11/22/2024) |
| 11/25/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 27 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFF'S MOTION TO FILE AN OUT OF TIME RESPONSE AND AMENDED COMPLAINT. (jfj) (Entered: 11/25/2024) |
| 12/11/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 21 REPORT AND RECOMMENDATION (No objections or responses filed). (mb) (Entered: 12/11/2024) |
| 12/31/2024 | 28 | ORDER adopting Magistrate Judge's 21 REPORT AND RECOMMENDATION. The Plaintiff's Motion to Remand to State Court, (Doc. 7 ), is DENIED. This case is recommitted to the magistrate judge for further proceedings. Signed by JUDGE M CASEY RODGERS on 12/31/2024. (mb) (Entered: 12/31/2024) |
| 12/31/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 28 Order. (Recommitted back to Magistrate Judge). (mb) (Entered: 12/31/2024) |
| 01/06/2025 | 29 | ORDER - That Plaintiff's motion for sanctions (Doc. 20 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) (Entered: 01/06/2025) |
| 01/06/2025 | 30 | ORDER. Plaintiff's Motion to File Opposition to Defendants Motion to Stay and Transfer (Doc. 25 ) is GRANTED. Defendants' Motion to Stay and Transfer Proceedings (Doc. 3 ) is GRANTED to the extent that the Court will transfer this action. The Clerk of Court must TRANSFER this case to the U.S. District Court for the Eastern District of New York and |

| | | |
|---|---|---|
| | | close the file in this Court fifteen days from the date of this Order, unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) (Entered: 01/06/2025) |
| 01/06/2025 | 31 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) (Entered: 01/06/2025) |
| 01/06/2025 | | Set Deadlines re STAY for transfer response deadline: **1/21/2025** re 30 ORDER. (mb) (Entered: 01/06/2025) |
| 01/08/2025 | 32 | ACKNOWLEDGMENT re 31 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00101, filed 01/06/2025. (mb) (Entered: 01/08/2025) |
| 01/08/2025 | 33 | DOCKET ANNOTATION BY COURT: Re 32 Acknowledgment of Transfer - Case Manager to call back regarding premature transfer with instructions on how to proceed. (mb) (Entered: 01/08/2025) |
| 01/08/2025 | 34 | NOTICE of Case 1:25-cv-00101-AMD-JAM removed from the docket due to premature transfer re 32 Acknowledgment, by EASTERN DISTRICT of NEW YORK. (mb) (Entered: 01/08/2025) |
| 01/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: Set Deadlines re STAY for transfer response deadline: 1/21/2025 re 30 ORDER. (No responses filed by deadline - permission to TRANSFER). (mb) (Entered: 01/22/2025) |
| 01/23/2025 | 35 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) (Entered: 01/23/2025) |
| 01/23/2025 | 36 | ACKNOWLEDGMENT re 35 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00393, filed 01/23/2025. (mb) (Entered: 01/23/2025) |
| 01/27/2025 | 37 | Plaintiff's Objections to 30 Order Transferring Case, MOTION for Reconsideration of ORDER Denying Remand to State Court and Notice of Intervening Decision in ROYAN CANIN U S A INC, et al v. WULLSCHLEGER et al, 604 U.S. (2025). (mb) (Entered: 01/27/2025) |
| 01/27/2025 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 37 Plaintiff's Objections to 30 Order Transferring Case, MOTION for Reconsideration of ORDER Denying Remand to State Court and Notice of Intervening Decision in ROYAN CANIN U S A INC, et al v. WULLSCHLEGER et al, 604 U.S. (mb) (Entered: 01/27/2025) |
| 01/28/2025 | 38 | NOTICE to Court re 37 Plaintiff's Objections to 30 Order Transferring Case, MOTION for Reconsideration of ORDER Denying Remand to State Court and Notice of Intervening Decision in ROYAN CANIN U S A INC, et al v. WULLSCHLEGER et al, 604 U.S. (2025), 35 Case Transferred Out to Another District - EASTERN DISTRICT OF NEW YORK. (mb) (Entered: 01/28/2025) |

| | | |
|---|---|---|
| 01/29/2025 | 39 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 37 Response/Reply *In Opposition to Plaintiff's Objections to Order Transferring Case*. (MURPHY, HANNAH) (Entered: 01/29/2025) |
| 01/29/2025 | 40 | ORDER re 38 NOTICE to Court re 37 Plaintiff's Objections to 30 Order Transferring Case and 37 Plaintiff's Objections to 30 Order Transferring Case. Because this Court lost all jurisdiction over the case on January 23, 2025, it cannot consider whether Levitan's objections should be allowed out of time or the underlying merits of his objections. Signed by JUDGE M CASEY RODGERS on 1/29/2025. (mb) (Entered: 01/29/2025) |
| 10/06/2025 | 41 | DOCKET ANNOTATION BY COURT: Case Remanded to the Circuit Court of the First Judicial District in and for Escambia County, Florida (Case No. 2024-CA-001164), by the Eastern District of New York (Case No. 1:25-cv-00393). (Tiffeny Lee-Harris of the Eastern District of New York sent case to Florida Circuit Court by certified mail on 10/6/2025). (mah) (Entered: 10/06/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/10/2026 17:26:10 | | | |
| **PACER Login:** | jdlevitan | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00475-MCR-ZCB |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

# EXHIBIT C

CLOSED,DJI,NPROSE,TransferredOutCase-DoNotDocket

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:25-cv-00393-AMD-JAM

Levitan v. Patterson Belknap Webb & Tyler LLP et al
Assigned to: Judge Ann M. Donnelly
Referred to: Magistrate Judge Joseph A. Marutollo
related Case: 1:21-cv-04106-AMD-JAM
Case in other court: Florida Northern, 3:24-cv-00475
Cause: 28:1332 Diversity-Libel,Assault,Slander

Date Filed: 01/23/2025
Date Terminated: 09/30/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**John D. Levitan, Sr.** represented by **John D. Levitan, Sr.**
511 Windrose Circle
Pensacola, FL 32507
850-497-2724
Email: jdlsr@gileadfraud.com
PRO SE

V.

**Defendant**

**Patterson Belknap Webb & Tyler LLP** represented by **Hannah Eleanor Murphy**
STEARNS WEAVER MILLER - TALLAHASSEE FL
106 E COLLEGE AVENUE
SUITE 700
TALLAHASSEE, FL 32301
850-354-7629
Email: hmurphy@stearnsweaver.com
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
Patterson Belknap Webb & Tyler LLP
1133 Ave of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: gpotter@pbwt.com
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
Patterson Belknap Webb & Tyler
1133 Avenue Of The Americas
New York, NY 10036
(212)336-2000
Fax: (212)336-2222

Email: tkurland@pbwt.com
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: twaters@pbwt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Geoffrey Potter** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timothy Alan Waters** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Aron Fischer** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joshua Stein** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas P Kurland** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gilead Sciences Inc.** represented by **Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gilead Sciences Ireland UC** represented by **Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2024 | 1 | NOTICE OF REMOVAL by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER from FIRST CIRCUIT COURT, ESCAMBIA COUNTY, case number 2024-CA-001164. ( Filing fee $ 405 receipt number BFLNDC-9078434.), filed by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER. (Attachments: # 1 Exhibit, # 2 Exhibit NY RELATED CASE DOCKET, # 3 Civil Cover Sheet) (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/03/2024 | 2 | Corporate Disclosure Statement/Certificate of Interested Persons by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/04/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal (please see proposed |

| | | |
|---|---|---|
| | | ISO). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/04/2024) |
| 10/07/2024 | 3 | MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* by PATTERSON BELKNAP WEBB & TYLER LLP. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/07/2024) |
| 10/07/2024 | | Set Deadlines re 3 MOTION to Stay and TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **10/21/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/08/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/14/2024 | 4 | MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/14/2024) |
| 10/15/2024 | | Set Deadlines re 4 MOTION to Expedite. (Internal deadline for referral to judge if response not filed earlier: **10/29/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/15/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 4 MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/16/2024 | 5 | ORDER re 4 MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY. The motion is GRANTED in part and DENIED in part. Defendants' deadline to respond to Plaintiff's Complaint is extended until 10 days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024. (Plaintiff's response to Defendant's MOTION to Stay remains **10/21/2024)**. Defendant's deadline to respond due by **10/31/2024**.) Signed by JUDGE M CASEY RODGERS on 10/16/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/16/2024) |
| 10/17/2024 | 6 | Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc., by JOHN D LEVITAN, SR (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 6 Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc.. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/21/2024 | 7 | Motion to Remand State Court Case No. 2024-CA-001164 and Incorporated Memorandum of Law, by JOHN D LEVITAN, SR. (alb) Modified on 1/3/2025 to term re 28 ORDER. (mb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |

| | | |
|---|---|---|
| 10/21/2024 | 8 | MOTION to File Pleadings Through the ECF/ECM System PACER by JOHN D LEVITAN, SR. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION NO LONGER REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. (alb) Modified on 10/22/2024 (alb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. Referred to ZACHARY C BOLITHO. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | 9 | MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW by JOHN D LEVITAN, SR. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 9 MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. Referred to ZACHARY C BOLITHO. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 10 | ORDER re 9 Motion for Enlargement of Time to Reply to MOTION to Stay and Transfer Proceedings. Plaintiff's motion is GRANTED to the extent that his response to Defendants' motion to stay and transfer proceedings (Doc. 3 ) is due on or before November 6, 2024. Plaintiff is advised that no further extensions of this deadline will be granted. (Internal deadline for referral to judge if response to Defendant's Motion not filed earlier: **11/6/2024)**.) Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 11 | ORDER. Plaintiff's "Request to File Pleadings Through the ECF/ECM System PACER" (Doc. 8 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/25/2024 | 12 | Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law, by JOHN D LEVITAN, SR. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 12 Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | 13 | ORDER denying 12 Motion for Reconsideration. That Plaintiff's Motion for Reconsideration (Doc. 12 ) is DENIED. If Plaintiff's travel plans interfere with his ability to meet a Court deadline, Plaintiff may file a motion seeking an extension of any such deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/28/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |

| | | |
|---|---|---|
| 11/01/2024 | 14 | Corporate Disclosure Statement/Certificate of Interested Persons by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 15 | RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal,, *Consent to Removal*. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 16 | NOTICE *of Joinder in Motion to Stay and Transfer Proceedings* by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 17 | MOTION to Hold Deadline for Responding to Complaint in Abeyance by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/04/2024 | 18 | MEMORANDUM in Opposition re 7 MOTION to Remand to State Court filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal, Consent to Removal. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 NOTICE of Joinder in Motion to Stay and Transfer Proceedings by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 18 MEMORANDUM in Opposition re 7 MOTION to Remand to State Court. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | 19 | ORDER re 17 Motion to Hold Deadline for Responding to Complaint in Abeyance. The motion (Doc. 17 ) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that Defendants' deadline to respond to Plaintiff's complaint is HELD IN ABEYANCE. The new deadline for Defendants Gilead Sciences, Inc., and Gilead Sciences Ireland UC to respond to Plaintiff's complaint is ten days after the Court's ruling on Defendants' motion to stay and transfer (Doc. 3 ). Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. Plaintiff's deadline to respond to Defendants' motion to stay and transfer proceedings (Doc. 3 ) remains November 6, 2024. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/04/24. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |

| | | |
|---|---|---|
| 11/04/2024 | | Set Deadline re 19 ORDER - Internal deadline for referral to judge if response to 3 Motion not filed earlier: **11/6/2024)**. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/08/2024 | 20 | Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service, by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibit A). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 20 Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | 21 | REPORT AND RECOMMENDATION. Plaintiff's Motion to Remand to State Court (Doc. 7 ) be DENIED. This case be recommitted to the undersigned for further proceedings. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/12/2024. Internal deadline for referral to district judge if objections are not filed earlier: **12/10/2024**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/15/2024 | 22 | NOTICE *OF FILING AMENDED CERTIFICATES OF SERVICE* by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 18 Memorandum in Opposition to Motion, 15 Response/Reply, 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance , 16 Notice (Other), 14 Corporate Disclosure Statement/Certificate of Interested Persons (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 23 | RESPONSE in Opposition re 20 MOTION for Sanctions filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 24 | RESPONSE in Opposition re 3 MOTION TO STAY AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW filed by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 25 | MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 26 | PROPOSED FIRST AMENDED COMPLAINT against All Defendants., filed by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibits)(No service copies filed.) (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 22 DEFENDANTS' NOTICE OF FILING AMENDED CERTIFICATES OF SERVICE, 23 DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 26 Proposed Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME, 24 Response in Opposition to Motion. Referred |

| | | |
|---|---|---|
| | | to ZACHARY C BOLITHO. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/22/2024 | 27 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 26 Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition to Motion . (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/22/2024) |
| 11/25/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 27 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFF'S MOTION TO FILE AN OUT OF TIME RESPONSE AND AMENDED COMPLAINT. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/25/2024) |
| 12/11/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 21 REPORT AND RECOMMENDATION (No objections or responses filed). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/11/2024) |
| 12/31/2024 | 28 | ORDER adopting Magistrate Judge's 21 REPORT AND RECOMMENDATION. The Plaintiff's Motion to Remand to State Court, (Doc. 7 ), is DENIED. This case is recommitted to the magistrate judge for further proceedings. Signed by JUDGE M CASEY RODGERS on 12/31/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 12/31/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 28 Order. (Recommitted back to Magistrate Judge). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 01/06/2025 | 29 | ORDER - That Plaintiff's motion for sanctions (Doc. 20 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 30 | ORDER. Plaintiff's Motion to File Opposition to Defendants Motion to Stay and Transfer (Doc. 25 ) is GRANTED. Defendants' Motion to Stay and Transfer Proceedings (Doc. 3 ) is GRANTED to the extent that the Court will transfer this action. The Clerk of Court must TRANSFER this case to the U.S. District Court for the Eastern District of New York and close the file in this Court fifteen days from the date of this Order, unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 31 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | | Set Deadlines re STAY for transfer response deadline: **1/21/2025** re 30 ORDER. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/08/2025 | 32 | ACKNOWLEDGMENT re 31 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00101, filed 01/06/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |

| | | |
|---|---|---|
| 01/08/2025 | 33 | DOCKET ANNOTATION BY COURT: Re 32 Acknowledgment of Transfer - Case Manager to call back regarding premature transfer with instructions on how to proceed. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/08/2025 | 34 | NOTICE of Case 1:25-cv-00101-AMD-JAM removed from the docket due to premature transfer re 32 Acknowledgment, by EASTERN DISTRICT of NEW YORK. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: Set Deadlines re STAY for transfer response deadline: 1/21/2025 re 30 ORDER. (No responses filed by deadline - permission to TRANSFER). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/22/2025) |
| 01/23/2025 | 35 | Case transferred in from District of Florida Northern; Case Number 3:24-cv-00475. Original file certified copy of transfer order and docket sheet received. (Entered: 01/23/2025) |
| 01/23/2025 | 36 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | The case of **Levitan v. Patterson Belknap Webb & Tyler LLP et al**, has been transferred from **Northern District of Florida (Pensacola)** to the Eastern District of New York. The new case number is **25-cv-393**.<br>PLEASE NOTE: if you plan to continue representing your client(s), you must be admitted to practice before this court. You must do so by applying for Pro Hac Vice or permanent admission. To apply for Pro Hac Vice admission, you must first register for an ECF login and password. Please visit the Court's website at www.nyed.uscourts.gov/attorney-admissions for guidance. Once registered, you must electronically file a Motion to Appear Pro Hac Vice. You must pay the required pro hac vice fee online. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge Joseph A. Marutollo (as related to 21-cv-4106)for all further proceedings. Magistrate Judge Peggy Kuo no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.Ordered by Chief Judge Margo K. Brodie on 1/23/2025. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | 37 | NOTICE of Appearance by Geoffrey Potter on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Potter, Geoffrey) (Entered: 01/23/2025) |
| 01/23/2025 | 38 | NOTICE of Appearance by Timothy Alan Waters on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Waters, Timothy) (Entered: 01/23/2025) |

| | | |
|---|---|---|
| 01/23/2025 | 39 | NOTICE of Appearance by Thomas Philip Kurland on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Kurland, Thomas) (Entered: 01/23/2025) |
| 01/24/2025 | 40 | SCHEDULING ORDER: A telephonic initial conference will be held on February 19, 2025 at 4:00 p.m. before Magistrate Judge Joseph A. Marutollo. To participate in the conference, the parties shall dial (646) 828-7666; Meeting ID: 161 018 4647; Passcode: 455895. The parties must complete the attached proposed Discovery Plan and Scheduling Order and file it on ECF no later than February 14, 2025. Plaintiff is directed to ensure that all Defendants are aware of this conference. Counsel with knowledge of the case must attend the conference; *per diem* counsel may not appear without prior permission of the Court. The parties are directed to review this Court's Individual Practices and Rules in advance of the conference. The Clerk of Court is directed to mail copy of this order to the plaintiff. Ordered by Magistrate Judge Joseph A. Marutollo on 1/24/2025. (Attachments: # 1 Individual Practices and Rules) (EG) (Entered: 01/24/2025) |
| 01/29/2025 | 41 | MOTION to Withdraw as Attorney *as to Hannah E. Murphy, Esq. to be Relieved as Counsel for Defendants* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER granting 41 Motion to Withdraw as Attorney. Attorney Hannah Eleanor Murphy terminated. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2025. (JAM) (Entered: 01/29/2025) |
| 01/31/2025 | 42 | MOTION to Dismiss by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Attachments: # 1 Memorandum in Support) (Kurland, Thomas) (Entered: 01/31/2025) |
| 02/11/2025 | 43 | Letter MOTION to Stay by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/11/2025) |
| 02/11/2025 | | ORDER: Plaintiff shall respond to 43 by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/11/2025. (GWM) (Entered: 02/11/2025) |
| 02/13/2025 | | ORDER: The Court received a voicemail from pro se Plaintiff. In light of Plaintiff's representation to chambers that he is experiencing delays in receiving and sending docket filings, the Court *sua sponte* extends the deadline to respond to 43 to February 20, 2025. Plaintiff is reminded that future correspondence with the Court shall be made on the public docket. Defendants shall serve a copy of this order on Plaintiff and file proof of service on the docket by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (EG) (Entered: 02/13/2025) |
| 02/13/2025 | 44 | Letter *to Judge Marutollo in response to the Court's February 13, 2025 order* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (Kurland, Thomas) (Entered: 02/13/2025) |
| 02/13/2025 | | ORDER: In light of the Court's extension of Plaintiff's deadline to respond to the 43 motion, the initial conference and all associated deadlines are adjourned *sine die*, pending resolution of the motion to stay. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (GWM) (Entered: 02/13/2025) |

| | | |
|---|---|---|
| 02/13/2025 | 45 | MOTION for leave to allow Pro Se to Electronically File by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 46 | MOTION to Amend/Correct/Supplement *Plaintiff's Motion to Supplement the record transferred from the Northern District of Florida* by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 47 | Plaintiff's Objections to Order Transferring Case, Motion for Reconsideration of Order Denying Remand to State Court and Notice of Intervening Decision in Royal Canin U.S.A., Inc. et al. v. Wullschleger et al. 604 U.S. (2025) filed by John D Levitan, Sr., plaintiff pro se. (RG) (Entered: 02/14/2025) |
| 02/14/2025 | 48 | AFFIDAVIT of Service for February 13, 2025 Order's served on pro se Plaintiff on February 14, 2025, filed by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/14/2025) |
| 02/14/2025 | 49 | MOTION to Remand to State Court by John D Levitan, Sr. (RG) (Entered: 02/18/2025) |
| 02/14/2025 | 50 | NOTICE: Request for Judicial Default against GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC PATTERSON BELKNAP WEBB & TYLER LLP (PBWT),GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND. **Please note advised pro se dept that plaintiff did not file properly, cannot file a default without the request for clerk's notation first. (RG) (Entered: 02/19/2025) |
| 02/14/2025 | 51 | MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery* by John D Levitan, Sr. (RG) (Entered: 02/19/2025) |
| 02/18/2025 | | ORDER: Defendants shall respond to 49 by February 26, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) (Entered: 02/18/2025) |
| 02/18/2025 | | ORDER granting 45 . Pro se Plaintiff shall register for ECF, registration is available online at www.pacer.gov. Should Plaintiff encounter any difficulty registering for PACER, he may contact CM/ECF Docketing and Filing at 718-613-2610. The Clerk of the Court shall provide the pro se Plaintiff with a copy of this Electronic Order. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) Modified on 2/18/2025 to indicate C/M. (EG). (Entered: 02/18/2025) |
| 02/19/2025 | | ORDER: In light of the procedural posture of this case, the parties shall indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action, including a (jury or nonjury) trial and to order the entry of a final judgment, by **February 28, 2025**. The consent form should be filled out, signed and filed electronically only if all parties wish to consent. The form may also be accessed at the following link: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. The parties may withhold consent without adverse substantive consequences. Do NOT return or file the consent form unless all parties have signed the consent. Ordered by Magistrate Judge Joseph A. Marutollo on 2/19/2025. (EG) (Entered: 02/19/2025) |
| 02/24/2025 | 52 | Request for Certificate of Default by John D. Levitan, Sr, plaintiff pro se. (RG) (Entered: 02/25/2025) |
| 02/26/2025 | 53 | MEMORANDUM in Opposition re 47 Reply in Opposition, 49 MOTION to Remand to State Court *Defendants' Omnibus Memorandum of Law in Opposition to Plaintiff's Motion to Reconsider Denial of Remand or in the Alternative to Transfer this Case to the Northern District of Florida, and to Proceed with Discovery* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler |

| | | |
|---|---|---|
| | | LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/26/2025) |
| 02/28/2025 | 54 | REPLY in Support re 42 MOTION to Dismiss , 43 Letter MOTION to Stay , RESPONSE in Opposition re 51 MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery Defendants' Omnibus Memorandum of Law Replying in Support of Defendants' Motions to Dismiss and Stay and Opposing Plaintiff's Motion to Strike* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/28/2025) |
| 03/03/2025 | | ORDER: The parties were ordered to indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action by February 28, 2025. No such document was filed on the docket. Defendants shall file either a completed consent form or a letter indicating that the parties do not consent to Magistrate Judge jurisdiction by March 3, 2025, at 5:00 p.m.<br>The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf. The parties may withhold consent without adverse substantive consequences. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (EG) (Entered: 03/03/2025) |
| 03/03/2025 | 55 | Letter *to Judge Marutollo from Thomas P. Kurland re: Magistrate Judge Consent* by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters (Kurland, Thomas) (Entered: 03/03/2025) |
| 03/03/2025 | | ORDER granting 43 . The Court GRANTS Defendant's motion to stay discovery until their motion to dismiss is resolved. "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Salese v. JP Morgan Chase & Co.* , No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.* , 299 U.S. 248, 254 (1936)). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: (1) whether the Defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *Amron v. 3M Minnesota Mining & Manufacturing Co.* , No. 23-CV-8959 (PKC) (JMW), 2024 WL 263010, at *2 (E.D.N.Y. Jan. 24, 2024) (citation and quotation marks omitted).<br><br>Here, applying these factors, the Court finds that a stay is warranted. *See Johnson v. N.Y. Univ. Sch. of Educ.* , 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[A] stay of discovery is appropriate [ ] where the motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law." (citation omitted)).<br><br>All discovery is stayed pending resolution of the dispositive motion currently pending before the Court. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (GWM) (Entered: 03/03/2025) |
| 09/30/2025 | 56 | MEMORANDUM AND ORDER. The case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court. Ordered by Judge Ann M. Donnelly on 9/30/2025. (DG) (Entered: 09/30/2025) |

| PACER Service Center |
|---|
| **Transaction Receipt** |

| 02/10/2026 18:31:29 | | | |
|---|---|---|---|
| **PACER Login:** | jdlevitan | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00393-AMD-JAM |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

**JOHN D. LEVITAN, SR.,**

Plaintiff,

– against –

**GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND,**

Defendants.

---------------------------------------------------------------- X

**MEMORANDUM AND ORDER**

25-CV-393 (AMD) (JAM)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action alleging violations of the Florida Constitution and common law defamation claims. The plaintiff asserts these claims against Gilead Sciences, Inc. and Gilead Sciences Ireland UC ("Gilead"), a pharmaceutical company that has sued the plaintiff in this Court for conspiring to sell counterfeit Gilead medication, and Patterson Belknap Webb & Tyler LLP and lawyers at the firm ("PBWT"), who represent Gilead in that related suit. The plaintiff initiated this case in Florida state court, the defendants removed it to the Northern District of Florida, and that court transferred it here pursuant to 28 U.S.C. § 1404.

Before the Court are two motions: the plaintiff's motion either to transfer the case back to the Northern District of Florida for that court to reconsider its decision denying the plaintiff's motion to remand based on an intervening change in law or to remand directly, and the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the plaintiff's motion to transfer the case back to the Northern District of Florida is denied. However, the Court does not have subject matter jurisdiction over the

plaintiff's claims, so the case is remanded to the Florida state court, where the case was filed originally. The Court does not have jurisdiction to decide the defendants' motion to dismiss.

## BACKGROUND[1]

### I. Factual Background

In the summer of 2021, Gilead, represented by PBWT, sued various defendants for conspiring to distribute counterfeit Gilead-branded HIV medicine. (*Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.) ("*Gilead*"), ECF No. 1.) As the case developed, Gilead identified other members of the alleged conspiracy, including the plaintiff in this action, John Levitan, and amended the complaint to include them as defendants and add allegations about their roles in the scheme. (*See, e.g.*, *id.* ECF No. 607 (the plaintiffs' motion to amend the complaint to add Levitan, among others); *id.* ECF No. 630 (Fourth Amended Complaint, naming Levitan as a defendant).)

On August 11, 2022, pursuant to 15 U.S.C. § 1116(d), the Court entered an asset freeze order, a temporary restraining order, and a seizure order against the plaintiff, as well as other named defendants in *Gilead*. (*See id.* ECF Nos. 627, 628, 629.) About a week later, PBWT executed the seizure order at the plaintiff's home in Pensacola, Florida. (*See id.* ECF Nos. 687, 748, 823; *see* ECF No. 26 ¶¶ 17–21.)

The plaintiff's claims arise out of the defendants' allegations in the fourth amended complaint in *Gilead* and the defendants' execution of the seizure order. (*See* ECF No. 30, Transfer Order, at 9–23.) In his amended complaint, the plaintiff asserts Florida state law claims. He maintains that some of the allegations in the defendants' complaint were defamatory

[1] The history of this case is long and contentious. The Court assumes familiarity with the related case *Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.), and discusses only the facts necessary to reach its decision.

and violated the plaintiff's rights to free speech and association under Article I, §§ 4 and 5 of the Florida Constitution. (ECF No. 26 ¶¶ 15, 27–29, 36–42; *id.* at 9–10; ECF No. 26-1 at 1–7; *Gilead*, ECF No. 630 ¶¶ 270–76.) The plaintiff further alleges that the execution of the seizure order was an unlawful search that violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution. (ECF No. 26 ¶¶ 17–26, 30–35.)

## II. Procedural Background

The parties have been litigating against each other in this Court for three years. (*See, e.g.*, *Gilead*, ECF Nos. 839, 1150, 1169, 1452–55, 1472–74; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by then-Magistrate Judge Bulsara*; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by Magistrate Judge Marutollo*.)

On September 2, 2024, the plaintiff filed this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida. (ECF No. 1-1.)[2] In his initial complaint, the plaintiff asserted the state law claims described above, as well as violations of the First and Fourth Amendments. (*Id.* ¶¶ 25–27.) The plaintiff also alleged that the "damages subject of this action exceeds $50,000.00." (*Id.* ¶ 12.) On October 3, 2024, the defendants removed the case to the Northern District of Florida, arguing that the court had diversity and federal question jurisdiction. (ECF No. 1.) The defendants maintained that the court had diversity jurisdiction because the parties were completely diverse and the amount in controversy "as pled[,] plausibly exceeds $75,000." (*Id.* ¶¶ 5–16.) The defendants also claimed that the court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the complaint alleged federal

[2] Citations to ECF are to the docket in this action. Citations to "N.D. Fl. ECF" are to the docket in *Levitan v. Patterson, Belknapp, Webb & Tyler, LLP, et. al*, No. 24-CV-475 (N.D. Fl.).

constitutional violation and that the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*Id.* ¶¶ 17–18.)

The defendants then moved to transfer the action to this court pursuant to 28 U.S.C. § 1404(a) and to stay the proceedings in the Northern District of Florida. (ECF No. 3.) They also asked that court to extend the deadline to respond to the complaint until it resolved their motion to transfer. (ECF No. 4.) The court extended the defendants' deadline to respond to the complaint until 10 days after the resolution of the motion to transfer. (ECF No. 5.)[3]

On October 21, the plaintiff moved to remand the case to Florida state court. (ECF No. 7.) He argued that removal was improper because the amount in controversy did not meet the jurisdictional threshold for diversity jurisdiction and that his claims did not present a federal question. (*Id.* at 5–7.) The defendants opposed. (ECF No. 18.)

On November 12, 2024, and while the transfer motion was pending, Magistrate Judge Zachary C. Bolitho of the Northern District of Florida issued a report and recommendation recommending that the district judge deny the motion to remand. (ECF No. 21.) Observing that the plaintiff "clearly cites to the U.S. Constitution for several of his claims," the court held that remand was unwarranted because the court had federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 3–4.) In addition, the court noted that "[b]ecause there is clearly federal question jurisdiction in this case, it is unnecessary to address whether diversity jurisdiction exists." (*Id.* at

[3] Gilead was served on October 14, 2024, after PBWT removed the case to federal court. (ECF No. 17 at 1–2.) Gilead appeared in the case, consented to removal (ECF No. 15), and joined PBWT's motion to transfer (ECF No. 16). Gilead also asked for the same extension of the deadline to respond to the complaint (ECF No. 17 at 2–3), which the court granted (ECF No. 19).

2 n.1.) Neither party objected to the report and recommendation, and the district court adopted it on December 31, 2024. (ECF No. 28.)

Although the plaintiff did not object to the magistrate judge's recommendation, he filed an amended complaint on November 15, 2024. (ECF No. 26.) The factual allegations in the amended complaint were almost identical to the original complaint. This time, however, the plaintiff removed the federal constitutional claims and added language that purports to cap his damages at $70,000. (*Compare* ECF No. 1-1 ¶¶ 25–27, 31, 34, 37 (alleging violations of the First and Fourth Amendments) *with* ECF No. 26 ¶¶ 25–27, 31, 34, 37 (alleging the same conduct without citing the federal constitution); *compare* ECF No. 1-1 ¶ 12, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000.00") *with* ECF No. 26 ¶ 11, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000 but is no greater than $70,000").) The defendants objected, calling the amended complaint "a naked and legally impermissible effort to plead this case out of federal court." (ECF No. 27 at 10.)[4] They maintained that there was still federal question jurisdiction because the plaintiff's claims "still directly raise and require resolution of issues of federal law under both the United States Constitution and the Lanham Act." (*Id.* at 12.) In the alternative, they maintained that the court had diversity jurisdiction, notwithstanding the plaintiff's "attempt to plead an amount in controversy below $75,000." (*Id.* at 14.)

On January 6, 2025, Judge Bolitho issued a thorough and well-reasoned opinion granting the defendants' motion to transfer the action to this Court. (ECF No. 30.) The court found that the "case could have been filed in the Eastern District of New York because it has subject matter

[4] The defendants do not argue that the amended complaint was procedurally improper under Federal Rule of Civil Procedure 15.

jurisdiction, personal jurisdiction, and is a proper venue for this action." (*Id.* at 5.) The court further explained that "[b]ecause the Court has already determined that subject matter jurisdiction existed at the time of removal, Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case." (*Id.* at 6.) The court observed that "[f]ederal courts have repeatedly rejected . . . clever attempts to destroy federal jurisdiction" by amending a pleading. (*Id.* at 6; *see also id.* at 6 n.2 (citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002).)

The court also analyzed the factors that guide Eleventh Circuit courts in determining whether to transfer a case under § 1404(a). (*Id.* at 9–23.) The court concluded that "[e]ach factor identified by the Eleventh Circuit either weighs in favor of transfer or is neutral." (*Id.* at 23.) Accordingly, the court "exercise[d] its broad discretion" and transferred the case to this Court. (*Id.*) Judge Bolitho directed the clerk of his court to transfer the case 15 days after the date of the order "unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline." (*Id.*) The plaintiff did not file an objection to the transfer order by January 21, 2025, and the case was transferred to this Court on January 23, 2025. (ECF No. 35.)[5]

On January 27, 2025 — after the case had been transferred and assigned a case number in this Court, after the defendants appeared, and after Magistrate Judge Joseph Marutollo issued a scheduling order — the plaintiff filed objections to Judge Bolitho's transfer order in the Northern District of Florida. (N.D. Fl. ECF No. 37.)[6] The plaintiff argued that the court should reconsider

[5] The Clerk of Court for the Northern District of Florida transferred the case prematurely on January 8, 2025. (*See* ECF Nos. 32–34.) The Clerk of this Court then "removed [the transferred case] from CM/ECF in the Eastern District of New York." In any event, the case was ultimately transferred to this Court on January 23, 2025 — two days after Judge Bolitho's deadline for the plaintiff to object to the order. (ECF No. 35.)

[6] The plaintiff called this filing a motion for reconsideration.

the transfer order in light of the Supreme Court's intervening decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), issued on January 15, 2025. (*Id.* at 1–6.) The plaintiff also filed a letter in which he explained that his objections were late because "the winter storm emergency" that affected wide swaths of the southern United States prevented him from filing his papers in person. (N.D. Fl. ECF No. 38 at 1.)[7] The plaintiff further noted that he had twice requested — and was twice denied — electronic filing privileges, and that he had emailed his objections to the defendants on January 21, 2025. (*Id.* at 1 n.1, 3–5.)

The defendants opposed the motion, arguing that the plaintiff "provide[s] no basis for [the Northern District of Florida] [to] undo the transfer of this case to the Eastern District of New York ('EDNY'), which already timely occurred on January 23, 2025." (N.D. Fl. ECF No. 39 at 2.) According to the defendants, the plaintiff did not "challenge any aspect of the Court's reasons for granting transfer pursuant to 28 U.S.C. § 1404(a)," and raised "entirely jurisdictional" objections. (*Id.*) On January 29, 2025, Judge M. Casey Rodgers of the Northern District of Florida held that she was divested of jurisdiction on January 23rd, when the case was transferred to this Court, and therefore could not consider whether the plaintiff's "objections should be allowed out of time or the underlying merits of his objections." (N.D. Fl. ECF No. 40 at 1–2.)

---

[7] Florida Governor Ron DeSantis declared a state of emergency in the state on January 20, 2025. *See* Fla. Exec. Order No. 25-13 (Jan. 20, 2025). The Court could not find any Northern District of Florida announcements about courthouse closures during this time, although the bankruptcy court in that district closed the Clerk's office in the Pensacola courthouse on January 21 and 22, 2025 because of the storm, and noted that unrepresented parties could file documents by email. *See Tallahassee and Pensacola Clerk's Offices Closing for Inclement Weather*, United States Bankruptcy Court Northern District of Florida (Jan. 20, 2025), https://www.flnb.uscourts.gov/news/tallahassee-and-pensacola-clerk%E2%80%99s-offices-closing-inclement-weather.

On January 31, 2025, the defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in this Court. (ECF No. 42.)[8] In a flurry of filings on February 13 and 14, 2025, the plaintiff moved to supplement the record from the Northern District of Florida to include his January 27th objections and his letter explaining the reasons for the delayed filing. (ECF No. 46.) He asked this Court to reconsider, pursuant to Federal Rule of Civil Procedure 59(e), the order denying remand and the transfer order, in light of *Royal Canin*. (ECF No. 47.) He also moved to remand the case (ECF No. 49), asked the Clerk enter default judgement against all defendants for failing to answer or respond to the amended complaint (ECF No. 50), and moved to strike the defendants motion to dismiss either as untimely or on the merits (ECF No. 51). The defendants opposed the plaintiff's motion to remand the case to state court, reconsider the Florida court's order, or to transfer it back to Florida federal court. (ECF No. 53). They also filed reply in further support of their motion to dismiss and opposing the plaintiff's motion to strike. (ECF No. 54.)[9]

**DISCUSSION**

The plaintiff asks the Court to remand his case to Florida state court. (ECF No. 47 at 1, 4; ECF No. 49.) He suggests some procedural avenues to accomplish this goal. First, he asks this Court to transfer the case back to the Northern District of Florida for that court to reconsider its order denying the plaintiff's motion to remand. In the alternative, he asks this Court to reconsider Judge Bolitho's order denying remand or to remand the case itself. (ECF No. 47 at 4, 7; ECF No. 49 at 2.)

[8] The defendants also moved to stay discovery until the Court resolved the motion to dismiss. (ECF No. 43.) Judge Marutollo granted the stay on March 3, 2025. (*ECF Order dated Mar. 3, 2025 entered by Magistrate Judge Marutollo*.)

[9] The plaintiff's motion to supplement the record is denied as moot. The Court takes judicial notice of these filings and considers them in deciding the motions. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## I. Motion to Transfer

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Hatteras Enters. Inc. v. Forsythe Cosm. Grp., Ltd*, No. 15-CV-5887, 2016 WL 4083386, at *5 (E.D.N.Y. July 30, 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). That "doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Id.* at *4 (quoting *Sagendorf-Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)). The Second Circuit has not "directly endorsed a standard by which district court judges should exercise their discretion in revisiting the decisions of a transferor courts." *Id. See also SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 178 n.7 (2d Cir. 2000) ("A district court considering a retransfer motion might be limited by 'law of the case' principles, at least in the absence of changed circumstances."). Moreover, it is well-settled that "courts should be loathe to revisit prior decisions of a coordinate court unless there are extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Torres v. Universal Music Grp. N.V.*, No. 24-CV-5323, 2024 WL 3429444, at *1 (S.D.N.Y. July 16, 2024) (quoting *Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *7 (S.D.N.Y. Mar. 23, 2023)). "[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Hatteras Enters. Inc.*, 2016 WL 4083386, at *5 (quoting *SongByrd, Inc.*, 206 F.3d at 178 n.7).

The Court sees no reason to transfer the case back to the Northern District of Florida. Judge Bolitho committed no error in his determination that this case was related to *Gilead* under the relevant § 1404(a) factors and the controlling case law. (ECF No. 30 at 9–23.) Even if the

Court had disagreed with the Judge Bolitho's analysis, the policy reasons that favor application of the law of the case doctrine would persuade the Court that retransfer is inappropriate in this case. *See, e.g.*, *U.S. Bank N.A. v. Bank of Am. N.A.*, 916 F.3d 143, 153 (2d Cir. 2019) (affirming district court holding that a coordinate court's transfer order was law of the case where there was "no clear error in that ruling").

More fundamentally, and as detailed below, "[s]ince this court lacks subject matter jurisdiction over the instant matter, no order transferring the case may be issued." *Leeds, Morelli & Brown, P.C. v. Hernandez*, 2005 WL 2148994, at *3 (E.D.N.Y. Sept. 6, 2005) (collecting cases). Indeed, the Court's conclusion that it lacks subject matter jurisdiction further confirms that transferring the case back to the Northern District of Florida would risk a "perpetual game of jurisdictional ping-pong," *U.S. Bank N.A.*, 916 F.3d at 152 (quoting *Christianson*, 486 U.S. at 816), which is particularly unnecessary given that this Court is "equally capable of hearing and deciding" questions of federal court jurisdiction, *Pace v. Quintanilla*, No. 13-CV-91, 2013 WL 5405563, at *5 (S.D.N.Y. Sept. 23, 2013).

Accordingly, the plaintiff's motion to transfer is denied.

## II. Motion to Remand

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If a statute confers federal jurisdiction over a suit, not only the plaintiff but also the defendant can get it into federal court," by removing the case pursuant to §§ 1441(a) and 1446. *Royal Canin*, 604 U.S. at 27.

After a defendant removes a case, a plaintiff may move to remand it back to state court. 28 U.S.C. § 1447(c). "If the federal court lacks subject-matter jurisdiction, it must grant the motion to remand." *Mohadeb v. Credit Corp Sols. Inc.*, No. 22-CV-5017, 2022 WL 17832856, at *1 (E.D.N.Y. Dec. 21, 2022). "The removing defendant has the burden of establishing federal jurisdiction." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).

In addition, the Court must always confirm its own jurisdiction over a removed action. *See United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Regardless of whether a plaintiff moves to remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Whether styled as a motion to reconsider or a motion to remand, the plaintiff claims that the Supreme Court's opinion in *Royal Canin* requires remand because the district court does not have subject matter jurisdiction. (*See, e.g.*, ECF No. 47 at 2–5.)[10] The plaintiff argues that *Royal Canin* permits him to amend the complaint to remove federal questions so that the federal court does not have subject matter jurisdiction; then, the plaintiff says, the Court must remand the case. (*Id.*) The defendants respond that *Royal Canin* does not apply because the Court has

[10] The Supreme Court decided *Royal Canin* after Judge Bolitho denied the plaintiff's motion to remand to the state court. For this reason, the Court declines to treat the Judge Bolitho's decision as the law of the case. *See, e.g.*, Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.4 (3d ed.) ("Following a § 1404(a) transfer, the receiving court should treat pre-transfer rulings by the transferring court in much the same way as one district judge treats the rulings of a colleague."). Moreover, "[t]he Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Fersel v. Paramount Med. Servs., P.C.*, No. 18-CV-2448, 2022 WL 14813738, at *2 (E.D.N.Y. Oct. 26, 2022) (citation omitted); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .").

federal question jurisdiction over the amended complaint. (ECF No. 53 at 6–11.) The defendants also maintains that the Court has diversity jurisdiction. (*Id.* 11–13.)

**a. *Royal Canin***

In *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025), decided earlier this year, the Supreme Court held that when a plaintiff "amends her complaint to delete all the federal-law claims, leaving nothing but state-law claims behind," the federal court no longer has jurisdiction over the case, which must "return to state court." In her first complaint, Wullschleger claimed that Royal Canin's marketing tricked her into buying expensive dog food. *Id.* at 28. She asserted claims under the Missouri Merchandising Practices Act and state antitrust law. *Id.* As part of these claims, she alleged that Royal Canin violated a federal statute. *Id.* Accordingly, although the complaint asserted no federal claims, it raised an embedded a federal question. *Id.* at 28 n.1 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Royal Canin removed the case to federal court, invoking the court's federal question jurisdiction and supplemental jurisdiction. *Id.* at 28–29. Wullschleger moved to remand, which the court denied. *Id.* at 28 n.1. Then, she amended her complaint, deleting any mention of the federal statute, and moved to remand again. *Id.* at 29. The district court denied that motion, too. The Eighth Circuit reversed, reasoning that the amended complaint "[supersedes] an original complaint and renders the original complaint without legal effect." *Id.* (alteration in original) (quoting *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922 (8th Cir. 2023)).

The Supreme Court unanimously agreed. The Court held that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Id.* at 30. Put another way, "[t]he reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's

jurisdiction." *Id.* at 35–36. If "[t]he operative pleading no longer supports federal jurisdiction," then "the federal court must remand the case to the state court where it started." *Id.* at 39. Once a "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Id.* at 30. Accordingly, the Supreme Court held, the district court lacked jurisdiction over the purely state-law claims in the operative complaint — that is, the amended complaint — and was required to remand the case. *Id.* at 38.

The Court rejected Royal Canin's claim that "[t]he amendment of a complaint following removal of a suit to federal court cannot divest that court of supplemental jurisdiction." *Id.* at 32. To the contrary, the Supreme Court stated, "changes in parties, or changes in claims, effectively remake the suit," including "its jurisdictional basis." *Id.* at 35. Justice Kagan, writing for the Court, explained that "result accords with Congress's usual view of how amended pleadings can affect jurisdiction." *Id.* at 34. The Court observed, for example, that "an amendment can either destroy or create jurisdiction in an original diversity case," as "add[ing] a non-diverse party in such a case typically destroys diversity jurisdiction, requiring the case's dismissal." *Id.* at 37 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374–377 (1978)).

The Court did, however, note one category of amendments that is exempt from this rule: amendments that change "factual issue[s] relevant to jurisdiction." *Id.* at 37 n.8. Within this category is "an amendment reducing the alleged amount-in-controversy to below the statutory threshold," which "will usually not destroy diversity jurisdiction." *Id.* Because "the rule more concerns a fact on the ground," in this case "the value of a suit," it is "analogous to the time-of-filing rule applying to citizenship." *Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294–295 (1938)); *Rosado v. Wyman*, 397 U.S. 397, 405, n. 6 (1970)); *see also id.* at 36 n.5 (distinguishing the "so-called time-of-filing rule," "which evaluates a party's

citizenship (*e.g.,* whether the defendant is in fact from New York) at the time a suit is brought," and "concerns only the actual 'state of things' relevant to jurisdiction"). Accordingly, the Court suggested the amount in controversy should still be calculated as of the time a plaintiff files the original complaint.

**b. The Northern District of Florida's Decision on Subject Matter Jurisdiction**

On November 12, 2024, Judge Bolitho recommended that the district judge deny the plaintiff's motion to remand. (ECF No. 21.) At that time, the operative complaint was the original complaint, which included the explicit references to the First and Fourth Amendments. Judge Bolitho held that there was federal question jurisdiction because the plaintiff "clearly cites to the U.S. Constitution for several of his claims." (*Id.* at 3.) Judge Bolitho found that it was unnecessary to address whether there was diversity jurisdiction exists "[b]ecause there is clearly federal question jurisdiction in this case." (*Id.* at 2 n.1.)

Shortly thereafter, the plaintiff amended his complaint, "deleting every mention of federal law," just as the *Royal Canin* plaintiff did. (ECF No. 26; *Royal Canin*, 604 U.S. at 22 (Syllabus).) The defendants' motion to transfer was still pending when the plaintiff filed his amended complaint.

Judge Bolitho granted the defendants' transfer motion on January 6, 2025, a week before the Supreme Court published *Royal Canin*. In deciding that motion — and specifically whether the case "could have been filed in the Eastern District of New York because it has subject matter jurisdiction" — the court considered whether the plaintiff's amendment affected its jurisdiction. (ECF No. 30 at 5.)

Following then-binding circuit precedent, which was unquestionably good law before *Royal Canin*, Judge Bolitho wrote:

> The Court has already determined that federal subject matter jurisdiction existed in this case at the time of removal. (Docs. 21, 28). Plaintiff, however, recently attempted to circumvent the Court's jurisdictional determination by filing an amended complaint that removes references to any federal claims and expressly seeks damages less than the $75,000 amount-in-controversy requirement. (*See* Doc. 26). Federal courts have repeatedly rejected such clever attempts to destroy federal jurisdiction. Because the Court has already determined that subject matter jurisdiction existed at the time of removal (Docs. 21, 28), Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case.

(*Id.*)

Judge Bolitho relied on three cases: *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002), which "affirm[ed] the denial of remand where plaintiff 'amended the complaint to remove any federal cause of action' because the facts alleged in the amended complaint still 'fell within the scope of the federal causes of action' initially pleaded" (alteration adopted); *Collura v. City of Philadelphia*, 590 F. App'x 180, 184 (3d Cir. 2014), which "affirm[ed] denial of remand where plaintiff 'dropped his federal claims from his amended complaint' because 'federal jurisdiction cannot be defeated by amending a complaint to eliminate federal claims after removal'" (alteration adopted); and *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007), in which the Supreme Court observed in a footnote that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction . . . . But removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." (*Id.* at 5 n.2, 6 (emphasis in original).)

The *Royal Canin* Court addressed these cases, and noted that there was a circuit split on the question before the Court. *Collura* and *Behlen* were in circuits where the rule was "that a post-removal amendment cannot divest a federal court of jurisdiction." *Royal Canin*, 604 U.S. at

30, & n.3 (citing *Collura*, 590 F. App'x at 184, and *Behlen*, 311 F.3d at 1095). *Royal Canin* clearly abrogated these holdings. *See Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024) (Supreme Court decision abrogates circuit precedent if there is "a conflict, incompatibility, or inconsistency" between the decision and precedent (internal citation omitted)).

Justice Kagan also discussed *Rockwell* at length, explaining that it was consistent with the Court's reasoning in Royal Canin: "unless the withdrawn allegations [in an amended complaint] were 'replaced by others' giving the court adjudicatory power, the plaintiff's amendment 'will defeat jurisdiction.'" *Id.* at 36 (quoting *Rockwell*, 549 U.S. at 473); *see also id.* at 41 (*Rockwell* "examine[d] what happens in an original case when a plaintiff amends a complaint to expunge federal claims").

The Court also distinguished the footnote on which Judge Bolitho relied in the transfer order. Acknowledging that "[t]he footnote . . . sets out exactly the rule [the defendant] wants" — and the rule Judge Bolitho stated — the Court said that "the footnote is dictum, and [did] not control the outcome" in *Royal Canin*. *Id.* at 42. The Court did not have to "follow the *Rockwell* footnote just because it exists; [the Court's] adherence instead depends on whether it withstands analysis. And it does not." *Id.* at 43.

*Royal Canin*, thus, abrogated the central precedents on which Judge Bolitho relied in holding that this Court would have had federal jurisdiction over the case had it been brought in this district. Accordingly, the Court must evaluate whether it has subject matter jurisdiction over this case in light of *Royal Canin*. *See id.* at 34 ("[A]n amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion.").

Case 3:26-cv-00345-DKW-HTO Document 56 Filed 02/27/26 Page 17 of 59

**c. Federal Question Jurisdiction**

The plaintiff maintains that *Royal Canin* controls this case. Because the plaintiff removed his references to federal law in the amended, now-operative complaint, he contends that the Court does not have federal question jurisdiction over the purely state-law claims in the amended complaint. (*See generally* ECF No. 47.) The defendants say that *Royal Canin* does not apply because the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else." (ECF No. 53 at 8 (emphasis in original).) Second, they assert that the state law claims in the amended complaint nonetheless arise under federal law because they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Id.* at 10 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).) Neither argument is persuasive.

"The federal district courts have 'original jurisdiction' of civil actions 'arising under' federal law; and unless otherwise provided by Congress, they have removal jurisdiction over 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting 28 U.S.C. §§ 1331, 1441(a)). Claims directly arise under "federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

As an initial matter, the defendants' argument that this case is distinguishable from *Royal Canin* because the plaintiff removed federal claims, not just references to federal law, is unconvincing. The relationship between federal law and state claims in *Royal Canin* is similar to

the one in this case. The *Royal Canin* complaint "alleged the [federal] violations not as independent federal claims, but instead in support of [the plaintiff's] state claims." *Royal Canin*, 604 U.S. at 29 n.1. The Eighth Circuit, citing *Gunn*, held that the state-law claims arose under federal law because those "provisions [were] thoroughly embedded in, and integral to the success of" the state law claims. *Id.* (citing *Wullschleger v. Royal Canin U. S. A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020)). The Supreme Court, however, took "a slight liberty throughout [the] opinion, referring to the original complaint's [federal] allegations simply as federal claims." *Id.* In other words, although Justice Kagan calls them federal claims, they were allegations that raised a federal question. Like Ms. Wullschleger, the plaintiff amended his complaint to remove citations to federal law, while retaining essentially the same causes of action. Thus, the facts are similar to the *Royal Canin* facts, and *Royal Canin* controls.

Nonetheless, the defendants maintain that *Royal Canin* does not apply to cases where a plaintiff's amended complaint "removed certain words" but otherwise "kept the factual premise of his claims intact, and . . . sought the same relief post-amendment that he had sought pre-amendment." (ECF No. 53 at 8.) In support of this proposed rule, they cite *Behlen*, 311 F.3d at 1095, where the Eleventh Circuit held that "it was proper for the court to retain jurisdiction over [the plaintiff's] amended complaint, because, despite his removal of the allegations that would bring his claims within the scope of the [federal law], the amended complaint still presents a federal question." The Eleventh Circuit explained that the amended complaint continued to allege that the defendant violated federal securities laws, even though the plaintiff no longer cited those statutes; and merely removing citations to federal law did not erase the federal question. *Id.* at 1095–96.

*Royal Canin* did not necessarily abrogate this holding, but the defendants' proposed rule does not follow from the quoted language. According to the defendants, the amended complaint still asserts federal causes of action, even though it does not allege any violations of federal law. (ECF No. 53 at 8–9.) Accepting the defendants' theory would require the Court to read a federal cause of action into the amended complaint, which it will not do. *See Royal Canin*, 604 U.S. at 35 (the plaintiff is the "master of the complaint" and "gets to determine which substantive claims to bring against which defendants"). After all, the Court would not allow the plaintiff to recover under a federal cause of action when his amended complaint does not state one; nor will the Court read a federal claim into the complaint to exercise jurisdiction.[11]

The better reading of *Behlen* accords with the defendants' next argument — that even if the plaintiff asserts only state-law claims, those claims still arise under federal law. (*Id.* at 10 (quoting *Grable*, 545 U.S. at 314).) In addition to cases that arise directly under federal law, "the Supreme Court has identified a 'special and small' category of actual state claims that present significant, disputed issues of federal law," and therefore arise under federal law within the meaning of § 1331. *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 912 (2d Cir. 2024) (citation omitted). "For a state law claim to fall within this 'slim category,' the embedded federal issue must be '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

[11] In claiming that the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else" (ECF No. 53 at 8 (emphasis in original)), the defendants may mean to argue that the plaintiff impermissibly "disguise[s] . . . inherently federal cause[s] of action, to block removal." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3722.1. In other words, the defendants might be saying that the plaintiff's state constitutional claims are inherently federal causes of action — under 42 U.S.C. § 1983, for instance — because, as discussed below, no cause of action exists under state law. To credit this position, however, the Court would have to rewrite the plaintiff's complaint to find a viable federal cause of action that does not appear on the face of the complaint. That is not the Court's job. *See, e.g.*, *Adams v. Gen. Motors Acceptance Corp.*, 307 F. Supp. 2d 812, 817 (N.D. Miss. 2004) (remanding and rejecting defendant's argument that because state law provided no cause of action, the plaintiffs' claims must be construed as federal claims).

capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn*, 568 U.S. at 258); *see also Grable*, 545 U.S. at 314.

*i. Necessarily Raised*

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) (quoting *Jacobson*, 824 F.3d at 315). "For a federal issue to be necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Id.* (emphases in original) (internal quotations and citations omitted). "In other words, federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case." *Tantaros*, 12 F.4th at 141. The Second Circuit has instructed district courts to "[f]ocus[] on 'what necessarily appears in the plaintiff's statement of his own claim,'" and "exercise federal jurisdiction only if 'a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (alterations adopted) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

The plaintiff alleges in the amended complaint that the defendants violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution, by executing this Court's orders. (ECF No. 26 ¶¶ 17–26, 30–35.) The plaintiff attached to his amended complaint two affirmations of service that say that the defendants executed the search pursuant to this Court's seizure order. (ECF No. 26-1, Ex. C, at 8–9; ECF No. 26-1, Ex. D, at 10–12.) The plaintiff's state constitutional claims are, therefore, premised on the defendants' execution of an

order issued from this Court pursuant to a federal statute, 15 U.S.C. § 1116(d).[12] In other words, to establish that the search violated the Florida constitution, the plaintiff must prove either that the Court's asset freeze and seizure orders were improper or that they were illegally executed. Both are questions of federal law and are necessarily raised by the plaintiff's claims under the state constitution.

But these federal questions would not necessarily arise if the plaintiff does not have a cause of action, because then they are not "an element . . . of the plaintiff's cause of action." *Tantaros*, 12 F.4th at 141. That is the case here, because as the defendants point out, "no cause of action exists for money damages for a violation of a state constitutional right" in Florida. *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th Dist. Ct. App. 2004) (citing *Garcia v. Reyes*, 697 So.2d 549 (Fla. 4th Dist. Ct. App. 1997)). *See also Cowans v. Maximus Educ. LLC*, No. 4D2025-0235, 2025 WL 2055134, at *1 (Fla. 4th Dist. Ct. App. July 23, 2025) ("[I]t does not appear that article I, section 23 gives rise to a cause of action for money damages."); *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st Dist. Ct. App. 1994) (holding that it is "clear that article I, section 23 does not create a cause of action for 'governmental intrusion' because legislative enactment is needed to delineate whether immunity is waived to permit the award of money damages")*, approved,* 670 So. 2d 56 (Fla. 1996); *Funderburk v. O'Leary*, No. 21-CV-14290, 2023 WL 3491221, at *5 (S.D. Fla. May 17, 2023) ("Plaintiff will not be permitted to seek damages for violations of the Florida Constitution." (collecting cases)); *Lindbloom v. Manatee Mem'l Hosp., L.L.C.*, No. 23-CV-2856, 2025 WL 1563550, at *7 (M.D. Fla. Apr. 7, 2025) ("Florida state and federal courts have held that 'Florida constitutional claims do not support claims for damages absent a separate enabling statute.'" (internal citation omitted))*, report and*

[12] The defamation claims do not arise under federal law, and the defendants do not argue that they do.

*recommendation adopted*, 2025 WL 1450371 (M.D. Fla. May 21, 2025); *Ayala v. City of Pembroke Pines*, No. 25-CV-60294, 2025 WL 2202101, at *3 (S.D. Fla. June 27, 2025) ("[N]o cause of action exists for monetary relief for a violation of a Florida constitutional right."); *Capps v. Fla. Highway Patrol*, No. 17-CV-60365, 2017 WL 1436077, at *7 (S.D. Fla. Apr. 24, 2017) (collecting cases); *Smith v. Bell*, No. 06-CV-60750, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself." (collecting cases)). Accordingly, because the plaintiff has no private right to raise the federal issues, those issues are not necessarily raised on the face of the plaintiff's complaint, and this case does not arise under federal law.

In an abundance of caution, however, and because the Court could construe the plaintiff's constitutional claims as a tort claim for invasion of privacy that necessarily raises these federal questions, the Court continues the *Gunn-Grable* analysis. *See Percival v. Chronister*, No. 23-CV-1243, 2025 WL 1940316, at *17 (M.D. Fla. July 15, 2025) (construing *pro se* claim "incorrectly ground[ed]" in the Florida Constitution as "one for an invasion of privacy"); *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980) (holding that "Florida has recognized the tort of invasion of privacy," at least in cases of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home").

*ii. Actually Disputed*

Assuming federal questions necessarily arise in the state law claims, those questions — the legality of the Court's orders and the defendants' execution of those orders, in this case — are a "central point of dispute" in the action, "satisfying the second requirement for the exercise of federal jurisdiction in this case." *Link Motion Inc.*, 103 F.4th at 913 (quoting *Gunn*, 568 U.S. at 259).

*iii. Substantial*

"Nevertheless, as the Supreme Court has cautioned, 'the mere presence of a [disputed] federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Id.* (alteration in original) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). The dispute must also be substantial. To satisfy this requirement "'it is not enough that the federal issue be significant to the particular parties in the immediate suit'; rather, 'the substantiality inquiry looks instead to the importance of the issue to the federal system as a whole.'" *Id.* (cleaned up) (quoting *Gunn*, 568 U.S. at 260). "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (alteration in original) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). For example, the Supreme Court and Second Circuit have exercised federal question jurisdiction where state law claims raise "disputes over the meaning of a federal tax law, the scope of an Internal Revenue Code regulation, and the duties imposed by the Securities Exchange Act." *Id.*

*Grable* is instructive on this point. In that case, the Internal Revenue Service seized Grable & Sons Metal Products' property and sold it to satisfy its federal tax debt. *Grable*, 545 U.S., at 310–311. The company filed a state law quiet title action against the third party that bought the property, alleging that the IRS had not complied with statutory notice requirements, so the seizure and sale were invalid. *Id.* at 311. The Supreme Court emphasized that the federal government has a "strong interest" in the collection of delinquent taxes, and "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* at 315

In this case, the plaintiff challenges the Court's authority to issue asset freeze and seizure orders under the Lanham Act. Although Congress granted concurrent jurisdiction to state and federal courts over claims under the Lanham Act, 28 U.S.C. § 1338(a), a court must construe the

statute "in the light of a strong federal policy in favor of vigorously competitive markets." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997). To that end "Congress recognized that a trademark aids competition in the marketplace because it helps a consumer distinguish among competing products." *Id.* (citation omitted). These important federal policies are at issue in this case. This is a close call, but this case could raise sufficiently substantial issues that implicate the whole federal system to support jurisdiction.

*iv. Disruption to the Federal-State Balance*

But even if the plaintiff's "state action necessarily raises a disputed and substantial issue of federal law," the Court would still not have federal question jurisdiction, because "federal jurisdiction lies only if adjudication in a federal forum would be consistent with the 'congressionally approved balance of state and federal judicial responsibilities,' defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'" *Tantaros*, 12 F.4th at 146 (quoting *Jacobson*, 824 F.3d at 316). "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Jacobson*, 824 F.3d at 316.

In this case, however, Florida has a special interest in the claims the plaintiff makes: violations of the state constitution. "It is fundamental . . . that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010) (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940). Even if substantial federal issues are at stake in this case, so are core state interests. The plaintiff's state-law claims, therefore, are outside of the Court's federal question jurisdiction under *Grable* and *Gunn*.

* * *

Accordingly, this case does not fall within the narrow category of cases in which purely state-law claims support jurisdiction under § 1331.

**d. Diversity Jurisdiction**

In the alternative, the defendants argue the Court has diversity jurisdiction under § 1332. "Congress has always given federal courts power to decide 'diversity' cases." *Royal Canin*, 604 U.S. at 26 (citing 28 U.S.C. § 1332(a)). Federal courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different [s]tates." 28 U.S.C. § 1332(a). The parties do not dispute that they are completely diverse. Therefore, the Court has diversity jurisdiction if the amount in controversy exceeds $75,000.

Courts determining whether they have diversity jurisdiction adhere to the "time-of-filing" rule, which "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the complaint] — whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). The *Royal Canin* Court reaffirmed this rule as applied to questions concerning "the actual 'state of things' relevant to jurisdiction — meaning, the facts on the ground, rather than (as addressed [in *Royal Canin*]) the claims and parties that the plaintiff includes in a complaint." *Royal Canin*, 604 U.S. at 36 n.5. The Court observed that courts typically evaluate a party's citizenship and the amount in controversy as of the time the plaintiff files the original complaint. *Id.* at 36 n.5, 38 n.8.

As to the amount in controversy, the Court offered two reasons that "an amendment reducing the alleged amount-in-controversy to below the statutory threshold . . . will usually not

destroy diversity jurisdiction." *Id.* at 38 n.8; *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). The first is that "the value of a suit" concerns "facts on the ground," as opposed to the plaintiff's decision as master of the complaint in choosing the parties and claims, so the Court "viewed it as analogous to the time-of-filing rule applying to citizenship, which also assesses a factual issue relevant to jurisdiction only at the suit's outset." *Royal Canin*, 604 U.S. at 38 n.8. Second, assessing a suit's value poses unique difficulties, because it is likely "that the calculation will change over the course of litigation," which could inspire "constant litigation" and "alter a court's jurisdiction." *Id.* Therefore, the Court looks to the original complaint to determine the amount in controversy.

The removing defendants must show a "reasonable probability that the jurisdictional amount has been reached." *Cappuccilli v. Cokinos*, No. 24-CV-3045, 2024 WL 3013604, at *1 (E.D.N.Y. June 14, 2024) (citation omitted). "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 273–74 (2d Cir. 1994). "In determining whether the removing defendant has met this burden, courts 'look first to the plaintiffs' complaint and then to [the defendants'] petition for removal.'" *Gregory Wayne Designs, LLC v. Lowry*, No. 24-CV-2109, 2024 WL 3518584, at *3 (S.D.N.Y. July 24, 2024) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). If neither in conclusive, "courts may look outside those pleadings to other evidence in the record." *Id.* (quoting *United Food & Com. Workers Union*, 30 F.3d at 305).

The plaintiff does not allege a specific damages amount in the state court complaint. Instead, he claims that the damages exceed $50,000.00, which is the jurisdictional threshold for circuit courts in Florida. (ECF No. 1-1 ¶ 12; ECF No. 18 at 10 (citing Fla. Stat. Ann § 34.01).) This allegation does not support federal jurisdiction because it "merely indicates an amount in controversy in excess" of a jurisdiction limit that is below $75,000. *De Garcia v. Tropicana Ent. Inc.*, No. 22-CV-12, 2022 WL 375996, at *2 (E.D.N.Y. Feb. 8, 2022) (quoting *Valente v. Garrison From Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *1 (E.D.N.Y. Jan. 11, 2016)) (collecting cases); *see also O'Neill v. Target Corp.*, No. 21-CV-3262, 2021 WL 2634880, at *2 (E.D.N.Y. June 25, 2021); *Williams v. CVS*, No. 25-CV-655, 2025 WL 486656, at *2 (E.D.N.Y. Feb. 13, 2025).

Nor do the plaintiff's "boilerplate" allegations of his injuries "suffice to establish that this action involves an amount in controversy adequate to support federal diversity jurisdiction." *Mekhi v. Area Storage & Transfer, Inc.*, No. 18-CV-4654, 2018 WL 4043152, at *2 (E.D.N.Y. Aug. 24, 2018) (citation omitted) (collecting cases). The plaintiff pleads five causes of action.[13] For his state constitutional claims, he alleges he "suffered damages, including emotional distress, invasion of privacy, and other harm" and "demands [j]udgment for damages [and] punitive damages." (ECF No. 1-1 ¶¶ 32, 35, 38.) For his defamation claims, he alleges he "suffered damages, including damage to reputation, emotional distress, and other harm" and "demands [j]udgment for damages [and] punitive damages." (*Id.* ¶¶ 42, *id.* at 10.) These "conclusory assertions . . . lack of any detail regarding Plaintiff's specific damages," and "there is simply insufficient information to 'intelligently ascertain removability.'" *Mekhi*, 2018 WL 4043152, at

[13] He probably pleads just two cognizable causes of action. (*See* ECF No. 18 at 13 (arguing that only the libel and slander claims are even "superficially *cognizable* against private actors such as Defendants" (emphasis in original).)

*2 (quoting *DeMarco v. MGM Transp., Inc.,* No. 06-CV-307, 2006 WL 463504, at *1 (E.D.N.Y. Feb. 24, 2006)); *see also Herlihy v. Hyatt Corp.*, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022) ("[G]eneralized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met." (collecting cases)).

The defendants maintain, however, that each claim, if proven, is "likely to result in damages far in excess of $75,000," because "jury awards in defamation cases regularly exceed" that amount. (ECF No. 53 at 12; ECF No. 18 at 9–16.) But just because jury awards may exceed the amount in controversy does not mean that they must — or that they do in this case. Moreover, post-trial jury awards offer little guidance on the amount in controversy of claims before any motion practice or discovery. For these reasons, courts in this circuit routinely disregard comparisons to jury verdicts in determining the amount in controversy for jurisdictional purposes. *See, e.g.*, *Jean-Louis v. Amazon.com Servs., LLC*, No. 22-CV-5020, 2022 WL 3867668, at *3 (E.D.N.Y. Aug. 29, 2022) ("[C]onsidering the procedural posture of this case, [the defendant's] reliance on cases — decided post-trial — discussing at length evidence of a relentless stream of discrimination and taunting that spanned many years is misplaced."); *Salerno v. N. Manor Multicare Facility*, No. 21-CV-7490, 2021 WL 4148900, at *2 (S.D.N.Y. Sept. 13, 2021) (declining to rely on "cases *reviewing* jury verdicts for emotional damages" in determining amount in controversy because of the difference in "procedural posture" (emphasis in the original)).

The defendants also point to the plaintiff's request for punitive damages, which they state may be "up to three times actual damages or $500,000, whichever is higher." (ECF No. 53 at 12.) "[I]n computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (alteration adopted) (citation omitted). The complaint does not allege any facts that would support "reasonable probability" that the plaintiff would be entitled to punitive damages; the "conclusory assertion that any amount of punitive damages is a *fait accompli* is untethered to the record and amounts to the kind of speculation and surmise that courts in this Circuit routinely reject." *Jean-Louis*, 2022 WL 3867668, at *4.

The defendants' notice of removal does not satisfy their burden either. They plead that "the amount in controversy in this action — as pled — plausibly exceeds $75,000." (ECF No. 1 ¶ 16.) This conclusory assertion is similarly not conclusive or controlling. *Gregory Wayne Designs, LLC*, 2024 WL 3518584, at *4. The defendants cannot "rely[] on inferences drawn from the Complaint," because it does not allege any facts about the nature or extent of the plaintiff's harm. *Herrera v. Terner*, No. 16-CV-4610, 2016 WL 4536871, at *2 (E.D.N.Y. Aug. 30, 2016); *see also Shoham v. United Airlines, Inc.*, No. 22-CV-5677, 2022 WL 13798296, at *2 (E.D.N.Y. Oct. 21, 2022) (remanding personal injury claims because the "boilerplate pleadings" could not establish an amount in controversy supported federal jurisdiction).

Without any factual allegations about the plaintiff's injuries to support jurisdiction, the defendants must look outside the pleadings. They cite the state court civil cover sheet that the plaintiff filed with his complaint. (ECF No. 1-1 at 2.) On this administrative form, the plaintiff "estimated [the] amount of the claim, rounded to the nearest dollar" at "over $100,000.00." (*Id.*) However, the Court declines to rely on this document as affirmative evidence of the actual amount in controversy. The civil cover sheet states on its face that it "neither replace[s] nor supplement[s] the filing . . . of pleadings" and is required by "the Clerk of Court for the purpose of reporting uniform data pursuant" to state law. (*Id.*) The amount of claim question narrows its

use even further: It is "for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose." (*Id.*) Indeed, courts have held that a plaintiff's answers on the civil cover sheet cannot establish diversity jurisdiction. *Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); *Galloway v. Ahamed*, No. 22-CV-979, 2022 WL 3107330, at *5 (D. Conn. Aug. 4, 2022) (checking box on civil cover sheet is not sufficient to prove the amount in controversy exceeds the jurisdictional threshold); *Powell v. Maldonado*, No. 23-CV-826, 2024 WL 496478, at *4 (E.D.N.Y. Feb. 7, 2024) (checking boxes on civil cover sheet does not establish parties are diverse). This is especially true in the context of removal, because "federal courts construe the removal statute narrowly, resolving any doubts against removability," *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).

* * *

Accordingly, the Court lacks federal jurisdiction over this action, and it must remand the case. *See* 28 U.S.C. 1447(c).

**III. Remand to Florida State Court**

"[W]hen an action is transferred, it remains what it was." *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.). "[A] transferee court is deemed to inherit all the authority of a transferor court." *Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 271 (3d Cir. 2002) (holding that "a court has authority to send a case back to the state court where it originated" and "does not have authority to 'remand' a case to a stranger court"). This includes the authority to remand the case to the state court where the case originated. *See, e.g.*, *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir.

2002) (declining to review order remanding case to the Florida Circuit Court for lack of federal subject matter jurisdiction); *Parker v. J. Crew Grp., Inc.*, No. 17-CV-1214, 2018 WL 385033, at *2 (D.N.J. Jan. 11, 2018) (remanding transferred case to Illinois state court); *Retterath v. Homeland Energy Sols., LLC*, No. 14-CV-158, 2014 WL 7776705, at *10 (S.D. Iowa Dec. 24, 2014) (remanding transferred case to Florida state court).

Indeed, the Court has no other option. The removal statute contemplates that courts may remand a case only "to the State court from which it was removed." 28 U.S.C. 1447(c). Courts have repeatedly followed this reasoning and "held that a district court is only permitted to remand a case to the state court from which the case was removed." *Salis v. Manzanet-Daniels*, No. 24-CV-1130, 2025 WL 1305868, at *4 (N.D.N.Y. May 6, 2025) (collecting cases). The Court must remand the case if it does not have subject matter jurisdiction, and there is only one court to which remand is permissible. Accordingly, this case is remanded to the First Judicial Circuit Court of Florida, the court from which it was removed.

## CONCLUSION

For the foregoing reasons, the case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 30, 2025

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

**JOHN D. LEVITAN, SR,
Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164
DIVISION: N**

**GILEAD SCIENCES, INC., et al
Defendants.**

______________________________/

**ORDER DENYING PRO SE PLAINTIFF'S VERIFIED MOTION TO DISQUALIFY JUDGE**

**THIS MATTER** is before the Court on the Defendant's *Pro Se* Verified Motion to Disqualify Judge, e-filed February 10, 2026.

Rule 2.330(h) of the Florida Rules of General Practice and Judicial Administration governs the determination of an initial motion for disqualification and requires that the Court determine only the legal sufficiency of the motion. If the motion is legally sufficient, the Court shall immediately enter an order granting disqualification and proceed no further. The Rule prohibits the Court from disputing the truth of the facts alleged. As such, an order finding a motion legally sufficient does not constitute acknowledgement that the allegations are true.

**THEREFORE**, it is **ORDERED** that the Motion is:

[ ] **GRANTED**, as legally sufficient.

[X] **DENIED**, as legally insufficient.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

02/12/2026 13:38:20
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 02/12/2026 01:38:20 4XXuWsPy

**JENNIFER J. FRYDRYCHOWICZ
CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING (JBRANNING@CLARKPARTINGTON.COM);
JACOB BARNES (jbarnes@clarkpartington.com), Attorneys for Defendants

Filing # 241678806 E-Filed 02/13/2026 01:43:16 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024-CA-001164**

GILEAD SCIENCES, INC. GILEAD SCIENCES IRELAND UC PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, THOMAS P. KURLAND, an Individual, Defendant(s), Jointly and Severally

Defendant(s).

___________________________________________/

**PLAINTIFF'S MOTION FOR LEAVE**
**TO FILE SECOND AMENDED COMPLAINT AND INJUNCTIVE RELIEF**

**NOW COMES** Plaintiff, John D. Levitan, Sr., *pro se*, pursuant to Florida Rule of Civil Procedure 1.190(a), moves for leave to file his Second Amended Complaint and states:

1. Plaintiff previously filed an Amended Complaint while the litigation was removed to Federal Court. At the time of the Amended Complaint Plaintiff was unaware of additional further damage and conspiracies by the Defendants to further endanger, and to harass and harangue the Plaintiff attempting to further harm Plaintiff and spread his home address and his family home endangering his family meant further harm Plaintiff.

2. Plaintiff has since discovered additional material facts and evidence.

3. The proposed Second Amended Complaint contains additional counts and facts not previously alleged as well as for Preliminary Injunctive Relief.

4. The proposed Second Amended Complaint clarifies claims and adds allegations of ongoing harassment continuing defamation, tortious interference with financial relationships, and federal constitutional violations.

5. These amendments arise from the same transactions and occurrences already before the Court.

6. The amendment is made in good faith and not for purposes of delay.

7. Defendants will not suffer prejudice if leave is granted.

8. Florida courts favor freely granting leave to amend when justice requires.

9. The proposed pleading is attached as Exhibit "A," which corresponds to Plaintiff's Second Amended Complaint

**WHEREFORE**, Plaintiff respectfully requests that this Court grant leave to file the Second Amended Complaint and Injunctive relief.

Respectfully submitted,

February 13, 2026

/s/ ______________________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Florida e-filing portal on this 13th day of February 2026.

/s/ ______________________________
John D. Levitan, *pro se*

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024-CA-001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

## SECOND AMENDED COMPLAINT

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

## PARTIES

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the

laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to Article V, Section 5 of the Florida Constitution and Chapter 26 of the Florida Statutes.

11. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

12. The damages subject of this action exceeds $50,000.00.

**STATEMENT OF FACTS**

13. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional and US Constitutional rights of the Plaintiff.

14. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

15. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

16. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

> a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.

b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.

d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition Feel free to discuss things with him. Nothing else will change on
the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\

f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the

Eastern District of New York (the "First Affidavit") whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s) was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

**ADDITIONAL FACTS – HARASSMENT, RETALIATION,**
**AND CONTINUING DEFAMATION DURING PENDENCY OF LITIGATION**

30. After Plaintiff initiated this action, Defendants began and continue to engage in a deliberate campaign of harassment, intimidation, retaliation, and reputational harm designed to financially cripple and coerce Plaintiff.

31. Defendants intentionally published and/or distributed Plaintiff's private personal information, including his home address, telephone number, and identifying information, to third parties and online without authorization.

32. Defendants contacted banks, creditors, lenders, and financial institutions and communicated false, misleading, and defamatory accusations regarding Plaintiff, including

allegations of fraud, criminal conduct, and unlawful activity.

33. These communications were made maliciously and without privilege for the purpose of damaging Plaintiff's reputation and financial standing.

34. As a direct and proximate result, multiple financial institutions froze, restricted, or terminated Plaintiff's bank accounts, credit cards, and financial relationships.

35. Plaintiff personally communicated with representatives of multiple financial institutions who advised that the adverse actions were taken only after receiving negative and allegedly fraudulent accusations concerning Plaintiff.

36. Upon information and belief, those communications originated from or were caused by Defendants or persons acting in concert with Defendants.

37. But for Defendants' communications, Plaintiff's accounts and credit relationships would not have been restricted or terminated.

38. Defendants have further spread false statements, gossip, innuendo, and defamatory accusations to third parties concerning Plaintiff's character and integrity.

39. These statements are knowingly false and constitute defamation per se because they accuse Plaintiff of criminal and fraudulent conduct.

40. Defendants' actions constitute an ongoing course of harassment and retaliation intended to intimidate Plaintiff and interfere with his pursuit of legal remedies.

41. Plaintiff has suffered loss of banking access, damage to creditworthiness, reputational harm, emotional distress, and continuing economic loss.

42. Defendants' misconduct is continuing and will persist absent Court intervention.

**COUNT I**

**VIOLATION OF CIVIL RIGHTS WARRANTLESS SEARCH BY PRIVATE PERSONS**

43. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

44. Defendants conducted the search and search of financial records without a valid Court Order and without a valid warrant or right to break into the Plaintiff's house with the assistance of law enforcement who failed to verify with legal counsel whether the court order being provided was valid and lawful.

45. Defendant(s), acting under color of state law, in a quasi-public private authority violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

46. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT II**

**VIOLATION OF CIVIL RIGHTS RIGHT TO PRIVACY**

47. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

48. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth

Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

49. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT III**

**VIOLATION OF CIVIL RIGHTS FREEDOM OF SPEECH AND ASSOCIATION**

50. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

51. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

52. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT IV**

**LIBEL**

53. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

54. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

55. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

56. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT V**

**SLANDER**

57. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

58. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

59. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

60. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, costs of the action and attorney's fees.

**COUNT VI**

**HARASSMENT AND CONTINUING HARASSMENT**

61. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

62. Defendants intentionally engaged in a course of conduct directed at Plaintiff that serves no legitimate purpose and was intended to alarm, intimidate, threaten, and financially injure him.

63. Such conduct includes publishing private personal information, repeatedly contacting Plaintiff's financial institutions, and making false accusations to third parties.

64. Defendants knew their conduct would cause emotional distress and financial harm.

65. The conduct is ongoing and constitutes continuing harassment.

66. As a direct and proximate result of Defendant(s)'s continuing harassment, and statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT VII**

**TORTIOUS INTERFERENCE WITH BUSINESS AND FINANCIAL RELATIONSHIPS**

67. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

68. Plaintiff maintained valid relationships with banks, lenders, and financial institutions.

69. Defendants knew of these relationships.

70. Defendants intentionally and unjustifiably interfered by making false accusations and communications to those institutions.

71. Such interference caused account closures, freezes, and credit termination.

72. Defendants acted maliciously and without privilege.

73. Plaintiff suffered financial damages and credit harm.

74. Plaintiff demands all damages allowed by law, including punitive damages.

75. As a direct and proximate result of Defendant(s)'s tortious interference with business and financial relationships, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT VIII**

**CONTINUING LIBEL AND SLANDER (DEFAMATION PER SE)**

76. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

77. Defendants published and republished written and spoken false statements accusing Plaintiff of criminal and fraudulent conduct.

78. These statements were false and made with actual malice or reckless disregard for the truth.

79. The statements constitute defamation per se.

80. Defendants continue to disseminate these statements.

81. Plaintiff has suffered reputational and economic harm.

82. As a direct and proximate result of Defendant(s)'s continuing libel and slander to private parties and financial institutions Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

## COUNT IX
## 42 U.S.C. § 1983 – VIOLATION OF FOURTH AMENDMENT
## UNLAWFUL SEARCH AND SEIZURE (UNDER COLOR OF STATE LAW)

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

84. At all relevant times, Defendants acted jointly and in concert with local deputies and law enforcement personnel and therefore acted under color of state law.

85. Defendants participated in, directed, assisted, or conspired in the warrantless entry, search, and seizure of Plaintiff's residence and personal effects.

86. The entry and search occurred without probable cause, without consent, and without a valid warrant or valid judicial process.

87. Such conduct violated Plaintiff's rights secured by the Fourth Amendment to the United States Constitution.

88. As a direct and proximate result of Defendant(s)'s continuing harassment, and statements in violation of the Fourth Amendment to the U.S. Constitution, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT X**

**42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION**

**(FREE SPEECH AND RIGHT TO PETITION)**

89. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

90. Plaintiff engaged in constitutionally protected activity including filing lawsuits and petitioning the courts for redress.

91. Defendants retaliated by harassment, intimidation, defamation, publication of private information, and interference with Plaintiff's banking and business relationships.

92. Such retaliation was intended to punish and chill Plaintiff's exercise of First Amendment rights.

93. Defendants' conduct would deter a person of ordinary firmness from exercising those rights.

94. Defendants' actions violated Plaintiff's rights under the First Amendment.

95. As a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT XI**

**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS**

96. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein

97. Plaintiff possessed protected property interests in his bank accounts, credit relationships, and financial access.

98. Defendants intentionally caused financial institutions to freeze, close, or terminate those accounts.

99. These deprivations occurred without notice or due process of law.

100. Such actions violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

101. Plaintiff suffered economic and reputational harm as a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT XII**

**42 U.S.C. § 1985 – CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

102. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein

103. Defendants knowingly agreed and conspired among themselves and with others to deprive Plaintiff of constitutional rights.

104. Overt acts included unlawful entry, false affidavits, defamatory publications, and interference with financial institutions.

105. The conspiracy resulted in deprivation of Plaintiff's federally protected rights.

106. As a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

## DEMAND FOR JURY TRIAL

107. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory damages in an amount to be determined at trial;

ii. For punitive damages;

iii. For an award of costs, including reasonable attorney fees;

iv. Injunctive relief prohibiting Defendants from further harassment, defamatory publications, and interference with Plaintiff's financial or business relationships;

v. Damages for harassment and tortious interference;

vi. Plaintiff requests attorney's fees and costs pursuant to 42 U.S.C. § 1988;

vii. Plaintiff requests injunctive relief prohibiting further constitutional violations;

viii. Plaintiff requests such further relief as the Court deems just and proper.

Respectfully submitted,

February 13, 2026

/s/ ______________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Second Amended Complaint and that the facts stated in it are true and correct to the best of my knowledge and recollection.

Executed this 13th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Florida e-filing portal on this 13th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

## G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal

NEWS

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says



Jim Little
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | Updated 11:31 a.m. CT Oct. 18, 2022

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILEAD SCIENCES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAFE CHAIN SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 21-cv-4106 (AMD) (RER)<br><br>**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)**<br><br>**AFFIRMATION OF SERVICE** |

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

Ryan Robinson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GILEAD SCIENCES, INC., *et al.*, Plaintiffs, v. SAFE CHAIN SOLUTIONS, LLC, *et al.*, Defendants. | : | Case No. 21-cv-4106 (AMD) (RER) **AFFIRMATION OF SERVICE UPON JOHN LEVITAN** |

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

Filing # 241678806 E-Filed 02/13/2026 01:43:16 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024-CA-001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

____________________________________________/

**SECOND AMENDED COMPLAINT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

**PARTIES**

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the

laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the subject matter of this action pursuant to Article V, Section 5 of the Florida Constitution and Chapter 26 of the Florida Statutes.

11. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

12. The damages subject of this action exceeds $50,000.00.

**STATEMENT OF FACTS**

13. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional and US Constitutional rights of the Plaintiff.

14. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

15. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

16. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.

b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.

d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition Feel free to discuss things with him. Nothing else will change on
the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\

f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the

Eastern District of New York (the “First Affidavit”) whereby Ryan Robinson (“Robinson”) an Escambia County Deputy declared under penalty of perjury that the Defendant(s) was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the “Second Affidavit”) completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs (“Dobbs”), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff’s home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)’s actions have violated Plaintiff’s rights under the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

**ADDITIONAL FACTS – HARASSMENT, RETALIATION,**
**AND CONTINUING DEFAMATION DURING PENDENCY OF LITIGATION**

30. After Plaintiff initiated this action, Defendants began and continue to engage in a deliberate campaign of harassment, intimidation, retaliation, and reputational harm designed to financially cripple and coerce Plaintiff.

31. Defendants intentionally published and/or distributed Plaintiff's private personal information, including his home address, telephone number, and identifying information, to third parties and online without authorization.

32. Defendants contacted banks, creditors, lenders, and financial institutions and communicated false, misleading, and defamatory accusations regarding Plaintiff, including

allegations of fraud, criminal conduct, and unlawful activity.

33. These communications were made maliciously and without privilege for the purpose of damaging Plaintiff's reputation and financial standing.

34. As a direct and proximate result, multiple financial institutions froze, restricted, or terminated Plaintiff's bank accounts, credit cards, and financial relationships.

35. Plaintiff personally communicated with representatives of multiple financial institutions who advised that the adverse actions were taken only after receiving negative and allegedly fraudulent accusations concerning Plaintiff.

36. Upon information and belief, those communications originated from or were caused by Defendants or persons acting in concert with Defendants.

37. But for Defendants' communications, Plaintiff's accounts and credit relationships would not have been restricted or terminated.

38. Defendants have further spread false statements, gossip, innuendo, and defamatory accusations to third parties concerning Plaintiff's character and integrity.

39. These statements are knowingly false and constitute defamation per se because they accuse Plaintiff of criminal and fraudulent conduct.

40. Defendants' actions constitute an ongoing course of harassment and retaliation intended to intimidate Plaintiff and interfere with his pursuit of legal remedies.

41. Plaintiff has suffered loss of banking access, damage to creditworthiness, reputational harm, emotional distress, and continuing economic loss.

42. Defendants' misconduct is continuing and will persist absent Court intervention.

**COUNT I**

**VIOLATION OF CIVIL RIGHTS WARRANTLESS SEARCH BY PRIVATE PERSONS**

43. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

44. Defendants conducted the search and search of financial records without a valid Court Order and without a valid warrant or right to break into the Plaintiff's house with the assistance of law enforcement who failed to verify with legal counsel whether the court order being provided was valid and lawful.

45. Defendant(s), acting under color of state law, in a quasi-public private authority violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

46. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT II**

**VIOLATION OF CIVIL RIGHTS RIGHT TO PRIVACY**

47. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

48. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth

Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

49. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT III**

**VIOLATION OF CIVIL RIGHTS FREEDOM OF SPEECH AND ASSOCIATION**

50. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

51. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

52. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT IV**

**LIBEL**

53. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

54. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

55. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

56. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT V**

**SLANDER**

57. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

58. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

59. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

60. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, costs of the action and attorney's fees.

**COUNT VI**

**HARASSMENT AND CONTINUING HARASSMENT**

61. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

62. Defendants intentionally engaged in a course of conduct directed at Plaintiff that serves no legitimate purpose and was intended to alarm, intimidate, threaten, and financially injure him.

63. Such conduct includes publishing private personal information, repeatedly contacting Plaintiff's financial institutions, and making false accusations to third parties.

64. Defendants knew their conduct would cause emotional distress and financial harm.

65. The conduct is ongoing and constitutes continuing harassment.

66. As a direct and proximate result of Defendant(s)'s continuing harassment, and statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT VII**

**TORTIOUS INTERFERENCE WITH BUSINESS AND FINANCIAL RELATIONSHIPS**

67. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

68. Plaintiff maintained valid relationships with banks, lenders, and financial institutions.

69. Defendants knew of these relationships.

70. Defendants intentionally and unjustifiably interfered by making false accusations and communications to those institutions.

71. Such interference caused account closures, freezes, and credit termination.

72. Defendants acted maliciously and without privilege.

73. Plaintiff suffered financial damages and credit harm.

74. Plaintiff demands all damages allowed by law, including punitive damages.

75. As a direct and proximate result of Defendant(s)'s tortious interference with business and financial relationships, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT VIII**

**CONTINUING LIBEL AND SLANDER (DEFAMATION PER SE)**

76. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

77. Defendants published and republished written and spoken false statements accusing Plaintiff of criminal and fraudulent conduct.

78. These statements were false and made with actual malice or reckless disregard for the truth.

79. The statements constitute defamation per se.

80. Defendants continue to disseminate these statements.

81. Plaintiff has suffered reputational and economic harm.

82. As a direct and proximate result of Defendant(s)'s continuing libel and slander to private parties and financial institutions Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT IX**

**42 U.S.C. § 1983 – VIOLATION OF FOURTH AMENDMENT**

**UNLAWFUL SEARCH AND SEIZURE (UNDER COLOR OF STATE LAW)**

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

84. At all relevant times, Defendants acted jointly and in concert with local deputies and law enforcement personnel and therefore acted under color of state law.

85. Defendants participated in, directed, assisted, or conspired in the warrantless entry, search, and seizure of Plaintiff's residence and personal effects.

86. The entry and search occurred without probable cause, without consent, and without a valid warrant or valid judicial process.

87. Such conduct violated Plaintiff's rights secured by the Fourth Amendment to the United States Constitution.

88. As a direct and proximate result of Defendant(s)'s continuing harassment, and statements in violation of the Fourth Amendment to the U.S. Constitution, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

## COUNT X
## 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION
## (FREE SPEECH AND RIGHT TO PETITION)

89. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

90. Plaintiff engaged in constitutionally protected activity including filing lawsuits and petitioning the courts for redress.

91. Defendants retaliated by harassment, intimidation, defamation, publication of private information, and interference with Plaintiff's banking and business relationships.

92. Such retaliation was intended to punish and chill Plaintiff's exercise of First Amendment rights.

93. Defendants' conduct would deter a person of ordinary firmness from exercising those rights.

94. Defendants' actions violated Plaintiff's rights under the First Amendment.

95. As a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT XI**

**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS**

96. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein

97. Plaintiff possessed protected property interests in his bank accounts, credit relationships, and financial access.

98. Defendants intentionally caused financial institutions to freeze, close, or terminate those accounts.

99. These deprivations occurred without notice or due process of law.

100. Such actions violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

101. Plaintiff suffered economic and reputational harm as a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT XII**

**42 U.S.C. § 1985 – CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

102. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein

103. Defendants knowingly agreed and conspired among themselves and with others to deprive Plaintiff of constitutional rights.

104. Overt acts included unlawful entry, false affidavits, defamatory publications, and interference with financial institutions.

105. The conspiracy resulted in deprivation of Plaintiff's federally protected rights.

106. As a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

## DEMAND FOR JURY TRIAL

107. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory damages in an amount to be determined at trial;

ii. For punitive damages;

iii. For an award of costs, including reasonable attorney fees;

iv. Injunctive relief prohibiting Defendants from further harassment, defamatory publications, and interference with Plaintiff's financial or business relationships;

v. Damages for harassment and tortious interference;

vi. Plaintiff requests attorney's fees and costs pursuant to 42 U.S.C. § 1988;

vii. Plaintiff requests injunctive relief prohibiting further constitutional violations;

viii. Plaintiff requests such further relief as the Court deems just and proper.

Respectfully submitted,

February 13, 2026

/s/ ______________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Second Amended Complaint and that the facts stated in it are true and correct to the best of my knowledge and recollection.

Executed this 13th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Florida e-filing portal on this 13th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

### G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal

NEWS

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says



**Jim Little**
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

---

Case No. 21-cv-4106 (AMD) (RER)

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)**

**AFFIRMATION OF SERVICE**

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

Ryan Robinson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILEAD SCIENCES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAFE CHAIN SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 21-cv-4106 (AMD) (RER)<br><br>**AFFIRMATION OF SERVICE UPON JOHN LEVITAN** |

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

Filing # 241679087 E-Filed 02/13/2026 02:35:27 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024-CA-001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTIVE RELIEF**

**NOW COMES** John D. Levitan, Sr. *pro se* Plaintiff, proceeding pro se and pursuant to Rule 1.610, Florida Rules of Civil Procedure, and this Court's inherent equitable authority, respectfully moves for entry of a Preliminary Injunction and states:

**I. INTRODUCTION**

1. This motion seeks immediate injunctive relief to stop Defendants' ongoing harassment, retaliation, defamation, and intentional interference with Plaintiff's financial and personal affairs following the filing of this lawsuit.

2. Since the initiation of this action, Defendants have engaged in a deliberate campaign to intimidate and financially cripple Plaintiff by publishing private information, contacting financial institutions, and spreading knowingly false and defamatory accusations.

3. Plaintiff's conduct has endangered the Plaintiff's family and child by publishing his personal telephone number and home address in several means that resulted in these being published on the internet.

4. Defendants' conduct has already caused multiple account closures, termination of credit relationships, suspension of benefits, reputational damage, and continuing irreparable harm.

5. Without immediate court intervention, this misconduct will continue.

## II. FACTUAL BACKGROUND

6. Plaintiff filed the underlying civil action against Defendants.

7. The Second Amended Complaint is attached as ***Exhibit A***, and by reference incorporated herein.

8. After becoming aware of this lawsuit, Defendants began retaliatory conduct designed to harass, intimidate, and financially damage Plaintiff.

9. Defendants intentionally published and/or distributed Plaintiff's private home address, telephone number, and other personal identifying information online and to third parties without authorization.

10. Defendants contacted banks, creditors, lenders, and financial service providers and made false accusations and misleading statements regarding Plaintiff.

11. As a direct result of these communications bank accounts were frozen or closed, credit cards were terminated, financial institutions contacted Plaintiff's creditors, financial services and benefits providers suspended or threatened with termination of benefits.

12. Plaintiff personally communicated with at least three separate officers or representatives of affected financial institutions regarding the sudden closures, freezes, and terminations of Plaintiff's accounts and credit relationships.

13. Each of these representatives independently advised Plaintiff that the adverse actions taken against Plaintiff's accounts were initiated only after the institutions received communications making negative and allegedly fraudulent accusations about Plaintiff.

14. Upon information and belief, those communications originated from or were caused by Defendants or persons acting in concert with Defendants.

15. The representatives expressly informed Plaintiff that, but for those communications, Plaintiff's accounts would not have been restricted, terminated, or suspended.

16. These statements demonstrate that Defendants' conduct directly caused the disruption and termination of Plaintiff's financial relationships.

17. Defendants have further disseminated false statements, gossip, innuendo, and defamatory accusations regarding Plaintiff's character, integrity, and alleged wrongdoing.

18. These statements are knowingly false, malicious, and made with reckless disregard for the truth.

19. Defendants' actions have caused Plaintiff, loss of access to banking services, inability to conduct normal financial transactions, credit damage, reputational injury, emotional distress, continuing economic harm

20. Defendants' conduct is ongoing and likely to continue absent Court intervention.

## III. LEGAL STANDARD

21. A Temporary Restraining Order and Preliminary Injunction are appropriate where the movant demonstrates:

a. A substantial likelihood of success on the merits;

b. Irreparable harm absent relief;

c. No adequate remedy at law; and

d. That the injunction serves the public interest.

See *Rule 1.610, Fla. R. Civ. P.*

## IV. ARGUMENT

### A. Likelihood of Success on the Merits

22. Defendants' conduct constitutes multiple actionable torts, including:

a. Defamation (libel and slander);

b. False light;

c. Tortious interference with business and financial relationships;

d. Invasion of privacy/public disclosure of private facts;

e. Harassment and retaliation;

f. Intentional infliction of emotional distress;

23. Knowingly making false accusations to banks and causing closure of accounts constitutes unlawful interference and is independently actionable.

### B. Irreparable Harm

24. Plaintiff is suffering immediate and continuing irreparable harm, including:

a. inability to maintain banking access

b. destroyed creditworthiness

c. reputational damage

d. financial instability

e. emotional distress

f. ongoing publication of private information

25. Such injuries cannot be fully remedied by monetary damages alone and therefore justify injunctive relief.

**C. No Adequate Remedy at Law**

26. Money damages cannot:

a. reopen closed accounts

b. restore damaged credit or reputation

c. prevent continued harassment

d. stop dissemination of private information

27. Only injunctive relief can prevent further harm.

**D. Public Interest**

28. The public interest favors preventing:

a. harassment

b. retaliation against litigants

c. misuse of private personal information

d. interference with financial institutions

e. defamatory conduct

29. Granting relief protects both Plaintiff and the integrity of the judicial process.

**IV. MEMORANDUM OF LAW IN SUPPORT OF MOTION**

30. The legal standard for a Preliminary Injunction requires: (1) likelihood of success; (2) irreparable harm; (3) no adequate remedy at law; (4) public interest. See Florida Rule 1.610; *Snibbe v. Napoleonic Society of America*, 682 So.2d 568 (Fla. 2d DCA 1996).

31. Defamation using the false statements harming reputation are actionable. See *Jews For Jesus, Inc. v. Rapp,* 997 So.2d 1098 (Fla. 2008).

32. Tortious Interference by the Defendants improper interference with business relationships is unlawful. See *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126 (Fla. 1985). Courts regularly enjoin ongoing harassment and interference to prevent continuing harm.

**V. REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff requests that this Court immediately restrain Defendants from:

a. Publishing or distributing Plaintiff's home address, telephone number, or personal identifying information;

b. Contacting any bank, creditor, lender, or financial institution regarding Plaintiff;

c. Communicating with any financial services or benefits providers regarding Plaintiff;

d. Making or publishing defamatory or false statements about Plaintiff;

e. Interfering with Plaintiff's financial or business relationships;

f. Harassing, threatening, or retaliating against Plaintiff and his family.

**VI. BOND**

32. Plaintiff respectfully requests waiver of bond or imposition of a nominal bond as the requested injunction merely prevents unlawful conduct.

**VIII. CONCLUSION**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

i. Enter an immediate Temporary Restraining Order;

ii. Enter a Preliminary Injunction; and

iii. Grant such other relief as the Court deems just and proper.

Respectfully submitted,
*Originally submitted 2-14-26*
February 19, 2026

/s/ ______________________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**CERTIFICATE OF GOOD FAITH**

I certify that this Motion for Temporary Restraining Order and Preliminary Injunctive Relief is made in good faith and not for purposes of delay.

/s/ ______________________________
John D. Levitan, *pro se*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Florida e-filing portal on this 19th day of February 2026.

/s/ ______________________________
John D. Levitan, *pro se*

# EXHIBIT A

Filing # 241678806 E-Filed 02/13/2026 01:43:16 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. **2024-CA-001164**

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_____________________________________________/

**SECOND AMENDED COMPLAINT**

**COMES NOW**, the Plaintiff, JOHN D. LEVITAN, SR., by and through himself, and files this Complaint against the Defendant(s), GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON, BELKNAPP, WEBB & TYLER, LLP, a New York Limited Liability Partnership, GEOFFREY POTTER, an Individual, TIMOTHY ALAN WATERS, an Individual, ARON FISCHER, an Individual, JOSHUA STEIN, an Individual, and alleges as follows:

**PARTIES**

1. Plaintiff JOHN LEVITAN, SR. is an individual residing at 511 Windrose Circle, Pensacola, FL. 32507 in Escambia County, Florida.

2. Defendant(s) GILEAD SCIENCES, INC. is a public corporation organized under the

laws of the State of Delaware with its' principal place of business at 333 Lakeside Drive, Foster City, California 94404.

3. Defendant(s) GILEAD SCIENCES IRELAND UC ("Gilead Ireland") is a private unlimited company organized under the laws of Ireland, with its principal place of business at IDA Business & Technology Park, Carrigtohill, Co. Cork, Ireland. Gilead Sciences, Inc. is the ultimate parent of Gilead Ireland.

4. Defendant(s) PATTERSON, BELKNAPP, WEBB & TYLER, LLP, is a New York Limited Liability Partnership, with its principal office located at 1133 Avenue of the Americas, New York, NY 10036-6710.

5. Defendant(s) GEOFFREY POTTER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

6. Defendant(s) TIMOTHY ALAN WATERS is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

7. Defendant(s) ARON FISCHER is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

8. Defendant(s) JOSHUA STEIN is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

9. Defendant(s) THOMAS P. KURLAND is an individual and can be located at 1133 Avenue of the Americas, New York, NY 10036-6710.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the subject matter of this action pursuant to Article V, Section 5 of the Florida Constitution and Chapter 26 of the Florida Statutes.

11. Venue is proper in Escambia County, Florida, pursuant to Florida Statutes § 47.011, as the causes of action arose in Escambia County, Florida.

12. The damages subject of this action exceeds $50,000.00.

**STATEMENT OF FACTS**

13. Defendant(s) have defamed and damaged the Plaintiff by making false statements known to be untrue and released or otherwise published that information to the media to defame and destroy the Plaintiff's good standing in the community, harm his business affairs, and to do him harm with false pretenses of assisting "Big Pharma" and trampling the Florida Constitutional and US Constitutional rights of the Plaintiff.

14. Defendant(s) and Thomas Kurland surreptitiously stole data, property from the Plaintiff so that they could gain access onto Plaintiff's private property by using stolen gate codes to enter clearly marked private property for the purpose of harming Plaintiff.

15. At all relevant times hereto, the Defendant(s) were private individuals having no governmental authority to intrude on the Plaintiffs right of privacy, right to free speech and association, right to protections against unlawful search and seizure, and trespassed on Plaintiff's private property clearly marked as no trespassing residents and guests only.

16. Defendant(s) have defamed Plaintiff, have violated clear and established principles of US and Florida Constitutional protections, committed libel and slander by making the following false, accusatory and defamatory statements, publishing them to the public, that were subsequently and purposely spread and made available to the news media to wit:

> a. Defendant(s) John Levitan is an individual residing in Pensacola, Florida. John Levitan managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medications. As alleged herein, John Levitan managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation.

b. Leader Defendant(s) John Levitan like his co-Leader Defendant(s), John Levitan managed the relationship between Supplier Defendant(s) and Distributor Defendant(s), and is responsible for tens of thousands of bottles of counterfeit Gilead-branded *HN* medication being sold into the U.S. distribution stream.

c. But unlike the other Leader Defendant(s), Levitan is also directly connected to the Kingpin Defendant(s), and knew them beyond their pseudonyms. Levitan and Kingpin Defendant(s) Hernandez know each other well, and both serve or served as executives of the same Florida- based boat company. In fact, Levitan is responsible for introducing Hernandez - known only as "Rob" to everyone else - to Distributor Defendant(s) Safe Chain and Worldwide Pharma.

d. Levitan is also a money-laundering expert and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in 2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

e. Levitan also performed duties for the conspiracy similar to his co-Leader Defendant(s). For example, Levitan was the primary contact for Supplier Defendant(s) Synergy Group Wholesaler LLC and its principal, Defendant(s) Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition Feel free to discuss things with him. Nothing else will change on
the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant(s) Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."\

f. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

g. Levitan was also involved in managing Supplier Defendant(s) Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant(s) Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [i.e., the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

h. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

*See Exhibit A Applicable Pages of Documents, Exhibit B News Media Accounts.*

17. On August 17, 2022, Defendant(s) and Thomas Kurland unlawfully gained entry and entered the Plaintiffs private home and personal residence which were accessed by his co-conspirators through an unlocked back door of the house without a warrant and began rummaging through the Plaintiff's house to seek and surreptitiously search throughout the Plaintiff's house material to be used in the civil litigation which Defendant(s) had travelled to for the purpose of acting like a governmental authority to break in to the Plaintiff's house.

18. On August 17, 2022 Defendant(s) alleged they had a Summons addressed to the Plaintiff but in actuality had another Summons addressed to another person unknown to the Plaintiff.

19. Defendant(s) elicited the assistance of local deputies to say they had a Summons for the Plaintiff that was not even addressed to him when they clearly did not have a Summons addressed to the Plaintiff to gain unlawful entry.

20. The Summons that Defendant(s) had was not addressed to him but was to be served on another individual named in the Summons that was delivered to 511 Windrose Circle, Pensacola, Florida.

21. Defendant(s) trespassed on Plaintiff's personal property and entered his house without his consent, without probable cause, without any government agency having requested a warrant and no Court permitting them to enter his house based on an application for a warrant.

22. To continue to cover up and perpetuate their lies, and the broad conspiracy being perpetrated by the Defendant(s), that brought them to Pensacola, Defendant(s) on September 2, 2022, filed a false Affirmation of Service (ECF No. 687) in the United States District Court for the

Eastern District of New York (the "First Affidavit") whereby Ryan Robinson ("Robinson") an Escambia County Deputy declared under penalty of perjury that the Defendant(s) was served by leaving a copy of the Pleadings with someone of suitable age and discretion who resides there.

23. A video was later obtained by the Plaintiff that clearly showed that where Robinson had stated under penalties of perjury that the Plaintiff had identified himself, when in fact the video shows and sounds clearly that at no time did the Plaintiff identify himself, and at the time the Plaintiff was in Dubai, UAE on business.

24. After the fake Affirmation of Service was discovered by Plaintiff, Defendant(s) inexplicably on October 21, 2022, filed another fake Affirmation of Service (ECF No. 823) (the "Second Affidavit") completely changing how service of process was effectuated upon the Plaintiff. These actions were meant to cover-up their perjured testimony and filings in records, documents, and their statements made against the Plaintiff. As stated in the Second Affidavit, service was effectuated by placing a copy of the Pleadings on his doorstep and providing copies to a paralegal, Sonya Dobbs ("Dobbs"), from the law firm of Beggs & Lane, RLLP. The search of Plaintiff's home was conducted without a warrant, consent, or exigent circumstances justifying a warrantless search.

25. Defendant(s)'s actions have violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution that guards against unlawful searches and seizures providing: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

26. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to privacy as provided by Article I, Section 23 that guards against invasion of the right to privacy providing:: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

27. Defendant(s)'s actions have violated Plaintiff's rights under the First Amendment to the United States Constitution and under the Florida Constitution, of the right to freedom of association and the right to freedom of speech as provided by Right to Assemble, and Protection of Speech Article I, Section 4 and 5 protects the right to gather peacefully encompassing the broader concept of freedom of association that guards against unwarranted invasion of Plaintiff's right to talk and meet with people.

28. These false statements made by Defendant(s) were made to third parties, were published, and have caused harm to Plaintiff's reputation.

29. Defendant(s) knew or should have known that these statements were false or acted with reckless disregard for the truth.

**ADDITIONAL FACTS – HARASSMENT, RETALIATION, AND CONTINUING DEFAMATION DURING PENDENCY OF LITIGATION**

30. After Plaintiff initiated this action, Defendants began and continue to engage in a deliberate campaign of harassment, intimidation, retaliation, and reputational harm designed to financially cripple and coerce Plaintiff.

31. Defendants intentionally published and/or distributed Plaintiff's private personal information, including his home address, telephone number, and identifying information, to third parties and online without authorization.

32. Defendants contacted banks, creditors, lenders, and financial institutions and communicated false, misleading, and defamatory accusations regarding Plaintiff, including

allegations of fraud, criminal conduct, and unlawful activity.

33. These communications were made maliciously and without privilege for the purpose of damaging Plaintiff's reputation and financial standing.

34. As a direct and proximate result, multiple financial institutions froze, restricted, or terminated Plaintiff's bank accounts, credit cards, and financial relationships.

35. Plaintiff personally communicated with representatives of multiple financial institutions who advised that the adverse actions were taken only after receiving negative and allegedly fraudulent accusations concerning Plaintiff.

36. Upon information and belief, those communications originated from or were caused by Defendants or persons acting in concert with Defendants.

37. But for Defendants' communications, Plaintiff's accounts and credit relationships would not have been restricted or terminated.

38. Defendants have further spread false statements, gossip, innuendo, and defamatory accusations to third parties concerning Plaintiff's character and integrity.

39. These statements are knowingly false and constitute defamation per se because they accuse Plaintiff of criminal and fraudulent conduct.

40. Defendants' actions constitute an ongoing course of harassment and retaliation intended to intimidate Plaintiff and interfere with his pursuit of legal remedies.

41. Plaintiff has suffered loss of banking access, damage to creditworthiness, reputational harm, emotional distress, and continuing economic loss.

42. Defendants' misconduct is continuing and will persist absent Court intervention.

**COUNT I**

**VIOLATION OF CIVIL RIGHTS WARRANTLESS SEARCH BY PRIVATE PERSONS**

43. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

44. Defendants conducted the search and search of financial records without a valid Court Order and without a valid warrant or right to break into the Plaintiff's house with the assistance of law enforcement who failed to verify with legal counsel whether the court order being provided was valid and lawful.

45. Defendant(s), acting under color of state law, in a quasi-public private authority violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution which provides for the right to be protected by unlawful search and seizure by providing "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

46. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT II**

**VIOLATION OF CIVIL RIGHTS RIGHT TO PRIVACY**

47. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

48. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by conducting an unlawful search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth

Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

49. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT III**

**VIOLATION OF CIVIL RIGHTS FREEDOM OF SPEECH AND ASSOCIATION**

50. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

51. Defendant(s), acting under color of state law, violated Plaintiff's civil rights by making false and fraudulent statements in order to prevent the Plaintiff from speaking with other individuals and to curtail his right to speech search of Plaintiff's home and negating the Plaintiff's Right to Privacy in violation of the Fourth Amendment to the United States Constitution and Article I, Section 23 of the Florida Constitution which provides for the right to privacy by providing "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

52. As a direct and proximate result of Defendant(s)'s unlawful search, Plaintiff has suffered damages, including emotional distress, invasion of privacy, and other harm Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT IV**

**LIBEL**

53. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

54. Defendant(s) made false and defamatory statements about Plaintiff, which were published to third parties.

55. The statements were untrue, harmful to Plaintiff's reputation, and made with actual malice or with reckless disregard for their truth or falsity.

56. As a direct and proximate result of Defendant(s)'s defamatory statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT V**

**SLANDER**

57. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

58. Defendant(s) made spoken false and defamatory statements about Plaintiff to third parties.

59. These statements were made with the intent to harm Plaintiff's reputation or with reckless disregard for the truth.

60. As a direct and proximate result of Defendant(s)'s slanderous statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, costs of the action and attorney's fees.

**COUNT VI**

**HARASSMENT AND CONTINUING HARASSMENT**

61. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

62. Defendants intentionally engaged in a course of conduct directed at Plaintiff that serves no legitimate purpose and was intended to alarm, intimidate, threaten, and financially injure him.

63. Such conduct includes publishing private personal information, repeatedly contacting Plaintiff's financial institutions, and making false accusations to third parties.

64. Defendants knew their conduct would cause emotional distress and financial harm.

65. The conduct is ongoing and constitutes continuing harassment.

66. As a direct and proximate result of Defendant(s)'s continuing harassment, and statements, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT VII**

**TORTIOUS INTERFERENCE WITH BUSINESS AND FINANCIAL RELATIONSHIPS**

67. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

68. Plaintiff maintained valid relationships with banks, lenders, and financial institutions.

69. Defendants knew of these relationships.

70. Defendants intentionally and unjustifiably interfered by making false accusations and communications to those institutions.

71. Such interference caused account closures, freezes, and credit termination.

72. Defendants acted maliciously and without privilege.

73. Plaintiff suffered financial damages and credit harm.

74. Plaintiff demands all damages allowed by law, including punitive damages.

75. As a direct and proximate result of Defendant(s)'s tortious interference with business and financial relationships, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT VIII**

**CONTINUING LIBEL AND SLANDER (DEFAMATION PER SE)**

76. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

77. Defendants published and republished written and spoken false statements accusing Plaintiff of criminal and fraudulent conduct.

78. These statements were false and made with actual malice or reckless disregard for the truth.

79. The statements constitute defamation per se.

80. Defendants continue to disseminate these statements.

81. Plaintiff has suffered reputational and economic harm.

82. As a direct and proximate result of Defendant(s)'s continuing libel and slander to private parties and financial institutions Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT IX**
**42 U.S.C. § 1983 – VIOLATION OF FOURTH AMENDMENT**
**UNLAWFUL SEARCH AND SEIZURE (UNDER COLOR OF STATE LAW)**

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

84. At all relevant times, Defendants acted jointly and in concert with local deputies and law enforcement personnel and therefore acted under color of state law.

85. Defendants participated in, directed, assisted, or conspired in the warrantless entry, search, and seizure of Plaintiff's residence and personal effects.

86. The entry and search occurred without probable cause, without consent, and without a valid warrant or valid judicial process.

87. Such conduct violated Plaintiff's rights secured by the Fourth Amendment to the United States Constitution.

88. As a direct and proximate result of Defendant(s)'s continuing harassment, and statements in violation of the Fourth Amendment to the U.S. Constitution, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT X**

**42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION**

**(FREE SPEECH AND RIGHT TO PETITION)**

89. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein.

90. Plaintiff engaged in constitutionally protected activity including filing lawsuits and petitioning the courts for redress.

91. Defendants retaliated by harassment, intimidation, defamation, publication of private information, and interference with Plaintiff's banking and business relationships.

92. Such retaliation was intended to punish and chill Plaintiff's exercise of First Amendment rights.

93. Defendants' conduct would deter a person of ordinary firmness from exercising those rights.

94. Defendants' actions violated Plaintiff's rights under the First Amendment.

95. As a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT XI**

**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS**

96. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein

97. Plaintiff possessed protected property interests in his bank accounts, credit relationships, and financial access.

98. Defendants intentionally caused financial institutions to freeze, close, or terminate those accounts.

99. These deprivations occurred without notice or due process of law.

100. Such actions violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

101. Plaintiff suffered economic and reputational harm as a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

**COUNT XII**

**42 U.S.C. § 1985 – CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

102. Plaintiff re-alleges and incorporates by reference paragraphs the preceding paragraphs as if fully set forth herein

103. Defendants knowingly agreed and conspired among themselves and with others to deprive Plaintiff of constitutional rights.

104. Overt acts included unlawful entry, false affidavits, defamatory publications, and interference with financial institutions.

105. The conspiracy resulted in deprivation of Plaintiff's federally protected rights.

106. As a direct and proximate result of Defendant(s)'s continuing harassment, and false statements and retaliation, in violation of the First Amendment to the U.S. Constitution by the retaliatory measures committed by Defendants and their agents, Plaintiff has suffered damages, including damage to reputation, emotional distress, and other harm and Plaintiff demands Judgment for damages, punitive damages, costs of the action and attorney's fees.

## DEMAND FOR JURY TRIAL

107. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. For compensatory damages in an amount to be determined at trial;

ii. For punitive damages;

iii. For an award of costs, including reasonable attorney fees;

iv. Injunctive relief prohibiting Defendants from further harassment, defamatory publications, and interference with Plaintiff's financial or business relationships;

v. Damages for harassment and tortious interference;

vi. Plaintiff requests attorney's fees and costs pursuant to 42 U.S.C. § 1988;

vii. Plaintiff requests injunctive relief prohibiting further constitutional violations;

viii. Plaintiff requests such further relief as the Court deems just and proper.

Respectfully submitted,

February 13, 2026

/s/ ______________________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Second Amended Complaint and that the facts stated in it are true and correct to the best of my knowledge and recollection.

Executed this 13th day of February 2026.

/s/ ______________________________
John D. Levitan, *pro se*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Florida e-filing portal on this 13th day of February 2026.

/s/ ______________________________
John D. Levitan, *pro se*

268. As with the other Leader Defendants, Dunn also helped recruit pharmacies to purchase the counterfeit HIV medication he was supplying to Scripts, and was paid an additional cut of the counterfeiting proceeds based on those sales to pharmacies.

269. Dunn operated in part through two companies he wholly owned: newly named Defendants Pharmacy Consulting Services Inc. and PCSIONE LLC. Mr. Dunn received his cut of the counterfeiting proceeds through PCSIONE LLC. And Dunn conducted business with Scripts under the name of, and using the email signature for his other company, Pharmacy Consulting Services, Inc.

**5. Leader Defendant John Levitan**

270. Like his co-Leader Defendants, John Levitan managed the relationship between Supplier Defendants and Distributor Defendants, and is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream.

271. But unlike the other Leader Defendants, Levitan is also directly connected to the Kingpin Defendants, and knew them beyond their pseudonyms. Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company. In fact, Levitan is responsible for introducing Hernandez – known only as "Rob" to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma.

272. Levitan is also a money-laundering expert, and has a central role in the counterfeiting conspiracy's complex money-laundering apparatus. Levitan is a convicted felon who spent 14 years in prison on money laundering charges. Among the evidence introduced against Levitan was the fact that he offered a detailed plan to an undercover IRS agent to launder what Levitan thought was $1 million in illegal narcotics profits. Since his release from prison in

2007, Levitan has formed or been named the principal of over 40 different Florida corporate entities, almost of all them registered to the same address in Pensacola, Florida, and approximately a dozen of which purport to be in the medical field.

273. Levitan also performed duties for the conspiracy similar to his co-Leader Defendants. For example, Levitan was the primary contact for Supplier Defendant Synergy Group Wholesaler LLC and its principal, Defendant Carlos Vega. For example, a May 2021 email concerning Synergy states: "I believe you know John [Levitan]. . . . John is going to be involved with inventory and acquisition . . . . Feel free to discuss things with him. Nothing else will change on the Po's [sic] and payments and such." And the following month, Levitan followed up with Defendant Vega, the principal of Synergy, in writing: "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders."

274. Under Levitan's direction, Synergy supplied a large volume of counterfeits to Safe Chain, selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees.

275. Levitan was also involved in managing Supplier Defendant Invicta's relationship with Safe Chain. On May 21, 2021, Invicta's owner on paper, Defendant Jorge Caba, emailed Levitan and Brosius, writing, "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address it not on the paper because I dont have it, but it will be there. Thank you for the opportunity." A few days later, on May 25, 2021, Caba sent a copy of Invicta's state distribution license directly to Levitan.

276. Levitan also introduced at least one other intended supplier of counterfeits to Safe Chain, but this Court enjoined Safe Chain's purchase and sale of Gilead products before that new supplier made a sale.

## G. THE MARKETER DEFENDANTS: DEFENDANTS ZANGARI, MASSANA, PANAGIOTOPOULOS, AND STREAMLINERX SELL THE COUNTERFEITS ON BEHALF OF THE DISTRIBUTOR DEFENDANTS

277. The Leader Defendants not only provided the Distributor Defendants access to a stable of counterfeit suppliers, but they also provided the sales force to sell those counterfeits to pharmacies. The heads of the sales force were referred to as "the Canadian Boys": Defendants Mike Zangari, Riccardo Massana, and John Panagiotopoulos, all of whom live in Canada (together, the "Marketer Defendants"). The Marketer Defendants were responsible for managing the sales force that advertised and sold counterfeits to pharmacies on behalf of, at minimum, Distributor Defendants Safe Chain, ProPharma, and Scripts. The Marketer Defendants were organized and operated under the direction of the Leader Defendants.

278. In February 2021, when ProPharma first joined the counterfeiting scheme, all three of the Marketer Defendants were on an initial kick-off call with Leader Defendants Ralhan and Rosell, as well as a follow-up email chain with the subject line "ProPharma – HIV introduction." All three of the Marketer Defendants managed ProPharma's sales of the counterfeits by receiving emails through the distribution group RXorders@propharmausa.com. Each of the Marketer Defendants sold purported Gilead products to pharmacies on ProPharma's behalf. These medications were counterfeits, bearing falsified pedigrees, falsified instructions for use, and in some cases, containing fake pills.

279. Defendants Zangari and Panagiotopoulos were also responsible for selling counterfeits on behalf of Safe Chain. Along with Leader Defendant Ralhan, Zangari and Panagiotopoulos shared an email address, brands@pharmasales.com, through which they submitted pharmacy orders to Safe Chain. Zangari, Panagiotopoulos, and Ralhan split the kickback for Safe Chain's sales of counterfeits among the three of them.

pensacola news journal

NEWS

# Pensacola businessman alleged to be 'leader' in HIV drug counterfeit ring, lawsuit says



**Jim Little**
Pensacola News Journal

Published 9:32 a.m. CT Oct. 18, 2022 | **Updated 11:31 a.m. CT Oct. 18, 2022**

A Pensacola businessman was named as a defendant in a sprawling lawsuit seeking to halt an alleged expansive criminal HIV drug counterfeiting network.

Last month, Gilead Sciences named John Levitan, along with more than 50 other defendants, in a lawsuit that alleges Levitan was a "leader" in a network that sold more than $230 million in counterfeit HIV drugs.

Levitan is a partner in Streamline Boats of Northwest Florida, which holds a lease with the Port of Pensacola to rehabilitate two port warehouses and set up a boat manufacturing company at the port.

**Behind the company:** Who is Streamline Boats of Northwest Florida? Here's what we know

**Lawsuit over control of SPG:** With $53 million Triumph grant on table, will Streamline hold up its end of the bargain?

The lawsuit was filed in July, but many of the defendants remained anonymous until Sept. 28, when an amended complaint was unsealed in the U.S. District Court of Eastern New York.

In August, the federal court in New York froze the assets of many of the defendants in the lawsuit, including Levitan.

## What the Gilead Sciences lawsuit claims happened

Gilead manufactures several HIV drugs that treat or prevent the spread of the deadly virus.

The company alleges in its lawsuit that the counterfeit network was set up to illegally buy Gilead-manufactured drugs off the street, taking advantage of low-income and homeless people. The drugs were then repackaged and, in some cases, relabeled and sold to pharmaceutical suppliers through "fly-by-night" shell companies across the country.

The suit alleges that bottles of the powerful antipsychotic drug Seroquel were sold in bottles labeled as anti-HIV drugs.

**Facing eviction:** Streamline Boats facing eviction in Hialeah. Pensacola factory in doubt after owner change

The complex scheme involved forging documents, known as pedigrees, that federal law requires to go along with drugs to prove the legal chain of custody back to the manufacturer, according to the lawsuit.

In at least one case, federal prosecutors said during a court hearing in July in an ongoing prosecution of one of the "kingpins" in the conspiracy, that a woman took what she believed was an HIV drug but turned out to be Seroquel and had difficulty walking and nearly lost consciousness, according to court documents.

## Connections to Streamline Boats and South Palafox Group

Gilead identified two "kingpin" defendants it said were at the top of the conspiracy, Lazaro Hernandez and Armando Herrera, both Florida residents.

Hernandez was a former corporate officer of Streamline Performance Boats and a business partner with Levitan.

Levitan partnered with Hernandez and others to form Streamline Boats of Northwest Florida, a sister company of the Miami-based Streamline, and is the company that holds the lease at the Port of Pensacola.

Levitan was also a principal in the South Palafox Group, a local investment firm that was in control of the infamous Rolling Hills landfill in Wedgewood.

Questions over the ownership of Streamline arose earlier this year when its Miami landlord moved to foreclose on the Hialeah factory, and the company's two founders were removed from corporate filings with the state of Florida.

Hernandez had been delisted as a corporate officer in public filings with the company a year earlier, and in the same 2021 filing, Levitan was added as an executive vice president at the Hialeah company.

In July, Hernandez was arrested and charged with conspiracy, wire fraud and money laundering by federal law enforcement in connection to the HIV drug counterfeiting scheme.

While Hernandez is the only individual charged in connection with the counterfeiting scheme so far, much of the court document in the case remains under seal.

It appears that his case will head to a trial after the holidays.

Hernandez is also facing another federal indictment in a similar but separate drug counterfeiting scheme in South Florida with 14 other people who federal prosecutors say ran from 2013 to 2019. Eight people, in that case, have pleaded guilty.

## Lawsuit alleges Levitan was involved in managing supply of counterfeit drugs

Gilead's lawsuit labeled Levitan as one of two "leader" defendants who managed the flow of counterfeit drugs between suppliers and distributors involved in the conspiracy, and Levitan was the only one of the dozens of defendants who knew the true identity of Hernandez.

"Levitan and Kingpin Defendant Hernandez know each other well, and both serve or served as executives of the same Florida-based boat company," the lawsuit said. "In fact, Levitan is responsible for introducing Hernandez – known only as 'Rob' to everyone else – to Distributor Defendants Safe Chain and Worldwide Pharma."

Levitan was not immediately available for comment Monday.

The complaint points out that Levitan has already been convicted of money laundering once in the 1990s when an undercover Internal Revenue Service agent busted Levitan in a scheme to launder $1 million in illegal narcotics profits.

The complaint notes that since his release from prison in 2007, Levitan has been listed as a corporate officer in more than 40 different Florida corporations.

The complaint alleges that Levitan was directly involved in managing the supply of the counterfeit drugs and quotes from emails where Levitan asked for more "inventory." In another email, another defendant sent Levitan a draft of a forged pedigree that would be used to sell the drugs, noting the correct addresses would be added later.

## What has happened since lawsuit was filed

A seizure order for all material related to Gilead from the defendants' homes was issued on Aug. 11. The court authorized federal law enforcement to execute the seizure order. Levitan's Pensacola home was included on the list.

On Aug. 19, Levitan was removed as a corporate officer in filings with the state of Florida on at least two companies he was an officer in, Streamline Boats of Northwest Florida and Invictus Holdings.

Levitan has not officially responded to the lawsuit, but court documents show he was served with the lawsuit Aug. 23.

Gilead warned consumers in January of the counterfeit drugs, saying it had discovered more than 85,000 bottles that had forged pedigrees.

The lawsuit lays out an exhaustive investigation into the network. For example, to identify Hernandez, who describes himself as a professional gambler, the company subpoenaed geolocation data of "burner" phones used as part of the conspiracy and cross-referenced that data with subpoenaed flight records of a private jet "high roller" flight offered by a Las Vegas casinos to connect Hernandez to the burner phone.

Gilead appears to be turning over much of its investigation to federal law enforcement officials.

"Gilead will continue to work closely with the U.S. Food and Drug Administration (FDA), pharmacies, and the Department of Justice to remove counterfeit and tampered medication from circulation and to prevent future distribution of counterfeit medications," the company said in a press release in September.

*Jim Little can be reached at jwlittle@pnj.com and 850-208-9827.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILEAD SCIENCES, INC., *et al.*, Plaintiffs, v. SAFE CHAIN SOLUTIONS, LLC, *et al.*, Defendants. | Case No. 21-cv-4106 (AMD) (RER) **FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)** **AFFIRMATION OF SERVICE** |

I, Ryan Robinson, declare under penalty of perjury that, on August 17, 2022, I served a copy of the following documents upon John Levitan by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

In addition to physical copies of the above documents, I also served a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

Dated: Pensacola, Florida
August 23, 2022

Ryan Robinson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

GILEAD SCIENCES, INC., *et al.*,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, *et al.*,

Defendants.

--------------------------------------------------------------- x

Case No. 21-cv-4106 (AMD) (RER)

**AFFIRMATION OF SERVICE UPON JOHN LEVITAN**

I, Ryan Robinson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Sergeant in the Warrants Division of the Escambia County Sheriff's Office in Escambia County, Florida. I am over 18 years of age and am not a party to this action.

2. On August 18, 2022, I provided law enforcement support to the attorneys for Plaintiffs in the above-captioned action during a Court-ordered civil seizure at John Levitan's residence, located at 511 Windrose Circle, Pensacola, Florida 32507.

3. When I, my team of Sherriff's deputies, and Plaintiffs' attorneys first arrived at the seizure location at approximately 8:15 AM, no one was present, though after I rang the doorbell, I was able to communicate with an individual through an intercom who introduced himself as John Levitan. Mr. Levitan told us no one was presently inside the premises, and instructed us to contact his attorneys at the law firm of Beggs & Lane, RLLP.

4. I then observed one of Plaintiffs' attorneys, who was present with me and overheard Mr. Levitan's instructions, promptly place a phone call to Beggs & Lane, RLLP.

5. Immediately thereafter, at approximately 8:20 AM, I effectuated service upon John Levitan pursuant to the Court's Seizure Order (ECF No. 629 at 10) by leaving a copy of

each of the foregoing papers in a conspicuous place at the premises—to wit: upon the doorstep:

- Fourth Amended Complaint (and supporting exhibits)
- Ex Parte Motion for Relief
- Memorandum of Law in Support of Ex Parte Motion (and supporting exhibits)
- Order Granting Leave to File Fourth Amended Complaint (Dkt. No. 626)
- Order Granting Asset Freeze Against Newly Named Defendants (Dkt. No. 627)
- Order Granting Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Dkt. No. 628)
- Order Granting Seizure Order (Dkt. No. 629)
- Summons and Summons Rider, dated August 11, 2022

6. Within approximately 30 minutes, at or about 8:50 AM, a middle-aged woman of slight build and average height with brown hair who identified herself as Sonya Dobbs, a paralegal at the law firm of Beggs & Lane, RLLP, arrived at the seizure location and introduced herself as a representative of Mr. Levitan. I deemed Ms. Dobbs to be "a person of suitable age found at the premises," pursuant to the Court's Seizure Order (ECF No. 629 at 10), and handed her copies of the aforementioned previously-served papers. Ms. Dobbs accepted them.

7. In addition to physical copies of the above documents, I also served by the same means and at the same time a copy of the above documents and the below documents via USB drive and a link to a secure file-sharing website:

- Declaration of Geoffrey Potter (and supporting exhibits)
- Declaration of Susmitha Sunkara (and supporting exhibits)
- Declaration of Hannah Coleman (and supporting exhibits)
- Declaration of Harpreet Dhanota
- Declaration of Patrick McAllister
- Declaration of Dawn Cento
- Declaration of Amanda LaFretta
- Declaration of Gabriel Calderon
- Declaration of Robert Wigley

8. I signed a prior Affirmation of Service in this case on August 23, 2022, which I understand was filed with the Court on September 2, 2022 (ECF No. 687). It has now come to

my attention that in that Affirmation, I erroneously attested that the date of service was August 17, 2022. This was a clerical error. I have reviewed my log book and can confirm with certainty that the correct date of both the seizure and attendant service upon Mr. Levitan—which I initially described in my August 23, 2022 Affirmation and have now elaborated more fully herein—was August 18, 2022.

Dated: Pensacola, Florida
October 21, 2022

SGT. RYAN ROBINSON

Filing # 241679087 E-Filed 02/19/2026 05:23:52 PM

**IN THE DISTRICT COURT OF APPEAL**
**FIRST DISTRICT, STATE OF FLORIDA**

**CASE NO.1D2026-0413**

First DCA Related Case No. 1D2025-3298

Lower Tribunal No. 2024-CA-001164

---

**JOHN D. LEVITAN, SR.,**

Petitioner,

**v.**

**THE HONORABLE JENNIFER J. FRYDRYCHOWICZ,**
**CIRCUIT JUDGE, FIRST JUDICIAL CIRCUIT,**

Respondent.

---

# PETITION FOR WRIT OF PROHIBITION OF ORDER DENYING DISQUALIFICATION OF THE HONORABLE JENNIFER J. FRYDRYCHOWICZ, CIRCUIT JUDGE, FIRST JUDICIAL CIRCUIT

---

**JOHN D. LEVITAN, SR.,** *pro se*
Petitioner
511 Windrose Circle
Pensacola, FL. 32507
Email: jdlsr@gileadfraud.com
Secondary Email: legal@gileadfraud.com

## TABLE OF AUTHORITIES


| | Page |
|---|---|
| Barwick v. State, 660 So.2d 685 (Fla. 1995)………………. | 12 |
| Bundy v. Rudd, 366 So.2d 440 (Fla. 1978)………………. | 4,9,11 |
| English v. McCrary, 348 So.2d 293 (Fla. 1977)…………… | 14 |
| Hayslip v. Douglas, 400 So.2d 553 (Fla. 1st DCA 1981)… | 13 |
| Livingston v. State, 441 So.2d 1083 (Fla. 1983)……………… | 9,12 |
| Mackenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332 (Fla. 1990)……………………………… | 3,9,14 |
| Perez v. State, 816 So.2d 733 (Fla. 1st DCA 2002)………. | 13 |
| State ex rel. Davis v. Parks, 194 So. 613 (Fla. 1939)……… | 12 |
| Sutton v. State, 975 So.2d 1073 (Fla. 2008)………………… | 3,15 |
| Florida Constitution Art. V §4(b)(3)……………………………… | 3 |
| Fla. R. App. P. 9.030(b)(3)…………………………………………… | 3 |
| Fla. R. App. P. 9.100…………………………………………………. | 3 |
| Fla. R. Gen. Prac. & Jud. Admin. 2.330………………………… | 10 |

**NOW COMES** Petitioner JOHN D. LEVITAN, SR., *pro se* pursuant to Article V, §4(b)(3), Florida Constitution, Florida Rules of Appellate Procedure 9.030(b)(3) and 9.100, petitions this Court for a Writ of Prohibition hereby petitions the Court for its' Writ of Prohibition Denying his Motion for Disqualification of Petitioner respectfully petitions this Court for issuance of a Writ of Prohibition disqualifying the Respondent judge and states:

---

## I. JURISDICTION

This Court has original jurisdiction to issue writs of prohibition to prevent a lower tribunal from acting in excess of jurisdiction.

Prohibition is the exclusive and proper remedy to review denial of a legally sufficient motion to disqualify. See *Mackenzie v. Super Kids Bargain Store, Inc.*, 565 So.2d 1332 (Fla. 1990) (Prohibition is the exclusive method to review denial of a motion to disqualify; appearance of bias requires recusal.); see also *Sutton v. State*, 975 So.2d 1073 (Fla. 2008) (Confirms prohibition as proper vehicle to challenge denial of judicial disqualification and protects due

process right to neutral judge.); *Bundy v. Rudd*, 366 So.2d 440 (Fla. 1978) (Trial court must accept all allegations in a disqualification motion as true and may not pass on their truth or credibility.)

The underlying Motion to Disqualify and the Order Denying Notice First DCA Writ of Mandamus the same are attached as *Appendix A*.

---

**II. BACKGROUND**

1. Petitioner believes it is required to add context to this proceeding to outline the procedural history to this protracted litigation relating to the underlying claims.

2. The Defendants moved to stay discovery when the case was removed by them in October 2024 to the United States District Court for the Northern District of Florida. See *Appendix B* USDC-NDFLA Court Docket.

3. During the pending litigation in the removed case to Federal Court the United States Supreme Court issued its' opinion in *Royal Canin U.S.A., Inc., et al. V. Wullschleger et al. 604 U. S. ____ (2025)*, which was directly on point to Petitioner's argument for remand to the Circuit Court.

4. During the removal one of the first motions filed by the Defendant was a Motion to Stay Discovery. The Motion to stay discovery was granted and began a 12-month stay of discovery in Federal Court.

5. The case was then transferred by the USDC-NDFLA (Amidst the Snow Storm of 2025) to the USDC Eastern District of New York See *Appendix C* USDC-EDNY Court Docket, as the Defendants alleged that a suit for libel, slander, violation of Constitutional Rights under the Florida and Federal Constitutions belonged in New York because as that is where the Defendants resided and related litigation was pending that caused the Defendants to damage the Petitioner. Defendants again moved to stay discovery which was granted.

6. Ultimately, the USDC-EDNY agreed with the Petitioner and remanded the case to the Circuit Court, See *Appendix D* Order USDC-EDNY.

7. Once the case was remanded, Defendants moved to stay discovery for the third time and were granted another discovery stay after a 14-month delay in discovery in the Federal and Circuit Court.

8. The Circuit Court had numerous outstanding Petitioner motions including objections to discovery, request for judicial default as the defendants in the underlying case had not filed a responsive pleading as directed by the Federal Court.

9. Because these Plaintiff motions remained pending over several months a Petition for Writ of Mandamus was filed with this Court Case No. 1D2025-3298.

10. Once this Court docketed the case and gave Notice to the Circuit Court all outstanding motions pending filed by the Petitioner/Plaintiff were *en masse* denied without opinion and no hearings.

11. Thereafter Petitioner filed a sworn Verified Motion to Disqualify pursuant to Rule 2.330.

12. The motion alleged specific facts establishing a reasonable, well-founded fear of not receiving a fair and impartial hearing.

13. The motion complied with all procedural and verification requirements.

14. The following aspects of the Motion to Disqualify exhibited a practice and pattern by the Judge of the apparent bias, to wit:

*"This Motion is based solely on specific, objective facts that occurred the day after the First DCA transmitted its' Order changing the case tyle of the case of the Petition for Mandamus demonstrating:*

- a. *unequal treatment of the parties,*
- b. *repeated discovery stays benefiting Defendant of over 14 months, and*
- c. *immediate en masse adverse rulings to the Plaintiff on:*
  - i. *Plaintiff's Motion for Judicial Default for Plaintiff's Failure to File a Responsive Pleading (Filed 11/09/2026)* ***DENIED 1/26/2026.***
  - ii. *Motion For Judicial Default for Failing to Answer as Ordered by the Court (Filed 11/09/2025)* ***DENIED 1/26/2026.***
  - iii. *Plaintiff's Motion to Strike Motion to Dismiss (Filed 11/09/2025)* ***DENIED 1/26/2026***
  - iv. *Motion to Stay Proceedings Pending Appeal (Filed 12/15/2025)* ***DENIED 1/26/2026***
  - v. *Plaintiff's Motion for Judicial Default for Failing to Answer as Ordered by the Court (11/09/2026)* ***DENIED 1/26/2026***

*vi. Defendant's Motion to Stay Discovery (Filed 11/29/2025)* ***DENYING PLAINTIFF'S OBJECTIONS TO STAY 1/26/2026***

Collectively these *en masse* denials the same day as this Court transmitted its Notice of Filing the *Petition for Writ of Mandamus* Case No. 1D2025-3298 with this Court created a well-founded fear that Plaintiff cannot obtain neutral consideration.

15. On February 12, 2026, the circuit court entered an order denying the Motion to Disqualify as "legally insufficient."

See *Order Denying Disqualification- Appendix A.*

16. Respondent continues to exercise jurisdiction over the case.

17. Because denial of disqualification is not reviewable on plenary appeal, prohibition is the only adequate remedy.

---

## III. MEMORANDUM OF LAW AND ARGUMENT

### A. Disqualification Law in Florida Is Strict and Mandatory

Florida courts strictly enforce judicial impartiality.

The right to an unbiased judge is fundamental to due process and the integrity of the judicial system.

When a legally sufficient motion to disqualify is filed:

a. the judge has **no discretion**

b. the judge **must grant the motion immediately**

c. the judge **must take no further action**

See *Livingston v. State*, 441 So.2d 1083 (Fla. 1983) (Disqualification test is whether facts would create in a reasonably prudent person a well-founded fear of not receiving a fair trial.), see also *Mackenzie*, 565 So.2d at 1335.

*Bundy v. Rudd*, 366 So.2d 440 (Fla. 1978):

> "Regardless of whether respondent ruled correctly in denying the motion for disqualification as legally insufficient, our rules clearly provide, and we have repeatedly held, that a judge who is presented with a motion for his disqualification "shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification." Fla.R.Crim.P. 3.230(d); see, e.g., *Dickenson v. Parks*, 104 Fla. 577, 140 So. 459 (1932); *Suarez v. State*, 95 Fla. 42, 115 So. 519 (1928); *Theo. Hirsch Co. v. McDonald Furniture Co.*, 94 Fla. 185, 114 So. 517 (1927). When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has then exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification. Our disqualification rule, which limits the trial judge to a

> bare determination of legal sufficiency, was expressly designed to prevent what occurred in this case the creation of "an intolerable adversary atmosphere" between the trial judge and the litigant. The test is not actual bias, but the *objective appearance of partiality or prejudgment. Id.*

The rule protects public confidence in the judiciary by eliminating both actual bias **and the appearance of bias**.

---

**B. The Trial Court's Role Is Ministerial Only**

Under Rule 2.330:

The trial judge may determine only legal sufficiency — not truth.

The court must:

i. accept all allegations as true
ii. assume their accuracy
iii. refrain from weighing credibility
iv. refrain from refuting facts

See *Bundy v. Rudd*, 366 So.2d 440, 442 (Fla. 1978) (Trial court must accept all allegations in a disqualification motion as true and may not pass on their truth or credibility.)

A judge exceeds authority by:

v. disputing facts

vi. drawing competing inferences

vii. characterizing the allegations as insufficient when they establish reasonable fear

Here, Petitioner's sworn allegations had to be accepted as true. Once accepted, the legal standard was met.

Thus, denial constituted reversible legal error.

---

**C. The Standard Is "Reasonable Fear," Not Actual Bias**

The controlling test is objective that would a reasonably prudent person fear they could not receive a fair trial.

Not:

i. whether the judge believes she is impartial

ii. whether bias is proven

iii. whether the allegations are ultimately correct

See *Livingston*, 441 So.2d at 1086, see also *Mackenzie*, 565 So.2d at 1335, *Barwick v. State*, 660 So.2d 685 (Fla. 1995). Even the **appearance** of partiality mandates recusal. See *State ex rel. Davis v. Parks*, 141 Fla. 516 (1939)

Petitioner's verified facts establish precisely such reasonable fear.

Therefore disqualification was legally required.

---

**D. First District Precedent Requires Issuance of Prohibition**

The First DCA consistently grants prohibition when:

i. the trial court misapplies Rule 2.330
ii. the court fails to accept allegations as true
iii. a reasonable fear is shown

See *Perez v. State*, 816 So.2d 733 (Fla. 1st DCA 2002); see also *Hayslip v. Douglas*, 400 So.2d 553 (Fla. 1st DCA 1981)

Both cases emphasize that disqualification rules must be applied liberally in favor of removal to protect litigants' confidence.

This case fits squarely within those holdings. (Emphasis Supplied)

---

**E. Denial Creates Jurisdictional Defect and Structural Error**

Once a legally sufficient motion is filed the judge is divested of authority, and any further action becomes unauthorized. See *English v. McCrary*, 348 So.2d 293 (Fla. 1977)

This is not harmless error — it is structural. Continuing proceedings undermines fairness, wastes judicial resources, risks voidable orders, necessitates reversal later

Prohibition exists specifically to prevent such jurisdictional overreach.

---

**F. Prohibition Is the Only Adequate Remedy**

No adequate remedy exists through appeal because the orders entered by a disqualified judge are voidable, harm cannot be undone later, judicial neutrality must be preserved immediately

Thus, prohibition is necessary and appropriate. See *Mackenzie*, 565 So.2d at 1335 (Fla. 1990) (Prohibition is the exclusive method to review denial of a motion to disqualify;

appearance of bias requires recusal.)see also *Sutton*, 975 So.2d 1073 (Fla. 2008)(Confirms prohibition as proper vehicle to challenge denial of judicial disqualification and protects due process right to neutral judge.)

---

## IV. RELIEF REQUESTED

Petitioner respectfully requests:

a. Issuance of a Writ of Prohibition;

b. Immediate disqualification of Respondent;

c. Prohibition of further action in the case;

d. Reassignment to a different judge;

e. Such further relief as is just and equitable.

Respectfully submitted,

February 13, 2026

/s/________________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Email: jdlsr@gileadfraud.com
Secondary: legal@gileadfraud.com

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Petition for Writ of Prohibition and that the facts stated in it are true and correct to the best of my knowledge and recollection.

Executed this 13th day of February 2026.

/s/______________________________
John D. Levitan, *pro se*

**APPENDIX A**

Case Docket Circuit Court
Notice of Case Filing 1st DCA 1D2025-3298
Verified Motion to Disqualify Judge Order
Denying Disqualification

Summary | History | Payment Plans | Charges | Citations | Bonds

## SUMMARY

| | | |
|---|---|---|
| **Judge:** [ N-CIVIL ] FRYDRYCHOWICZ, JENNIFER J | **Court Type:** CIRCUIT CIVIL | **Case Type:** OTHER CIRCUIT CIVIL POST 2010 |
| **Case Number:** 2024 CA 001164 | **Uniform Case Number:** 172024CA001164XXXAXA | **Status:** CLOSED |
| **Clerk File Date:** 9/2/2024 | **Status Date:** 2/12/2026 | **Waive Speedy Trial:** |
| **Total Fees Due:** 0.00 | **Booking Number:** | **Agency:** |
| **Agency Report Number:** | **Custody Location:** | **Case Status:** |

## PARTIES

| TYPE | PARTY NAME | ATTORNEY |
|---|---|---|
| PLAINTIFF | LEVITAN, JOHN D SR (/BMWebLatest/Party.aspx/Index/101099601?caseID=2873678&digest=SRGampBo2zjWx08bK1cw4A) | |
| DEFENDANT | GILEAD SCIENCES INC (/BMWebLatest/Party.aspx/Index/101099602?caseID=2873678&digest=oQ8dmrYUwWIdZSPX9bSI%2BA) | BARNES, JACOB FRANKLIN (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | GILEAD SCIENCES INC (/BMWebLatest/Party.aspx/Index/101099602?caseID=2873678&digest=oQ8dmrYUwWIdZSPX9bSI%2BA) | BRANNING, JEREMY C (Main Attorney) (/BMWebLatest/Party.aspx/Index/348?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0ndw) |
| DEFENDANT | GILEAD SCIENCES IRELAND UC (/BMWebLatest/Party.aspx/Index/101099603?caseID=2873678&digest=%2F5tpredyFyB5zz1ucIKK8A) | BARNES, JACOB FRANKLIN (Main Attorney) (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | GILEAD SCIENCES IRELAND UC (/BMWebLatest/Party.aspx/Index/101099603?caseID=2873678&digest=%2F5tpredyFyB5zz1ucIKK8A) | BRANNING, JEREMY C (/BMWebLatest/Party.aspx/Index/348?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0ndw) |
| DEFENDANT | PATTERSON BELKNAPP WEBB AND TYLER LLP A NEW YORK LIMITED LIABILITY PARTNERSHIP (/BMWebLatest/Party.aspx/Index/101099605?caseID=2873678&digest=jFnuwCXGBelKlGFXSS6XKA) | BARNES, JACOB FRANKLIN (Main Attorney) (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | PATTERSON BELKNAPP WEBB AND TYLER LLP A NEW YORK LIMITED LIABILITY PARTNERSHIP (/BMWebLatest/Party.aspx/Index/101099605?caseID=2873678&digest=jFnuwCXGBelKlGFXSS6XKA) | BRANNING, JEREMY C (/BMWebLatest/Party.aspx/Index/348?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0ndw) |
| DEFENDANT | POTTER, GEOFFREY (/BMWebLatest/Party.aspx/Index/101099606?caseID=2873678&digest=E7rrKoHVL%2FeqQCiJHYw%2Bjw) | BARNES, JACOB FRANKLIN (Main Attorney) (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | POTTER, GEOFFREY (/BMWebLatest/Party.aspx/Index/101099606?caseID=2873678&digest=E7rrKoHVL%2FeqQCiJHYw%2Bjw) | BRANNING, JEREMY C (/BMWebLatest/Party.aspx/Index/348?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0ndw) |
| DEFENDANT | WATERS, TIMOTHY ALAN (/BMWebLatest/Party.aspx/Index/101099607?caseID=2873678&digest=%2FEQvwMSnp57TlJq7BsT3BA) | BARNES, JACOB FRANKLIN (Main Attorney) (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | WATERS, TIMOTHY ALAN (/BMWebLatest/Party.aspx/Index/101099607?caseID=2873678&digest=%2FEQvwMSnp57TlJq7BsT3BA) | BRANNING, JEREMY C (/BMWebLatest/Party.aspx/Index/348?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0ndw) |
| DEFENDANT | FISCHER, ARON (/BMWebLatest/Party.aspx/Index/101099608?caseID=2873678&digest=HTvfWxE6oqN0UmjOC4Fulg) | BARNES, JACOB FRANKLIN (Main Attorney) (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | FISCHER, ARON (/BMWebLatest/Party.aspx/Index/101099608?caseID=2873678&digest=HTvfWxE6oqN0UmjOC4Fulg) | BRANNING, JEREMY C (/BMWebLatest/Party.aspx '8?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0nc |
| DEFENDANT | STEIN, JOSHUA (/BMWebLatest/Party.aspx/Index/101099609?caseID=2873678&digest=KdK2Pj0iacUONRbIZvKSMw) | BARNES, JACOB FRANKLIN (Main Attorney) (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | STEIN, JOSHUA (/BMWebLatest/Party.aspx/Index/101099609?caseID=2873678&digest=KdK2Pj0iacUONRbIZvKSMw) | BRANNING, JEREMY C (/BMWebLatest/Party.aspx/Index/348?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0ndw) |
| DEFENDANT | KURLAND, THOMAS P (/BMWebLatest/Party.aspx/Index/101099610?caseID=2873678&digest=JBkJ1bp%2BeD9hrKEdlqak5g) | BARNES, JACOB FRANKLIN (Main Attorney) (/BMWebLatest/Party.aspx/Index/101197978?caseID=2873678&digest=4DMSEIC2%2FNLjs8Awu7aihg) |
| DEFENDANT | KURLAND, THOMAS P (/BMWebLatest/Party.aspx/Index/101099610?caseID=2873678&digest=JBkJ1bp%2BeD9hrKEdlqak5g) | BRANNING, JEREMY C (/BMWebLatest/Party.aspx/Index/348?caseID=2873678&digest=XGSnlgGrTQFyymFI%2Bi0ndw) |

## EVENTS

| DATE | EVENT | JUDGE | LOCATION | RESULT |
|---|---|---|---|---|
| | | No Events on Case | | |

## OUTSTANDING AMOUNT

| COUNT | CODE | DESCRIPTION | ASSESSMENT | PAID | WAIVED | BALANCE | PAYMENT PLAN / JUDGMENT | DUE DATE |
|---|---|---|---|---|---|---|---|---|
| | CA1 | CIRCUIT CIVIL FILING FEE | $400.00 | $400.00 | $0.00 | $0.00 | | |
| | CA93 | ISSUANCE OF SUMMONS | $80.00 | $80.00 | $0.00 | $0.00 | | |
| | CA41 | EXTRA DEFENDANTS | $7.50 | $7.50 | $0.00 | $0.00 | | |
| | CP99 | NOTICE OF APPEAL - CIRCUIT TO DCA | $100.00 | $100.00 | $0.00 | $0.00 | | |
| | | | | Total Outstanding: | | $0.00 | | |

## RECEIPTS

| DATE | RECEIPT # | APPLIED AMOUNT |
|---|---|---|
| 9/3/2024 | 2024064370 | $487.50 |
| 1/6/2026 | 2026001420 | $100.00 |

## CASE DOCKETS

| IMAGE | DATE | ENTRY |
|---|---|---|
| 1 | 2/12/2026 | ORDER DENYING PRO SE PLAINTIFF'S VERIFIED MOTION TO DISQUALIFY JUDGE |
| 1 | 2/10/2026 | NOTICE OF FILING FIRST AMENDED COMPLAINT |
| 1 | 2/10/2026 | FIRST AMENDED COMPLAINT |
| 1 | 2/10/2026 | VERIFIED MOTION TO DISQUALIFY JUDGE |
| 1 | 2/6/2026 | ORDER TO SHOW CAUSE TO PLAINTIFF FOR FAILURE TO COMPLY WITH JANUARY 26 2026 ORDER |
| 1 | 1/26/2026 | ORDER FROM DISTRICT COURT RESTYLING CASE - DCA# 1D26-0175 |
| 1 | 1/26/2026 | ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY |
| 1 | 1/26/2026 | ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS |
| 1 | 1/26/2026 | ORDER DENYING PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING DISQUALIFICATION OF DEFENDANTS' COUNSEL |

| IMAGE | DATE | ENTRY |
|---|---|---|
| 1 | 1/26/2026 | ORDER REQUIRING DOCKETING |
| 1 | 1/26/2026 | ORDER DENYING PLAINTIFFS MOTION FOR JUDICIAL DEFAULT FOR FAILING TO ANSWER AS ORDERED BY THE COURT |
| 1 | 1/21/2026 | DISTRICT COURT RECEIPT LETTER FILED - DCA# 1D26-0175 |
| Request | 1/13/2026 | NOTICE OF APPEAL - RECORDED (OR.9432.1137. / 2026003277) |
| 1 | 1/12/2026 | PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTIONS ANDIN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING APPEAL |
| Request | 1/12/2026 | CORRECTED DISTRICT COURT RECEIPT LETTER FILED - DCA# 1D25-3298 |
| 1 | 1/12/2026 | DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING DISQUALIFICATION OF DEFENDANTS COUNSEL |
| 1 | 1/6/2026 | PAYMENT $100.00 RECEIPT #2026001420 |
| 1 | 12/23/2025 | DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS |
| 1 | 12/19/2025 | DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| 1 | 12/19/2025 | DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE |
| Request | 12/17/2025 | DISTRICT COURT RECEIPT LETTER FILED WITH ORDER ATTACHED - DCA# 1D25-3298 |
| 1 | 12/15/2025 | PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| 1 | 12/15/2025 | PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING DISQUALIFICATION OF DEFENDANTS' COUNSEL |
| 1 | 12/15/2025 | FIRST COLLECTIONS NOTICE SENT |
| 1 | 12/12/2025 | NOTICE OF APPEAL |
| 1 | 12/8/2025 | OMNIBUS ORDER ON PENDING MOTIONS AND CANCELLATION OF JUNE 17 2026 HEARING |
| 1 | 12/4/2025 | CORRESPONDENCE FROM ATTORNEY TO COURT |
| 1 | 12/4/2025 | NOTICE OF FILING EXHIBITS TO PLAINTIFFS OBJECTIONS TO DEFENDANTS MOTION TO STAY DISCOVERY SUPPLEMENT TO MOTION TO STRIKE MOTION TO DISMISS AND MOTION FOR JUDICIAL DEFAULT |
| 1 | 12/4/2025 | PLAINTIFFS OBJECTIONS TO DEFENDANTS MOTION TO STAY DISCOVERY SUPPLEMENT TO MOTION TO STRIKE MOTION TO DISMISS AND MOTION FOR JUDICIAL DEFAULT |
| 1 | 12/3/2025 | INITIAL CASE MANAGEMENT ORDER - GENERAL |
| 1 | 12/3/2025 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION |
| 1 | 12/3/2025 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION |
| 1 | 12/3/2025 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION |
| 1 | 12/3/2025 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION |
| 1 | 12/3/2025 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION |
| 1 | 12/3/2025 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION |
| 1 | 12/3/2025 | PLAINTIFF'S FIRST REQUEST FOR PRODUCTION |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFFS FIRST SET OF INTERROGATORIES |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFFS FIRST SET IF INTERRGATORIES ON DEFENDANT PATTERSON BELKNAP WEBB AND TYLER LLP |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFFS FIRST SET OF INTERROGATORIES ON DEFENDANT PATTERSON AARON FISCHER |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFFS FIRST SET OF INTERROGATORIES ON DEFENDANT JOSHUA STEIN |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFF FIRST SET OF INTERROGATORIES ON DEFENDANT GEOFFREY POTTER |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFFS FIRST SET OF INTERROGATORIES ON DEFENDANT TIMOTHY ALAN WATERS |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFFS FIRST SET OF INTERROGATORIES ON DEFENDANT GILEAD SCIENNCES INC. GILEAD SCIENCES IRELAND UC. |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTIONON DEFENDANT GILEAD SCIENCES, INC. GILEAD SCIENCES IRELAND UC |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION ON DEFENDANT TIMOTHY ALAN WATERS |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION ON DEFENDANT JOSHUA STEIN |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTIONON DEFENDANT PATTERSON BELKNAP WEBB & TYLER LLP |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTIONON DEFENDANT THOMAS KURLAND |
| 1 | 12/3/2025 | NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION ON DEFENDANT AARON FISCHER |
| 1 | 12/3/2025 | NOTICE OF HEARING ON PLAINTIFFS MOTION TO STRIKE DEFENDANTS MOTION TO DISMISS FOR FRAUD AGAINAST THE PLAINTIFF AND FRAUD ON THE COURT AND MOTION FOR JUDICIAL DEFAULT FOR FAILING TO ANSWER AS ORDERED BY THE COURT |
| 1 | 11/17/2025 | ORDER GRANTING DEFENDANTS' MOTION TO SUBSTITUTE COUNSEL OF RECORD |
| 1 | 11/17/2025 | ORDER OVERRULING PLAINTIFFS OBJECTION TO DEFENDANTS MOTION TO SUBSTITUTE COUNSEL OF RECORD |
| 1 | 11/10/2025 | BRIEFING ORDER |
| 1 | 11/9/2025 | MOTION TO STRIKE DEFENDANT'S MOTION TO DISMISS FOR FRAUD AGAINST THE PLAINTIFF AND FRAUD ON THE COURT |
| 1 | 11/9/2025 | MOTION FOR JUDICIAL DEFAULT FOR FAILING TO ANSWER AS ORDERED BY THE COURT |
| 1 | 11/9/2025 | NOTICE WITHDRAWING OBJECTIONS WITHOUT PREJUDICE TO COUNSEL CLARK PARTINGTON HART SUBSTITUTING AS COUNSEL |
| 1 | 11/9/2025 | NOTICE OF CANCELLATION OF HEARING |
| 1 | 11/6/2025 | AFFIDAVIT |
| 1 | 10/29/2025 | DEFENDANTS' MOTION TO STAY DISCOVERY |
| 1 | 10/29/2025 | DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS |
| 1 | 10/29/2025 | DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| 1 | 10/21/2025 | NOTICE OF HEARING |
| 1 | 10/16/2025 | COPY OF CIVIL DOCKET FOR DISTRICT COURT CASE |
| 1 | 10/16/2025 | MEMORANDUM AND ORDER |
| 1 | 10/14/2025 | DEFENDANTS' MOTION TO SUBSTITUTE COUNSEL OF RECORD |
| 1 | 10/14/2025 | CORRESPONDENCE OF JOHN D LEVITAN SR TO JUDGE |
| 1 | 10/13/2025 | NOTICE OF AGREEMENT ON DEFENDANTS' DEADLINE TO RESPOND TO FIRST AMENDED COMPLAINT |
| | 10/10/2025 | DEFENDANT'S ATTORNEY: BRANNING, JEREMY C ASSIGNED |
| 1 | 10/9/2025 | NOTICE OF APPEARANCE OF JEREMY C. BRANNING, ESQ., AND JACOB F. BARNES, ESQ., ON BEHALF OF DEFENDANTS |
| 1 | 10/6/2025 | NOTICE OF REMAND FROM FEDERAL COURT |
| 1 | 10/16/2024 | SUMMONS RETURNED SERVED |
| | 10/7/2024 | CASE REMOVED TO U.S. DISTRICT COURT: NO FURTHER PLEADINGS SHOULD BE FILED UNLESS CASE IS REMANDED BY COURT ORDER |
| | 10/3/2024 | CASE CLOSED |
| 1 | 10/3/2024 | NOTICE OF FILING NOTICE OF REMOVAL |

| IMAGE | DATE | ENTRY |
|---|---|---|
| 1 | 9/24/2024 | SUMMONS RETURNED SERVED |
| 1 | 9/24/2024 | SUMMONS RETURNED SERVED |
| 1 | 9/24/2024 | SUMMONS RETURNED SERVED |
| 1 | 9/24/2024 | SUMMONS RETURNED SERVED |
| 1 | 9/24/2024 | SUMMONS RETURNED SERVED |
| 1 | 9/24/2024 | SUMMONS RETURNED SERVED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/5/2024 | SUMMONS ISSUED |
| 1 | 9/3/2024 | ORDER REGARDING REQUIRED REPORTING |
| Request | 9/3/2024 | PAYMENT $487.50 RECEIPT #2024064370 |
| | 9/3/2024 | FRYDRYCHOWICZ, JENNIFER J: ASSIGNED |
| 1 | 9/2/2024 | COMPLAINT |
| 1 | 9/2/2024 | CIVIL COVER SHEET |
| | 9/2/2024 | CASE FILED 09/02/2024 CASE NUMBER 2024 CA 001164 |

Best viewed in 1366x768 or higher resolution. Copyright 2008 - 2017 Pioneer Technology Group All Rights Reserved.
2.6.3.18

Benchmark

RECEIVED
By Escambia County Clerk of Court at 1:33 pm, Jan 21, 2026

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive,**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850) 488-6151**

January 21, 2026

**Acknowledgment of New Case**

John D. Levitan, Sr.,
Petitioner(s)
v.

The Honorable Jennifer J. Frydrychowicz, Circuit Judge of the First Judicial Circuit in and for Escambia County, Florida, and Patterson Belknap Webb & Tyler LLP, et al.
Respondent(s).

**Case 1D2026-0175**
L.T. No (If Applicable).: 2024 CA 001164

---

The First District Court of Appeal has received a Petition for Writ of Mandamus, filed in this Court on January 20, 2026.

All documents filed in this case must contain this Court's case number.

Per Administrative Order 23-1, Petitioner must file a Docketing Statement/Notice of Appearance of Counsel ("Docketing Statement") within twenty days of the date of this acknowledgment notice. If pro se, Petitioner may file a paper Docketing Statement by mail or an electronic Docketing Statement via the Florida Court's E-Filing Portal. If represented, Petitioner's attorney must file the Docketing Statement via the Portal. A fillable form version of the Docketing Statement is available via a link on the "Documents" tab of the Portal or on this Court's website at https://www.1dca.flcourts.gov/Resources/General-Information. Opposing parties must file a Docketing Statement only if they seek to make amendments, corrections, or additions to Petitioner's Docketing Statement.

Served:

Escambia Clerk
Hon. Jennifer Jozanne Frydrychowicz
John D. Levitan, Sr.

PP

1D2026-0175 January 21, 2026
Kristina Samuels, Clerk
1D2026-0175 January 21, 2026

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

JOHN D. LEVITAN, SR.,

Plaintiff,

v. CASE NO. 2024-cv-001164

GILEAD SCIENCES, INC.
GILEAD SCIENCES IRELAND UC
PATTERSON, BELKNAPP, WEBB & TYLER, LLP,
a New York Limited Liability Partnership,
GEOFFREY POTTER, an Individual,
TIMOTHY ALAN WATERS, an Individual,
ARON FISCHER, an Individual,
JOSHUA STEIN, an Individual,
THOMAS P. KURLAND, an Individual,
Defendant(s), Jointly and Severally

Defendant(s).

_______________________________________________/

**VERIFIED MOTION TO DISQUALIFY JUDGE**

**NOW COMES** Plaintiff John D. Levitan, Sr. *pro se*, pursuant to Rule 2.330, Florida Rules of General Practice and Judicial Administration, respectfully moves to disqualify the presiding judge and states:

---

**I. LEGAL STANDARD**

1. A judge must be disqualified where the facts alleged would place a reasonably prudent person in a well-founded fear that he or she will not receive a fair and impartial hearing. See, *MacKenzie v. Super Kids Bargain Store, Inc.*, 565 So.2d 1332 (Fla. 1990)("Whenever a party to any action or proceeding makes and files an affidavit stating that he fears he will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge

of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists. ..”), *Livingston v. State*, 441 So.2d 1083 (Fla. 1983),

a. *Legal Sufficiency Test*: A motion to disqualify a judge is legally sufficient if it shows that a party has a well-grounded fear that they will not receive a fair trial.

b. *Objective Standard*: The fear must be based on facts that would lead a reasonably prudent person to believe they could not receive an impartial hearing.

c. Judge's Role: Once a motion is filed, the trial judge is prohibited from passing on the truth of the allegations; they may only determine if the motion is legally sufficient.

d. Immediate Action: If the motion is sufficient, the judge must immediately disqualify themselves and take no further action in the case.

*Id.*

*Bundy v. Rudd*, 366 So.2d 440 (Fla. 1978):

> “Regardless of whether respondent ruled correctly in denying the motion for disqualification as legally insufficient, our rules clearly provide, and we have repeatedly held, that a judge who is presented with a motion for his disqualification "shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification." Fla.R.Crim.P. 3.230(d); see, e.g., *Dickenson v. Park*s, 104 Fla. 577, 140 So. 459 (1932); *Suarez v. State*, 95 Fla. 42, 115 So. 519 (1928); *Theo. Hirsch Co. v. McDonald Furniture Co.*, 94 Fla. 185, 114 So. 517 (1927). When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has then exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification. Our disqualification rule, which limits the trial judge to a bare determination of legal sufficiency, was expressly designed to prevent what occurred in this case the creation of "an intolerable adversary atmosphere" between

the trial judge and the litigant. The test is not actual bias, but the *objective appearance of partiality or prejudgment. Id.*

2. This Motion is based solely on specific, objective facts that occurred the day after the First DCA transmitted its' Order changing the case tyle of the case of the Petition for Mandamus demonstrating:

a. unequal treatment of the parties,

b. repeated discovery stays benefiting Defendant of over 14 months, and

c. immediate *en masse* adverse rulings to the Plaintiff on:

*i.* Plaintiff's Motion for Judicial Default for Plaintiff's Failure to File a Responsive Pleading (Filed 11/09/2026) **DENIED 1/26/2026.**

ii. Motion For Judicial Default for Failing to Answer as Ordered by the Court (Filed 11/09/2025) **DENIED 1/26/2026.**

iii. Plaintiff's Motion to Strike Motion to Dismiss (Filed 11/09/2025) **DENIED 1/26/2026**

iv. Motion to Stay Proceedings Pending Appeal (Filed 12/15/2025) **DENIED 1/26/2026**

v. Plaintiff's Motion for Judicial Default for Failing to Answer as Ordered by the Court (11/09/2026) **DENIED 1/26/2026**

vi. Defendant's Motion to Stay Discovery (Filed 11/29/2025) **DENYING PLAINTIFF'S OBJECTIONS TO STAY 1/26/2026**

Collectively these *en masse* denials created a well-founded fear that Plaintiff cannot obtain neutral consideration.

## II. SPECIFIC FACTS GIVING RISE TO DISQUALIFICATION

3. This action has been pending while discovery has been repeatedly delayed at Defendant's request.

4. For approximately **sixteen (16) months**, Defendant sought and obtained delays of discovery.

5. The Court(s) granted those delays **over Plaintiff's timely objections**. As a result, Plaintiff has been unable to obtain essential discovery necessary to prosecute the case against the Defendants and to prepare the case for trial.

6. During this same period, Plaintiff filed multiple motions to move the case forward, including: motions to compel discovery, motions to strike improper defense motions using unsubstantiated allegations slanderous to the Plaintiff that were not part of the case to cause judicial bias, objections to further stays beyond a 12-month delay in discovery.

7. Plaintiff filed a Petition for Writ of Mandamus in the Florida First District Court of Appeal seeking only to require the Court to rule on the pending motions as it was Plaintiff's well-founded belief the Court was biased in favor of the Defendants.

8. Immediately after the filing of the mandamus petition, the Court entered orders denying **all** pending motions.

9. The denials occurred in close temporal proximity to the mandamus filing, following approximately many months of stays causing further delays in the case. The motions were denied without hearings and without substantive explanation or analysis. Meanwhile, Defendant had been permitted extended discovery delays and stays without comparable adverse rulings.

## III. OBJECTIVE APPEARANCE CREATED BY THESE FACTS

12. The Court's prolonged failure to rule on Plaintiff's motions, followed by immediate blanket denials only after Plaintiff sought mandamus relief, creates the appearance that the motions were not considered in a neutral and deliberative manner.
13. The timing reasonably suggests that the adverse rulings were triggered by Plaintiff's exercise of the legal right to seek appellate relief rather than by the merits of the motions.
14. Additionally, repeatedly granting Defendant's requested delays while Plaintiff's motions went unheard creates the appearance of unequal application of procedural rules.
15. Preventing Plaintiff from obtaining necessary discovery while permitting Defendant continued delay materially prejudices Plaintiff's ability to prosecute the case.
16. Under Florida law, even the appearance of prejudgment or partiality requires disqualification. See *MacKenzie*, *Livingston*, and *Bundy*, supra.

---

## IV. WELL-FOUNDED FEAR

17. Based on the totality of these facts, a reasonably prudent litigant would fear that:
    a. Plaintiff's motions are not receiving neutral consideration;
    b. the Court has effectively predetermined Plaintiff's requests;
    c. Defendant is receiving more favorable procedural treatment; and
    d. seeking appellate relief results in adverse consequences.
18. Plaintiff therefore has a well-founded and objectively reasonable fear that he/she cannot receive a fair and impartial hearing before the current presiding judge.

---

**V. TIMELINESS**

19. This Motion is filed promptly after entry of the orders denying all pending motions and upon learning of the facts giving rise to this well-founded fear.

---

**WHEREFORE** Plaintiff respectfully requests that this Court:

i. Enter an Order of Disqualification;

ii. Cease further action in this matter;

iii. Refer reassignment to the Chief Judge; and

iv. Grant such further relief as justice requires.

Respectfully submitted,

February 10, 2026

/s/ ______________________

John D. Levitan, *pro se*
511 Windrose Circle
Pensacola, FL. 32507
Telephone: +1 (850) 497-2724
Primary Email: jdlsr@gileadfraud.com
Secondary Emails: legal@gileadfraud.com

---

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Motion and that the facts stated in it are true and correct.

Executed this 10th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

---

## CERTIFICATE OF GOOD FAITH

I certify that this Motion is made in good faith and not for purposes of delay.

/s/ ______________________
John D. Levitan, *pro se*

---

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Florida e-filing portal on this 10th day of February 2026.

/s/ ______________________
John D. Levitan, *pro se*

Filing # 241654281 E-Filed 02/12/2026 03:44:46 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN D. LEVITAN, SR,**
**Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164**
**DIVISION: N**

**GILEAD SCIENCES, INC., et al**
**Defendants.**
______________________________/

**ORDER DENYING PRO SE PLAINTIFF'S VERIFIED MOTION TO DISQUALIFY JUDGE**

**THIS MATTER** is before the Court on the Defendant's *Pro Se* Verified Motion to Disqualify Judge, e-filed February 10, 2026.

Rule 2.330(h) of the Florida Rules of General Practice and Judicial Administration governs the determination of an initial motion for disqualification and requires that the Court determine only the legal sufficiency of the motion. If the motion is legally sufficient, the Court shall immediately enter an order granting disqualification and proceed no further. The Rule prohibits the Court from disputing the truth of the facts alleged. As such, an order finding a motion legally sufficient does not constitute acknowledgement that the allegations are true.

**THEREFORE**, it is **ORDERED** that the Motion is:

[ ] **GRANTED**, as legally sufficient.

[X] **DENIED**, as legally insufficient.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

02/12/2026 13:38:20
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 02/12/2026 01:38:20 4XXuWsPy

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING (JBRANNING@CLARKPARTINGTON.COM);
JACOB BARNES (jbarnes@clarkpartington.com), Attorneys for Defendants

## APPENDIX B

USDC-NDFLA Court Docket.

Query Reports Utilities Help Log Out

CLOSED,ProSeNonPrisonerCase

# U.S. District Court
# Northern District of Florida (Pensacola)
# CIVIL DOCKET FOR CASE #: 3:24-cv-00475-MCR-ZCB

LEVITAN v. PATTERSON BELKNAP WEBB & TYLER LLP et al
Assigned to: JUDGE M CASEY RODGERS
Referred to: MAGISTRATE JUDGE ZACHARY C BOLITHO
Case in other court: FIRST JUDICIAL CIRCUIT, ESCAMBIA COUNTY, 2024-CA-001164
Cause: 28:1332 Diversity-Libel,Assault,Slander

Date Filed: 10/03/2024
Date Terminated: 01/23/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

| | | |
|---|---|---|
| **JOHN D LEVITAN, SR.** | represented by | **JOHN D LEVITAN, SR.**<br>511 WINDROSE CIRCLE<br>PENSACOLA, FL 32507<br>850-497-2724<br>PRO SE |

V.

**Defendant**

| | | |
|---|---|---|
| **PATTERSON BELKNAP WEBB & TYLER LLP** | represented by | **HANNAH ELEANOR MURPHY**<br>STEARNS WEAVER MILLER - TALLAHASSEE FL<br>106 E COLLEGE AVENUE<br>SUITE 700<br>TALLAHASSEE, FL 32301<br>850-354-7629<br>Email: hmurphy@stearnsweaver.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **GEOFFREY POTTER** | represented by | **HANNAH ELEANOR MURPHY**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **TIMOTHY ALAN WATERS** | represented by | **HANNAH ELEANOR MURPHY**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**ARON FISCHER** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOSHUA STEIN** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**THOMAS P KURLAND** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GILEAD SCIENCES INC** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GILEAD SCIENCES IRELAND UC** represented by **HANNAH ELEANOR MURPHY**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2024 | 1 | NOTICE OF REMOVAL by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER from FIRST CIRCUIT COURT, ESCAMBIA COUNTY, case number 2024-CA-001164. ( Filing fee $ 405 receipt number BFLNDC-9078434.), filed by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER. (Attachments: # 1 Exhibit, # 2 Exhibit NY RELATED CASE DOCKET, # 3 Civil Cover Sheet) (MURPHY, HANNAH) (Entered: 10/03/2024) |
| 10/03/2024 | 2 | Corporate Disclosure Statement/Certificate of Interested Persons by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) (Entered: 10/03/2024) |
| 10/04/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal (please see proposed ISO). (mb) (Entered: 10/04/2024) |
| 10/07/2024 | 3 | MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* by PATTERSON BELKNAP WEBB & TYLER LLP. (MURPHY, HANNAH) (Entered: 10/07/2024) |
| 10/07/2024 | | Set Deadlines re 3 MOTION to Stay and TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **10/21/2024)**. (mb) (Entered: 10/08/2024) |

| | | |
|---|---|---|
| 10/08/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (mb) (Entered: 10/08/2024) |
| 10/14/2024 | 4 | MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) (Entered: 10/14/2024) |
| 10/15/2024 | | Set Deadlines re 4 MOTION to Expedite. (Internal deadline for referral to judge if response not filed earlier: **10/29/2024)**. (mb) (Entered: 10/15/2024) |
| 10/15/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 4 MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* (mb) (Entered: 10/15/2024) |
| 10/16/2024 | 5 | ORDER re 4 MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY. The motion is GRANTED in part and DENIED in part. Defendants' deadline to respond to Plaintiff's Complaint is extended until 10 days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024. (Plaintiff's response to Defendant's MOTION to Stay remains **10/21/2024)**. Defendant's deadline to respond due by **10/31/2024**.) Signed by JUDGE M CASEY RODGERS on 10/16/2024. (mb) (Entered: 10/16/2024) |
| 10/17/2024 | 6 | Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc., by JOHN D LEVITAN, SR (alb) (Entered: 10/18/2024) |
| 10/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 6 Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc.. (alb) (Entered: 10/18/2024) |
| 10/21/2024 | 7 | Motion to Remand State Court Case No. 2024-CA-001164 and Incorporated Memorandum of Law, by JOHN D LEVITAN, SR. (alb) Modified on 1/3/2025 to term re 28 ORDER. (mb). (Entered: 10/22/2024) |
| 10/21/2024 | 8 | MOTION to File Pleadings Through the ECF/ECM System PACER by JOHN D LEVITAN, SR. (alb) (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION NO LONGER REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. (alb) Modified on 10/22/2024 (alb). (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. Referred to ZACHARY C BOLITHO. (alb) (Entered: 10/22/2024) |
| 10/22/2024 | 9 | MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW by JOHN D LEVITAN, SR. (jfj) (Entered: 10/23/2024) |

| | | |
|---|---|---|
| 10/23/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 9 MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. Referred to ZACHARY C BOLITHO. (jfj) (Entered: 10/23/2024) |
| 10/23/2024 | 10 | ORDER re 9 Motion for Enlargement of Time to Reply to MOTION to Stay and Transfer Proceedings. Plaintiff's motion is GRANTED to the extent that his response to Defendants' motion to stay and transfer proceedings (Doc. 3 ) is due on or before November 6, 2024. Plaintiff is advised that no further extensions of this deadline will be granted. (Internal deadline for referral to judge if response to Defendant's Motion not filed earlier: **11/6/2024).**) Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) (Entered: 10/23/2024) |
| 10/23/2024 | 11 | ORDER. Plaintiff's "Request to File Pleadings Through the ECF/ECM System PACER" (Doc. 8 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) (Entered: 10/23/2024) |
| 10/25/2024 | 12 | Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law, by JOHN D LEVITAN, SR. (mb) (Entered: 10/28/2024) |
| 10/28/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 12 Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law. Referred to ZACHARY C BOLITHO. (mb) (Entered: 10/28/2024) |
| 10/28/2024 | 13 | ORDER denying 12 Motion for Reconsideration. That Plaintiff's Motion for Reconsideration (Doc. 12 ) is DENIED. If Plaintiff's travel plans interfere with his ability to meet a Court deadline, Plaintiff may file a motion seeking an extension of any such deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/28/2024. (mb) (Entered: 10/28/2024) |
| 11/01/2024 | 14 | Corporate Disclosure Statement/Certificate of Interested Persons by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/01/2024 | 15 | RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal,, *Consent to Removal*. (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/01/2024 | 16 | NOTICE *of Joinder in Motion to Stay and Transfer Proceedings* by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/01/2024 | 17 | MOTION to Hold Deadline for Responding to Complaint in Abeyance by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) (Entered: 11/01/2024) |
| 11/04/2024 | 18 | MEMORANDUM in Opposition re 7 MOTION to Remand to State Court filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 RESPONSE by GILEAD |

| | | |
|---|---|---|
| | | SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal, Consent to Removal. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 NOTICE of Joinder in Motion to Stay and Transfer Proceedings by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance. Referred to ZACHARY C BOLITHO. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 18 MEMORANDUM in Opposition re 7 MOTION to Remand to State Court. (mb) (Entered: 11/04/2024) |
| 11/04/2024 | 19 | ORDER re 17 Motion to Hold Deadline for Responding to Complaint in Abeyance. The motion (Doc. 17 ) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that Defendants' deadline to respond to Plaintiff's complaint is HELD IN ABEYANCE. The new deadline for Defendants Gilead Sciences, Inc., and Gilead Sciences Ireland UC to respond to Plaintiff's complaint is ten days after the Court's ruling on Defendants' motion to stay and transfer (Doc. 3 ). Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. Plaintiff's deadline to respond to Defendants' motion to stay and transfer proceedings (Doc. 3 ) remains November 6, 2024. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/04/24. (jfj) (Entered: 11/04/2024) |
| 11/04/2024 | | Set Deadline re 19 ORDER - Internal deadline for referral to judge if response to 3 Motion not filed earlier: **11/6/2024)**. (jfj) (Entered: 11/04/2024) |
| 11/08/2024 | 20 | Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service, by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibit A). (mb) (Entered: 11/12/2024) |
| 11/12/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 20 Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service. Referred to ZACHARY C BOLITHO. (mb) (Entered: 11/12/2024) |
| 11/12/2024 | 21 | REPORT AND RECOMMENDATION. Plaintiff's Motion to Remand to State Court (Doc. 7 ) be DENIED. This case be recommitted to the undersigned for further proceedings. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/12/2024. Internal deadline for referral to district judge if objections are not filed earlier: **12/10/2024**. (mb) (Entered: 11/12/2024) |
| 11/15/2024 | 22 | NOTICE *OF FILING AMENDED CERTIFICATES OF SERVICE* by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 18 Memorandum in Opposition to Motion, 15 Response/Reply, 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance , 16 Notice (Other), 14 Corporate Disclosure Statement/Certificate of Interested Persons (MURPHY, HANNAH) (Entered: 11/15/2024) |
| 11/15/2024 | 23 | RESPONSE in Opposition re 20 MOTION for Sanctions filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, |

| | | |
|---|---|---|
| | | JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) (Entered: 11/15/2024) |
| 11/15/2024 | 24 | RESPONSE in Opposition re 3 MOTION TO STAY AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW filed by JOHN D LEVITAN, SR. (jcw) (Entered: 11/18/2024) |
| 11/15/2024 | 25 | MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition by JOHN D LEVITAN, SR. (jcw) (Entered: 11/18/2024) |
| 11/15/2024 | 26 | PROPOSED FIRST AMENDED COMPLAINT against All Defendants., filed by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibits)(No service copies filed.) (jcw) (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 22 DEFENDANTS' NOTICE OF FILING AMENDED CERTIFICATES OF SERVICE, 23 DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS. (jfj) (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 26 Proposed Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME, 24 Response in Opposition to Motion. Referred to ZACHARY C BOLITHO. (jcw) (Entered: 11/18/2024) |
| 11/22/2024 | 27 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 26 Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition to Motion . (MURPHY, HANNAH) (Entered: 11/22/2024) |
| 11/25/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 27 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFF'S MOTION TO FILE AN OUT OF TIME RESPONSE AND AMENDED COMPLAINT. (jfj) (Entered: 11/25/2024) |
| 12/11/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 21 REPORT AND RECOMMENDATION (No objections or responses filed). (mb) (Entered: 12/11/2024) |
| 12/31/2024 | 28 | ORDER adopting Magistrate Judge's 21 REPORT AND RECOMMENDATION. The Plaintiff's Motion to Remand to State Court, (Doc. 7 ), is DENIED. This case is recommitted to the magistrate judge for further proceedings. Signed by JUDGE M CASEY RODGERS on 12/31/2024. (mb) (Entered: 12/31/2024) |
| 12/31/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 28 Order. (Recommitted back to Magistrate Judge). (mb) (Entered: 12/31/2024) |
| 01/06/2025 | 29 | ORDER - That Plaintiff's motion for sanctions (Doc. 20 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) (Entered: 01/06/2025) |
| 01/06/2025 | 30 | ORDER. Plaintiff's Motion to File Opposition to Defendants Motion to Stay and Transfer (Doc. 25 ) is GRANTED. Defendants' Motion to Stay and Transfer Proceedings (Doc. 3 ) is GRANTED to the extent that the Court will transfer this action. The Clerk of Court must TRANSFER this case to the U.S. District Court for the Eastern District of New York and |

| | | |
|---|---|---|
| | | close the file in this Court fifteen days from the date of this Order, unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) (Entered: 01/06/2025) |
| 01/06/2025 | 31 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) (Entered: 01/06/2025) |
| 01/06/2025 | | Set Deadlines re STAY for transfer response deadline: **1/21/2025** re 30 ORDER. (mb) (Entered: 01/06/2025) |
| 01/08/2025 | 32 | ACKNOWLEDGMENT re 31 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00101, filed 01/06/2025. (mb) (Entered: 01/08/2025) |
| 01/08/2025 | 33 | DOCKET ANNOTATION BY COURT: Re 32 Acknowledgment of Transfer - Case Manager to call back regarding premature transfer with instructions on how to proceed. (mb) (Entered: 01/08/2025) |
| 01/08/2025 | 34 | NOTICE of Case 1:25-cv-00101-AMD-JAM removed from the docket due to premature transfer re 32 Acknowledgment, by EASTERN DISTRICT of NEW YORK. (mb) (Entered: 01/08/2025) |
| 01/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: Set Deadlines re STAY for transfer response deadline: 1/21/2025 re 30 ORDER. (No responses filed by deadline - permission to TRANSFER). (mb) (Entered: 01/22/2025) |
| 01/23/2025 | 35 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) (Entered: 01/23/2025) |
| 01/23/2025 | 36 | ACKNOWLEDGMENT re 35 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00393, filed 01/23/2025. (mb) (Entered: 01/23/2025) |
| 01/27/2025 | 37 | Plaintiff's Objections to 30 Order Transferring Case, MOTION for Reconsideration of ORDER Denying Remand to State Court and Notice of Intervening Decision in ROYAN CANIN U S A INC, et al v. WULLSCHLEGER et al, 604 U.S. (2025). (mb) (Entered: 01/27/2025) |
| 01/27/2025 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 37 Plaintiff's Objections to 30 Order Transferring Case, MOTION for Reconsideration of ORDER Denying Remand to State Court and Notice of Intervening Decision in ROYAN CANIN U S A INC, et al v. WULLSCHLEGER et al, 604 U.S. (mb) (Entered: 01/27/2025) |
| 01/28/2025 | 38 | NOTICE to Court re 37 Plaintiff's Objections to 30 Order Transferring Case, MOTION for Reconsideration of ORDER Denying Remand to State Court and Notice of Intervening Decision in ROYAN CANIN U S A INC, et al v. WULLSCHLEGER et al, 604 U.S. (2025), 35 Case Transferred Out to Another District - EASTERN DISTRICT OF NEW YORK. (mb) (Entered: 01/28/2025) |

| | | |
|---|---|---|
| 01/29/2025 | 39 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 37 Response/Reply *In Opposition to Plaintiff's Objections to Order Transferring Case*. (MURPHY, HANNAH) (Entered: 01/29/2025) |
| 01/29/2025 | 40 | ORDER re 38 NOTICE to Court re 37 Plaintiff's Objections to 30 Order Transferring Case and 37 Plaintiff's Objections to 30 Order Transferring Case. Because this Court lost all jurisdiction over the case on January 23, 2025, it cannot consider whether Levitan's objections should be allowed out of time or the underlying merits of his objections. Signed by JUDGE M CASEY RODGERS on 1/29/2025. (mb) (Entered: 01/29/2025) |
| 10/06/2025 | 41 | DOCKET ANNOTATION BY COURT: Case Remanded to the Circuit Court of the First Judicial District in and for Escambia County, Florida (Case No. 2024-CA-001164), by the Eastern District of New York (Case No. 1:25-cv-00393). (Tiffeny Lee-Harris of the Eastern District of New York sent case to Florida Circuit Court by certified mail on 10/6/2025). (mah) (Entered: 10/06/2025) |

---



| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/12/2026 19:06:47 | | | |
| **PACER Login:** | jdlevitan | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00475-MCR-ZCB |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

# APPENDIX C

USDC-EDNY Court Docket

CLOSED,DJI,NPROSE,TransferredOutCase-DoNotDocket

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:25-cv-00393-AMD-JAM

Levitan v. Patterson Belknap Webb & Tyler LLP et al
Assigned to: Judge Ann M. Donnelly
Referred to: Magistrate Judge Joseph A. Marutollo
related Case: 1:21-cv-04106-AMD-JAM
Case in other court: Florida Northern, 3:24-cv-00475
Cause: 28:1332 Diversity-Libel,Assault,Slander

Date Filed: 01/23/2025
Date Terminated: 09/30/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**John D. Levitan, Sr.** represented by **John D. Levitan, Sr.**
511 Windrose Circle
Pensacola, FL 32507
850-497-2724
Email: jdlsr@gileadfraud.com
PRO SE

V.

**Defendant**

**Patterson Belknap Webb & Tyler LLP** represented by **Hannah Eleanor Murphy**
STEARNS WEAVER MILLER - TALLAHASSEE FL
106 E COLLEGE AVENUE
SUITE 700
TALLAHASSEE, FL 32301
850-354-7629
Email: hmurphy@stearnsweaver.com
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
Patterson Belknap Webb & Tyler LLP
1133 Ave of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: gpotter@pbwt.com
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
Patterson Belknap Webb & Tyler
1133 Avenue Of The Americas
New York, NY 10036
(212)336-2000
Fax: (212)336-2222

Email: tkurland@pbwt.com
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: twaters@pbwt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Geoffrey Potter** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timothy Alan Waters** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Aron Fischer** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joshua Stein** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas P Kurland** represented by **Hannah Eleanor Murphy**
(See above for address)
*TERMINATED: 01/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geoffrey Potter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Philip Kurland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy Alan Waters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Gilead Sciences Inc.** | represented by | **Geoffrey Potter**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Hannah Eleanor Murphy**<br>(See above for address)<br>*TERMINATED: 01/29/2025*<br>*ATTORNEY TO BE NOTICED*<br><br>**Thomas Philip Kurland**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Timothy Alan Waters**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Gilead Sciences Ireland UC** | represented by | **Geoffrey Potter**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Hannah Eleanor Murphy**<br>(See above for address)<br>*TERMINATED: 01/29/2025*<br>*ATTORNEY TO BE NOTICED*<br><br>**Thomas Philip Kurland**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Timothy Alan Waters**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 10/03/2024 | 1 | NOTICE OF REMOVAL by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER from FIRST CIRCUIT COURT, ESCAMBIA COUNTY, case number 2024-CA-001164. ( Filing fee $ 405 receipt number BFLNDC-9078434.), filed by JOSHUA STEIN, TIMOTHY ALAN WATERS, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, THOMAS P KURLAND, ARON FISCHER. (Attachments: # 1 Exhibit, # 2 Exhibit NY RELATED CASE DOCKET, # 3 Civil Cover Sheet) (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/03/2024 | 2 | Corporate Disclosure Statement/Certificate of Interested Persons by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/03/2024) |
| 10/04/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal (please see proposed |

| | | |
|---|---|---|
| | | ISO). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/04/2024) |
| 10/07/2024 | 3 | MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* by PATTERSON BELKNAP WEBB & TYLER LLP. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/07/2024) |
| 10/07/2024 | | Set Deadlines re 3 MOTION to Stay and TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (Internal deadline for referral to judge if response not filed earlier: **10/21/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/08/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/08/2024) |
| 10/14/2024 | 4 | MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* by ARON FISCHER, THOMAS P KURLAND, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, JOSHUA STEIN, TIMOTHY ALAN WATERS. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/14/2024) |
| 10/15/2024 | | Set Deadlines re 4 MOTION to Expedite. (Internal deadline for referral to judge if response not filed earlier: **10/29/2024)**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/15/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 4 MOTION to Expedite *BRIEFING ON PENDING MOTION TO STAY and HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE* (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/15/2024) |
| 10/16/2024 | 5 | ORDER re 4 MOTION TO HOLD DEADLINE FOR RESPONDING TO COMPLAINT IN ABEYANCE AND TO EXPEDITE BRIEFING ON PENDING MOTION TO STAY. The motion is GRANTED in part and DENIED in part. Defendants' deadline to respond to Plaintiff's Complaint is extended until 10 days after the resolution of the Defendants' Motion to Stay and Transfer Proceedings. Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. The deadline for Plaintiff to respond to Defendants' Motion to Stay and Transfer Proceedings remains October 21, 2024. (Plaintiff's response to Defendant's MOTION to Stay remains **10/21/2024)**. Defendant's deadline to respond due by **10/31/2024**.) Signed by JUDGE M CASEY RODGERS on 10/16/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/16/2024) |
| 10/17/2024 | 6 | Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc., by JOHN D LEVITAN, SR (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 6 Notice of Filing Affidavit Proof of Service on Gilead Sciences, Inc.. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/18/2024) |
| 10/21/2024 | 7 | Motion to Remand State Court Case No. 2024-CA-001164 and Incorporated Memorandum of Law, by JOHN D LEVITAN, SR. (alb) Modified on 1/3/2025 to term re 28 ORDER. (mb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |

| | | |
|---|---|---|
| 10/21/2024 | 8 | MOTION to File Pleadings Through the ECF/ECM System PACER by JOHN D LEVITAN, SR. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION NO LONGER REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. (alb) Modified on 10/22/2024 (alb). [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 MOTION to Remand to State Court, 8 MOTION to File Pleadings Through the ECF/ECM System PACER. Referred to ZACHARY C BOLITHO. (alb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/22/2024) |
| 10/22/2024 | 9 | MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW by JOHN D LEVITAN, SR. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 9 MOTION for Extension of Time to File Response as to 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. Referred to ZACHARY C BOLITHO. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 10 | ORDER re 9 Motion for Enlargement of Time to Reply to MOTION to Stay and Transfer Proceedings. Plaintiff's motion is GRANTED to the extent that his response to Defendants' motion to stay and transfer proceedings (Doc. 3 ) is due on or before November 6, 2024. Plaintiff is advised that no further extensions of this deadline will be granted. (Internal deadline for referral to judge if response to Defendant's Motion not filed earlier: **11/6/2024)**.) Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/23/2024 | 11 | ORDER. Plaintiff's "Request to File Pleadings Through the ECF/ECM System PACER" (Doc. 8 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/23/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/23/2024) |
| 10/25/2024 | 12 | Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law, by JOHN D LEVITAN, SR. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 12 Plaintiff's MOTION for Reconsideration of Order Denying Plaintiff's Request to File Pleadings Electronically (DOC. 11 ) and Plaintiff's Good Cause to Permit Electronic Filing and Memorandum of Law. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |
| 10/28/2024 | 13 | ORDER denying 12 Motion for Reconsideration. That Plaintiff's Motion for Reconsideration (Doc. 12 ) is DENIED. If Plaintiff's travel plans interfere with his ability to meet a Court deadline, Plaintiff may file a motion seeking an extension of any such deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 10/28/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 10/28/2024) |

| | | |
|---|---|---|
| 11/01/2024 | 14 | Corporate Disclosure Statement/Certificate of Interested Persons by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 15 | RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal,, *Consent to Removal*. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 16 | NOTICE *of Joinder in Motion to Stay and Transfer Proceedings* by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay *AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW* (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/01/2024 | 17 | MOTION to Hold Deadline for Responding to Complaint in Abeyance by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/01/2024) |
| 11/04/2024 | 18 | MEMORANDUM in Opposition re 7 MOTION to Remand to State Court filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 RESPONSE by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 1 Notice of Removal, Consent to Removal. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 15 NOTICE of Joinder in Motion to Stay and Transfer Proceedings by GILEAD SCIENCES INC, GILEAD SCIENCES IRELAND UC re 3 MOTION to Stay AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 18 MEMORANDUM in Opposition re 7 MOTION to Remand to State Court. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/04/2024 | 19 | ORDER re 17 Motion to Hold Deadline for Responding to Complaint in Abeyance. The motion (Doc. 17 ) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that Defendants' deadline to respond to Plaintiff's complaint is HELD IN ABEYANCE. The new deadline for Defendants Gilead Sciences, Inc., and Gilead Sciences Ireland UC to respond to Plaintiff's complaint is ten days after the Court's ruling on Defendants' motion to stay and transfer (Doc. 3 ). Additionally, Defendants have not provided sufficient basis for expedited briefing, and thus their request to expedite the briefing schedule is DENIED. Plaintiff's deadline to respond to Defendants' motion to stay and transfer proceedings (Doc. 3 ) remains November 6, 2024. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/04/24. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |

| | | |
|---|---|---|
| 11/04/2024 | | Set Deadline re 19 ORDER - Internal deadline for referral to judge if response to 3 Motion not filed earlier: **11/6/2024)**. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/04/2024) |
| 11/08/2024 | 20 | Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service, by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibit A). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 20 Plaintiff's MOTION for Sanctions Against Defendant for Falsifying Certificate of Service. Referred to ZACHARY C BOLITHO. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/12/2024 | 21 | REPORT AND RECOMMENDATION. Plaintiff's Motion to Remand to State Court (Doc. 7 ) be DENIED. This case be recommitted to the undersigned for further proceedings. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/12/2024. Internal deadline for referral to district judge if objections are not filed earlier: **12/10/2024**. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/12/2024) |
| 11/15/2024 | 22 | NOTICE *OF FILING AMENDED CERTIFICATES OF SERVICE* by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 18 Memorandum in Opposition to Motion, 15 Response/Reply, 17 MOTION to Hold Deadline for Responding to Complaint in Abeyance , 16 Notice (Other), 14 Corporate Disclosure Statement/Certificate of Interested Persons (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 23 | RESPONSE in Opposition re 20 MOTION for Sanctions filed by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND. (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/15/2024) |
| 11/15/2024 | 24 | RESPONSE in Opposition re 3 MOTION TO STAY AND TRANSFER PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW filed by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 25 | MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition by JOHN D LEVITAN, SR. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/15/2024 | 26 | PROPOSED FIRST AMENDED COMPLAINT against All Defendants., filed by JOHN D LEVITAN, SR. (Attachments: # 1 Exhibits)(No service copies filed.) (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 22 DEFENDANTS' NOTICE OF FILING AMENDED CERTIFICATES OF SERVICE, 23 DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/18/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 26 Proposed Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME, 24 Response in Opposition to Motion. Referred |

| | | |
|---|---|---|
| | | to ZACHARY C BOLITHO. (jcw) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/18/2024) |
| 11/22/2024 | 27 | RESPONSE by PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, GILEAD SCIENCES INC, TIMOTHY ALAN WATERS, GILEAD SCIENCES IRELAND UC, ARON FISCHER, JOSHUA STEIN, THOMAS P KURLAND re 26 Amended Complaint, 25 MOTION TO FILE OPPOSITION TO DEFENDANT'S MOTION TO STAY AND TRANSFER OUT OF TIME re 24 Response in Opposition to Motion . (MURPHY, HANNAH) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/22/2024) |
| 11/25/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 27 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFF'S MOTION TO FILE AN OUT OF TIME RESPONSE AND AMENDED COMPLAINT. (jfj) [Transferred from Florida Northern on 1/23/2025.] (Entered: 11/25/2024) |
| 12/11/2024 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 21 REPORT AND RECOMMENDATION (No objections or responses filed). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/11/2024) |
| 12/31/2024 | 28 | ORDER adopting Magistrate Judge's 21 REPORT AND RECOMMENDATION. The Plaintiff's Motion to Remand to State Court, (Doc. 7 ), is DENIED. This case is recommitted to the magistrate judge for further proceedings. Signed by JUDGE M CASEY RODGERS on 12/31/2024. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 12/31/2024 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 28 Order. (Recommitted back to Magistrate Judge). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 12/31/2024) |
| 01/06/2025 | 29 | ORDER - That Plaintiff's motion for sanctions (Doc. 20 ) is DENIED. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 30 | ORDER. Plaintiff's Motion to File Opposition to Defendants Motion to Stay and Transfer (Doc. 25 ) is GRANTED. Defendants' Motion to Stay and Transfer Proceedings (Doc. 3 ) is GRANTED to the extent that the Court will transfer this action. The Clerk of Court must TRANSFER this case to the U.S. District Court for the Eastern District of New York and close the file in this Court fifteen days from the date of this Order, unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline. Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 1/6/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | 31 | Interdistrict Transferred electronically to the EASTERN DISTRICT OF NEW YORK BROOKLYN located at US COURTHOUSE, 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/06/2025 | | Set Deadlines re STAY for transfer response deadline: **1/21/2025** re 30 ORDER. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/06/2025) |
| 01/08/2025 | 32 | ACKNOWLEDGMENT re 31 Case Transferred Out to Another District. Case transferred from Florida Northern has been opened in Eastern District of New York as case 1:25-cv-00101, filed 01/06/2025. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |

| | | |
|---|---|---|
| 01/08/2025 | 33 | DOCKET ANNOTATION BY COURT: Re 32 Acknowledgment of Transfer - Case Manager to call back regarding premature transfer with instructions on how to proceed. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/08/2025 | 34 | NOTICE of Case 1:25-cv-00101-AMD-JAM removed from the docket due to premature transfer re 32 Acknowledgment, by EASTERN DISTRICT of NEW YORK. (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/08/2025) |
| 01/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: Set Deadlines re STAY for transfer response deadline: 1/21/2025 re 30 ORDER. (No responses filed by deadline - permission to TRANSFER). (mb) [Transferred from Florida Northern on 1/23/2025.] (Entered: 01/22/2025) |
| 01/23/2025 | 35 | Case transferred in from District of Florida Northern; Case Number 3:24-cv-00475. Original file certified copy of transfer order and docket sheet received. (Entered: 01/23/2025) |
| 01/23/2025 | 36 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | The case of **Levitan v. Patterson Belknap Webb & Tyler LLP et al**, has been transferred from **Northern District of Florida (Pensacola)** to the Eastern District of New York. The new case number is **25-cv-393**.<br>PLEASE NOTE: if you plan to continue representing your client(s), you must be admitted to practice before this court. You must do so by applying for Pro Hac Vice or permanent admission. To apply for Pro Hac Vice admission, you must first register for an ECF login and password. Please visit the Court's website at www.nyed.uscourts.gov/attorney-admissions for guidance. Once registered, you must electronically file a Motion to Appear Pro Hac Vice. You must pay the required pro hac vice fee online. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | | ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge Joseph A. Marutollo (as related to 21-cv-4106)for all further proceedings. Magistrate Judge Peggy Kuo no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.Ordered by Chief Judge Margo K. Brodie on 1/23/2025. (KD) (Entered: 01/23/2025) |
| 01/23/2025 | 37 | NOTICE of Appearance by Geoffrey Potter on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Potter, Geoffrey) (Entered: 01/23/2025) |
| 01/23/2025 | 38 | NOTICE of Appearance by Timothy Alan Waters on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Waters, Timothy) (Entered: 01/23/2025) |

| | | |
|---|---|---|
| 01/23/2025 | 39 | NOTICE of Appearance by Thomas Philip Kurland on behalf of Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (aty to be noticed) (Kurland, Thomas) (Entered: 01/23/2025) |
| 01/24/2025 | 40 | SCHEDULING ORDER: A telephonic initial conference will be held on February 19, 2025 at 4:00 p.m. before Magistrate Judge Joseph A. Marutollo. To participate in the conference, the parties shall dial (646) 828-7666; Meeting ID: 161 018 4647; Passcode: 455895. The parties must complete the attached proposed Discovery Plan and Scheduling Order and file it on ECF no later than February 14, 2025. Plaintiff is directed to ensure that all Defendants are aware of this conference. Counsel with knowledge of the case must attend the conference; *per diem* counsel may not appear without prior permission of the Court. The parties are directed to review this Court's Individual Practices and Rules in advance of the conference. The Clerk of Court is directed to mail copy of this order to the plaintiff. Ordered by Magistrate Judge Joseph A. Marutollo on 1/24/2025. (Attachments: # 1 Individual Practices and Rules) (EG) (Entered: 01/24/2025) |
| 01/29/2025 | 41 | MOTION to Withdraw as Attorney *as to Hannah E. Murphy, Esq. to be Relieved as Counsel for Defendants* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER granting 41 Motion to Withdraw as Attorney. Attorney Hannah Eleanor Murphy terminated. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2025. (JAM) (Entered: 01/29/2025) |
| 01/31/2025 | 42 | MOTION to Dismiss by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Attachments: # 1 Memorandum in Support) (Kurland, Thomas) (Entered: 01/31/2025) |
| 02/11/2025 | 43 | Letter MOTION to Stay by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/11/2025) |
| 02/11/2025 | | ORDER: Plaintiff shall respond to 43 by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/11/2025. (GWM) (Entered: 02/11/2025) |
| 02/13/2025 | | ORDER: The Court received a voicemail from pro se Plaintiff. In light of Plaintiff's representation to chambers that he is experiencing delays in receiving and sending docket filings, the Court *sua sponte* extends the deadline to respond to 43 to February 20, 2025. Plaintiff is reminded that future correspondence with the Court shall be made on the public docket. Defendants shall serve a copy of this order on Plaintiff and file proof of service on the docket by February 14, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (EG) (Entered: 02/13/2025) |
| 02/13/2025 | 44 | Letter *to Judge Marutollo in response to the Court's February 13, 2025 order* by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland (Kurland, Thomas) (Entered: 02/13/2025) |
| 02/13/2025 | | ORDER: In light of the Court's extension of Plaintiff's deadline to respond to the 43 motion, the initial conference and all associated deadlines are adjourned *sine die*, pending resolution of the motion to stay. Ordered by Magistrate Judge Joseph A. Marutollo on 2/13/2025. (GWM) (Entered: 02/13/2025) |

| | | |
|---|---|---|
| 02/13/2025 | 45 | MOTION for leave to allow Pro Se to Electronically File by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 46 | MOTION to Amend/Correct/Supplement *Plaintiff's Motion to Supplement the record transferred from the Northern District of Florida* by John D Levitan, Sr. (RG) (Entered: 02/14/2025) |
| 02/13/2025 | 47 | Plaintiff's Objections to Order Transferring Case, Motion for Reconsideration of Order Denying Remand to State Court and Notice of Intervening Decision in Royal Canin U.S.A., Inc. et al. v. Wullschleger et al. 604 U.S. (2025) filed by John D Levitan, Sr., plaintiff pro se. (RG) (Entered: 02/14/2025) |
| 02/14/2025 | 48 | AFFIDAVIT of Service for February 13, 2025 Order's served on pro se Plaintiff on February 14, 2025, filed by Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Gilead Sciences Inc., Timothy Alan Waters, Gilead Sciences Ireland UC, Aron Fischer, Joshua Stein, Thomas P Kurland. (Kurland, Thomas) (Entered: 02/14/2025) |
| 02/14/2025 | 49 | MOTION to Remand to State Court by John D Levitan, Sr. (RG) (Entered: 02/18/2025) |
| 02/14/2025 | 50 | NOTICE: Request for Judicial Default against GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC PATTERSON BELKNAP WEBB & TYLER LLP (PBWT),GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND. **Please note advised pro se dept that plaintiff did not file properly, cannot file a default without the request for clerk's notation first. (RG) (Entered: 02/19/2025) |
| 02/14/2025 | 51 | MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery* by John D Levitan, Sr. (RG) (Entered: 02/19/2025) |
| 02/18/2025 | | ORDER: Defendants shall respond to 49 by February 26, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) (Entered: 02/18/2025) |
| 02/18/2025 | | ORDER granting 45 . Pro se Plaintiff shall register for ECF, registration is available online at www.pacer.gov. Should Plaintiff encounter any difficulty registering for PACER, he may contact CM/ECF Docketing and Filing at 718-613-2610. The Clerk of the Court shall provide the pro se Plaintiff with a copy of this Electronic Order. Ordered by Magistrate Judge Joseph A. Marutollo on 2/18/2025. (EG) Modified on 2/18/2025 to indicate C/M. (EG). (Entered: 02/18/2025) |
| 02/19/2025 | | ORDER: In light of the procedural posture of this case, the parties shall indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action, including a (jury or nonjury) trial and to order the entry of a final judgment, by **February 28, 2025**. The consent form should be filled out, signed and filed electronically only if all parties wish to consent. The form may also be accessed at the following link: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. The parties may withhold consent without adverse substantive consequences. Do NOT return or file the consent form unless all parties have signed the consent. Ordered by Magistrate Judge Joseph A. Marutollo on 2/19/2025. (EG) (Entered: 02/19/2025) |
| 02/24/2025 | 52 | Request for Certificate of Default by John D. Levitan, Sr, plaintiff pro se. (RG) (Entered: 02/25/2025) |
| 02/26/2025 | 53 | MEMORANDUM in Opposition re 47 Reply in Opposition, 49 MOTION to Remand to State Court *Defendants' Omnibus Memorandum of Law in Opposition to Plaintiff's Motion to Reconsider Denial of Remand or in the Alternative to Transfer this Case to the Northern District of Florida, and to Proceed with Discovery* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler |

| | | |
|---|---|---|
| | | LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/26/2025) |
| 02/28/2025 | 54 | REPLY in Support re 42 MOTION to Dismiss , 43 Letter MOTION to Stay , RESPONSE in Opposition re 51 MOTION to Strike *the motion to dismiss, and motion to stay, or in the alternative to deny motion to dismiss and to stay discovery Defendants' Omnibus Memorandum of Law Replying in Support of Defendants' Motions to Dismiss and Stay and Opposing Plaintiff's Motion to Strike* filed by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters. (Kurland, Thomas) (Entered: 02/28/2025) |
| 03/03/2025 | | ORDER: The parties were ordered to indicate whether they consent to Magistrate Judge jurisdiction to conduct all proceedings in this action by February 28, 2025. No such document was filed on the docket. Defendants shall file either a completed consent form or a letter indicating that the parties do not consent to Magistrate Judge jurisdiction by March 3, 2025, at 5:00 p.m.<br>The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf. The parties may withhold consent without adverse substantive consequences. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (EG) (Entered: 03/03/2025) |
| 03/03/2025 | 55 | Letter *to Judge Marutollo from Thomas P. Kurland re: Magistrate Judge Consent* by Aron Fischer, Gilead Sciences Inc., Gilead Sciences Ireland UC, Thomas P Kurland, Patterson Belknap Webb & Tyler LLP, Geoffrey Potter, Joshua Stein, Timothy Alan Waters (Kurland, Thomas) (Entered: 03/03/2025) |
| 03/03/2025 | | ORDER granting 43 . The Court GRANTS Defendant's motion to stay discovery until their motion to dismiss is resolved. "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Salese v. JP Morgan Chase & Co.* , No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.* , 299 U.S. 248, 254 (1936)). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: (1) whether the Defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *Amron v. 3M Minnesota Mining & Manufacturing Co.* , No. 23-CV-8959 (PKC) (JMW), 2024 WL 263010, at *2 (E.D.N.Y. Jan. 24, 2024) (citation and quotation marks omitted).<br><br>Here, applying these factors, the Court finds that a stay is warranted. *See Johnson v. N.Y. Univ. Sch. of Educ.* , 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[A] stay of discovery is appropriate [ ] where the motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law." (citation omitted)).<br><br>All discovery is stayed pending resolution of the dispositive motion currently pending before the Court. Ordered by Magistrate Judge Joseph A. Marutollo on 3/3/2025. (GWM) (Entered: 03/03/2025) |
| 09/30/2025 | 56 | MEMORANDUM AND ORDER. The case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court. Ordered by Judge Ann M. Donnelly on 9/30/2025. (DG) (Entered: 09/30/2025) |

| PACER Service Center |
|---|
| **Transaction Receipt** |

| 02/12/2026 20:09:27 | | | |
|---|---|---|---|
| **PACER Login:** | jdlevitan | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00393-AMD-JAM |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

# APPENDIX D
Order USDC-EDNY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**JOHN D. LEVITAN, SR.,**

Plaintiff,

– against –

**GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, PATTERSON BELKNAP WEBB & TYLER LLP, GEOFFREY POTTER, TIMOTHY ALAN WATERS, ARON FISCHER, JOSHUA STEIN, AND THOMAS P. KURLAND,**

Defendants.

**MEMORANDUM AND ORDER**

25-CV-393 (AMD) (JAM)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action alleging violations of the Florida Constitution and common law defamation claims. The plaintiff asserts these claims against Gilead Sciences, Inc. and Gilead Sciences Ireland UC ("Gilead"), a pharmaceutical company that has sued the plaintiff in this Court for conspiring to sell counterfeit Gilead medication, and Patterson Belknap Webb & Tyler LLP and lawyers at the firm ("PBWT"), who represent Gilead in that related suit. The plaintiff initiated this case in Florida state court, the defendants removed it to the Northern District of Florida, and that court transferred it here pursuant to 28 U.S.C. § 1404.

Before the Court are two motions: the plaintiff's motion either to transfer the case back to the Northern District of Florida for that court to reconsider its decision denying the plaintiff's motion to remand based on an intervening change in law or to remand directly, and the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the plaintiff's motion to transfer the case back to the Northern District of Florida is denied. However, the Court does not have subject matter jurisdiction over the

plaintiff's claims, so the case is remanded to the Florida state court, where the case was filed originally. The Court does not have jurisdiction to decide the defendants' motion to dismiss.

## BACKGROUND[1]

### I. Factual Background

In the summer of 2021, Gilead, represented by PBWT, sued various defendants for conspiring to distribute counterfeit Gilead-branded HIV medicine. (*Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.) ("*Gilead*"), ECF No. 1.) As the case developed, Gilead identified other members of the alleged conspiracy, including the plaintiff in this action, John Levitan, and amended the complaint to include them as defendants and add allegations about their roles in the scheme. (*See, e.g.*, *id.* ECF No. 607 (the plaintiffs' motion to amend the complaint to add Levitan, among others); *id.* ECF No. 630 (Fourth Amended Complaint, naming Levitan as a defendant).)

On August 11, 2022, pursuant to 15 U.S.C. § 1116(d), the Court entered an asset freeze order, a temporary restraining order, and a seizure order against the plaintiff, as well as other named defendants in *Gilead*. (*See id.* ECF Nos. 627, 628, 629.) About a week later, PBWT executed the seizure order at the plaintiff's home in Pensacola, Florida. (*See id.* ECF Nos. 687, 748, 823; *see* ECF No. 26 ¶¶ 17–21.)

The plaintiff's claims arise out of the defendants' allegations in the fourth amended complaint in *Gilead* and the defendants' execution of the seizure order. (*See* ECF No. 30, Transfer Order, at 9–23.) In his amended complaint, the plaintiff asserts Florida state law claims. He maintains that some of the allegations in the defendants' complaint were defamatory

---

[1] The history of this case is long and contentious. The Court assumes familiarity with the related case *Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.), and discusses only the facts necessary to reach its decision.

and violated the plaintiff's rights to free speech and association under Article I, §§ 4 and 5 of the Florida Constitution. (ECF No. 26 ¶¶ 15, 27–29, 36–42; *id.* at 9–10; ECF No. 26-1 at 1–7; *Gilead*, ECF No. 630 ¶¶ 270–76.) The plaintiff further alleges that the execution of the seizure order was an unlawful search that violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution. (ECF No. 26 ¶¶ 17–26, 30–35.)

## II. Procedural Background

The parties have been litigating against each other in this Court for three years. (*See, e.g.*, *Gilead*, ECF Nos. 839, 1150, 1169, 1452–55, 1472–74; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by then-Magistrate Judge Bulsara*; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by Magistrate Judge Marutollo*.)

On September 2, 2024, the plaintiff filed this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida. (ECF No. 1-1.)[2] In his initial complaint, the plaintiff asserted the state law claims described above, as well as violations of the First and Fourth Amendments. (*Id.* ¶¶ 25–27.) The plaintiff also alleged that the "damages subject of this action exceeds $50,000.00." (*Id.* ¶ 12.) On October 3, 2024, the defendants removed the case to the Northern District of Florida, arguing that the court had diversity and federal question jurisdiction. (ECF No. 1.) The defendants maintained that the court had diversity jurisdiction because the parties were completely diverse and the amount in controversy "as pled[,] plausibly exceeds $75,000." (*Id.* ¶¶ 5–16.) The defendants also claimed that the court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the complaint alleged federal

[2] Citations to ECF are to the docket in this action. Citations to "N.D. Fl. ECF" are to the docket in *Levitan v. Patterson, Belknapp, Webb & Tyler, LLP, et. al*, No. 24-CV-475 (N.D. Fl.).

constitutional violation and that the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*Id.* ¶¶ 17–18.)

The defendants then moved to transfer the action to this court pursuant to 28 U.S.C. § 1404(a) and to stay the proceedings in the Northern District of Florida. (ECF No. 3.) They also asked that court to extend the deadline to respond to the complaint until it resolved their motion to transfer. (ECF No. 4.) The court extended the defendants' deadline to respond to the complaint until 10 days after the resolution of the motion to transfer. (ECF No. 5.)[3]

On October 21, the plaintiff moved to remand the case to Florida state court. (ECF No. 7.) He argued that removal was improper because the amount in controversy did not meet the jurisdictional threshold for diversity jurisdiction and that his claims did not present a federal question. (*Id.* at 5–7.) The defendants opposed. (ECF No. 18.)

On November 12, 2024, and while the transfer motion was pending, Magistrate Judge Zachary C. Bolitho of the Northern District of Florida issued a report and recommendation recommending that the district judge deny the motion to remand. (ECF No. 21.) Observing that the plaintiff "clearly cites to the U.S. Constitution for several of his claims," the court held that remand was unwarranted because the court had federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 3–4.) In addition, the court noted that "[b]ecause there is clearly federal question jurisdiction in this case, it is unnecessary to address whether diversity jurisdiction exists." (*Id.* at

[3] Gilead was served on October 14, 2024, after PBWT removed the case to federal court. (ECF No. 17 at 1–2.) Gilead appeared in the case, consented to removal (ECF No. 15), and joined PBWT's motion to transfer (ECF No. 16). Gilead also asked for the same extension of the deadline to respond to the complaint (ECF No. 17 at 2–3), which the court granted (ECF No. 19).

2 n.1.) Neither party objected to the report and recommendation, and the district court adopted it on December 31, 2024. (ECF No. 28.)

Although the plaintiff did not object to the magistrate judge's recommendation, he filed an amended complaint on November 15, 2024. (ECF No. 26.) The factual allegations in the amended complaint were almost identical to the original complaint. This time, however, the plaintiff removed the federal constitutional claims and added language that purports to cap his damages at $70,000. (*Compare* ECF No. 1-1 ¶¶ 25–27, 31, 34, 37 (alleging violations of the First and Fourth Amendments) *with* ECF No. 26 ¶¶ 25–27, 31, 34, 37 (alleging the same conduct without citing the federal constitution); *compare* ECF No. 1-1 ¶ 12, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000.00") *with* ECF No. 26 ¶ 11, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000 but is no greater than $70,000").) The defendants objected, calling the amended complaint "a naked and legally impermissible effort to plead this case out of federal court." (ECF No. 27 at 10.)[4] They maintained that there was still federal question jurisdiction because the plaintiff's claims "still directly raise and require resolution of issues of federal law under both the United States Constitution and the Lanham Act." (*Id.* at 12.) In the alternative, they maintained that the court had diversity jurisdiction, notwithstanding the plaintiff's "attempt to plead an amount in controversy below $75,000." (*Id.* at 14.)

On January 6, 2025, Judge Bolitho issued a thorough and well-reasoned opinion granting the defendants' motion to transfer the action to this Court. (ECF No. 30.) The court found that the "case could have been filed in the Eastern District of New York because it has subject matter

[4] The defendants do not argue that the amended complaint was procedurally improper under Federal Rule of Civil Procedure 15.

jurisdiction, personal jurisdiction, and is a proper venue for this action." (*Id.* at 5.) The court further explained that "[b]ecause the Court has already determined that subject matter jurisdiction existed at the time of removal, Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case." (*Id.* at 6.) The court observed that "[f]ederal courts have repeatedly rejected . . . clever attempts to destroy federal jurisdiction" by amending a pleading. (*Id.* at 6; *see also id.* at 6 n.2 (citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002).)

The court also analyzed the factors that guide Eleventh Circuit courts in determining whether to transfer a case under § 1404(a). (*Id.* at 9–23.) The court concluded that "[e]ach factor identified by the Eleventh Circuit either weighs in favor of transfer or is neutral." (*Id.* at 23.) Accordingly, the court "exercise[d] its broad discretion" and transferred the case to this Court. (*Id.*) Judge Bolitho directed the clerk of his court to transfer the case 15 days after the date of the order "unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline." (*Id.*) The plaintiff did not file an objection to the transfer order by January 21, 2025, and the case was transferred to this Court on January 23, 2025. (ECF No. 35.)[5]

On January 27, 2025 — after the case had been transferred and assigned a case number in this Court, after the defendants appeared, and after Magistrate Judge Joseph Marutollo issued a scheduling order — the plaintiff filed objections to Judge Bolitho's transfer order in the Northern District of Florida. (N.D. Fl. ECF No. 37.)[6] The plaintiff argued that the court should reconsider

---

[5] The Clerk of Court for the Northern District of Florida transferred the case prematurely on January 8, 2025. (*See* ECF Nos. 32–34.) The Clerk of this Court then "removed [the transferred case] from CM/ECF in the Eastern District of New York." In any event, the case was ultimately transferred to this Court on January 23, 2025 — two days after Judge Bolitho's deadline for the plaintiff to object to the order. (ECF No. 35.)

[6] The plaintiff called this filing a motion for reconsideration.

the transfer order in light of the Supreme Court's intervening decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), issued on January 15, 2025. (*Id.* at 1–6.) The plaintiff also filed a letter in which he explained that his objections were late because "the winter storm emergency" that affected wide swaths of the southern United States prevented him from filing his papers in person. (N.D. Fl. ECF No. 38 at 1.)[7] The plaintiff further noted that he had twice requested — and was twice denied — electronic filing privileges, and that he had emailed his objections to the defendants on January 21, 2025. (*Id.* at 1 n.1, 3–5.)

The defendants opposed the motion, arguing that the plaintiff "provide[s] no basis for [the Northern District of Florida] [to] undo the transfer of this case to the Eastern District of New York ('EDNY'), which already timely occurred on January 23, 2025." (N.D. Fl. ECF No. 39 at 2.) According to the defendants, the plaintiff did not "challenge any aspect of the Court's reasons for granting transfer pursuant to 28 U.S.C. § 1404(a)," and raised "entirely jurisdictional" objections. (*Id.*) On January 29, 2025, Judge M. Casey Rodgers of the Northern District of Florida held that she was divested of jurisdiction on January 23rd, when the case was transferred to this Court, and therefore could not consider whether the plaintiff's "objections should be allowed out of time or the underlying merits of his objections." (N.D. Fl. ECF No. 40 at 1–2.)

[7] Florida Governor Ron DeSantis declared a state of emergency in the state on January 20, 2025. *See* Fla. Exec. Order No. 25-13 (Jan. 20, 2025). The Court could not find any Northern District of Florida announcements about courthouse closures during this time, although the bankruptcy court in that district closed the Clerk's office in the Pensacola courthouse on January 21 and 22, 2025 because of the storm, and noted that unrepresented parties could file documents by email. *See Tallahassee and Pensacola Clerk's Offices Closing for Inclement Weather*, United States Bankruptcy Court Northern District of Florida (Jan. 20, 2025), https://www.flnb.uscourts.gov/news/tallahassee-and-pensacola-clerk%E2%80%99s-offices-closing-inclement-weather.

On January 31, 2025, the defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in this Court. (ECF No. 42.)[8] In a flurry of filings on February 13 and 14, 2025, the plaintiff moved to supplement the record from the Northern District of Florida to include his January 27th objections and his letter explaining the reasons for the delayed filing. (ECF No. 46.) He asked this Court to reconsider, pursuant to Federal Rule of Civil Procedure 59(e), the order denying remand and the transfer order, in light of *Royal Canin*. (ECF No. 47.) He also moved to remand the case (ECF No. 49), asked the Clerk enter default judgement against all defendants for failing to answer or respond to the amended complaint (ECF No. 50), and moved to strike the defendants motion to dismiss either as untimely or on the merits (ECF No. 51). The defendants opposed the plaintiff's motion to remand the case to state court, reconsider the Florida court's order, or to transfer it back to Florida federal court. (ECF No. 53). They also filed reply in further support of their motion to dismiss and opposing the plaintiff's motion to strike. (ECF No. 54.)[9]

**DISCUSSION**

The plaintiff asks the Court to remand his case to Florida state court. (ECF No. 47 at 1, 4; ECF No. 49.) He suggests some procedural avenues to accomplish this goal. First, he asks this Court to transfer the case back to the Northern District of Florida for that court to reconsider its order denying the plaintiff's motion to remand. In the alternative, he asks this Court to reconsider Judge Bolitho's order denying remand or to remand the case itself. (ECF No. 47 at 4, 7; ECF No. 49 at 2.)

---

[8] The defendants also moved to stay discovery until the Court resolved the motion to dismiss. (ECF No. 43.) Judge Marutollo granted the stay on March 3, 2025. (*ECF Order dated Mar. 3, 2025 entered by Magistrate Judge Marutollo*.)

[9] The plaintiff's motion to supplement the record is denied as moot. The Court takes judicial notice of these filings and considers them in deciding the motions. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

**I. Motion to Transfer**

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Hatteras Enters. Inc. v. Forsythe Cosm. Grp., Ltd*, No. 15-CV-5887, 2016 WL 4083386, at *5 (E.D.N.Y. July 30, 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). That "doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Id.* at *4 (quoting *Sagendorf-Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)). The Second Circuit has not "directly endorsed a standard by which district court judges should exercise their discretion in revisiting the decisions of a transferor courts." *Id. See also SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 178 n.7 (2d Cir. 2000) ("A district court considering a retransfer motion might be limited by 'law of the case' principles, at least in the absence of changed circumstances."). Moreover, it is well-settled that "courts should be loathe to revisit prior decisions of a coordinate court unless there are extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Torres v. Universal Music Grp. N.V.*, No. 24-CV-5323, 2024 WL 3429444, at *1 (S.D.N.Y. July 16, 2024) (quoting *Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *7 (S.D.N.Y. Mar. 23, 2023)). "[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Hatteras Enters. Inc.*, 2016 WL 4083386, at *5 (quoting *SongByrd, Inc.*, 206 F.3d at 178 n.7).

The Court sees no reason to transfer the case back to the Northern District of Florida. Judge Bolitho committed no error in his determination that this case was related to *Gilead* under the relevant § 1404(a) factors and the controlling case law. (ECF No. 30 at 9–23.) Even if the

Court had disagreed with the Judge Bolitho's analysis, the policy reasons that favor application of the law of the case doctrine would persuade the Court that retransfer is inappropriate in this case. *See, e.g.*, *U.S. Bank N.A. v. Bank of Am. N.A.*, 916 F.3d 143, 153 (2d Cir. 2019) (affirming district court holding that a coordinate court's transfer order was law of the case where there was "no clear error in that ruling").

More fundamentally, and as detailed below, "[s]ince this court lacks subject matter jurisdiction over the instant matter, no order transferring the case may be issued." *Leeds, Morelli & Brown, P.C. v. Hernandez*, 2005 WL 2148994, at *3 (E.D.N.Y. Sept. 6, 2005) (collecting cases). Indeed, the Court's conclusion that it lacks subject matter jurisdiction further confirms that transferring the case back to the Northern District of Florida would risk a "perpetual game of jurisdictional ping-pong," *U.S. Bank N.A.*, 916 F.3d at 152 (quoting *Christianson*, 486 U.S. at 816), which is particularly unnecessary given that this Court is "equally capable of hearing and deciding" questions of federal court jurisdiction, *Pace v. Quintanilla*, No. 13-CV-91, 2013 WL 5405563, at *5 (S.D.N.Y. Sept. 23, 2013).

Accordingly, the plaintiff's motion to transfer is denied.

## II. Motion to Remand

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If a statute confers federal jurisdiction over a suit, not only the plaintiff but also the defendant can get it into federal court," by removing the case pursuant to §§ 1441(a) and 1446. *Royal Canin*, 604 U.S. at 27.

After a defendant removes a case, a plaintiff may move to remand it back to state court. 28 U.S.C. § 1447(c). "If the federal court lacks subject-matter jurisdiction, it must grant the motion to remand." *Mohadeb v. Credit Corp Sols. Inc.*, No. 22-CV-5017, 2022 WL 17832856, at *1 (E.D.N.Y. Dec. 21, 2022). "The removing defendant has the burden of establishing federal jurisdiction." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).

In addition, the Court must always confirm its own jurisdiction over a removed action. *See United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Regardless of whether a plaintiff moves to remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Whether styled as a motion to reconsider or a motion to remand, the plaintiff claims that the Supreme Court's opinion in *Royal Canin* requires remand because the district court does not have subject matter jurisdiction. (*See, e.g.*, ECF No. 47 at 2–5.)[10] The plaintiff argues that *Royal Canin* permits him to amend the complaint to remove federal questions so that the federal court does not have subject matter jurisdiction; then, the plaintiff says, the Court must remand the case. (*Id.*) The defendants respond that *Royal Canin* does not apply because the Court has

[10] The Supreme Court decided *Royal Canin* after Judge Bolitho denied the plaintiff's motion to remand to the state court. For this reason, the Court declines to treat the Judge Bolitho's decision as the law of the case. *See, e.g.*, Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.4 (3d ed.) ("Following a § 1404(a) transfer, the receiving court should treat pre-transfer rulings by the transferring court in much the same way as one district judge treats the rulings of a colleague."). Moreover, "[t]he Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Fersel v. Paramount Med. Servs., P.C.*, No. 18-CV-2448, 2022 WL 14813738, at *2 (E.D.N.Y. Oct. 26, 2022) (citation omitted); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .").

federal question jurisdiction over the amended complaint. (ECF No. 53 at 6–11.) The defendants also maintains that the Court has diversity jurisdiction. (*Id.* 11–13.)

**a. *Royal Canin***

In *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025), decided earlier this year, the Supreme Court held that when a plaintiff "amends her complaint to delete all the federal-law claims, leaving nothing but state-law claims behind," the federal court no longer has jurisdiction over the case, which must "return to state court." In her first complaint, Wullschleger claimed that Royal Canin's marketing tricked her into buying expensive dog food. *Id.* at 28. She asserted claims under the Missouri Merchandising Practices Act and state antitrust law. *Id.* As part of these claims, she alleged that Royal Canin violated a federal statute. *Id.* Accordingly, although the complaint asserted no federal claims, it raised an embedded a federal question. *Id.* at 28 n.1 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Royal Canin removed the case to federal court, invoking the court's federal question jurisdiction and supplemental jurisdiction. *Id.* at 28–29. Wullschleger moved to remand, which the court denied. *Id.* at 28 n.1. Then, she amended her complaint, deleting any mention of the federal statute, and moved to remand again. *Id.* at 29. The district court denied that motion, too. The Eighth Circuit reversed, reasoning that the amended complaint "[supersedes] an original complaint and renders the original complaint without legal effect." *Id.* (alteration in original) (quoting *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922 (8th Cir. 2023)).

The Supreme Court unanimously agreed. The Court held that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Id.* at 30. Put another way, "[t]he reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's

jurisdiction." *Id.* at 35–36. If "[t]he operative pleading no longer supports federal jurisdiction," then "the federal court must remand the case to the state court where it started." *Id.* at 39. Once a "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Id.* at 30. Accordingly, the Supreme Court held, the district court lacked jurisdiction over the purely state-law claims in the operative complaint — that is, the amended complaint — and was required to remand the case. *Id.* at 38.

The Court rejected Royal Canin's claim that "[t]he amendment of a complaint following removal of a suit to federal court cannot divest that court of supplemental jurisdiction." *Id.* at 32. To the contrary, the Supreme Court stated, "changes in parties, or changes in claims, effectively remake the suit," including "its jurisdictional basis." *Id.* at 35. Justice Kagan, writing for the Court, explained that "result accords with Congress's usual view of how amended pleadings can affect jurisdiction." *Id.* at 34. The Court observed, for example, that "an amendment can either destroy or create jurisdiction in an original diversity case," as "add[ing] a non-diverse party in such a case typically destroys diversity jurisdiction, requiring the case's dismissal." *Id.* at 37 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374–377 (1978)).

The Court did, however, note one category of amendments that is exempt from this rule: amendments that change "factual issue[s] relevant to jurisdiction." *Id.* at 37 n.8. Within this category is "an amendment reducing the alleged amount-in-controversy to below the statutory threshold," which "will usually not destroy diversity jurisdiction." *Id.* Because "the rule more concerns a fact on the ground," in this case "the value of a suit," it is "analogous to the time-of-filing rule applying to citizenship." *Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294–295 (1938)); *Rosado v. Wyman*, 397 U.S. 397, 405, n. 6 (1970)); *see also id.* at 36 n.5 (distinguishing the "so-called time-of-filing rule," "which evaluates a party's

citizenship (*e.g.,* whether the defendant is in fact from New York) at the time a suit is brought," and "concerns only the actual 'state of things' relevant to jurisdiction"). Accordingly, the Court suggested the amount in controversy should still be calculated as of the time a plaintiff files the original complaint.

**b. The Northern District of Florida's Decision on Subject Matter Jurisdiction**

On November 12, 2024, Judge Bolitho recommended that the district judge deny the plaintiff's motion to remand. (ECF No. 21.) At that time, the operative complaint was the original complaint, which included the explicit references to the First and Fourth Amendments. Judge Bolitho held that there was federal question jurisdiction because the plaintiff "clearly cites to the U.S. Constitution for several of his claims." (*Id.* at 3.) Judge Bolitho found that it was unnecessary to address whether there was diversity jurisdiction exists "[b]ecause there is clearly federal question jurisdiction in this case." (*Id.* at 2 n.1.)

Shortly thereafter, the plaintiff amended his complaint, "deleting every mention of federal law," just as the *Royal Canin* plaintiff did. (ECF No. 26; *Royal Canin*, 604 U.S. at 22 (Syllabus).) The defendants' motion to transfer was still pending when the plaintiff filed his amended complaint.

Judge Bolitho granted the defendants' transfer motion on January 6, 2025, a week before the Supreme Court published *Royal Canin*. In deciding that motion — and specifically whether the case "could have been filed in the Eastern District of New York because it has subject matter jurisdiction" — the court considered whether the plaintiff's amendment affected its jurisdiction. (ECF No. 30 at 5.)

Following then-binding circuit precedent, which was unquestionably good law before *Royal Canin*, Judge Bolitho wrote:

> The Court has already determined that federal subject matter jurisdiction existed in this case at the time of removal. (Docs. 21, 28). Plaintiff, however, recently attempted to circumvent the Court's jurisdictional determination by filing an amended complaint that removes references to any federal claims and expressly seeks damages less than the $75,000 amount-in-controversy requirement. (*See* Doc. 26). Federal courts have repeatedly rejected such clever attempts to destroy federal jurisdiction. Because the Court has already determined that subject matter jurisdiction existed at the time of removal (Docs. 21, 28), Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case.

(*Id.*)

Judge Bolitho relied on three cases: *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002), which "affirm[ed] the denial of remand where plaintiff 'amended the complaint to remove any federal cause of action' because the facts alleged in the amended complaint still 'fell within the scope of the federal causes of action' initially pleaded" (alteration adopted); *Collura v. City of Philadelphia*, 590 F. App'x 180, 184 (3d Cir. 2014), which "affirm[ed] denial of remand where plaintiff 'dropped his federal claims from his amended complaint' because 'federal jurisdiction cannot be defeated by amending a complaint to eliminate federal claims after removal'" (alteration adopted); and *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007), in which the Supreme Court observed in a footnote that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction . . . . But removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." (*Id.* at 5 n.2, 6 (emphasis in original).)

The *Royal Canin* Court addressed these cases, and noted that there was a circuit split on the question before the Court. *Collura* and *Behlen* were in circuits where the rule was "that a post-removal amendment cannot divest a federal court of jurisdiction." *Royal Canin*, 604 U.S. at

30, & n.3 (citing *Collura*, 590 F. App'x at 184, and *Behlen*, 311 F.3d at 1095). *Royal Canin* clearly abrogated these holdings. *See Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024) (Supreme Court decision abrogates circuit precedent if there is "a conflict, incompatibility, or inconsistency" between the decision and precedent (internal citation omitted)).

Justice Kagan also discussed *Rockwell* at length, explaining that it was consistent with the Court's reasoning in Royal Canin: "unless the withdrawn allegations [in an amended complaint] were 'replaced by others' giving the court adjudicatory power, the plaintiff's amendment 'will defeat jurisdiction.'" *Id.* at 36 (quoting *Rockwell*, 549 U.S. at 473); *see also id.* at 41 (*Rockwell* "examine[d] what happens in an original case when a plaintiff amends a complaint to expunge federal claims").

The Court also distinguished the footnote on which Judge Bolitho relied in the transfer order. Acknowledging that "[t]he footnote . . . sets out exactly the rule [the defendant] wants" — and the rule Judge Bolitho stated — the Court said that "the footnote is dictum, and [did] not control the outcome" in *Royal Canin*. *Id.* at 42. The Court did not have to "follow the *Rockwell* footnote just because it exists; [the Court's] adherence instead depends on whether it withstands analysis. And it does not." *Id.* at 43.

*Royal Canin*, thus, abrogated the central precedents on which Judge Bolitho relied in holding that this Court would have had federal jurisdiction over the case had it been brought in this district. Accordingly, the Court must evaluate whether it has subject matter jurisdiction over this case in light of *Royal Canin*. *See id.* at 34 ("[A]n amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion.").

**c. Federal Question Jurisdiction**

The plaintiff maintains that *Royal Canin* controls this case. Because the plaintiff removed his references to federal law in the amended, now-operative complaint, he contends that the Court does not have federal question jurisdiction over the purely state-law claims in the amended complaint. (*See generally* ECF No. 47.) The defendants say that *Royal Canin* does not apply because the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else." (ECF No. 53 at 8 (emphasis in original).) Second, they assert that the state law claims in the amended complaint nonetheless arise under federal law because they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Id.* at 10 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).) Neither argument is persuasive.

"The federal district courts have 'original jurisdiction' of civil actions 'arising under' federal law; and unless otherwise provided by Congress, they have removal jurisdiction over 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting 28 U.S.C. §§ 1331, 1441(a)). Claims directly arise under "federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

As an initial matter, the defendants' argument that this case is distinguishable from *Royal Canin* because the plaintiff removed federal claims, not just references to federal law, is unconvincing. The relationship between federal law and state claims in *Royal Canin* is similar to

the one in this case. The *Royal Canin* complaint "alleged the [federal] violations not as independent federal claims, but instead in support of [the plaintiff's] state claims." *Royal Canin*, 604 U.S. at 29 n.1. The Eighth Circuit, citing *Gunn*, held that the state-law claims arose under federal law because those "provisions [were] thoroughly embedded in, and integral to the success of" the state law claims. *Id.* (citing *Wullschleger v. Royal Canin U. S. A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020)). The Supreme Court, however, took "a slight liberty throughout [the] opinion, referring to the original complaint's [federal] allegations simply as federal claims." *Id.* In other words, although Justice Kagan calls them federal claims, they were allegations that raised a federal question. Like Ms. Wullschleger, the plaintiff amended his complaint to remove citations to federal law, while retaining essentially the same causes of action. Thus, the facts are similar to the *Royal Canin* facts, and *Royal Canin* controls.

Nonetheless, the defendants maintain that *Royal Canin* does not apply to cases where a plaintiff's amended complaint "removed certain words" but otherwise "kept the factual premise of his claims intact, and . . . sought the same relief post-amendment that he had sought pre-amendment." (ECF No. 53 at 8.) In support of this proposed rule, they cite *Behlen*, 311 F.3d at 1095, where the Eleventh Circuit held that "it was proper for the court to retain jurisdiction over [the plaintiff's] amended complaint, because, despite his removal of the allegations that would bring his claims within the scope of the [federal law], the amended complaint still presents a federal question." The Eleventh Circuit explained that the amended complaint continued to allege that the defendant violated federal securities laws, even though the plaintiff no longer cited those statutes; and merely removing citations to federal law did not erase the federal question. *Id.* at 1095–96.

*Royal Canin* did not necessarily abrogate this holding, but the defendants' proposed rule does not follow from the quoted language. According to the defendants, the amended complaint still asserts federal causes of action, even though it does not allege any violations of federal law. (ECF No. 53 at 8–9.) Accepting the defendants' theory would require the Court to read a federal cause of action into the amended complaint, which it will not do. *See Royal Canin*, 604 U.S. at 35 (the plaintiff is the "master of the complaint" and "gets to determine which substantive claims to bring against which defendants"). After all, the Court would not allow the plaintiff to recover under a federal cause of action when his amended complaint does not state one; nor will the Court read a federal claim into the complaint to exercise jurisdiction.[11]

The better reading of *Behlen* accords with the defendants' next argument — that even if the plaintiff asserts only state-law claims, those claims still arise under federal law. (*Id.* at 10 (quoting *Grable*, 545 U.S. at 314).) In addition to cases that arise directly under federal law, "the Supreme Court has identified a 'special and small' category of actual state claims that present significant, disputed issues of federal law," and therefore arise under federal law within the meaning of § 1331. *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 912 (2d Cir. 2024) (citation omitted). "For a state law claim to fall within this 'slim category,' the embedded federal issue must be '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

[11] In claiming that the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else" (ECF No. 53 at 8 (emphasis in original)), the defendants may mean to argue that the plaintiff impermissibly "disguise[s] . . . inherently federal cause[s] of action, to block removal." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3722.1. In other words, the defendants might be saying that the plaintiff's state constitutional claims are inherently federal causes of action — under 42 U.S.C. § 1983, for instance — because, as discussed below, no cause of action exists under state law. To credit this position, however, the Court would have to rewrite the plaintiff's complaint to find a viable federal cause of action that does not appear on the face of the complaint. That is not the Court's job. *See, e.g.*, *Adams v. Gen. Motors Acceptance Corp.*, 307 F. Supp. 2d 812, 817 (N.D. Miss. 2004) (remanding and rejecting defendant's argument that because state law provided no cause of action, the plaintiffs' claims must be construed as federal claims).

capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn*, 568 U.S. at 258); *see also Grable*, 545 U.S. at 314.

*i. Necessarily Raised*

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) (quoting *Jacobson*, 824 F.3d at 315). "For a federal issue to be necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Id.* (emphases in original) (internal quotations and citations omitted). "In other words, federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case." *Tantaros*, 12 F.4th at 141. The Second Circuit has instructed district courts to "[f]ocus[] on 'what necessarily appears in the plaintiff's statement of his own claim,'" and "exercise federal jurisdiction only if 'a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (alterations adopted) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

The plaintiff alleges in the amended complaint that the defendants violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution, by executing this Court's orders. (ECF No. 26 ¶¶ 17–26, 30–35.) The plaintiff attached to his amended complaint two affirmations of service that say that the defendants executed the search pursuant to this Court's seizure order. (ECF No. 26-1, Ex. C, at 8–9; ECF No. 26-1, Ex. D, at 10–12.) The plaintiff's state constitutional claims are, therefore, premised on the defendants' execution of an

order issued from this Court pursuant to a federal statute, 15 U.S.C. § 1116(d).[12] In other words, to establish that the search violated the Florida constitution, the plaintiff must prove either that the Court's asset freeze and seizure orders were improper or that they were illegally executed. Both are questions of federal law and are necessarily raised by the plaintiff's claims under the state constitution.

But these federal questions would not necessarily arise if the plaintiff does not have a cause of action, because then they are not "an element . . . of the plaintiff's cause of action." *Tantaros*, 12 F.4th at 141. That is the case here, because as the defendants point out, "no cause of action exists for money damages for a violation of a state constitutional right" in Florida. *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th Dist. Ct. App. 2004) (citing *Garcia v. Reyes*, 697 So.2d 549 (Fla. 4th Dist. Ct. App. 1997)). *See also Cowans v. Maximus Educ. LLC*, No. 4D2025-0235, 2025 WL 2055134, at *1 (Fla. 4th Dist. Ct. App. July 23, 2025) ("[I]t does not appear that article I, section 23 gives rise to a cause of action for money damages."); *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st Dist. Ct. App. 1994) (holding that it is "clear that article I, section 23 does not create a cause of action for 'governmental intrusion' because legislative enactment is needed to delineate whether immunity is waived to permit the award of money damages")*, approved,* 670 So. 2d 56 (Fla. 1996); *Funderburk v. O'Leary*, No. 21-CV-14290, 2023 WL 3491221, at *5 (S.D. Fla. May 17, 2023) ("Plaintiff will not be permitted to seek damages for violations of the Florida Constitution." (collecting cases)); *Lindbloom v. Manatee Mem'l Hosp., L.L.C.*, No. 23-CV-2856, 2025 WL 1563550, at *7 (M.D. Fla. Apr. 7, 2025) ("Florida state and federal courts have held that 'Florida constitutional claims do not support claims for damages absent a separate enabling statute.'" (internal citation omitted))*, report and*

[12] The defamation claims do not arise under federal law, and the defendants do not argue that they do.

*recommendation adopted*, 2025 WL 1450371 (M.D. Fla. May 21, 2025); *Ayala v. City of Pembroke Pines*, No. 25-CV-60294, 2025 WL 2202101, at *3 (S.D. Fla. June 27, 2025) ("[N]o cause of action exists for monetary relief for a violation of a Florida constitutional right."); *Capps v. Fla. Highway Patrol*, No. 17-CV-60365, 2017 WL 1436077, at *7 (S.D. Fla. Apr. 24, 2017) (collecting cases); *Smith v. Bell*, No. 06-CV-60750, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself." (collecting cases)). Accordingly, because the plaintiff has no private right to raise the federal issues, those issues are not necessarily raised on the face of the plaintiff's complaint, and this case does not arise under federal law.

In an abundance of caution, however, and because the Court could construe the plaintiff's constitutional claims as a tort claim for invasion of privacy that necessarily raises these federal questions, the Court continues the *Gunn-Grable* analysis. *See Percival v. Chronister*, No. 23-CV-1243, 2025 WL 1940316, at *17 (M.D. Fla. July 15, 2025) (construing *pro se* claim "incorrectly ground[ed]" in the Florida Constitution as "one for an invasion of privacy"); *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980) (holding that "Florida has recognized the tort of invasion of privacy," at least in cases of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home").

*ii. Actually Disputed*

Assuming federal questions necessarily arise in the state law claims, those questions — the legality of the Court's orders and the defendants' execution of those orders, in this case — are a "central point of dispute" in the action, "satisfying the second requirement for the exercise of federal jurisdiction in this case." *Link Motion Inc.*, 103 F.4th at 913 (quoting *Gunn*, 568 U.S. at 259).

*iii. Substantial*

"Nevertheless, as the Supreme Court has cautioned, 'the mere presence of a [disputed] federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Id.* (alteration in original) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). The dispute must also be substantial. To satisfy this requirement "'it is not enough that the federal issue be significant to the particular parties in the immediate suit'; rather, 'the substantiality inquiry looks instead to the importance of the issue to the federal system as a whole.'" *Id.* (cleaned up) (quoting *Gunn*, 568 U.S. at 260). "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (alteration in original) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). For example, the Supreme Court and Second Circuit have exercised federal question jurisdiction where state law claims raise "disputes over the meaning of a federal tax law, the scope of an Internal Revenue Code regulation, and the duties imposed by the Securities Exchange Act." *Id.*

*Grable* is instructive on this point. In that case, the Internal Revenue Service seized Grable & Sons Metal Products' property and sold it to satisfy its federal tax debt. *Grable*, 545 U.S., at 310–311. The company filed a state law quiet title action against the third party that bought the property, alleging that the IRS had not complied with statutory notice requirements, so the seizure and sale were invalid. *Id.* at 311. The Supreme Court emphasized that the federal government has a "strong interest" in the collection of delinquent taxes, and "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* at 315

In this case, the plaintiff challenges the Court's authority to issue asset freeze and seizure orders under the Lanham Act. Although Congress granted concurrent jurisdiction to state and federal courts over claims under the Lanham Act, 28 U.S.C. § 1338(a), a court must construe the

statute "in the light of a strong federal policy in favor of vigorously competitive markets." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997). To that end "Congress recognized that a trademark aids competition in the marketplace because it helps a consumer distinguish among competing products." *Id.* (citation omitted). These important federal policies are at issue in this case. This is a close call, but this case could raise sufficiently substantial issues that implicate the whole federal system to support jurisdiction.

*iv. Disruption to the Federal-State Balance*

But even if the plaintiff's "state action necessarily raises a disputed and substantial issue of federal law," the Court would still not have federal question jurisdiction, because "federal jurisdiction lies only if adjudication in a federal forum would be consistent with the 'congressionally approved balance of state and federal judicial responsibilities,' defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'" *Tantaros*, 12 F.4th at 146 (quoting *Jacobson*, 824 F.3d at 316). "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Jacobson*, 824 F.3d at 316.

In this case, however, Florida has a special interest in the claims the plaintiff makes: violations of the state constitution. "It is fundamental . . . that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010) (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940). Even if substantial federal issues are at stake in this case, so are core state interests. The plaintiff's state-law claims, therefore, are outside of the Court's federal question jurisdiction under *Grable* and *Gunn*.

* * *

Accordingly, this case does not fall within the narrow category of cases in which purely state-law claims support jurisdiction under § 1331.

**d. Diversity Jurisdiction**

In the alternative, the defendants argue the Court has diversity jurisdiction under § 1332. "Congress has always given federal courts power to decide 'diversity' cases." *Royal Canin*, 604 U.S. at 26 (citing 28 U.S.C. § 1332(a)). Federal courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different [s]tates." 28 U.S.C. § 1332(a). The parties do not dispute that they are completely diverse. Therefore, the Court has diversity jurisdiction if the amount in controversy exceeds $75,000.

Courts determining whether they have diversity jurisdiction adhere to the "time-of-filing" rule, which "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the complaint] — whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). The *Royal Canin* Court reaffirmed this rule as applied to questions concerning "the actual 'state of things' relevant to jurisdiction — meaning, the facts on the ground, rather than (as addressed [in *Royal Canin*]) the claims and parties that the plaintiff includes in a complaint." *Royal Canin*, 604 U.S. at 36 n.5. The Court observed that courts typically evaluate a party's citizenship and the amount in controversy as of the time the plaintiff files the original complaint. *Id.* at 36 n.5, 38 n.8.

As to the amount in controversy, the Court offered two reasons that "an amendment reducing the alleged amount-in-controversy to below the statutory threshold . . . will usually not

destroy diversity jurisdiction." *Id.* at 38 n.8; *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). The first is that "the value of a suit" concerns "facts on the ground," as opposed to the plaintiff's decision as master of the complaint in choosing the parties and claims, so the Court "viewed it as analogous to the time-of-filing rule applying to citizenship, which also assesses a factual issue relevant to jurisdiction only at the suit's outset." *Royal Canin*, 604 U.S. at 38 n.8. Second, assessing a suit's value poses unique difficulties, because it is likely "that the calculation will change over the course of litigation," which could inspire "constant litigation" and "alter a court's jurisdiction." *Id.* Therefore, the Court looks to the original complaint to determine the amount in controversy.

The removing defendants must show a "reasonable probability that the jurisdictional amount has been reached." *Cappuccilli v. Cokinos*, No. 24-CV-3045, 2024 WL 3013604, at *1 (E.D.N.Y. June 14, 2024) (citation omitted). "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 273–74 (2d Cir. 1994). "In determining whether the removing defendant has met this burden, courts 'look first to the plaintiffs' complaint and then to [the defendants'] petition for removal.'" *Gregory Wayne Designs, LLC v. Lowry*, No. 24-CV-2109, 2024 WL 3518584, at *3 (S.D.N.Y. July 24, 2024) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). If neither in conclusive, "courts may look outside those pleadings to other evidence in the record." *Id.* (quoting *United Food & Com. Workers Union*, 30 F.3d at 305).

The plaintiff does not allege a specific damages amount in the state court complaint. Instead, he claims that the damages exceed $50,000.00, which is the jurisdictional threshold for circuit courts in Florida. (ECF No. 1-1 ¶ 12; ECF No. 18 at 10 (citing Fla. Stat. Ann § 34.01).) This allegation does not support federal jurisdiction because it "merely indicates an amount in controversy in excess" of a jurisdiction limit that is below $75,000. *De Garcia v. Tropicana Ent. Inc.*, No. 22-CV-12, 2022 WL 375996, at *2 (E.D.N.Y. Feb. 8, 2022) (quoting *Valente v. Garrison From Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *1 (E.D.N.Y. Jan. 11, 2016)) (collecting cases); *see also O'Neill v. Target Corp.*, No. 21-CV-3262, 2021 WL 2634880, at *2 (E.D.N.Y. June 25, 2021); *Williams v. CVS*, No. 25-CV-655, 2025 WL 486656, at *2 (E.D.N.Y. Feb. 13, 2025).

Nor do the plaintiff's "boilerplate" allegations of his injuries "suffice to establish that this action involves an amount in controversy adequate to support federal diversity jurisdiction." *Mekhi v. Area Storage & Transfer, Inc.*, No. 18-CV-4654, 2018 WL 4043152, at *2 (E.D.N.Y. Aug. 24, 2018) (citation omitted) (collecting cases). The plaintiff pleads five causes of action.[13] For his state constitutional claims, he alleges he "suffered damages, including emotional distress, invasion of privacy, and other harm" and "demands [j]udgment for damages [and] punitive damages." (ECF No. 1-1 ¶¶ 32, 35, 38.) For his defamation claims, he alleges he "suffered damages, including damage to reputation, emotional distress, and other harm" and "demands [j]udgment for damages [and] punitive damages." (*Id.* ¶¶ 42, *id.* at 10.) These "conclusory assertions . . . lack of any detail regarding Plaintiff's specific damages," and "there is simply insufficient information to 'intelligently ascertain removability.'" *Mekhi*, 2018 WL 4043152, at

[13] He probably pleads just two cognizable causes of action. (*See* ECF No. 18 at 13 (arguing that only the libel and slander claims are even "superficially *cognizable* against private actors such as Defendants" (emphasis in original).)

*2 (quoting *DeMarco v. MGM Transp., Inc.,* No. 06-CV-307, 2006 WL 463504, at *1 (E.D.N.Y. Feb. 24, 2006)); *see also Herlihy v. Hyatt Corp.*, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022) ("[G]eneralized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met." (collecting cases)).

The defendants maintain, however, that each claim, if proven, is "likely to result in damages far in excess of $75,000," because "jury awards in defamation cases regularly exceed" that amount. (ECF No. 53 at 12; ECF No. 18 at 9–16.) But just because jury awards may exceed the amount in controversy does not mean that they must — or that they do in this case. Moreover, post-trial jury awards offer little guidance on the amount in controversy of claims before any motion practice or discovery. For these reasons, courts in this circuit routinely disregard comparisons to jury verdicts in determining the amount in controversy for jurisdictional purposes. *See, e.g.*, *Jean-Louis v. Amazon.com Servs., LLC*, No. 22-CV-5020, 2022 WL 3867668, at *3 (E.D.N.Y. Aug. 29, 2022) ("[C]onsidering the procedural posture of this case, [the defendant's] reliance on cases — decided post-trial — discussing at length evidence of a relentless stream of discrimination and taunting that spanned many years is misplaced."); *Salerno v. N. Manor Multicare Facility*, No. 21-CV-7490, 2021 WL 4148900, at *2 (S.D.N.Y. Sept. 13, 2021) (declining to rely on "cases *reviewing* jury verdicts for emotional damages" in determining amount in controversy because of the difference in "procedural posture" (emphasis in the original)).

The defendants also point to the plaintiff's request for punitive damages, which they state may be "up to three times actual damages or $500,000, whichever is higher." (ECF No. 53 at 12.) "[I]n computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (alteration adopted) (citation omitted). The complaint does not allege any facts that would support "reasonable probability" that the plaintiff would be entitled to punitive damages; the "conclusory assertion that any amount of punitive damages is a *fait accompli* is untethered to the record and amounts to the kind of speculation and surmise that courts in this Circuit routinely reject." *Jean-Louis*, 2022 WL 3867668, at *4.

The defendants' notice of removal does not satisfy their burden either. They plead that "the amount in controversy in this action — as pled — plausibly exceeds $75,000." (ECF No. 1 ¶ 16.) This conclusory assertion is similarly not conclusive or controlling. *Gregory Wayne Designs, LLC*, 2024 WL 3518584, at *4. The defendants cannot "rely[] on inferences drawn from the Complaint," because it does not allege any facts about the nature or extent of the plaintiff's harm. *Herrera v. Terner*, No. 16-CV-4610, 2016 WL 4536871, at *2 (E.D.N.Y. Aug. 30, 2016); *see also Shoham v. United Airlines, Inc.*, No. 22-CV-5677, 2022 WL 13798296, at *2 (E.D.N.Y. Oct. 21, 2022) (remanding personal injury claims because the "boilerplate pleadings" could not establish an amount in controversy supported federal jurisdiction).

Without any factual allegations about the plaintiff's injuries to support jurisdiction, the defendants must look outside the pleadings. They cite the state court civil cover sheet that the plaintiff filed with his complaint. (ECF No. 1-1 at 2.) On this administrative form, the plaintiff "estimated [the] amount of the claim, rounded to the nearest dollar" at "over $100,000.00." (*Id.*) However, the Court declines to rely on this document as affirmative evidence of the actual amount in controversy. The civil cover sheet states on its face that it "neither replace[s] nor supplement[s] the filing . . . of pleadings" and is required by "the Clerk of Court for the purpose of reporting uniform data pursuant" to state law. (*Id.*) The amount of claim question narrows its

use even further: It is "for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose." (*Id.*) Indeed, courts have held that a plaintiff's answers on the civil cover sheet cannot establish diversity jurisdiction. *Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); *Galloway v. Ahamed*, No. 22-CV-979, 2022 WL 3107330, at *5 (D. Conn. Aug. 4, 2022) (checking box on civil cover sheet is not sufficient to prove the amount in controversy exceeds the jurisdictional threshold); *Powell v. Maldonado*, No. 23-CV-826, 2024 WL 496478, at *4 (E.D.N.Y. Feb. 7, 2024) (checking boxes on civil cover sheet does not establish parties are diverse). This is especially true in the context of removal, because "federal courts construe the removal statute narrowly, resolving any doubts against removability," *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).

* * *

Accordingly, the Court lacks federal jurisdiction over this action, and it must remand the case. *See* 28 U.S.C. 1447(c).

**III. Remand to Florida State Court**

"[W]hen an action is transferred, it remains what it was." *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.). "[A] transferee court is deemed to inherit all the authority of a transferor court." *Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 271 (3d Cir. 2002) (holding that "a court has authority to send a case back to the state court where it originated" and "does not have authority to 'remand' a case to a stranger court"). This includes the authority to remand the case to the state court where the case originated. *See, e.g.*, *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir.

2002) (declining to review order remanding case to the Florida Circuit Court for lack of federal subject matter jurisdiction); *Parker v. J. Crew Grp., Inc.*, No. 17-CV-1214, 2018 WL 385033, at *2 (D.N.J. Jan. 11, 2018) (remanding transferred case to Illinois state court); *Retterath v. Homeland Energy Sols., LLC*, No. 14-CV-158, 2014 WL 7776705, at *10 (S.D. Iowa Dec. 24, 2014) (remanding transferred case to Florida state court).

Indeed, the Court has no other option. The removal statute contemplates that courts may remand a case only "to the State court from which it was removed." 28 U.S.C. 1447(c). Courts have repeatedly followed this reasoning and "held that a district court is only permitted to remand a case to the state court from which the case was removed." *Salis v. Manzanet-Daniels*, No. 24-CV-1130, 2025 WL 1305868, at *4 (N.D.N.Y. May 6, 2025) (collecting cases). The Court must remand the case if it does not have subject matter jurisdiction, and there is only one court to which remand is permissible. Accordingly, this case is remanded to the First Judicial Circuit Court of Florida, the court from which it was removed.

**CONCLUSION**

For the foregoing reasons, the case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 30, 2025

# IN THE FIRST DISTRICT COURT OF APPEAL

## DOCKETING STATEMENT
## & NOTICE OF APPEARANCE OF COUNSEL

(Amended June 2023)

APPELLANT/PETITIONER: If this case involves an original writ, is an appeal of a non-final order, or is a "child" case (as defined in paragraph 12 below), this Docketing Statement must be completed and returned immediately. In all other cases, the Appellants must file the Docketing Statement within 20 days from the date of the Court's acknowledgment notice accepting this case and assigning a case number.

APPELLEE/RESPONDENT/AMICUS CURIAE: Appellees, Respondents, and Amici are only required to file a Docketing Statement if their name does not already appear on the certificate of service or they wish to make amendments or corrections to a Docketing Statement filed by another party. An Appellee's Docketing Statement is due no later than the answer brief. A Respondent's Docketing Statement is due no later than the response to the petition.

PLEASE PROVIDE THE FOLLOWING INFORMATION (attach additional pages if needed):

1. NAME OF CASE: LEVITAN v. HONORABLE JENNIFER J. FRYDRYCHOWICZ

   DCA CASE NUMBER:

2. DOCKETING STATEMENT OF:

PARTY'S NAME: JOHN D. LEVITAN, SR.

ATTORNEY'S NAME: PRO SE

BAR NUMBER:

ADDRESS: 511 WINDROSE CIRCLE, PENSACOLA, FLORIDA

PHONE NO.: 850-497-2724

EMAIL ADDRESS: LEGAL@GILEADFRAUD.COM,

Please check which type of filer you are:

Appellant/Petitioner (●) Appellee/Respondent ( ) Amicus ( )

3. REAL PARTIES IN INTEREST: List names and addresses (including email addresses if known) of all persons, business entities, and organizations having a direct interest in the outcome of this action.

HONORABLE JENNIFER J. FRYDRYCHOWICZ
hayley.faulkner@flcourts1.gov
JEREMY BRANNING, ESQ.
jbranning@clarkpartington.com
PHILLIP IMPERIAL, ESQ
jbranning@clarkpartington.com
CLARK PARTINGTON
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502

4. JUDGES BELOW: List the name and lower tribunal of all judge(s), judge(s) of compensation claims, master(s), and hearing officer(s)/examiner(s) who were involved in this action below.

HONORABLE JENNIFER J. FRYDRYCHOWICZ

5. ATTORNEYS: List the names and addresses (including email addresses) of all attorneys who are, or have been, of record in this case and whom they represent.

JEREMY BRANNING, ESQ.
jbranning@clarkpartington.com
PHILLIP IMPERIAL, ESQ
jbranning@clarkpartington.com
JAKE BARNES, ESQ
jbarnes@clarkpartington.com
JUDI DALLMAN, ESQ
jdallman@clarkpartington.com

6. If this case is an appeal of a final order or of a partial final judgment, are there any matters still pending in the lower tribunal other than those relating to fees and/or costs? State "yes" or "no":

If yes, please explain the nature of the order being appealed and what matters remain pending in the lower tribunal.

N/A

7. RECUSALS: Do you believe any judge(s) on this Court should not participate in this case? State "yes" or "no": NO

If yes, please list the judge(s) and state your reasons for that belief. (Note: Providing information on this form does not replace the need to file a motion if you intend to seek the disqualification of a judge.)

8. RELATED CASES PENDING IN THIS COURT:

(a) Are there any other cases now pending before this Court arising from the same case in the lower tribunal? State "yes" or "no": YES

If yes, list the style and docket number of those cases.

First DCA Related Case No. 1D2025-3298

(b) Are there any other cases now pending before this Court which involve the same or similar issues? State "yes" or "no": YES

If yes, list the style and number of those cases and state the issue(s).

First DCA Related Case No. 1D2025-3298
APPEAL OF ORDER DENYING DISQUALIFICATION OF COUNSEL

First DCA Related Case No. 1D2026-0175
PETITION WRIT OF MANDAMUS

(c) Are there any cases now pending before this Court which are related to this case for reasons other than those set forth in 8(a) and 8(b) above, including, but not limited to cases arising from the same set of facts? State "yes" or "no":

If yes, list the style and docket number and state the reason(s) they are related.
YES
First DCA Related Case No. 1D2026-0175 PETITION WRIT OF MANDAMUS

(d) If you become aware after the filing of this Docketing Statement of cases in this Court that involve a co-defendant in a criminal case, the same controversy or parties, or substantial similar issues, please file and serve an Amended Docketing Statement or a Notice of Related Case(s) that lists the style and docket number of those cases and states the reason(s) the cases are related.

9. RELATED CLOSED PROCEEDINGS IN THIS COURT: Are there any previously decided or closed proceedings in this court which involve the same parties or issues as this case? State "yes" or "no": NO

If yes, list the style and docket number or citation of those cases.

10. RELATED PROCEEDINGS BELOW: Are there any cases other than this case pending before a lower tribunal or about to be filed in this court, which involve the same controversy or parties or substantial similar issue(s)? State "yes" or "no": NO

If yes, list each such case by style, case number, and tribunal where filed.

11. RELATED PROCEEDINGS IN OTHER COURTS: Are there any pending or prior proceedings in other courts other than those listed above related to this action? State "yes" or "no": YES

If yes, list the style, case number, and court where filed of those cases.

LEVITAN v. PATTERSON, BELKNAP, et. al.
USDC-NDFLA CASE 24-cv-00475-MCR-ZCB PENSACOLA
Removal Proceeding

LEVITAN v. PATTERSON, BELKNAP, et. al.
USDC-EDNY CASE 25-cv-00393-AMD-JAM BROOKLYN
Removal Proceeding

**12. CHILD CASES: Does this appeal directly involve and substantially affect child custody/visitation, support, placement, juvenile dependency, termination of parental rights, or delinquency? State "yes" or "no":**

Unless good cause to the contrary is shown, the Court will follow a policy of expediting appeals which involve or affect custody, support, placement, dependency, termination of parental rights, and delinquency. The briefing schedule in dependency and termination of parental rights cases is expedited by Court order. No extensions of time for briefing will be granted except when necessary to preserve the constitutional rights of a party or when substantial evidence exists to demonstrate that without the extension the child's best interests will be harmed. Motions will not toll the briefing schedule. The case will be processed in an expedited manner and decided as early as the interests of justice permit.

## CERTIFICATION OF GOOD FAITH AND CERTIFICATE OF SERVICE

I hereby certify the following:

- The information I provided above is accurate and complete.
- I am familiar with and have had the opportunity to read the Court's Notice to Attorneys and Parties. This document was sent to me by the Court at case opening and contains important information. It is also available on the Court's website at www.1dca.flcourts.gov.
- If this is a Workers' Compensation case, the Court also sent me a Notice in Workers' Compensation Cases. If applicable, I have read and am familiar with the Court's Notice, especially the requirements for extensions of time to file briefs in this type of case.
- If I am an Appellant in a Reemployment Assistance Appeals Commission case, the Court also sent me a Notice in Reemployment Assistance Appeals Commission Cases. If applicable, I have read and am familiar with the Court's Notice.
- It is my responsibility to ensure that a copy of the Docketing Statement is served on opposing parties or their attorneys. If I am pro se, I certify that I will mail or deliver a copy of this Docketing Statement to all parties of record or their attorneys or, if I have received permission from the opposing parties or their attorneys to provide service by electronic means, I will provide an electronic copy of the Docketing Statement to all parties of record or their attorneys.

I certify that a copy hereof has been furnished to the following opposing counsel/parties (list names and addresses):

VIA EMAIL
HONORABLE JENNIFER J. FRYDRYCHOWICZ
hayley.faulkner@flcourts1.gov
JEREMY BRANNING, ESQ.
jbranning@clarkpartington.com
PHILLIP IMPERIAL, ESQ
jbranning@clarkpartington.com
CLARK PARTINGTON
Office: (850) 434-9200 | Fax: (850) 432-7340
125 East Intendencia Street, 4th Floor

by (method of delivery, i.e. mail, email) on the following date: 02/13/26

/S/ JOHN D. LEVITAN, SR.

Signature

Please use this page to expand answer. Additional pages may be attached if needed.

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,
Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164
DIVISION: N**

**GILEAD SCIENCES, INC., et al.,
Defendants.**
_______________________________________/

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss First Amended Complaint ("FAC"), e-filed on October 29, 2025 [DIN 34]. The Court has carefully considered the filings and being otherwise advised in the premises, finds as follows:

The Court incorporates its Order Requiring Docketing [DIN 86] and Order to Show Cause [DIN 91] herein. The Court finds that *Pro Se* Plaintiff failed to comply with the Order to Show Cause but nonetheless filed the FAC on February 10, 2026 [DIN 93].

The Court finds that Defendants' Motion is due to be granted for all factual and legal reasons stated therein. However, dismissing an action with prejudice is a severe sanction. "Public policy favors the liberal amendment of pleadings, and courts should resolve all doubts in favor of allowing the amendment of pleadings to allow cases to be decided on their merit." *Bosco v. Global Properties of Naples, LLC*, 319 So. 3d 181, 183 (Fla. 2d DCA 2021)(quoting *S. Developers & Earthmoving, Inc. v. Caterpillar Fin. Servs. Corp.*, 56 So. 3d 56, 62 (Fla. 2d DCA 2011); *see also* Fla. R. Civ. P. 1.190(a). A trial court should grant leave to amend, rather than dismiss a complaint with prejudice, unless a party has abused the privilege to amend, an amendment would prejudice the opposing party, or the complaint is clearly not amendable (i.e. an amendment is futile). *Id.*

Based on the four corners of the FAC, Defendants' strongest argument lies in the third prong. However, given the state of the law as it currently stands, the Court grants Plaintiff permission to amend his pleading to address the issues raised in Defendants' Motion.[1] However, the Court notes (1) that pro se litigants should be treated no differently than those represented by counsel, and (2) that, while there is no magical number of amendments which are allowed, dismissal with prejudice after the third attempt is generally not an abuse of discretion. *See Kohn v. City of Miami Beach,* 611 So. 2d 538, 539 (Fla. 3d DCA 1992). "There is simply a point in litigation when defendants are entitled to be relieved from the time, effort, energy, and expense of defending themselves against seemingly vexatious claims." *Id.* quoting *Feigin v. Hospital Staffing Servs., Inc.*, 569 So. 2d 941 (Fla. 4th DCA 1990).

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss the First Amended Complaint is GRANTED without prejudice. Plaintiff's Second Amended Complaint is deemed file as of today's date. Defendants have ten (10) days to file a responsive pleading.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

02/18/2026 10:12:43 2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 02/18/2026 10:12:43 RotGSILj

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

[1] Plaintiff filed a Motion for Leave to File Second Amended Complaint, along with the proposed complaint, on February 13, 2026 [DIN 96-97].

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING and JACOB BARNES, Attorneys for Defendants

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**JOHN D. LEVITAN, SR.,**
**Plaintiff,**

**v.**

**CASE NO.: 2024 CA 001164**
**DIVISION: N**

**GILEAD SCIENCES, INC., et al.,**
**Defendants.**
_______________________________________/

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss First Amended Complaint ("FAC"), e-filed on October 29, 2025 [DIN 34]. The Court has carefully considered the filings and being otherwise advised in the premises, finds as follows:

The Court incorporates its Order Requiring Docketing [DIN 86] and Order to Show Cause [DIN 91] herein. The Court finds that *Pro Se* Plaintiff failed to comply with the Order to Show Cause but nonetheless filed the FAC on February 10, 2026 [DIN 93].

The Court finds that Defendants' Motion is due to be granted for all factual and legal reasons stated therein. However, dismissing an action with prejudice is a severe sanction. "Public policy favors the liberal amendment of pleadings, and courts should resolve all doubts in favor of allowing the amendment of pleadings to allow cases to be decided on their merit." *Bosco v. Global Properties of Naples, LLC*, 319 So. 3d 181, 183 (Fla. 2d DCA 2021)(quoting *S. Developers & Earthmoving, Inc. v. Caterpillar Fin. Servs. Corp.*, 56 So. 3d 56, 62 (Fla. 2d DCA 2011); *see also* Fla. R. Civ. P. 1.190(a). A trial court should grant leave to amend, rather than dismiss a complaint with prejudice, unless a party has abused the privilege to amend, an amendment would prejudice the opposing party, or the complaint is clearly not amendable (i.e. an amendment is futile). *Id.*

Based on the four corners of the FAC, Defendants' strongest argument lies in the third prong. However, given the state of the law as it currently stands, the Court grants Plaintiff permission to amend his pleading to address the issues raised in Defendants' Motion.[1] However, the Court notes (1) that pro se litigants should be treated no differently than those represented by counsel, and (2) that, while there is no magical number of amendments which are allowed, dismissal with prejudice after the third attempt is generally not an abuse of discretion. *See Kohn v. City of Miami Beach*, 611 So. 2d 538, 539 (Fla. 3d DCA 1992). "There is simply a point in litigation when defendants are entitled to be relieved from the time, effort, energy, and expense of defending themselves against seemingly vexatious claims." *Id.* quoting *Feigin v. Hospital Staffing Servs., Inc.*, 569 So. 2d 941 (Fla. 4th DCA 1990).

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss the First Amended Complaint is GRANTED without prejudice. Plaintiff's Second Amended Complaint is deemed file as of today's date. Defendants have ten (10) days to file a responsive pleading.

**DONE AND ORDERED** at Pensacola, Escambia County, Florida.

02/18/2026 10:12:43
2024 CA 001164

signed by CIRCUIT COURT JUDGE JENNIFER J FRYDRYCHOWICZ 02/18/2026 10:12:43

**JENNIFER J. FRYDRYCHOWICZ**
**CIRCUIT JUDGE**

**DUE TO THE NUMBER OF CASES THIS DIVISION HANDLES, IT IS THE RESPONSIBILITY OF THE PLAINTIFF TO NOTIFY MY JUDICIAL ASSISTANT IMMEDIATELY IF THE CASE SHOULD SETTLE.**

[1] Plaintiff filed a Motion for Leave to File Second Amended Complaint, along with the proposed complaint, on February 13, 2026 [DIN 96-97].

**Parties will receive service from the Court at the e-mail designations on the service list of the e-Portal. The attorney/movant shall effectuate service upon any party not registered on the service list of the e-Portal and file a Certificate of Compliance within five (5) business days.**

Copies to:
Plaintiff
JEREMY BRANNING and JACOB BARNES, Attorneys for Defendants